UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

**DEFENDANTS' MOTION TO EXCLUDE STATE-OF-MIND TESTIMONY
OF DR. ROBERT MERRILL AND LYNDON PITTINGER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF ISSUES .......................................................................................1

APPLICABLE LEGAL STANDARDS ....................................................................1

FACTUAL BACKGROUND ....................................................................................2

NATURE AND STAGE OF THE PROCEEDINGS ................................................3

ARGUMENT .............................................................................................................4

CONCLUSION ........................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Crash Disaster at New Orleans, La.*,
  795 F.2d 1230 (5th Cir. 1986) ............................................................................. 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ................................................................................... 1, 2, 4

*Fisher v. Halliburton*,
  No. H-05-1731, 2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) .......................... 6

*Fletcher v. Allstate Tex. Lloyd's*,
  No. 1:21-CV-00269, 2022 WL 2980949 (E.D. Tex. July 25, 2022) ................... 5

*Hanak v. DynCorp, Inc.*,
  No. SA-09-CA-752-FB, 2013 WL 12385017 (W.D. Tex. June 18, 2013) ..... 2, 4

*Jenkins v. Helmerich & Payne Int'l Drilling Co.*,
  577 F. Supp. 3d 587 (S.D. Tex. 2021) ................................................................ 6

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir. 2007) ............................................................................... 2

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................ 2

*Marlin v. Moody Nat. Bank, N.A.*,
  248 F. App'x 534 (5th Cir. 2007) ....................................................................... 1

*Retractable Techs., Inc. v. Abbott Laboratories, Inc.*,
  No. 5:05-CV-157, 2010 WL 11531436 (E.D. Tex. June 18, 2010) ............ 4, 5, 6

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................ 5

*Salas v. Carpenter*,
  980 F.2d 299 (5th Cir. 1992) .............................................................................. 2

*United States v. Vista Hospice Care, Inc.*,
  No. 3:07-cv-00604, 2016 WL 3449833 (N.D. Tex. June 20, 2016) ................... 7

*Vaulting & Cash Servs., Inc. v. Diebold Inc.*,
    No. 97-3686, 1998 WL 726070 (E.D. La. Oct. 15, 1998), *aff'd sub nom.*
    *Vaulting & Cash Servs. v. Diebold*, 199 F.3d 440 (5th Cir. 1999) ...............6, 10

**Statutes & Rules**

Fed. R. Evid. 702 .........................................................................................1, 2, 4

## PRELIMINARY STATEMENT

An expert's testimony is only admissible if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue". Fed. R. Evid. 702(a); *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). As a result, expert testimony on a defendant's knowledge, intent or beliefs is inadmissible because "an expert's credentials do not place him in a better position than the jury to draw conclusions about a defendant's state of mind". *Marlin v. Moody Nat. Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007).

Plaintiffs' proffered scientific experts, Robert Merrill and Lyndon Pittinger, seek to offer inadmissible opinions on Defendants' and the partners' intent and knowledge with respect to the Shenandoah appraisal project. Because these opinions do not involve any "specialized knowledge" that will help the trier of fact understand the evidence in this case, that testimony should be excluded under Federal Rule of Evidence 702 and *Daubert*.

## STATEMENT OF ISSUE

Whether Plaintiffs' experts' testimony on state of mind should be excluded under Federal Rule of Evidence 702 and *Daubert* because it is not based on any specialized knowledge and will not help the trier of fact to understand the evidence or to determine a fact in issue.

## APPLICABLE LEGAL STANDARDS

Expert testimony is admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence

or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case". Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on district courts to ensure that proffered expert testimony is both relevant and reliable. 509 U.S. at 497; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (holding that *Daubert's* "gatekeeping" obligation applies to all expert testimony); *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) ("The *Daubert* standard ensures that the proffered evidence is both 'reliable' and 'relevant.'"). Opinions about someone's state of mind are inadmissible, as they are "outside the scope of [an expert's] expertise", "unnecessary" and "would not assist the trier of fact, offering no more than what the lawyers can offer in argument". *Hanak v. DynCorp, Inc.*, No. SA-09-CA-752-FB, 2013 WL 12385017, at *6 (W.D. Tex. June 18, 2013) (citing *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)).

## FACTUAL BACKGROUND

Plaintiffs submitted expert reports from Dr. Robert Merrill, a geologist, and Lyndon Pittinger, a petroleum engineer, who were asked to examine certain "adverse information" about Shenandoah leading up to and during the Class Period. (Ex. 20 (Expert Report of Dr. Robert Merrill (hereinafter, "Merrill Rpt.")))

¶ 3; Ex. 22 (Expert Report of Lyndon Pittinger (hereinafter, "Pittinger Rpt.")) ¶ 3.) While both experts at their depositions significantly walked back their state-of-mind testimony (*see, e.g.*, Ex. 15 (Deposition of Dr. Robert Merrill (hereinafter, "Merrill Tr.")) 45:13-19, 76:2-77:11, 128:16-129:1, 129:19-23, 148:23-149:17, 154:21-25, 161:7-163:7; Ex. 16 (Deposition of Lyndon Pittinger (hereinafter, "Pittinger Tr.")) 56:6-17, 79:24-80:14, 114:20-117:24, 126:6-23, 177:21-179:9, 243:24-245:15, 245:17-246:8), their expert reports nonetheless seek to provide expansive opinions on Defendants', Anadarko employees' and the partners' knowledge, beliefs and intent that are central to their overall reports. In particular, Pittinger seeks to opine on what Anadarko management knew or likely knew about Shenandoah's commercial viability and the factors potentially impacting commerciality (*see, e.g.*, Ex. 22 (Pittinger Rpt.) ¶¶ 11(j), 13(a), 13(d), 13(n), 29, 40, 96, 116, 190, 192, 216, 294, 296-297, 299, 304, 307-313, 329), as well as the partners' beliefs about the appraisal process (*see, e.g.*, *id.* ¶¶ 105-106, 231-233). And both Merrill and Pittinger seek to opine about the intent of Anadarko employees who were involved in the appraisal of Shenandoah. (*See, e.g.*, Ex. 20 (Merrill Rpt.) ¶¶ 24, 59, 61, 69, 71, 73, 84, 97; Ex. 22 (Pittinger Rpt.) ¶¶ 22, 36, 37, 38, 56, 68, 81, 97, 98, 101, 114, 166.)

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs disclosed their expert reports, including the expert reports of Merrill and Pittinger on November 9, 2022. Pittinger submitted a corrected report

3

on November 29, 2022. Merrill and Pittinger were deposed on December 7, 2022 and December 16, 2022, respectively.

## ARGUMENT

It is axiomatic that expert testimony must (1) be based on scientific, technical or other specialized knowledge and (2) assist the trier of fact in understanding the evidence or determining a fact in issue. Fed. R. Evid. 702; *Daubert*, 509 U.S. 579. Merrill's and Pittinger's testimony fails on both grounds and therefore should be excluded.

*First*, as the Supreme Court in *Daubert* made clear, the subject of an expert's opinion must be based on scientific knowledge. "The adjective 'scientific' implies a grounding in the methods and procedures of science." *Daubert*, 509 U.S. at 590. "Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Id.* Thus, "[w]hile an expert witness may draw inferences and reach conclusions, those inferences and conclusions must nevertheless . . . be based on scientific, technical, or specialized knowledge". *Retractable Techs., Inc. v. Abbott Laboratories, Inc.*, No. 5:05-CV-157, 2010 WL 11531436, at *5 (E.D. Tex. June 18, 2010). An expert's opinion based upon sheer speculation, guess or conjecture is inadmissible as unreliable and irrelevant. *See* Fed. R. Evid. 702 (expert testimony must be "the product of reliable principles and methods"); *see, e.g.*, *Hanak*, 2013 WL 12385017, at *6.

Merrill's and Pittinger's opinions about Defendants', Anadarko employees' and the partners' state of mind go far beyond their expertise. Their qualifications in geology or petroleum engineering do not qualify them to opine on what these individuals knew, believed or intended. Thus, any opinion on their knowledge, beliefs or intent would be pure speculation—as Merrill and Pittinger themselves repeatedly acknowledged during their depositions. (*See, e.g.*, Ex. 15 (Merrill Tr.) 76:2-77:11 (acknowledging that it would be speculation to say that Anadarko left the project because it was not commercial), 161:7-163:7 (stating that it would be "entirely speculation" to opine on why Defendant Leyendecker disagreed with certain technical interpretations); Ex. 16 (Pittinger Tr.) 79:24-80:14 (acknowledging that it was not "for [him] to opine on" what anyone at Anadarko knew about the influence of certain factors on Shenandoah's commercial viability), 243:24-245:15 (stating that opining on the meaning of Walker's email was "outside the scope of [his] report because it calls for speculation").)

This pure speculation lacks any grounding in science, technical or other specialized knowledge and should be excluded. *See Retractable Techs., Inc.*, 2010 WL 11531436, at *5 ("[T]he opinions of these witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise." (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004))); *see also Fletcher v. Allstate Tex. Lloyd's*, No. 1:21-CV-00269, 2022 WL 2980949, at *5 (E.D. Tex. July 25,

5

2022) (holding that an expert's "conclusion that [the defendant] 'intentionally' overlooked certain damages is inadmissible as speculation"); *Vaulting & Cash Servs., Inc. v. Diebold Inc.*, No. 97-3686, 1998 WL 726070, at *1 (E.D. La. Oct. 15, 1998) (excluding an expert's opinion because his "specialized knowledge will not assist the Court in ascertaining [the defendant's] intentions in terminating the subject agreement"), *aff'd sub nom. Vaulting & Cash Servs. v. Diebold*, 199 F.3d 440 (5th Cir. 1999).

*Second*, the jury is able to draw inferences from Anadarko's internal documents just as competently and effectively as any expert. "Whether the Defendants knew or should have known about [a] condition . . . is a matter that lay jurors can determine for themselves." *Jenkins v. Helmerich & Payne Int'l Drilling Co.*, 577 F. Supp. 3d 587, 597 (S.D. Tex. 2021). An expert may not opine on an individual's knowledge, beliefs or intent by "noting the instances in the record where the Defendants were apparently made aware of an issue", as the expert "has no special insight into whether the Defendants knew what was happening". *Id.*; *see, e.g.*, *Retractable Techs., Inc.*, 2010 WL 11531436, at *5-6 (excluding expert testimony about the company's "intentions or knowledge" based on the expert's review of documents, as the expert's testimony "has no basis in his body of expertise and describes 'lay matters which a jury is capable of understanding and deciding without the expert's help'"); *Fisher v. Halliburton*, No. H-05-1731, 2009 WL 5216949, at *3 (S.D. Tex. Dec. 21, 2009) (excluding expert affidavits about

6

the mental state of defendant company and its employees as they would "usurp the role of . . . the jury"). Relatedly, while experts can explain certain technical concepts, they cannot characterize documents to draw conclusions about someone's doubts, skepticism or enthusiasm, as the jury is capable of coming to its own conclusion on these issues. *See United States v. Vista Hospice Care, Inc.*, No. 3:07-cv-00604, 2016 WL 3449833, at *15 (N.D. Tex. June 20, 2016) (excluding testimony in which the expert "summarizes and describes documents" to conclude, for instance, that the defendant "appears to have put immense pressure on its employees", because the "characterizations would not be helpful to jurors, who are able [to] make their own determinations about what relevant documents show").

The reports of Plaintiffs' proffered scientific experts are rife with impermissible state-of-mind opinions. Pittinger opines on what he believes Anadarko's senior management knew, believed and understood during the Shenandoah appraisal process. As just one example, based on a single presentation, Pittinger opines that after obtaining the results of Shen-3, "Anadarko personnel and management *knew* that Shen was more likely than not commercially unviable". (Ex. 22 (Pittinger Rpt.) ¶¶ 13(d), 329.) He also extrapolates from emails that "senior management was *concerned* about the large difference in resource size" between the Exploration and Development teams' projections. (Ex. 22 (Pittinger Rpt.) ¶ 216; Ex. 123 (APC-00025540).)

Pittinger further opines that, after Shen-4, senior management "*understood* that Shen was not commercially viable" (Ex. 22 (Pittinger Rpt.) ¶ 11(j) (emphasis added)), "*kn[ew] with reasonable certainty* that the corporate PIR threshold rendered Shen commercially unviable" (*id.* (emphasis added)), and had "*substantial doubts*" and "*serious doubt*" about Shenandoah's commercial viability (*id.* ¶¶ 13(n), 299 (emphasis added); *see also id.* ¶ 329). He also opines that, "according to several internal documents", Anadarko senior management "shared" his own view that Shenandoah was uneconomic after Shen-4 (*id.* ¶ 299), and speculates that "[t]he significantly less attractive economics following Shen-4 likely impacted senior management's enthusiasm" (*id.* ¶ 304).

Pittinger likewise opines on what the Shenandoah partners knew and believed about Shenandoah. (*See, e.g.*, Ex. 22 (Pittinger Rpt.) ¶ 106 ("COP also indicated that Development needed to be present in future partner meetings targeting wells, apparently expressing frustration in Exploration's performance."), ¶ 231 ("Over time COP developed a more pessimistic view of Shen . . . ."), ¶ 233 ("On March 10, 2015, COP inquired . . . about an asset trade of COP's share of Shen for Anadarko's share of the Alpine asset in Alaska. Such a trade indicates that COP was interested in ridding itself of the Shen appraisal program, especially after COP expressed its concern over the commercial viability mentioned above.").)

8

Finally, both Pittinger and Merrill survey the emails in the record to provide a narrative of the internal disagreements between Anadarko's Exploration and Development teams, and then purport to interpret the emails in a way that characterizes the intent of employees.  For example, Pittinger and Merrill opine that employees on the Exploration team intentionally ignored data that supported a finding of faults in the Shenandoah prospect and censored employees who interpreted there to be faults based on the available data.  They do so by inappropriately characterizing the plain language in emails.  (*See, e.g.*, Ex. 20 (Merrill Rpt.) ¶ 59 (opining that an Exploration team member intended to convey that faulting was only a concern for the Development team in emphasizing the word "their" in discussing how faulting "impacts THEIR [Development's] forward planning"); Ex. 22 (Pittinger Rpt.) ¶ 56 (same); *see also* Ex. 122 (APC-00117333).)  Pittinger further opines that the Exploration team and Defendant Leyendecker "endeavored to stifle Development perspectives on faulting", (Ex. 22 (Pittinger Rpt.) ¶ 36), including by editing a Development presentation, which he claims "showed Exploration management censoring technical work on the most important risk impacting the Shen project" (*id.* ¶ 81; *see also id.* ¶ 166 ("Anadarko Exploration avoided and censored reasonable discussion of faulting and its impact.")).  Likewise, Pittinger opines that Leyendecker canceled a presentation that a member of the Development team was going to make to the entire company, which he claims "showed Leyendecker's efforts to censor technical opinions and

9

prevent open communication that ran counter to his preferred narrative, rather than the other way around". (*Id.* ¶ 114.)

Merrill's and Pittinger's improper testimony on these matters usurps the fundamental role of the jury. While Plaintiffs may make their own arguments regarding Defendants', Anadarko employees' and the partners' knowledge, beliefs and intent, they may not use their experts to lend an air of legitimacy to support those arguments.

\* \* \*

"[T]he expert witness must 'bring to the jury more than the lawyers can offer in argument.'" *Vaulting & Cash Servs., Inc.*, 1998 WL 726070, at \*1 (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)). Merrill's and Pittinger's testimony on Defendants', Anadarko employees' and the partners' state of mind does not. Accordingly, the Court should exclude Plaintiffs' proffered expert testimony and prohibit Merrill and Pittinger from offering state-of-mind opinions at trial.

10

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude any testimony from Plaintiffs' experts Merrill and Pittinger opining on the state of mind of Defendants, other Anadarko employees and the partners.

Dated:  March 16, 2023    Respectfully submitted,

/s/ *Kevin J. Orsini*
**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Benjamin Gruenstein (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
bgruenstein@cravath.com
lrosenberg@cravath.com


**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

11

## CERTIFICATE OF CONFERENCE

In accordance with Rule 17(a) of Your Honor's Court Procedures, I hereby certify that counsel for Defendants conferred with Plaintiffs' counsel regarding this Motion on March 15, 2023. Counsel for Plaintiffs have advised that Plaintiffs oppose this Motion.

Dated: March 16, 2023

/s/ Kevin J. Orsini
Kevin J. Orsini

**CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 2,311 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: March 16, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## **CERTIFICATE OF SERVICE**

I certify that on March 16, 2023 I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: March 16, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini
