UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

**DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' DAMAGES EXPERT, BJORN I. STEINHOLT**

# TABLE OF CONTENTS

                                                                                                           **Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

NATURE AND STAGE OF THE PROCEEDING ................................................. 3

STATEMENT OF ISSUES ..................................................................................... 3

FACTUAL BACKGROUND .................................................................................. 3

APPLICABLE LEGAL STANDARDS .................................................................. 5

ARGUMENT ........................................................................................................... 5

CONCLUSION ........................................................................................................ 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ...................................................................................................3, 5

*Diggs v. Citigroup, Inc.*,
   551 Fed. Appx. 762 (5th Cir. 2014) ..................................................................................1

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016) ..............................................................................................5

*Knight v. Kirby Inland Marine Inc.*,
   482 F.3d 347 (5th Cir. 2007) .............................................................................................5

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ..........................................................................................................5

**Statutes & Rules**

Fed. R. Evid. 702 ...................................................................................................................3, 5

**PRELIMINARY STATEMENT**

Plaintiffs seek to offer a damages opinion through the expert testimony of Bjorn I. Steinholt. At the class certification stage, Steinholt denied that Plaintiffs sought to recover for "materialization of the risk" that Shenandoah would become not commercially viable, insisting that this risk had already materialized at the start of the Class Period, from February 20, 2015 to May 2, 2017, and that he could model the alleged damages accordingly. (ECF No. 96.1 ¶ 9; ECF No. 141 at 12-14.) Plaintiffs presented that view to this Court, which agreed that Plaintiffs do not "assert that Defendants underrepresented an *unrealized* risk. [They] instead assert[] that certain risks had *in fact* materialized, yet Defendants actively misled investors to the contrary." (*Id.* at 13.)

Steinholt has since submitted his expert report, in which he provides his damages opinion. Consistent with his prior representations, he proposes a methodology that assumes constant inflation throughout the Class Period, with a minor increase in the middle due to Anadarko's increase in its working interest from 30% to 33% on July 27, 2016. However, his methodology is unreliable because it "does not apply to the specific facts of the case". *Diggs v. Citigroup, Inc.*, 551 F. App'x 762, 765 (5th Cir. 2014).

Steinholt's assumption that the price inflation remained constant conflicts with the opinion of another of Plaintiffs' experts, petroleum engineer Lyndon Pittinger. Pittinger opines that the commercial viability of Shenandoah *decreased* during the Class Period. Specifically, he opines that as of roughly one month after

the start of the Class Period, it was "more likely than not" that Shenandoah was not commercially viable. (Ex. 22 (Expert Report of L. Pittinger (hereinafter, "Pittinger Rpt.")) ¶ 11(h).) He further opines that after December 31, 2015, approximately 10 months into the Class Period, Shenandoah was *not* commercially viable. (*Id.* ¶ 11(j).) This is not merely a semantic difference. As Steinholt's deposition testimony confirms, according to Pittinger, Shenandoah could have had a probability of being up to 50% commercially viable prior to December 2015, at which point it allegedly became non-viable. (*See* Ex. 17 (Steinholt Deposition Transcript, dated December 21, 2022 (hereinafter, "Steinholt Tr., Dec. 21, 2022")) 52:7-53:4.) Thus, according to Plaintiffs' own expert, shareholders who bought Anadarko stock during this early part of the Class Period did so when there was a less-than-certain risk that Shenandoah would be non-commercial, whereas other stockholders who purchased later in the Class Period allegedly did so when it was *certain* the project was not commercially viable.

Those are different levels of risk, and any appropriate damages model must account for how those differences would impact the overall pattern of inflation. Or, stated differently, if the risk that Shenandoah would not be commercially viable changed over the Class Period (as Pittinger opines), the value of Shenandoah to investors must also have changed and, correspondingly, the alleged inflation in the stock price. In fact, Steinholt has not conducted any analysis to support the illogical premise that investors would have paid exactly the same regardless of whether they

purchased when it was allegedly *certain* that the project was doomed as compared to whether they purchased when it was only *likely* that the project was doomed. Steinholt fails, entirely, to account for this when he assumes constant inflation, and his methodology therefore does not fit the facts of the case that Plaintiffs themselves assert. Accordingly, his opinion should be excluded.

## NATURE AND STAGE OF THE PROCEEDING

On November 9, 2022, Plaintiffs disclosed Steinholt's expert report on loss causation and damages. (Ex. 21 (hereinafter, "Steinholt Rpt.").) On January 25, 2023, Plaintiffs disclosed an expert rebuttal report by Steinholt, which purports to respond to the opinions of Defendants' industry expert, Peter Keller. Steinholt was deposed with respect to these reports on December 21, 2022 and March 13, 2023.

## STATEMENT OF ISSUE

1.  Whether Steinholt's loss causation and damages opinion should be excluded under Federal Rule of Evidence 702 and *Daubert* because it does not reliably apply his methodology to the factual conclusions reached by another of Plaintiffs' experts.

## FACTUAL BACKGROUND

Plaintiffs allege that "Defendants engaged in a fraudulent scheme by multiple methods and means and made misleading statements during the Class Period that concealed the alleged truth – the lack of commercial viability of the Shenandoah project". (*Id.* ¶ 27.) Plaintiffs contend, and Steinholt's damages model assumes, that "the alleged truth, *i.e.*, the lack of commercial viability of the Shenandoah project, was disclosed after the market had closed on May 2, 2017, as part of the

3

Company's 1Q2017 announcement, including the suspension of appraisal activities in the Shenandoah and the associated $902 million write-off and expenses". (*Id.* ¶ 29.)

Steinholt's damages model is based on the drop in Anadarko's stock on May 3, 2017, immediately after the alleged truth was revealed, and the assumption that the residual decline on that day accurately quantifies the price impact of any alleged fraud for the entirety of the Class Period. Specifically, Steinholt ran a regression model focusing on May 3, 2017, and opines that the residual return of -3.42% reflects the fraud-related impact of the revelation of the alleged truth. (*Id.* ¶¶ 105-06.) Next, Steinholt derived a per-dollar inflation amount from the -3.42% residual return. The inflation is meant to reflect the difference between the stock price and the true value reflecting the alleged truth. (*Id.* ¶ 103.) Steinholt assumes that the inflation is constant for the entire Class Period notwithstanding changes in the information Anadarko obtained and processed about the Shenandoah appraisal over the course of the Class Period as well as other factors, such as the price of oil, and the alleged misstatements by Anadarko. Steinholt estimates the inflation to be $1.75 per share from February 21, 2015, to July 26, 2016, and $1.92 per share from July 27, 2016, to May 2, 2017. (*Id.* ¶ 14(d).) The increase in the second half of the Class Period is based on Anadarko's acquiring an additional 3% interest in Shenandoah on July 27, 2016. (*Id.* ¶ 106.)

4

## APPLICABLE LEGAL STANDARDS

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on district courts to ensure that proffered expert testimony is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-50 (1999). Expert testimony is admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case". Fed. R. Evid. 702. The Fifth Circuit has further explained that "[r]eliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid'" and "[r]elevance depends upon 'whether [that] reasoning or methodology properly can be applied to the facts in issue'". *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 589, 593).

## ARGUMENT

In a 10b-5 damages model, "a key question [is] how that inflation entered the stock or, more aptly, *when*". *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 255 (2d Cir. 2016). Steinholt assumes that all of the inflation entered at the beginning of the Class Period—and all at once. Specifically, according to Steinholt, the artificial inflation entered on February 21, 2015 "following the first misrepresentation, which was the filing of the 10-K. At that point in time, that's when you get an inflation,

which is the difference between the stock price and the true value reflecting the alleged truth." (Ex. 17 (Steinholt Tr., Dec. 21, 2022) 66:7-21.) Although Plaintiffs allege subsequent misstatements, under Steinholt's damages model, those later alleged misstatements do not "add to the inflation", but simply maintain it. (*Id.* 70:13-21.) Indeed, Steinholt opines that "inflation during the Class Period is flat, except for one step up" when Anadarko increased its working interest in the project. (*Id.* 71:13-72:21.) Steinholt's damages model is premised on the notion that all of the inflation—the difference between the stock price and the true value reflecting "the alleged truth, *i.e.*, the lack of commercial viability of the Shenandoah project, [which] was disclosed after the market had closed on May 2, 2017"—entered the stock price all at once and all at the outset of the Class Period.

As discussed in Defendants' motion for summary judgment, Plaintiffs' theory of the case is that Defendants knew but failed to disclose that Shenandoah was not commercially viable, rendering other statements they made about Shenandoah false or misleading. While Plaintiffs look to their engineering expert, Lyndon Pittinger, to support their conclusion that Shenandoah was not commercially viable during the Class Period, Pittinger does not go so far as to support that position for the *entire* duration of the Class Period. Accordingly, Plaintiffs' theory, and in turn Steinholt's methodology, are inconsistent with the facts of the case given that Plaintiffs' own expert does not espouse the view that Shenandoah was not commercially viable for the entirety of the Class Period.

*First*, Pittinger has proffered the opinion that from April 2015—over one month after the start of the Class Period—it was "more likely than not that Shen was commercially unviable". (Ex. 22 (Pittinger Rpt.) ¶ 11(h).) Even putting aside the one-month difference between the start of the Class Period and April 2015, Pittinger does not opine that Shenandoah was *not* commercially viable at this time, but rather that it was "more likely than not" the case. (*Id*.) At his deposition last week, Steinholt testified that the "more likely that not" modifier allowed for the possibility that Shenandoah had a 40% likelihood of commercial viability. (Ex. 120 (Steinholt Deposition Transcript, date March 13, 2023 (hereinafter, "Steinholt Tr., Mar. 13, 2023")) 217:10-219:5.)

*Second*, Pittinger testified that "[a]fter Shen-4, and by December 31, 2015, Anadarko senior management understood that Shen was not commercially viable". (Ex. 22 (Pittinger Rpt.) ¶ 11(j); *see also id.* ¶ 329 (opining that "Anadarko personnel and management knew that Shen was probably commercially unviable following Shen-3" and "it was known *with reasonable certainty* that the corporate PIR threshold rendered Shen commercially unviable at that time") (emphasis added)). Steinholt testified that he understood this to mean that Shenandoah "certainly was not commercially viable" at this point. (Ex. 17 (Steinholt Tr., Dec. 21, 2022) 52:10-22, 53:5-12.) He further testified that he recognized that meant that there was a reduction in commercial viability in the first part of the Class Period. (Ex. 120 (Steinholt Tr., Mar. 13, 2023) 227:21-228:19 ("Q. But would you agree that 'was

7

not commercially viable' is a lower likelihood of commercial viability than 'unlikely to be commercially viable'? A. I think the text -- I think it speaks for itself. I mean, not being commercially viable is different than whatever the term was, more likely than not uncommercial. . . . Q. And it's different in the sense that it's a lower likelihood of commercial viability, when you say 'was not commercially viable.' Right? . . . A. Yes, I mean, very bad went to worse, yes. I mean, it's not -- but, you know.").)

As Steinholt acknowledges, "the value of an investment is based on the expected future cash flows of that investment, including the timing and *associated risk* of those cash flows". (Ex. 21 (Steinholt Rpt.) ¶ 3 n.1 (emphasis added).) The "riskier the investment is, the less valuable a dollar five years from now would be" from the perspective of an investor. (Ex. 120 (Steinholt Tr., Mar. 13, 2023) 159:1-7.) It must be the case that as the risk that Shenandoah would not be commercially viable changed (as Pittinger opines), the value of Shenandoah changed and, correspondingly, the alleged inflation in the stock price.

Accordingly, Steinholt's damages methodology is at odds with Pittinger, given that his methodology assumes constant inflation as opposed to a reduction in the commercial viability over the course of the Class Period. Critically, Steinholt does not account for the change in commercial viability that Pittinger identifies, and thus his methodology has the effect of inflating damages for class members who purchased Anadarko stock earlier in the Class Period.

8

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the damages testimony of Plaintiffs' proffered expert Bjorn I. Steinholt.

Dated: March 16, 2023    Respectfully submitted,

*/s/ Kevin J. Orsini*
**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Benjamin Gruenstein (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
bgruenstein@cravath.com
lrosenberg@cravath.com


**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

10

## CERTIFICATE OF CONFERENCE

In accordance with Rule 17(a) of Your Honor's Court Procedures, I hereby certify that counsel for Defendants conferred with Plaintiffs' counsel regarding this Motion on March 15, 2023. Counsel for Plaintiffs have advised that Plaintiffs oppose this Motion.

Dated: March 16, 2023

                                                */s/ Kevin J. Orsini*
                                                Kevin J. Orsini

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 2,063 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: March 16, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## **CERTIFICATE OF SERVICE**

I certify that on March 16, 2023, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: March 16, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini
