United States District Court
Southern District of Texas
**ENTERED**
March 31, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § CIVIL ACTION NO<br>§ 4:20-cv-00576<br>§<br>§<br>§ JUDGE CHARLES ESKRIDGE<br>§<br>§<br>§<br>§ |

**OPINION AND ORDER
COMPELLING PRODUCTION OF DOCUMENTS**

The motion to compel by Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund, Iron Workers Local #580 Joint Funds is granted. Dkt 122; see also Dkt 115 (prior under seal filing).

1. Background

Defendant Anadarko Petroleum Corporation was a large oil and gas exploration company until Occidental Petroleum Corporation acquired it in August 2019. Dkt 55 at ¶ 2. At issue in this action is a whistleblower complaint submitted to the SEC on May 9, 2016. Senior Reservoir Engineer Lea S. Frye there made allegations regarding the Shenandoah oil field project, a deepwater asset in the Gulf of Mexico. Dkt 55 at ¶¶ 4–5. Frye alleged that Anadarko originally overstated the potential of the project to investors but didn't correct those projections when it became clear that the project was less than half the size previously stated. Id at ¶ 10; see also *Frye v Anadarko Petroleum Corp,* 953 F3d 285, 288 (5th Cir 2019).

The Anadarko Audit Committee (known as *the AAC*) hired Norton Rose Fulbright US LLP to conduct an internal investigation in response to these allegations.

Norton Rose engaged with three entities regarding its internal investigation—the US Securities and Exchange Commission, KPMG LLP (as Anadarko's auditor), and JP Morgan Securities LLC (as underwriter). Dkt 122 at 8; see also Dkt 125-6 at 1. Anadarko acknowledges that (i) Norton Rose and the AAC periodically updated KPMG on the status of the investigation, (ii) the AAC produced documents to the SEC in response to requests, (iii) Norton Rose presented its findings to the SEC in November 2016, and (iv) Anadarko provided JP Morgan with information regarding the investigation in advance of the September 2016 offering of Anadarko common stock. Dkt 122 at 8–9.

Pertinent here, Norfolk County Council alleges that Norton Rose "previewed with KPMG the materials they intended to present to the SEC"; "granted KPMG full access" to the presentation; and held a Q&A with KPMG. KPMG wasn't permitted to retain a copy. Norton Rose also "provided detailed information to KPMG on a dozen conference calls, including witness interviews and Anadarko's internal documents." Ibid.

Also pertinent is allegation that Norton Rose made a PowerPoint presentation to the SEC, "which spanned 250 pages and lasted more than 4.5 hours, including a Q&A session." This allegedly included information from 55 witness interviews and review of internal Anadarko documents. Id at 19–20. Norfolk County Council alleges that Norton Rose at this meeting "revealed detailed information about the investigation" and then "stayed in touch with the SEC's Fort Worth office, providing select documents and revealing details about the investigation." Id at 8–9. The presentation given to the SEC was marked "Attorney-Client Communication and Attorney Work Product." Dkt 122-4.

Finally pertinent is allegation that Anadarko's general counsel held a conference call with JP Morgan's counsel "to discuss 'in detail' the status of the investigation and NRF's preliminary 'findings.'" Dkt 122 at 8.

The SEC sent a termination letter when it concluded its investigation. This letter stated in relevant part:

2

> *[B]ased on the information we have as of this date,* we do not intend to recommend an enforcement action by the Commission against Anadarko . . . the notice must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation.

Dkt 122-5 (citation omitted, emphasis added). At the deposition of one proposed class representative, counsel to Anadarko showed the SEC termination letter to the deponent and asked, "Does that change your view as to *any* of the allegations in Iron Workers' complaint?" Dkt 122-6 at 3 (emphasis added). At the deposition of another, counsel showed the letter and asked, "Do you understand this letter to be an indication that the SEC has upheld the whistleblower claims against Anadarko?" Dkt 122-7.

Norfolk County Council served document requests and subpoenas "concerning the whistleblower complaint and, relatedly, the AAC 'investigation.'" Dkt 122 at 9–10. Anadarko produced certain documents, while withholding or redacting over five hundred documents upon assertion of privilege. Id at 6. Various non-party AAC members also withheld an additional thirty-six documents upon assertion of privilege. Id at 14; Dkt 172 at 2 (later filing, clarifying documents remaining at issue).

Pending is a motion by Norfolk County Council to compel production of documents concerning the AAC's investigation. Dkt 122; see also Dkt 167 (hearing).

### 2. Legal standard

The scope of discovery is broad. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Even so, a party may not typically discover confidential communications between an attorney and client due to the attorney-client privilege, or "documents and tangible things that are

3

prepared in anticipation of litigation or for trial" due to the work-product doctrine. FRCP 26(b)(3)(A); *Upjohn Co v United States*, 449 US 383, 395–96 (1981); *United States v El Paso Co,* 682 F2d 530, 542 (5th Cir 1982).

A party may move for an order compelling production when the opposing party has failed to produce requested documents. FRCP 37(a)(3)(B)(iv). A court "may decline to compel, and, at its option or on motion, 'may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden . . ., including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure to discovery to certain matters." *Crosswhite v Lexington Insurance Co*, 321 F Appx 365, 368 (5th Cir 2009). A district court has "broad discretion" in this regard.

### 3. Analysis

Norfolk County Council contends that the documents related to the AAC investigation are protected by neither the attorney-client privilege nor the work-product privilege because disclosure to third parties waived any privilege that potentially existed. Dkt 122 at 1–2. Anadarko argues that no such waiver occurred. Dkt 124 at 12.

Over five hundred documents are at issue. Some have been produced with redactions. Some have been withheld entirely. But review of each and every document isn't necessary at this juncture to determine which claims of privilege might have been properly asserted. It is instead here determined that Anadarko has used privilege as both a sword and a shield, thus likely waiving privilege as to the entire subject matter of the AAC investigation. Later dispute as to any particular document may be submitted to the extent not already resolved by this ruling.

#### a. Waiver of privilege

Attorney-client privilege is waived when "any significant portion of a confidential communication" is disclosed. *Nguyen v Excel Corp*, 197 F3d 200, 208 (5th Cir 1999). "The confidentiality of a client's communications may be compromised either through the publication of

evidence of the communications themselves or through the publication of evidence of attorney statements or documents that disclose the client's confidential communications." *Industrial Clearinghouse, Inc v Browning Manufacturing Division of Emerson Electric Co*, 953 F2d 1004, 1007 (5th Cir 1992). The party asserting the privilege bears the burden of proof as to lack of waiver. *Robinson v Texas Automobile Dealers Association*, 214 FRD 432, 438 (ED Tex 2003).

Work-product protection "exists to promote the adversary system by safeguarding the fruits of an attorney's trial preparation," and thus "the mere disclosure to a third person is insufficient in itself to waive the work product privilege." *Shields v Sturm, Ruger & Co*, 864 F2d 379, 382 (5th Cir 1989) (cleaned up). But waiver does occur when a disclosure has "substantially increased the opportunities for potential adversaries to obtain the information." *Ecuadorian Plaintiffs v Chevron Corp*, 619 F3d 373, 378 (5th Cir 2010) (internal quotation marks omitted). The party asserting waiver of the work-product privilege bears the burden of proving such waiver. *SEC v Brady*, 238 FRD 429, 444 (ND Tex 2006).

Important here is the concept of waiver of privilege due to use of privileged information as both *a sword and a shield*. The Fifth Circuit holds that "when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy v Administrative Review Board*, 423 F3d 483, 497 (5th Cir 2005); see also *Liberty Mutual Insurance Co v Tedford*, 644 F Supp 2d 753, 764 (ND Miss 2009) (concluding work-product privilege also waived by sword-and-shield use).

A respected treatise on federal procedure notes that use of privilege as a sword occurs when "a party put[s] privileged matter in issue as evidence in a case." 8 Federal Practice & Procedure § 2016.3 (3d ed). This is most stark "when the privilege-holder intends to use the exact material now withheld as evidence," but "it also applies in

5

situations where the privilege-holder seeks to use some protected material as evidence but asserts privilege to withhold other related material from disclosure." Ibid. The result is that the party "thereby waives the privilege as to all related privileged matters on the same subject." Ibid. The Fifth Circuit thus holds that waiver occurs when a party puts information protected by privilege in issue "by some affirmative act" to its own benefit, for "to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *In re Itron, Incorporated*, 883 F3d 553, 564 (5th Cir 2018).

But what is it that puts a matter *in issue* for such purposes? It generally means that a party injects "the contents of a privileged communication . . . into litigation either by making the content of the communications a factual basis of a claim or defense or by disclosing the communication itself." Id at n 4, quoting *Ross v City of Memphis*, 423 F3d 596, 604–05 & n 5 (6th Cir 2005).

Several examples clarify how a party may put a matter in issue such that waiver of privilege may occur. One is *advice of counsel*. For example, a party chooses to defend itself through an assertion relating to advice of counsel—but with privilege asserted to prevent the opponent from knowing information about the validity of counsel's advice, such as "why the advice [is] given, what other alternatives were looked at, [and] why certain advice was rejected." *Doe 1 v Baylor University*, 335 FRD 476, 498 (WD Tex 2020) (quotation marks omitted), quoting *In re Fresh & Process Potatoes Antitrust Litigation*, 2014 WL 1413676, *6 (D Idaho). In such circumstances, "it would be patently unfair" to "deprive the opponent of the opportunity to understand" what undergirds the advice given. Ibid.

Another is *employer reliance on investigation*. For example, when an employer "defends itself by relying upon an investigation to demonstrate its response . . . was reasonable, the adequacy of the employer's investigation becomes critical to the issue of liability." Id at 498 (quotation marks and emphasis omitted), quoting *Musa-Muaremi v Florists' Transworld Delivery, Inc*, 270 FRD

6

312, 319 (ND Ill 2010) and *Pray v New York City Ballet Co*, 1997 WL 266980, *3 (SD NY). In such circumstances, when the employer "relies on remedial actions it took as a result of the investigation, the advice it received and whether it followed that advice is in issue." Ibid. A party then cannot "rely on [an] investigation as a defense and shield this information from plaintiffs merely because their investigators happen to be attorneys." *Pray*, 1997 WL 266980 at *3.

*Doe 1 v Baylor*, cited above, is instructive. Baylor University there hired the law firm of Pepper Hamilton LLP to conduct an independent investigation as to Baylor's institutional responses to Title IX and related compliance issues. Pepper Hamilton subsequently made recommendations to the Baylor Board of Regents. 335 FRD at 476–83. Baylor later sought in litigation to demonstrate that it responded properly by adopting the recommendations, pointing to the actions it took—but asserting privilege to shield the advice given by its lawyers. Id at 495. The court found waiver, stating, "Baylor wants to dramatically restrict the discovery of facts in this case by restricting discovery of Pepper Hamilton's work, but Baylor still wants to get the benefit of relying on the investigation and reforms that Pepper Hamilton carried out." Id at 496.

So, too, here. Anadarko seeks to rely on the SEC's termination letter to indicate that the whistleblower's allegations were unfounded or false because the information uncovered upon investigation, when presented to the SEC, resulted in it choosing *not* to pursue an enforcement action. But Anadarko at the same time wants to shield the underlying information that went into that decision by the SEC—or that potentially was withheld from it. To the contrary, Anadarko can't separate the *result* of the SEC investigation from the facts and representations by attorneys that went *into* that investigation. And this quite naturally extends to and encompasses—in terms of both fairness and completeness—what Anadarko chose *not* to present to the SEC.

7

Such sword-and-shield use is apparent here. Defense counsel in depositions placed the SEC's termination letter in front of a class representative and asked if it changed the view of the class member as to *any* allegations in the complaint: "Does that change your view as to any of the allegations in Iron Workers' complaint?" Dkt 122-6 at 3. This was a voluntary choice to put in issue the privileged matters underlying the internal investigation conducted by Norton Rose on behalf of the AAC.

Simply put, Anadarko can't now selectively withhold documents and defend itself through such use of the SEC's termination letter, while simultaneously restricting Norfolk County Council's access to the underlying facts that the SEC relied upon and which Norton Rose presented—or chose to withhold. This means that both attorney-client privilege and work-product privilege have been waived.

### b. Scope of the waiver

Rule 502(a) of the Federal Rules of Evidence addresses the scope of waiver as to attorney-client privilege and work-product protection. It provides that waiver only extends to undisclosed communication if (i) "the waiver is intentional," (ii) "the disclosed and undisclosed communications or information concern the same subject matter," and (iii) "they ought in fairness to be considered together." Further, the disclosure "of any significant portion of a confidential communication" is sufficient to "waive[ ] the privilege as to the whole." *Nguyen*, 197 F3d at 208. Subject-matter waiver of this sort under Rule 502(a) is limited "to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Federal Rule of Evidence 502(a) Advisory Committee's Note. Circumstances in which courts have found subject-matter waiver include situations when selective disclosure would lead to an "inequitable result," one side would hold a tactical advantage without such waiver, and where a client is afforded an adversarial gain. *RLIS, Inc v Cerner Corp*, 2014 WL 12599509, at *1 (SD Tex), citing *In re Echostar Communications Corp*, 448

F3d 1294, 1301 (Fed Cir 2006); *Oasis International Waters, Inc v United States*, 110 Fed Cl 87 (2013); *Yankee Atomic Electric Co v United States*, 54 Fed Cl 306, 316 (2002).

The record establishes that a significant portion of confidential communications between Norton Rose and Anadarko was apparently revealed to the SEC, KPMG, and JP Morgan. Also in consideration is Anadarko's use of privilege as a sword and a shield, as discussed above. Fairness thus dictates that waiver extend to the entire subject matter of the AAC investigation.

Even so, legitimate disputes may exist about specific documents that assertedly wouldn't fall under this waiver. Defendants request—if, as here, waiver is found—that "the parties meet and confer to determine which documents fall within the scope of the waiver," and that (depending upon the quantity left at issue) appointment of a Special Master may be appropriate, with costs to be shifted away from the prevailing party. See Dkt 124 at 26.

This is an appropriate incremental step forward. The parties will be ordered to confer further.

### 4. Conclusion

The motion to compel by Norfolk County Council is GRANTED. Dkt 122.

The prior version filed under seal is TERMINATED AS MOOT. Dkt 115.

The parties are ORDERED to confer in good faith about the scope of the waiver found by this Order. When ready, they should submit a joint report (i) specifying the quantity of documents at issue; (ii) whether review of the documents, along with other, further inquiry that may be necessary, should proceed before a special master; and (iii) if so, views on how any such appointment should proceed and on what terms.

SO ORDERED.

Signed on March 31, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge