# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

## DEFENDANTS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT D. PAUL REGAN

# Table of Contents

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF ISSUES ...................................................................................... 2

APPLICABLE LEGAL STANDARDS ................................................................... 2

FACTUAL BACKGROUND .................................................................................... 4

NATURE AND STAGE OF THE PROCEEDINGS ............................................... 5

ARGUMENT .............................................................................................................. 5

I.      Regan's Opinion About the Proper Accounting Standards Governing the
        Treatment of Shen-3 Should Be Excluded As Irrelevant and Unreliable
        Because It Relies on Superseded GAAP ................................................... 6

II.     Regan's Opinion That Anadarko's Alleged Accounting Errors Were
        Material to Its Financial Statements Should Be Excluded Because it Is Not
        Relevant and Will Confuse the Jury. ...................................................... 10

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Binh Hoa Le v. Exeter Fin. Corp.*, No. 3:15-CV-3839, 2019 WL
  1436375 (N.D. Tex. Mar. 31, 2019)...................................................................7

*Caballero v. Archer*, No. SA:04-CV-561, 2007 WL 9702868 (W.D.
  Tex. Feb. 1, 2007)............................................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)..........1, 2, 3, 7

*Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1 (1st Cir. 2006)...........................9

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992).........................................................12

*Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007) ......................2, 3

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...............................................2

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998) ...................................2

*Poole-Ward v. Affiliates for Women's Health, P.A.*, 329 F.R.D. 156
  (S.D. Tex. 2018) ...............................................................................................3

*SEC v. Life Partners Holdings, Inc.*, No. 1-12-CV-00033,
  2013 WL 12076933 (W.D. Tex. Oct. 23, 2013) ...........................................4, 9

*SEC v. Mudd*, 11 CIV. 9202, 2016 WL 2593980 (S.D.N.Y. May 4,
  2016)................................................................................................................11

*Slaughter v. S. Talc Co.*, 980 F.2d 304 (5th Cir. 1990) ...........................................4

*Vargas v. Lee*, 317 F.3d 498 (5th Cir. 2003) .......................................................3, 7

*Vitterbo v. Dow Chem.*, 826 F.2d 420 (5th Cir. 1987)..............................................4

*Weiser–Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801
  F.3d 512 (5th Cir. 2015) ...................................................................................3

**Statutes & Rules**

Fed. R. Evid. 702 ................................................................................................1, 2

**Other Authorities**

ASC 105 ...................................................................................................7, 8

ASC 932 ...................................................................................................1, 8

FAS 19 ..................................................................................................1, 8, 9

SAB 99 .................................................................................................. passim

**PRELIMINARY STATEMENT**

Plaintiffs seek to have D. Paul Regan testify as an accounting expert. Regan presents several opinions, including that Anadarko improperly suspended costs associated with one of its appraisal wells at Shenandoah ("Shen-3") and failed to impair and expense the costs associated with the project as a whole. He seeks to opine further that, as a result, Anadarko's financial statements were materially misstated.

Regan's testimony should be partially excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *First*, Regan's opinion that Anadarko erred by suspending Shen-3 costs should be precluded because it is irrelevant to the issues in this case and is premised on a non-authoritative, superseded standard that was not part of Generally Accepted Accounting Principles ("GAAP") at the time of the accounting decision. Specifically, Regan relies on Financial Accounting Standard 19 ("FAS 19"), which was superseded in 2009 by the codification of Accounting Standards Codification ("ASC") 932. *Second*, Regan's opinions about the materiality of Anadarko's alleged accounting errors to Anadarko's financial statements based on SEC Staff Accounting Bullet Number 99 ("SAB 99"), both with respect to Shen-3 and the Shenandoah project as a whole, are irrelevant and likely to confuse the jury. For these reasons, the Court should exclude the testimony of Regan on these issues.

## STATEMENT OF ISSUES

1. Whether Regan's testimony that Anadarko committed an accounting error in suspending well costs related to Shen-3 should be excluded under Federal Rule of Evidence 702 and *Daubert* as irrelevant and unreliable, because the Shen-3 accounting treatment is not an alleged misstatement and because Regan's opinion is based in part on FAS-19, which was superseded by the codification of GAAP.

2. Whether Regan's testimony that the alleged accounting errors were "material" under SAB 99 should be excluded under Federal Rule of Evidence 702 and *Daubert* because it will not assist the trier of fact in assessing materiality under the securities laws and will confuse the jury.

## APPLICABLE LEGAL STANDARDS

Expert testimony is admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case". Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on district courts to ensure that proffered expert testimony is both relevant and reliable.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).

A party seeking to introduce expert testimony "must prove by a preponderance of the evidence that the testimony is reliable".  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  "Reliability is determined by

assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93). The Supreme Court in *Daubert* set forth a non-exhaustive list of factors that may be considered by a district court when determining whether proffered expert testimony is sufficiently reliable. "These factors include whether the theory or technique that forms the basis of the expert's testimony: (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a high known or potential rate of error and standards controlling its operation; and (4) is generally accepted within the relevant scientific or technical community." *Vargas v. Lee*, 317 F.3d 498, 500 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 593-94). If any step in the expert's analysis is unreliable, the entire testimony is inadmissible. *Knight*, 482 F.3d at 355 ("The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." (citation omitted)).

"Relevance depends upon 'whether [the proffered expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Id.* at 352 (quoting *Daubert*, 509 U.S. at 593). Expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue". *Poole-Ward v. Affiliates for Women's Health, P.A.*, 329 F.R.D. 156, 167 (S.D. Tex. 2018) (quoting *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015)). "Where proffered testimony will not 'actually assist the jury in

arriving at an intelligent and sound verdict,' or will only serve to confuse or mislead the jury, the Court is obligated to assume its role as the gatekeeper and prevent the testimony from being presented." *SEC v. Life Partners Holdings, Inc.*, No. 1-12-CV-00033, 2013 WL 12076933, at *2 (W.D. Tex. Oct. 23, 2013) (first quoting *Slaughter v. S. Talc Co.*, 980 F.2d 304, 306 (5th Cir. 1990); and then quoting *Vitterbo v. Dow Chem.*, 826 F.2d 420, 422 (5th Cir. 1987)).

## FACTUAL BACKGROUND

Regan, a Certified Public Accountant, offers three opinions that are relevant to this motion. *First*, Regan, relying on FAS-19—a superseded standard—opines that Anadarko improperly suspended Shen-3 costs between December 31, 2014 and June 30, 2015. (Ex. 19 (Expert Report of D. Paul Regan (hereinafter, "Regan Rpt.")) ¶ 11(a).) To "suspend" costs means to temporarily capitalize those costs pending a determination of whether to record those costs as an asset or an expense. (*See id.* ¶ 48; Ex. 121 (Expert Report of J. Richard Dietrich (hereinafter, "Dietrich Rpt.")) ¶ 19 n.36.) *Second*, Regan opines—based on the assumption that Anadarko had substantial doubt that Shenandoah would be economically viable as of December 31, 2015—that Anadarko failed to properly expense Shenandoah project-related exploration well costs and non-producing leasehold costs. (Ex. 19 (Regan Rpt.) ¶¶ 2, 11(e).) *Third*, Regan opines that these accounting errors, as well as other "disclosure omissions", were material to Anadarko's financial statements under SAB 99. (*Id.* ¶ 11(g).)

4

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs disclosed their expert reports, including Regan's report, on November 9, 2022.  Regan was deposed on January 20, 2023.

## ARGUMENT

Regan offers opinions about the proper accounting treatment of Shen-3 and the Shenandoah project that should be excluded in part on the basis that they are unreliable, irrelevant and will confuse the jury.

*First*, Regan opines that Anadarko improperly suspended Shen-3 costs between December 31, 2014 and June 30, 2015.  That opinion should be excluded because it has no bearing on the issues in the case, as the accounting treatment for Shen-3 is not even included as an alleged misstatement in Plaintiffs' Amended Complaint.  Even if it were relevant, it should be excluded as unreliable because it is based on a superseded standard that was not GAAP at the time of the accounting determination.

*Second*, Regan opines as to the "materiality" of this purported error, as well as another purported error in failing to impair and expense assets associated with the Shenandoah project more generally, to Anadarko's financial statements during the Class Period.  Defendants do not dispute that Regan can opine on the proper accounting treatment of Shenandoah based on his assumption that Shenandoah was not commercially viable.  However, Regan's materiality analysis is based on SAB 99—the SEC's guidance on factors that companies and auditors may

5

consider in deciding materiality of a company's financials. The SAB 99 standard is different from materiality under the securities laws in important ways. Regan's testimony about materiality will confuse, not assist, the trier of fact in assessing the materiality of any alleged misrepresentation. Furthermore, Regan's materiality opinion covers not only "accounting errors" but also "disclosure omissions", about which he is clearly not qualified to opine.

I.      **Regan's Opinion About the Proper Accounting Standards Governing the Treatment of Shen-3 Should Be Excluded As Irrelevant and Unreliable Because It Relies on Superseded GAAP**

Regan's opinion that Anadarko improperly suspended Shen-3 costs for a period of time during the Class Period should be excluded. As an initial matter, that opinion is irrelevant to the legal issues in this case. Shen-3 accounting is not alleged in the Amended Complaint to be a misrepresentation (nor could it be, as any misrepresentation would have been corrected during the Class Period, when the Shen-3 costs were expensed in Q3 2016). (*See* Ex. 124 (KPMG_APC_eA_0007469).) Rather, Plaintiffs' allegations about Shen-3 are that Defendants made misleading statements because they described Shen-3 in positive terms and concealed that Shen-3 was a "'dry hole' that did not reveal the presence of oil and gas". (Amended Complaint (hereinafter, "Amend. Compl.") ¶¶ 50-52, 95(g).) In other words, Plaintiffs' issue is with Defendants' public descriptions of Shen-3—not their accounting decision.

6

Regan's opinion is also unreliable.  To be reliable, an expert must follow a methodology that "is generally accepted within the relevant scientific or technical community".  *Vargas*, 317 F.3d at 500 (citing *Daubert*, 509 U.S. at 593-94).  The generally accepted methodology for evaluating accounting decisions is to consider whether they were made in accordance with GAAP, which are "principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time".  *Binh Hoa Le v. Exeter Fin. Corp.*, No. 3:15-CV-3839, 2019 WL 1436375, at *18 n.10 (N.D. Tex. Mar. 31, 2019) (internal quotation marks omitted).

Regan recognizes that Anadarko was required to follow GAAP in issuing its financial statements.  (Ex. 19 (Regan Rpt.) ¶¶ 25-31.)  What is considered GAAP, however, has changed over the last 15 years.   Before September 2009, GAAP included, in part, Statements of Financial Accounting Standards.  (*Id.* ¶ 38.)  Since September 2009, however, all GAAP has been contained within the Accounting Standards Codification ("ASC" or the "Codification").  (*Id.*; *see* Ex. 128 (ASC 105-10-05-1).)  The Codification "superseded" all previous GAAP accounting policies and established that "[a]ll other accounting literature not included in the Codification" is "nonauthoritative".  (Ex. 126 (FASB, "Accounting Standards Codification—About the Codification", at 4).)  The Codification provides instructions for companies in the event there is no GAAP applicable to a transaction or event: "an entity shall first consider accounting principles for

similar transactions or events within a source of authoritative GAAP for that entity and then consider nonauthoritative guidance from other sources".  (Ex. 128 (ASC 105-10-05-2).)

Both parties' experts also agree that the relevant authoritative guidance for accounting for Shen-3 is a provision in the Codification—ASC Topic 932, *Extractive Activities—Oil and Gas* ("ASC 932").  (Ex. 19 (Regan Rpt.) ¶ 27; Ex. 121 (Dietrich Rpt.) at 15.)  Under ASC 932, a well like Shen-3 could be suspended "pending determination of whether the well has found proved reserves".  (Ex. 129 (ASC 932-360-25-10); *see* Ex. 19 (Regan Rpt.) ¶ 47 & n.60.)

While Regan purports to rely on ASC 932, he bases his narrow interpretation of that provision on FAS 19—an older financial standard covering oil and gas accounting issued in December 1977 that was superseded by the Codification in 2009.  (*See* Ex. 127 (FASB, "Superseded Standards", available at https://www.fasb.org/page/PageContent/%2Freference-library%2Fsuperseded-standards.html).)  Unlike courts that may look to legislative history when a statute is ambiguous, companies and accountants may only look to non-authoritative principles if GAAP does not cover a specific issue.  (Ex. 128 (ASC 105-10-05-2).)  As such, there is no basis to consider superseded standards like FAS 19.  (*See* Ex. 121 (Dietrich Rpt.) ¶ 106 ("However, FAS 19 was not GAAP at the times that Anadarko made its accounting determinations related to the Shen 3 well costs, and

therefore is not an appropriate basis on which to evaluate Anadarko's accounting for Shen 3.").)

At his deposition, Regan wrongly testified that FAS 19 was "codified into the ASCs in 2009". (Ex. 18 (Regan Deposition Transcript (hereinafter, "Regan Tr.") 50:16-19.) When asked if there were any parts of FAS 19 that were not codified, Regan conceded he had not "made that analysis". (*Id.* 50:23-25.) Yet, Regan cites FAS 19 at least ten times throughout his opinion, and it forms an integral part of his reasoning. (Ex. 19 (Regan Rpt.) ¶¶ 31, 40, 44, 46, 48, 51 52, 63, 66, 91.) In fact, he states early in his report that FAS-19 is "the primary source for relevant codified accounting standards applicable to Anadarko". (*Id.* ¶ 31.) He relies repeatedly on FAS-19 to conclude that wells that do not encounter oil must be expensed. (*See id.* ¶¶ 31, 40, 44, 46, 48, 51, 52, 63; *see also* Ex. 121 (Dietrich Rpt.) ¶ 106 (opining that it is "not possible to determine which, if any, of Mr. Regan's opinions are grounded in the Codification" as opposed to FAS 19).) Regan's reliance on FAS 19 infects his opinion, rendering it unreliable. *See Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1, 12 (1st Cir. 2006) (affirming the district court's grant of a motion to dismiss a 10b-5 claim based on an accounting violation in part because the accounting provision plaintiffs relied upon had been superseded and therefore had "no relevance" to the case); *Life Partners Holdings, Inc.*, 2013 WL 12076933, at *2 ("The Court does not see how [the expert's] opinion about an accounting regime that Defendants did not actually implement or

use during the time period at issue in this case is at all relevant to the matters before this Court.  Accordingly, [the expert] must limit his testimony to [the company's] actual accounting practices.").

## II.  Regan's Opinion That Anadarko's Alleged Accounting Errors Were Material to Its Financial Statements Should Be Excluded Because it Is Not Relevant and Will Confuse the Jury.

The Court should also exclude Regan's opinion that Anadarko's alleged accounting errors, both as to Shen-3 and the Shenandoah project as a whole, made Anadarko's financial statements materially misstated.  Regan's materiality opinion will only mislead the jury, which will be required to conduct its own materiality analysis.

In opining on materiality, Regan purports to rely on SAB 99, a bulletin issued by the SEC in 1999 to provide guidance to companies and auditors about how to determine when an accounting error is so small that it is immaterial and does not require a restatement.   (Ex. 125 (SEC Staff Accounting Bulletin No. 99—Materiality, https://www.sec.gov/interps/account/sab99.htm).)  Although SAB 99 states that the concept of materiality in the accounting literature is "in substance identical to the formulation used by the courts in interpreting the federal securities laws" (*id.*), it is not intended to guide juries as they consider materiality under the securities laws.  Regan's opinion threatens to confuse the jury as to the proper standard for materiality in a securities fraud case.

10

In assessing quantitative materiality, Regan opines that the Shen-3 well costs "exceeded well-established SEC quantitative materiality example benchmarks" of 5% "of an item".  (Ex. 19 (Regan Rpt.) ¶ 70.)  He also seeks to opine as to qualitative materiality to the financial statements, discussing what he calls management's statements about "the importance of Shenandoah and Shen-3".  (*Id.* ¶ 80.)  As part of his opinion, Regan even opines that Anadarko described Shen-3 in its public disclosures in a way that was inconsistent with information known internally to Anadarko.  (*Id.* ¶¶ 83-84, 86.)

Regan's opinion that *he* would consider these factors in analyzing whether the purported Shen-3 accounting error was material to Anadarko's financial statements has no bearing on whether any alleged misstatements were material to investors.  The latter is an issue for the jury to decide, and Regan may not usurp their role or confuse their assessment of the proper materiality standard to apply.  *See SEC v. Mudd*, 11 CIV. 9202, 2016 WL 2593980, at *7 (S.D.N.Y. May 4, 2016) (excluding testimony about whether disclosures were "useful" because it was likely to confuse and mislead the jury on the issue of materiality, "a distinct legal concept with a distinct legal definition"); *Caballero v. Archer*, No. SA:04-CV-561, 2007 WL 9702868, at *2 (W.D. Tex. Feb. 1, 2007) ("Even if there existed no danger of misleading the jury into adopting outright a legal conclusion proffered by an expert witness, testimony regarding applicable legal standards

remains 'objectionable by communicating a legal standard—explicit or implicit—to the jury.'" (quoting *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992))).

Regan also opines that another purported accounting error—the allegedly delayed impairment of Shenandoah and expensing of associated well costs—was material to Anadarko's financial statements.  (Ex. 19 (Regan Rpt.) ¶ 2(c).) Defendants do not dispute that Regan can offer his accounting opinion that this impairment was untimely based on his assumption of commercial unviability. However, as with his opinion about Shen-3, he should not be allowed to opine that this purported error was material to Anadarko's financial statements.  Again, Regan purports to support his materiality opinion with reference to a lengthy discussion of Anadarko's public statements, such as that Anadarko was "very pleased with" the results of Shen-5; that it was "still . . . advancing the project, but . . . a ways away from a sanction at Shenandoah" and that Shenandoah was a "fantastic . . . discovery" and a "great opportunity", all of which Regan claims is "in contrast to" his assumed condition that there was substantial doubt about Shenandoah.  (*Id.* ¶ 108.)

It is for the jury to decide whether the alleged misstatements altered the total mix of information available to investors about Anadarko, which requires consideration of everything Anadarko said about Shenandoah, what Anadarko's partners disclosed about Shenandoah and other information available to the market, not to mention what information investors had about Anadarko more

12

generally (as Shenandoah was merely one of many projects it was contemplating). Regan's opinions, offered under the guise of accounting "materiality", are inappropriate topics for expert accounting testimony, and seek to usurp the role of the jury.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court exclude the testimony of Plaintiffs' proffered expert D. Paul Regan about the Shen-3 accounting decision and materiality of Anadarko's alleged accounting errors under SAB 99.

Dated:  March 16, 2023          Respectfully submitted,

<u>/s/Kevin J. Orsini</u>
**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Benjamin Gruenstein (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
bgruenstein@cravath.com
lrosenberg@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

14

## <u>CERTIFICATE OF CONFERENCE</u>

In accordance with Rule 17(a) of Your Honor's Court Procedures, I hereby certify that counsel for Defendants conferred with Plaintiffs' counsel regarding this Motion on March 15, 2023. Counsel for Plaintiffs have advised that Plaintiffs oppose this Motion.

Dated: March 16, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## **<u>CERTIFICATION OF WORD COUNT</u>**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 3,597 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: March 16, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 16, 2023 I caused a true and correct copy of the

foregoing to be electronically filed with the Clerk of the Court using the CM/ECF

system.  Notice of this filing will be sent to counsel of record by operation of the

Court's electronic filing system.

Dated:  March 16, 2023

*/s/ Kevin J. Orsini*

Kevin J. Orsini
