UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION



| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § § | Civil Action No. 4:20-cv-00576 |
| | | <u>CLASS ACTION</u> |
| | | The Honorable Charles R. Eskridge III |

**PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY BY
DEFENDANTS' PROPOSED EXPERT J. RICHARD DIETRICH, Ph.D.**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  PROCEDURAL BACKGROUND ......................................................................... 2

III.  FACTS NECESSARY TO RESOLUTION OF THE MOTION ............................ 2

IV.  ISSUE FOR RESOLUTION ................................................................................ 4

V.  APPLICABLE LEGAL STANDARDS ................................................................ 4

VI.  ARGUMENT ....................................................................................................... 7

    A.  Dietrich's Opinions Lack an Accepted Methodology and Would
        Confuse the Jury .................................................................................. 7

    B.  Dietrich's Testimony Fails to Satisfy the Relevance Requirement ........... 11

    C.  Dietrich's Affirmative Opinions that Do Not Respond to Plaintiffs'
        Expert Should Be Excluded ..................................................................... 12

VII.  CONCLUSION ................................................................................................... 15

4869-0533-3335.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Burnham v. United States,*
2009 WL 2169191 (D. Ariz. July 20, 2009) ................................................................ 13

*Carroll v. Allstate Fire and Casualty Ins. Co.,*
2013 WL 12426586 (D. Colo. Oct. 4, 2013) .............................................................. 14

*Club v. Energy Future Holdings Corp.,*
2014 WL 12690016 (W.D. Tex. Feb. 20, 2014) ..................................................... 7, 13

*Curtis v. M&S Petroleum, Inc.,*
174 F.3d 661 (5th Cir. 1999) ....................................................................................... 4

*Daubert v. Merrill Dow Pharm., Inc.,*
509 U.S. 579 (1993) ............................................................................................. *passim*

*Gen. Elec. Co. v. Joiner,*
522 U.S. 136 (1997) ............................................................................................... 6, 11

*Honey-Love v. United States,*
664 F. Appx. 358 (5th Cir. 2016) ............................................................................... 14

*Johnson v. Arkema, Inc.,*
685 F.3d 452 (5th Cir. 2012) ................................................................................... 5, 6

*Kinergy Corp. v. Conveyor Dynamics Corp.,*
2003 WL 26110512 (E.D. Mo. Oct. 14, 2003) ........................................................... 10

*Knight v. Kirby Inland Marine Inc.,*
482 F.3d 347 (5th Cir. 2007) ....................................................................................... 6

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999) ..................................................................................................... 4

*M-I LLC v. FPUSA, LLC,*
2021 WL 8946233 (W.D. Tex. Feb. 3, 2021) ............................................................... 7

*Meadours v. Ermel,*
2005 WL 1923596 (S.D. Tex. Aug. 10, 2005) ........................................................... 10

*Nunn v. State Farm Mut. Auto. Ins. Co.,*
2010 WL 2540754 (N.D. Tex. June 22, 2010) ....................................................... 6, 10

**Page**

*Orthoflex, Inc. v. ThermoTek, Inc.*,
   986 F. Supp. 2d 776 (N.D. Tex. 2013) ........................................................ 5

*Paz v. Brush Engineered Materials Inc.*,
   555 F.3d 383 (5th Cir. 2009) ..................................................................... 8

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ..................................................................... 6

*Puga v. RCX Sols., Inc.*,
   922 F.3d 285 (5th Cir. 2019) ..................................................................... 8

*Rolls-Royce Corp. v. Heros, Inc.*,
   2010 WL 184313 (N.D. Tex. Jan. 14, 2010) ........................................... 6, 9

*United States v. 9.345 Acres of Land*,
   2016 WL 5723665 (M.D. La. Sept. 30, 2016) ........................................ 7, 13

*Viad Corp. v. Stak Design, Inc.*,
   2005 WL 5960360 (E.D. Tex. May 5, 2005) .............................................. 11

*Vu v. McNeil-PPC, Inc.*,
   2010 WL 2179882 (C.D. Cal. May 7, 2010) ..................................... 7, 13, 14

*Watkins v. Telsmith, Inc.*,
   121 F.3d 984 (5th Cir. 1997) ............................................................... 5, 6, 8

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000) ................................................................................... 5

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
   2017 WL 394511 (W.D. Tex. Jan. 27, 2017) ............................................. 14

4869-0533-3335.v1

Page

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure

Rule 16(b) .................................................................................................. 14
Rule 26 ....................................................................................................... 14
Rule 26(a) ............................................................................................... 7, 14
Rule 26(a)(2)(D)(ii) ......................................................................... 7, 13, 15
Rule 37(c) ............................................................................................... 4, 14
Rule 37(c)(1) .......................................................................................... 7, 14

Federal Rules of Evidence

Rule 402 ..................................................................................................... 12
Rule 403 ..................................................................................................... 11
Rule 702 ........................................................................................... 3, 4, 8, 11
Rule 702(c) ................................................................................................... 6
Rule 702(d) ................................................................................................... 6

4869-0533-3335.v1

# I.    PRELIMINARY STATEMENT

In this case, Defendants propose five merits experts, including J. Richard Dietrich, Ph.D. ("Dietrich").  Dietrich seeks to prove Defendants' accounting treatment for certain oil well exploration costs and periodic assessments of non-producing leasehold properties for impairment was proper and consistent with United States Generally Accepted Accounting Principles ("GAAP").  For the reasons set forth below, Plaintiffs move to exclude Dietrich's opinions relating to: (1) Anadarko's decision to initially suspend and to continue the suspension of the Shen-3 well costs; (2) Anadarko's calculations of probability of commerciality and how that related to Anadarko's decision regarding the economic viability of the Shenandoah project; and (3) the sections Dietrich himself identified as non-responsive to D. Paul Regan's ("Regan") report.

As explained in greater detail below, Dietrich has changed the plain language of GAAP to arrive at the conclusion that Anadarko's accounting treatment was proper.  Dietrich admits that he has never seen this "interpretation" (*i.e.*, the alteration of the relevant accounting rules) utilized by any other accountant or in any publication.  Dietrich also speculates about the meaning and calculation of crucial metrics, which he admitted he did not understand, to conclude that Shenandoah had a high likelihood of commerciality. Dietrich's opinions simply lack an accepted methodology and are irrelevant.  Indeed, Dietrich admits that his report includes irrelevant information.  Lastly, Dietrich's affirmative accounting opinions not in response to Plaintiffs' accounting expert are untimely and should be excluded.  As explained herein, the Court should shut the gate on Dietrich's attempts to confuse the jury and Defendants' efforts to sandbag Plaintiffs by submitting untimely

affirmative opinions.  Accordingly, Plaintiffs respectfully request that the Court grant their motion to exclude certain testimony by Dietrich.

## II.   PROCEDURAL BACKGROUND

This securities fraud class action was filed against Anadarko and certain of its former top executives on February 19, 2020.  ECF 1.  The amended complaint was filed August 17, 2020.  ECF 55.

On January 19, 2021, Judge Atlas denied Defendants' motion to dismiss.  ECF 63. Defendants filed their answer on March 25, 2021.  ECF 72.

On May 2, 2022, Plaintiffs moved to compel the production of documents concerning Anadarko Audit Committee's purported investigation.  ECF 122.  The motion is fully briefed and pending before the Court.

On September 28, 2022, the Court granted class certification in this case.  *See* ECF 141 at 1.  Defendants have filed a motion for reconsideration.  ECF 143.

The motions cut-off is March 16, 2023.  *See* ECF 150 at 1.  The final pretrial conference in this case is set for September 19, 2023.  *Id.* at 2.

## III.   FACTS NECESSARY TO RESOLUTION OF THE MOTION

One of the five rebuttal experts Defendants propose is Dietrich, who is a professor emeritus of accounting at the Ohio State University.  *See* Ex. 1 (1/25/23 Expert Report of J. Richard Dietrich) at 2.[1]  Dietrich is not a licensed CPA, has never been employed as an

---

[1]   All exhibits referenced herein are attached hereto unless otherwise noted.

auditor or performed an audit, and obtained his Master of Accounting mostly from independent study courses.  *See* Ex. 2 at 54:14-24, 64:19-23, 66:18-67:17.

As discussed below, Dietrich's accounting opinions are predicated on changing the language of accounting rules and then applying these altered accounting rules to arrive at the desired results.  *Id.* at 216:18-217:12.  Dietrich admitted that no other person has altered the plain language of the accounting rule at issue, and no publication has ever discussed, much less accepted, changing the language of the governing accounting rule.  *Id.* at 221:10-13.  Dietrich's flawed and unreliable analysis infects §VII and ¶155 of his report.  Thus, the analysis and opinions set forth in this portion of Dietrich's report should be excluded.

In addition, Dietrich admits he has no basis, other than speculation, for many of his opinions.  For example, Dietrich testified that he performed a key accounting analysis "informally in my mind" and that analysis does not appear anywhere in his report.  *Id.* at 201:3-202:3.  In addition, Dietrich relies on an internal Anadarko document for his opinion that Shenandoah had a high probability of commerciality, but admitted at his deposition that he does not understand what the metrics in the document are or even how probability of commerciality was calculated.  *Id.* at 250:21-256:6.  As explained below, these opinions, contained in §VII and ¶¶218 and 228 of Dietrich's report, will confuse and mislead the jury and should be excluded under Federal Rule of Evidence 702.

Finally, Defendants designated Dietrich and served his report on January 25, 2023, the date that this Court set as the deadline for "Rebuttal Expert Designations."  ECF 142.  Nonetheless, Dietrich testified at deposition that several of his opinions are affirmative opinions that are not in response to Plaintiffs' accounting expert, Regan.  Ex. 2 at 32:18-21.

- 3 -

Dietrich identified the following sections of his report as his affirmative opinions not in response to Regan: §§V, VII.A., VII.B., and X.A. *Id.* at 38:17-39:12. These improper affirmative opinions are untimely, would prejudice Plaintiffs, who have no opportunity to respond, and should be excluded under Federal Rule of Civil Procedure 37(c).

## IV.   ISSUE FOR RESOLUTION

Whether the Court should exclude the proffered expert testimony of Dietrich in §§V, VII, and X.A, and ¶¶155, 218, and 228 under Rule 702.

## V.   APPLICABLE LEGAL STANDARDS

Rule 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

(c)   the testimony is the product of reliable principles and methods; and

(d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court "explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended *Daubert*'s holding to "all expert testimony." *Id.* at 147.

Accordingly, all proposed expert testimony must meet "exacting standards of reliability" to be admissible. *See Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

The burden of establishing the admissibility of expert testimony falls to its proponent to prove by a preponderance of the evidence. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (N.D. Tex. 2013) ("The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence.") (citing *Daubert*, 509 U.S. 579, 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The proponent's burden includes a showing that the expert testimony is (1) reliable, (2) relevant, and (3) within the proper scope of expert testimony. *See Daubert*, 509 U.S. at 589.

As to the first prong of reliability, the "expert opinion [must] 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459.[2] Under *Daubert*, the following non-exclusive list of factors are considered for the reliability inquiry:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*Id*. These factors are aimed at ferreting out "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997).

---

[2]   Citations are omitted throughout unless otherwise indicated.

The second requirement is that the expert's testimony be relevant.  To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591).  "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'"  *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Fed. R. Evid. 702(d) (requiring that "expert has reliably applied the principles and methods to the facts of the case").  "Testimony is irrelevant . . . when an expert offers a conclusion based on assumptions unsupported by the facts of the case."  *Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at *6 (N.D. Tex. Jan. 14, 2010).

The third requirement is that the expert's testimony be reliable.  "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'"  *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also* Fed. R. Evid. 702(c) (requiring that "testimony [be] the product of reliable principles and methods").  Expert testimony "must constitute 'more than subjective belief or unsupported speculation.'"  *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (quoting *Daubert*, 509 U.S. at 590).  The court focuses on the expert's methodology, not the conclusions generated by it.  *Id.* at *4 (citing *Watkins*, 121 F.3d at 989).  If, however, "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Johnson*, 685 F.3d at 460-61.

To qualify as proper "rebuttal," expert opinions must be "intended solely to contradict or rebut evidence on the same subject matter identified" by the opposing party's expert.  Fed. R. Civ. P. 26(a)(2)(D)(ii).  "Even if the proffered expert report relates to the 'same subject matter,' the rebuttal designation is considered pursuant to 'the findings' of the testifying expert, not simply 'the same general subject matter of the case.'"  *Club v. Energy Future Holdings Corp.*, 2014 WL 12690016, at *5 (W.D. Tex. Feb. 20, 2014).  The phrase "'the same subject matter'" should be read narrowly, otherwise it would "'blur the distinction between "affirmative expert" and "rebuttal expert"' and '"render the scope of the subject matter limitless."'"  *Id.* (quoting *Vu v. McNeil-PPC, Inc.*, 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010)).  Accordingly, the expert "may not offer entirely new arguments."  *United States v. 9.345 Acres of Land*, 2016 WL 5723665, at *3 (M.D. La. Sept. 30, 2016).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use the information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "Ultimately, the burden to prove substantial justification or harmlessness is on the non-disclosing party."  *M-I LLC v. FPUSA, LLC*, 2021 WL 8946233, at *2 (W.D. Tex. Feb. 3, 2021).

## VI.   ARGUMENT

### A.   Dietrich's Opinions Lack an Accepted Methodology and Would Confuse the Jury

Dietrich, who has no basis for many of his opinions, engages in rank speculation and a conclusion-oriented methodology not shared by any other accountant to arrive at his

opinions.  As the Supreme Court held in *Daubert*, the use of the word "knowledge" in Rule 702 "connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.  Likewise, the Fifth Circuit holds that, "[t]o be reliable, expert testimony must 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019).  The reliability requirement is designed to figure out "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers." *Watkins*, 121 F.3d at 991.  "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

Dietrich's expert opinions are based almost entirely on the application of the oil and gas provisions of GAAP (ASC 932-360-25 and ASC 932-360-35) to the facts in this case. His entire analysis, however, lacks reliability because Dietrich changes the criteria of these accounting provisions – a change in which Dietrich stands alone.  In fact, there is simply no interpretation by anyone other than Dietrich that supports this alteration of the accounting rule.  Indeed, Dietrich can point to no indicia of reliability for his alteration of the accounting rules, such as its use by another accountant, its appearance in a publication, or its adoption by any other source (reputable or otherwise).  Simply put, Dietrich changes the language in the applicable accounting rules to get his desired conclusion.  This is the antithesis of a reliable opinion.

Throughout Dietrich's report and in his deposition testimony, Dietrich opines that despite the plain language of ASC 932-360-25 and ASC 932-360-35, the term "well" should

- 8 -

be interpreted as "wells." Ex. 1 at 33-44; Ex. 2 at 191:24-193:2, 200:6-12, 208:16-19, 209:3-10, 210:7-25, 216:12-217:9.  In his report, Dietrich failed to supply any authority at all for this interpretation.  At his deposition, Dietrich testified that he was unaware of any other person interpreting the accounting rules in the same manner that he has.  Ex. 2 at 221:20-23. Additionally, Dietrich testified that he was unaware of any publication sharing in his interpretation.  *Id.* at 221:24-222:3.  Dietrich's flawed and unreliable analysis infects Dietrich's §VII and ¶155.  Because Dietrich's conclusions are based on an analysis that alters the plain language of ASC 932-360-25 and ASC 932-360-35 – an analysis which is entirely unsupported in the relevant accounting community – Dietrich's methodology is unreliable and should be excluded.

Additionally, throughout his testimony, Dietrich admitted that his opinions were based on speculation or assumptions devoid of any factual support.  "Testimony is irrelevant, however, when an expert offers a conclusion based on assumptions unsupported by the facts of the case." *Rolls-Royce*, 2010 WL 184313, at *6.  For example, Dietrich simply assumed without any factual basis at all that Anadarko performed the necessary analysis to determine that the Shen-1 well had the sufficient oil reserves to justify its completion as a producing well with no documents to support that assumption.  Ex. 2 at 202:11-25, 204:7-14, 207:1-2. This is a crucial step to Dietrich's opinion that Anadarko was allowed to continue to capitalize Shen-3 after determining it was a dry hole.  *Id.* at 186:1-4, 186:9-11, 199:17-20. Dietrich provides no support for his theory that Anadarko performed the necessary analysis to determine that Shen-1 had the sufficient reserves to justify its completion as a producing well.

- 9 -

Moreover, Dietrich admitted during his deposition, that his analysis to determine whether Shen-1 had found a sufficient quantity of reserves was something he performed "informally in [his] mind." *Id.* at 201:7-202:3. He also admitted that this analysis does not appear anywhere in his report. *Id.* at 202:4-6. But this analysis that Dietrich performed in his own head is not permissible under *Daubert*. *See Meadours v. Ermel*, 2005 WL 1923596, at *3-*4 (S.D. Tex. Aug. 10, 2005) ("Dr. Deegear explained during his deposition that his model is an analytical process that is all contained in his head . . . . Dr. Deegear's deposition testimony makes clear that none of the *Daubert* factors has been met."). Dietrich's opinion is "simply not 'the product of reliable principles and methods.'" *Id.* at *4; *see also Kinergy Corp. v. Conveyor Dynamics Corp.*, 2003 WL 26110512, at *26 (E.D. Mo. Oct. 14, 2003) (The expert "concluded that the only process he utilized to come up with his conclusions was to look at the machines, go through a thought process in his head, and write his report. . . . Thus, it is obvious that his opinions are based only upon his subjective beliefs and unsupported speculation."). Because this crucial assumption is unsupported by any documentation in his report, his opinions in §VII and ¶¶218 and 228 should be excluded. *See Nunn*, 2010 WL 2540754, at *9.

Dietrich relies on an internal Anadarko analysis for his opinion that Shenandoah had a high probability of commerciality. However, Dietrich admitted at his deposition that in fact he does not understand what the metrics in the document are or even how probability of commerciality was calculated. Ex. 2 at 250:21-256:6. Dietrich's failure to base his opinions on more than subjective belief and unsupported speculation renders his methodology unreliable. "[T]here is simply too great an analytical gap between the data and the opinion

- 10 -

proffered," and the Court should exclude Dietrich's opinions. *See Gen. Elec. Co.*, 522 U.S. at 146.

**B.      Dietrich's Testimony Fails to Satisfy the Relevance Requirement**

To be admissible, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591.

Dietrich's testimony is also inadmissible under Federal Rule of Evidence 403 as any probative value (there is none) is substantially outweighed by the danger of confusing the jury about the appropriate accounting standards and the relevant information necessary to make accurate accounting determinations. *See id.* at 595. As explained above, many of his opinions are based on subjective belief or unsupported speculation, and thus, are unreliable. Accordingly, Dietrich's testimony will only confuse, rather than assist, the jury because jurors will be unable to divorce Dietrich's assumptions from his opinions. *See Viad Corp. v. Stak Design, Inc.*, 2005 WL 5960360, at *1 (E.D. Tex. May 5, 2005) ("The Court concludes that Maybruck's subjective beliefs as to these percentages are unreliable and would only confuse the jury rather than assisting it in determining facts at issue.").

Additionally, Dietrich admitted that portions of his report are irrelevant to his opinions. Specifically, Dietrich testified:

> Q  But you told me that this was – that this considering Shen 3 to be a successful appraisal well is an irrelevant fact; right?
>
> A  Correct.  Now –
>
> Q  Did you conclude –

A  I'm sorry, let me be clear.  When I was developing my report, I had not made determinations yet on the accounting.  And so I didn't know when I was writing parts of the report what may or may not be important in making an accounting determinations.

So what you're seeing here is the work product by which I came to understand the facts and circumstances that were applicable to my accounting judgments on Anadarko's accounting for its – its wells.

Q  Before submitting your report, why didn't you go back and edit out the irrelevant portions of your report?

A  I just didn't.

Ex. 2 at 181:1-19.  First, "[i]rrelevant evidence is not admissible."  Fed. R. Evid. 402.

Second, as Dietrich testified, he failed to edit his report to only contain what he believed to be his relevant portions nor did he identify which portions of his report are no longer relevant.  This would be confusing and unhelpful to the jury if Dietrich were allowed to testify about the portions of his report that are irrelevant.  *See Daubert*, 509 U.S. at 591 ("'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'").

### C.    Dietrich's Affirmative Opinions that Do Not Respond to Plaintiffs' Expert Should Be Excluded

Defendants designated Dietrich and served his report on January 25, 2023, the date that this Court set as the deadline for "Rebuttal Expert Designations."  ECF 142.  Indeed, the majority of Dietrich's report purports to rebut the accounting opinions of Regan, Plaintiffs' accounting expert who submitted a report on November 9, 2022.  Certain sections of Dietrich's report, however, present improper affirmative opinions that were untimely disclosed and should be excluded.

- 12 -

The Federal Rules of Civil Procedure and this Court's scheduling order require timely disclosure of expert opinions "to prevent parties from hiding the ball – from introducing initial experts in the guise of rebuttal experts and thereby frustrating their opponents' opportunity to respond to those experts." *Burnham v. United States*, 2009 WL 2169191, at *5 (D. Ariz. July 20, 2009).   To qualify as proper "rebuttal," expert opinions must be "intended solely to contradict or rebut evidence on the same subject matter identified" by the opposing party's expert.   Fed. R. Civ. P. 26(a)(2)(D)(ii).   The phrase "the same subject matter" should be read narrowly, otherwise it would "blur the distinction between 'affirmative expert' and 'rebuttal expert' and 'render the scope of the subject matter limitless.'"   *Club*, 2014 WL 12690016, at *5 (quoting *Vu*, 2010 WL 2179882, at *3). Accordingly, the expert "may not offer entirely new arguments."   *9.345 Acres of Land*, 2016 WL 5723665, at *3.

As Dietrich expressly states in describing his assignment in his report, his scope of work has two parts: providing his own opinions regarding Anadarko's accounting treatment for certain wells and periodic assessments of non-producing leasehold properties for impairment, and to respond to certain financial accounting and reporting opinions expressed by Regan.   Ex. 3 at Ex. A-1.   During his deposition, Dietrich testified that several portions of his report were his own opinions regarding Anadarko's accounting "irrespective of anything that Mr. Regan said."   Ex. 2 at 32:18-21.   Dietrich identified the following sections of his report as his affirmative opinions not in response to Regan: §§V, VII.A., VII.B., and X.A. *Id.* at 38:17-39:12.

- 13 -

Pursuant to Federal Rule of Civil Procedure 16(b), this Court entered a scheduling order setting deadlines for the disclosure of initial expert reports.  Defendants failed to provide Dietrich's affirmative opinions by this deadline.  The presumptive sanction under Rule 37(c)(1) for the failure to disclose is exclusion.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."); *see also Honey-Love v. United States*, 664 F. Appx. 358, 362 (5th Cir. 2016) (*per curiam*) ("[U]nder Rule  37(c), the presumptive sanction for failing to disclose a testifying expert or supply a required expert report or summary disclosures is to exclude or limit the expert's testimony unless the failure was substantially justified or harmless."); *YETI Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 394511, at *3 (W.D. Tex. Jan. 27, 2017); Fed. R. Civ. P. 37(c).  Paragraph (2)(B) of The Advisory Committee's Note (1993) under Fed. R. Civ. P. 26 details the underlying reasoning for requiring full disclosure, stating "[r]evised Rule 37(c)(1) provides an incentive for full disclosure; namely that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed."

Courts have held that this "litigation tactic" is a "hornbook example of sandbagging" that will not be tolerated.  *Vu*, 2010 WL 2179882, at *3; *see also Carroll v. Allstate Fire and Casualty Ins. Co.*, 2013 WL 12426586, at *3 (D. Colo. Oct. 4, 2013) ("Their decision to hold back on disclosing their experts and accompanying reports until the rebuttal expert disclosure deadline looks suspiciously like sandbagging.  The Court will not tolerate this type of gamesmanship and tactical maneuvering.").  Plaintiffs are unfairly prejudiced because they

- 14 -

were not afforded the opportunity to present rebuttal testimony to Dietrich's independent opinions regarding Anadarko's accounting. Such gamesmanship by Defendants violates the scheduling order and Rule 26(a)(2)(D)(ii), and unduly prejudices Plaintiffs. Accordingly, the Court should exclude §§V, VII.A., VII.B., and X.A. of Dietrich's report, which he admits are new affirmative opinions not in response to Regan.

## VII.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully submit that the Court should exclude the testimony of J. Richard Dietrich in §§V, VII, and X.A, and ¶¶155, 218, and 228.

DATED: March 16, 2023              Respectfully submitted,

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge


              s/ Joe Kendall
              JOE KENDALL

3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

- 15 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
JASON A. FORGE
RACHEL L. JENSEN
FRANCISCO J. MEJIA
MEGAN A. ROSSI
RAPHAELLA FRIEDMAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Class Counsel

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 3,989 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED: March 16, 2023

s/ Joe Kendall
_____
JOE KENDALL

## CERTIFICATE OF CONFERENCE

On March 15, 2023, Class Counsel conferred telephonically with Defendants' counsel regarding the relief requested in this motion.  Defendants' counsel indicated that Defendants will oppose this motion.

DATED: March 16, 2023

s/ Joe Kendall
_____
JOE KENDALL

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared

in this matter via the Court's CM/ECF system on this, the 16th day of March, 2023.


s/ Joe Kendall
_____
JOE KENDALL

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing on all counsel of record who have appeared

in this matter via the Court's CM/ECF system on this, the 6th day of April, 2023.


s/ Joe Kendall

                                                     _____
JOE KENDALL