UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § § | Civil Action No. 4:20-cv-00576 |
| | | CLASS ACTION |
| | | The Honorable Charles R. Eskridge III |

**PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY BY
DEFENDANTS' PROPOSED EXPERT DR. ALLEN FERRELL**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE AND STAGE OF LITIGATION .................................................... 1

III.    FACTS NECESSARY TO RESOLUTION OF THE MOTION ........................... 2

IV.     ISSUE FOR RESOLUTION ............................................................................. 3

V.      APPLICABLE LEGAL STANDARDS ......................................................... 4

VI.     ARGUMENT .................................................................................................... 6

        A.      The Court Should Exclude Dr. Ferrell's Opinions Regarding the
        Book Value of Shenandoah ......................................................................... 6

                1.      Dr. Ferrell is Not Qualified to Provide Opinions on
                Accounting Matters ....................................................................... 6

                2.      Dr. Ferrell's Opinions Regarding Shenandoah Book Values
                Are Unreliable and Irrelevant ...................................................... 8

        B.      Dr. Ferrell's May 3, 2017 Event Study Concerning ConocoPhillips
        Is Unreliable and Should Be Excluded ..................................................... 11

VII.    CONCLUSION ............................................................................................... 14

4891-0831-5735.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Black v. Food Lion, Inc.*,
171 F.3d 308 (5th Cir. 1999) .................................................................. 14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) ............................................. 9

*CNG Transmission Corp. v. FERC*,
40 F.3d 1289 (D.C. Cir. 1994) ................................................................. 9

*Curtis v. M&S Petroleum, Inc.*,
174 F.3d 661 (5th Cir. 1999) .................................................................... 4

*Daubert v. Merrill Dow Pharms., Inc.*,
509 U.S. 579 (1993) ....................................................................... *passim*

*Diamond Offshore Co. v. Survival Sys. Int'l, Inc.*,
2013 WL 371648 (S.D. Tex. Jan. 29, 2013) .............................................. 8

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.*,
96 F.3d 135 (5th Cir. 1996) ..................................................................... 6

*Garcia v. Harris Cnty.*,
2018 WL 11469406 (S.D. Tex. June 14, 2018) .......................................... 6

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136............................................................................................ 11

*Goodman v. Harris Cnty.*,
571 F.3d 388 (5th Cir. 2009) ............................................................... 5, 6

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)................................................................... 13

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
2022 WL 17480906 (S.D. Fla. Dec. 6, 2022) .......................................... 13

*Johnson v. Arkema, Inc.*,
685 F.3d 452 (5th Cir. 2012) ............................................................... 5, 6

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007) ................................................................... 8

- ii -

**Page**

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................. 4

*Macy v. Whirlpool Corp.*,
   613 F. App'x 340 (5th Cir. 2015) ............................................................. 11

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019) .............................................................. 12

*Moore v. Ashland Chem. Inc*.,
   151 F.3d 269 (5th Cir. 1998) .................................................................... 11

*Orthoflex, Inc. v. ThermoTek, Inc.*,
   986 F. Supp. 2d 776 (N.D. Tex. 2013) ....................................................... 4

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ...................................................................... 8

*Previto v. Ryobi N. Am., Inc.*,
   766 F. Supp. 2d 759 (S.D. Miss. 2010).................................................... 6

*Right of Way Maint. Co. v. Gyro-Trac, Inc.*,
   2007 WL 1428634 (S.D. Tex. May 11, 2007) ............................................ 7

*Rolls-Royce Corp. v. Heros, Inc.*,
   2010 WL 184313 (N.D. Tex. Jan. 14, 2010) ......................................... 8, 10

*Rooney v. EZCORP, Inc.*,
   330 F.R.D. 439 (W.D. Tex. 2019) ............................................................ 12

*Rushing v. Yeargain*,
   2022 WL 4545612 (M.D. La. June 10, 2022)............................................. 7

*Watkins v. Telsmith*,
   121 F.3d 984 (5th Cir. 1997) ...................................................................... 5

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000) .................................................................................... 4

4891-0831-5735.v1

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Evidence
    Rule 702 ................................................................................................... 1, 4, 6, 7

17 C.F.R.
    §210.4-01(a)(1) ..................................................................................................... 9

4891-0831-5735.v1

## I.   INTRODUCTION

In contravention of the basic requirements governing expert testimony under the Federal Rules of Evidence, Defendants' proposed expert Dr. Allen Ferrell seeks to submit opinions that are irrelevant, unreliable, and regarding matters for which he is admittedly unqualified.  *See* Fed. R. Evid. 702.

Specifically, Dr. Ferrell seeks to provide opinions concerning defendant Anadarko Petroleum Corporation's ("Anadarko") reported book values for Shenandoah that are not only contrary to the factual record but also in direct conflict with accounting standards, which Ferrell concedes are "beyond [his] knowledge."  Ex. 1 at 194:17-21.[1]  In addition, Dr. Ferrell seeks to submit expert testimony based upon a methodologically-flawed event study about another *company* – Shenandoah passive partner, ConocoPhillips.  But Dr. Ferrell's own parameters reveal that his event study has an error rate of 67%, meaning that it will lead to wrong conclusions more often than right ones.  These opinions fall squarely outside the bounds of permissible expert testimony.

For the reasons set forth herein, Plaintiffs respectfully submit that their motion to exclude certain of Dr. Ferrell's opinions should be granted.

## II.   NATURE AND STAGE OF LITIGATION

This securities fraud class action was filed against Anadarko and certain of its former top executives on February 19, 2020.  ECF 1.  The amended complaint was filed August 17, 2020.  ECF 55.

---

[1]      All exhibits referenced herein are attached hereto unless otherwise noted.

On January 19, 2021, Judge Atlas denied Defendants' motion to dismiss.  ECF 63.

Defendants filed their answer on March 25, 2021.  ECF 72.

On May 2, 2022, Lead Plaintiff moved to compel the production of documents concerning the Anadarko Audit Committee's purported investigation.  ECF 122.  The motion is fully briefed and pending before the Court.

On September 28, 2022, the Court granted class certification in this case.  *See* ECF 141 at 1.  Defendants have filed a motion for reconsideration.  ECF 143.

The motions cut off is March 16, 2023.  *See* ECF 150 at 1.  The final pretrial conference in this case is set for September 19, 2023.  *Id.* at 2.

## III.    FACTS NECESSARY TO RESOLUTION OF THE MOTION

In the Expert Rebuttal Report of Allen Ferrell, Ph.D. dated January 25, 2023 ("Rebuttal Report") (Ex. 2), Dr. Ferrell purports to offer expert testimony regarding, *inter alia*: (1) Anadarko's reported book value for its Shenandoah Assets (*id.*, ¶¶37-39); and (2) an event study which purports to evaluate the price reaction of ConocoPhillips stock on May 3, 2017 ("COP Event Study").  *Id.*, ¶¶29-30.  These opinions are also set forth in three reports Dr. Ferrell previously submitted in this case, which the Rebuttal Report incorporates by reference.  *See id.*, ¶15 n.32.

First, despite conceding at his deposition that he is not an accounting expert (Ex. 1 at 15:25-16:2), Dr. Ferrell nonetheless attempts to impermissibly wade into unfamiliar territory and provide expert testimony regarding the significance of Shenandoah's book values.  *See* Rebuttal Report, ¶¶37-39.  In addition to lacking the requisite expertise, Dr. Ferrell's accounting related opinions also lack any factual support and run afoul of relevant

- 2 -

Generally Accepted Accounting Principles ("GAAP"), with which Anadarko claimed to comply.  *See infra* §VI.A.2.  The opinions at issue are set forth in: (1)  Rebuttal Report, ¶¶37-39; (2) Report of Allen Ferrell, Ph.D. in Support of Defendants' *Daubert* Motion, dated April 1, 2022 (ECF 111-1) ("Ferrell April 2022 Report"), ¶¶1(c)(ii)-(iii), 12-14; and (3) Reply Report of Allen Ferrell, Ph.D. in Support of Defendants' *Daubert* Motion, dated May 2, 2022 (ECF 123-1) ("Ferrell Report May 2022 Report"), ¶¶19-20.

Second, Dr. Ferrell's COP Event study is also inherently unreliable.  Both courts and academic literature recognize that due to certain methodological constraints, event studies, like the one used here, are incapable of reliably detecting statistically significant price reactions unless they are large, making any conclusions regarding a lack of price impact prone to error.  *See infra* §VI.B.  Critically, using Dr. Ferrell's own parameters, the error rate of the COP Event Study *is 67%*, meaning that it is more likely to be wrong than right.  *See* Ex. 3 (Report of Bjorn I. Steinholt in Support of Plaintiffs' Motion to Exclude Certain Testimony by Defendants' Proposed Expert Dr. Allen Ferrell ("Steinholt *Daubert* Report")), ¶¶11-12.  The opinions at issue are set forth in: (1) Rebuttal Report, ¶¶29-30; (2) Expert Report of Allen Ferrell, Ph.D., dated December 10, 2021 (ECF 93-1), ¶¶17(b)(ii),32, 57; (3) Ferrell April 2022 Report, ¶15; and (4) Ferrell May 2022 Report, ¶5.

## IV.   ISSUE FOR RESOLUTION

The issue here is whether the Court should exclude certain testimony proffered by Defendants' proposed expert, Dr. Allen Ferrell under the Federal Rules of Evidence and *Daubert*.

## V.      APPLICABLE LEGAL STANDARDS

Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if:

> (a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)      the testimony is based on sufficient facts or data;
>
> (c)      the testimony is the product of reliable principles and methods; and
>
> (d)      the expert has reliably applied the principles and methods to the facts of the case.

*Id*.

In *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court "explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999).[2]  In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended *Daubert*'s holding to "all expert testimony." *Id.* at 147. Accordingly, all proposed expert testimony must meet "exacting standards of reliability" to be admissible. *See Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

The burden of establishing the admissibility of expert testimony falls to its proponent to prove by a preponderance of the evidence. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (N.D. Tex. 2013) ("The burden is on the proponent of the

---

[2]      Citations are omitted and emphasis is added throughout unless otherwise indicated.

expert testimony to establish its admissibility by a preponderance of the evidence.") (citing *Daubert*, 509 U.S. 579, 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The proponent's burden includes a showing that the expert testimony is: (1) reliable; (2) relevant; and (3) within the proper scope of expert testimony. *See Daubert*, 509 U.S. at 589.

As to the first prong of reliability, the "expert opinion [must] 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Johnson*, 685 F.3d at 459. Under *Daubert*, the following non-exclusive list of factors are considered for the reliability inquiry:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*Id*. These factors are aimed at ferreting out "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers." *Watkins v. Telsmith*, 121 F.3d 984, 991 (5th Cir. 1997).

As to the second prong of relevance, "the proponent [must] demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson*, 685 F.3d at 459.

Third, as to scope, the Fifth Circuit holds that "an expert may never render conclusions of law" or proffer legal opinions. *See, e.g.*, *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). Accordingly, in this Circuit, courts reject "expert testimony

which purports to tell the jury what the law is, or what legal conclusion to reach." *Garcia v. Harris Cnty.*, 2018 WL 11469406 (S.D. Tex. June 14, 2018).  Likewise, an expert is prohibited from "go[ing] beyond the scope of his expertise in giving his opinion." *Goodman*, 571 F.3d at 399 (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (rejecting "'opinion of dishonesty'" as going "'beyond the scope of expertise'")).

The Court's decision to allow or exclude expert testimony is reviewed for abuse of discretion.  *See Johnson*, 685 F.3d at 458.  In assessing the reliability of the expert testimony, the Court has considerable leeway. *See id.* at 458-59.  On the other hand, "'[a] trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.'" *Id.*

Consistent with these authorities, certain of Dr. Ferrell's proffered expert testimony should be excluded as explained below.

## VI.    ARGUMENT

### A.    The Court Should Exclude Dr. Ferrell's Opinions Regarding the Book Value of Shenandoah

#### 1.    Dr. Ferrell is Not Qualified to Provide Opinions on Accounting Matters

Dr. Ferrell's opinions regarding Shenandoah's reported book value should be excluded because he lacks the requisite qualifications.  "Under Rule 702, 'a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . .'" *Previto v. Ryobi N. Am., Inc.*, 766 F.

Supp. 2d 759, 766 (S.D. Miss. 2010) (quoting Federal Rule of Evidence 702).  Dr. Ferrell does not qualify as an accounting expert under any of these bases.

Indeed, at his deposition, Dr. Ferrell admitted he is not an expert in accounting matters.  *See* Ex. 1 at 15:25-16:2.  For example, when asked whether "[t]he economic benefits held through Anadarko's assets represented potential future cash in-flows," Dr. Ferrell stated "that, I don't know.  *We've just hit the end of . . . my knowledge, so I'm out*."  *Id.* at 194:16.  Dr. Ferrell also asserted his lack of accounting experience to evade other questions regarding applicable accounting principles:

- Q: It's not true that the book value of an asset is the same as a sunk cost; right?  A: We're going to quickly get into accounting and beyond my knowledge."  *Id.* at 194:17-21.

- Q: Okay.  *So this is outside of your area of expertise here?  A: If you're going to ask me accounting questions, yes*.  *Id.* at 195:11-17.

- Q: You understand that that the write-down included assets that were acquired from Kerr-Mcgee?  A: Are we – if this is a reference to the leasehold interest, that's my understanding.  Q: Right. that was based on its fair value at the date of the acquisition; right?  A: I don't know.  *Id.* at 196:20-197:3.

Dr. Ferrell's "concession that he is not an expert" in accounting, combined with his other testimony demonstrating his lack of expertise in applicable accounting standards, warrants exclusion of his accounting opinions.  *See, e.g.*, *Rushing v. Yeargain*, 2022 WL 4545612, at *8 (M.D. La. June 10, 2022) (although expert was qualified in general forensic psychiatry, opinions regarding workplace policies and procedures were excluded as beyond scope of expertise); *Right of Way Maint. Co. v. Gyro-Trac, Inc.*, 2007 WL 1428634, at *4 (S.D. Tex. May 11, 2007) (holding that attorney with engineering degree could not

"testify to engineering matters because he [was] unqualified to do so"); *Diamond Offshore Co. v. Survival Sys. Int'l, Inc.*, 2013 WL 371648, at \*13 (S.D. Tex. Jan. 29, 2013) (finding that proposed expert was "unqualified to testify as a financial expert" despite undergraduate degree in economics, an MBA, and 20 years of relevant experience).

Accordingly, Dr. Ferrell's accounting-related opinions should be excluded.

### 2. Dr. Ferrell's Opinions Regarding Shenandoah Book Values Are Unreliable and Irrelevant

Dr. Ferrell's opinions regarding Shenandoah's book value should also be excluded as unreliable and irrelevant because they are incompatible with basic GAAP principles and unsupported by the factual record in this case.  To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or determine a fact in issue.'"  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591).  "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'"  *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).  "Testimony is irrelevant . . . when an expert offers a conclusion based on assumptions unsupported by the facts of the case."  *Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at \*6 (N.D. Tex. Jan. 14, 2010).

Here, Dr. Ferrell's assumption that "book values reflect sunk costs, which are past cash outlays" has no basis.  Rebuttal Report, ¶37.  Indeed, at his deposition, Dr. Ferrell conceded that book values are not sunk costs.  *See* Ex. 1 at 194:16-195:5.

In addition, Dr. Ferrell's assumption is in direct conflict with basic GAAP principles.  Throughout the Class Period, Anadarko's interests in Shenandoah, including

its property interests acquired through the acquisition of Kerr-Mcgee Corporation in 2006, as well as suspended exploratory well costs related to the appraisal of Shenandoah, were reported and held out to the public as book assets of Anadarko.  *See, e.g.*, Ex. 4 (Anadarko Form 10-Q, filed May 2, 2017) at 12-13.

Under GAAP, "[a]ssets" are defined as "***probable future economic benefits*** obtained or controlled by a particular entity as a result of past transactions or events."  Ex. 5 (FASB Statement of Financial Accounting Concept No. 6), ¶25.  In addition, "essential" to qualifying as an "asset" is that it "embodies a ***probable future benefit*** that involves a capacity . . . to contribute directly or indirectly ***to future net cash inflows***."  *Id*., ¶26.  Thus, to qualify as an asset under GAAP, an asset must be likely to receive a future economic benefit.  *See CNG Transmission Corp. v. FERC*, 40 F.3d 1289, 1296 (D.C. Cir. 1994) ("FERC does not act arbitrarily or capriciously by denying regulatory asset treatment for a gas loss in the absence of a showing that the regulated party will likely receive a future economic benefit by recouping the loss in its future rates.").

Dr. Ferrell's assumption also directly contradicts Anadarko's own representations regarding its compliance with GAAP.  As a publicly traded company, Anadarko was required to prepare its financial statements in compliance with GAAP.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc*., 2013 WL 6441843, at *2 (N.D. Cal. Dec. 9, 2013) (citing 17 C.F.R. §210.4-01(a)(1)) ("Compliance with GAAP is a basic obligation of publicly traded companies, and [f]inancial statements filed with the SEC which are not prepared in accordance with GAAP will be presumed to be misleading or inaccurate.").  Consistent with these obligations, Anadarko publicly

represented leading up to and throughout the Class Period that its financial statements were prepared in accordance with GAAP.  *See* Ex. 6 (Anadarko Form 10-K, dated December 31, 2014) at 93 ("The Consolidated Financial Statements have been prepared in conformity with accounting principles generally accepted in the United States."); Ex. 7 (Anadarko Form 10-K, dated December 31, 2016) at 91 ("The consolidated financial statements have been prepared in conformity with GAAP.").

Dr. Ferrell's deposition testimony further demonstrates that his opinions have no basis in fact.  For example, when asked whether Anadarko's $902 million write-off of Shenandoah assets indicated that its expected future economic benefits were reduced to zero, Dr. Ferrell took issue with the question, claiming that the write down was not a "DCF as an economist would think about it."  Ex. 1 at 198:4-12.  However, this too reflects a misunderstanding of basic GAAP principles.  In the event that the book value of an asset exceeds its fair value, GAAP requires a company to recognize an impairment whenever the book value an asset "exceeds *the sum of the undiscounted cash flows* expected to result from the use and eventual disposition of the asset."  Ex. 8 (FASB Accounting Standards Codification 360, Property, Plant and Equipment, Impairment or Disposal of Long-Lived Assets, Measurement of an Impairment Loss, 360-10-35-17).  In other words, GAAP requires the very test that Dr. Ferrell assumes did not occur.

For all of these reasons, Dr. Ferrell's assumptions lack any basis in the factual record and should be excluded.  *Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at *6 (N.D. Tex. Jan. 14, 2010) (excluding opinion as irrelevant, reasoning that "an understanding of this [irrelevant] fact" is not at issue and "would not assist the trier of fact in resolving a fact

issue in this case"); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144(1997) ("[n]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

**B.    Dr. Ferrell's May 3, 2017 Event Study Concerning ConocoPhillips Is Unreliable and Should Be Excluded**

The Court should also exclude Dr. Ferrell's opinions based on his May 3, 2017 event study concerning ConocoPhillips as unreliable.  To be admissible, an "expert's testimony must be reliable at every step." *Macy v. Whirlpool Corp.*, 613 F. App'x 340, 344 (5th Cir. 2015)."  Relevant to the reliability inquiry is whether "the known or potential rate of error of a technique or theory when applied." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998).  Overall, the "objective" is to ensure that an expert employs the same level of intellectual rigor that characterizes the practice of an expert in the field. *Id.* at 276.

Here, however, without disclosing the rate of error for his COP Event Study, Dr. Ferrell nonetheless relies on it to opine that *Anadarko*'s corrective disclosure about Shenandoah after market close on May 2, 2017, did not cause *Anadarko*'s statistically significant price decline following its disclosure. *See* Rebuttal Report, ¶30.

However, single firm event studies ("SFES") – like the COP Event Study Dr. Ferrell seeks to rely on here – have been recognized by courts and the academic literature alike as inherently unreliable because they lack sufficient sample size or "power" to accurately detect price impacts unless they concern large-impact events.  Indeed, as the authors of *Event Studies in Securities Litigation: Low Power, Confounding Effects, and Bias* explained:

- 11 -

First, an SFES often has **low statistical "power" to detect an economically meaningful price impact**, which typically must be at least approximately twice as large as the standard deviation of daily (abnormal) returns for the examined firm. But requiring conventional levels of statistical significance when power is low effectively **gives a "free pass" to economically meaningful securities fraud** because the SFES simply cannot detect price impacts **below a high threshold**. Courts, ignoring low power, then conclude that some economically large price impacts are immaterial. ***Courts err because of their mistaken premise that statistical insignificance indicates the probable absence of a price impact***. Overreliance on statistical significance without consideration of statistical power "leads to a decision-making regime in which the probability of an incorrect exoneration far exceeds the probability of an incorrect condemnation."

Alon Brav & J.B. Heaton, *Event Studies in Securities Litigation: Low Power, Confounding Effects, and Bias*, 93 Wash. U. L. Rev. 583, 586 (2015) ; Jill E. Fisch et al., *The Logic and Limits of Event Studies in Securities Fraud Litigation*, 96 Tex. L. Rev. 553, 615 (2018) ("Recent work has pointed out that in single-firm event studies used in securities litigation, requiring a Type I error rate of only 5% yields ***an extremely high Type II error rate***.")

The use of SFES thus unavoidably involves the outsized risk of wrongly concluding an absence of price impact where there was one. For this reason, numerous courts have declined to find a lack of price impact at class certification based on the results of an event study. *See, e.g.*, *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019) ("A statistically significant price adjustment following a corrective disclosure is evidence the original misrepresentation did, in fact, affect the stock price. The converse, however, is not true – the absence of a statistically significant price adjustment does ***not*** show the stock price was unaffected by the misrepresentation.") (emphasis in original); *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 394 (N.D. Ga. 2019) ("For price impact purposes, the null hypothesis under examination is that the stock price of the subject

- 12 -

company was ***not*** impacted by the alleged misrepresentations.  It is axiomatic that 'failure to rebut the null hypothesis does not necessarily mean that a misrepresentation had no price impact.'"); *see also In re Petrobras Sec*., 862 F.3d 250, 278-79 (2d Cir. 2017) (recognizing that event studies with "small sample sizes may limit statistical power, meaning that only very large-impact events will be detectable").

Dr. Ferrell's failure to disclose the rate of Type II errors alone is grounds for exclusion under the reliability prong.  *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2022 WL 17480906, at *27 (S.D. Fla. Dec. 6, 2022) (finding that testimony was unreliable in part because "rates of error" were unknown and reasoning that moving party did "not have a burden to demonstrate that the rates of error are high").

Dr. Ferrell's COP Event Study should also be excluded for other reasons.  Not only is it an apples-to-oranges comparison because ConocoPhillips was not the operator and had announced its exit from deepwater GOM two years earlier, but also ConocoPhillips lower 30% working interest in Shenandoah at the end of the Class Period meant the impact of the corrective disclosure would be less than Anadarko's ($977 million).  Steinholt *Daubert* Report, ¶12.  According to Dr. Ferrell's own data, an impact of $977 million would only reduce ConocoPhillips' much greater market capitalization of $57,770 million on May 2, 2017 by 1.69%, which falls below Dr. Ferrell's own benchmark of 2.17%, and below the lower 1.83% benchmark needed for statistical significance.  *Id*., ¶¶7-10.  Accordingly, the COP Event Study is incapable of detecting the impact of Shenandoah news since its impact of -1.69% is less than the -2.17% benchmark Dr. Ferrell used for statistical significance.  *Id*., ¶11.  In addition, based upon Dr. Ferrell's own parameters, the COP Event Study has

- 13 -

a ***Type II error rate of 67%***, meaning that it is ***more likely to be wrong than right***. *Id.*, ¶12.  This high ***known*** rate error falls far below the permissible thresholds of reliability. *Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999) (affirming exclusion of opinions where, *inter alia*, proponent's theory had no known potential rate of error).

Accordingly, Dr. Ferrell's COP Event Study should be excluded.

## VII.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court exclude certain testimony by Defendants' proposed expert Dr. Ferrell as inadmissible.

DATED: March 16, 2023                    Respectfully submitted,

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge


                                                      s/ Joe Kendall
                                         _____
                                                    JOE KENDALL

                                         3811 Turtle Creek Blvd., Suite 1450
                                         Dallas, TX  75219
                                         Telephone:  214/744-3000
                                         214/744-3015 (fax)

                                         Texas Local Counsel for Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
JASON A. FORGE
RACHEL L. JENSEN
FRANCISCO J. MEJIA
MEGAN A. ROSSI
RAPHAELLA FRIEDMAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Class Counsel

- 15 -

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 3,745 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED: March 16, 2023

s/ Joe Kendall<br>
JOE KENDALL

## CERTIFICATE OF CONFERENCE

On March 15, 2023, Class Counsel conferred telephonically with Defendants' counsel regarding the relief requested in this motion. Defendants' counsel indicated that Defendants will oppose this motion.

DATED: March 16, 2023

s/ Joe Kendall<br>
JOE KENDALL

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 16th day of March, 2023.


s/ Joe Kendall
_____
JOE KENDALL

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared

in this matter via the Court's CM/ECF system on this, the 6th day of April, 2023.


s/ Joe Kendall
JOE KENDALL