UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § § | Civil Action No. 4:20-cv-00576 |
| | | <u>CLASS ACTION</u> |
| | | The Honorable Charles R. Eskridge III |

**PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY BY DEFENDANTS' PROPOSED EXPERT PETER KELLER**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................... 1

II.   NATURE AND STAGE OF THE LITIGATION ................................................ 2

III.  FACTS NECESSARY TO RESOLUTION OF THE MOTION ........................... 2

IV.   ISSUE FOR RESOLUTION ...................................................... 2

V.    APPLICABLE LEGAL STANDARDS ................................................. 2

VI.   ARGUMENT ........................................................................ 5

      A.    Keller's Legal Conclusions Purporting to Tell the Jury What Result
            to Reach Are Improper. .................................................. 5

      B.    Keller's Opinions About What Investors Actually "Understood" or
            "Expected" Are Inadmissible. ....................................... 10

            1.    Keller's Opinions About What Investors Understood Is
                  Speculative and Subjective. ........................................ 10

            2.    Keller's Opinions Are Impermissible "State-of-Mind"
                  Testimony. ........................................................ 13

      C.    Keller Is Unqualified to Offer a Market-Efficiency Opinion and
            Lacks a Reliable Methodology. ...................................... 14

      D.    Keller's Opinion About Post-Class-Period Efforts by Other
            Companies to Develop Shenandoah Should Be Excluded ....................... 16

VII.  CONCLUSION ................................................................ 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Askanase v. Fatjo,*
130 F.3d 657 (5th Cir. 1997) ............................................................................ 5, 6

*Brown v. China Integrated Energy Inc.,*
2014 WL 12576643 (C.D. Cal. Aug. 4, 2014) ............................................. 14

*Crow v. United Ben. Life Ins. Co.,*
2001 WL 285231 (N.D. Tex. Mar. 16, 2001) ............................................. 16

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993) ...................................................................................*passim*

*Fetty v. City of Baton Rouge,*
518 F. Supp. 3d 923 (M.D. La. 2021) ........................................................ 4, 5

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.,*
96 F.3d 135 (5th Cir. 1996) ............................................................................. 4

*Goode v. City of Southaven,*
2018 WL 4691330 (N.D. Miss. Sept. 27, 2018) ........................................... 6

*Goodman v. Harris Cnty.,*
571 F.3d 388 (5th Cir. 2009) ........................................................................ 4, 5

*Halliburton Co. v. Erica P. John Fund, Inc.,*
573 U.S. 258 (2014) ......................................................................................... 15

*In re Stratosphere Corp. Sec. Litig.,*
66 F. Supp. 2d 1182 (D. Nev. 1999) .............................................................. 9

*In re Twitter, Inc. Sec. Litig.,*
2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) .............................................. 8

*In re Vivendi, S.A. Sec. Litig.,*
838 F.3d 223 (2d Cir. 2016) .......................................................................... 17

*Johnson v. Arkema, Inc.,*
685 F.3d 452 (5th Cir. 2012) ........................................................................ 3, 4

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999) ....................................................................................... 3, 14

4855-2604-3991.v1

**Page**

*Lumiere v. United States*,
2022 WL 866365 (S.D.N.Y. Jan. 18, 2022)
*rep. & rec. adopted*, 2022 WL 861832 (S.D.N.Y. Mar. 23, 2022) ............................ 11

*Marquette Transp. Co. Gulf-Inland LLC v. Navigation Mar. Bulgarea*,
2022 WL 2209056 (E.D. La. Apr. 1, 2022) ................................................. 5

*Moore v. Ashland Chem. Inc.*,
151 F.3d 269 (5th Cir. 1998) ................................................................ 16

*Orthoflex, Inc. v. ThermoTek, Inc.*,
986 F. Supp. 2d 776 (N.D. Tex. 2013) .................................................... 3

*Owen v. Kerr-McGee Corp.*,
698 F.2d 236 (5th Cir. 1983) ................................................................ 5

*Puga v. RCX Sols., Inc.*,
922 F.3d 285 (5th Cir. 2019) ........................................................... 3, 10

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ................................................................ 6

*Robinson v. Ethicon, Inc.*,
2021 WL 5762720 (S.D. Tex. Dec. 3, 2021) .......................................... 13

*Rolls-Royce Corp. v. Heros, Inc.*,
2010 WL 184313 (N.D. Tex. Jan. 14, 2010) ............................................ 9

*Russ v. Safeco Ins. Co. of Am.*,
2013 WL 1310501 (S.D. Miss. Mar. 26, 2013) ........................................ 8

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) .............................................................. 16

*SEC v. Daifotis*,
2012 WL 2051193 (N.D. Cal. June 7, 2012) .......................................... 11

*Shu-Hui Wu v. Miss. State Univ.*,
626 F. App'x 535 (5th Cir. 2015) ......................................................... 17

4855-2604-3991.v1

**Page**

*Torres v. Cnty. of Oakland*,
    758 F.2d 147 (6th Cir. 1985) ...................................................................... 6

*United States v. Barile*,
    286 F.3d 749 (4th Cir. 2002) ...................................................................... 8

*United States v. Scop*,
    846 F.2d 135 (2d Cir. 1988)...................................................................... 6, 7

*United States v. Thomas*,
    847 F.3d 193 (5th Cir. 2017) ...................................................................... 5

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ...................................................................... 4

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000)................................................................................... 3

## STATUTES, RULES AND REGULATIONS

Federal Rules of Evidence
    Rule 402 ........................................................................................... 16
    Rule 403 ................................................................................. 4, 16, 17
    Rule 702 ........................................................................... 3, 4, 10, 16

17 C.F.R.
    §240.10b-5 .......................................................................................... 6, 9

4855-2604-3991.v1

## I.    INTRODUCTION

In the seminal case of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court emphasized the important gatekeeping role that district courts play in screening expert testimony under the Federal Rules of Evidence, recognizing that "'[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.'" *Id.* at 595 (quoting J. Weinstein).  Accordingly, the Supreme Court holds a proponent of expert testimony must prove by the preponderance of the evidence three keys of (1) reliability, (2) relevance, and (3) proper scope.  *Id.* at 589.

In this case, Defendants propose five experts, including their former banker Peter Keller ("Keller").  Keller seeks to prove Defendants' truth-on-the-market defense and defend Defendants' conduct and statements through his November 9, 2022 expert report ("Keller Report") (Ex. 1)[1] and January 25, 2023 rebuttal report ("Keller Rebuttal Report") (Ex. 2).  In pursuing these ends, however, Mr. Keller has chosen several forbidden means, including legal conclusions that dictate to the jury how to decide the claims, speculation about what "investors understood" about Shenandoah, and distractions about other companies years after the relevant time period.  These opinions fail to satisfy the three keys of reliability, relevance, and proper scope, and thus the Court should lock the gate on them at trial.

Plaintiffs respectfully request that the Court grant their motion to exclude certain testimony by Defendants' proposed expert Keller.

---

[1]    All exhibits referenced herein are attached hereto unless otherwise noted.

## II.     NATURE AND STAGE OF THE LITIGATION

This securities fraud action was filed on February 19, 2020 (ECF 1), and the operative complaint was filed on August 17, 2020 (ECF 55).  Judge Atlas denied Defendants' motion to dismiss on January 19, 2021.  ECF 63.  And on September 28, 2022, the Court certified the Class.  ECF 141.

The motions cut-off is March 16, 2023.  ECF 150 at 1.  The final pretrial conference is set for September 19, 2023.  *Id.* at 2.

## III.    FACTS NECESSARY TO RESOLUTION OF THE MOTION

One of the five experts Defendants propose is Keller, a former banker for Anadarko at Bank of New York/BNY Mellon.  *See* Keller Report at 4.  Keller's highest degree is a bachelor's degree in history, environmental studies, and economics in 1975.  *Id*.  Keller does not have an MBA degree, is not a Chartered Financial Analyst ("CFA"), holds no licenses, is not a lawyer, and is not a disclosure expert.  *See* Ex. 3 at 23:23-24:2, 25:14-26:3.  No court has ever admitted Keller's testimony in a securities fraud case.

## IV.     ISSUE FOR RESOLUTION

Whether the Court should exclude certain testimony of Defendants' proposed expert Keller under the Federal Rules of Evidence and *Daubert.*

## V.      APPLICABLE LEGAL STANDARDS

Federal Rule of Evidence ("Rule") 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" ***if***:

4855-2604-3991.v1

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

*Id.*

"In *Daubert*, the Supreme Court 'explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).[2]  In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended *Daubert* to "all expert testimony." *Id.* at 147. Thus, expert testimony must meet "exacting standards of reliability" to be admissible. *See Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

On a motion to exclude, "the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019).  The proponent of expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (N.D. Tex. 2013) (citing *Daubert*, 509 U.S. at 592 n.10; *Johnson*, 685 F.3d at 459). This burden includes a showing that the testimony is: (1) reliable; (2) relevant; and (3) within the proper scope of expert testimony. *See Daubert*, 509 U.S. at 589.

As to reliability, the "expert opinion [must] 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'"

---

[2]     Citations are omitted and emphasis is added throughout unless otherwise indicated.

4855-2604-3991.v1

*Johnson*, 685 F.3d at 459.  Under *Daubert*, the following non-exclusive list of factors are considered for the reliability inquiry:

> "(1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community."

*Id.*  These factors are aimed at ferreting out "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997).

As to relevance, "the proponent [must] demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson*, 685 F.3d at 459.

As to scope, the Fifth Circuit holds that "an expert may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).  Likewise, an expert is prohibited from "go[ing] beyond the scope of his expertise in giving his opinion." *Id.* (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (rejecting "opinion of dishonesty" as "beyond the scope of expertise")).

Even if testimony is admissible under Rule 702, it may still be excluded under Rule 403 if its probative value is substantially outweighed by, *inter alia*, "'unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time.'" *Fetty v. City of Baton Rouge*, 518 F. Supp. 3d 923, 928 (M.D. La. 2021).

## VI.   ARGUMENT

### A.   Keller's Legal Conclusions Purporting to Tell the Jury What Result to Reach Are Improper.

First, Keller proffers improper legal conclusions purporting to tell the jury what result to reach in this case.  These opinions at issue are set forth in Appendix A.

The Fifth Circuit holds "an expert may never render conclusions of law" (*Goodman*, 571 F.3d at 399), or offer legal opinions.  *See Askanase v. Fatjo*, 130 F.3d 657 (5th Cir. 1997).  As the Fifth Circuit observed in *Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. 1983), "allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."  *Id.* at 240.  Therefore, courts have rejected expert testimony that purports to tell the jury what the law is, or what result to reach.  *See id.*; *United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017) ("Federal Rules of Evidence 'afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . '"); *Fetty*, 518 F. Supp. 3d at 930-31 (excluding expert opinion about whether use of force was reasonable).

In *Owen*, the Fifth Circuit affirmed exclusion of expert testimony about the legal "cause of the accident" because "[w]hether or not [the plaintiff's] acts were the 'cause of the accident' is the issue the jury must resolve after appropriate legal instructions."  698 F.2d at 240; *see, e.g.*, *Marquette Transp. Co. Gulf-Inland LLC v. Navigation Mar. Bulgarea*, 2022 WL 2209056, at *4 (E.D. La. Apr. 1, 2022) (excluding expert testimony about the "cause of the collision" and plaintiff's contributory fault as "legal conclusions that the jury must decide").  In *Askanase*, the Fifth Circuit affirmed exclusion of expert testimony about

whether a company's "'officers and directors fulfilled their fiduciary duties to the Company, its creditors, and shareholders.'"  130 F.3d at 672-73.  The Fifth Circuit reasoned "[s]uch testimony is a legal opinion and inadmissible" and "[w]hether the officers and directors breached their fiduciary duties is an issue for the trier of fact to decide." *Id.* at 673.

Courts also exclude opinions that draw "directly upon the language of the statute" as "legal conclusions" that go well beyond the province of an expert.  *United States v. Scop*, 846 F.2d 135, 140-41 (2d Cir. 1988); *Goode v. City of Southaven*, 2018 WL 4691330, at *5 (N.D. Miss. Sept. 27, 2018) (courts exclude expert testimony "'using judicially defined or legally specialized terms'").  Indeed, such testimony "'give[s] the appearance that the court was shifting to witnesses the responsibility to decide the case,'" whereas the judge's role is to instruct the jury on the law so the jury can fulfill *its* responsibility to apply the law to the facts.  *Scop*, 846 F.2d at 140-41; *see also Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) ("The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury.").

The class here alleges Defendants violated the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5, including that "Defendants (a) engaged in a ***scheme to defraud***; (b) 'omitted to state one or more material facts necessary' to make statements 'not ***misleading***'; and (c) engaged in a fraudulent or ***deceptive act***, practice, and course of business."  ECF 63 at 6.  These claims draw directly from the statutory language, which in turn has been the "subject of diverse judicial interpretations."  *Scop*, 846 F.2d at 140-41; *see, e.g.*, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011) (interpreting term "misleading" in context of the Exchange Act and Rule 10b-5).  The same language will be

- 6 -

part of the jury instructions by which this Court will lay out the legal standards for the jury to apply to the facts.  *See* 5th Cir. Pattern Civil Jury Instructions at 75-76 (2020).

Despite the prohibition on legal conclusions, Keller seeks to tell the jury how they should decide the claims, including that: (1) Defendants did not engage in a "fraudulent scheme"; (2) Defendants' statements were "truthful and not misleading"; (3) Defendants did not engage in "deceptive practices"; and (4) Defendants' statements were "legally immaterial."  Each exceeds the scope of proper testimony.

For example, at his deposition, Keller confirmed that he was seeking to opine that Defendants did not engage in a scheme to defraud or a deceptive business practice:

> Q.     . . . [A]re you opining that the defendants did not engage in a fraudulent scheme in this case?
>
> A.     Yes.  I don't believe there was a fraudulent sche - – scheme.
>
> Q.     And are you opining that defendants did not engage in any deceptive business practices?
>
> A.     Yes.

Ex. 3 at 84:4-12.  Such testimony is barred.  *See, e.g.*, *Scop*, 846 F.2d at 140-41 (affirming exclusion of expert testimony that "drew directly upon the language of the statute and accompanying regulations" in seeking to opine on "fraud").

Likewise, at his deposition, Keller confirmed that he seeks to testify "whether disclosures by Anadarko were truthful or misleading."  Ex. 3 at 44:8-15; *see also id.* at 34:21-24 ("Q. In this case are you offering an opinion that defendants' allegedly misleading statements were not misleading to investors?  A. That is correct."); Keller Rebuttal Report at 4, 15.  But courts have repeatedly excluded expert testimony about whether a defendant's

statement is "misleading" because the testimony "would usurp the role of jury as fact-finder." *See, e.g.*, *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at *9 (N.D. Cal. Apr. 20, 2020) (excluding testimony in securities-fraud case about whether "Twitter's response to the SEC's comment letter . . . was 'misleading'" as it "would usurp the role of the jury as fact-finder"); *see also United States v. Barile*, 286 F.3d 749, 761 (4th Cir. 2002) (affirming exclusion of expert testimony about FDCA phrase "materially misleading"); *Russ v. Safeco Ins. Co. of Am.*, 2013 WL 1310501, at *22 (S.D. Miss. Mar. 26, 2013) (excluding, in the context of an insurer's "concealment-misrepresentation defense," expert testimony regarding whether statements were "'misleading,' as those issues are for the jury to determine").

Worse still, Keller seeks to improperly dictate to the jury what result to reach even though he is in no position to do so. At his deposition, Keller admitted that he: (1) assumed Defendants' statements were truthful; and (2) did not review any internal documents to discern whether or not the statements were truthful in fact:

> Q. . . . [Y]ou're assuming that all of the statements by the company were true and accurate?
>
> A. Yes, I am.
>
> Q. And that's goes for all your opinions; correct?
>
> A. They were true and accurate based on the information known at the time. Yes, that's correct.
>
> *     *     *
>
> Q. But you haven't looked at any internal documents?
>
> A. That's correct.

Ex. 3 at 102:15-103:16, 168:14-19.

The apex of Keller's recklessness is reflected in his opinion that the "risks involved in Shenandoah were fully disclosed" without reviewing a single internal document to find out what Anadarko actually knew about Shenandoah's risks at the time. *See id.* at 85:6-10, 102:11-103:16. Keller's opinions are thus not only impermissible legal conclusions but unreliable, too. They are also irrelevant because his "conclusion [is] based on assumptions unsupported by the facts of the case." *Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at *6 (N.D. Tex. Jan. 14, 2010).

Finally, Keller seeks to testify "that defendants' alleged omissions were legally immaterial." Ex. 3 at 34:25-35:3. On its face, this testimony is an impermissible legal conclusion and thus inadmissible. *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1188 (D. Nev. 1999) ("A district court should be especially cautious" where, as here, an "expert[] comment[s] upon the materiality or fraudulence of disputed misstatements in [a] securities fraud action[].").

Keller's "legally immaterial" opinion is fatally flawed in at least two other ways. First, he has no generally accepted methodology for arriving at his conclusion. Keller did not undertake any economic analysis, let alone an event study, the "gold standard" for determining the impact of an event on the stock price. Ex. 3 at 26:19-20 ("Q. Did you undertake an event study? A. I did not."); *id.* at 48:5-7 ("Q. You didn't perform any other economic analysis? A. I did not."); Matthew L. Mustokoff & Margaret E. Mazzeo, *Loss Causation on Trial in Rule 10b-5 Litigation a Decade After Dura*, 70 Rutgers U. L. Rev. 175, 178 n.8 (2017) ("[a]n event study is '[t]he gold standard' methodology"). Second, Keller admitted he doesn't know whether "all material adverse information known by

Anadarko about Shenandoah during the class period was known to investors" because he hadn't read any internal documents.  *See* Ex. 3 at 117:22-118:18.

In sum, Keller's opinions that (1) Defendants did not engage in a "fraudulent scheme," (2) Defendants' statements were "truthful and not misleading," (3) Defendants did not engage in "deceptive practices," and (4) Defendants' statements were "legally immaterial" are impermissible legal conclusions and lack a reliable basis.  If the Court allows Keller to testify on these legal matters nevertheless, Plaintiffs reserve the right to submit rebuttal reports and testimony on same.

**B.  Keller's Opinions About What Investors Actually "Understood" or "Expected" Are Inadmissible.**

In his opening and rebuttal reports, Keller purports to opine over ***120 times*** about what "investors understood," "would have understood," and "expected" about Shenandoah during the Class Period.  *See* Appendix A.  These opinions should be excluded as speculative, subjective, and improper state-of-mind testimony.

**1.  Keller's Opinions About What Investors Understood Is Speculative and Subjective.**

Keller's opinions about what Anadarko investors "understood" about Shenandoah is speculative and subjective.  As the Supreme Court held in *Daubert*, the term "knowledge" in Rule 702 "connotes more than subjective belief or unsupported speculation."  509 U.S. at 590.  Likewise, the Fifth Circuit holds that, "[t]o be reliable, expert testimony must 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'"  *Puga*, 922 F.3d at 293.

Courts hold that expert testimony purporting to opine as to what "investors understood" is inadmissible.  In *SEC v. Daifotis*, 2012 WL 2051193 (N.D. Cal. June 7, 2012), the court excluded a proposed expert's opinions "about what investors 'actually understood' or 'should have understood' based on the [defendant's] disclosures" reasoning that it was "unhelpful and not the proper subject of expert testimony, especially given that Mr. Lundelius did not speak to a single investor."  *Id.* at *5; *see generally Lumiere v. United States*, 2022 WL 866365, at *28 (S.D.N.Y. Jan. 18, 2022) (government objected to question about what "investors understood," which "Judge Rakoff termed 'well taken' (likely because the question called for speculation as to what the unnamed investors understood)"), *rep. & rec. adopted*, 2022 WL 861832 (S.D.N.Y. Mar. 23, 2022).

Here, Keller seeks to opine on what "investors understood" on over ***120*** occasions in his reports.  *See* Appendix A (opening report 84 times, rebuttal report 40 times).  And he does so, while admittedly having never surveyed investors, or even talked to a single one:

> Q.    Did you survey any Anadarko investors?
>
> A.    I did not.
>
> Q.    Did you talk to any Anadarko investors?
>
> A.    I did not.

Ex. 3 at 56:22-25; *see also id.* at 75:17-24.

In fact, Keller couldn't name a single investor whose "understanding" he's opining on other than hazarding a guess it's Georgia Firefighters' Pension Fund from looking at an old caption.  *See id.* at 61:10-67:22.  At his deposition, Keller had no idea who is in the Class, who the Class Representatives are, or who their investment managers are.  *Id.*

- 11 -

Beyond a lack of basic understanding about the investor Class in this case, Keller was unable to provide a principled definition of "sophisticated investors" whose understanding he seeks to testify about, admitting it was "anecdotal." *Id.* at 69:1-11. Nor could Keller differentiate "sophisticated investors" from "professional investors," the latter category which he abandoned at his deposition. *See id.* at 58:10-61:9.

And while Keller admitted that to characterize what investors understood, he needed "every relevant piece of information" (*id.* at 75:17-21), his opinions were largely based on "documents that were presented to me by counsel for the defendants" (*id.* at 80:12-19) and only a few hundred of 20,000 documents produced by analysts (to the extent "analyst" overlaps with investors); only some documents produced by investment managers (he was unable to identify the Class Representatives' managers); and he couldn't say as to the Class Representatives' documents as he did not know who they were. *Id.* at 14. Accordingly, Keller lacks a reliable basis to assert his opinions.

Aside from these serious flaws, Keller admitted investors are not monoliths who can be painted such with a broad brush. He readily agreed certain investors likely disagree with his opinions, even as he purports to speak on their behalf. *See id.* at 69:1-11. Keller also disregarded documents that did not fit his narrative, such as those evincing the "understanding" of the Class Representatives' investment managers that sharply contradict his "expert" opinions. *See, e.g.*, *id.* at 96:10-97:21.

Ultimately, Keller admitted – as he had to – that investors have different risk appetites and different opinions, which "are colored by subjective – subjective views." *Id.* at 71:3-12, 92:8-93:18. And that is certainly endemic of Keller's testimony. The reality is that Keller's

opinions, packaged as what "investors understood," are really his own subjective views. This reality is driven home by the absence of any event study or other economic analysis. *See id.* at 26:19-20 (lack of event study); *id.* at 48:5-7 (lack of any other economic analysis); Ex. 4 (David Tabak, *Making Assessments About Materiality Less Subjective Through the Use of Content Analysis*, NERA at 6) (Whereas "an event study provides statistical evidence about how the market actually did react to the information," an expert's "subjective analysis of what is or what is not material [to investors], on the other hand, adds little more to the underlying facts than the expert's own opinion about the materiality of those facts.")). Keller's opinions about what investors actually "understood" or "expected" are inadmissible as subjective and unreliable.

### 2. Keller's Opinions Are Impermissible "State-of-Mind" Testimony.

Keller's opinions about what investors actually "understood" or "expected" should also be excluded as improper state-of-mind testimony. In this Circuit, state-of-mind testimony is inadmissible "when it does not 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Robinson v. Ethicon, Inc.*, 2021 WL 5762720, at *4 (S.D. Tex. Dec. 3, 2021). Here, Keller seeks to offer testimony about investors' state-of-mind, *i.e.*, subjective understanding or expectations, concerning Shenandoah. Keller has not spoken to any Class members, does not know who they are, and lacks a reliable basis for testifying about their "actual understanding" about Shenandoah. Accordingly, the bar on state-of-mind testimony is one more reason why these opinions should be excluded.

### C.  Keller Is Unqualified to Offer a Market-Efficiency Opinion and Lacks a Reliable Methodology.

The Court should also exclude Keller's market-efficiency opinion because he is unqualified to offer it.  The opinion at issue is set forth in section 2.1 of his opening report.

As the Supreme Court explained, district courts must ensure an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

Here, Keller falls far short in the realm of market efficiency, far shorter than proposed experts that courts have previously ***rejected***.  In *Brown v. China Integrated Energy Inc.*, 2014 WL 12576643 (C.D. Cal. Aug. 4, 2014), for example, the court rejected a proffered expert on matters of market efficiency even where he had an MBA, because he had little experience in the field of market efficiency, was not a CFA, which the court described as "a widely recognized standard for measuring the competence of financial analysts," and had little experience with event studies.

Keller has even fewer credentials to boast of.  He is not a CFA, has no MBA, his highest level of education is a Bachelor's degree, he has no licenses, and no court has ever admitted his opinions in a securities fraud case.  *See* Ex. 3 at 23:23-24:2, 25:14-26:3.

Keller's lack of understanding of market efficiency was on full display at his deposition.  For example, he embraced a "'strong form of market efficiency,'" which is a debunked theory that hypothesizes even non-public information is priced into the stock.  *See id.* at 27:3-15.  That is not the correct standard, as Defendants' other expert Dr. Allen Ferrell attested to at his deposition:

Q     And now, when you assume market efficiency, are you embracing a strong form of market efficiency?

A     No, it's – efficiency in this context means semi-strong efficiency.

Q     It would be a mistake to call . . . to embrace the strong form of market efficiency at this point; right?

A     I just don't think that's relevant here.

Q     . . . [T]hat would be an incorrect form of market efficiency to espouse in a securities fraud case; right?

A     I just – I've never seen that.  When I say the word "efficiency," I mean semi-strong efficiency.

Q     And that's the correct standard, more or less; correct?

A     I'm not opining legally, but when I use the term "efficiency," I mean semi-strong efficiency.

Q     That's the accepted version of efficiency in these types of cases; correct?

A     I believe that's accurate.

Ex. 5 at 25:20-26:15.  Indeed, the *Basic* fraud-on-the-market presumption is based on the principle that "'most publicly available information'" is reflected in the stock price.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 289 (2014).

Either ignoring *Basic* or ignorant of it, Keller took another step down the wrong path, claiming non-public information and even ***opinions*** are ***immediately*** impounded into the stock price.  *See* Ex. 3 at 27:18-28:14.  This view violates the Grossman-Stieglitz paradox – a well-established paradox of which Keller is also unaware.  *Id.*; *see* Ex. 6 (Grossman-Stieglitz paradox posits that perfectly efficient markets are impossible because there would be no profit to gathering information, little reason to trade, and markets would collapse).  Nor could Keller say which opinion of conflicting ones would be the one actually impounded

- 15 -

in the stock price, and after hemming and hawing, finally arrived at the vague "something that's in the middle would be my opinion."  *See* Ex. 3 at 30:16-17.

Finally, Keller's lack of qualifications bleed over into his lack of reliable methodology.  As aforementioned, Keller did not undertake an event study, the "gold standard" in securities fraud litigation or perform any other economic analysis.  *See id.* at 26:19-20, 48:5-7; Mustokoff & Mazzeo, 70 Rutgers U. L. Rev. 175 (2017).  Nor was Keller able to cite any peer-reviewed literature grounding his proposed methodology.  *See* Ex. 3 at 49:9-16.  The Court should exclude Keller's market-efficiency opinion as he lacks the qualifications or a reliable methodology to enter the fray in this arena.

### D.   Keller's Opinion About Post-Class-Period Efforts by Other Companies to Develop Shenandoah Should Be Excluded

Finally, Keller's testimony about the companies now trying to develop Shenandoah six years after Anadarko's $902 million write-down and abandonment of the project should be excluded as irrelevant under Rules 402 and 702 and confusing under Rule 403.  *See* Appendix A.

As the Fifth Circuit has emphasized, "expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (cleaned up); *accord Crow v. United Ben. Life Ins. Co.*, 2001 WL 285231, at *2 (N.D. Tex. Mar. 16, 2001).

Here, the Class claims concern whether Anadarko and its corporate representatives misled investors about Shenandoah's commercial viability and producible resource size and concealed negative information known ***at the time***.  *See* ECF 141 at 1-2; *Schleicher v.*

*Wendt*, 618 F.3d 679, 684 (7th Cir. 2010) ("Fraud depends on the state of events when a statement is made, not on what happens later.); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262 (2d Cir. 2016) (same).  These claims have nothing to do with investor pitches made by foreign companies years after Anadarko abandoned Shenandoah.  These companies may have different motivations, different talents and capabilities, and different technology.  After all, Google isn't proof that Ask Jeeves is commercially viable in 2023.  As the post-class period conduct of other companies is irrelevant, any expert testimony about these matters is likewise irrelevant.  *Shu-Hui Wu v. Miss. State Univ.*, 626 F. App'x 535, 540 (5th Cir. 2015) (excluding irrelevant expert testimony that proffered statistical data outside the relevant period).

Keller's testimony is also inadmissible under Rule 403 as any probative value (there is none) is substantially outweighed by the danger of confusing the jury about what is actually at issue – the Anadarko Defendants' alleged misconduct during the relevant time.  *See Daubert*, 509 U.S. at 595 (Rule 403 permits the exclusion of expert testimony "'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury'" and noting Rule 403 "'exercises more control over experts than over lay witnesses'").  Keller's testimony about other companies' investor pitches about Shenandoah post-class period should be excluded.

## VII.   CONCLUSION

Plaintiffs respectfully submit that the Court should exclude certain testimony by

Defendants' proposed expert Keller as inadmissible.

DATED: March 16, 2023                Respectfully submitted,

                                     KENDALL LAW GROUP, PLLC
                                     JOE KENDALL (Texas Bar No. 11260700)
                                     (SDTX Bar No. 30973)
                                     Attorney-in-charge


                                            s/ Joe Kendall
                                     _____
                                            JOE KENDALL

                                     3811 Turtle Creek Blvd., Suite 1450
                                     Dallas, TX  75219
                                     Telephone:  214/744-3000
                                     214/744-3015 (fax)

                                     Texas Local Counsel for Plaintiff

                                     ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                     MARK SOLOMON
                                     DANIEL S. DROSMAN
                                     JASON A. FORGE
                                     RACHEL L. JENSEN
                                     FRANCISCO J. MEJIA
                                     MEGAN A. ROSSI
                                     RAPHAELLA FRIEDMAN
                                     655 West Broadway, Suite 1900
                                     San Diego, CA  92101
                                     Telephone:  619/231-1058
                                     619/231-7423 (fax)

                                     Class Counsel

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4,585 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED: March 16, 2023

s/ Joe Kendall
_____
JOE KENDALL

## CERTIFICATE OF CONFERENCE

On March 15, 2023, Class Counsel conferred telephonically with Defendants' counsel regarding the relief requested in this motion.  Defendants' counsel indicated that Defendants will oppose this motion.

DATED: March 16, 2023

s/ Joe Kendall
_____
JOE KENDALL

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared

in this matter via the Court's CM/ECF system on this, the 16th day of March, 2023.


s/ Joe Kendall
_____
JOE KENDALL

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared

in this matter via the Court's CM/ECF system on this, the 6th day of April, 2023.


s/ Joe Kendall

JOE KENDALL