UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § § | Civil Action No. 4:20-cv-00576 |
| | | CLASS ACTION |
| | | The Honorable Charles R. Eskridge III |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER OR, IN THE ALTERNATIVE, CERTIFY FOR INTERLOCUTORY APPEAL THE COURT'S ORDER COMPELLING PRODUCTION OF INVESTIGATION DOCUMENTS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDINGS .............................. 3

III.    RELEVANT FACTUAL BACKGROUND ........................................ 3

     A.     The AAC Investigation and SEC Termination ............................. 3

     B.     Plaintiffs' Motion to Compel ............................................... 5

     C.     Defendants' Reliance on KPMG Audit Opinions ......................... 5

     D.     The Court's Order ......................................................... 6

IV.    STATEMENT OF ISSUES ...................................................... 7

V.      APPLICABLE LEGAL STANDARDS ......................................... 7

VI.    ARGUMENT ................................................................... 8

     A.     Reconsideration of the Order Is Not Warranted ........................... 8

         1.     The Court Correctly Identified Defendants' Use of the SEC Termination and AAC Findings as a Sword ....................................... 9

         2.     The Court Appropriately Found Subject-Matter Waiver ................ 12

         3.     Defendants' Newly Proposed Stipulation Is Irrelevant .................... 14

     B.     The Order Is Not Appropriately the Subject of a §1292(b) Appeal ............ 15

         1.     There Are No Controlling Questions of Law ................................... 15

         2.     Defendants Do Not Identify Substantial Grounds for a Difference of Opinion About the Court's Rulings ........................... 17

         3.     Permitting Immediate Appeal Will Only Delay Resolution of This Action ................................................................... 18

VII.   CONCLUSION ................................................................ 19

4890-6925-5780.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Cazorla v. Koch Foods of Miss., LLC*,
2015 WL 3970606 (S.D. Miss. June 30, 2015) ..................................................... 18

*Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*,
702 F.2d 67 (5th Cir. 1983) ......................................................................... 8

*DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*,
2017 WL 3484507 (S.D. Tex. Aug. 14, 2017) ........................................................ 8

*DataTreasury Corp. v. Wells Fargo & Co.*,
2009 WL 10679940 (E.D. Tex. Nov. 13, 2009) ..................................................... 13

*Doe 1 v. Baylor Univ.*,
2021 WL 9908355 (W.D. Tex. Aug. 23, 2021).................................................. 16, 17

*Doe 1 v. Baylor Univ.*,
335 F.R.D. 476 (W.D. Tex. 2020) .................................................................. 13

*Fannie Mae v. Hurst*,
613 F. App'x 314 (5th Cir. June 2, 2015) ........................................................... 15

*Fogleman-Laxey v. Guillory*,
2023 WL 2435103 (W.D. La. Mar. 9, 2023) ........................................................ 12

*Implicit LLC v. Fortinet, Inc.*,
2021 WL 2949472 (E.D. Tex. Mar. 28, 2021) ...................................................... 14

*In re Application of Chevron Corp. v. 3TM Consulting, LLC*,
2011 WL 13135155 (S.D. Tex. Jan. 10, 2011) ....................................................... 9

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
2017 WL 3620590 (S.D. Tex. Aug. 23, 2017) ........................................................ 7

*In re Itron, Inc.*,
883 F.3d 553 (5th Cir. 2018) ................................................................... 15, 18

*In re Royce Homes LP*,
466 B.R. 81 (Bankr. S.D. Tex. 2012) ................................................................ 15

*In re Symbol Techs., Inc. Sec. Litig.*,
2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017) ....................................................... 10

**Page**

*In re Tullius*,
2011 WL 5006673 (W.D. Tex. Oct. 20, 2011) ........................................................ 8, 18

*Lone Star Tech. Innovations, LLC v. ASUSTeK Comput. Inc.*,
2020 WL 6803252 (E.D. Tex. Apr. 28, 2020) ............................................................ 13

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) ................................................................................................... 16

*Pfeiffer v. Ajamie Pllc*,
2019 WL 13193376 (S.D. Tex. Dec. 2, 2019) ............................................................ 12

*SEC v. Brady*,
238 F.R.D. 429 (N.D. Tex. 2006) ............................................................................... 13

*SEC v. Microtune, Inc.*,
258 F.R.D. 310 (N.D. Tex. 2009) ............................................................................... 14

*Stolarik v. N.Y. Times Co.*,
2019 WL 4565070 (S.D.N.Y. Sept. 20, 2019) ............................................................ 10

*Swoboda v. Manders*,
2015 WL 9308266 (M.D. La. Dec. 22, 2015) ............................................................. 17

*Tex. v. Ysleta del Sur Pueblo*,
370 F. Supp. 3d 705 (W.D. Tex. 2018) ....................................................................... 17

*Total Safety v. Knox*,
2019 WL 6894683 (S.D. Tex. Dec. 18, 2019) ............................................................ 14

*Varel v. Banc One Cap. Partners, Inc.*,
1997 WL 86457 (N.D. Tex. Feb. 25, 1997) ................................................................ 12

*Willy v. Admin. Rev. Bd.*,
423 F.3d 483 (5th Cir. 2005) ........................................................................................ 9

## STATUTES, RULES AND REGULATIONS

28 U.S.C.
§1292(b) ...................................................................................................... *passim*

**Page**

Federal Rules of Civil Procedure
    Rule 30(b)(6)..................................................................................................... 1
    Rule 54(b) ............................................................................................., 7, 8, 14

Federal Rules of Evidence
    Rule 502(a).......................................................................................................... 12

4890-6925-5780.v1

## I.    INTRODUCTION

Defendants' Motion[1] is a quintessential example of what motions for reconsideration should ***not*** be: (i) a rehash of arguments previously made, considered, and rejected by the Court; (ii) a manufactured claim of error based on an abrupt change in Defendants' position ***after*** the Court ruled against them; and (iii) an outpouring of general discontent with the decision the Court reached applying undisputed law to the relevant facts.  Although the purpose of a motion for reconsideration is generally to correct manifest errors of law or fact or present newly discovered evidence, Defendants provide no legitimate basis for the Court to disturb its well-reasoned Order[2] ruling that Defendants waived attorney-client and work product protection with respect to the subject-matter of the Anadarko Audit Committee ("AAC") investigation.

First, any claim that the Order proceeds from an "incorrect premise that Defendants seek to rely on the Termination Letter or the SEC's decision to close its investigation to support their defense," or "to show the whistleblower allegations were unfounded or false," is inconsistent with Defendants' prior arguments in this case.  Motion at 1, 8.  Not only did Defendants ask ***both*** Class Representatives about the SEC's January 10, 2017 letter terminating its investigation ("Termination Letter") at their Federal Rule of Civil Procedure 30(b)(6) depositions in a clear attempt to influence their testimony, but Defendants' counsel

---

[1]    "Motion" refers to Defendants' Motion to Reconsider or, in the Alternative, Certify for Interlocutory Appeal the Court's Order Compelling Production of Investigation Documents (ECF 192).

[2]    "Order" refers to Opinion and Order Compelling Production of Documents (ECF 173), issued by the Court on March 31, 2023.

***explicitly told the Court*** that Defendants plan to tell the jury that the SEC investigation did not result in charges against Anadarko. Ex. 1 at 28:9-12 ("[I]f they're going to reference that Ms. Frye filed a letter with the SEC, in fairness we ought to be able to say that the SEC declined to press charges.").[3]

Second, the Court did not err in finding subject-matter waiver as to the AAC investigation. The Court appropriately considered the various fairness concerns involved, including Defendants' use of the Termination Letter as a sword and their previous disclosure of a substantial amount of attorney communications and work product to third-parties KPMG and J.P. Morgan, who in turn used that information in issuing a clean audit opinion and due diligence conclusions, respectively.

Third, Defendants cannot now reverse course by "stipulating" that they will not use the SEC termination in their defense. This argument could have – and should have – been made before the Court issued the Order. Instead, Defendants told this Court that they "obviously" would use the SEC termination at trial to defend against Plaintiffs' allegations. Regret over prior tactics is not a basis for a motion for reconsideration. In any event, Defendants ***continue*** to selectively use the SEC termination and AAC investigation materials as a sword against Plaintiffs by affirmatively relying on KPMG's audit opinions, as discussed in §VI.A.1., *infra*.

Defendants' proposed alternative to reconsideration – certification for immediate appeal under 28 U.S.C. §1292(b) – is equally unwarranted. Interlocutory appeals are

---

[3]   All exhibits referenced herein are attached hereto, and emphasis is added and internal citations are omitted throughout, unless otherwise noted.

intended to be **exceptional**, and for that reason, there are strict requirements for certification. Defendants come nowhere close to establishing that the Order's rulings – fact-specific determinations as to whether Defendants' particular use of documents and disclosure of materials to third-parties waived attorney-client and/or work product privilege – meet these requirements. Indeed, immediate appeal would serve only to delay resolution of a case that is swiftly proceeding to trial.

Defendants' Motion should be denied in its entirety.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

This securities fraud action was filed on February 19, 2020. ECF 1. The parties completed fact discovery, with the exception of the dispute before the Court, on October 20, 2022, and expert discovery on March 13, 2023. ECF 142. On March 16, 2023, the parties filed a total of eight *Daubert* motions, and Defendants moved for summary judgment. ECFs 156-158, 160-166.

On April 18, 2023, the Court granted the parties' joint motion to amend the pre-trial scheduling order so that, *inter alia*, Plaintiffs' opposition to Defendants' motion for summary judgment will be filed 21 days after Defendants produce the documents subject to the Order. ECF 190. The parties have requested a trial date from the Court in October-November 2023.

## III.   RELEVANT FACTUAL BACKGROUND

### A.   The AAC Investigation and SEC Termination

In May 2016, Anadarko's senior staff reservoir engineer and Shenandoah subsurface lead, Lea Frye ("Frye"), submitted a whistleblower complaint to the SEC alleging that

4890-6925-5780.v1

Anadarko had overstated the size and value of Shenandoah to investors.  ECF 55, ¶¶38-49, 71-74.

In response to Frye's complaint, the AAC engaged Norton Rose Fulbright US LLP ("NRF") to investigate Frye's allegations.  Order at 1.  NRF stayed in contact with the SEC throughout 2016, providing select documents and revealing details about the investigation. NRF also provided detailed information to Anadarko auditor KPMG on a dozen conference calls, including information about witness interviews and internal documents.  *See* ECF 122-1-122-3.  On September 8, 2016, Anadarko's general counsel held a conference call with J.P. Morgan to discuss the investigation and NRF's preliminary findings "in detail."  *Id.*

On November 22, 2016, NRF made a PowerPoint presentation to the SEC, which spanned 250 pages, lasted more than 4.5 hours, and included a Q&A session.  NRF revealed detailed information about its investigation, including its review of 300,000 documents and interviews of 28 Anadarko employees.  ECF 122-4.  NRF presented information in the light most favorable to Anadarko.  *See, e.g.*, *id.* at APC-00002638 (stating witnesses ***largely*** "agreed Shen-3 reduced uncertainty of the resource range"); *id.* at APC-00002643 ("interviewees ***generally*** agreed that Shen-3 allowed projection of oil-water contacts").  Its efforts succeeded, and on January 10, 2017, the SEC sent the Termination Letter terminating its investigation "[b]ased on the information we have as of this date."  ECF 122-5.

At depositions, Defendants used the Termination Letter to cross-examine the Class Representatives, asking one, "[d]oes [the Termination Letter] change your view as to any of the allegations in Iron Workers' complaint" (ECF 122-6 at 76), and the other, "[d]o you

understand this letter to be an indication that the SEC has upheld the whistleblower claims against Anadarko?"  ECF 122-7 at 116.

### B.     Plaintiffs' Motion to Compel

On April 13, 2022, Plaintiffs moved to compel production of over 500 documents concerning the AAC investigation that Defendants had withheld or redacted on grounds of work product protection, including certain KPMG workpapers, as well as 36 documents by non-party AAC members withheld or redacted as attorney-client privileged.  ECF 115.

On May 4, 2022, Defendants and the non-party AAC members opposed the motion to compel.  ECF 124.

On May 16, 2022, Plaintiffs submitted a reply.  ECF 127.

### C.     Defendants' Reliance on KPMG Audit Opinions

Defendants' reliance on the AAC investigation and work product continued after Plaintiffs filed their motion to compel.  On June 17, 2022, Defendants served interrogatory responses confirming their intention to assert an affirmative defense that they relied in good faith on the work and advice of KPMG.  Ex. 2.  KPMG's workpapers, in turn, are clear that its 3Q16 review and 2016 year-end audit opinion blessing Anadarko's Shenandoah accounting rely heavily on the selective information and analysis NRF provided regarding the AAC investigation.  ECF 122-1-122-3; Ex. 1 at 44:5-45:14.

On March 16, 2023, Defendants moved for summary judgment (ECF 162), and in support submitted the Expert Report of J. Richard Dietrich, PhD.  ECF 166, Ex. 121 (also attached hereto as Ex. 3).  In addition to relying on KPMG's audit opinion (based in

significant part on discussions with NRF), Dr. Dietrich also relied on the presentation NRF made to the SEC to support his opinions. *Id.*, ¶¶22, 213 (citing APC-00002563).

### D.    The Court's Order

On March 17, 2023, the Court held oral argument on Plaintiffs' motion to compel. *See* Ex. 1.  During the hearing, counsel for Defendants unequivocally stated, "our position is that if they're going to reference that Ms. Frye filed a letter with the SEC, in fairness we ought to be able to say that the SEC declined to press charges." *Id.* at 28:9-14; *see also id*. at 40:25-41:3.

On March 31, 2023, the Court issued the Order granting the motion to compel.  The Court held that Defendants waived work product protection and attorney-client privilege with respect to the AAC investigation materials by disclosing protected and privileged materials to the SEC, KPMG, and J.P. Morgan and by putting the SEC termination into issue. Order at 7-9.  The Court reasoned that Defendants could not use the SEC termination as a sword, as it had already done by voluntarily introducing the Termination Letter at the Class Representatives' depositions, while also shielding "the underlying information that went into that decision by the SEC – or that potentially was withheld from it." *Id.* at 7.  The Court decided that fairness considerations, including "that a significant portion of confidential communications between [NRF] and Anadarko was apparently revealed to the SEC, KPMG, and JPMorgan," dictated that the waiver extend to the entire subject matter of the AAC investigation. *Id.* at 9.

On April 27, 2023, Defendants filed the Motion requesting that the Court reconsider its Order, or in the alternative, certify the Order for interlocutory appeal.  Although the Order

called for Defendants to meet-and-confer with Plaintiffs to determine which documents may require review by a Special Master, Defendants have taken the position that any production of documents subject to the Order must await resolution of their Motion.

## IV.  STATEMENT OF ISSUES

1.  Whether reconsideration of the Order under Federal Rule of Civil Procedure 54(b) is warranted if (i) the Court did not commit a manifest error of fact or law, (ii) Defendants have not advanced new evidence which the Court did not previously consider, (iii) the request is based on a new strategic position that could have been advanced prior to the Order, and (iv) the concerns of prejudice animating the Court's initial waiver decision remain.

2.  Whether the extraordinary and disfavored remedy of certification for interlocutory appeal under 28 U.S.C §1292(b) is justified where (i) the Court's Order does not involve a controlling issue of law, (ii) substantial grounds do not exist for a difference of opinion about the rulings, and (iii) an immediate appeal will not materially advance the ultimate termination of the litigation.

## V.  APPLICABLE LEGAL STANDARDS

In ruling on a Rule 54(b) motion, courts generally look to whether "there has been an intervening change in controlling law, there exists new evidence not previously available, or there exists a clear error of law."  *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 3620590, at *2 (S.D. Tex. Aug. 23, 2017).  Judge Harmon aptly described

> the policy reasons behind discouraging motions for reconsideration which rehash the same arguments or, without justification, raise new arguments for the first time.  ***Using an overly generous standard in reviewing motions***

- 7 -

> *under Rule 54(b) would reduce judicial efficiency and give parties no*
> *incentive to raise all relevant arguments at first consideration of an issue* ....

*DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, 2017 WL 3484507, at *2

(S.D. Tex. Aug. 14, 2017).[4]

"Section 1292(b) appeals are exceptional," and "assuredly do[] not lie simply to

determine the correctness of a judgment." *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic*

*Constr. Co.*, 702 F.2d 67, 68-69 (5th Cir. 1983). Instead, certification under §1292(b) is

appropriate only when: (i) the order from which the appeal is taken involves a "controlling

question of law"; (ii) there is "substantial ground for difference of opinion" concerning the

issue; and (iii) "an immediate appeal from the order may materially advance the ultimate

termination of the litigation." 28 U.S.C. §1292(b). A district court's discovery order will

not typically satisfy these criteria. *In re Tullius*, 2011 WL 5006673, at *2-*3 (W.D. Tex.

Oct. 20, 2011).

## VI.   ARGUMENT

### A.   Reconsideration of the Order Is Not Warranted

Defendants advance two primary arguments as to why the Court should reconsider its

Order. First, Defendants contend that they "have not used – and will not use – the SEC

investigation or Termination letter as a 'sword.'" Motion at 9. Second, Defendants insist

that even if they did put the SEC investigation at issue, "waiver should be limited to the

materials actually disclosed to the SEC, which Defendants have already produced." *Id.* As

discussed herein, neither justifies reconsideration.

---

[4]   Indeed, Defendants have filed serial motions for reconsideration, previously filing a
motion to relitigate the Court's order granting class certification. *See* ECF 143.

1.     **The Court Correctly Identified Defendants' Use of the
         SEC Termination and AAC Findings as a Sword**

Defendants do not dispute that in the Fifth Circuit, use of privileged material as both

sword and shield waives the claimed privilege, whether work product or attorney-client.

Motion at 12-15; *see Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005).  Instead,

they contend the Court erred in finding Defendants had used (and intended to use) the SEC

termination as a sword against Plaintiffs.  Motion at 10 (quoting Order at 7-8).  The Court

did not commit such error.

*First*, it is undisputed that Defendants attempted to influence a Class Representative

by strategically putting the Termination Letter in front of him and asking if the SEC's non-

enforcement decision changed his view as to any of the complaint's allegations.  Order at 8.

The Termination Letter is clear that it is "[b]ased on the information … as of this date" –

which included the subset of AAC information the SEC was spoon-fed by NRF.  ECF 122-5.

At the same time, Defendants refused to provide Plaintiffs with the facts and opinions that

NRF reached as part of the AAC investigation, but chose ***not*** to share with the SEC.

Therefore, the Court did not err in determining that Defendants used the Termination Letter

as both sword and shield; they used the Termination Letter to cross-examine the Class

Representatives while invoking privilege over the underlying materials to prevent Plaintiffs

from refuting this adverse evidence.  *See In re Application of Chevron Corp. v. 3TM

Consulting, LLC*, 2011 WL 13135155, at *3 (S.D. Tex. Jan. 10, 2011).

Defendants provide nothing new to contradict that finding.  As the Court recognized,

it does not matter that Defendants first wielded the Termination Letter as a sword in

deposition, rather than at a hearing or in a pleading.  *See* Motion at 12; Ex. 1 at 33:2-7. Depositions are litigation proceedings, and "'disclosure in the context of litigation – whether by trial or deposition testimony or by production of documents – will result in an implied waiver broader than the original disclosure itself.'"  *Stolarik v. N.Y. Times Co.*, 2019 WL 4565070, at *3 (S.D.N.Y. Sept. 20, 2019); *see also In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *16 (E.D.N.Y. Mar. 31, 2017) (subject-matter waiver found where party disclosed memoranda "for its own purposes (*i.e.*, to cross-examine deponents)" at deposition).  Nor is there support for Defendants' suggestion that the Court should have absolved use of the Termination Letter as a sword since Defendants' gambit failed to obtain favorable testimony.  Motion at 12.

*Second*, defense counsel *told the Court point-blank* that Defendants "obviously" intended to use the SEC termination at trial: "[I]f [Plaintiffs are] going to reference that Ms. Frye filed a letter with the SEC, in fairness we ought to be able to say that the SEC declined to press charges."  Ex. 1 at 28:9-12.  The Court thus issued the Order with a crystal-clear view into Defendants' strategy to continue using the SEC termination to negate the taint of the whistleblower claims, while simultaneously withholding evidence that could allow Plaintiffs to undermine that strategy.

*Third*, as Plaintiffs' counsel explained to the Court at the March 17 hearing, Defendants have *continued* using AAC investigation materials as a sword since Plaintiffs' motion to compel was originally filed.  *Id.* at 44:5-45:14.  At trial, Defendants intend to present an affirmative defense that they relied in good faith on KPMG's advice and work. Ex. 2 at 4.  Defendants also offered expert testimony that: (i) KPMG's approval of

Anadarko's accounting provides evidence supporting Defendants' accounting for Shenandoah; and (ii) expressly relies on NRF's presentation to the SEC.  *See* Ex. 3, ¶¶22, 143-148, 164-170, 213; Ex. 4 at 106:20-107:3.  Defendants do not dispute that KPMG unambiguously relied on the information and opinions communicated by NRF regarding the AAC investigation in issuing the clean audit opinion Defendants intend to urge the jury to consider in their favor.  Nor can they.  *See, e.g.*, ECF 122-3 at KPMG_APC_eA_0009664 (KPMG workpapers stating, "the engagement team has made specific inquiries of [NRF] as to whether they have found anything to question the integrity of management, and [NRF] [REDACTED – APC work product]."); *id.* ("***Based on the discussion [with NRF] above***, [REDACTED – APC work product], ***the engagement team does not believe management has changed their Q4 2014 accounting position* ....**"); *id.* at KPMG_APC_eA_0009667 ("Based on the foregoing [REDACTED – APC work product] and the engagement team concurs, that the control deficiency does not rise to a level of a significant deficiency or material weakness.").

Fairness and completeness dictate that Plaintiffs be provided not only with the information and analysis NRF provided KPMG, but, just as with the SEC termination, the information ***not*** provided.  Defendants' actions – and their plain statement of intent to use the SEC termination at trial – belie any assertion that the Court misapprehended their intended reliance on the Termination Letter and AAC investigation findings in their defense.  The Court did not base its Order on an incorrect factual premise.

## 2.     The Court Appropriately Found Subject-Matter Waiver

In arguing that the Court should have limited the scope of its waiver findings, Defendants do not advance any new argument or identify any factual error or binding precedent the Court did not follow.  After all, Defendants' argument that any waiver under Federal Rule of Evidence 502(a) should be limited to materials actually disclosed to the SEC, rather than encompassing underlying materials, is the ***exact argument*** they advanced in opposing Plaintiffs' motion to compel.  *Compare* Motion at 13, *with* ECF 124 at 9-12, *and* Ex. 1 at 25:17-27:12; *see also Pfeiffer v. Ajamie Pllc*, 2019 WL 13193376, at *2 (S.D. Tex. Dec. 2, 2019) (denying reconsideration where movant raised "nothing new" and "[a]t base" disagreed with order).

Of course, "disagreement with the Court's conclusion and a mere rehashing of previous arguments" does not warrant reconsideration.  *Fogleman-Laxey v. Guillory*, 2023 WL 2435103, at *2 (W.D. La. Mar. 9, 2023).  As the Court noted, the prejudice to Plaintiffs from Defendants' reliance on the SEC termination is not resolved by Defendants producing the specific materials provided to the SEC.  Without an understanding of what was ***not*** given to the SEC, and what underlying facts were communicated orally during NRF's 4.5-hour presentation, Plaintiffs are not able to rebut the significance of the SEC's termination decision.  Order at 7.  Accordingly, these undisclosed materials "ought in fairness to be considered" with those actually provided to the SEC.  Fed. R. Evid. 502(a).  Defendants' caselaw does not mandate a contrary finding.  *See Varel v. Banc One Cap. Partners, Inc.*, 1997 WL 86457, at *3 (N.D. Tex. Feb. 25, 1997) (no waiver where disclosed document was

not used for tactical advantage); *SEC v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006) (same).

To the extent Defendants argue that the Court should create a blanket rule that opinion work product not developed for this litigation is not discoverable even if Defendants have tactically put the subject matter at issue, they misapprehend the law. *See* Motion at 14. "'[A]t issue' waiver of work product is not confined to fact work product. Unlike when a party obtains work product based on a substantial need, when disclosure is ordered because the work product has been put 'at issue,' the waiver applies to everything that has been put 'at issue,' **whether they be facts or opinions**." *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 497-98 (W.D. Tex. 2020). Defendants' caselaw does not suggest otherwise. *See Brady*, 238 F.R.D. at 444 (undisclosed information had not been used against adversary in litigation); *Lone Star Tech. Innovations, LLC v. ASUSTeK Comput. Inc.*, 2020 WL 6803252, at \*4 (E.D. Tex. Apr. 28, 2020) (unlike here, court's holding addressed opinion work product prepared for **that** litigation); *DataTreasury Corp. v. Wells Fargo & Co.*, 2009 WL 10679940, at \*3 (E.D. Tex. Nov. 13, 2009) (subject matter of privileged memorandum had not been used as sword). Further, NRF voluntarily disclosed certain opinion work product to KPMG, resulting in a clean audit opinion (*see* §III.A.); fairness dictates that Plaintiffs have access to that work product – and any not disclosed – to rebut KPMG's conclusions.

Lastly, the Court's finding that attorney-client communications between the AAC and NRF are covered by the waiver was entirely appropriate. In arguing otherwise, Defendants ignore the Court's finding that "[t]he record establishes that a significant portion of confidential communications between [NRF] and Anadarko was apparently revealed to the

SEC, KPMG and J.P. Morgan" because doing so was to Anadarko's advantage – a finding Defendants do not dispute. *Compare* Order at 9, *with* Motion at 14-15. The attorney-client privilege cannot be selectively waived. *See SEC v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009) (voluntary disclosure of privileged communications to external auditor, SEC, waived attorney-client privilege as to all documents relating to internal investigation).

### 3.    Defendants' Newly Proposed Stipulation Is Irrelevant

Defendants' belated offer to stipulate not to use the Termination Letter or related deposition testimony if the Court withdraws its waiver findings does not merit consideration. Motion at 10. This is a brand-new position that could have been – but was not – suggested to Plaintiffs or the Court at any time in the year-plus since this issue arose. Instead, Defendants, not wanting to give up a tactical advantage, gambled on the Court allowing them to use the Termination Letter while still withholding the AAC investigation materials. They cannot now, having expended party and judicial resources, completely reverse their position to avoid the consequences of having taken the prior one. *See Total Safety v. Knox*, 2019 WL 6894683, at *1 (S.D. Tex. Dec. 18, 2019) (reconsideration under Rule 54(b) not warranted simply because movant "may have reconsidered the wisdom" of prior position); *Implicit LLC v. Fortinet, Inc.*, 2021 WL 2949472, at *2 (E.D. Tex. Mar. 28, 2021) ("The reality of litigation is that parties choose a strategy and argue it without knowledge of how the court will rule. [A party] cannot expect to change its strategy after the fact via a motion for reconsideration.").

Moreover, Defendants' current litigation position conflicts with their "stipulation." Defendants and their accounting expert still intend to rely on KPMG's clean audit opinion,

which is based on the AAC investigation.  *See* Motion at 1, 10; *supra* §VI.A.1.  As such, *In re Itron, Inc.*, 883 F.3d 553 (5th Cir. 2018), which vacated a waiver order upon the plaintiff's **broad** stipulation not to "'affirmatively use **any** privileged information against'" the opposing party, is inapt.  *See id.* at 557; Motion at 9-10.

Defendants' disagreement with the Court's application of the law to the facts does not merit reconsideration.

## B.    The Order Is Not Appropriately the Subject of a §1292(b) Appeal

Defendants' attempt to portray this dispute as warranting the extraordinary remedy of §1292(b) certification is all sizzle and no steak.  *See* Motion at 15-19.  There is no issue of controlling law to be decided and no "well-established case law" that the Order contradicts. If anything, certification of the "questions" Defendants pose to the Fifth Circuit will significantly delay resolution of this litigation.  Defendants' request should be denied.

### 1.    There Are No Controlling Questions of Law

"In the interlocutory-appeal context, '[t]he question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'"  *In re Royce Homes LP*, 466 B.R. 81, 94 (Bankr. S.D. Tex. 2012). Controlling questions of law do not involve the application of settled law to disputed facts. *E.g.*, *Fannie Mae v. Hurst*, 613 F. App'x 314, 318 (5th Cir. June 2, 2015).

Courts regularly refuse to find controlling questions of law in decisions concerning privilege waiver because those determinations are inherently fact-specific.  *Royce Homes*, 466 B.R. at 94 ("whether ... privilege applies to the documents and, if so, whether [party]

- 15 -

waived it, are fact-intensive questions," not controlling questions of law); *Doe 1 v. Baylor Univ.*, 2021 WL 9908355, at *2 (W.D. Tex. Aug. 23, 2021) ("'whether Baylor put work product "at issue" … so as to effect a broad waiver of work product protection'" not a controlling question of law).  While Defendants make much of the Supreme Court's dicta in *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009), that §1292(b) review may be available for privilege disputes, they ignore the key part of the language they quote: review may be available *if* a "'privilege ruling involves a new legal question or is of special consequence.'"  *See* Motion at 16.  Defendants do not identify any novel legal issue raised by the Order and do not even attempt to explain why this particular waiver dispute, unlike the many others that regularly are resolved by district courts, is of such special consequence as to merit the Fifth Circuit's immediate attention.  *Id.*

Indeed, the two purported questions of "controlling law" that Defendants raise are, on their face, fact-intensive.  *Id.*  The first – whether use of the Termination Letter in deposing the Class Representatives results in waiver "even if the company has stipulated it will not use the testimony, the SEC's termination letter or the findings of the internal investigation in its defense against liability" (*id.*) – is not on all fours with the facts of ***this case***.  As discussed, Defendants told the Court they intend to use, and have in fact continued to use, the findings of the AAC investigation and the SEC termination in their defense.  *See supra* §VI.A.1. Regardless, to resolve Defendants' question, the Fifth Circuit would need to undertake a deep review of the factual record, including, *e.g.*, (i) deposition testimony; (ii) the SEC presentation and Termination Letter; (iii) KPMG workpapers; (iv) Defendants' expert

- 16 -

reports; (v) meet-and-confer correspondence; (vi) J.P. Morgan documents; and (vii) Defendants' assertions that they intend to use the Termination Letter at trial.

The answer to Defendants' second question – whether Defendants' disclosure to third-parties and specific use of the AAC investigation/Termination Letter in this litigation warrants subject-matter waiver – is equally fact-specific. Motion at 16. There is no issue of law there; rather, "[i]t is apparent that the defendant just wants a redetermination of the privilege issue, based on the same facts already presented." *Swoboda v. Manders*, 2015 WL 9308266, at *2 (M.D. La. Dec. 22, 2015).

### 2. Defendants Do Not Identify Substantial Grounds for a Difference of Opinion About the Court's Rulings

Defendants fail to identify a single Fifth Circuit decision in conflict with the Order. Motion at 17. That the topic of "at issue" waiver may generally interest the Fifth Circuit, or that a member "could" potentially disagree with the Order, does not justify disfavored interlocutory appeal. "If fervent disagreement [with a decision] was sufficient to satisfy this requirement, then the majority of orders issued by district courts would be ripe for interlocutory appeal. However, §1292(b) contemplates a more rigorous demonstration." *Tex. v. Ysleta del Sur Pueblo*, 370 F. Supp. 3d 705, 710 (W.D. Tex. 2018); *see also Baylor*, 2021 WL 9908355, at *2 ("difference of opinion" prong not satisfied by order finding at-issue waiver where court "followed Fifth Circuit precedent and did not find either a conflict in that body of law or a dearth of precedent").

Nor can Defendants transform this issue into one of greater legal importance than it is by claiming it could "impact any corporate client that has undertaken an internal

- 17 -

investigation." Motion at 17. As the Court aptly noted at the March 17 hearing, its finding of subject-matter waiver here does not cause any complication for corporations in maintaining legitimate claims of privilege. Ex. 1 at 24:14-25. The Court did not deviate from existing precedent or purport to create a new standard for waiver, as was done in the cases Defendants cite. *See Itron*, 883 F.3d at 568 (lower court purported to create new rule that relevance to claims was sufficient for waiver); *Cazorla v. Koch Foods of Miss., LLC*, 2015 WL 3970606, at *3 (S.D. Miss. June 30, 2015) (lower court required to decide novel issue of statutory interpretation). It simply applied existing law to the facts presented. There will be no long-lasting ripples from this fact-specific decision. Just as before, companies that do not want to waive privilege over the subject matter of an investigation need only refrain from voluntarily disclosing privileged information to third-parties or introducing documents in adversarial depositions that rely on investigation findings, thereby injecting the underlying facts and attorney representations into that litigation. *See* Ex. 1 at 24:14-25.

Accordingly, this requirement for §1292(b) appeal is not satisfied.

### 3.   Permitting Immediate Appeal Will Only Delay Resolution of This Action

Defendants' assertion that immediate appeal of the Order will materially advance the termination of this litigation is entirely implausible. The ultimate termination of litigation is materially advanced when the resolution of a controlling question of law "will 'eliminate the need for trial [or] eliminate complex issues.'" *Tullius*, 2011 WL 5006673, at *3. Interlocutory review here would accomplish neither.

This case is set to go trial before the end of the year.  The parties have submitted expert reports, *Daubert* motions, and Defendants have moved for summary judgment. Shortly after Defendants produce the documents ordered by the Court, these motions will be ripe for resolution.  All that holds up further progress of the case is Defendants' decision to grant themselves a stay of their obligation to comply with the Order during the pendency of their Motion.  Permitting Defendants' piecemeal interlocutory appeal, in contrast, will kill that momentum, extending the time until resolution of the litigation by months, if not a year or more – something **Defendants previously conceded to the Court**.  *See* Ex. 5.

## VII.   CONCLUSION

Defendants' Motion should be denied in its entirety.

DATED:  May 18, 2023                      Respectfully submitted,

                                          KENDALL LAW GROUP, PLLC
                                          JOE KENDALL (Texas Bar No. 11260700)
                                          (SDTX Bar No. 30973)
                                          Attorney-in-charge


                                                   s/ Joe Kendall
                                          _____
                                                  JOE KENDALL

                                          3811 Turtle Creek Blvd., Suite 1450
                                          Dallas, TX  75219
                                          Telephone:  214/744-3000
                                          214/744-3015 (fax)

                                          Texas Local Counsel for Plaintiff

- 19 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
RACHEL L. JENSEN
LUKE O. BROOKS
HILLARY B. STAKEM
FRANCISCO J. MEJIA
MEGAN A. ROSSI
NICOLE Q. GILLILAND
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Class Counsel

4890-6925-5780.v1

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 5,000 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED: May 18, 2023

s/ Joe Kendall
_____
JOE KENDALL

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 18th day of May, 2023.

s/ Joe Kendall
_____
JOE KENDALL

4890-6925-5780.v1