# EXHIBIT 4

```
 1              IN THE UNITED STATES DISTRICT COURT
 2               FOR THE SOUTHERN DISTRICT OF TEXAS
 3                         HOUSTON DIVISION
 4    ---------------------------------------------------x
 5
 6    In re ANADARKO PETROLEUM          Civil Action No.
      CORPORATION SECURITIES            4:20-cv-00576
 7    LITIGATION
 8
 9    ---------------------------------------------------x
10
11                        **CONFIDENTIAL**
12
13      REMOTE VIDEOTAPED DEPOSITION BY VIRTUAL ZOOM OF
14                       J. RICHARD DIETRICH
15                    Saturday, March 11, 2023
16
17
18
19
20
21
22
23
24    Reported By: Lynne Ledanois, CSR 6811
25    Job No. 5780790

                                                    Page 1
```

## Page 106

 1 carried out in accordance with PCAOB professional  11:45AM
 2 audit standards?
 3     A   I didn't independently verify that, no.
 4         (Reporter clarification.)
 5 BY MR. DROSMAN:  11:45AM
 6     Q   Did KPMG forensic specialists assist KPMG
 7 auditors in procedures relating to the company's
 8 investigation of a whistleblower allegation or
 9 allegations during the years 2014 through 2017?
10     A   I'm aware that there was an investigation.  11:46AM
11 My understanding is the investigation was instituted
12 by, I believe, the audit committee of Anadarko or its
13 board of directors.
14         And that there was subsequently SEC
15 investigation, KPMG would certainly have been  11:46AM
16 involved with that.
17         I don't recall specifically today which
18 specific individuals are the classification of
19 employees or partners at KPMG that were involved.
20         But my perception from my reading of the  11:46AM
21 materials associated with that investigation was
22 that it was a fairly substantial investigation that
23 likely would have involved forensic people or other
24 specialists inside KPMG.
25     Q   Did you understand that accounting for  11:47AM

## Page 107

 1 Shen 3 was part of this investigation that you just  11:47AM
 2 described?
 3     A   Yes.
 4     Q   Do you know one way or the other whether
 5 KPMG forensic specialists assisted KPMG auditors in  11:47AM
 6 procedures relating to the company's investigation
 7 of a whistleblower allegation?
 8     A   I don't recall specifically, no.
 9     Q   Did KPMG forensic specialists assist KPMG
10 auditors in procedures relating to the company's  11:47AM
11 investigation of whether Shen 3 was improperly
12 accounted for?
13     A   I don't recall today the specifics of the
14 investigation, so I don't recall that, no.
15     Q   In assessing the accounting for Shen 3,  11:48AM
16 did you review KPMG forensic work papers and work
17 product regarding the company's investigation into
18 the accounting for Shen 3?
19     A   I read documents related to that. My
20 specific recollection is that one of the documents  11:48AM
21 that I read that was fairly lengthy included some
22 redacted materials as well as other materials related
23 to the investigation that appear to me to be
24 substantial investigation and clear results.
25     Q   I did not ask you whether you reviewed any  11:49AM

## Page 108

 1 documents related to the investigation.  11:49AM
 2         What I asked you was:  In assessing the
 3 accounting for Shen 3, did you review KPMG forensic
 4 work papers or work product regarding the company's
 5 investigation into the accounting for Shen 3?  11:49AM
 6     A   Again, I may have, I don't recall
 7 specifically.
 8     Q   I take it you would want to review that
 9 information; correct?
10     A   Not necessarily, no.  11:49AM
11     Q   Why not?
12     A   Well, it would be interesting for me to see
13 what another professional's view was, but that would
14 be a factor that I would consider in my own analysis
15 if I had access to it and read it.  11:49AM
16         But at the same time, it wouldn't be
17 dispositive for me to read what they said.
18         What I can help you to understand is that
19 different accounting professionals, even experts can
20 have different views.  11:50AM
21     Q   Right.  You would take into account KPMG
22 forensic examiners' work papers and work product in
23 your analysis, wouldn't you want to review the
24 information from KPMG forensic examiners regarding
25 the company's investigation into the accounting for  11:50AM

## Page 109

 1 Shen 3?  11:50AM
 2     A   Again, I might do that and I might not do
 3 that.
 4     Q   Well, that would be relevant to your
 5 investigation; right?  11:51AM
 6     A   It might be informative but it might not be
 7 relevant.
 8     Q   You don't know one way or the other
 9 because you did not review that information;
10 correct?  11:51AM
11     A   I know that based on what I reviewed, I
12 believed I had a basis for understanding KPMG's view
13 of Anadarko's accounting for its oil exploration
14 activities.
15     Q   You understand that as part of its audit  11:51AM
16 evidence, KPMG asked for and received various
17 representations from management?
18     A   Yes.
19     Q   That included details surrounding Shen 3;
20 correct?  11:51AM
21     A   Again, I don't recall specifically, but I
22 would anticipate that it would have, yes.
23     Q   Were any of the people who provided
24 representations to KPMG non-accountants?
25     A   I don't recall, but I would expect they  11:52AM

Page 282

```
 1   Q   Is it original language that --            5:06PM
 2   A   I've already cited to you several places
 3  where the language must be original because the
 4  construction does not include information that could
 5  have been prepared prior to the existence of the   5:06PM
 6  codification.
 7   Q   I'm asking you if there are any other
 8  sources identified by the FASB for 932-360-35-16?
 9   A   And I'm telling you they don't cite sources
10  when they create the material themselves.          5:06PM
11   Q   I didn't ask that question.
12       I asked you whether the FASB identified
13  any other sources besides FAS 19 for 932-360-35-16?
14  Can you answer that question?
15       MS. PHILLIPS:  Asked and answered.           5:07PM
16       THE WITNESS:  Yes, they do not cite
17  anything else.
18  BY MR. DROSMAN:
19   Q   Let's look at 932-360-35-18.
20   A   Okay.                                        5:07PM
21   Q   Does the FASB identify any sources other
22  than FAS 19 as the source for the information in
23  that provision?
24   A   I don't see anything else.  But again, I
25  wouldn't see anything else if it was created by the 5:07PM
```

Page 283

```
 1  FASB at the adoption of the codification.         5:07PM
 2       MR. DROSMAN:  Move to strike everything
 3  after "I don't see anything else" as nonresponsive.
 4       I'm going to go ahead and conclude the
 5  deposition for today.                             5:08PM
 6       MS. PHILLIPS:  Can we go off the record?
 7       MR. DROSMAN:  Sure.
 8       THE VIDEOGRAPHER:  We're going off the
 9  record at 5:08 p.m.
10       (Recess taken.)                              5:08PM
11       VIDEOGRAPHER:  We're on the record at
12  5:28 p.m.  This is the beginning of Media 7 in the
13  deposition of Dr. Richard Dietrich.
14       MS. PHILLIPS:  Thanks very much.
15  Defendants don't have any further questions.      5:28PM
16       Thanks, Dr. Dietrich.
17       MR. DROSMAN:  Thanks.
18       THE VIDEOGRAPHER:  We're going off the
19  record at 5:28 and this concludes today's testimony
20  given by Dr. Richard Dietrich.                    5:28PM
21       The total number of media units used was
22  seven and will be retained by Veritext.
23       (Proceedings concluded at 5:28 p.m.)
24
25
```

Page 284

```
 1       I, LYNNE M. LEDANOIS, a Certified
 2  Shorthand Reporter of the State of California, do
 3  hereby certify:
 4       That the foregoing proceedings were taken
 5  before me at the time and place herein set forth;
 6  that any witnesses in the foregoing proceedings,
 7  prior to testifying, were duly sworn; that a record
 8  of the proceedings was made by me using machine
 9  shorthand which was thereafter transcribed under my
10  direction; that the foregoing transcript is a true
11  record of the testimony given.
12       Further, that if the foregoing pertains to
13  the original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review
15  of the transcript [ ] was [x] was not requested.
16       I further certify I am neither financially
17  interested in the action nor a relative or employee
18  of any attorney or party to this action.
19       IN WITNESS WHEREOF, I have this date
20  subscribed my name.
21
22  Dated: March 13, 2023
23
24                    _____
                      LYNNE MARIE LEDANOIS
25                    CSR No. 6811
```

Page 285

```
 1  DANIEL DROSMAN, ESQ.
 2  ddrosman@rgrdlaw.com
 3                    March 13, 2023
 4  IN RE ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION
 5  MARCH 11, 2023, J. RICHARD DIETRICH, JOB NO. 5780790
 6  The above-referenced transcript has been
 7  completed by Veritext Legal Solutions and
 8  review of the transcript is being handled as follows:
 9  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext
10  to schedule a time to review the original transcript at
11  a Veritext office.
12  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF
13  Transcript - The witness should review the transcript and
14  make any necessary corrections on the errata pages included
15  below, notating the page and line number of the corrections.
16  The witness should then sign and date the errata and penalty
17  of perjury pages and return the completed pages to all
18  appearing counsel within the period of time determined at
19  the deposition or provided by the Code of Civil Procedure.
20  __ Waiving the CA Code of Civil Procedure per Stipulation of
21  Counsel - Original transcript to be released for signature
22  as determined at the deposition.
23  __ Signature Waived – Reading & Signature was waived at the
24  time of the deposition.
25
```