# TAB 1

**ROBBINS GELLER RUDMAN & DOWD LLP**

| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

February 22, 2022

VIA ECF

Hon. Charles R. Eskridge III
U.S. District Court for the Southern District of Texas
515 Rusk Street, Room 8607
Houston, Texas 77002

      Re:   *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp., et al.*,
               No. 4:20-cv-00576 (S.D. Tex.)

Dear Judge Eskridge:

      Pursuant to Rule 15(c) of the Court's Procedures, we respectfully submit this letter on behalf of plaintiffs to advise of a discovery dispute regarding Anadarko Petroleum Corporation's ("Anadarko") Audit Committee's ("AAC") purported investigation of Whistleblower Lea Frye's ("Frye") complaint in this case. Based on broad assertions of attorney-client privilege and work product protection (collectively, "privilege assertions"), defendants have withheld or redacted thousands of documents and forced third-party KPMG LLP ("KPMG") to do the same. Defendants' privilege assertions are inappropriate, however, because they waived any applicable protections by selectively disclosing information about the substance of the investigation to the U.S. Securities and Exchange Commission ("SEC") and other third-parties, and by affirmatively invoking it in this action. Thus, plaintiffs respectfully request leave to file a motion to compel.[1]

      By way of background, on May 9, 2016, Anadarko's Senior Reservoir Engineer Lea Frye submitted a whistleblower letter to the SEC, alleging Anadarko had misled investors about the producible size and commercial viability of Shenandoah, a deep-water oil field in the Gulf of Mexico that Anadarko later wrote-off in May 2017. ECF 55, ¶¶6-7, 74. In 2016, Norton Rose & Fulbright LLP ("NRF") "investigated" the allegations, and defendants shared detailed information and "findings" with third-parties, including a dozen calls and meetings with Anadarko's independent, third-party auditors at KPMG. Also, in connection with a planned equity offering, defendants shared with the underwriters detailed information about the investigation, including preliminary conclusions about Shenandoah's potential.[2] After months of back-and-forth with the Fort Worth SEC office, on November 22, 2016, NRF made a PowerPoint presentation, which spanned 250 slides and selectively disclosed details about the investigation, including a two-stage review of 300,000 documents and 55 interviews of 28 employees. Understandably, NRF presented the facts in the light most favorable to Anadarko so as to dissuade the SEC from bringing an enforcement action. After that meeting, the Fort Worth SEC assistant director sent NRF a letter on January 10, 2017, saying "[b]ased on the information we have as of this date, [he did] not intend to recommend an enforcement action."

      Defendants have made strategic use of the AAC investigation and the resulting SEC non-enforcement letter in this case. For example, at the depositions of the proposed class representatives Norfolk and Iron Workers, defense counsel marked the SEC non-enforcement letter as an exhibit and asked if it changed plaintiffs' views of the case. Defendants have prevented

---

[1]   The parties have met and conferred about these issues on multiple occasions, including on February 18, 2022, when the attorneys leading the day-to-day litigation conferred by phone, but were unable to reach resolution.

[2]   Plaintiffs will provide the documents referenced in this initiating letter upon request.

**Robbins Geller**
**Rudman & Dowd LLP**

Hon. Charles R. Eskridge III
February 22, 2022
Page 2

plaintiffs from responding to their affirmative use of the AAC investigation by selectively withholding or redacting thousands of related documents, including those produced by KPMG. By wielding the privilege as both sword-and-shield, defendants have waived privilege as to the entire subject matter. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 207 nn.18-19 (5th Cir. 1999) (citing authority); *In re Application of Chevron Corp. v. 3TM Consulting, LLC*, 2011 WL 13135155, at *3 (S.D. Tex. Jan. 10, 2011) (subject-matter waiver because "[i]t would be fundamentally unfair for the Ecuadorian Plaintiffs to use 3TM's work product to support their positions in the report prepared for Cabrera and then attempt to shield the remainder of 3TM's work product, which may be beneficial to Chevron, from production"); *see also U.S. Equal Emp. Opportunity Comm'n v. Nabors Indus., Ltd.*, 2018 WL 11195496, at *2 (W.D. Tex. Aug. 21, 2018) (work product waiver where defendants placed adequacy of attorney-directed investigation at issue); *Chevron Corp. v. Donziger*, 2013 WL 6182744, at *3 (S.D.N.Y. Nov. 21, 2013) (party "'may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication'") (citation omitted). Here, with defendants having used the selective-disclosure-derived SEC declination as a sword, it would be unfair to allow them to shield from discovery the rest of the information concerning the AAC investigation.

Likewise, defendants waived any protections by sharing the substance of the investigation with third-parties. In this Circuit, "'disclosure of any significant portion of a confidential communication waives the privilege as to the whole.'" *Nguyen*, 197 F.3d at 208 (citation omitted). Defendants voluntarily disclosed broad swaths of the investigation with third-parties, including summaries of witness interviews, thereby waiving any applicable privilege. *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009) (subject-matter waiver based on "evidence that the Audit Committee" and its law firm "voluntarily disclosed to third parties a significant amount of allegedly confidential information pertaining to the internal investigation").

Plaintiffs just want a fair fight. Defendants have repeatedly and selectively disclosed AAC-investigation information whenever there is something in it for them – money, governmental inaction, influencing witnesses. Having successfully used such selective disclosures to obtain an SEC declination, defendants are now using that declination against plaintiffs. To respond, plaintiffs need the full picture of the AAC investigation. Beyond the fundamental-fairness demands of the sword-and-shield doctrine, defendants' privilege assertions fail at the most basic level by virtue of their disclosure of extensive AAC-investigation information to third-parties, such as the SEC, KPMG, and JP Morgan. Accordingly, plaintiffs respectfully request leave to file a motion to compel production of all AAC-investigation-related information within defendants' possession, custody, and control.

Respectfully submitted,

RACHEL L. JENSEN

cc: All Counsel (via email)

4861-7380-8400.v1