# TAB 2

436 (S.D.N.Y. 2006) ("Disclosure to a third party does not necessarily waive the protection of the work-product doctrine."). Rather, work product protection is waived only where materials are shared with an adversary or in a manner that substantially increases the likelihood that an adversary will obtain it. *See In re Baylor Univ.*, 2021 WL 5349133, at *3 (S.D. Tex. Nov. 16, 2021) (Eskridge, J.) (work product waived only when disclosure "substantially increases the opportunity for potential adversaries to obtain the information" (internal quotation marks omitted)). Neither KPMG nor J.P. Morgan was Defendants' adversary, and Lead Plaintiffs do not contend otherwise.

Lead Plaintiffs nonetheless argue that disclosures to KPMG and J.P. Morgan effected a waiver because the disclosures "substantially increased the likelihood that an adversary would come into possession of the material." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (internal quotation marks omitted). But that is not the case here. With respect to KPMG, courts routinely have found no waiver of work product protection when materials are disclosed to a company's independent auditor. *See, e.g., Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 448 (S.D.N.Y. 2004) ("[A] business and its auditor can and should be aligned insofar as they both seek to prevent, detect, and root out corporate fraud. . . . [T]his is not the sort of adversarial relationship contemplated by the work product doctrine."). The same is true with respect to J.P. Morgan, as courts also have found that disclosures to underwriters do not waive work product protection. *See, e.g., In re Weatherford Int'l Sec. Litig.*, 2013 WL 5762923, at *5 (S.D.N.Y. Oct. 24, 2013) ("[I]n the context of a public securities offering, an underwriter and issuer have a common interest sufficient to avoid waiver of work-product protection."). Given this case law and the lack of any adversarial relationship between Anadarko and KPMG or J.P. Morgan, there was no waiver of work product protection.¹

*Second*, Defendants did not waive work product protection over the Withheld Materials by purportedly showing the Termination Letter to putative class representatives during depositions. As an initial matter, Lead Plaintiffs waived any argument that the Termination Letter itself was protected work product when they failed to include the letter on a privilege log, notwithstanding the fact that they received it over three months ago. *See, e.g., In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (failing to timely provide privilege log could result in waiver). Moreover, Defendants did not disclose the Termination Letter to putative class representatives for the truth of the matter asserted; they instead showed the Termination Letter to deponents to probe the deponents' understanding of the SEC's investigation of the allegations that underlie Plaintiffs' claims in this litigation. Because Defendants did not rely on the substance of the Termination Letter, no waiver occurred. *See United States v. Nobles*, 422 U.S. 225, 239 n.14 (1975) ("[T]estimonial use of [work product] materials waive[s] the privilege with respect to matters covered in [the witness's] testimony . . . .").

---

¹ Lead Plaintiffs cite *SEC v. Microtune, Inc.*, 258 F.R.D. 310 (N.D. Tex. 2009), for the proposition that disclosures to independent auditors waive work product. While *Microtune* did find waiver, it did so because the audit committee and auditor were adverse, as the audit committee was "attempting to persuade [the auditor] to render a 'clean' opinion" on the company's financial statements. *Id.* at 318. Here, Lead Plaintiffs do not and cannot contend that the AAC was seeking any such opinion from KPMG, much less that any adversity existed between Anadarko and KPMG or J.P. Morgan.

444 (N.D. Tex. 2006) ("Waiver of work product protection only results if the work product is disclosed to an adversary or treated in a manner that substantially increases the likelihood that an adversary will come into possession of that material."). While KPMG and J.P. Morgan worked with Anadarko at arm's length, they were not potential adversaries with respect to the Withheld Documents, and thus work product protection was not waived. *E.g.*, *United States v. Deloitte LLP*, 610 F.3d 129, 139–43 (D.C. Cir. 2010).

*Second*, Lead Plaintiffs' invocation of the sword-shield doctrine is misplaced. Defendants do not rely upon the fact or outcome of the investigation as a defense (*see* Answer, ECF No. 72, at 35–39) and have not put the investigation "at issue" in this action so as to implicate the sword-shield doctrine. *See Doe v. Baylor Univ.*, 320 F.R.D. 430, 442 (W.D. Tex. 2017) (noting "[d]isclosure typically only waives work-product protection with respect to any document actually disclosed" and "subject-matter waiver is generally limited to instances where the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the party asserting the privilege."); *Mir v. L-3 Communications Integrated Sys.*, 315 F.R.D. 460, 471–72 (N.D. Tex. 2016) (no waiver where defendant did not put privileged document "at issue" by relying on it as a defense).

Rather, it is Lead Plaintiffs who have attempted to put the investigation "at issue" in the action, starting with the numerous references to Ms. Frye's whistleblower allegations in the Amended Complaint (ECF No. 55) and continuing through their extensive discovery requests concerning the AAC's investigation, including from Defendants, Anadarko's former independent directors, NRF, KPMG and J.P. Morgan. Lead Plaintiffs have received voluminous non-privileged materials in response to these requests, but none of those productions constitute a waiver of protection over Withheld Materials or use by Defendants of such materials as a "sword". Rather than "selectively disclosing" investigation-related materials, Defendants have done exactly what the law requires by producing all materials disclosed to the SEC in response to Lead Plaintiffs' discovery requests.

Defendants' use of the Termination Letter in depositions also has not put the Withheld Materials "at issue" so as to implicate the sword-shield doctrine. The Termination Letter—authored by the SEC—is plainly not work product or an attorney-client communication. This alone renders inapplicable Plaintiffs' invocation of the sword-shield doctrine, and there is no basis to conclude that merely asking questions at a deposition about a non-privileged document could place the entire investigation "at issue" in this case. Lead Plaintiffs have not identified any documents that Defendants have used in this litigation that have been withheld—nor could they, as Defendants have produced all materials that were provided to the SEC—and offer no other examples of the purported "strategic use" of the AAC investigation in this action aside from the aforementioned use of the Termination Letter at depositions.

Respectfully,

*/s/ Daniel Slifkin*

Daniel Slifkin

CC: All Counsel of Record (*via ECF*)