TAB 3

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § § | Civil Action No. 4:20-cv-00576 |
| | | <u>CLASS ACTION</u> |
| | | The Honorable Charles R. Eskridge III |

**PLAINTIFFS' MOTION TO COMPEL DOCUMENTS CONCERNING
ANADARKO AUDIT COMMITTEE'S PURPORTED INVESTIGATION**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ............................................................................... 1

II. STATEMENT OF FACTS...................................................................................... 2

III. NATURE AND STAGE OF PROCEEDINGS ....................................................... 4

IV. ISSUES REQUIRING RESOLUTION................................................................... 6

V. APPLICABLE LEGAL STANDARDS.................................................................. 6

VI. ARGUMENT ......................................................................................................... 8

    A. The AAC Members Continue to Improperly Withhold Documents Based Solely on Attorney-Client Privilege. ................................................. 8

    B. Defendants and the AAC Members Waived Any Applicable Work Product Protection. ....................................................................................... 9

        1. KPMG's Audit Work Papers Are Business Materials. .................... 10

        2. Defendants' Sword-and-Shield Tactics Waived Any Applicable Work Product Protection. ................................................ 12

            a. Defendants and the AAC Members Waived Any Applicable Work Product Protections by Disclosing the AAC Investigation to Third-Parties. .............................. 13

    C. APPOINTMENT OF SPECIAL MASTER ............................................... 16

VII. CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ahern v. Pac. Gulf Marine, Inc.*,
  2007 WL 9723901 (M.D. Fla. Nov. 8, 2007) .............................................. 12

*Cantu v. TitleMax, Inc.*,
  2015 WL 5944258 (W.D. Tex. Oct. 9, 2015) .............................................. 11

*Chevron Corp. v. 3TM Consulting, LLC*,
  2011 WL 13135155 (S.D. Tex. Jan. 10, 2011) ......................................... 7, 12

*Chevron Corp. v. Donziger*,
  2013 WL 6182744 (S.D.N.Y. Nov. 21, 2013) ............................................... 8

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*,
  876 F.3d 690 (5th Cir. 2017) ....................................................................... 7

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  218 F.R.D. 125 (E.D. Tex. 2003) ................................................................. 7

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  219 F.R.D. 396 (E.D. Tex. 2003) .......................................................... 13, 15

*First Horizon Nat'l Corp. v. Hous. Cas. Co.*,
  2016 WL 5867268 (W.D. Tenn. Oct. 5, 2016) ............................................ 14

*Frye v. Anadarko Petroleum Corp.*,
  953 F.3d 285 (5th Cir. 2019) ....................................................................... 1

*Hodges, Grant & Kaufmann v. U.S. Gov't,
Dep't of the Treasury, I.R.S.*,
  768 F.2d 719 (5th Cir. 1985) .................................................................... 6, 7

*In re Diasonics Sec. Litig.*,
  1986 WL 53402 (N.D. Cal. June 15, 1986) ................................................ 14

*In re Kaiser Aluminum & Chem. Co.*,
  214 F.3d 586 (5th Cir. 2000) ..................................................................... 10

*In re Subpoenas Duces Tecum*,
  738 F.2d 1367 (D.C. Cir. 1984) .................................................................. 13

- ii -

**Page**

*Leblanc v. Severan Trent Servs., Inc.*,
    2006 WL 2135430 (E.D. La. July 28, 2006) .................................................................. 7

*Medinol, Ltd. v. Bos. Sci. Corp.*,
    214 F.R.D. 113 (S.D.N.Y. 2002) .................................................................. 14

*Mir v. L-3 Commc'ns Integrated Sys., L.P.*,
    315 F.R.D. 460 (N.D. Tex. 2016) .......................................................... 13, 15

*Nguyen v. Excel Corp.*,
    197 F.3d 200 (5th Cir. 1999) .................................................................. 7

*S.E.C. v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006) (Ramirez, J.) ............................................ 8

*S.E.C. v. Microtune, Inc.*,
    258 F.R.D. 310 (N.D. Tex. 2009) .......................................................... 8, 9

*SEC v. Herrera*,
    324 F.R.D. 258 (S.D. Fla. 2017) ............................................................ 15

*SEC v. Roberts*,
    254 F.R.D. 371 (N.D. Cal. 2008) ............................................................ 15

*U.S. Equal Emp. Opportunity Comm'n v. Nabors Indus., Ltd.*,
    2018 WL 11195496 (W.D. Tex. Aug. 21, 2018) ........................................ 8, 12

*United States v. El Paso Co.*,
    682 F.2d 530 (5th Cir. 1982) ......................................................... 7, 10, 11

*United States v. Gulf Oil Corp.*,
    760 F.2d 292 (Temp. Emer. Ct. App. 1985) ............................................... 11

*United States v. Hatfield*,
    2010 WL 183522 (E.D.N.Y. Jan. 8, 2010) ................................................ 14

*United States v. Reyes*,
    239 F.R.D. 591 (N.D. Cal. 2006) ............................................................ 15

*Westinghouse Elec. Corp. v. Republic of Philippines*,
    951 F.2d 1414 (3d Cir. 1991) ................................................................ 13

4866-2653-5451.v1

**Page**

*Williams v. U.S. Env't Servs., LLC,*
   2016 WL 617447 (M.D. La. Feb. 16, 2016) .................................................. 12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78m(a)(2) .......................................................................................... 13
   §78m(b) ............................................................................................. 13
   §78o .............................................................................................. 2, 6
   §78p ................................................................................................ 16
   §7211-7115 ........................................................................................ 10

Federal Rules of Civil Procedure
   Rule 15(c) ........................................................................................... 5
   Rule 45 .............................................................................................. 1
   Rule 53(a)(1)(C) ................................................................................... 16

17 C.F.R.
   §249.310 ............................................................................................ 14

4866-2653-5451.v1

Pursuant to this Court's March 18, 2022 Order (ECF 108) and Rules 37 and 45, Plaintiffs respectfully move to compel the full production of documents comprising or concerning the Anadarko Petroleum Corporation's ("Anadarko" or the "Company") Audit Committee's ("AAC") purported investigation into whistleblower Lea Frye's ("Frye") 2016 complaint that have been withheld by Defendants and certain non-party AAC members.

## I.       PRELIMINARY STATEMENT

This action was filed in February 2020 after a Fifth Circuit decision in *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285 (5th Cir. 2019), publicly revealed a 2016 whistleblower complaint by Frye, a former Anadarko senior reservoir engineer and Shenandoah ("Shen") economics project lead who alleged Defendants misled investors about the commercial viability and producible-resource size of Shen. *Id.* at 288. While keeping investors in the dark about the whistleblower claims, Anadarko wrote off Shen for $902 million in 2017.

Despite the centrality of the whistleblower allegations to this action, Defendants have included on their privilege log 537 documents which they have withheld or redacted based on broad assertions of attorney-client privilege and work product, citing a purported "investigation" undertaken by the AAC. Defendants have forced their third-party independent auditors at KPMG LLP ("KPMG") to do the same in response to Plaintiffs' Federal Rule of Civil Procedure 45 subpoena. The AAC members have likewise withheld 90 documents based on purported claims of attorney-client privilege and work product in response to Plaintiffs' Rule 45 subpoenas.

- 1 -

Defendants and the AAC members have waived any such privilege by strategically and selectively disclosing the substance of the AAC investigation to third-parties, including the U.S. Securities and Exchange Commission ("SEC"); third-party auditors at KPMG; and underwriters in a planned equity offering. For example, Defendants made a presentation to the Fort Worth SEC office to dissuade the SEC from bringing an enforcement action, and now are relying on the resulting SEC non-enforcement letter in this case. At the depositions of the proposed class representatives defense counsel marked the SEC non-enforcement letter as an exhibit and asked if it changed Plaintiffs' views of the case. Defendants' strategic use of the AAC investigation waived any privilege over the entire subject-matter. Likewise, Defendants waived any work product protection by disclosing the information to multiple third-parties.

As we've said before, Plaintiffs just want a fair fight. Defendants disclosed AAC-investigation information whenever there was something in it for them – money, governmental inaction, influencing witnesses. Having successfully used such selective disclosures to obtain an SEC declination, Defendants are now using that declination against Plaintiffs. To respond, Plaintiffs need the full picture of the AAC investigation. Thus, Plaintiffs respectfully request the production of all AAC-investigation-related information.

## II.    STATEMENT OF FACTS

As alleged in the Amended Complaint for Violations of the Federal Securities Laws (ECF 55) (the "Complaint"), Defendants defrauded investors by various means and methods concerning the commercial viability and producible resource size of Shen. ¶¶5-

11, 29-93.[1]  Central to the scheme was Defendants' suppression of internal dissent, including Frye, then senior staff reservoir engineer and project lead tasked with developing economic models for Shen.  ¶¶38-49.  Frye's objections to Defendants' wrongful conduct resulted in her being belittled and sidelined.  ¶¶43, 62, 72.  Ultimately, Frye resigned and submitted a whistleblower complaint to the SEC in May 2016.  ¶¶71-74.

As part of Anadarko's damage control, the AAC engaged Norton Rose Fulbright US LLP ("NRF") to "investigate" Frye's allegations.  Throughout the remainder of 2016, NRF stayed in touch with SEC's Fort Worth office, providing select documents and revealing details about the investigation.[2]  NRF also provided detailed information to KPMG on a dozen conference calls, including witness interviews and Anadarko's internal documents.  Ex. A.  Also, on September 8, 2016, in connection with a planned equity offering, Anadarko's general counsel held a conference call with lead underwriter J.P. Morgan's ("JPM") counsel to discuss "in detail" the status of the investigation and NRF's preliminary "findings."  *Id.* at 50.

On November 21, 2016, NRF previewed with KPMG the materials they intended to present to the SEC the following day.  While NRF granted KPMG full access to the

---

[1]  All "¶_" or "¶¶_" references are to the Complaint, and all internal citations are omitted and emphasis is added, unless otherwise indicated.

[2]  Due to the voluminous nature of the documents cited herein, Plaintiffs attach hereto as exhibits only a select few.  Plaintiffs will provide copies of all other documents referenced upon request.

4866-2653-5451.v1

presentation, including through a direct Q&A session with NRF, NRF did not permit KPMG to retain a copy of the presentation, acknowledging it would waive the privilege.[3]

On November 22, 2016 NRF made a PowerPoint presentation to the SEC, which spanned 250 pages and lasted more than 4.5 hours, including a Q&A session. NRF again revealed detailed information about the investigation, including its two-stage review of 300,000 documents and 55 interviews of 28 employees. *See e.g.* Ex. B. As any good advocate would do, NRF spun the information in the light most favorable to the Company in order to persuade the SEC not to bring an enforcement against Defendants. It worked. On January 10, 2017, the Fort Worth SEC assistant director sent NRF a letter, stating that "[b]ased on the information we have as of this date, we do not intend to recommend an enforcement action by the Commission against Anadarko Petroleum Corporation." Ex. C.

Plaintiffs are well aware of the SEC declination letter because, during the depositions of the proposed class representatives in the fall of 2021, defense counsel marked it as an exhibit and demanded each plaintiff state whether it changed their view of this case. Exs. D-E.

## III.    NATURE AND STAGE OF PROCEEDINGS

This securities fraud action was filed on February 19, 2020. ECF 1. After Judge Atlas denied Defendants' motion to dismiss and allowed discovery to commence, Plaintiffs served documents requests ("RFPs") on Defendants on April 26, 2021, including requests for documents concerning the whistleblower complaint and, relatedly, the AAC

---

[3]    Ex. A.

"investigation." On May 26, 2021, Defendants served their responses and objections, agreeing to produce responsive, non-privileged documents concerning the AAC investigation. Defendants produced the first iteration of their privilege log on December 27, 2021, which they have since supplemented on December 31, 2021, January 25, 2022, February 25, 2022, March 31, 2022, and most recently on April 6, 2022.

On June 10, 2021, Plaintiffs served KPMG with a Rule 45 subpoena, to which KPMG responded on June 18, 2021. KPMG produced its audit work papers on September 24, 2021, but withheld a subset of documents at Defendants' request for a pre-production "privilege" review. On January 11, 2022, KPMG supplemented its production following the completion of Defendants' privilege review. Based on claims of work product, Defendants redacted information in nine documents regarding the AAC's investigation.

On December 13, 2021, Plaintiffs issued Rule 45 subpoenas to the AAC members (Anthony Chase, Kevin Chilton, David Constable, Claire Farley, Charles Goodyear, John Gordon, Mark McKinley, Eric Mullins, Alexandra Pruner, and Paula Reynolds), all of whom except for Mr. Goodyear are represented by defense counsel. Plaintiffs received responses in January and February 2022. On March 3, 2022, AAC members Messrs. Chilton, McKinley, and Mullins produced individual privilege logs, which collectively withheld 90 documents related to the investigation on the basis of attorney-client privilege and/or work product.

On February 18, 2022, counsel for the parties met and conferred telephonically, but were unable to resolve the discovery disputes at issue. Accordingly, on February 22, 2022, Plaintiffs filed an initiating letter pursuant to Rule 15(c) of the Court's procedures

- 5 -

requesting leave to file a motion to compel. ECF 100. On February 24, 2022, Defendants opposed the letter. ECF 103. On March 18, 2022, the Court granted Plaintiffs' leave to file this Motion. ECF 108.

On April 11, 2022, counsel for the parties met and conferred telephonically to clarify Defendants' position as to whether documents withheld from production by AAC members were in their possession, custody, or control. Defense counsel advised Plaintiffs that Defendants did not have possession, custody or control of the AAC members' documents and that the AAC members were standing by their privilege claims. Accordingly, Plaintiffs advised Defendants that the Motion would also seek documents withheld by the non-party AAC members. CRE Ct. Pro. §15(f) ("An initiating letter isn't required to seek discovery relief against a nonparty").

## IV.  ISSUES REQUIRING RESOLUTION

1.  Whether Defendants and AAC members should be compelled to produce certain documents that are claimed to be protected by the attorney-client and work product privileges.

2.  Whether a special master should be appointed to review the documents in dispute should the Court grant this Motion and, if so, how the cost for the special master should be allocated.

## V.  APPLICABLE LEGAL STANDARDS

"The burden of demonstrating the applicability of the [attorney-client] privilege rests on the party who invokes it." *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). The party asserting the privilege also

- 6 -

bears the burden of "prov[ing] that waiver by breach of confidentiality did not occur." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003).

"Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'appl[y] only where necessary to achieve it purpose.'" *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017). Further, "'disclosure of any significant portion of a confidential communication waives the privilege as to the whole.'" *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999).

Further, "[t]he burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." *Hodges, Grant & Kaufmann*, 768 F.2d at 721. However, the work product doctrine "is not an umbrella that shades all materials prepared by a lawyer, or agent of the client." *Leblanc v. Severan Trent Servs., Inc.*, 2006 WL 2135430, at *2 (E.D. La. July 28, 2006). Excluded from the work product doctrine are "'[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation.'" *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).

Where, as here, a party uses the privilege as both sword-and-shield, subject-matter waiver occurs. *Nguyen*, 197 F.3d at 207 nn.18-19 (citing authority); *Chevron Corp. v. 3TM Consulting, LLC*, 2011 WL 13135155, at *3 (S.D. Tex. Jan. 10, 2011) (subject-matter waiver because "[i]t would be fundamentally unfair for the Ecuadorian Plaintiffs to use

- 7 -

3TM's work product to support their positions in the report prepared for Cabrera and then attempt to shield the remainder of 3TM's work product, which may be beneficial to Chevron, from production"); *see also U.S. Equal Emp. Opportunity Comm'n v. Nabors Indus., Ltd.*, 2018 WL 11195496, at *2 (W.D. Tex. Aug. 21, 2018) (work product waiver where defendants placed adequacy of attorney-directed investigation at issue); *Chevron Corp. v. Donziger*, 2013 WL 6182744, at *3 (S.D.N.Y. Nov. 21, 2013) (party "'may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication'").

## VI.    ARGUMENT

### A.    The AAC Members Continue to Improperly Withhold Documents Based Solely on Attorney-Client Privilege.

Although Defendants have waived attorney-client privilege by voluntarily disclosing privileged AAC communications to third-parties, including KPMG, JPM and the SEC, as described above, certain independent Directors who served on the AAC continue to withhold documents on this basis.  "When a party waives the attorney-client privilege, it waives the privilege as to all communications that pertain to the same subject matter of the waived communication."  *S.E.C. v. Microtune, Inc*., 258 F.R.D. 310, 317 (N.D. Tex. 2009) (citing *S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006) (Ramirez, J.).  Recognizing this, Defendants did not oppose, and therefore implicitly conceded in their letter briefing that the disclosure of broad portions of the AAC investigation to third-parties operated as a subject-matter waiver as to **all** documents on the subject.  *Compare* ECF 100 (initiating letter) and ECF No. 108 (order granting leave to move to compel

- 8 -

production based on work-product assertions), *with* ECF 103 (Defendants' opposing letter).

Yet, despite their waiver over the subject matter of the investigation, certain non-party AAC members continue to improperly withhold 59 documents based solely on assertions of attorney-client privilege. *Microtune*, 258 F.R.D. at 317 (finding that "fairness dictates" that subject matter waiver extended to third party). Having waived attorney-client privilege over the AAC-investigation documents, AAC members withholding these documents is fundamentally unfair. *Id*. at 315 ("courts generally construe the [attorney-client] privilege narrowly because 'assertion of privileges inhibits the search for truth'"). Plaintiffs respectfully request that the Court compel the production of these 59 documents withheld solely on this basis.

**B.  Defendants and the AAC Members Waived Any Applicable Work Product Protection.**

Despite disclosing the substance of the AAC's investigation to numerous third-parties, and affirmatively relying on the results of the investigation in this litigation, Defendants and the AAC members have selectively withheld or redacted a total of 568 documents related to the investigation, including interview memoranda, presentations to and correspondence with the AAC, factual memoranda prepared internally by Anadarko personnel, handwritten notes of non-attorneys, memoranda memorializing calls with KPMG and SEC, and KPMG's audit work papers. As set forth below, Defendants and the AAC members waived any work product protections that might have otherwise applied to

- 9 -

the AAC's investigation by affirmatively relying on the results of the investigation in this action and/or by selectively revealing protected information to adverse third-parties.

### 1. KPMG's Audit Work Papers Are Business Materials.

First, Defendants must withdraw their objections to the production of KPMG work paper documents that reference information from the AAC's investigation. KPMG's audit work papers are ordinary business materials prepared principally to comply with KPMG's own audit documentation requirements, not attorney work product.

In the Fifth Circuit, documents qualify for work product protection only if "'the **primary motivating** purpose behind the creation of the document was to aid in possible future litigation.'" *El Paso*, 682 F.2d at 542; *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (same).

Here, the documents were generated to comply with KPMG's audit obligations, not for possible litigation. The Public Company Accounting Oversight Board ("PCAOB"), established by and authorized the Sarbanes-Oxley Act of 2002, has the authority to promulgate, and enforce professional audit standards for auditors of public companies in the United States. *See* 15 U.S.C. §§7211-7215. Among other requirements, the PCAOB requires independent auditors, like KPMG, to prepare work papers "document[ing] the procedures performed, **evidence obtained**, and conclusions reached with respect to relevant financial statement assertions." PCAOB Auditing Standard 1215.06.[4]

---

[4]    *See* https://pcaobus.org/oversight/standards/auditing-standards/details/AS1215.

In addition, unredacted documents obtained in discovery confirm that KPMG's involvement in the AAC's investigation, and hence the preparation of its work papers, was purely for business purposes, for example:

- "Subsequent to the call, on July 25, 2016, Mark Zajac updated DPP, OGC, RPPP, EQCR, via email and there were no objections from the group that the Company could file its 10Q in normal course."  Ex. F.

- "Suzanne requested that NRF reach out once there is more information to update on, but either way an update would be needed in October (in ~6-7 weeks) *before the next 10-Q*."  Ex. G at 0851.

As the primary motivating purpose behind KPMG's work papers was to meet an ordinary business obligation, they are discoverable.  *See El Paso*, 682 F.2d at 543 (tax pool analysis not work product because "primary motivating force behind the tax pool analysis . . . is not to ready El Paso for litigation over its tax returns" but "[r]ather . . . to anticipate for financial reporting purposes, what the impact of litigation might be on the company's tax liability"); *United States v. Gulf Oil Corp.*, 760 F.2d 292, 297 (Temp. Emer. Ct. App. 1985) (audit documents were not work product because "they were created, at Arthur Young's request, in order to allow Arthur Young to prepare financial reports which would satisfy the requirements of the federal securities laws"); *Cantu v. TitleMax, Inc.*, 2015 WL 5944258, at *4 (W.D. Tex. Oct. 9, 2015) (audit documentation not work product under *El Paso* and *Gulf Oil*).  Defendants must, therefore, withdraw their redactions from KPMG's work papers.

### 2. Defendants' Sword-and-Shield Tactics Waived Any Applicable Work Product Protection.

Defendants have also waived any work product protection due to their affirmative and strategic use of the AAC's investigation and the resulting SEC non-enforcement in this action. As noted above, at the depositions of each proposed class representative, defense counsel marked the SEC's non-enforcement letter as an exhibit and questioned whether it changed their views of the case. Despite their affirmative use of the SEC's declination in this action to advance their own defense, Defendants have selectively withheld and/or redacted documents underlying the investigation, preventing Plaintiffs from adequately responding. In so doing, "Defendants are effectively attempting to use the work product privilege as both a shield and a sword or, in other words, partially disclose and affirmatively rely upon aspects of privileged documents to support their claim and then shield the underlying [documents] from scrutiny by the opposing party." *Ahern v. Pac. Gulf Marine, Inc.*, 2007 WL 9723901, at *4 (M.D. Fla. Nov. 8, 2007).

By using the AAC's investigation and the SEC's declination as both a sword-and-shield, Defendants have waived any work product protections over the subject matter of the investigation. *3TM Consulting*, 2011 WL 13135155, at *3 (subject-matter waiver because "[i]t would be fundamentally unfair for the Ecuadorian Plaintiffs to use 3TM's work product to support their positions in the report prepared for Cabrera and then attempt to shield the remainder of 3TM's work product, which may be beneficial to Chevron, from production"); *Nabors Indus.*, 2018 WL 11195496, at *2 (work product waiver where defendants placed adequacy of attorney-directed investigation at issue); *Williams v. U.S.*

- 12 -

*Env't Servs., LLC*, 2016 WL 617447, at *5 (M.D. La. Feb. 16, 2016) ("By relying on its investigation to defend against Plaintiff's allegations, Defendant has waived any applicable privilege with respect to not only the investigative report, but any underlying documents.").

> ### a.  Defendants and the AAC Members Waived Any Applicable Work Product Protections by Disclosing the AAC Investigation to Third-Parties.

Defendants and the AAC members also independently waived any work product protection over documents underlying the AAC's investigation by disclosing the information in those documents to the SEC, its independent outside auditors at KPMG and JPM. A party waives work product protections whenever the "work-product is given to adversaries or treated in manner that substantially increases the likelihood that an adversary will come into possession of the material." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400-01 (E.D. Tex. 2003); *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 467 (N.D. Tex. 2016).

Here, there is no question that certain third-parties were adversaries of Anadarko, and that disclosure to JPM also increased the likelihood that disclosure could be made to adversaries. The SEC was plainly an adversary as it had the ability to, and was in fact, considering bringing an enforcement action against Anadarko. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991); *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984). KPMG's relationship to Anadarko was also fundamentally adversarial given its role as an independent auditor in ensuring the proper protection of investors. *See* 15 U.S.C. §§78m(a)(2), (b); 17 C.F.R. §249.310. Indeed, as

Judge Hellerstein explained in *Medinol, Ltd. v. Bos. Sci. Corp.*, 214 F.R.D. 113 (S.D.N.Y. 2002):

> The auditor's review supports the auditor's independent opinion about the fairness of the company's financial reports, not the audited company's litigation interests. Thus, the auditor's interests are not necessarily aligned with the interests of the company. And, as has become crystal clear in the face of the many accounting scandals that have arisen as of late, in order for auditors to properly do their job, they ***must*** not share common interests with the company they audit. "***[G]ood auditing requires adversarial tension between the auditor and clients***."

*Id.* at 116 (holding that disclosure of company's Special Litigation Committee's meeting minutes to outside auditors waived protection of work product doctrine) (some emphasis in original).

For these reasons, numerous courts have recognized that the relationship between publically-traded companies and their independent auditors is adversarial. *See, e.g.*, *United States v. Hatfield*, 2010 WL 183522, at *3 (E.D.N.Y. Jan. 8, 2010) (finding waiver of work product because the auditor "owed its 'ultimate allegiance to the corporation's creditors stockholders, as well as to the investing public'"); *First Horizon Nat'l Corp. v. Hous. Cas. Co.*, 2016 WL 5867268, at *10 (W.D. Tenn. Oct. 5, 2016) (same); *In re Diasonics Sec. Litig.*, 1986 WL 53402, at *1 (N.D. Cal. June 15, 1986). As such, Defendants' disclosure of protected information to either the SEC, KPMG or JPM waived any work product protection.

Further, as noted above, Defendants and the AAC members routinely revealed the substance of the withheld documents to third-parties. Notably, the 250-page PowerPoint presentation to the SEC alone revealed extensive information regarding the investigation,

- 14 -

including information that NRF obtained from its 55 witness interviews and their review of Anadarko's internal documents and memoranda. Defendants and the AAC members also consistently shared the results of the AAC's investigation with KPMG during at least a dozen conference calls held throughout the span of the investigation. *See, e.g.*, Ex. H. These widespread disclosures support a finding of waiver. *Ferko*, 219 F.R.D. at 403; *Mir*, 315 F.R.D. at 470.

Defendants have taken the overly formalistic position that waiver is limited to documents physically disclosed. However, for purposes of waiver, "the transmission of *privileged information* is what matters, not the medium through which it is conveyed." *United States v. Reyes*, 239 F.R.D. 591, 604 (N.D. Cal. 2006) (finding of waiver because "[i]t makes no difference whether a privilege-holder copies a written text, reads from a written text, or describes a written text to an outside party"); *see also SEC v. Herrera*, 324 F.R.D. 258, 260 (S.D. Fla. 2017) (finding waiver "[b]ecause there is little or no substantive distinction for wavier purposes between the actual physical delivery of the work product notes and memoranda and reading or orally summarizing the same written material's meaningful substance to one's legal adversary"). Although the third-parties may not have the actual documents withheld from production here, they "ha[ve] the *functional equivalent* of them" through the litany of disclosures Defendants and the AAC members made during the 4.5 hour presentation to the SEC and during their conference calls with KPMG. *Herrera*, 324 F.R.D at 264 (emphasis in original). Therefore, Defendants and the AAC members have waived any work product protection over any information they disclosed to third-parties. *SEC v. Roberts*, 254 F.R.D. 371, 377 (N.D. Cal. 2008) ("[T]o

- 15 -

the extent that Howrey orally disclosed to the government factual information contained in any of the written material identified by Roberts, Howrey has waived . . . work product privileges with respect to that information.").

Defendants and the AAC members waived attorney work product protections. Thus, Plaintiffs request that the Court issue an order compelling the production of the 250 documents identified herein. Ex. I.

### C. APPOINTMENT OF SPECIAL MASTER

Plaintiffs respectfully submit that in the event Plaintiffs' Motion is granted, appointment of a special master will be unnecessary given Defendants' waiver of the attorney-client privilege and attorney work product over the subject matter of the AAC's investigation. Fed. R. Civ. P. 53(a)(1)(C). However, to the extent the Court nevertheless believes appointment of a special master is appropriate, Plaintiffs submit that Defendants should bear all costs as it is their improper privilege claims that have necessitated this Motion. CRE Ct. Pro. §16(c).

## VII. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court order Defendants to produce documents underlying and relating to the AAC's investigation and to bear all costs related to the appointment of a special master.

DATED: April 13, 2022                     Respectfully submitted,


                                          s/ JOE KENDALL
                                          JOE KENDALL

- 16 -

4866-2653-5451.v1

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
  Attorney-in-charge
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Texas Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
JASON A. FORGE
RACHEL L. JENSEN
SARA B. POLYCHRON
FRANCISCO J. MEJIA
MEGAN A. ROSSI
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
jforge@rgrdlaw.com
rachelj@rgrdlaw.com
spolychron@rgrdlaw.com
fmejia@rgrdlaw.com
mrossi@rgrdlaw.com

Lead Counsel for Lead Plaintiff

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4859 words, exclusive of the caption, table of contents, table of authorities, and signature block.

DATED: April 13, 2022

s/ Joe Kendall
_____
JOE KENDALL

4866-2653-5451.v1

## CERTIFICATE OF CONFERENCE

As set forth in Plaintiffs' initiating letter (ECF 100), the parties have met and conferred about the discovery issues in dispute on multiple occasions, including on February 18, 2022, when the attorneys leading the day-to-day litigation conferred telephonically, but could not reach a resolution. On April 11, 2022, Plaintiffs conferred with counsel for the non-party Anadarko Audit Committee members, who also represent Defendants, but again could not reach a resolution.

## CERTIFICATE OF SERVICE

I hereby certify that I originally served the foregoing on all counsel of record who have appeared in this matter on April 13, 2022 via email as well as through the Court's CM/ECF system on this 2nd day of May, 2022.

s/ Joe Kendall
_____
JOE KENDALL

EXHIBIT A
PART ONE

ABCD

[ DocProperty KISOff1Addr ]                    [ DocProperty KISOff3Addr ]

| | | | |
|---|---|---|---|
| To | 2016 APC Working Papers | Date | January 6, 2017/Updated January 20, 2017 |
| From | Suzanne Johnson<br>Houston | Ref | [ if   DocProperty "KISOurRef"   <> ""<br>DocProperty "KISOurRef"   filename<br>] |

**Demand Letter Investigation**

**Purpose**

The purpose of this memorandum serves to document KPMG's procedures related to a potential illegal act of the Company in accordance with PPL 05-053.

**Background**

On April 28th, Anadarko Petroleum Corporation ("the Company") received a demand letter (the "letter") dated April 20, 2016 from a current employee that alleges certain officers were knowingly making false statements about the resource potential of Shenandoah, a significant discovery for Anadarko in the Gulf of Mexico. Specifically, the allegations in the letter noted that a certain senior executive officer of the Company was "bullying" the employee to increase the resource potential of the Shenandoah prospect. In addition, on the October 28, 2015 earnings call where Al Walker, CEO, and Bob Daniels, Executive Vice President, answered questions regarding Shenandoah, the employee alleges that both Al and Bob made knowingly false statements regarding the size of the Shenandoah prospect. The employee noted that officers of the Company had inflated the resource potential of Shenandoah project from 425 million barrels of oil to 550 million barrels of oil.

Also in the letter, the employee noted that the stress at work compounded to stress at home and health problems. When the Company announced that layoffs would be taking place, the employee requested to be included in the force reduction, but was not as the employee was a high performer and well regarded at the Company. Therefore, in March 2016, the employee requested a leave of absence from work under the FMLA act in order to receive medical care to treat her "work-related stress, anxiety and depression".

The letter ended with a settlement demand for severance pay and other benefits as part of an agreed separation from the Company. If the Company did not respond on or before May 6, 2016, the employee threatened to file a complaint with the SEC.

Upon receipt of the allegations, the Company notified the Audit Committee Chair, Eric Mullins, and Governance and Risk Council Chair, Paulett Eberhart. Eric, along with the other members of

©2007 KPMG LLP, a US limited liability partnership and a member firm of the KPMG network of independent member firms affiliated with KPMG International, a Swiss cooperative. All rights reserved. Printed in the United States.

ABCD

*[ DOCPROPERTY KISClient \\* CHARFORMAT ]*
*Demand Letter Investigation*
*[ STYLEREF zDocDate \\* CHARFORMAT ]*

the Audit Committee, hired external counsel Norton Rose Fulbright ("Norton Rose") to commence an external investigation regarding the allegations made in the letter.

Shenandoah is currently a long-cycle offshore Gulf of Mexico exploration project that has had several exploratory and appraisal wells drilled on it since 2012. It is expected that it will take at least another 3 years before Shenandoah is full appraised and ready for production. In January 2016, the Shenandoah prospect moved from the Exploration group to the Development group. There are no proved oil and gas reserves recorded on Shenandoah and the letter does not allege any improprieties with the Company's accounting for Shenandoah or its accounting function generally. In July 2016, the Company completed drilling Shenandoah-5 well. In the Q2 2016 earnings release, the Company provided the following update related to Shenandoah:

> "During the quarter, Anadarko continued to advance its understanding of the Shenandoah discovery, as it encountered more than 1,040 net feet of oil pay in the Shenandoah-5 appraisal well, expanding the eastern extent of the field. Additionally, Anadarko increased its working interest in Shenandoah to 33 percent and added several new exploration opportunities to the portfolio by participating in a preferential-right process."

The Company has plans to drill Shenandoah 6 in the latter part of 2016 with completion in early 2017. Upon completion of this well, the Company will make a final investment decision ("FID") as to whether or not they move forward with producing the prospect.

**Procedures**

- KPMG, including Mark Zajac, Partner, Suzanne Johnson, Partner, and Forensics Specialists Mike Schwartz, Partner, and Mark White, MD, obtained and read a copy of the letter to understand the allegations made against the Company and certain officers.

- KPMG representatives Mark Zajac, Partner, Suzanne Johnson, Partner, and Forensics Specialists Mike Schwartz, Partner, and Mark White, MD, held a conference call on April 28, 2016 with Shauna Clark and Gerry Pecht of Norton Rose to discuss the allegations and scope of the investigation. During the call, Gerry summarized the their efforts to date including the investigation scope:
  - The AC Chair retained Norton Rose to conduct an external investigation regarding the accusations included in the letter. Norton Rose recommended Redacted - APC work product

# Redacted - APC work product

CONFIDENTIAL                                                                 KPMG_APC_eA_0009645

ABCD

**Redacted - APC work product**

- On May 1, 2016, KPMG representatives Mark Zajac, Suzanne Johnson and Mike Schwartz held a conference call with Gerry and Shawna of Norton Rose to discuss findings, if any, status of their investigation and upcoming timeline. KPMG noted the following from the call:
  - Due to the timing of the receipt of the letter, hiring of the external counsel, and the Company's plans to file its Q1 Form 10Q on or around May 2, 2016, external counsel

**Redacted - APC work product**

  - Norton Rose hired Ryder Scott as a third party reserve engineer that will start their technical analysis of the related documents on May 2, 2016. **Redacted - APC work product**

**Redacted - APC work product**

### *Q2 2016 Update*

- On June 1, 2016, KPMG representatives Mark Zajac, Suzanne Johnson, Mark White and Mike Schwartz held a conference call with Peggy Heeg, Gerry Pecht and Shawna Johnson of Norton Rose to discuss findings, if any, status of their investigation and upcoming timeline. Eric Mullins, AC Chair, also participated in the call. KPMG noted the following from the call:
  - The Demand Letter threatened to file a complaint with the SEC if the Company did not respond by May 6, 2016. In response, on or around May 6, 2016, the Company notified the SEC of the demand letter and related allegations. The Company further disclosed that the Audit Committee was performing an investigation, which is still ongoing.
  - On May 18, 2016, the Company received a letter of resignation from the employee that filed the Demand Letter.
  - Norton Rose reached out to the employee's lawyer to arrange a meeting with the former employee, scheduled for June 2, 2016.

CONFIDENTIAL                                                           KPMG_APC_eA_0009646

ABCD

**Redacted - APC work product**

- On June 24, 2016, KPMG representatives Mark Zajac, Suzanne Johnson and Mark White held a conference call with Peggy, Gerry and Shawna of Norton Rose to discuss findings, if any, status of their investigation. Eric Mullins, AC Chair, also participated in the call. KPMG noted the following from the call:

**Redacted - APC work product**

- Based on the employee interviews to date, Norton Rose represented **Redacted - APC work product**

**Redacted - APC work product**

CONFIDENTIAL                                                           KPMG_APC_eA_0009647

ABCD

**Redacted - APC work product**

Redacted - APC work product | Further, Ryder Scott noted that | Redacted - APC work product

**Redacted - APC work product**

Redacted - APC work product | KPMG notes that the Company has not publicly disclosed the resource range of Shenandoah

- On July 25, 2016, KPMG representatives Mark Zajac, Suzanne Johnson, and Mark White held a conference call with Peggy, Gerry and Shawna of Norton Rose to discuss findings, if any, status of their investigation. Eric Mullins, AC Chair, also participated in the call. KPMG noted the following from the call:
  - On July 11, 2016, Norton Rose provided an update to the SEC regarding the investigation. The SEC requested to see the documents referenced in the Demand Letter, and Norton Rose **Redacted - APC work product**
  - Norton Rose | **Redacted - APC work product**

**Redacted - APC work product**

Redacted - work product | Norton Rose represented | Redacted - APC work product

**Redacted - APC work product**

  - In the Demand Letter, the former employee said the Company inflated numbers during a presentation to the Shareholders. Specifically, the Company noted "900+ MMBOE in net discovered resources". Per the Demand Letter, the 900 MMBOE was an inaccurate figure as the amount included for Shenandoah was overstated. Through Norton Rose's investigation, Norton Rose | **Redacted - APC work product**

**Redacted - APC work product**

- During the July 25, 2016 call with Norton Rose, KPMG discussed the remaining procedures to be performed by Norton Rose and the Company, noting the following:

[filename ]                                                                                    [page \* arabic]

                                                              KPMG_APC_eA_0009648

ABCD

> ## Redacted - APC work product

- Norton Rose will present a status update to the Board of Directors on August 1, 2016. Following this meeting, Norton Rose will provide a final written report to the Board at the end of August 2016.
- Norton Rose will provide the SEC an update after providing the final written report to the Board.
- Norton Rose will update KPMG after the Board update, but before updating the SEC.

### September 12, 2016 Comfort Letter Update

- On September 7, 2016, KPMG representatives Mark Zajac, Suzanne Johnson, and Mark White held a conference call with Peggy, Gerry and Shawna of Norton Rose to discuss findings, if any, and status of their investigation. KPMG noted the following from the call:

> # Redacted - APC work product

- Norton Rose and Anadarko have become aware that the SEC has made a voluntary information request of the other partners involved in the Shenandoah prospect, specifically around the accounting for the Shen-3 well. Anadarko is the operator of Shenandoah with four other partners, some of which are public companies. When accounting for the Shen-3 costs in Q4 2014, some of the partners expensed the cost associated with the well while others, including Anadarko, capitalized the costs. Anadarko has not received the informal information request from the SEC, but under the terms of the Shenandoah Joint Operating Agreement (JOA), the other partners (who received the SEC's voluntary request) are restricted with sharing information unless all partners consent (or are subject to a subpoena)

> # Redacted - APC work product

- Remaining procedures for Norton Rose include:
  - Completing the JOA waiver process so the other partners can provide information to the SEC.

> # Redacted - APC work product

[filename ]                                                                                      [page \* arabic]

ABCD

- In connection with the Company's planned equity offering on or around September 12, 2016, as part of the due diligence process, Mark Zajac participated in a 30 minute teleconference call with Amanda McMillian, Anadarko General Counsel, along with lead underwriter's (JP Morgan) counsel – Akin Gump on September 8, 2016.   Akin Gump partners, John Goodgame and Alice Hsu, were on the call.  The Shenandoah whistle blower matter was discussed in detail by Mrs. McMillian, including status of the investigation, preliminary conclusions reached on resource potential and bullying allegation and that the Company had made the SEC aware of the investigation.  In addition, Mrs. McMillian discussed the Shen 3 well accounting including the materiality of the well to Anadarko's financial statements and noting that the Shen matter had no impact on the Company's established proved oil and gas reserve base incorporated in the prospectus.   Questions were asked to both Mrs. McMillian and Mr. Zajac and answered.  Nothing further noted from underwriters counsel.

### *Q3 2016 Update*

- On October 6, 2016, KPMG representative Suzanne Johnson held a conference call with Peggy Heeg and Gerry Pecht of Norton Rose to discuss findings, if any, and status of their investigation.  KPMG noted the following from the call:
  - Norton Rose met with the SEC on September 25, 2016 and provided documents related to the demand letter investigation.  The SEC raised questions around the accounting for Shen-3.  Norton Rose responded that they are currently looking into the accounting and would provide a status update to the SEC by the end of October 2016.  Norton Rose and the SEC agreed that Norton Rose would include both matters in their final presentation to the SEC.

# Redacted - APC work product

[filename ]                                                                                      [page \* arabic]

ABCD

# Redacted - APC work product

- Norton Rose has hired two accounting experts, 1) Stephen Moore, a former E&Y Partner in charge of Oil & Gas sector and currently a professor and University of Texas and 2) Gary Goolsby, Senior Managing Director at FTI Consulting. **Redacted - APC work product**

# Redacted - APC work product

- In connection with the September 30, 2016 interim reporting period, the Company performed a detailed review of material Deepwater and International suspended well costs. As a result of the review, the Company realized that the former CAO [Cathy Douglas] and VP of Exploration [Ernie Leyendecker] relied upon the injection well capability as the primary reason for capitalizing the costs in 2014. In other words, the costs for Shen-3 were capitalized until its future utility as a water injection site in the project development was complete. As mentioned earlier, the Shenandoah play was moved from Exploration to Development in January 2016. During 2016, the Company planned to drill two more wells (Shen-5 and Shen-6) in order to make a final investment decision (FID) in 2017 on whether or not to move forward with production. In anticipation of FID, the Development group began creating models of the play to assist with determining production, and what other facilities (including water injection sites), if any, would be necessary to start production. The Development group worked on these models from January to July 2016 (The engagement team understands that it is not unusual for the engineers to spend 6-9 months developing models of a play). After the completion of Shen-5 in July 2016, in which additional geological information was obtained, the Development group ran several simulations. While the simulations confirmed the need for a water injection well, it placed the water injection well on either side of Shen-3. Based on this information, the Company concluded during Q3-2016 that there is a low probability of utilizing Shen-3 as a

[filename ]                                                                                    [page \* arabic]

ABCD

water injection site or in the future development of the field, and expensed the associated costs with Shen-3, or $57 million, during the quarter ended September 30, 2016.

- On October 20, 2016, KPMG representatives Suzanne Johnson, Mark White and Bob McLamb (EQCR) held a conference call with Peggy Heeg and Gerry Pecht of Norton Rose to discuss findings, if any, and status of their investigation. KPMG noted the following from the call:
  - Norton Rose had a status meeting with the SEC on October 17, 2016 and agreed to provide documents related to the accounting of Shen-3 on November 2, 2016. Further, Norton Rose will present its findings to the SEC on November 22, 2016. Norton Rose noted that prior to the November 22, 2016 meeting with the SEC, they would present their findings to the Audit Committee/Board and KPMG.

# Redacted - APC work product

Redacted - APC work product As the engagement team had previously not been informed of Shen 3 possibly being used as a water injection well, the engagement team further discussed with Norton Rose the timing of the entry and whether there had been any contradictory information regarding the timing of the expense, any indicators that management changed its story or whether anyone in the Company was pressured to change their point of view about Shen-3 being used as a water injection well. Redacted - APC work product

# Redacted - APC work product

[filename ]                                                                                          [page \* arabic]

KPMG_APC_eA_0009652

ABCD

**Redacted - APC work product**

- On October 27, 2016, KPMG representatives Suzanne Johnson and Mark White held a conference call with Peggy Heeg and Gerry Pecht of Norton Rose to discuss findings, if any, and status of their investigation. KPMG noted the following from the call:
  - Norton Rose provided documents (emails and internal documents) around the December 2014 accounting for Shen 3 to the SEC on October 26, 2016. Norton Rose Redacted - APC work product

  **Redacted - APC work product**

  - KPMG inquired whether there was any contradictory evidence around the accounting for Shen-3 in December 2014, including whether there was any discussions between Anadarko and its other partners. Gerry represented **Redacted - APC work product**

  **Redacted - APC work product**

  **Redacted - APC work product** (which the engagement team understands that it is not uncommon for engineers to have differing views on projected fault lines). The engagement team notes that this is consistent with its experience as well.
  - Remaining items to be completed by Norton Rose include:

CONFIDENTIAL                                                                        KPMG_APC_eA_0009653

EXHIBIT A
PART TWO

ABCD

Redacted - APC work product

- One of the Norton Rose accounting experts (Steven Moore) has Redacted - APC work product

# Redacted - APC work product

- Final presentation to the AC/Board and KPMG during the week of November 14, 2016, with a final presentation to the SEC on November 22, 2016.

- On October 27, 2016, the Company held its quarterly Audit Committee meeting related to the filing of its September 30, 2016 Form 10Q. During the executive session with the Audit Committee, KPMG representatives Mark Zajac, Suzanne Johnson and Kaye Rasmusson (Senior Manager) discussed the status of the investigation and related findings with the Audit Committee. Eric Mullins, AC Chair, Redacted - APC work product

# Redacted - APC work product

*Q4 Update*

- On November 21, 2016, KPMG representatives Mark Zajac, Suzanne Johnson and Mark White met with Peggy Heeg and Gerry Pecht of Norton Rose to discuss and review the presentation and information Norton Rose would be presenting to the SEC on November 22, 2016. KPMG noted the following from the meeting:
  - For the first hour of the meeting, KPMG representatives read through the draft presentation (approximately 170 pages). Redacted - APC work product

# Redacted - APC work product

[filename ]

[page \* arabic]

KPMG_APC_eA_0009654

ABCD

# Redacted - APC work product

- After reading through the presentation, KPMG had a question/answer session with Norton Rose. Due to attorney/client privileges, KPMG did not retain a copy of the presentation for the audit workpapers.

- On December 14, 2016, KPMG representatives Suzanne Johnson and Mark White held a conference call with Peggy Heeg and Gerry Pecht of Norton Rose to discuss Norton Rose's meeting with the SEC on November 22, 2016, held at the SEC's offices located in Fort Worth, TX. KPMG noted the following from the call:

# Redacted - APC work product

CONFIDENTIAL

KPMG_APC_eA_0009655

ABCD

> # Redacted - APC work product

- On January 19, 2017, KPMG representatives Suzanne Johnson and Mark Zajac held a conference call with Peggy Heeg and Gerry Pecht of Norton Rose and discussed the following:
  - Gerry informed KPMG that he [Norton Rose] had received a "termination" letter from the SEC stating they [the SEC] had concluded the investigation into Anadarko Petroleum Corporation. Further, based on the information provided to date, the SEC did not intend to recommend enforcement action against the Company. Please see copy of letter at **4.5.5.5.20.** KPMG inquired whether there could be any additional questions regarding the investigation. Gerry represented **Redacted - APC work product**
    **Redacted - APC work product**
  - KPMG inquired whether Norton Rose had provided any additional documents to the SEC since the meeting on November 22, 2016. Peggy responded they had not provided any additional documentation. **Redacted - APC work product**
- KPMG representatives Mark Zajac and Suzanne Johnson attended the audit committee meeting on February 8, 2017. During the executive session, KPMG discussed the results of the investigation with the committee members and noted the engagement team's understanding was consistent with theirs. Specifically, the Company does not expect any additional inquiries from the SEC and considers the investigation closed.

**Accounting and Reporting Implications**

*Demand Letter Allegations*

[filename ]                                                                                                       [page \\* arabic]

                                                              KPMG_APC_eA_0009656

*[ DOCPROPERTY KISClient \\* CHARFORMAT ]*
*Demand Letter Investigation*
*[ STYLEREF zDocDate \\* CHARFORMAT ]*

KPMG considered whether the allegations in the demand letter had a material impact on the current or previously issued financial statements. Because Shenandoah is a discovery in the Gulf Of Mexico (GOM) in which the Company is continuing to explore and appraise, the Company does not have any oil and gas proved reserves recorded for Shenandoah. Therefore there is no impact to the Company's unaudited supplemental oil and gas disclosures.

The Company has recorded approximately $265 million of costs, included within its suspended well costs at June 30, 2016. Under ASC 932, exploratory well costs should be capitalized beyond 1 year in situations where exploratory activities have found sufficient quantities of oil and gas reserves to justify completion and the Company is making sufficient progress assessing these reserves and the economic viability of the project. The FASB notes that these oil and gas reserves may require additional geological analysis and engineering to meet the reasonable certainty threshold to be classified as 'proved'.

The Company is currently drilling another exploratory well in Shenandoah basis (estimated cost net to Anadarko is approximately $65 million) and thus, are continuing to make sufficient progress on the project (which supports the continued capitalization of costs). It is expected that Shenandoah will take another 3 plus years to reach production. Given it is in the early stages of exploration, there are no proved oil and gas reserves recorded, no production (i.e. no revenue recorded) and no depletion, depreciation and amortization recorded.

The Letter makes no allegations about the accounting for Shenandoah or about the accounting function. Based on this fact pattern, the engagement team believes there is little to no risk of a material misstatement to the current or previously issued financial statements.

Additionally, KPMG considered the senior executive officers named in the letter and whether they have any financial reporting responsibility. The executives listed, primarily Bob Daniels, EVP International Deepwater Exploration, and Ernie Leyendecker, Senior VP of International Exploration, are executives on the Operations of the Company, and are not responsible for financial reporting or supervising the recording of oil and gas proved reserves, which impacts supplemental disclosures and depreciation and amortization. KPMG further notes that the Company hires an external oil and gas reserves specialists on a yearly basis to perform an external review of the procedures and methods used by the Company in determining its oil and gas proved reserves. KPMG obtains Miller and Lent's report in conjunction with our audits and there is no history of significant oil and gas reserves differences with management. Further, the proven oil and gas reserves function of the Company reports through the VP of Development and does not report to the exploration executives noted in the letter.

The only executive mentioned in the letter that has any financial reporting responsibility is the CEO, Al Walker. As noted above, external counsel has **Redacted - APC work product**

**Redacted - APC work product**

[filename ]                                                         [page \\* arabic]

KPMG_APC_eA_0009657

ABCD

# Redacted - APC work product

*Accounting for Shen-3 – Initial Capitalization of Costs*

The Company has not received any direct communications from the SEC regarding its accounting for Shen-3. However, in light of the fact that the SEC made voluntary requests of the Company's Shenandoah partners (and also made specific requests of Norton Rose during Q3 2016) regarding the Company's accounting for their interest in Shen-3, the engagement team considered the appropriateness of the Company's accounting for Shen-3, particularly since several of the partners accounted for their interest in the well differently (i.e. they expensed the costs) than the Company.

As disclosed in its Form 10K, the Company's accounting policy regarding exploration costs is below:

> "Under the successful efforts method of accounting, exploratory costs associated with a well discovering hydrocarbons are initially capitalized, or suspended, pending a determination as to whether a commercially sufficient quantity of proved reserves can be attributed to the area as a result of drilling. At the end of each quarter, management reviews the status of all suspended exploratory drilling costs in light of ongoing exploration activities, in particular, whether the Company is making sufficient progress in its ongoing exploration and appraisal efforts or, in the case of discoveries requiring government sanctioning, analyzing whether development negotiations are underway and proceeding as planned. If management determines that future appraisal drilling or development activities are unlikely to occur, associated suspended exploratory well costs are expensed. Therefore, at any point in time, the Company may have capitalized costs on its Consolidated Balance Sheets associated with exploratory wells that may be charged to exploration expense in future periods."

ASC 932, *Extractive Activities – Oil and Gas*, provides the following guidance on the accounting for exploration costs:

- ASC 932-360-25-3: Only those [ HYPERLINK "https://workspaces.amr.kworld.kpmg.com/aro/AROWeb/documentwindow.aspx?from=Doc&ref=US_FASB_COD_TOC_932_360&sec=67&q=&csw=" \t "_blank" ] and development costs that relate directly to specific oil and gas reserves are capitalized; costs that do not relate directly to specific reserves are charged to expense. The successful efforts method of accounting conforms to the traditional concept of the historical cost of an asset. Under the successful efforts method, certain types of costs may be capitalized as construction-in-progress pending further information about the existence of future benefits, but as soon as the additional information becomes available, and it is known whether future benefits exist, those costs are either reclassified as an amortizable asset or charged to expense.

CONFIDENTIAL

KPMG_APC_eA_0009658

ABCD

- ASC 932-360:

  25-17 Stratigraphic test wells are drilled to obtain information. They are not normally intended to be completed for hydrocarbon production and are customarily abandoned after drilling is completed and the information is obtained. Normally, stratigraphic test wells are drilled offshore to determine whether an offshore property contains sufficient reserves to justify the cost of constructing and installing a production platform and to determine where to locate such a platform.

  25-18 Stratigraphic test wells are divided into two types—exploratory-type and development-type—and the standards of accounting for the two types parallel the accounting for exploratory wells and development wells, respectively. Thus, an exploratory-type [ HYPERLINK "https://workspaces.amr.kworld.kpmg.com/aro/AROWeb/documentwindow.aspx?from=Doc &ref=US_FASB_COD_TOC_932_360&sec=67&q=&csw=" \t "_blank" ] is accounted for in a manner similar to an [ HYPERLINK "https://workspaces.amr.kworld.kpmg.com/aro/AROWeb/documentwindow.aspx?from=Doc &ref=US_FASB_COD_TOC_932_360&sec=67&q=&csw=" \t "_blank" ] drilled in an area requiring a major capital expenditure before production could begin. The costs of drilling the exploratory-type stratigraphic test well are capitalized pending determination of whether proved reserves are found, subject to the condition that those costs shall not continue to be carried as assets if the enterprise is not making sufficient progress assessing the reserves and the economic and operating viability of the project or if the quantity of reserves found would not justify completion of the well for production had it not been simply a stratigraphic test well. Thus if an exploratory-type stratigraphic test well discovers reserves that are classified as proved and facilities are to be installed to produce those reserves, the cost of the exploratory-type stratigraphic test well is accounted for as part of the cost of the facilities even though the particular well itself may be abandoned. Accounting for the other type of stratigraphic test well—development-type—is identical to accounting for development wells and other development costs generally: capitalize as part of the cost of an entity's wells and related equipment and facilities.

The accounting literature above is inconsistent where in some areas, the focus is on costs at the well level, while in other areas, the focus is on costs at the project/area level. As indicated in ASC 932-360-25-18, the well itself may be abandoned, but the cost is still capitalized as part of facilities costs as the costs helped discover proved reserves. As such, the engagement team believes that there is

KPMG_APC_eA_0009659

ABCD

diversity in practice in the industry on when to capitalize/expense exploration costs. Anadarko established its accounting policy noted above in 2007, when the Company converted to successful efforts method of accounting. Since then, the Company has consistently applied its policy. For Shen-3, the well itself did not find hydrocarbons. However, as discussed in the Company's 2014 annual report, the well "confirmed the sand depositional environment, lateral sand continuity, excellent reservoir qualities, and down-dip thickening. The well also enabled the projection of oil-water contacts based on pressure data and reduced the uncertainty of the resource range." In other words, the Company believes that Shen-3 contributed to the ongoing development of the Shenandoah project, and additional appraisal wells were subsequently drilled. For this reason, the Company capitalized the costs incurred with Shen-3, consistent with their accounting policy above.

The accounting analysis summarized above was contemporaneously documented by the Company in Q4 2014. The engagement team reviewed the 2014 audit workpapers related to exploration costs and suspended wells noting no inconsistencies with the discussion above. The engagement team has not received anything to contradict the accounting treatment by Anadarko, and the engagement team believes that Anadarko's accounting for the costs associated with Shen-3 complies with its accounting policy and with current GAAP.

The engagement team considered the additional information (originally created in 2014 and obtained by Norton Rose and KPMG during Q3 2016) regarding the use of Shen-3 as a water injection site or sidetrack. Given the large resource range of the Shenandoah project, the engagement team believes it was a reasonable judgment in Q4 2014 to conclude that it was reasonably possible the Shenandoah project would proceed to FID and Shen-3 could be used in the future development of the field.

The engagement team notes that it was appropriate to capitalize the costs in Q4 2014 under both scenarios:

1. Shen-3 contributed to the ongoing development of the Shenandoah project, and additional appraisal wells were subsequently drilled;
2. Shen-3 could be used as a water injection well in the development of the field

However, the analysis to determine whether the Company should continue to capitalize the costs differs under the two scenarios. See further discussion below.

*Accounting for Shen-3 – Continued Capitalization of Suspended Well Costs*

CONFIDENTIAL                                                                          KPMG_APC_eA_0009660

ABCD

FASB 932-360-35 provides the following guidance on the Sufficient Progress Assessment of wells in suspended status:

35-18: "An exploratory well or an exploratory-type stratigraphic well may be determined to have found oil and gas reserves, but those reserves cannot be classified as proved when drilling is completed. In those cases, the capitalized drilling costs shall continue to be capitalized if the well has found a sufficient quantity of reserves to justify its completion as a producing well and the entity is making sufficient progress assessing the reserves and the economic and operating viability of the project. Note that an entity is not required to complete the exploratory or exploratory-type stratigraphic well as a producing well. For purposes of determining whether capitalized drilling costs shall continue to be capitalized pending the determination of proved reserves, a project may include more than one exploratory well or exploratory-type stratigraphic well if the reserves are intended to be extracted in a single, integrated producing operation (for example, the producing wells will operate with shared infrastructure).

35-19 All relevant facts and circumstances shall be evaluated when determining whether an entity is making sufficient progress on assessing the reserves and the economic and operating viability of the project. The following are some indicators, among others, that an entity is making sufficient progress (see the following paragraph). No single indicator is determinative. An entity shall evaluate indicators in conjunction with all other relevant facts and circumstances. These indicators include:

a) Commitment of project personnel who are at the appropriate levels and who have the appropriate skills

b) Costs that are being incurred to assess the reserves and their potential development

c) An assessment process covering the economic, legal, political, and environmental aspects of the potential development is in progress

d) Existence (or active negotiations) of sales contracts with customers for the oil and gas

e) Existence (or active negotiations) of agreements with governments, lenders, and venture partners

f) Outstanding requests for proposals for development of any required facilities

g) Existence of firm plans, established timetables, or contractual commitments, which may include seismic testing and drilling of additional exploratory wells

h) Progress that is being made on contractual arrangements that will permit future development

[filename ]

[page \* arabic]

EXHIBIT A
PART THREE

ABCD

i) Identification of existing transportation and other infrastructure that is or will be available for the project (subject to negotiations for use).

Long delays in the assessment or development plan (whether anticipated or unexpected) may raise doubts about whether the entity is making sufficient progress to continue the capitalization of exploratory well or exploratory-type stratigraphic well costs after the completion of drilling. The longer the assessment process for the reserves and the project, the more difficult it is to conclude that the entity is making sufficient progress to continue the capitalization of those exploratory well or exploratory-type stratigraphic well costs.

35-20 If an entity has not engaged in substantial activities to assess the reserves or the development of the project in a reasonable period of time after the drilling of the well is completed or activities have been suspended, any capitalized costs associated with that well shall be expensed net of any salvage value. After a reasonable period of time, the planning of future activities without engaging in substantial activities shall not be sufficient to continue the capitalization of exploratory well or exploratory-type stratigraphic well costs. However, brief interruptions in activities required to assess the reserves or the project, or other delays resulting from governmental or other third-party evaluation of a proposed project, do not require capitalized exploratory well or exploratory-type stratigraphic well costs to be expensed.

During 2015 and first half of 2016, the Company continued to monitor the status of the Shenandoah project in its entirety against the sufficient progress criteria of ASC 932-360-35-19, without revisiting potential future utility of the specific Shen-3 wellbore. Under this scenario, the Shen-3 costs were continued to be capitalized appropriately. As mentioned above, during the third quarter of 2016, the current CAO requested a detailed review of the justification for suspension of significant Deepwater and International exploratory wells. As part of this review, the Company determined that the former CAO concluded that the Shen-3 costs should be capitalized primarily due to injection well capability. While this was a consideration noted by Property Accounting, it was not clear to Property Accounting that this was the predominant reason, and that they should be monitoring the potential use of the wellbore as part of the suspended well analysis going forward (i.e. during 2015 and 2016). With this new information, the Company considered whether the Shen-3 costs i) should have been capitalized at Q4 2014 and ii) should still be capitalized. As discussed above, the Company concluded, and the engagement team concurs, that the Shen-3 costs were appropriately capitalized in Q4 2014. Further, the Company obtained supporting documentation (which the engagement team corroborated, as discussed below) that supported the former's CAO understanding that Shen-3 would be used as an injection site. It wasn't until Q3 2016, with the completion of Shen-5 in July 2016 and updated simulations in August 2016, that the

ABCD

Company determined it was no longer reasonably possible that Shen-3 would be part of the development plan, and thus, expensed the costs related to Shen-3.

In regards to the Company's initial intention to use Shen 3 as a water injection site, the engagement team discussed this item with Norton Rose and corroborated the findings through inspection of certain Company memos/supporting documents, which included some items that had not previously been provided to KPMG prior to Q3-2016. Norton Rose's investigation Redacted - APC work product

# Redacted - APC work product

Redacted - APC work product The engagement team received the impairment meeting minutes during the 2014 year-end audit, but did not include a copy of such meeting minutes in the audit workpapers. Instead, the meeting minutes were reviewed by the engagement team and compared to information included in the Company's Exposure report (a report that Accounting and Finance prepare to support the accounting for the suspended wells), noting the status and overall conclusions were consistent with the impairment meeting notes. The engagement team has subsequently reviewed the draft internal memo and corroborated management's discussion regarding the potential use as a water injection site. In addition, the engagement team discussed the draft memo with Catherine Green, Property Accounting Manager in 2014 and author of the memo. The engagement team specifically asked whether the memo was part of their normal process when assessing suspended wells. Catherine noted that it wasn't, as the Company's normal process in 2014 was to document their assessment through the Exposure report (as discussed above). Catherine represented that she and Cathy discussed writing this memo since the Shen 3 well did not find any hydrocarbons. Catherine also noted that the memo was sent to Cathy Douglas for review, but was never finalized for no specific reason. When asked why KPMG wasn't provided the memo, Catherine noted that the information in the memo was also included in the impairment meeting minutes and Exposure report, which were both provided to KPMG during the 2014 year-end audit. As noted above, the engagement team corroborated that we received both the impairment meeting minutes and Exposure report, and the impairment meeting minutes did discuss the use of Shen-3 as an injection site or sidetrack.

While the engagement team did not obtain and review the draft internal accounting memo as part of the 2014 audit and did not specifically document the Company's intent to use Shen-3 as a water injection site, the engagement team does not believe that management intentionally omitted this fact as part of the 2014 audit. In reaching this conclusion, KPMG noted that the engagement team did receive the Company's notes from the December 2014 that noted management was evaluating the

CONFIDENTIAL                                                                            KPMG_APC_eA_0009663

ABCD

well's potential use as an injection site or sidetrack (received as part of the 2014 YE PBCs). In addition, Property Accounting's basis for capitalizing the costs in 2014 was primarily based on the overall success of the well in that it increased the confidence in potential resources. Based on this understanding the Company capitalized the costs pursuant to ASC 932-360-25-18 when assessing exploratory stratigraphic wells, which was what was disclosed/provided to the engagement team in 2014. The engagement team further corroborated what Accounting and Finance provided in the Exposure report with the Company's Operations report (a quarterly report prepared by Operations that is posted to the Company's public website). While the former CAO did not formally communicate her considerations for capitalizing the costs to the engagement team (or Property Accounting), KPMG does not think this was intentional, based on the fact that the costs ($55 million) were not material to the financial statements and there were other, more significant issues the CAO and engagement team were working through during the 2014 year-end audit. The engagement team noted that Norton Rose ⌐ **Redacted - APC work product** ¬

The engagement team further evaluated whether the ongoing investigation placed undue stress on management or others within the Company to change their accounting position or facts around Shen-3. ⌐ **Redacted - APC work product** ¬ As evidenced through discussions regarding their investigation, KPMG has noted that Norton Rose has maintained a high level of professional skepticism during their interviews, and by hiring third party reserve and accounting experts. The AC hired Norton Rose directly and the AC receives weekly updates regarding the status of the investigation. To date, the engagement team has made specific inquiries of Norton Rose as to whether they have found anything to question the integrity of management, and Norton Rose ⌐ **Redacted - APC work product** ¬ ⌐ **Redacted - APC work product** ¬ Further, the current CAO, Chris Champion, while he is aware of the investigation, is not privy to the details and was not able to discuss Shen-3 with anyone at the Company, until recently. Chris was only recently granted permission to discuss Shen-3 with the engineers in order for the Company to complete its third quarter interim reporting requirements. In other words, the engagement team believes that Chris did not have the ability to place undue stress on others in the organization to change their position related to the accounting for Shen-3.

Based on the discussion above ⌐ **Redacted - APC work product** ¬ ⌐ **Redacted - APC work product** ¬ the engagement team does not believe management has changed their Q4 2014 accounting position or altered the facts related to the accounting for Shen-3. Further, the engagement team believes that Anadarko's accounting for the costs associated with Shen-3 during Q3 2016 complies with its accounting policy and with current GAAP. KPMG noted that the conclusions above

CONFIDENTIAL

ABCD

regarding the initial accounting for the Shen-3 costs are consistent with the conclusions of the third party accounting experts Norton Rose hired as part of their investigation.

However, considering that the SEC was informally asking questions of the Company's partners and of Norton Rose on the Company's and its partners' accounting treatment for Shen 3, and there is inconsistency in the accounting amongst the Shenandoah partners, the engagement team considered what the impact would be *if* one took the view that the Company should have expensed the costs incurred in Q4 2014 related to wells that did not technically find any hydrocarbons. As of December 31, 2014, the total cost capitalized under a similar fact pattern was $65 million, of which $55 million relates to Shen-3 that was incurred in 2014 ($10 million related to Heidelberg. Note that the costs associated with the Tubarao (Mozambique well) are no longer capitalized due to Company's sale of a portion of its Mozambique interest in Q1 2014, which was recorded as cost recovery). For 2014, the Company reported income (loss) before taxes of $54 million. The 2014 income before taxes includes a $4.4 billion loss related to a legal settlement (non-recurring charge). Excluding the legal settlement, the Company would have had income before taxes of $4.4 billion. Expensing $65 million of costs would have a 1.5% and 0.7% impact on income before taxes in 2014 (excluding legal settlement). Given that Anadarko had $41.6 billion and $33.7 billion in net capitalized oil and gas properties for 2014 and 2015, respectively, the amount is also insignificant to Anadarko's consolidated balance sheet. The engagement team also considered the impact of correcting the $65 million in 2016 and concluded it would not be quantitatively material to the financial statements. As of December 31, 2016, the Company reported loss before taxes of 3.8 billion. Expensing the $65 million of costs would represent 1.7% of the reported loss before taxes for the year ended December 31, 2016.

With respect to the $65 million exposure, the engagement team also considered the following qualitative factors:

- It would not mask a change in earning or other trends;
- It would not hide a failure to meet analyst's expectations;
- It would not change a loss into income or vice versa. In 2014, if you included the legal settlement, it changes the income of $54 million to a loss of $9 million. As both amounts are near break-even, the change is not meaningful given the size of the Company and the nature of its operations, and we do not believe this would be considered significant to the users of the financial statements ;
- It would not affect the Company's compliance with regulatory requirements, loan covenants or other contractual requirements;

[filename ]                                                                                      [page \* arabic]

ABCD

- It would not have increased management's compensation.  (Note: management's compensation is based on EBITDAX, in which exploration expense is excluded from.  Thus, no impact on EBITDAX);
- It does not involve concealment of an unlawful transaction.
- Additionally, Anadarko followed its written policy consistently and subsequent to the drilling of Shen-3, Anadarko and its partners continued to appraise Shenandoah by drilling Shen-4 and Shen-5; both wells found hydrocarbons.  The Shen-6 well is currently planned for later in 2016.  Further, the Company appropriately re-assessed Shen-3 and expensed the costs in Q3-2016 when it was determined to have a low probability of any future benefit to the Company.

The engagement team also notes that group materiality was $210 million for both 2014 and 2015. In 2016, group materiality is $170 million.  Based on the qualitative and quantitative factors discussed above, if one were to argue that the $65 million should have been expensed in 2014, it would not be material to the 2014 or 2016 consolidated financial statements.

**Internal Control Considerations**

As previously discussed, Redacted - APC work product
Redacted - APC work product The
Company prepared a memo discussing the impact to the control environment related to the accounting for Shen-3 costs.   As discussed above, the Company determined that the former CAO did not formally communicate her considerations for capitalizing the costs to Property Accounting (i.e. did not communicate to Property Accounting that the primary justification for capitalizing Shen-3 costs was due to the well's potential use as a water injection site).  Redacted - APC work product

# Redacted - APC work product

Redacted - APC work product However, Shen-3 was unique in which hydrocarbons were not found, but the Company capitalized the associated costs due to other reasons.  As discussed above in the accounting analysis, the Company does not have a history of capitalizing costs in which hydrocarbons were not found.  In fact, there are only three instances of

                                                                    KPMG_APC_eA_0009666

ABCD

this occurring in the previous six years, which had a total magnitude of $65 million. The engagement team noted no instances of this fact pattern occurring during 2016 (i.e. all well costs capitalized in 2016 were associated with wells that found hydrocarbons). Based on history, the Company's capitalizing well costs when hydrocarbons are not found occurs once every two to three years. In addition, the Company considered the average cost incurred for a suspended well. Offshore and international suspended wells incur higher costs due to the nature and/or complexity of the wells (i.e. drilling in deepwater Gulf of Mexico or in underdeveloped countries). At December 31, 2015, the Company noted 13 international and offshore projects in suspended wells with a total value of approximately $1billion. At December 31, 2016, KPMG noted there were 11 international and offshore projects in suspended wells with a total value of approximately $961 million. This would result in an average cost per project of approximately $83 million and $87 million at December 31, 2015 and 2016, respectively. A project usually has more than one suspended well. Given the nature and complexity of the Shenandoah project, the Shen-3 well costs (approximately $55 million) is on the high end of suspended well cost for an individual well.

**Redacted - APC work product**

Redacted - APC work product which is consistent with the engagement team's understanding based on current and prior year audits. The engagement team has never seen an individual well costs exceed $100 million and noted they are usually $50 million or less. Based on the foregoing, **Redacted - APC work product**

# Redacted - APC work product

**Redacted - APC work product**

and the engagement team concurs, that the control deficiency does not rise to a level of a significant deficiency or material weakness.

**Forensics Involvement**

The engagement team consulted with Mark White, Managing Director, Forensics, on this matter noting he was satisfied with the scope of the investigation performed by the Company and Norton Rose and the conclusions reached.

**Conclusion**

See conclusions documented at **4.5.5.5.0015**.

**Consultation**

ABCD

The engagement team has discussed the aforementioned sequence of events, the actions taken by the Company and considerations and procedures performed by the engagement team with the following individuals at various times during the course of this matter.

- Hershell Cavin, Partner, DPP

- Melanie Dolan, Partner, DPP

- Laurie Mullen, RPPP

- Bob McLamb, EQCR

- Troy Johnston, Houston BUPPP

- Mark White, Managing Director, Forensics

Each has reviewed this memorandum and is in agreement with the conclusions reached based on the information presented in this memorandum. Rick Breslow of the Office of General Counsel has also been consulted in accordance with the requirements of PPL 05-053.

**See FDC on next page**

[ EMBED Acrobat.Document.11 ]

CONFIDENTIAL

KPMG_APC_eA_0009668

# EXHIBIT B

# 3. Process – Information Reviewed

- Approximately 300,000 documents loaded into electronic review platform.

- **Stage 1**

  - Initial search terms tested across emails from 4 primary custodians

  - Refined search terms applied across emails of 20 custodians.

  - Predictive coding applied to all collected documents.

  - Emails of 3 additional custodians added to predictive coding trains.

  - 23,536 documents reviewed.

- **Stage 2**

  - Initial search terms tested across emails from 4 primary custodians

  - Refined search terms applied across emails of 28 custodians.

  - 14,720 documents reviewed.

11 | *Attorney-Client Communication and Attorney Work Product – Privileged & Confidential*
*PRELIMINARY WORKING DRAFT – FOR DISCUSSION PURPOSES ONLY*


NORTON ROSE FULBRIGHT

APC002805
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL

APC-00002573

# 3. Process – Interviews

- Conducted 55 interviews of 28 current and former (*) employees, including two interviews of

| Senior Executives | Corporate Officers | Exploration Personnel | Development Personnel | Accounting Personnel |
|---|---|---|---|---|
| ▮ | ▮ | ▮ | ▮ (x4) | ▮ |
| ▮ (Exp.) | ▮ (x2) | ▮ | ▮ (x4) | ▮ |
| ▮ (Dev.) | ▮ | ▮ | ▮ | ▮ |
| ▮ (Dev.) | | ▮ (x3) | ▮ (x2) | ▮ |
| ▮ (Exp.) (x2) | | ▮ | ▮ (x2) | |
| | | ▮ (x2) | ▮ | |
| | | ▮ | | |
| | | ▮ | | |

| Other Personnel | | | | |
|---|---|---|---|---|
| ▮ | ▮ | ▮ | ▮ | ▮ |
| ▮ | ▮ | ▮ | ▮ | ▮ |
| ▮ (x3) | ▮ | ▮ | | |

12 | *Attorney-Client Communication and Attorney Work Product – Privileged & Confidential*
*PRELIMINARY WORKING DRAFT – FOR DISCUSSION PURPOSES ONLY*



NORTON ROSE FULBRIGHT

APC002806
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL

APC-00002574

# 5. Exploration and Development Teams Differences in Perspective, Approach & Methodology (Cont'd)

- Interviewees stated the differences between exploration and development groups are common throughout the industry.

- Many interviewees expressed the belief that the differences in perspective, approach, and methodology were "healthy" for APC ( ▮▮▮▮▮▮▮▮ ) and allow APC to make reasoned and balanced investment decisions ▮▮▮▮▮.

23 | *Attorney-Client Communication and Attorney Work Product – Privileged & Confidential*
*PRELIMINARY WORKING DRAFT – FOR DISCUSSION PURPOSES ONLY*



NORTON ROSE FULBRIGHT

APC002817
Confidential Treatment Requested Under FOIA

APC-00002585

# 7. 900+ MMBOE Net Discovered Resources Facts – Basin-Bounding Fault (Cont'd)

- ███ said faulting in Gulf of Mexico typically runs perpendicular to the salt face, not parallel.

- ███ said pressure data from Shen-1 and Shen-3 is similar enough to infer possible connectivity.

- █████ said ███ was "very selective" with pressure data in her analysis.

  - ████████ projected up the aquifer pressures to make the connection a close call but did not project them down from Shen 1 to Shen 3, which would have shown that the connection was not possible.

- ███ acknowledged basin-bounding fault is possible.

*Attorney-Client Communication and Attorney Work Product – Privileged & Confidential*
*PRELIMINARY WORKING DRAFT – FOR DISCUSSION PURPOSES ONLY*



NORTON ROSE FULBRIGHT

APC002835
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL

APC-00002603

# 7. 900+ MMBOE Net Discovered Resources Facts – Basin-Bounding Fault (Cont'd)

- Fault is interpreted where seismic reflectors disappear (███████ ███████).

- Steeply dipping beds like those in Shenandoah basin tend to "crack" at the edges, creating basin-bounding faults ████████.

- Yucatan-1 penetrated a basin-bounding fault with the wellbore, supporting the existence of basin-bounding faults in Shenandoah basin (████████.

- Shen-5 supports the interpretation that Shen-1 is in an isolated compartment.

45 | *Attorney-Client Communication and Attorney Work Product – Privileged & Confidential*
*PRELIMINARY WORKING DRAFT – FOR DISCUSSION PURPOSES ONLY*

NORTON ROSE FULBRIGHT

APC002839
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL

APC-00002607

# 11. Reduced Uncertainty of Resource Range Facts

- Exploration narrowed its estimated resource range following Shen-3.

- When interviewed, ▇▇▇ agreed Shen-3 reduced the uncertainty of the resource range because it provided highest known water.

- Witnesses from Exploration and Development largely agreed with the statement that Shen-3 reduced the uncertainty of the resource range.



NORTON ROSE FULBRIGHT

APC002870
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL

APC-00002638

# 12. "Successful Appraisal" Facts (Cont'd)

- Multiple interviewees from both Exploration and Development stated that Shen-3 provided important information about Shenandoah and agreed that it was a "successful" appraisal well.

    – ▮▮▮▮ noted that a successful appraisal well does not always find oil, since appraisal wells are drilled to gain information.

- These interviewees generally agreed that Shen-3 allowed projection of oil-water contacts, confirmed sand depositional environment, lateral sand continuity, reservoir qualities, and downdip thickening.

- "Stratigraphic test wells are drilled to obtain information. They are not normally intended to be completed for hydrocarbon production and are customarily abandoned after drilling is completed and the information is obtained. Normally, stratigraphic test wells are drilled offshore to determine whether an offshore property contains sufficient reserves to justify the cost of constructing and installing a production platform and to determine where to locate such a platform." ASC 932-360-25-17.

81 | *Attorney-Client Communication and Attorney Work Product – Privileged & Confidential*
*PRELIMINARY WORKING DRAFT – FOR DISCUSSION PURPOSES ONLY*

**NORTON ROSE FULBRIGHT**

APC002875
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL

APC-00002643

# 14. "Within the Range of Expectations"
# Facts

- ▮▮▮▮ explained in his interview "the range of expectation" referred to general statements about the potential for Shenandoah (qualified by statements that more appraisal activity is required), not a specific quantitative resource range.

- APC has not publicly disclosed its internal estimated resource range for Shenandoah.

- No interviewees, including ▮▮▮▮ disputed that Shen-4 ST1 encountered 622 net feet of pay and extended lowest known oil to a lower depth.



NORTON ROSE FULBRIGHT

APC002886
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL
APC-00002654

# 16. ███████████ Emails and Statements

- ███████████, a geophysicist in Development working on Shenandoah, wrote a series of emails over the course of his involvement in the project that expressed disagreements with interpretations of Exploration.

- The emails, which are included in Appendix A, use colorful, forceful, and sarcastic language about the presence of faults on Shenandoah and the size of Exploration's resource assessment.

- ██████ was asked during his interviews about certain of the emails and stated that he is known for writing sarcastic emails.

- ██████ was asked about the public statements that ██████ states are false and misleading; ██████ said that all but one statement were factually accurate and correct.

   - ██████ said that the statement about the Shen-4 sidetrack being all oil was not factually accurate but that the water in the sidetrack could have been easily overlooked and that it may have been too soon after the results of the sidetrack to know that there was water in it.

- The investigative team found that the geology and resource estimates of Exploration had a reasonable basis.

95 | *Attorney-Client Communication and Attorney Work Product – Privileged & Confidential*
*PRELIMINARY WORKING DRAFT – FOR DISCUSSION PURPOSES ONLY*

NORTON ROSE FULBRIGHT

APC002889
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL

APC-00002657

# 17. Alleged "Bullying and Intimidation" Facts – Feb. 2015 ▮▮▮ Presentation (Cont'd)

- Exploration reviewed the presentation before the scheduled workshop, and raised issues with ▮▮▮ dynamic modeling, in particular the artificial engineering barriers.

- Witnesses explained that while Exploration took no issue with the quality of ▮▮▮ work, they were uncomfortable with portraying a model of Shenandoah to the company at large that was not supported by any geological interpretation, because it could be misunderstood (▮▮▮).

---

**From:** ▮▮▮
**Sent:** Wednesday, February 18, 2015 8:25 AM
**To:** ▮▮▮
**Cc:** ▮▮▮
**Subject:** RE: Updated Presentation

Still not sure I would show the highly faulted model (tightly spaced E-W and N-S grid); this seems TOO ARBITRARY as it is not based on any realistic structural model or interpretation.

A highly faulted model might be okay for sensitivity case but it should be based on an actual map interpretation such as our development's team map which showed several faults.

---

Source: APC001223

- Aside from ▮▮▮, witnesses did not believe the cancellation was an attempt to "silence" Development.

104 | *Attorney-Client Communication and Attorney Work Product – Privileged & Confidential*
*PRELIMINARY WORKING DRAFT – FOR DISCUSSION PURPOSES ONLY*

NORTON ROSE FULBRIGHT

APC002898
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL

APC-00002666

# 20. Accounting for Shen-3
# Facts – Q4 2014 Accounting (Cont'd)

- APC's ████, ████████████, indicated Shen-3 was appropriately suspended, as APC "will be assessing the future utility of the wellbore – possible sidetrack, injector, etc."

| To: | Wilson, Gary E. (MRO)[gewilson@marathonoil.com] |
|---|---|
| From: | ████ |
| Sent: | 2015-01-23T11:11:24-06:00 |
| Importance: | Normal |
| Subject: | RE: Status of Shenandoah Appraisal Well - WR 52 #2 |
| Received: | 2015-01-23T11:11:24-06:00 |

Yes, we will be assessing the future utility of the wellbore - possible sidetrack, injector, etc.
I don't believe it would be appropriate to suspend the entire exploratory appraisal program. I think there could be situations where we would expense an unsuccessful well.

Source: APC002099

- In her interview, ████████ indicated Shen-3 may be suspended because it may have future utility as an injector well and because it provided valuable information for the project. She did not believe it mattered whether the probabilistic resource estimate increased or decreased.

- ████████ agreed a well that may be used as an injector well may be suspended, so long as its future utility is subject to ongoing assessment.

121 | *Attorney-Client Communication and Attorney Work Product – Privileged & Confidential*
*PRELIMINARY WORKING DRAFT – FOR DISCUSSION PURPOSES ONLY*

NORTON ROSE FULBRIGHT

APC002915
Confidential Treatment Requested Under FOIA

HIGHLY CONFIDENTIAL

APC-00002683

# EXHIBIT C



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
FORT WORTH REGIONAL OFFICE
BURNETT PLAZA, SUITE 1900
801 CHERRY STREET, UNIT #19
FORT WORTH, TEXAS 76102-6882
PHONE: (817) 978-3821     FAX: (817) 978-2700

IN REPLYING
PLEASE QUOTE
FW-04106

Termination Letter

January 10, 2017

Gerard G. Pecht, Esq.
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, TX 77010

Re:  In the Matter of Anadarko Petroleum Corporation (FW-04106)

Dear Mr. Pecht:

We have concluded the investigation as to Anadarko Petroleum Corporation. Based on the information we have as of this date, we do not intend to recommend an enforcement action by the Commission against Anadarko Petroleum Corporation. We are providing this notice under the guidelines set out in the final paragraph of Securities Act Release No. 5310, which states in part that the notice "must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation."  (The full text of Release No. 5310 can be found at:  http://www.sec.gov/divisions/enforce/wells-release.pdf.)

Sincerely,

David B. Reece
Assistant Regional Director

APC-00771504

# EXHIBIT D

```
 1                   S. BOYLE
 2    number, APC-00771504.  Can you take a
 3    look at this document and let me know
 4    when you're done reading it?
 5         A.    Okay, I've read the letter.
 6         Q.    Okay.  So do you understand
 7    this letter is from the SEC's assistant
 8    regional director to outside counsel
 9    for Anadarko?
10              MS. JENSEN:  Objection,
11         document speaks for itself.
12         Q.    You can answer.
13         A.    I understand that this
14    appears to be a letter from the SEC,
15    from the assistant regional director.
16         Q.    Do you see where it says --
17    I'm sorry, go ahead.
18         A.    It looks like it's addressed
19    to a Gerard Pecht at Norton Rose
20    Fulbright.
21         Q.    Do you see the second
22    sentence of the body of the letter
23    where it says, Based on the information
24    we have as of this date, we do not
25    intend to recommend an enforcement
```

```
 1                    S. BOYLE
 2   action by the commission against
 3   Anadarko Petroleum Corporation?
 4                MS. JENSEN:  Objection,
 5       document speaks for itself.
 6       Q.    You can answer.
 7       A.    The second sentence does read
 8   that.
 9       Q.    Does that change your view as
10   to any of the allegations in Iron
11   Workers' complaint?
12       A.    No.
13       Q.    Why not?
14       A.    The remainder of the letter
15   has a portion that says, Must in no way
16   be construed as indicating that the
17   party has been exonerated, or that no
18   action may ultimately result from the
19   staff's investigation.
20       Q.    Do you understand that
21   Anadarko should have disclosed that
22   letter to investors?
23                MS. JENSEN:  Objection,
24       speculation.
25       A.    I don't know if I can speak
```

# EXHIBIT E

```
1              ALEXANDER YOUNGER - CONFIDENTIAL
2                   THE CONCIERGE:  Are you on
3          Chrome?  Try hitting on the very top
4          left corner there is a back button.
5                   Don't hit that little circle arrow.
6                   MR. SOLOMON:  Okay, got you.
7          Okay, let me just open it, it may take a
8          few seconds more, but I do have it
9          delivered.
10                  Okay.
11         Q      Mr. Younger, do you recognize
12   this document?
13         A      I believe I have seen it
14   previously.
15         Q      And what is it?
16         A      It's a letter from the SEC.
17         Q      Okay, and do you see in the
18   first two sentences of this letter where it
19   says, "We have concluded the investigation as
20   to Anadarko Petroleum Corporation.
21                  "Based on the information we
22   have as of this date, we do not intend to
23   recommend an enforcement action by the
24   commission against Anadarko Petroleum
25   Corporation."
```

```
 1              ALEXANDER YOUNGER - CONFIDENTIAL
 2          A         I see that and then I read on
 3     this states, "Must in no way be construed as
 4     indicating that the party has been exonerated
 5     or that no action will ultimately result from
 6     this investigation."
 7          Q         Do you understand this letter to
 8     be an indication that the SEC has upheld the
 9     whistleblower claims against Anadarko?
10          A         I understand it to reflect that
11     it can't be construed that there is no further
12     action to arise.
13          Q         But you previously said that you
14     understood the Securities and Exchange
15     Commission had upheld claims against Anadarko
16     related to the whistleblower claims, and I am
17     asking where in this letter do you see an
18     indication that the claims have been upheld?
19          A         Well, the phrase upheld is not
20     used in the letter.
21          Q         Okay.
22              MS. BAKER:  All right, I am going
23          to mark another exhibit.
24              I will ask the court reporter to
25          help me out here.  My exhibit numbering
```

EXHIBIT F

| Sign Off History | | |
|---|---|---|
| Status | User | Date |
| Reviewed | Mark Zajac | 7/25/2016 |
| Reviewed | Kaye Rasmusson | 7/22/2016 |
| Reviewed | Bob McLamb | 7/21/2016 |
| Prepared | Suzanne Johnson | 7/21/2016 |

| Additional Documentation Summary | | |
|---|---|---|
| Note Text | Created By | Created On |
| The engagement team had a call with EQCR, DPP, OGC and Laurie Mullen (RPPP) and Forensics on July 21, 2016 to provide an update on the issue. On the call, all parties were in agreement that sufficient procedures had been performed and the Company could file its 10Q in normal course, as long as no new/contradictory information came to light during our next scheduled update call with the lawyers.<br><br>On July 25, 2016, Mark Zajac, Suzanne Johnson and Mark White (KPMG Forensics) had a status update call with the external lawyers performing the investigation to see if any new or contradictory information had been identified since our previous update call.  The external lawyers **Redacted - APC work product** Subsequent to the call, on July 25, 2016, Mark Zajac updated DPP,OGC, RPPP, EQCR via email and there were no objections from the group that the Company could file its 10Q in normal course.<br><br>The engagement team subsequently obtained the FDC (within the 45 day window). FDC is included in memo at Q2.7.1.2.2.10 | Suzanne Johnson | 7/28/2016 |

KPMG_APC_eA_0009543

EXHIBIT G



Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
United States

Tel +1 713 651 5151
Fax +1 713 651 5246
nortonrosefulbright.com

## Memorandum

**Attorney Work Product**
**Attorney-Client Privilege**
**Privileged & Confidential**

| To | File | | |
|---|---|---|---|
| **From** | Lana Rowenko | **Date** | September 7, 2016 |
| **Direct line** | +1 713 651 3651 | | |
| **Email** | lana.rowenko@nortonrosefulbright.com | | |
| **Re** | Anadarko Audit Committee Investigation: Call with KPMG, Sep. 7, 2016 | | |

On September 7, 2016, Gerry Pecht, Shauna Johnson Clark, and Peggy Heeg had a call with Mark Zajac and Suzanna Johnson of KPMG, independent auditors for Anadarko.



Gerry explained that this accounting issue came up after he received a call from COP's outside counsel regarding a voluntary request for documents from the SEC. The Company has drafted and circulated a waiver letter to the partners for production of documents. COP indicated they would sign it, Cobalt has signed, and they are still waiting for Marathon and Venari. Gerry indicated to the SEC that NRF would produce documents once the waiver is obtained, and the SEC expressed no concern with this process.

Mark asked about a timeline, and Gerry indicated it was contingent on:

In response to whether NRF is hiring an outside expert and who that expert would be, Gerry indicated

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

27522043.1

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

CONFIDENTIAL

Attorney Work Product
Attorney-Client Privilege
Privileged & Confidential
File
September 7, 2016
Page 2



Suzanne requested that NRF reach out once there is more information to update on, but either way an update would be needed in October (in ~6-7 weeks) before the next 10-Q.

27522043.1

EXHIBIT H



Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
United States

Tel +1 713 651 5112
Fax +1 713 651 5246
nortonrosefulbright.com

**Memorandum**

---

**PRIVILEGED & CONFIDENTIAL**

| **To** | File | | |
|---|---|---|---|
| **From** | Jesika Silva Blanco | **Date** | June 24, 2016 |
| **Matter** | Anadarko Audit Committee Review of Frye Allegations | | |
| **Re** | Summary of Conference Call with Anadarko's Outside Auditors KPMG (June 24, 2016) | | |

Shauna Clark and Peggy Heeg participated on a conference call at 2 p.m. Central Time on June 24, 2016 with Anadarko's outside auditor, KPMG. Present on the call from KPMG were Mark Zajac and Suzanne Johnson. Eric Mullins, Chairperson of Anadarko's Audit Committee, also participated in the call. The following is a summary of what was discussed on the call, but is not a verbatim transcript of the call.

**Status Update**

The last conference call with KPMG was on June 1, 2016. Ms. Heeg began by providing a summary of the events that have transpired thus far. Anadarko received a letter from Ms. Lea Frye on April 20, 2016. On May 3, 2016, NRF contacted the SEC to inform them that the firm had been hired by the Audit Committee to conduct an investigation; NRF followed up with the SEC on May 4, 2016. On May 19, 2016, Ms. Frye sent a resignation letter to Anadarko.

NRF counsel spent various weeks conferring with Ms. Frye's attorney about scheduling an interview of Ms. Frye. Ms. Frye was interviewed on June 2, 2016 ███████████████ ████████████ ██████████████████████████████████████████████████ Ms. Clark had a follow up interview with Ms. Frye on June 6, 2016 ███████████████████

██████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████

NRF began this investigation by conducting a few initial interviews to gather background information. Since the last conference call, NRF counsel has interviewed 19 employees. ████
████████████████████████████ Two additional interviews were conducted today (June 24, 2016) and 4 interviews were conducted yesterday (June 23, 2016). ████████████████████

---

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

27338487.1

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

CONFIDENTIAL

June 24, 2016
Page 2

██████████████████████████████████

In addition, two former employees still need to be interviewed.

**Frye—Technical Interview**

Ms. Heeg provided a summary of Ms. Frye's first interview on the technical issues. During the interview, ████ Ms. Frye's complaints included (1) her belief that the Shenandoah numbers were inflated and overstated; (2) a reference to a 2014 Investor Conference Presentation claiming there were 900+ net mmboe resources that she said Anadarko failed to update as more information was gathered; and (3) her disagreement with a statement made by Anadarko about a 2-4 billion dollar net opportunity.

27338487.1

June 24, 2016
Page 3



**Frye—Employment Issues**

Ms. Clark provided an update on the employment issues. Ms. Frye alleges that Anadarko allowed bullying and harassing that prevented/chilled employees from complaining about false and misleading statements. In her letter, Ms. Frye only mentions the February 2014 meeting.



**Next Steps**

Ms. Heeg explained that meetings are scheduled with Anadarko's executives in July. There are also two additional former employees that need to be interviewed, but their interviews are not scheduled yet. ████████████████████████████████████████████████

████████████████████████ Ms. Johnson said that KPMG would like another call after the July 25th interview to update them on the interviews with the Executives. Ms. Johnson said the company will be filing sometime in that week, so a conference call as soon as possible after July 25th would be ideal. Ms. Heeg said she would follow up about the next call.

27338487.1

CONFIDENTIAL

# EXHIBIT I

| PL NO.[1] | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | | | Anadarko | Jennifer Roberts | Property Accounting Files | | 10/24/2016 0:00 | Q3 2016 – Shenandoah-3 Dry Hole Analysis | Work Product | Hard copy of draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 3 | | | Anadarko | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/1/2016 0:00 | Q3 2016 – Shenandoah-3 Suspended Well Accounting Analysis | Work Product | Hard copy of draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 4 | | | Anadarko | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 0:00 | Q3 2016 – Shenandoah-3 Suspended Well Accounting Analysis | Work Product | Hard copy of draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

1. "PL NO." means Defendants' privilege log entry number.

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 191 | | | Fasnacht, Tim | Mike Young, Esq.* [Michael.Young@anadarko.com] | Fasnacht, Tim [Tim.Fasnacht@anadarko.com] | | 6/15/2016 13:37 | RE: Confidential Discussion | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 192 | | | Chandler, Paul | Mike Young, Esq.* [Michael.Young@anadarko.com] | Chandler, Paul [Paul.Chandler@anadarko.com] | | 6/15/2016 14:03 | Confidential Discussion | Attorney-Client Privilege; Work Product | Calendar invite requesting information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 193 | | | Oudin, Chip | Mike Young, Esq.* [Michael.Young@anadarko.com] | Oudin, Chip [Chip.Oudin@anadarko.com] | | 6/15/2016 20:54 | RE: Confidential Discussion | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 194 | | | Bergstresser, Tom | Mike Young, Esq.* [/O=APC/OU=DOMESTIC/CN=RECIPIENTS/CN=LOL615] | Mike Young, Esq.* [Michael.Young@anadarko.com];Bergstresser, Tom [Tom.Bergstresser@anadarko.com] | | 6/17/2016 19:13 | Confidential Discussion | Attorney-Client Privilege; Work Product | Calendar invite requesting information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 198 | | | McGrievy, Pat | Jennifer Edwards, Esq.* [Jen.Edwards @anadarko.com] | McGrievy, Pat [Pat.McGriev y@anadarko. com] | | 7/15/2016 17:30 | Shenandoah matter | Attorney-Client Privilege; Work Product | Email and attachment requesting information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 203 | | | Camden, Chris | Camden, Chris [/O=APC/OU =INTEGRATI ON/CN=RECI PIENTS/CN=Y CXC8] | Mark Oakes, Esq.* [mark.oakes @nortonrose fulbright.co m] | Shelby Fawver^ [Shelby. Fawver @anada rko.com ]; Jennifer Edward s, Esq.* [Jen.Ed wards@ anadark o.com] | 7/26/2016 21:19 | RE: Contact Info | Attorney-Client Privilege; Work Product | Email chain and attachments providing information for the purpose of obtaining legal advice regarding Frye investigation. |
| 210 | | | Champion, Chris | Champion, Chris [Chris.Cham pion@anada rko.com] | Jennifer Edwards, Esq.* [Jen.Edwards @anadarko.c om] | | 9/3/2016 3:50 | Fwd: Privileged and Confidential | Attorney-Client Privilege; Work Product | Email chain and attachments providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 212 | | | Burton, Forest | Mike Young, Esq.* [/O=APC/OU =DOMESTIC/ CN=RECIPIEN TS/CN=LOL6 15] | Mike Young, Esq.* [Michael.You ng@anadark o.com];Burto n, Forrest [Forrest.Burt on@anadark o.com] | | 9/12/2016 15:31 | Confidential Discussion | Attorney-Client Privilege; Work Product | Calendar invite requesting information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 215 | | | Green, Catherine | Green, Catherine [/O=APC/OU =DOMESTIC/ CN=RECIPIEN TS/CN=AQD4 36] | Mike Young, Esq.* [Michael.You ng@anadark o.com] | | 9/19/2016 21:45 | Requested follow up items - privileged and confidential | Attorney-Client Privilege; Work Product | Email and attachments providing information for the purpose of obtaining legal advice regarding Frye investigation. |
| 216 | | | Green, Catherine | Mike Young, Esq.* [Michael.You ng@anadark o.com] | Green, Catherine [Catherine.G reen@anada rko.com] | | 9/20/2016 1:09 | RE: Requested follow up items - privileged and confidential | Attorney-Client Privilege; Work Product | Email chain providing information for the purpose of obtaining legal advice and providing legal advice regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 219 | | | Champion, Chris | Champion, Chris [/O=APC/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CHAMPION, CHRIS (NMS730)167] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | | 9/28/2016 20:51 | FW: Control environment support YE 2014 | Attorney-Client Privilege; Work Product | Email chain and attachments providing information for the purpose of obtaining legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 220 | | | Steinberger-Glaser, Anita | Mike Young, Esq.* [/O=APC/OU=DOMESTIC/CN=RECIPIENTS/CN=LOL615] | Mike Young, Esq.* [Michael.Young@anadarko.com];Steinberger-Glaser, Anita [Anita.Steinberger-Glaser@anadarko.com] | | 10/3/2016 16:54 | Confidential Discussion | Attorney-Client Privilege; Work Product | Calendar invite requesting information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 223 | | | Champion, Chris | Champion, Chris [/O=APC/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CHAMPION, CHRIS (NMS730)167] | Amanda McMillian, Esq.* [Amanda.McMillian@anadarko.com] | | 10/5/2016 16:15 | FW: Control environment support YE 2014 | Attorney-Client Privilege; Work Product | Email chain and attachments providing information for the purpose of obtaining legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 224 | | | Champion, Chris | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Champion, Chris [Chris.Champion@anadarko.com] | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | 10/5/2016 20:46 | Shen | Attorney-Client Privilege; Work Product | Email chain and attachments providing legal advice (Lana Rowenko, Esq.*, Norton Rose Fulbright*) regarding Frye investigation. |
| 225 | | | Champion, Chris | Champion, Chris [Chris.Champion@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | 10/6/2016 2:59 | Re: Shen | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Lana Rowenko, Esq.*, Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 226 | | | Green, Catherine | Green, Catherine [/O=APC/OU=DOMESTIC/CN=RECIPIENTS/CN=AQD436] | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | 10/6/2016 18:50 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain and attachments requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 227 | | | Green, Catherine | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Green, Catherine [Catherine.Green@anadarko.com] | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | 10/6/2016 19:22 | Re: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain and attachments requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 228 | | | Green, Catherine | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | Green, Catherine [Catherine.Green@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | 10/6/2016 19:42 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 229 | | | Green, Catherine | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | Green, Catherine [Catherine.Green@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | 10/7/2016 23:38 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain and attachment requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 230 | | | Green, Catherine | Green, Catherine [/O=APC/OU=DOMESTIC/CN=RECIPIENTS/CN=AQD436] | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | 10/10/2016 12:59 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain and attachments requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 231 | | | Green, Catherine | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | Green, Catherine [Catherine.Green@anadarko.com] | | 10/12/2016 20:43 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain and attachment requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 232 | | | Green, Catherine | Green, Catherine [/O=APC/OU=DOMESTIC/CN=RECIPIENTS/CN=AQD436] | Shelby Fawver, Esq.* [Shelby.Fawver@anadarko.com] | | 10/12/2016 21:08 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain and attachment requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 233 | | | Green, Catherine | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | Green, Catherine [Catherine.Green@anadarko.com] | | 10/12/2016 21:37 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 234 | | | Champion, Chris | Champion, Chris [Chris.Champion@anadarko.com] | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | 10/12/2016 21:51 | Re: Shen | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Lana Rowenko, Esq.*, Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 235 | | | Green, Catherine | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | Green, Catherine [Catherine.Green@anadarko.com] | | 10/13/2016 15:42 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain and attachment requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 236 | | | Green, Catherine | Green, Catherine [/O=APC/OU=DOMESTIC/CN=RECIPIENTS/CN=AQD436] | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | | 10/13/2016 18:09 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 237 | | | Green, Catherine | Shelby Fawver^ [Shelby.Fawver@anadarko.com] | Green, Catherine [Catherine.Green@anadarko.com] | | 10/13/2016 19:08 | RE: Shen - Confidential | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 238 | | | Green, Catherine; Roberts, Jennifer | Jennifer Edwards, Esq.* [Jen.Edwards @anadarko.com] | Green, Catherine [Catherine.Green@anadarko.com], Williams, Louis [Louis.Williams@anadarko.com], Roberts, Jennifer [Jennifer.Roberts@anadarko.com | | 10/18/2016 14:31 | Memos requested by Counsel | Attorney-Client Privilege; Work Product | Email requesting information for the purpose of providing legal advice (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 239 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/25/2016 14:37 | Suspended Well Control Memo.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 240 | APC-00716654 | APC-00716654 | Champion, Chris | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/24/2016 13:47 | DH Analysis DRAFT 102416.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 241 | APC-00716706 | APC-00716706 | Champion, Chris | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/27/2016 19:45 | DH Analysis DRAFT 102416.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 242 | | | PropAcctg | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/27/2016 14:53 | DH Analysis DRAFT 102416.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 243 | APC-00716807 | APC-00716807 | Green, Catherine | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/25/2016 14:37 | Suspended Well Control Memo.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 244 | APC-00716809 | APC-00716809 | Green, Catherine | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/25/2016 14:37 | Suspended Well Control Memo.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 245 | APC-00716811 | APC-00716811 | Green, Catherine | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/27/2016 19:45 | DH Analysis DRAFT 102416.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 246 | | | Champion, Chris | Green, Catherine [Catherine.Green@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com];Champion, Chris [Chris.Champion@anadarko.com] | | 10/30/2016 20:25 | Privileged/prepared at the request of counsel - suspended well control memo | Attorney-Client Privilege; Work Product | Email and attachment providing information for the purpose of obtaining legal advice and requesting legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 249 | APC-00716816 | APC-00716816 | Champion, Chris | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/27/2016 14:53 | DH Analysis DRAFT 102416.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 250 | | | Champion, Chris | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Champion, Chris [Chris.Champion@anadarko.com];Green, Catherine [Catherine.Green@anadarko.com] | | 10/31/2016 2:10 | PRIVILEGED & CONFIDENTIAL | Attorney-Client Privilege; Work Product | Email and attachment providing information for the purpose of obtaining legal advice and providing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 251 | | | Champion, Chris | Champion, Chris [/O=APC/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CHAMPION, CHRIS (NMS730)167] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com]; Amanda McMillian, Esq.* [Amanda.McMillian@anadarko.com];Louis Williams (Louis.Williams@anadarko.com) [Louis.Williams@anadarko.com] | | 10/31/2016 2:50 | PRIVILEGED & CONFIDENTIAL | Attorney-Client Privilege; Work Product | Email and attachment providing information for the purpose of obtaining legal advice and requesting legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 252 | | | PropAcctg | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 12:56 | DH Analysis DRAFT 102416 (2).docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 253 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 13:07 | Suspended Well Control Memo DRAFT 10-30-16.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 254 | APC-00717083 | APC-00717083 | Champion, Chris; Roberts, Jennifer | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 12:56 | DH Analysis DRAFT 102416 (2).docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 255 | | | Champion, Chris | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Champion, Chris [Chris.Champion@anadarko.com] | | 10/31/2016 13:46 | FW: Privileged & Confidential - Exploratory Wells | Attorney-Client Privilege; Work Product | Email chain and attachment providing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 256 | | | Champion, Chris | Champion, Chris [/O=APC/OU =EXCHANGE ADMINISTRA TIVE GROUP (FYDIBOHF23 SPDLT)/CN=R ECIPIENTS/C N=CHAMPIO N, CHRIS (NMS730)16 7] | Roberts, Jennifer [Jennifer.Rob erts@anadar ko.com];Loui s Williams (Louis.Willia ms@anadark o.com) [Louis.Willia ms@anadark o.com] | Jennifer Edward s, Esq.* [Jen.Ed wards@ anadark o.com] | 10/31/2016 13:53 | Privileged & Confidential - Exploratory Wells | Attorney-Client Privilege; Work Product | Email and attachment providing information for the purpose of obtaining legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 257 | APC-00717096 | APC-00717096 | Roberts, Jennifer | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 12:56 | DH Analysis DRAFT 102416 (2) (2).docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 258 | | | Champion, Chris; Roberts, Jennifer | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Roberts, Jennifer [Jennifer.Roberts@anadarko.com];Williams, Louis [Louis.Williams@anadarko.com];Champion, Chris [Chris.Champion@anadarko.com] | | 10/31/2016 15:17 | SHEN-Accounting Memo-PRIVILEGED | Attorney-Client Privilege; Work Product | Email and attachments requesting information for the purpose of obtaining legal advice and providing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 259 | | | Champion, Chris | Champion, Chris [Chris.Champion@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Roberts, Jennifer [Jennifer.Roberts@anadarko.com];Williams, Louis [Louis.Williams@anadarko.com] | 10/31/2016 15:26 | Re: SHEN-Accounting Memo-PRIVILEGED | Attorney-Client Privilege; Work Product | Email chain providing legal advice and reflecting the provision of legal advice (Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 260 | APC-00717143 | APC-00717143 | Champion, Chris | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 16:47 | DH Analysis DRAFT 102416 (2) (2).docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 261 | APC-00717145 | APC-00717145 | Champion, Chris | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 16:47 | DH Analysis DRAFT 102416 (2) (2) (2).docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 262 | | | Champion, Chris | Green, Catherine [Catherine.Green@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Champion, Chris [Chris.Champion@anadarko.com] | 10/31/2016 16:58 | RE: PRIVILEGED & CONFIDENTIAL | Attorney-Client Privilege; Work Product | Email chain and attachment providing information for the purpose of obtaining legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 263 | | | PropAcctg | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 17:23 | DH Analysis DRAFT 103116 3Q.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 264 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 18:36 | Suspended Well Control Memo DRAFT 10-31-16.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 267 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 21:35 | DH Analysis DRAFT 103116.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 269 | | | Champion, Chris | Jennifer Edwards, Esq.* [Jen.Edwards @anadarko.com] | Champion, Chris [Chris.Champion@anadarko.com] | | 11/1/2016 16:48 | FW: Presentation | Attorney-Client Privilege; Work Product | Email chain and attachment providing legal advice (Lana Rowenko, Esq.*, Norton Rose Fulbright*) regarding Frye investigation. |
| 270 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/1/2016 16:52 | CG comments Shen 3 accounting memo.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 271 | | | Champion, Chris | Champion, Chris [/O=APC/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CHAMPION, CHRIS (NMS730)167] | Catherine Green (Catherine.Green@anadarko.com) [Catherine.Green@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | 11/1/2016 18:42 | SHEN-Accounting Memo-PRIVILEGED | Attorney-Client Privilege; Work Product | Email and attachment providing information for the purpose of obtaining legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 272 | APC-00717384 | APC-00717384 | Green, Catherine | Jennifer Roberts | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 10/31/2016 16:47 | DH Analysis DRAFT 102416 (2) (2) (2) (2).docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 273 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/1/2016 22:38 | DH Analysis DRAFT 11-1-16.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 274 | | | Champion, Chris | Green, Catherine [Catherine.Green@anadarko.com] | Champion, Chris [Chris.Champion@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | 11/1/2016 22:39 | RE: SHEN-Accounting Memo-PRIVILEGED | Attorney-Client Privilege; Work Product | Email chain and attachment providing information for the purpose of obtaining legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 275 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/1/2016 22:52 | Suspended Well Control Memo DRAFT 11-1-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 276 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/1/2016 22:57 | Suspended Well Control Memo DRAFT 11-1-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 277 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/1/2016 22:59 | DH Analysis DRAFT 11-1-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 278 | | | Champion, Chris | Green, Catherine [Catherine.Green@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Champion, Chris [Chris.Champion@anadarko.com] | 11/1/2016 23:03 | SHEN - internal control memo - PRIVILEGED | Attorney-Client Privilege; Work Product | Email and attachment providing information for the purpose of obtaining legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 279 | APC-00717479 | APC-00717479 | Champion, Chris | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/1/2016 22:59 | DH Analysis DRAFT 11-1-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 280 | APC-00717480 | APC-00717480 | Champion, Chris | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/1/2016 22:57 | Suspended Well Control Memo DRAFT 11-1-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 282 | | | PropAcctg | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/1/2016 12:33 | DH Analysis DRAFT 11-1-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 284 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 13:37 | Suspended Well Control Memo DRAFT 11-2-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 285 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 13:39 | Suspended Well Control Memo DRAFT 11-2-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 286 | APC-00717645 | APC-00717645 | Champion, Chris | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 13:39 | DH Analysis DRAFT 11-2-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 287 | APC-00717646 | APC-00717646 | Champion, Chris | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 13:39 | Suspended Well Control Memo DRAFT 11-2-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 288 | | | Champion, Chris | Green, Catherine [Catherine.Green@anadarko.com] | Champion, Chris [Chris.Champion@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | 11/3/2016 14:39 | RE: SHEN - Internal Controls and Accounting Memo - PRIVILEGED | Attorney-Client Privilege; Work Product | Email chain and attachment requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 289 | APC-00717648 | APC-00717648 | Champion, Chris | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 15:13 | DH Analysis DRAFT 11-2-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 290 | APC-00717649 | APC-00717649 | Champion, Chris | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 13:39 | Suspended Well Control Memo DRAFT 11-2-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 291 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 15:23 | DH Analysis DRAFT 11-2-16.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 292 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 15:23 | DH Analysis DRAFT 11-2-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 293 | APC-00717651 | APC-00717651 | Green, Catherine | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 15:23 | DH Analysis DRAFT 11-2-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 294 | APC-00717652 | APC-00717652 | Green, Catherine | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/3/2016 13:39 | Suspended Well Control Memo DRAFT 11-2-16 clean.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 295 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/8/2016 14:02 | Suspended Well Control Memo DRAFT 11-8-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 297 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/9/2016 21:56 | DH Analysis DRAFT 11-8-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 298 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/9/2016 23:20 | DH Analysis DRAFT 11-9-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 299 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 16:01 | DH Analysis DRAFT 11-10-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 300 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 16:03 | Suspended Well Control Memo DRAFT 11-9-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 301 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 16:06 | Suspended Well Control Memo DRAFT 11-10-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 302 | APC-00718114 | APC-00718114 | Champion, Chris | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 16:01 | DH Analysis DRAFT 11-10-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 303 | APC-00718115 | APC-00718115 | Champion, Chris | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 16:06 | Suspended Well Control Memo DRAFT 11-10-16 marked.docx | Work Product | Draft memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 304 | | | Champion, Chris | Champion, Chris [Chris.Champion@anadarko.com] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | | 11/10/2016 21:56 | Fwd: Shen - Accounting and Controls memo - PRIVILEGED | Attorney-Client Privilege; Work Product | Email chain and attachments providing information for the purpose of obtaining legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 305 | APC-00718135 | APC-00718135 | Champion, Chris | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 0:00 | DH Analysis 11-10-16.docx | Work Product | Memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 306 | APC-00718136 | APC-00718136 | Champion, Chris | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 0:00 | Suspended Well Control Memo 11-10-16.docx | Work Product | Memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 307 | APC-00718236 | APC-00718236 | Champion, Chris | Amanda McMillian, Esq.* [/O=APC/OU=DOMESTIC/CN=RECIPIENTS/CN=AMCMILLI] | Peggy Heeg, Esq.* (peggy.heeg@nortonrosefulbright.com)[peggy.heeg@nortonrosefulbright.com]; Pecht, Gerard, Esq.* [gerard.pecht@nortonrosefulbright.com]; Rowenko, Lana, Esq.* [lana.rowenko@nortonrosefulbright.com] | Champion, Chris[Chris.Champion@anadarko.com]; Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | 11/14/2016 22:26 | Shen Accounting Memos | Attorney-Client Privilege; Work Product | Email and attachments providing information for the purpose of obtaining legal advice and requesting legal advice and prepared at the request of counsel regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 308 | APC-00718269 | APC-00718269 | Green, Catherine | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 0:00 | Suspended Well Control Memo (Final).docx | Work Product | Memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 309 | APC-00718270 | APC-00718270 | Green, Catherine | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 0:00 | DH Analysis (Final).docx | Work Product | Memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 310 | | | Green, Catherine; Roberts, Jennifer | Property Accounting | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 0:00 | DH Analysis (Final).docx | Work Product | Memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |
| 311 | | | Green, Catherine; Roberts, Jennifer | Internal Controls | Chris Champion; Louis Williams; Jennifer Edwards, Esq.*; Amanda McMillian, Esq.*; KPMG | | 11/10/2016 0:00 | Suspended Well Control Memo (Final).docx | Work Product | Memorandum containing legal advice and prepared at the request of counsel (Norton Rose Fulbright*) regarding suspended well accounting and controls and in furtherance of Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 327 | | | Camden, Chris | Camden, Chris [/O=APC/OU=INTEGRATION/CN=RECIPIENTS/CN=YCXC8] | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | | 12/20/2016 21:43 | RE: Two follow-up questions from Norton Rose Fulbright | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |
| 328 | | | Camden, Chris | Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com] | Camden, Chris [Chris.Camden@anadarko.com] | | 1/2/2017 20:40 | RE: Two follow-up questions from Norton Rose Fulbright | Attorney-Client Privilege; Work Product | Email chain requesting information for the purpose of obtaining legal advice and providing information for the purpose of obtaining legal advice (Norton Rose Fulbright*) regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 329 | | | Camden, Chris | Lana Rowenko, Esq.* [lana.rowenko@nortonrosefulbright.com] | Camden, Chris [Chris.Camden@anadarko.com] | Gerard Pecht, Esq.* [gerard.pecht@nortonrosefulbright.com]; Peggy A. Heeg, Esq.* [peggy.heeg@nortonrosefulbright.com] | 1/17/2017 20:11 | Anadarko - Confidential | Attorney-Client Privilege; Work Product | Email and attachment providing legal advice and reflecting the provision of legal advice regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 330 | | | Camden, Chris | Lana Rowenko, Esq.* [lana.rowenko@nortonrosefulbright.com] | Camden, Chris [Chris.Camden@anadarko.com] | Gerard Pecht, Esq.* [gerard.pecht@nortonrosefulbright.com]; Peggy A. Heeg, Esq.* [peggy.heeg@nortonrosefulbright.com] | 1/18/2017 0:52 | RE: Anadarko - Confidential | Attorney-Client Privilege; Work Product | Email chain and attachments providing legal advice and reflecting the provision of legal advice regarding Frye investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 331 | | | Champion, Chris | Amanda McMillian, Esq.* [Amanda.McMillian@anadarko.com] | Walker, Al [Al.Walker@anadarko.com];Gwin, Robert [Robert.Gwin@anadarko.com]; Bobby Reeves, Esq.* [Bobby.Reeves@anadarko.com] | Champion, Chris [Chris.Champion@anadarko.com]; Jennifer Edwards, Esq.* [Jen.Edwards@anadarko.com]; Mike Young, Esq.* [Michael.Young@anadarko.com] | 1/19/2017 18:37 | FW: Anadarko - 2017.01.10 Letter David B. Reece (SEC) Re Enforcement Action | Attorney-Client Privilege; Work Product | Email and attachments providing legal advice and reflecting the provision of legal advice (Gerard Pecht, Esq.*, Norton Rose Fulbright*) regarding Frye investigation. |
| 567 | | | Norton Rose Fulbright | | | | 05/31/2016 18:40 CDT | KPMG Call - 5/31/16 | Work Product | Outline prepared in anticipation of litigation by NRF attorney (Peggy Heeg, Esq*) regarding call with KPMG. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 569 | | | Norton Rose Fulbright | | | | 06/01/2016 11:27 CDT | Memo to File - Minutes of Anadarko Audit Committee Call - May 6, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 570 | Non-Party_NRF_00000830 | Non-Party_NRF_00000831 | Norton Rose Fulbright | | | | 06/01/2016 11:39 CDT | Summary of Conference Call with Anadarko's Outside Auditors KPMG - 5/7/16 | Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq*) in anticipation of litigation regarding call with KPMG. |
| 574 | Non-Party_NRF_00000832 | Non-Party_NRF_00000833 | Norton Rose Fulbright | | | | 06/02/2016 16:24 CDT | Summary of Conference Call with Anadarkor's Outside Auditors KPMG - 6/1/16 | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Peggy Heeg, Esq*) regarding call with KPMG. |
| 578 | | | Norton Rose Fulbright | | | | 06/03/2016 12:44 CDT | 2016.06.03 Champion Call Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 591 | | | Norton Rose Fulbright | | | | 06/09/2016 15:00 CDT | Anadarko - 2016.06.02 Frye Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 592 | | | Norton Rose Fulbright | | | | 06/09/2016 15:27 CDT | AC Minutes Special Meeting - May 12 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 593 | | | Norton Rose Fulbright | | | | 06/09/2016 15:38 CDT | AC Minutes Special Meeting - May 19 2016 | Attorney-Client; Work Product | Memorandum prepared at the direction of NRF attorneys (Madeline Braziel^) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 596 | | | Norton Rose Fulbright | | | | 06/10/2016 11:11 CDT | AC Minutes Special Meeting - June 2 2016 (2) | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 597 | | | Norton Rose Fulbright | | | | 06/10/2016 11:12 CDT | AC Minutes of Special Meeting - May 6, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 598 | | | Norton Rose Fulbright | | | | 06/10/2016 11:15 CDT | AC Minutes Special Meeting - May 26 2016 (2) | Attorney-Client; Work Product | Memorandum prepared at the direction of NRF attorneys (Madeline Braziel^) in anticipation of litigation regarding Anadarko Audit Committee meeting. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 600 | | | Norton Rose Fulbright | | | | 06/10/2016 15:58 CDT | AC Minutes Special Meeting - June 9 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 606 | | | Norton Rose Fulbright | | | | 06/13/2016 17:04 CDT | 2016.06.13 Shotts Interview Memo [DRAFT] | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 609 | | | Norton Rose Fulbright | | | | 06/14/2016 10:43 CDT | AC Minutes of Special Meeting - June 6, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 615 | | | Norton Rose Fulbright | | | | 06/15/2016 10:38 CDT | 2016.05.11 Camden Interview Memo [DRAFT] | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 621 | | | Norton Rose Fulbright | | | | 06/18/2016 09:05 CDT | Anadarko MORRIS Confidential WP Interview Notes_1.DOCX | Work Product | Memorandum prepared by NRF attorney (Kayla Kirk, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 623 | | | Norton Rose Fulbright | | | | 06/18/2016 15:21 CDT | 2016.05.11 McGrievy Interview Memo [DRAFT] | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 626 | | | Norton Rose Fulbright | | | | 06/19/2016 13:56 CDT | Anadarko - 2016.05.11 McGrievy Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 632 | | | Norton Rose Fulbright | | | | 06/21/2016 14:57 CDT | 2016.06.06 Frye Interview Memo | Work Product | Memorandum prepared by NRF attorney (Jesika Blanco, Esq.*) in anticipation of litigation regarding witness interview. |
| 634 | | | Norton Rose Fulbright | | | | 06/21/2016 17:55 CDT | Anadarko - Ryan Morgan Call Memo (6-21-16) | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 635 | | | Norton Rose Fulbright | | | | 06/21/2016 18:36 CDT | Anadarko Williams Interview Memo | Work Product | Memorandum prepared by NRF attorney (Adrian Leal, Esq.*) in anticipation of litigation regarding witness interview. |
| 636 | | | Norton Rose Fulbright | | | | 06/22/2016 08:33 CDT | Anadarko MORRIS Confidential WP Interview Notes_2.DOCX | Work Product | Memorandum prepared by NRF attorney (Kayla Kirk, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 641 | | | Norton Rose Fulbright | | | | 06/22/2016 22:41 CDT | Anadarko - 2016.06.13 Mitchell Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 643 | | | Norton Rose Fulbright | | | | 06/23/2016 12:44 CDT | Anadarko - 2016.05.11 Camden Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 644 | Non-Party_NRF_000008 34 | Non-Party_NRF_000008 35 | Norton Rose Fulbright | | | | 06/24/2016 11:07 CDT | Summary of KPMG Conference Call - June 24, 2016 | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Peggy Heeg, Esq*) regarding call with KPMG. |
| 645 | | | Norton Rose Fulbright | | | | 06/24/2016 15:43 CDT | 2016.06.16 Camden Interview Memo [DRAFT] | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 646 | | | Norton Rose Fulbright | | | | 06/24/2016 15:43 CDT | Strickling Interview Memo DRAFT | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 647 | | | Norton Rose Fulbright | | | | 06/24/2016 15:44 CDT | 2016.06.22 Blakeley Interview Memo [DRAFT] | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 648 | | | Norton Rose Fulbright | | | | 06/24/2016 15:44 CDT | 2016.06.23 Bergstresser Interview Memo [DRAFT] | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 649 | | | Norton Rose Fulbright | | | | 06/24/2016 15:44 CDT | 2016.06.23 Pande Interview Memo [DRAFT] | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 650 | | | Norton Rose Fulbright | | | | 06/24/2016 15:45 CDT | 2016.06.24 Fasnacht Interview Memo [DRAFT] | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 652 | | | Norton Rose Fulbright | | | | 06/24/2016 17:06 CDT | Anadarko - 2016.06.24 Fasnacht Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 653 | Non-Party_NRF_00000836 | Non-Party_NRF_00000838 | Norton Rose Fulbright | | | | 06/24/2016 20:19 CDT | KPMG Conference Call- June 24, 2016 Summary | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Jesika Blanco, Esq*) regarding call with KPMG. |
| 654 | | | Norton Rose Fulbright | | | | 06/24/2016 20:25 CDT | 2016.06.15 O'Brien Interview Memo | Work Product | Memorandum prepared by NRF attorney (Jesika Blanco, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 655 | | | Norton Rose Fulbright | | | | 06/24/2016 21:58 CDT | 2016.06.21 Prosser Interview Memo | Work Product | Memorandum prepared by NRF attorney (Jesika Blanco, Esq.*) in anticipation of litigation regarding witness interview. |
| 659 | | | Norton Rose Fulbright | | | | 06/27/2016 16:58 CDT | Anadarko - 2016.06.13 Shotts Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 660 | | | Norton Rose Fulbright | | | | 06/27/2016 16:59 CDT | Anadarko - 2016.06.23 Pande Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 662 | | | Norton Rose Fulbright | | | | 06/29/2016 17:16 CDT | Anadarko - 2016.06.23 Bergstresser Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 663 | | | Norton Rose Fulbright | | | | 06/30/2016 09:59 CDT | AC Special Meeting Minutes - June 30, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 664 | | | Norton Rose Fulbright | | | | 06/30/2016 10:11 CDT | AC Special Meeting Minutes - June 16, 2016 | Attorney-Client; Work Product | Memorandum prepared at the direction of NRF attorneys (Madeline Braziel^) in anticipation of litigation regarding Anadarko Audit Committee meeting. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 670 | | | Norton Rose Fulbright | | | | 07/05/2016 14:11 CDT | Anadarko MCGRIEVY Confidential WP Interview Notes.DOCX | Work Product | Memorandum prepared by NRF attorney (Jesika Blanco, Esq.*) in anticipation of litigation regarding witness interview. |
| 673 | | | Norton Rose Fulbright | | | | 07/06/2016 12:03 CDT | 2016.06.22 Blakeley Interview Memo [DRAFT] | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 677 | | | Norton Rose Fulbright | | | | 07/07/2016 11:17 CDT | Anadarko - AC Presentation - 7/6/16 | Attorney-Client; Work Product | Draft presentation to Anadarko Audit Committee created at the request or direction of NRF attorney (Madeline Braziel^) in anticipation of litigation regarding investigation. |
| 678 | | | Norton Rose Fulbright | | | | 07/07/2016 17:23 CDT | Anadarko - AC Presentation - 7/6/16 | Attorney-Client; Work Product | Draft presentation to Anadarko Audit Committee created at the request or direction of NRF attorney (Madeline Braziel^) in anticipation of litigation regarding investigation. |
| 681 | | | Norton Rose Fulbright | | | | 07/11/2016 14:47 CDT | Anadarko - Call with SEC 2016-07-11 | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Lana Rowenko, Esq.*) regarding call with SEC. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 688 | | | Norton Rose Fulbright | | | | 07/13/2016 21:51 CDT | Anadarko - 2016.06.16 Strickling Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 689 | | | Norton Rose Fulbright | | | | 07/13/2016 21:51 CDT | Anadarko - Memorandum from Interview of Breck Johnson (June 15, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 690 | | | Norton Rose Fulbright | | | | 07/13/2016 21:57 CDT | Anadarko - Memorandum from Interview of Chip Oudin (June 20, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 691 | | | Norton Rose Fulbright | | | | 07/13/2016 22:26 CDT | Anadarko - Memorandum from Interview of Paul Chandler (June 20, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 692 | | | Norton Rose Fulbright | | | | 07/13/2016 22:54 CDT | Anadarko - Memorandum from Interview of Jake Ramsey (June 22, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 693 | | | Norton Rose Fulbright | | | | 07/13/2016 23:06 CDT | Anadarko - Memorandum from Interview of John Colglazier (June 23, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 694 | | | Norton Rose Fulbright | | | | 07/13/2016 23:15 CDT | Anadarko - Memorandum from Interview of Christian Noll (June 23, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 695 | | | Norton Rose Fulbright | | | | 07/15/2016 11:52 CDT | Summary-- Culture, Conduct, Bullying References | Work Product | Memorandum drafted by NRF attorney (Jesika Blanco, Esq.*) in anticipation of litigation regarding witness interviews. |
| 696 | | | Norton Rose Fulbright | | | | 07/15/2016 13:18 CDT | 2016.06.23 Oudin Interview Memo | Work Product | Memorandum prepared by NRF attorney (Jesika Blanco, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 698 | | | Norton Rose Fulbright | | | | 07/15/2016 16:01 CDT | Anadarko - AC Presentation - 7/6/16 | Attorney-Client; Work Product | Draft presentation to Anadarko Audit Committee created at the request or direction of NRF attorney (Madeline Braziel^) in anticipation of litigation regarding investigation. |
| 699 | | | Norton Rose Fulbright | | | | 07/15/2016 16:37 CDT | Anadarko - Summary Slides - 7/12/16 | Attorney-Client; Work Product | Draft presentation created by NRF attorney (Peggy Heeg, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |
| 701 | | | Norton Rose Fulbright | | | | 07/19/2016 10:32 CDT | Anadarko - AC Presentation - Master | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |
| 702 | | | Norton Rose Fulbright | | | | 07/19/2016 13:08 CDT | Anadarko - AC Presentation - Master | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |
| 703 | | | Norton Rose Fulbright | | | | 07/19/2016 15:31 CDT | Anadarko - AC Presentation - Short Version | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 704 | | | Norton Rose Fulbright | | | | 07/19/2016 16:59 CDT | Anadarko - AC Presentation - Short Version | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |
| 705 | | | Norton Rose Fulbright | | | | 07/20/2016 12:42 CDT | Anadarko - 2016.06.16 Camden Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 707 | | | Norton Rose Fulbright | | | | 07/20/2016 16:17 CDT | AC Special Meeting Minutes - July 14, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 711 | | | Norton Rose Fulbright | | | | 07/21/2016 09:55 CDT | AC Special Meeting Minutes - July 21, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 713 | | | Norton Rose Fulbright | | | | 07/21/2016 16:54 CDT | Anadarko - 2016.07.13 Daniels Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 715 | | | Norton Rose Fulbright | | | | 07/22/2016 13:14 CDT | Anadarko - 2016.07.14 Leyendecker Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 718 | | | Norton Rose Fulbright | | | | 07/25/2016 17:24 CDT | Anadarko - AC Presentation - Short Version | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |
| 719 | | | Norton Rose Fulbright | | | | 07/25/2016 17:53 CDT | Anadarko - 2016.06.21 McGrievy Interview Memo FINAL | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 722 | | | Norton Rose Fulbright | | | | 07/27/2016 17:17 CDT | Anadarko - AC Presentation - Short Version 7-28-2016 | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |
| 723 | | | Norton Rose Fulbright | | | | 07/28/2016 13:41 CDT | Frye Anadarko Employment History | Work Product | Document created by NRF attorney (Jesika Blanco, Esq.*) in anticipation of litigation regarding Lea Frye's employment. |
| 724 | | | Norton Rose Fulbright | | | | 07/29/2016 08:35 CDT | Anadarko - 2016.07.25 Walker Interview Memo - SJC | Work Product | Memorandum prepared by NRF attorney (Shauna Clark, Esq.*) and legal support staff working at direction of Shauna Clark, Esq.* (Carol Nervis^) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 725 | | | Norton Rose Fulbright | | | | 07/29/2016 11:50 CDT | Anadarko - 2016.07.25 Walker Interview Memo | Work Product | Memorandum prepared by NRF attorney (Shauna Clark, Esq.*) in anticipation of litigation regarding witness interview. |
| 726 | | | Norton Rose Fulbright | | | | 07/29/2016 14:00 CDT | Anadarko - Summary Board Presentation 8-1-2016 Handouts | Work Product | Draft presentation created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to Board. |
| 740 | | | Norton Rose Fulbright | | | | 08/01/2016 11:15 CDT | Anadarko - 2016.07.11 Trautman Interview Memo DRAFT | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 741 | | | Norton Rose Fulbright | | | | 08/01/2016 18:01 CDT | Anadarko - 2016.07.26 Kendall Interview Memo DRAFT | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 744 | | | Norton Rose Fulbright | | | | 08/03/2016 09:41 CDT | Anadarko - AC Presentation - Master | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 745 | | | Norton Rose Fulbright | | | | 08/03/2016 15:15 CDT | Anadarko - AC Presentation - Master | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |
| 746 | | | Norton Rose Fulbright | | | | 08/04/2016 17:33 CDT | Anadarko - AC Presentation - Master | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |
| 747 | | | Norton Rose Fulbright | | | | 08/11/2016 11:21 CDT | Anadarko - SEC Presentation | Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 748 | | | Norton Rose Fulbright | | | | 08/11/2016 13:57 CDT | Anadarko - SEC Presentation - GP Edits | Work Product | Draft document created by NRF attorney (Gerard Pecht, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 750 | | | Norton Rose Fulbright | | | | 08/12/2016 11:20 CDT | Anadarko - SEC Presentation | Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 751 | | | Norton Rose Fulbright | | | | 08/15/2016 08:01 CDT | AC Minutes Special Meeting - June 2  2016 (2) | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 752 | | | Norton Rose Fulbright | | | | 08/15/2016 08:15 CDT | AC Minutes of Special Meeting - June 6, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 753 | | | Norton Rose Fulbright | | | | 08/15/2016 08:27 CDT | AC Minutes Special Meeting - June 9 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 754 | | | Norton Rose Fulbright | | | | 08/15/2016 08:34 CDT | AC Special Meeting Minutes - June 16, 2016 | Attorney-Client; Work Product | Memorandum prepared at the direction of NRF attorneys (Madeline Braziel^) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 755 | | | Norton Rose Fulbright | | | | 08/15/2016 08:38 CDT | AC Special Meeting Minutes - June 23, 2016 | Attorney-Client; Work Product | Memorandum prepared at the direction of NRF attorneys (Madeline Braziel^) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 756 | | | Norton Rose Fulbright | | | | 08/15/2016 08:46 CDT | AC Special Meeting Minutes - June 30, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 757 | | | Norton Rose Fulbright | | | | 08/15/2016 08:52 CDT | AC Special Meeting Minutes - July 14, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 758 | | | Norton Rose Fulbright | | | | 08/15/2016 08:53 CDT | AC Minutes of Special Meeting - May 6, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 759 | | | Norton Rose Fulbright | | | | 08/15/2016 08:59 CDT | AC Special Meeting Minutes - July 21, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 760 | | | Norton Rose Fulbright | | | | 08/15/2016 09:00 CDT | AC Minutes Special Meeting - May 19 2016 | Attorney-Client; Work Product | Memorandum prepared at the direction of NRF attorneys (Madeline Braziel^) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 761 | | | Norton Rose Fulbright | | | | 08/15/2016 09:01 CDT | AC Minutes Special Meeting - May 26 2016 (2) | Attorney-Client; Work Product | Memorandum prepared at the direction of NRF attorneys (Madeline Braziel^) in anticipation of litigation regarding Anadarko Audit Committee meeting. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 762 | | | Norton Rose Fulbright | | | | 08/15/2016 09:01 CDT | AC Minutes Special Meeting - May 12 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 763 | | | Norton Rose Fulbright | | | | 08/15/2016 18:21 CDT | Anadarko - SEC Presentation updated 8-15-16 | Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 765 | | | Norton Rose Fulbright | | | | 08/16/2016 15:05 CDT | Anadarko - SEC Presentation updated 8-16-16 | Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 766 | | | Norton Rose Fulbright | | | | 08/16/2016 15:37 CDT | AC Special Meeting Minutes - August 11, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 767 | | | Norton Rose Fulbright | | | | 08/16/2016 15:44 CDT | AC Special Meeting Minutes - August 18, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 768 | | | Norton Rose Fulbright | | | | 08/16/2016 16:35 CDT | AC Special Meeting Minutes - July 28, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 769 | | | Norton Rose Fulbright | | | | 08/17/2016 15:42 CDT | Anadarko - AC Presentation - Master | Attorney-Client; Work Product | Draft presentation created by NRF attorney (John Byron, Esq.*) to Anadarko Audit Committee in anticipation of litigation regarding investigation. |
| 770 | | | Norton Rose Fulbright | | | | 08/17/2016 16:27 CDT | Anadarko - SEC Presentation updated 8-17-16 | Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 776 | | | Norton Rose Fulbright | | | | 08/25/2016 15:59 CDT | Anadarko - Memorandum from Interview of Jim Kleckner (July 13, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 777 | | | Norton Rose Fulbright | | | | 08/28/2016 18:07 CDT | Anadarko - SEC Presentation updated 8-24-16 | Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 778 | | | Norton Rose Fulbright | | | | 08/29/2016 13:21 CDT | Anadarko - SEC Presentation updated 8-28-16 | Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 779 | | | Norton Rose Fulbright | | | | 08/29/2016 15:03 CDT | AC Special Meeting Minutes - August 25, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 783 | Non-Party_NRF_00000850 | Non-Party_NRF_00000851 | Norton Rose Fulbright | | | | 09/07/2016 18:29 CDT | 2016.09.07 Call with KPMG Memo | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Lana Rowenko, Esq*) regarding call with KPMG. |
| 785 | | | Norton Rose Fulbright | | | | 09/08/2016 10:47 CDT | AC Special Meeting Minutes - September 1, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 790 | | | Norton Rose Fulbright | | | | 09/14/2016 10:30 CDT | AC Special Meeting Minutes - September 8, 2016 | Attorney-Client; Work Product | Memorandum prepared at the direction of NRF attorneys (Madeline Braziel^) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 816 | | | Norton Rose Fulbright | | | | 09/25/2016 13:49 CDT | Anadarko - Memorandum from Interview of Diane Sease (September 15, 2016)_1.DOCX | Work Product | Memorandum prepared by NRF attorney (Chen Zhang, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 817 | | | Norton Rose Fulbright | | | | 09/25/2016 18:23 CDT | Anadarko - Memorandum from Interview of Catherine Green (September 16, 2016)_1.DOCX | Work Product | Memorandum prepared by NRF attorney (Chen Zhang, Esq.*) in anticipation of litigation regarding witness interview. |
| 821 | | | Norton Rose Fulbright | | | | 09/29/2016 14:16 CDT | APC - Memo re Shen-3 Accounting | Work Product | Memorandum containing legal analyses and mental impressions of NRF attorney (John Byron, Esq.*) prepared in anticipation of litigation regarding accounting procedures. |
| 826 | | | Norton Rose Fulbright | | | | 09/30/2016 17:57 CDT | AC Minutes Special Meeting - 9/30/16 - USE THIS ONE | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 831 | Non-Party_NRF_00000852 | Non-Party_NRF_00000853 | Norton Rose Fulbright | | | | 10/06/2016 13:54 CDT | Anadarko - KPMG Call 10-6-16 | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Lana Rowenko, Esq*) regarding call with KPMG. |
| 833 | | | Norton Rose Fulbright | | | | 10/07/2016 08:17 CDT | AC Minutes Special Meeting - October 7, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 837 | | | Norton Rose Fulbright | | | | 10/12/2016 10:08 CDT | Anadarko - 2016.10.03 Steinberger-Glasser Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 838 | | | Norton Rose Fulbright | | | | 10/12/2016 18:18 CDT | Anadarko - 2016.09.19 Ramsey Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 840 | | | Norton Rose Fulbright | | | | 10/14/2016 10:26 CDT | Anadarko - 2016.09.26 Call with SEC | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Lana Rowenko, Esq.*) regarding call with SEC. |
| 842 | | | Norton Rose Fulbright | | | | 10/17/2016 14:22 CDT | Anadarko - 2016.10.17 Call with SEC | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Lana Rowenko, Esq.*) regarding call with SEC. |
| 847 | | | Norton Rose Fulbright | | | | 10/20/2016 09:41 CDT | KPMG Call 10-20-16 | Work Product | Talking points prepared in anticipation of litigation by NRF attorney (Lana Rowenko, Esq*) regarding call with KPMG. |
| 850 | Non-Party_NRF_000008 54 | Non-Party_NRF_000008 56 | Norton Rose Fulbright | | | | 10/26/2016 10:11 CDT | Anadarko - KPMG Call, 10-20-16 | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Lana Rowenko, Esq*) regarding call with KPMG. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 851 | | | Norton Rose Fulbright | | | | 10/26/2016 11:37 CDT | Anadarko Update Call 10-26-16 | Work Product | Document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding outline for call with Board. |
| 852 | | | Norton Rose Fulbright | | | | 10/27/2016 08:08 CDT | AC Minutes Special Meeting - October 27, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 855 | Non-Party_NRF_00000857 | Non-Party_NRF_00000859 | Norton Rose Fulbright | | | | 10/28/2016 15:47 CDT | Anadarko - KPMG Call, 10-27-16 | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Lana Rowenko, Esq*) regarding call with KPMG. |
| 856 | | | Norton Rose Fulbright | | | | 10/31/2016 16:09 CDT | Anadarko - 2016.10.31 SEC Call re 10-Q | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (Lana Rowenko, Esq.*) regarding call with SEC. |
| 857 | | | Norton Rose Fulbright | | | | 10/31/2016 18:01 CDT | Anadarko - 2016.10.10 McDonald Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 858 | | | Norton Rose Fulbright | | | | 10/31/2016 18:04 CDT | Anadarko - 2016.09.26 Leyendecker Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 860 | | | Norton Rose Fulbright | | | | 11/01/2016 17:40 CDT | Anadarko - 2016.11.01 Oudin Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 862 | | | Norton Rose Fulbright | | | | 11/02/2016 18:10 CDT | Anadarko - 2016.10.03 Krszjzaniek Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 864 | | | Norton Rose Fulbright | | | | 11/03/2016 18:15 CDT | Anadarko - DRAFT 2016.10.04 Boggan Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 866 | | | Norton Rose Fulbright | | | | 11/04/2016 16:27 CDT | AC Minutes Special Meeting - November 3, 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) in anticipation of litigation regarding Anadarko Audit Committee meeting. |
| 871 | | | Norton Rose Fulbright | | | | 11/12/2016 10:46 CST | Anadarko - SEC Presentation updated 10-28-16 | Attorney-Client; Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 872 | | | Norton Rose Fulbright | | | | 11/14/2016 10:47 CST | Anadarko - SEC Presentation updated 11-14-16 | Attorney-Client; Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 873 | | | Norton Rose Fulbright | | | | 11/14/2016 12:45 CST | Anadarko - Presentation to APC - 11-14-16 | Attorney-Client; Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 874 | | | Norton Rose Fulbright | | | | 11/15/2016 10:00 CST | Anadarko - SEC Presentation for AC - 11-15-16 | Attorney-Client; Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 876 | | | Norton Rose Fulbright | | | | 11/18/2016 15:57 CST | Anadarko - Presentation to SEC 11-22-16 | Work Product | Draft document created by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding presentation to SEC. |
| 883 | | | Norton Rose Fulbright | | | | 11/22/2016 15:35 CST | Anadarko - Memorandum from Interview of Catherine Green (September 16, 2016)_2.DOCX | Work Product | Memorandum prepared by NRF attorney (Chen Zhang, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 884 | | | Norton Rose Fulbright | | | | 11/23/2016 12:41 CST | AC Special Meeting Minutes - November 23 2016 | Attorney-Client; Work Product | Memorandum prepared by NRF attorney (Peggy Heeg, Esq.*) regarding Anadarko Audit Committee meeting. |
| 887 | | | Norton Rose Fulbright | | | | 11/30/2016 09:25 CST | Anadarko - Memorandum from Interview of Chip Oudin (October 11, 2016).DOCX | Work Product | Memorandum prepared by NRF attorney (Chen Zhang, Esq.*) regarding witness interview. |
| 891 | | | Norton Rose Fulbright | | | | 12/05/2016 10:22 CST | Anadarko - Memorandum from Interview of Jordan Hixson (October 11, 2016).DOCX | Work Product | Memorandum prepared by NRF attorney (Chen Zhang, Esq.*) in anticipation of litigation regarding witness interview. |
| 892 | | | Norton Rose Fulbright | | | | 12/05/2016 10:23 CST | Anadarko - Memorandum from Interview of Cathy Douglas (September 27, 2016).DOCX | Work Product | Memorandum prepared by NRF attorney (Chen Zhang, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 893 | | | Norton Rose Fulbright | | | | 12/05/2016 10:30 CST | Anadarko - Memorandum from Interview of Diane Sease (September 15, 2016)_2.DOCX | Work Product | Memorandum prepared by NRF attorney (Chen Zhang, Esq.*) in anticipation of litigation regarding witness interview. |
| 894 | | | Norton Rose Fulbright | | | | 12/06/2016 17:25 CST | Anadarko - Memorandum from Interview of Darrell Hollek (July 14, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 895 | | | Norton Rose Fulbright | | | | 12/06/2016 17:37 CST | Anadarko - Memorandum from Interview of Chris Champion (November 11, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 896 | | | Norton Rose Fulbright | | | | 12/06/2016 17:40 CST | Anadarko - Memorandum from Interview of Chris Champion (November 2, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 897 | | | Norton Rose Fulbright | | | | 12/06/2016 17:41 CST | Anadarko - Memorandum from Interview of Michael Ciselak (October 19, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 898 | | | Norton Rose Fulbright | | | | 12/06/2016 17:41 CST | Anadarko - Memorandum from Interview of Jake Ramsey (October 19, 2016) | Work Product | Memorandum prepared by NRF attorney (John Byron, Esq.*) in anticipation of litigation regarding witness interview. |
| 899 | | | Norton Rose Fulbright | | | | 12/07/2016 10:54 CST | Anadarko - 2016.09.15 Burton Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 901 | | | Norton Rose Fulbright | | | | 12/07/2016 14:45 CST | Anadarko - 2016.10.03 Shotts &amp; Prosser Interview Memo | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |

| PL NO. | BATES BEGIN | BATES END | CUSTODIAN(S) | AUTHOR | RECIPIENT(S) | CC RECIPIENT(S) | DATE TIME | FILE NAME / SUBJECT / TITLE | CLAIM | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 908 | | | Norton Rose Fulbright | | | | 12/16/2016 10:11 CST | Anadarko - 2016.12.16 Memorandum of Interview of Bob Daniels | Work Product | Memorandum prepared by NRF attorney (Lana Rowenko, Esq.*) in anticipation of litigation regarding witness interview. |
| 909 | Non-Party_NRF_00000860 | Non-Party_NRF_00000862 | Norton Rose Fulbright | | | | 12/16/2016 16:04 CST | APC - Memo re KPMG December 14, 2016 Call | Work Product | Memorandum prepared in anticipation of litigation by NRF attorney (John Byron, Esq.*) regarding call with KPMG. |
| 913 | | | Norton Rose Fulbright | | | | 01/06/2017 00:01 CST | Anadarko - Memorandum from Interview of Bob Abendschein (January 4, 2017) | Work Product | Memorandum prepared by NRF attorney (Chen Zhang, Esq.*) regarding witness interview. |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>4:20-CV-00576<br><br>JUDGE CHARLES ESKRIDGE |

**ORDER**

On April 13, 2022, Plaintiffs filed a Motion to Compel Documents Concerning Anadarko Audit Committee's Purported Investigation ("Motion to Compel") (ECF 115). On May 2, 2022, Plaintiffs filed their Motion to Compel without redactions (ECF 122). On [_____], Defendants filed their opposition to Plaintiffs' Motion to Compel. (ECF__). On [_____], Plaintiffs filed a Reply in support of their Motion to Compel.

Plaintiffs' Motion to Compel is GRANTED. Defendants and the Anadarko Audit Committee members are ordered to produce all documents underlying or relating to the Anadarko Audit Committee's investigation that have been withheld or redacted on the basis of attorney-client and/or work product privilege.

SO ORDERED.

Signed on _____, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge

- 1 -