TAB 4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

## DEFENDANTS AND NON-PARTIES ERIC MULLINS, KEVIN CHILTON AND MARK MCKINLEY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF ISSUES ..............................................................................................2

APPLICABLE LEGAL STANDARDS ............................................................................2

FACTUAL BACKGROUND.............................................................................................4

NATURE AND STAGE OF THE PROCEEDINGS ........................................................5

ARGUMENT ....................................................................................................................7

    I.      The AAC Has Not Waived Attorney-Client Privilege Over
Communications Between the AAC and NRF. ...........................................7

           A.      Defendants Did Not Concede Waiver.............................................8

           B.      The AAC Did Not Waive Privilege Over Communications with
NRF by Discussing the Investigation with Third Parties................8

    II.     NRF Attorney Opinions Incorporated into KPMG-prepared Documents
Are Protected Attorney Work Product......................................................13

    III.    There Has Been No Waiver Over Attorney Work Product Created In
Furtherance of the Investigation ...............................................................15

           A.      Defendants Have Not Used the Investigation as a "Sword" in This
Litigation.......................................................................................15

           B.      Any Waiver is Limited to the Documents Disclosed to the SEC. ..17

           C.      Disclosure of Work Product to KPMG and JPM Did Not
Constitute Waiver ........................................................................18

    IV.    Appointment of a Special Master ..............................................................20

CONCLUSION................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Mem'l Hermann*,
   973 F.3d 343 (5th Cir. 2020) ................................................................13, 14

*Cantu v. TitleMax, Inc.*,
   2015 WL 5944258 (W.D. Tex. Oct. 9, 2015) ..........................................14

*Doe 1 v. Baylor Univ.*,
   320 F.R.D. 430 (W.D. Tex. 2017) ..............................................2, 3, 4, 10

*Doe 1 v. Baylor Univ.*,
   335 F.R.D. 476 (W.D. Tex. 2020) ................................................................16

*Dunn v. State Farm Fire & Cas. Co.*,
   927 F.2d 869 (5th Cir. 1991) ........................................................................3

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   218 F.R.D. 125 (E.D. Tex. 2003) ..................................................................3

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   219 F.R.D. 396 (E.D. Tex. 2003) ................................................................18

*Hickman v. Taylor*,
   329 U.S. 495 (Jackson, J., concurring) ........................................................1

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   No. 03 MDL 1529 (LMM), 2009 WL 1922425 (S.D.N.Y. July 1,
   2009) ..............................................................................................................11

*In re Auclair*,
   961 F.2d 65 (5th Cir. 1992) ..........................................................................2

*In re Itron, Inc.*,
   883 F.3d 553 (5th Cir. 2018) ........................................................................3

*In re Weatherford Int'l Sec. Litig.*,
   2013 WL 12185082 (S.D.N.Y. Nov. 19, 2013) ..........................................19

*Medinol, Ltd. v. Boston Scientific Corp.*,
   214 F.R.D. 113 (S.D.N.Y. 2002) ................................................................19

*Mir v. L-3 Commc'ns Integrated Sys., L.P.*,
   315 F.R.D. 460 (N.D. Tex. 2016) ................................................................16

*Nguyen v. Excel Corp.*,
   197 F.3d 200 (5th Cir. 1999) .....................................................................9, 10

*SEC v. Berry*,
   2011 WL 825742 (N.D. Cal. Mar. 7, 2011)....................................................4, 13, 19

*SEC v. Brady*,
   238 F.R.D. 429 (N.D. Tex. 2006) ...................................................... passim

*SEC v. Brown*,
   2010 WL 11602724 (D.D.C. Sept. 29, 2010) .............................................3

*SEC v. Herrera*,
   324 F.R.D. 258 (S.D. Fla. 2017).........................................................17, 19

*SEC v. Microtune, Inc.*,
   258 F.R.D. 310 (N.D. Tex. 2009) ......................................................4, 12

*SEC v. Roberts*,
   254 F.R.D. 371 (N.D. Cal. 2008).........................................................17

*Shields v. Sturm, Ruger & Co.*,
   864 F.2d 379 (5th Cir. 1989) .............................................................3

*United States v. Deloitte LLP*,
   610 F.3d 129 (D.C. Cir. 2010).......................................................13, 14, 19

*United States v. El Paso Co.*,
   682 F.2d 530 (5th Cir. 1982) .............................................................9, 14

*United States v. Gulf Oil Corp.*,
   760 F.2d 292 (Temp. Emer. Ct. App. 1985) ...........................................14

*United States v. Nobles*,
   422 U.S. 225 (1975)..........................................................................3

*United States v. Reyes*,
   239 F.R.D. 591 (N.D. Cal. 2006)..........................................................17

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981)........................................................................1, 9

*Willy v. Admin. Rev. Bd.*,
   423 F.3d 483 (5th Cir. 2005) ...........................................................15, 18

**Statutes & Rules**

15 U.S.C. § 77f(a) ................................................................................20

15 U.S.C. § 77k(a)(5) .................................................................................................20

Fed. R. Civ. P. 26(b)(3) ................................................................................................3

Fed. R. Evid. 502 ...............................................................................................10, 18

Fed. R. Evid. 502(a) .............................................................................................. passim

Fed. R. Evid. 502(a)(3) ................................................................................................9

## Other Authorities

8 C. Wright & A. Miller, Federal Practice and Procedure § 2016.2 (3d ed.
Apr. 2022) ................................................................................................................10

## PRELIMINARY STATEMENT

Plaintiffs move to compel the production of privileged communications relating to, and attorney work product created in connection with, the investigation that Norton Rose Fulbright US LLP ("NRF"), counsel for the Anadarko Audit Committee ("AAC"), conducted into allegations made by a former employee. (ECF No. 115 ("Mot.").)  Plaintiffs—who have received all documents related to the investigation that were provided to the SEC—contend that they need privileged documents that the SEC never received.  In doing so, Plaintiffs baselessly impugn what they call a "purported" investigation, arguing that Defendants and the AAC "selectively" disclosed privileged information outside this litigation, and claim that Defendants have used the investigation offensively in this action.  Neither assertion is true.  Instead, it is Plaintiffs that have attempted to put the investigation at issue, using a former Anadarko employee's letter to the SEC as the basis for allegations in the Amended Complaint and seeking discovery specifically related to the investigation.

Plaintiffs say they just want a "fair fight" (Mot. at 2), but fairness does not compel disclosure here.  The underlying facts remain discoverable, and although compelling disclosure of these documents might ease Plaintiffs' burdens in discovery, "considerations of convenience do not overcome the policies served by the attorney–client privilege".  *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981); *see also Hickman v. Taylor*, 329 U.S. 495, 516 (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its

functions either without wits or on wits borrowed from the adversary.").

Plaintiffs' motion to compel should therefore be denied.

## STATEMENT OF ISSUES

1. Whether the Court should compel (a) disclosure of communications between the AAC and counsel withheld only on attorney-client privilege grounds, and (b) the attorney work product listed in Exhibit I to Plaintiffs' motion.

2. Whether the Court should appoint a special master if it grants Plaintiffs' motion and how expenses should be allocated if one is appointed.

## APPLICABLE LEGAL STANDARDS

"The attorney-client privilege protects from disclosure confidential communications made to obtain a lawyer's professional advice and assistance." *SEC v. Brady*, 238 F.R.D. 429, 438 (N.D. Tex. 2006). This includes confidential communications made during the course of an internal investigation, as an investigation helps a company "better understand its legal obligations and liabilities—the exact sort of behavior the privilege seeks to encourage". *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 437 (W.D. Tex. 2017).

The attorney-client privilege is waived by disclosing privileged communications to third parties. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992). When a disclosure made to a federal agency waives the attorney-client privilege, Federal Rule of Evidence Rule 502(a) governs the scope of waiver: Waiver extends to an undisclosed communication in a federal proceeding "only if" (1) "the waiver is intentional", (2) "the disclosed and undisclosed communications or information concern the same subject matter" and (3) "they ought in fairness to

2

be considered together".  Fed. R. Evid. 502(a).  Outside the Rule 502(a) context, waiver "extend[s] to related subject matter" in order "[t]o prevent selective or misleading disclosures".  *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018).  As "fairness is the critical consideration when evaluating whether a party has waived the attorney-client privilege", *Baylor*, 320 F.R.D. at 440, courts have discretion to determine the scope of the "subject matter" based on "the factual context in which the privilege is asserted" and the "content of the disclosed document", *SEC v. Brown*, 2010 WL 11602724, at *3 (D.D.C. Sept. 29, 2010) (citation and quotation marks omitted).

The work-product doctrine "is distinct from and broader than the attorney-client privilege".  *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975).  It protects from disclosure documents prepared "in anticipation of litigation", Fed. R. Civ. P. 26(b)(3), including documents created during an internal investigation, such as "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements", *Dunn v. State Farm Fire & Cas. Co*., 927 F.2d 869, 875 (5th Cir. 1991).

Work-product protection is not waived merely by sharing work product with a third party.  *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).  Instead, "[w]aiver of work[-]product protection only results if the work product is disclosed to an adversary or treated in a manner that substantially increases the likelihood that an adversary will come into possession of that material".  *Brady*, 238 F.R.D. at 444 (citing *Ferko v. Nat'l Ass'n for Stock Car*

3

*Auto Racing, Inc.*, 218 F.R.D. 125, 136 (E.D. Tex. 2003)).  As with attorney-client privilege, "the determination of whether there has been any waiver is rooted in principles of fairness".  *SEC v. Berry*, 2011 WL 825742, at *2 (N.D. Cal. Mar. 7, 2011).  "[T]he burden of proving waiver of work product immunity falls on the party asserting waiver."  *Brady*, 238 F.R.D. at 444.

When a disclosure made to a federal agency waives the work-product privilege, Rule 502(a) governs the scope of waiver.  More broadly, courts hold that "disclosure of work product to a third party waives protection only as to the materials actually disclosed", *SEC v. Microtune, Inc.*, 258 F.R.D. 310, 319 n.4 (N.D. Tex. 2009), and subject-matter waiver "is generally limited to instances where the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the party asserting the privilege", *Baylor*, 320 F.R.D. at 442.

## FACTUAL BACKGROUND

Plaintiffs allege that Defendants defrauded investors in connection with Anadarko's project to appraise the Shenandoah oil field in the Gulf of Mexico by making misleading public statements, and engaging in a scheme to suppress negative information, regarding the project.  (ECF No. 55 ¶ 5 ("Compl.").)  In support of these claims, Plaintiffs rely heavily on allegations from Lea Frye, a former Anadarko employee who worked on the Shenandoah appraisal project.

In April 2016, Ms. Frye gave Defendants a letter of allegations she intended to submit to the SEC.  (Compl. ¶ 73.)  In response, the AAC retained NRF to

4

investigate her allegations. NRF conducted a thorough investigation, during which counsel was in frequent contact with the SEC and, at the request of the SEC, produced documents relevant to Ms. Frye's allegations. (Ex. A ("Decl.") ¶ 8.) NRF presented its findings to the SEC in November 2016 and, after entering into a confidentiality agreement with the SEC, produced the slides from its final presentation and accompanying expert reports in December 2016. (*Id.* ¶ 9.) In January 2017, the SEC sent NRF a "Termination Letter". All documents NRF gave the SEC, and all written communications between NRF and the SEC, have been produced to Plaintiffs in this litigation. (*Id.* ¶ 12.)

While the investigation was ongoing, NRF and the AAC periodically updated Anadarko's auditor, KPMG, on the status of the investigation. Documents prepared by KPMG regarding its review of Frye's allegations have been produced to Plaintiffs, with redactions to the extent NRF's opinion work product is incorporated into those documents.

Anadarko also provided J.P. Morgan ("JPM") with information regarding the investigation in advance of a September 2016 offering of Anadarko common stock, for which JPM served as lead underwriter. The investigation was not described in any public statements associated with the offering.

## NATURE AND STAGE OF THE PROCEEDINGS

This action commenced on February 19, 2020 (ECF No. 1), and the operative complaint was filed on August 17, 2020 (Compl.). Throughout discovery, Plaintiffs have sought to obtain privileged documents related to the

investigation.  As is relevant here, Defendants, the individual members of the

AAC, NRF and KPMG have all withheld (or produced with redactions) privileged

documents.

On February 22, 2022, Plaintiffs filed an initiating letter requesting leave to

file a motion to compel "all AAC-investigation-related information within

[D]efendants' possession, custody, and control" on the basis Defendants had

waived privilege.  (ECF No. 100.)  Defendants responded on February 24, 2022,

asserting they had not waived privilege, and therefore they, and KPMG, had

properly withheld or redacted certain documents as work product.  (ECF No. 103.)

On March 18, 2022, the Court granted Plaintiffs leave to file a motion to compel

"certain documents that Defendants claim are protected by the attorney work

product privilege".  (ECF No. 108.)

On April 13, 2022, Plaintiffs filed the instant motion to compel seeking

production of 250 investigation-related documents withheld or redacted by the

AAC, Defendants and KPMG.  (ECF No. 116, Ex. I.)  Plaintiffs also moved to

compel documents the AAC members had withheld based solely on claims of

attorney-client privilege, an issue that was not raised in their initiating letter as the

AAC members are not party to the litigation.

Prior to filing the instant opposition, and based on a further review of the

documents subject to the Motion, Defendants and the AAC members produced

forty-eight documents that had previously been withheld.

## ARGUMENT

Plaintiffs seek to compel disclosure of privileged communications between the AAC and NRF, as well as work product generated during the investigation, based on broad arguments of subject-matter waiver. *First*, Plaintiffs assert they are entitled to communications between the AAC and NRF because the AAC and NRF discussed the investigation with the SEC and Anadarko's auditor and underwriter. But discussing facts learned during the investigation does not open up all of the AAC's privileged communications with counsel for review. *Second*, Plaintiffs—who are already in possession of NRF's presentation to the SEC and all documents NRF gave the SEC—argue that Defendants and the AAC waived work-product protection over documents that were not produced to the SEC. But these documents remain protected, as neither Defendants nor the AAC shared attorney work product with an adversarial third party, and Defendants have not otherwise put the investigation at issue in this action.

I.    **The AAC Has Not Waived Attorney-Client Privilege Over Communications Between the AAC and NRF.**

Plaintiffs move to compel all communications between the AAC and NRF withheld on attorney-client privilege grounds on the basis that sharing "broad portions of the AAC investigation to third-parties" —including "internal documents", "witness interviews", "findings" and the presentation to the SEC— "operated as a subject-matter waiver as to *all* documents on the subject". (Mot. at 3, 8.) However, NRF did not waive privilege simply by sharing facts and non-

7

privileged documents, particularly because it did not give the SEC, KPMG or JPM
privileged documents, such as internal attorney-client communications or
interview memoranda.  (Decl. ¶¶ 6, 7, 11, 12.)  And to the extent there was any
waiver, it would not fairly cover communications between the AAC and NRF.

### A.     Defendants Did Not Concede Waiver

Plaintiffs' principal argument is that Defendants conceded waiver over all
attorney-client communications by not addressing attorney-client privilege in
response to Plaintiffs' initiating letter.  (Mot. at 8.)  However, Plaintiffs' letter
related only to investigation-related documents in *Defendants'* possession that had
been included in *Defendants'* privilege log.  All these documents were withheld, at
least in part, under the attorney work-product doctrine, which is an independent
and sufficient basis to withhold the documents.  Accordingly, Defendants'
response that it had not waived attorney work-product protection was sufficient to
address Plaintiffs' arguments.  Critically, the AAC documents were not within the
scope of Plaintiffs' letter, and so no response by Defendants could possibly
amount to a concession that there was a waiver over those other documents.

### B.     The AAC Did Not Waive Privilege Over Communications with NRF by Discussing the Investigation with Third Parties

While Plaintiffs do not clearly articulate any other argument supporting
waiver over the AAC documents (*see* Mot. at 8), they appear to assert that the
AAC waived its right to withhold privileged communications because it and NRF

discussed the investigation with the SEC and Anadarko's auditor and underwriter (*see* Mot. at 2-4). This is not the law.

Disclosing "investigation information" (Mot. at 2) does not waive privilege over *all* attorney-client communications related to the investigation. Corporations routinely share the results of internal investigations with government agencies and other third parties without waiving privilege. This is because the attorney-client privilege protects "confidential communications between [a corporation's] representatives and its attorneys . . . to obtain legal services", *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999), but not the underlying facts learned during investigation, *Upjohn Co.*, 449 U.S. at 395. Accordingly, "the public disclosure of . . . facts . . . does not destroy the privilege with respect to attorney-client communications about those facts". *United States v. El Paso Co.*, 682 F.2d 530, 538 n.10 (5th Cir. 1982). As such, NRF did not waive attorney-client privilege simply by informing third parties about facts related to the investigation. Importantly, NRF did not give the SEC, KPMG or JPM notes, summaries, memoranda or other materials memorializing interviews conducted during the investigation. (Decl. ¶¶ 6, 7, 11.)

Even if privileged communications were disclosed to third parties—and Plaintiffs do not point to any such communications—waiver would not extend to *all* privileged communications. Waiver extends only to undisclosed communications that "ought in fairness . . . be considered together". Fed. R. Evid. 502(a)(3). Subject-matter waiver "is reserved for those *unusual* situations in

9

which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary", and is "limited to situations in which a party intentionally puts protected information *into the litigation* in a selective, misleading and unfair manner". Fed. R. Evid. 502 explanatory note (emphasis added); *see also* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2016.2 (3d ed. Apr. 2022) ("Rule . . . 502(a) curtails prior waiver doctrine significantly. . . . The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials.").

Even outside the Rule 502(a) context, waiver is not as broad as Plaintiffs suggest. If a party discloses a "significant portion of a confidential communication", it "waives the privilege as to the whole". *Nguyen*, 197 F.3d at 208 (citation and quotation marks omitted). For instance, a party cannot testify about counsel's legal research then object to questions about counsel's conclusions as to their research. *Id.* But while waiver may cover the "subject matter" of a communication, that does not mean *every* communication related to the representation is discoverable. Instead, fairness determines the scope of the relevant subject matter. *See Baylor*, 320 F.R.D. at 440 & n.5.

10

There is no reason to extend any alleged waiver to the emails between the AAC and NRF. While Plaintiffs make much of NRF's presentation to the SEC, there is nothing to suggest privileged communications with counsel "ought in fairness" be considered with that presentation. Indeed, the presentation is like "the submission of a brief to a court", which "hardly entitles the other side to discovery of the lawyer-author's communications with . . . clients concerning the preparation of the brief". *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2009 WL 1922425, at *2 n.3 (S.D.N.Y. July 1, 2009). Nor do Plaintiffs explain how the "subject matter" of any alleged disclosures to KPMG and JPM, made for purposes unrelated to this case, would fairly encompass privileged communications between the AAC and NRF.

Instead, Plaintiffs broadly suggest that fairness mandates disclosure because Defendants and the AAC "selectively" disclosed information for "money, governmental inaction, [and] influencing witnesses". (Mot. at 2.) As an initial matter, these allegations are baseless. There is no evidence the AAC selectively disclosed communications to—and thereby misled—the SEC, KPMG or JPM. (*See* Decl. ¶¶ 8, 9.) More fundamentally, Defendants are not attempting to use any disclosures selectively *in this case* and are not citing to the adequacy of the investigation as a defense. In addition, there is no potential for unfairness as Defendants cannot use at trial attorney-generated documents provided to the SEC, such as the presentation, as they would be inadmissible hearsay.

11

Indeed, this case is unlike the only two cases Plaintiffs cite in favor of subject-matter waiver: *Microtune* and *Brady*. In *Microtune*, and unlike here, the company produced a significant amount of privileged communications to the SEC, including "confidential reports, interview memoranda, . . . investigative working papers" and "confidential communications between the company and its outside counsel regarding the company's stock option practices". 258 F.R.D. at 314. The SEC settled with the company but continued to pursue claims against two of the company's former employees. *Id.* at 317. The court concluded fairness required those individuals have access to several investigation-related documents for use in their defense against the SEC. *Id.* These fairness concerns are absent from the present case.

In *Brady*, a company waived privilege over two investigation presentations, which counsel created specifically for the audit committee. 238 F.R.D. at 436. The waiver there was explicit: Counsel reviewed one of the privileged presentations, which was "suffused with legal conclusions and mental impressions regarding the interviews as well as legal advice regarding the former officers' allegations", with the company's auditors. *Id.* at 439–40, 442–43 (quotation marks omitted). Counsel gave the second presentation, as well as counsel's "prepared summaries of their observations and thoughts with respect to each interview", to the SEC. *Id.* at 435. None of this occurred here. Moreover, the case presented similar fairness concerns to *Microtune*, as a former employee sought investigation-related documents for use in his defense against the SEC.

12

While the court concluded that waiver of the attorney-client privilege extended to documents reviewed during the investigation and interview memoranda, it nonetheless denied the motion to compel because these documents were still protected work product, and the movant was only entitled to work product actually disclosed to the SEC—which, like here, the movant had already received. *Id.* at 440, 443.

Accordingly, even if the court finds a waiver of attorney-client privilege (and there is no basis to find that), the attorney work product created during the investigation remains protected. *See, e.g.*, *Berry*, 2011 WL 825742, at *3 n.3. As detailed below, neither Defendants nor the AAC waived this protection.

## II.  NRF Attorney Opinions Incorporated into KPMG-prepared Documents Are Protected Attorney Work Product

Plaintiffs seek to compel unredacted versions of KPMG's memos on the basis that they are not protected work product. This is incorrect and premised on an overly narrow reading of applicable caselaw. NRF's intangible work product— opinions it developed during the investigation—is protected, and remains protected when it is incorporated into KPMG's documents. The redactions to KPMG-prepared materials containing NRF's work product are therefore proper.

As the Fifth Circuit recently noted, "the work-product doctrine protects both 'tangible and intangible' work product". *Adams v. Mem'l Hermann*, 973 F.3d 343, 349–50 & n.4 (5th Cir. 2020) (citing *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010)). For this very reason—in the leading decision

concerning the relationship between attorney work product and independent auditors, upon which the Fifth Circuit relied in *Adams*—the D.C. Circuit explicitly recognized that opinions of counsel developed in anticipation of litigation qualify for work-product protection, even when incorporated into documents not prepared in anticipation of litigation. *Deloitte*, 610 F.3d at 136 ("Under *Hickman*, . . . the question is not who created the document or how they are related to the party asserting work-product protection, but whether the document contains work product—the thoughts and opinions of counsel developed in anticipation of litigation."); *id.* at 137 ("[F]or the Deloitte Memorandum, the question is whether it records information prepared by Dow or its representatives because of the prospect of litigation.").

 *El Paso* and its progeny cited by Plaintiffs, which apply the "primary motivating purpose" test, discuss only whether a *document* can qualify as work product and are therefore not inconsistent with *Deloitte*. 682 F.2d at 542–43; *see also Adams*, 973 F.3d at 349–50 & n.4. Similarly, the courts in the *Gulf Oil* and *Cantu* cases Plaintiffs cite (Mot. at 11) limited their analysis to whether the "primary motivating purpose" for creation of the *documents* at issue was to aid in future anticipated litigation, and thus do not bear on how to treat attorney work product contained within other documents. *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985); *Cantu v. TitleMax, Inc.*, 2015 WL 5944258, at *3 (W.D. Tex. Oct. 9, 2015). Plaintiffs do not argue that the primary

14

motivating purpose for NRF's opinions regarding the investigation was not to aid in future litigation—nor could they.

### III. There Has Been No Waiver Over Attorney Work Product Created In Furtherance of the Investigation

Plaintiffs argue that Defendants and the AAC members waived work-product protection over certain documents related to the investigation by "disclosing the substance of the AAC's investigation to numerous third parties" and "relying on the results . . . in this litigation". (Mot. at 9.) Once again, disclosing facts learned during an investigation does not waive work product. To the extent Plaintiffs believe that documents provided to the SEC include attorney work product, those documents have already been provided to Plaintiffs, and Plaintiffs do not provide any reason why fairness requires further disclosure. And to the extent KPMG and JPM received any work product, that would not constitute waiver such that it is discoverable to Plaintiffs.

### A. Defendants Have Not Used the Investigation as a "Sword" in This Litigation.

Plaintiffs seek to compel work product related to the investigation by claiming Defendants have used the investigation offensively. Under the sword-and-shield doctrine, if a party "uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege". *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005). Specifically, waiver occurs when a party "asserts a claim or defense that relies on work product to prove its intent, knowledge of the law, or the reasonableness of its

15

conduct", such as "cit[ing] to an investigation 'to show that it exercised reasonable care to promptly correct any harassing behavior'". *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 488–89 (W.D. Tex. 2020) (quoting *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 470–71 (N.D. Tex. 2016)).

Defendants have not inserted the investigation into this litigation, as they do not rely on the investigation, or on any privileged information or work product, in their defense. Indeed, the only document Plaintiffs argue supports waiver is the SEC Termination Letter referenced briefly during the depositions of Lead Plaintiffs. But Plaintiffs do not, and cannot, argue that a letter from a non-party government entity was Defendants' work product. Moreover, the context in which Defendants referenced that letter makes clear Defendants did not put the investigation "at issue". In both depositions—which took place in advance of Defendants' opposition to Plaintiffs' motion for class certification—counsel merely asked whether two of the Lead Plaintiffs were aware of the letter, in one asking whether it changed the deponent's views of the allegations in the Complaint (Ex. B), and in another using the letter to understand what appeared to be the deponent's mistaken belief about the SEC's response to Frye's allegations (Ex. C). Notably, Defendants did not refer to this testimony in opposition to Plaintiffs' motion for class certification.

Defendants are not relying on the investigation (*see* ECF No. 72 at 35–39), and the adequacy of the investigation is irrelevant to Plaintiffs' claims. None of the cases Plaintiffs cite support waiver here, as those cases concerned either

defenses that relied on privileged materials or allegations of litigation misconduct related to disclosure of privileged materials. (*See* Mot. at 12–13). There is nothing to support a finding that Defendants or the AAC shared information to gain a tactical advantage in this litigation.

### B. Any Waiver is Limited to the Documents Disclosed to the SEC.

To the extent Plaintiffs believe anything given to the SEC constitutes work product, waiver is limited to those documents—which Plaintiffs have already received. Plaintiffs assert that Defendants take the "overly formalistic position that waiver is limited to documents physically disclosed". (Mot. at 15.) That is not true. Plaintiffs do not identify *any* work product orally conveyed to the SEC that Defendants have withheld, and NRF has attested that it did not read from work product, such as interview notes or memoranda, to the SEC. (Decl. ¶ 11.) And the cases that Plaintiffs cite make clear that even when waiver results from work product being orally disclosed, the waiver is limited to that very work product. *See SEC v. Herrera*, 324 F.R.D. 258, 260 (S.D. Fla. 2017); *United States v. Reyes*, 239 F.R.D. 591, 596, 604 (N.D. Cal. 2006); *SEC v. Roberts*, 254 F.R.D. 371, 382–83 (N.D. Cal. 2008).

Here, Rule 502(a) governs the scope of waiver for any work product disclosed to the SEC. As discussed with respect to the attorney-client privilege, there are no undisclosed materials that "ought in fairness" be considered with the SEC presentation—because Defendants will not seek to introduce that presentation in this case. While Plaintiffs baselessly argue that NRF "selectively

17

disclos[ed]" the substance of the investigation to the SEC (Mot. at 2), Rule 502(a),

like the sword-and-shield doctrine, requires the court to assess whether Defendants

put any protected information at issue *in the litigation*.  Fed. R. Evid. 502

explanatory note; *Willy*, 423 F.3d at 497 ("[T]he attorney-client privilege only

prohibits a party from *simultaneously* using confidential information as both a

shield and a sword.").  There is simply no reason to find subject-matter waiver

here.

## C.    Disclosure of Work Product to KPMG and JPM Did Not Constitute Waiver

Plaintiffs argue that work-product protection over investigation-related

documents was waived when information in those documents was provided to

KPMG and JPM.  (Mot. at 13.)  However, waiver occurs only if work product is

"given to adversaries or treated in a manner that substantially increase[d] the

likelihood that an adversary w[ould] come into possession of the material".  *Ferko*

*v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400–01 (E.D. Tex.

2003).  KPMG and JPM were not Anadarko's adversaries, and providing them

with information did not increase the likelihood that an adversary would come into

possession of NRF's work product.

As to KPMG, Plaintiffs point to a minority of district court cases from other

circuits that have found disclosing work product to a company's independent

auditor can waive work-product protection.  (Mot. at 13–14.)  But the leading view

among courts that have decided the issue is that auditors are not adversarial to

18

their clients. *Deloitte*, 610 F.3d at 139 (collecting cases); *Herrera*, 324 F.R.D. at 265–66 (S.D. Fla. 2017) (same). Even the main case Plaintiffs cite, *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113 (S.D.N.Y. 2002), "has been almost uniformly rejected as adopting far too restrictive of a view regarding the circumstances under which a waiver can occur". *In re Weatherford Int'l Sec. Litig.*, 2013 WL 12185082 (S.D.N.Y. Nov. 19, 2013) (quotation marks and citation omitted).

Here, KPMG was not adversarial, and in fact its interests were aligned with the AAC, since they both sought to determine whether Anadarko had inappropriately accounted for the Shenandoah project. *See Berry*, 2011 WL 825742, at *7 ("[A]n auditor and an investigative committee of a corporate client have aligned, not adversarial, interests because an auditor's fiduciary duty to its client requires it to advise its client to restate its financial statements upon discovery of wrongdoing."). This conclusion—and the further conclusion that disclosing materials to KPMG did not substantially increase the likelihood adverse parties would obtain the material—is also supported by the fact Anadarko's engagement letters with KPMG prohibited KPMG from disclosing Anadarko's confidential information without Anadarko's consent, except in specified instances (*e.g.*, in responding to a subpoena). (*See* Exs. D, E.) And while Plaintiffs assert that NRF implicitly "acknowledg[ed]" waiver by deciding to show, rather than give, KPMG a draft of the SEC presentation (Mot. at 4), it is plain that this could not constitute a concession, as showing a document is equivalent to providing it

19

for waiver purposes.  Instead, as the above cases demonstrate, sharing work product with KPMG would not and did not waive work-product protection.

As to JPM, Plaintiffs do not even argue it was Anadarko's adversary—nor could they plausibly do so, since JPM and Anadarko worked together on the September 2016 offering of Anadarko securities.  Instead, Plaintiffs assert, without any support, that disclosing the status of the investigation and preliminary conclusions to JPM "increased the likelihood that disclosure could be made to adversaries".  (Mot. at 13.)  But it is difficult to imagine how this could constitute waiver, because for securities offerings such as this, disclosures are made by the *issuer* of the securities—here, Anadarko.  15 U.S.C. § 77f(a); *see also* Ex. F (registration statement signed only by Anadarko).  To be sure, JPM could have faced liability if those disclosures were false or misleading, *see, e.g.*, 15 U.S.C. § 77k(a)(5), but JPM had no obligation to make any separate or different disclosures, and it is inconceivable that JPM would make disclosures separate from the public filing absent a legal obligation to do so.  Anadarko's discussion with JPM therefore does not provide a basis for finding waiver.

## IV.    Appointment of a Special Master

Plaintiffs state that a special master is unnecessary but, should the Court appoint one, Defendants should bear all costs.  (Mot. at 16.)  Defendants agree that a special master is unlikely to be necessary, given that Plaintiffs' challenge of waiver with respect to a large number of investigation-related documents does not require a review of Defendants' privilege log or the documents identified therein.

If the Court determines that waiver has occurred, Defendants propose that the parties meet and confer to determine which documents fall within the scope of the waiver before a Special Master is appointed. Defendants agree that costs of a Special Master should be shifted to the prevailing party.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to compel in its entirety.

Dated:  May 4, 2022        Respectfully submitted,

*/s/ Daniel Slifkin*        
**CRAVATH, SWAINE & MOORE LLP**
Daniel Slifkin (*pro hac vice*)
Benjamin Gruenstein (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
dslifkin@cravath.com
bgruenstein@cravath.com
lrosenberg@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants and Non-Parties*
*Eric Mullins, Kevin Chilton and Mark*
*McKinley*

## <u>CERTIFICATION OF WORD COUNT</u>

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4,994 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: May 4, 2022

<u>/s/ Daniel Slifkin</u>
Daniel Slifkin

## CERTIFICATE OF SERVICE

I certify that on May 4, 2022 I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: May 4, 2022

*/s/ Daniel Slifkin*
Daniel Slifkin