TAB 10

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576 <br><br> District Judge Charles R. Eskridge III <br><br> CLASS ACTION |

## DEFENDANTS' MOTION TO RECONSIDER OR, IN THE ALTERNATIVE, CERTIFY FOR INTERLOCUTORY APPEAL THE COURT'S ORDER COMPELLING PRODUCTION OF INVESTIGATION DOCUMENTS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... ii

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF FACTS ................................................................. 3

STATEMENT OF ISSUES ................................................................ 6

APPLICABLE LEGAL STANDARDS .................................................. 6

NATURE AND STAGE OF THE PROCEEDINGS .................................. 7

ARGUMENT .................................................................................. 8

I.    The Court Should Reconsider Its Ruling Because Defendants Did Not Waive Privilege by Referencing the SEC Termination Letter in Depositions ................. 9

    A.    Defendants Have Not—and Will Not—Use the Termination Letter As a Sword ............................................................... 9

    B.    The Court's Finding of Broad Subject-Matter Waiver Is Disproportionate to the Nature of the Waiver ............................................. 12

II.    Alternatively, the Court Should Certify Its Order to the Fifth Circuit to Consider the Court's Holdings on Waiver and Its Scope ........................................ 15

    A.    The Order Involves Controlling Questions of Law .................................... 15

    B.    There Are Substantial Grounds for a Difference of Opinion About the Rulings in the Order ............................................................. 17

    C.    An Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation ....................................................... 18

CONCLUSION ............................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austin v. Kroger Tex., L.P.*, 864 F.3d 326 (2017) ............................................................ 6

*Cazorla v. Koch Foods of Miss., LLC*,
2015 WL 3970606 (S.D. Miss. June 30, 2015) ............................................ 17

*DataTreasury Corp. v. Wells Fargo & Co.*,
No. 2:06-cv-72, 2009 WL 10679940 (E.D. Tex. Nov. 13, 2009) ................................ 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .............................. 7

*Doe 1 v. Baylor University*,
335 F.R.D. 476 (W.D. Tex. 2020) ...................................................... passim

*Frye v. Anadarko Petroleum Corp.*,
No. 4:17-cv-02289 (S.D. Tex.) ...................................................... 4

*Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) ............................................. 7, 18

*In re Cent. La. Grain Co-op., Inc.*, 489 B.R. 403 (W.D. La. 2013) .................................. 17

*In re Cirrus Logic, Inc.*, No. A-07-CA-212-SS,
2008 WL 4065925 (W.D. Tex. Aug. 28, 2008) .......................................... 10

*In re County of Erie*, 546 F.3d 222 (2d Cir. 2008) .................................................. 11

*In re Delta Produce*, No. BR 12-50073-A998,
2013 WL 3305537 (W.D. Tex. June 28, 2013) .................................... 17, 18

*In re Grand Jury Proc.*, 219 F.3d 175 (2d Cir. 2000) ....................................... 12

*In re Itron, Inc.*, 883 F.3d 553 (5th Cir. 2018) .................................... 9, 10, 11, 17

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ........................................... 17

*John Doe Co. v. United States*, 350 F.3d 299 (2d Cir. 2003),
*as amended* (Nov. 25, 2003) ........................................................ 12

*Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.*,
No. 6:19-cv-0059, 2020 WL 6803252 (E.D. Tex. Apr. 28, 2020) .............................. 14

*Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009) ....................................... 16

ii

*Pfeiffer v. Ajamie PLLC*, No. 4:19-cv-02760,
    2020 WL 13420831 (S.D. Tex. Jan. 27, 2020) ............................................... 6

*Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718 (N.D. Tex. 2006) ............................ 16, 17

*SEC v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006) ....................................... 13, 14

*Shih v. Blue Cross & Blue Shield of Tex. Inc.*,
    No. 4:21-CV-01530, 2022 WL 444476 (S.D. Tex. Feb. 10, 2022) ............................... 6

*Tesco Corp. v. Weatherford Int'l, Inc.*,
    722 F. Supp. 2d 755 (S.D. Tex. 2010) ............................................. 7, 15, 16

*United States v. White*, 887 F.2d 267 (D.C. Cir. 1989) (Ginsburg, J.) ............................ 12

*Varel v. Banc One Cap. Partners, Inc.*,
    No. 3:93-cv-1614, 1997 WL 86457 (N.D. Tex. Feb. 25, 1997) ................................. 13

*Willy v. Admin. Rev. Bd.*, 423 F.3d 483 (5th Cir. 2005) ..................................... 9

*Zamir v. Bridgepoint Educ., Inc.*, No. 15-cv-408,
    2018 WL 1258108 (S.D. Cal. Mar. 12, 2018) ............................................ 10

**Statutes & Rules**

28 U.S.C. § 1292(b) ...................................................... 1, 7, 17, 18

Fed. R. Civ. P. 54(b) ......................................................... 6

Fed. R. Evid. 502(a) .......................................................... 13

**Other Authorities**

Securities Act Release No. 5310,
    http://www.sec.gov/divisions/enforce/wells-release.pdf ................................ 3, 10

Defendants respectfully move the Court to reconsider its March 31, 2023 order compelling production of documents (ECF No. 173 ("Order")) or, in the alternative, certify the Order to the U.S. Court of Appeals for the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

## PRELIMINARY STATEMENT

The Court's Order proceeds from the mistaken premise that Defendants seek to rely on the Securities and Exchange Commission's termination letter ("Termination Letter") to show the whistleblower allegations were unfounded or false. (Order at 7.) Defendants have never relied on the Termination Letter (or any privileged communications or protected work product) before a decisionmaker in support of a legal claim or defense—a prerequisite to finding that a party has put privileged material "at issue." Nor could they, as the Termination Letter makes abundantly clear that it is not evidence of exoneration. Rather, in response to Plaintiffs' repeated invoking of Lea Frye's allegations and letter to the SEC in their Complaint, Defendants briefly asked two witnesses about the SEC's resolution of its investigation into such allegations. Defendants have never used any of this deposition testimony before the Court, nor will they present this testimony to the jury or argue that the SEC's declination is evidence that Plaintiffs' or Ms. Frye's allegations are false. In short, Defendants have not used the Termination Letter as a sword, nor will they.

Even if waiver did result from this limited questioning about a non-privileged document, there is no basis to rule that such inadvertent waiver extends to the entire subject matter of the Audit Committee's internal investigation, particularly work

product reflecting legal conclusions and legal advice from counsel to the Committee—which Plaintiffs contend the Order covers.  Although companies routinely conduct internal investigations and present findings in response to inquiries from governmental agencies, Defendants are not aware of—and Plaintiffs have failed to cite—a single case that supports a finding of broad subject-matter waiver arising from asking deposition questions about an agency's resolution of its own inquiry and the non-privileged letter in which that conclusion was memorialized.

    The Order raises two discrete but important legal questions that demand immediate appellate review should the Court decline to reconsider:  (1) whether asking limited questions in deposition about a letter from the SEC terminating its investigation of a company results in waiver as to the company's privileged internal investigation, even if the company has stipulated it will not use the testimony, the SEC's termination letter or the findings of the internal investigation in its defense against liability; and (2) whether these deposition questions and a company's disclosures of information about its investigation to third parties—which have not been deemed to be waivers of attorney-client privilege or attorney work product—compel subject-matter waiver of the attorney-client privilege and work product protection related to the entirety of the internal investigation.  Prompt review of the Court's ruling will allow the Fifth Circuit to clarify the nature and scope of potential "at issue" waiver of privilege and work product protection arising from an internal investigation.  Appellate review will also materially advance this litigation; the parties dispute the scope and impact of the Order, and

2

certification will avoid a protracted battle on these issues, allowing the case to proceed to summary judgment and, if denied, to trial.

## STATEMENT OF FACTS

In April 2016, Lea Frye, an Anadarko employee, sent the company a letter containing allegations she intended to submit to the SEC.  (ECF No. 55 ¶ 73.) Anadarko's Audit Committee hired Norton Rose Fulbright as independent counsel to investigate those allegations.  Norton Rose provided limited, non-privileged information to KPMG relevant to its role as Anadarko's independent auditor.  (ECF No. 125-1 ¶ 6.) Anadarko's general counsel also had a brief phone call with counsel for J.P. Morgan, an underwriter in a stock offering occurring at the time, to discuss the status of the investigation.  (ECF. No. 122-1.)

Norton Rose also alerted the SEC to Ms. Frye's allegations, and Ms. Frye herself submitted a letter to the SEC ("the whistleblower letter").  At the conclusion of Norton Rose's internal investigation, Norton Rose presented the SEC with its findings. In January 2017, the SEC sent Norton Rose a "Termination Letter" in which the SEC stated that it had "concluded the investigation" into Anadarko and that "[b]ased on the information [it] ha[d] as of th[at] date, [the SEC] did not intend to recommend an enforcement action."  (ECF No. 122-5.)  That letter did not express any findings on the merits of Ms. Frye's allegations and expressly noted that it was "in no way [to] be construed as indicating that [Anadarko] has been exonerated or that no action may ultimately result from the staff's investigation."  (*Id.* (quoting Securities Act Release No. 5310, http://www.sec.gov/divisions/enforce/wells-release.pdf).)

3

In August 2020, Plaintiffs filed an Amended Complaint alleging that Anadarko misled investors as to the commercial viability of Shenandoah. (ECF No. 55.) The Amended Complaint is explicitly premised on Plaintiffs' "analysis of . . . recently unsealed whistleblower materials filed in *Frye v. Anadarko Petroleum Corp.*, No. 4:17-cv-02289 (S.D. Tex.)." (*Id.* ¶¶ 1 n.1, 10.) Among the unsealed materials was a redacted version of Ms. Frye's whistleblower letter. The Amended Complaint borrows heavily from Ms. Frye's allegations and describes the circumstances surrounding the creation of the whistleblower letter, including how Ms. Frye submitted the letter to the SEC and resigned from Anadarko (*id.* ¶¶ 6, 73-78), and how counsel for the Audit Committee investigated her allegations (*id.* ¶ 78).

During discovery in this action, Defendants produced to Plaintiffs all documents that had been given to the SEC, all communications with the SEC, and the presentation Norton Rose made to the SEC during the agency's investigation into the allegations. Defendants also produced the Termination Letter, which was responsive to Plaintiffs' requests. Defendants, KPMG, and Norton Rose withheld, or produced as redacted, privileged communications and work product, and directors on the Audit Committee withheld their privileged communications with Norton Rose.

During the depositions of two of the Lead Plaintiffs, and prior to class certification, Defendants briefly asked about the Termination Letter. In one deposition, after the deponent testified as to his understanding of the whistleblower letter that is central to Plaintiffs' complaint (ECF No. 125-2 (Boyle Tr.) 72:4-74:3), Defendants asked

4

whether the Termination Letter changed the deponent's view as to the allegations in the complaint; he said that it did not:

> Q. Does that change your view as to any of the allegations in Iron Workers' complaint?
> A. No.
> Q. Why not?
> A. The remainder of the letter has a portion that says, Must in no way be construed as indicating that the party has been exonerated, or that no action may ultimately result from the staff's investigation."

(*Id.* 76:9-19.)  In another, Defendants asked about the Termination Letter after the deponent testified that the SEC had "upheld" the contents of the whistleblower letter, which it had not:

> Q. What's your understanding of what happened with the whistleblower claims?
> A. I believe they were upheld by the SEC.
>
> . . .
>
> Q. Do you understand this letter to be an indication that the SEC has upheld the whistleblower claims against Anadarko?
> A. I understand it to reflect that it can't be construed that there is no further action to arise.
> Q. But you previously said that you understood the Securities and Exchange Commission had upheld claims against Anadarko related to the whistleblower claims, and I am asking where in this letter do you see an indication that the claims have been upheld?
> A. Well, the phrase upheld is not used in the letter.

(ECF No. 125-3 (Younger Tr.) 112:21-24, 116:7-20.)

Defendants have never relied upon or even referenced this deposition testimony or the Termination Letter in any pleading or motion (other than responding to the motion to compel).  Nor have Defendants raised the adequacy of the SEC or internal

5

investigation, or any advice of counsel related to either investigation, in their defense.

Defendants recently filed for summary judgment in this action, in which they did not

mention either the SEC or internal investigation, the fact the SEC did not bring charges,

or any reliance on Norton Rose's counsel in their defense.  (ECF No. 180.)

## STATEMENT OF ISSUES

1. Whether the Court should reconsider its holding on waiver because Defendants did not rely on privileged materials and have not—and will not— put the SEC Termination Letter "at issue" before a decisionmaker.

2. Whether the Court should reconsider its holding on the scope of any waiver because the deposition questions do not compel subject-matter waiver, particularly as to work product.

3. Whether the Court should certify its Order for interlocutory appeal because the existence and scope of waiver (if any) in these circumstances present controlling questions of law for which there are substantial differences of opinion, and an interlocutory appeal will materially advance the litigation.

## APPLICABLE LEGAL STANDARDS

A motion to reconsider an interlocutory ruling is governed by Federal Rule

of Civil Procedure 54(b).  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (2017).  A

district court may reconsider an order "for any reason [a court] deems sufficient," *id.*,

"even in the absence of new evidence or an intervening change in or clarification of the

substantive law," *Pfeiffer v. Ajamie PLLC*, No. 4:19-cv-02760, 2020 WL 13420831, at *1

(S.D. Tex. Jan. 27, 2020).  Moreover, the "[c]lassic reasons for granting reconsideration"

include that the order rests upon an erroneous factual basis.  *Shih v. Blue Cross & Blue*

*Shield of Tex. Inc.*, No. 4:21-CV-01530, 2022 WL 444476, at *1 (S.D. Tex. Feb. 10,

2022) (noting that reconsideration is appropriate if "the judgment is based upon a manifest error of fact or law").

A district court may certify an order for interlocutory appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 765-66 (S.D. Tex. 2010). The Fifth Circuit has held that an appeal from an order ruling that attorney-client privilege has been waived is permissible under § 1292(b). *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1096 (5th Cir. 1970).

## NATURE AND STAGE OF THE PROCEEDINGS

Over a year ago, Plaintiffs filed a motion to compel privileged communications between the Audit Committee and Norton Rose, as well as documents withheld at least on the basis of work product protection. (ECF No. 116-11.) The parties subsequently conducted and completed fact and expert discovery. Defendants moved for summary judgment and the parties filed motions to exclude expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), on March 16, 2023. The Court heard argument on the motion to compel on March 17, 2023, and granted Plaintiffs' motion to compel on March 31, 2023, ruling that Defendants sought to rely on the Termination Letter—a non-privileged document—by asking about it during two depositions, thereby waiving attorney-client privilege and work product protection over the Audit Committee's internal investigation. (Order at 4-8.) The Court found subject-matter waiver as to both work product and attorney-client privilege because "[t]he record

7

establishes that a significant portion of confidential communications between Norton Rose and Anadarko was apparently revealed to the SEC, KPMG, and JP Morgan." (*Id.* at 9.) Because of those disclosures, and "[a]lso in consideration of Anadarko's use of privilege as a sword and a shield," the Court concluded that "[f]airness thus dictates that waiver extend to the entire subject matter of the AAC investigation." (*Id.*)

## ARGUMENT

The Court's ruling proceeds from the incorrect premise that Defendants seek to rely on the Termination Letter or the SEC's decision to close its investigation to support their defense against Plaintiffs claims. (*Id.* at 7.) This is simply not the case, and apart from a handful of deposition questions regarding the Termination Letter, there is nothing in the pages and pages of pleadings, motions and discovery responses put forth by Defendants in this action that suggests otherwise. Asking limited questions in two depositions about a non-privileged document does not amount to putting at issue the entire privileged subject matter of a different internal investigation.

If the Court decides not to modify or vacate the Order, interlocutory appeal is warranted because the Order contains multiple controlling questions of law for which there are substantial grounds for a difference of opinion. Interlocutory review would enable the Fifth Circuit to clarify the law on potential waiver of privilege and work product protection in the context of governmental investigations and would also expedite the resolution of this case by avoiding a protracted battle on the scope and impact of the Order.

I.        **The Court Should Reconsider Its Ruling Because Defendants Did Not Waive Privilege by Referencing the SEC Termination Letter in Depositions**

The Order rests both upon an erroneous factual assumption and an erroneously broad expansion of the type of conduct that can create a waiver of privilege as well as the resulting scope of such waiver. *First*, Defendants have not used—and will not use—the SEC investigation or Termination Letter as a "sword." *Second*, even if Defendants' reference to the SEC's resolution of its own investigation inadvertently placed such resolution "at issue," any waiver should be limited to the materials actually disclosed to the SEC, which Defendants already have produced.

A.        **Defendants Have Not—and Will Not—Use the Termination Letter As a Sword**

Under the sword-and-shield doctrine, if a party "uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005). This includes by "affirmatively relying on attorney-client communications to support an element of a legal claim or defense—thereby putting those communications 'at issue' in the case." *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018). Here, the Court correctly recognized that Defendants do not seek to use any *privileged* material at all. They have not cited any of Norton Rose's legal advice or investigatory conclusions nor will they seek to introduce such evidence at trial.

Instead, the Court's holding is premised on the finding that Anadarko seeks to rely on this letter "to indicate that the whistleblower's allegations were unfounded or false because the information uncovered upon investigation, when presented to the SEC,

resulted in it choosing *not* to pursue an enforcement action." (Order at 7-8.) But, as set forth in Defendants' briefing on the motion to compel (ECF No. 124 at 15-17), Defendants unequivocally are not relying on the Termination Letter for this purpose. Nor could Defendants do so in light of the text of the letter itself expressly disclaiming any conclusions regarding the termination of its investigation. (ECF No. 122-5 (citing Securities Act Release No. 5310); *see also In re Cirrus Logic, Inc.*, No. A-07-CA-212-SS, 2008 WL 4065925, at *5 (W.D. Tex. Aug. 28, 2008) ("[T]he SEC's decision to take no enforcement action is not a determination on the merits of the backdating allegations in any sense."); *Zamir v. Bridgepoint Educ., Inc.*, No. 15-cv-408, 2018 WL 1258108, at *17 (S.D. Cal. Mar. 12, 2018) ("[A]n SEC letter indicating the SEC does not intend to pursue enforcement action cannot be construed as indicating that a party has been exonerated.").) For the avoidance of doubt, Defendants stipulate that they will not introduce or rely on the Termination Letter at trial so long as the Court does not find a privilege waiver. *See In re Itron, Inc.*, 883 F.3d at 557 (granting a *mandamus* petition vacating a district court's order finding waiver, noting that the plaintiff "had stipulated that 'so long as the Court does not find a privilege waiver, [it] will not affirmatively use any privileged information against Defendants in this case'").

Consequently, the Court's reliance on *Doe 1 v. Baylor University*, 335 F.R.D. 476 (W.D. Tex. 2020), is misplaced. There, in response to several Title IX lawsuits alleging that it mishandled reports of sexual assault, *id.* at 489, Baylor relied upon its own internal investigation and the resulting reforms "to rebut[] the Plaintiffs'

10

assertions that [Baylor University] failed to implement adequate Title IX policies, or intentionally adopted policies or customs it knew were inadequate, or was deliberately indifferent to sexual assaults it was aware of," *id.* at 490-92. Even *after* the judge "specifically warned" Baylor that affirmatively relying upon its own investigation "as a part of a substantive defense" would lead to waiver, Baylor continued to invoke the investigation and resulting reforms in its answers as well as in a motion to dismiss. *Id.* Unlike in *Baylor*, Defendants do not plead or argue the Termination Letter to substantively rebut the whistleblower allegations, much less use the existence or results of their own privileged investigation as a defense to Plaintiffs' claims. Relatedly, the Termination Letter makes no mention of the internal investigation, and there is no evidence that the SEC's declination was based entirely on the findings of the internal investigation.

       These limited circumstances in which the Termination Letter came up cannot result in waiver. A sword-and-shield waiver requires a party to rely on privileged materials "to support an element of a legal claim or defense." *In re Itron*, 883 F.3d at 558. As the Second Circuit highlighted in *In re County of Erie*—a case cited favorably by the Fifth Circuit in *Itron*—fairness concerns underlying the sword-and-shield doctrine only arise "when a party uses an assertion of fact *to influence the decisionmaker* while denying its adversary access to privileged material potentially capable of rebutting the assertion." 546 F.3d 222, 229 (2d Cir. 2008) (emphasis added) (citation omitted). Such concerns do not arise for assertions made to an adversary, as waiver is "premised on the

*unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *John Doe Co. v. United States*, 350 F.3d 299, 303-06 (2d Cir. 2003), *as amended* (Nov. 25, 2003).

Plaintiffs have suffered no prejudice from Defendants' deposition questioning. Defendants asked one of Plaintiffs' representatives about whether the fact that the SEC did not bring an action against Anadarko impacted his view as to Plaintiffs' own allegations. He unequivocally testified that it did not. Defendants asked the other Plaintiff representative whether the letter indicated that the SEC "upheld" the allegations, as the representative had testified earlier in his deposition, and he simply responded that the letter did not say "upheld." In such a case, where "a defendant neither reveals substantive information, nor prejudices the [other party's] case, nor misleads a court by relying on an incomplete disclosure, fairness and consistency do not require the inference of waiver." *In re Grand Jury Proc.*, 219 F.3d 175, 183 (2d Cir. 2000) (quoting *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) (Ginsburg, J.)).

**B.    The Court's Finding of Broad Subject-Matter Waiver Is Disproportionate to the Nature of the Waiver**

The Court's finding of waiver over all work product and legal advice surrounding Norton Rose's internal investigation is unwarranted given Defendants' limited use of the SEC's letter. In defining the scope of waiver, courts look to "the context of the waiver and the prejudice to the other party that limiting the waiver would cause." *Baylor*, 335 F.R.D. at 497 (citation omitted). For work product, waiver is typically limited to the documents actually disclosed, and "a wholesale subject-matter

12

waiver of work-product protection should only be found when it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed." *Varel v. Banc One Cap. Partners, Inc.*, No. 3:93-cv-1614, 1997 WL 86457, at *3 (N.D. Tex. Feb. 25, 1997) (citation and internal quotation marks omitted). This can include "when the facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to other facts relevant to the subject matter." *SEC v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006) (citation omitted). Under Federal Rule of Evidence 502(a), subject-matter waiver is "limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Fed. R. Evid. 502 explanatory note.

Even if Defendants seek to use the SEC's declination to prove that Ms. Frye's allegations were unfounded—and they do not—any waiver would be limited to the materials actually disclosed to the SEC because those would be the materials that "ought in fairness to be considered together" with the Termination Letter. *Id.* And Plaintiffs already have access to those documents. They have long had Norton Rose's presentation to the SEC, along with all documents provided to the SEC, and all communications between Norton Rose and the SEC. They also have everything they need to argue that the SEC's decision was based an insufficient factual record, as they have employed proper discovery methods—including document requests that have led to the production of millions of pages of documents and depositions of over 20 fact

13

witnesses—to learn what facts might not have been part of Norton Rose's presentation to the SEC. In circumstances such as these, there is no basis to invade the protection afforded to attorney work product—and certainly not opinion work product, which Plaintiffs have taken the position during meet-and-confers is covered by the Order. *See Brady*, 238 F.R.D. at 444 ("[I]t would not be unfair to limit the waiver to the actual documents disclosed because Brady is not being denied full access to the facts of the investigation."); *Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.*, No. 6:19-cv-0059, 2020 WL 6803252, at *4 (E.D. Tex. Apr. 28, 2020) (subject-matter waiver due to sword and shield use of privileged document did not extend to opinion work product, as "such opinion work product forms the heart of the work-product doctrine, deserving of stalwart protection"); *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, 2009 WL 10679940, at *3 (E.D. Tex. Nov. 13, 2009) (waiver due to introduction of privileged memorandum in a deposition did not extend to opinion work product because such compelled disclosure "would not level the playing field, but rather, would give plaintiff an unjustified advantage" (citation omitted)).

Nor is there a basis for Plaintiffs to compel disclosure of communications between the Audit Committee and counsel, which Plaintiffs also contend are covered by the Order. Unlike in *Baylor*, neither the sufficiency of Norton Rose's internal investigation, nor any legal advice related to that investigation, is at issue in Plaintiffs' claims or Defendants' defense. *See Baylor*, 335 F.R.D. at 498 ("Baylor's defense is founded on the facts and advice it and its Regents received from Pepper Hamilton. For a

14

jury to decide whether Baylor's actions were reasonable, the jury has to know the facts
and advice Baylor relied on, so it can determine whether Baylor's reliance on those facts
and advice was reasonable.").  Neither the quality of Norton Rose's investigation into the
allegations of securities law violations nor its resulting legal advice has any relevance to
what Plaintiffs must show to establish liability, *i.e.*, facts demonstrating that Defendants
actually violated the securities laws.  Plaintiffs have ample access to such facts without
invading the legal opinions and other privileged information contained within
communications between Norton Rose and the Audit Committee.

II.  **Alternatively, the Court Should Certify Its Order to the Fifth Circuit to Consider the Court's Holdings on Waiver and Its Scope**

In the event the Court decides not to modify or vacate its Order,
certification is appropriate in order to resolve important questions of privilege waiver in
the context of internal corporate investigations.  *First*, this Order raises two controlling
questions of law, meaning it has the potential to have some impact on the course of the
litigation.  *Tesco*, 722 F. Supp. 2d at 766.  *Second*, there are substantial grounds for a
difference of opinion as to the Court's rulings on waiver and on scope, as they are in
conflict with well-established case law.  *Third*, certification of these questions to the
Court of Appeals will materially advance this litigation.

A.  **The Order Involves Controlling Questions of Law**

The Order implicates two controlling questions regarding the nature and
extent of the concept of "at issue" or "sword-and-shield" waiver:  (1) whether asking
limited questions in deposition about a letter from the SEC terminating its investigation

15

of a company results in waiver as to the company's privileged internal investigation, even if the company has stipulated it will not use the testimony, the SEC's termination letter or the findings of the internal investigation in its defense against liability; and (2) whether these deposition questions and a company's disclosures of information about its investigation to third parties—which have not been deemed to be waivers of attorney-client privilege or attorney work product—compel subject-matter waiver of the attorney-client privilege and work product protection related to the entirety of the internal investigation.

These are controlling questions of law, as they will "clearly have an effect on the future course of the litigation." *Id.*; *see also Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110-11 (2009) (noting that this prong is "most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases"). Whether a ruling involves a controlling question of law is "'closely tied' to the requirement that the appeal will materially advance the ultimate termination of the litigation." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (citation omitted). Affirmance on these issues will result in document productions by Defendants and third parties, over which there are likely to be disputes as to scope. Reversal, by contrast, will pave the way for immediate resolution of Defendants' motion for summary judgment, which may end the case entirely.

B.      **There Are Substantial Grounds for a Difference of Opinion About the Rulings in the Order**

The Court's holding on waiver is in conflict with the clear holdings of several appellate courts, including the Fifth Circuit. "[S]ubstantial grounds for difference of opinion exist where 'a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue.'" *In re Delta Produce*, No. BR 12-50073-A998, 2013 WL 3305537, at *3 (W.D. Tex. June 28, 2013) (quoting *In re Cent. La. Grain Co-op., Inc.*, 489 B.R. 403, 412 (W.D. La. 2013)). A disagreement could be considered substantial under § 1292(b) if the trial court merely "believe[s] that a reasonable appellate judge could vote for reversal of the challenged order." *Flowserve*, 444 F. Supp. 2d at 723 (citation omitted).

As Defendants explained above, there are numerous bases for a difference of opinion as to the Court's holdings on both waiver and the scope of waiver. Certifying the Order will allow the Fifth Circuit to clarify the "at issue" doctrine, which it has acknowledged it has had the rare opportunity to address, leading to "less than perfect 'consistency of outcomes.'" *In re Itron*, 883 F.3d. at 568. Given the potential for such a determination to impact any corporate client that has undertaken an internal investigation prior to litigation, the disagreement illustrated above about the likelihood and scope of inadvertent waiver is plainly substantial. *See id.* (noting that correcting district court erroneous privilege determination was appropriate in part due to "the issue's 'importance beyond the immediate case'" (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008))); *Cazorla v. Koch Foods of Miss., LLC*, 2015 WL 3970606, at *3 (S.D.

17

Miss. June 30, 2015) ("But the Court has found little authoritative guidance on this question, and its resolution will have an extraordinarily significant impact on this litigation and potentially others.").

### C. An Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation

If the Court's Order goes unchallenged, there will be significant disputes about its scope. *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970) ("Review under § 1292(b) is available where decision on an issue would affect the scope of the evidence in a complex case, even short of requiring complete dismissal."); *see also In re Delta Produce*, 2013 WL 3305537, at *3 ("This analysis turns on whether '[a]n immediate appeal would conserve judicial resources and spare the parties from possibly needless expense.'" (citation omitted)).

The Order itself recognizes that "legitimate disputes may exist about specific documents that assertedly wouldn't fall under this waiver," and noted that "appointment of a Special Master may be appropriate" to review those documents. (Order at 9.) The Order does not state whether waiver covers opinion work product, or describe the types of documents that could still be subject to protection. Even in *Baylor*, the district court ruled that the subject-matter waiver would not require disclosure of all documents. *See* 335 F.R.D. at 499, 501 (finding whole categories of documents not discoverable, such as outside counsel's internal emails and communications, "legal research, materials [counsel] prepared to aid in conducting witness interviews (witness binders, chronologies, etc.), and notes taken by attorneys during interviews," and noting

18

certain instances in which "attorney commentary" would need to be "redacted"). Beyond debates about the scope of the Order itself, the Order already has required amendment of the schedule in this case. The parties have agreed to stay summary judgment and *Daubert* briefing pending resolution of these issues. They have also agreed to revisit the possibility of supplementing expert disclosures, which may spur another round of *Daubert* briefing.

By contrast, promptly certifying the Order to the Fifth Circuit Court of Appeals will decisively settle the issue, and allow the case to proceed efficiently.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its March 31, 2023 Order or, in the alternative, certify the March 31, 2023 Order for interlocutory appeal to the Fifth Circuit Court of Appeals.[1]

---

[1] Defendants have attached to this motion two proposed orders addressing each form of relief.

Dated:  April 27, 2023          Respectfully submitted,

*/s/ Kevin J. Orsini*
**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Benjamin Gruenstein (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
bgruenstein@cravath.com
lrosenberg@cravath.com


**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

In accordance with Rule 17(a) of Your Honor's Court Procedures, I hereby certify that counsel for Defendants has conferred with Plaintiffs' counsel regarding their position on this Motion. Counsel for Plaintiffs have advised that they oppose this Motion.

Dated: April 27, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## <u>CERTIFICATION OF WORD COUNT</u>

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4,998 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: April 27, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## CERTIFICATE OF SERVICE

I certify that on April 27, 2023, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: April 27, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  | § | |
|---|---|---|
|  | § | |
|  | § | CIVIL ACTION NO. |
| IN RE: ANADARKO | § | 4:20-cv-00576 |
| PETROLEUM | § | |
| CORPORATION | § | |
| SECURITIES | § | |
| LITIGATION | § | JUDGE CHARLES ESKRIDGE |
|  | § | |
|  | § | |

### [PROPOSED] ORDER GRANTING RECONSIDERATION

On March 31, 2023, the Court issued an Opinion and Order Compelling Production of Documents, Dkt. 173, granting Plaintiffs' Motion to Compel Documents Concerning Anadarko Audit Committee's Purported Investigation, Dkt. 122. On April 27, 2023, Defendants filed a Motion to Reconsider or, in the Alternative, Certify for Interlocutory Appeal the Court's Opinion and Order Compelling Production of Documents. Dkt. [●] ("Motion for Reconsideration or Certification"). On [●] [●], 2023, Plaintiffs opposed the Motion for Reconsideration or Certification. Dkt. [●]. On [●] [●], 2023, Defendants filed a reply in further support of the Motion for Reconsideration or Certification. Dkt. [●].

Upon consideration of Defendants' Motion for Reconsideration or Certification, it is hereby ORDERED that the Motion for Reconsideration or Certification is GRANTED in part and DENIED in part as moot; the Opinion and Order Compelling Production of Documents is VACATED; Plaintiffs' Motion to Compel Documents Concerning Anadarko Audit Committee's Purported Investigation is DENIED; and Defendants' request for certification is DENIED as moot.

SO ORDERED.

Signed on _____, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>4:20-cv-00576<br><br>JUDGE CHARLES ESKRIDGE |

## [PROPOSED] ORDER PURSUANT TO 28 U.S.C. § 1292(B)

On March 31, 2023, the Court issued an Opinion and Order Compelling Production of Documents, Dkt. 173, granting Plaintiffs' Motion to Compel Documents Concerning Anadarko Audit Committee's Purported Investigation, Dkt. 122. On April 27, 2023, Defendants filed a Motion to Reconsider or, in the Alternative, Certify for Interlocutory Appeal the Court's Opinion and Order Compelling Production of Documents. Dkt. [●] ("Motion for Reconsideration or Certification"). On [●] [●], 2023, Plaintiffs opposed the Motion for Reconsideration or Certification. Dkt. [●]. On [●] [●], 2023, Defendants filed a reply in further support of the Motion for Reconsideration or Certification. Dkt. [●].

Upon consideration of Defendants' Motion for Reconsideration or Certification, it is hereby ORDERED that the Motion for Reconsideration or Certification is DENIED in part and GRANTED in part. The Court hereby denies Defendants' request for reconsideration and certifies its Opinion and Order Compelling Production of Documents, Dkt. 173, for interlocutory appeal under 28 U.S.C. § 1292(b). The Court is of the opinion that its Opinion and Order Compelling Production of Documents involves controlling questions of law as to which there are substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Specifically, the questions are: (1) whether asking limited questions in deposition about a letter from the SEC terminating its investigation of a company results in waiver as to the company's

privileged internal investigation, even if the company has stipulated it will not use the testimony, the SEC's termination letter or the findings of the internal investigation in its defense against liability; and (2) whether these deposition questions and a company's disclosures of information about its investigation to third parties—which have not been deemed to be waivers of attorney-client privilege or attorney work product—compel subject-matter waiver of the attorney-client privilege and work product protection related to the entirety of the internal investigation.

SO ORDERED.

Signed on _____, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge

2