TAB 14

No. _____

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

IN RE ANADARKO PETROLEUM
CORPORATION, R.A. WALKER, ROBERT G.
GWIN, ROBERT P. DANIELS AND ERNEST A.
LEYENDECKER,

*Petitioners.*

On Petition for a Writ of Mandamus to
the United States District Court
for the Southern District of Texas,
Docket No. 4:20-CV-576.

Honorable Charles R. Eskridge, III

**PETITION FOR WRIT OF MANDAMUS**

*Cravath, Swaine & Moore LLP*
Kevin J. Orsini
Lauren M. Rosenberg
825 Eighth Avenue
New York, NY 10019

*Shipley Snell Montgomery LLP*
George T. Shipley
712 Main Street, Suite 1400
Houston, TX 77002

*Counsel for Petitioners*

## CERTIFICATE OF INTERESTED PERSONS

*In re Anadarko Petroleum Corporation Securities Litigation*, No. _____.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiffs-Respondents and Class: All persons or entities that purchased or otherwise acquired Anadarko Petroleum Corporation's publicly traded common stock between February 20, 2015 and May 2, 2017, inclusive, and were damaged thereby; Norfolk County Council as Administering Authority of the Norfolk Pension Fund; Iron Workers Local #580 Joint Funds; Building Trades United Pension Trust Fund.

2. Counsel for Plaintiffs-Respondents: Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, California 92101 (Mark Solomon, Daniel Drosman, Rachel Jensen, Luke Brooks, Hillary Stakem); Kendall Law Group, PLLC, 3811 Turtle Creek Blvd., Suite 1450, Dallas, Texas 75219 (Joe Kendall).

3. Defendants-Petitioners: Anadarko Petroleum Corporation, an indirect wholly owned subsidiary of Occidental Petroleum Corporation; R.A. Walker; Robert G. Gwin; Robert P. Daniels; Ernest A. Leyendecker, III.

4.      Counsel for Defendants-Petitioners:  Cravath, Swaine & Moore LLP, 825 Eighth Avenue, New York, New York 10019 (Kevin Orsini, Lauren Rosenberg); Shipley Snell Montgomery LLP, 712 Main Street, Suite 1400, Houston, Texas 77002 (George Shipley).

5.      Other Entities:  Insurers of Defendants-Petitioners (National Union Fire Insurance Company of Pittsburgh, Pa., XL Specialty Insurance Company, Zurich American Insurance Company, U.S. Specialty Insurance Company, ACE American Insurance Company, American International Reinsurance Company, LTD., Freedom Specialty Insurance Company, RSUI Indemnity Company, Navigators Insurance Company, AXIS Insurance Company, QBE Insurance Corporation, Continental Casualty Company, Berkley Insurance Company, Beazley Insurance Company, Westchester Fire Insurance Company, Illinois National Insurance Company); Occidental Petroleum Corporation, a publicly held corporation that has no parent corporation.  Berkshire Hathaway Inc. indirectly owns 10% or more of the issued and outstanding shares of common stock of Occidental Petroleum Corporation.  No other publicly traded company owns more than 10% of the common stock of Occidental Petroleum Corporation.

6.      District Court Judge:  Hon. Charles R. Eskridge, III, U.S. District Judge, Southern District of Texas.

Dated:  July 21, 2023

/s/ Kevin J. Orsini
Kevin J. Orsini
*Counsel for Defendants-Petitioners*

## STATEMENT CONCERNING ORAL ARGUMENT

Defendants do not believe that oral argument is necessary to determine the issues in this petition, which seeks mandamus to correct a clearly erroneous misapplication of law and a disregard of the clearly applicable legal standards. Defendants, however, welcome oral argument if the Court finds it beneficial for any reason.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... vii

PRELIMINARY STATEMENT ...................................................................1

ISSUES PRESENTED AND RELIEF SOUGHT ...................................................5

STATEMENT OF THE CASE ....................................................................6

I.     FACTUAL BACKGROUND.........................................................................6

II.    PROCEEDINGS LEADING TO THIS MANDAMUS PETITION .............8

REASONS WHY THE WRIT SHOULD ISSUE ...................................................14

III.   DEFENDANTS HAVE NO OTHER ADEQUATE MEANS TO
      OBTAIN REVIEW..................................................................................14

IV.   DEFENDANTS' RIGHT TO MANDAMUS RELIEF IS CLEAR
      AND INDISPUTABLE BECAUSE DEFENDANTS DID NOT
      WAIVE PRIVILEGE AND WORK PRODUCT PROTECTION
      OVER ANADARKO'S AUDIT COMMITTEE INVESTIGATION. .........16

      A.   Defendants Have Not Put the SEC's Investigation or the AAC
            Investigation At Issue.........................................................................18

      B.   Even If There Were Waiver, It Should Not Extend to the Entire
            Subject Matter of the AAC Investigation............................................24

V.    MANDAMUS REVIEW IS APPROPRIATE UNDER THE
      CIRCUMSTANCES...............................................................................30

      A.   Mandamus Review Will Allow This Court to More Precisely
            Address "At Issue" Waiver and Correct Inconsistencies Among
            District Courts. ..................................................................................30

      B.   A Writ of Mandamus Would Allow This Case to Proceed
            Expeditiously to Trial.........................................................................32

CONCLUSION ......................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DataTreasury Corp. v. Wells Fargo & Co.*,
   No. 2:06-cv-72, 2009 WL 10679940 (E.D. Tex. Nov. 13, 2009) ...............28, 31

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)........................................................................................11

*Doe 1 v. Baylor Univ.*,
   320 F.R.D. 430 (W.D. Tex. 2017) ...................................................................17

*Doe 1 v. Baylor Univ.*,
   335 F.R.D. 476 (W.D. Tex. 2020) ...........................................................*passim*

*Dunn v. State Farm Fire & Cas. Co.*,
   927 F.2d 869 (5th Cir. 1991) ...........................................................................17

*Fakhoury v. O'Reilly*,
   2022 WL 909347 (E.D. Mich. Mar. 28, 2022)..................................................23

*Frye v. Anadarko Petroleum Corp.*,
   No. 4:17-cv-02289 (S.D. Tex.)..........................................................................8

*Grigson v. Farmers Grp., Inc.*,
   No. 1:17-CV-00088-LY, 2019 WL 3781439 (W.D. Tex. Aug. 12, 2019) ........25

*Hickman v. Taylor*,
   329 U.S. 495 (1947)........................................................................................31

*Hodges, Grant & Kaufmann v. United States*,
   768 F.2d 719 (5th Cir. 1985) ...........................................................................16

*Hunt v. Blackburn*,
   128 U.S. 464 (1888)........................................................................................31

*In re Application of Chevron Corp. v. 3TM Consulting, LLC*,
   No. MC H-10-134, 2011 WL 13135155 (S.D. Tex. Jan. 10, 2011)...................19

*In re Bankatlantic Bancorp, Inc. Sec. Litig.*,
  No. 07 Civ. 61542, 2010 WL 11426137 (S.D. Fla. Aug. 20, 2010) .................23

*In re Boeing Co.*,
  No. 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021) (per curiam) ..........15

*In re Cirrus Logic, Inc.*,
  No. A-07-CA-212-SS, 2008 WL 4065925 (W.D. Tex. Aug. 28, 2008) ............22

*In re County of Erie*,
  546 F.3d 222 (2d Cir. 2008) .......................................................................17, 20

*In re General Motors LLC Ignition Switch Litig.*,
  No. 14 Md. 2543, 2015 WL 9165341 (S.D.N.Y. Dec. 16, 2015) .....................23

*In re Int'l Sys. & Controls Corp. Sec. Litig.*,
  693 F.2d 1235 (5th Cir. 1982) .............................................................................27

*In re Itron, Inc.*,
  883 F.3d 553 (5th Cir. 2018) ..................................................................*passim*

*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014) ...........................................................................15

*In re King's Daughters Health Sys., Inc.*,
  31 F. 4th 520 (6th Cir. 2022) ............................................................................26

*In re Schlumberger Tech. Corp.*,
  818 F. App'x 304 (5th Cir. 2020) ......................................................................15

*In re Symbol Techs., Inc. Sec. Litig.*,
  No. 05 Civ. 3923, 2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017).....................19

*In re United States ex rel. Drummond*,
  886 F.3d 448 (5th Cir. 2018) .............................................................................14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc) ...............................................16, 18, 30

*John Doe Co. v. United States*,
  350 F.3d 299 (2d Cir. 2003), *as amended* (Nov. 25, 2003)...............................18

*Klier v. Elf Atochem N. Am. Inc.*,
    658 F.3d 468 (5th Cir. 2011) .............................................................................16

*Lone Star Tech. Innovations, LLC v. ASUSTeK Comput. Inc.*,
    No. 6:19-cv-0059, 2020 WL 6803252 (E.D. Tex. Apr. 28, 2020) ....................28

*Mir v. L-3 Commc'ns Integrated Sys., L.P.*,
    315 F.R.D. 460 (N.D. Tex. 2016) ......................................................................17

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009)......................................................................................15, 30

*SB IP Holdings LLC v. Vivint, Inc.*,
    No. 4:20-CV-00886, 2023 WL 1971263 (E.D. Tex. Feb. 13, 2023) ................27

*Stolarik v. New York Times Co.*,
    No. 17 Civ. 5083, 2019 WL 4565070 (S.D.N.Y. Sept. 20, 2019).....................19

*United States ex rel. El-Amin v. George Washington Univ.*,
    533 F. Supp. 2d 12 (D.D.C. 2008)....................................................................23

*United States v. El Paso Co.*,
    682 F.2d 530 (5th Cir. 1982) .............................................................................20

*United States v. Nobles*,
    422 U.S. 225 (1975).............................................................................................17

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)......................................................................................20, 31

*Zamir v. Bridgepoint Educ., Inc.*,
    No. 15-cv-408, 2018 WL 1258108 (S.D. Cal. Mar. 12, 2018).........................22

**Statutes & Rules**

28 U.S.C. § 1292(b) ...............................................................................................14

28 U.S.C. § 1651 ......................................................................................................1

Fed. R. App. 21 .........................................................................................................1

Fed. R. Civ. P. 23(f).................................................................................................6

Fed. R. Civ. P. 26(b)(3)........................................................................17, 27

Fed. R. Evid. 502 ..........................................................12, 24, 25, 26

**Other**

Securities Act Release No. 5310...................................................................8

Defendants-Petitioners Anadarko Petroleum Corporation

("Anadarko"), R.A. Walker, Robert G. Gwin, Robert P. Daniels and Ernest A.

Leyendecker ("Defendants") seek a writ of mandamus, pursuant to 28 U.S.C.

§ 1651 and Federal Rule of Appellate Procedure 21, to set aside the March 31,

2023, Order of the Honorable Charles Eskridge, United States District Judge for

the Southern District of Texas, in *In re Anadarko Securities Litigation*,

No. 4:20-cv-00576 (ECF 173) (the "Order"). (*See* MR308.)[1]  That Order holds

that Defendants waived attorney-client privilege and work product protection over

the entire subject matter of Anadarko's Audit Committee's internal investigation

conducted between April and November 2016.

## PRELIMINARY STATEMENT

This mandamus petition arises from a putative securities fraud class

action in which Plaintiffs premise their allegations upon a whistleblower letter sent

by a former Anadarko employee to the SEC.  During the early stages of discovery,

Defendants deposed two of Plaintiffs' representatives and briefly inquired as to the

representatives' knowledge of the SEC's decision not to bring an enforcement

action against Anadarko or any of its employees related to the whistleblower letter.

These limited questions did not refer to any privileged information nor was any

---

[1] Throughout this petition, citations in the form of "MR __" refer to pages in
the mandamus record appendix.

privileged information otherwise disclosed during the depositions.  Indeed,
Defendants have not disclosed any privileged information or attorney work product
at *any* point during this litigation.  Plaintiffs do not suggest otherwise.

The District Court, however, found that asking the limited deposition
questions about the non-privileged outcome of the SEC investigation somehow
constituted a complete waiver of *all* privilege related to an independent
investigation conducted by Anadarko's Audit Committee in response to the
purported whistleblower letter, including:  (1) privileged communications between
the company's Audit Committee and its outside counsel, and (2) work product,
including opinion work product, created by the Audit Committee's outside and
in-house counsel in connection with its independent investigation into the
whistleblower's allegations.  In doing so, the District Court relied upon the "at
issue" doctrine.

The District Court's ruling is fundamentally inconsistent with the
governing law and would significantly prejudice Defendants.  A party cannot put
privileged information "at issue" by asking a few deposition questions about the
non-privileged outcome of a whistleblower complaint that forms the basis of the
plaintiff's allegations.  Instead, "at issue" waiver requires that the party actually
rely on privileged information in trying to influence the finder of fact.  In that
circumstance, it would be unfair for the party to use the privileged information

2

affirmatively in the case, while at the same time interposing the privilege to prevent the opposing party from responding to that affirmative use. Anadarko has done no such thing: it does not rely on the outcome of the SEC investigation or the independent Audit Committee investigation as part of its defense in this case, it has not relied on the outcome of those investigations to request any relief from the District Court, and it has stipulated that if this case proceeds to trial, it will not offer any evidence about the outcome of the SEC investigation to the jury. Not only is the District Court's ruling fundamentally inconsistent with governing law, it also substantially prejudices Defendants and undermines the critical ability of businesses to investigate effectively allegations about violations of securities laws or other regulations. A writ of mandamus should issue in these extraordinary circumstances.

*First*, the District Court's Order holds that Defendants waived attorney-client privilege and work product protection over the entire subject matter of the Audit Committee investigation. Any remedy that occurs after trial, and after those documents are disclosed, will be too late. The District Court has declined to reconsider the Order or certify it for appeal, meaning that a writ of mandamus is the only form of relief available. (*See* Point I.)

*Second*, Defendants demonstrate a clear and indisputable right to a writ, as the District Court's decision lacks any basis in law. The deposition

questions on which the District Court relied did not contain or refer to any privileged information; they simply concerned the outcome of the SEC investigation, which is not privileged.  Moreover, Defendants are not relying on the independent Audit Committee investigation in this case.  The decision below is antithetical to the purpose of "at issue" or sword-and-shield waiver, which is premised on principles of fairness.  Defendants have never sought to wield privilege as a "sword" while simultaneously using it as a "shield," depriving Plaintiffs of the tools necessary to respond.  Indeed, Defendants have put no privileged information "at issue."  Defendants have not used either the deposition testimony or the outcome of the SEC's investigation affirmatively in this case, and Defendants have stipulated that they will not do so at trial.  Thus, there is no reason to find "at issue" waiver in these circumstances—let alone the sweeping subject-matter waiver over all materials relating to the independent Audit Committee investigation, including legal advice and opinion work product.  (*See* Point II.)

> *Third*, issuance of a writ is appropriate to allow the Circuit to clarify the law on the basis and scope of "at issue" waiver.  If the District Court's approach to waiver were generally adopted, the protections that currently allow companies and their directors to conduct full and frank independent investigations would be dramatically weakened.  And resolution of this issue will assist in this

4

case, as it will ensure that Defendants' documents remain protected while allowing

the parties to proceed expeditiously to summary judgment and, if needed, trial.

(*See* Point III.)

   For each of these reasons, and as further discussed below, Defendants

respectfully submit that a writ of mandamus is necessary and appropriate to avoid

the improper and unwarranted piercing of the Audit Committee's privilege and

work product.

## ISSUES PRESENTED AND RELIEF SOUGHT

   The issues presented by this petition are:

1. Whether asking limited questions in deposition about the outcome
of a regulatory investigation constitutes a broad subject-matter
waiver over an Audit Committee's independent investigation
where (i) Defendants did not use such testimony or the outcome of
the regulatory investigation to influence the factfinder, and
(ii) Defendants have stipulated that they will not introduce any
such evidence at trial.  (*See* Point II.A.)

2. Whether, if there were a waiver, it would extend to the entire scope
of the Audit Committee's investigation, including advice of
counsel and opinion work product.  (*See* Point II.B.)

   Defendants respectfully submit that if the Court answers either of the

above questions in the negative, a writ of mandamus must issue.  If the Court's

answer to the first question is in the negative, the writ should direct the District

Court to vacate its March 31, 2023, Order because the internal investigation

documents are protected from disclosure by the attorney-client privilege and work

5

product doctrine. If the Court answers the first question in the affirmative but the second question in the negative, the writ should either (1) direct the District Court to vacate its March 31, 2023, Order because any waiver would include only those documents provided to the SEC in the course of the SEC's investigation, and these documents have already been provided to Plaintiffs, or (2) direct the District Court to modify its March 31, 2023, Order to reflect that any waiver extends only to the facts uncovered by the investigation and does not include attorney-client communications or opinion work product.

## **STATEMENT OF THE CASE**

### I.    FACTUAL BACKGROUND

The case below relates to alleged misstatements by Defendants about Shenandoah, a deepwater oil prospect in the Gulf of Mexico that Anadarko and several other large oil companies appraised from approximately 2008 through 2017.[2]  Plaintiffs allege that Defendants failed to inform the market that Shenandoah lacked commercial viability and instead misleadingly reported that Shenandoah was a successful prospect.  Plaintiffs allege that several Anadarko employees were aware of Defendants' alleged misrepresentations, including Lea

---

[2] On September 28, 2022, the District Court granted Plaintiffs' motion for class certification.  (ECF 141 below.)  That decision is the subject of a petition for leave to appeal under Federal Rule of Civil Procedure 23(f) filed by Defendants in this Court on July 14, 2023.

Frye, a former Anadarko engineer on the Shenandoah project who had sought to participate in a company-wide involuntary layoff program.  After her request was denied, she sent a letter to Anadarko on April 20, 2016, alleging that Defendants violated the law by making overly optimistic statements about Shenandoah. (MR001 ¶¶ 71, 73.)

Following Ms. Frye's April 20, 2016, letter, Anadarko referred her allegations to its Audit Committee, which retained the law firm Norton Rose Fulbright ("Norton Rose") to represent it and conduct an internal investigation into Ms. Frye's allegations (the "AAC Investigation").  Norton Rose alerted the SEC to Ms. Frye's allegations, and the SEC opened an investigation.  On May 9, 2016, Ms. Frye submitted two letters to the SEC alleging violations of the Dodd-Frank Act and securities laws.  Assisted by Norton Rose, the Audit Committee conducted an investigation of her allegations, including by interviewing witnesses, collecting documents, and retaining experts.  Norton Rose produced documents responsive to SEC requests and made a presentation to the SEC on November 22, 2016.  At no point during its communications with the SEC did Norton Rose provide or read notes, summaries, memoranda, or other materials memorializing interviews with Anadarko employees conducted during the AAC Investigation.  (MR245 ¶ 11.) While the AAC Investigation was ongoing, Norton Rose provided updates on the investigation to KPMG, Anadarko's independent auditor, and Anadarko provided

certain information to JP Morgan, Anadarko's underwriter. Norton Rose did not, however, disclose any privileged communications to these third parties. (*Id.* ¶¶ 6, 7, 11.)

In January 2017, the SEC sent Norton Rose a "Termination Letter," in which the SEC stated that it had "concluded the investigation" into Anadarko and that "[b]ased on the information [it] ha[d] as of th[at] date, [the SEC] did not intend to recommend an enforcement action." (MR128.) The letter noted that it was "in no way [to] be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation." (*Id.* (quoting Securities Act Release No. 5310).)

## II. PROCEEDINGS LEADING TO THIS MANDAMUS PETITION

Plaintiffs filed this action on February 19, 2020, and drew heavily from the allegations in Ms. Frye's letter to the SEC. (MR001.) Indeed, the Amended Complaint explicitly states that it is premised on Plaintiffs' "analysis of . . . recently unsealed whistleblower materials filed in *Frye v. Anadarko Petroleum Corp.*, No. 4:17-cv-02289 (S.D. Tex.)," a lawsuit Ms. Frye filed that resulted in the release of her letter. (*Id.* ¶¶ 1 n.1, 10, 93.) The Amended Complaint also details how Ms. Frye submitted the letter to the SEC and resigned from Anadarko (*id.* ¶¶ 6, 73-78), and how counsel for the Audit Committee investigated her allegations (*id.* ¶ 78).

During discovery, Plaintiffs made several document requests related to both the AAC Investigation and the SEC investigation, and served subpoenas on KPMG and Norton Rose.  Defendants produced to Plaintiffs all documents that had been given to the SEC, all communications with the SEC and the presentation Norton Rose made to the SEC.  This presentation listed everyone who Norton Rose had interviewed—most of whom have now been deposed by Plaintiffs in this case.  Defendants also produced the Termination Letter.  Defendants and Norton Rose withheld privileged communications and attorney work product; the directors on the Audit Committee withheld their privileged communications with Norton Rose; and KPMG redacted Norton Rose's work product memorialized in its own documents.

During fact discovery prior to class certification, Defendants deposed several of Plaintiffs' representatives.  In one deposition, Defendants asked whether the SEC Termination Letter changed the deponent's view as to the allegations in the complaint.  The deponent responded that it did not:

> Q. Does that change your view as to any of the
> allegations in Iron Workers' complaint?
>
> A. No.
>
> Q. Why not?
>
> A. The remainder of the letter has a portion that says,
> Must in no way be construed as indicating that the party
> has been exonerated, or that no action may ultimately
> result from the staff's investigation.

(MR274 (Boyle Dep. Tr. 76:9-19).)  In another deposition, Defendants asked about

the deponent's knowledge regarding the Termination Letter *after* the deponent

testified that the SEC had "upheld" the contents of the whistleblower letter, which

it had not:

> Q. What's your understanding of what happened with the
> whistleblower claims?
>
> A. I believe they were upheld by the SEC.
>
> . . .
>
> Q. Do you understand this letter to be an indication that
> the SEC has upheld the whistleblower claims against
> Anadarko?
>
> A. I understand it to reflect that it can't be construed that
> there is no further action to arise.
>
> Q. But you previously said that you understood the
> Securities and Exchange Commission had upheld claims
> against Anadarko related to the whistleblower claims,
> and I am asking where in this letter do you see an
> indication that the claims have been upheld?
>
> A. Well, the phrase upheld is not used in the letter.

10

(MR281 (Younger Dep. Tr. 112:21-24), MR285 (Younger Dep. Tr. 116:7-20).)

On April 13, 2022, Plaintiffs moved to compel documents related to the AAC Investigation, principally arguing that Defendants' deposition questions above constituted a broad subject-matter waiver of work product and attorney-client privilege relating to the AAC Investigation.  (MR063.)  In their opposition, Defendants argued that their limited deposition questioning did not constitute offensive use of privileged material and could not be the basis for a finding of broad subject-matter waiver, much less waiver of opinion work product.  (MR233-35.)  Defendants further argued that the only documents that ought in fairness to be provided were the documents and presentation disclosed to the SEC, all of which already had been produced to Plaintiffs.  (MR235-36.)

While the Motion to Compel was pending, the parties completed fact and expert discovery.  On March 16, 2023, the parties filed motions to exclude expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Defendants moved for summary judgment.  Neither Defendants' summary judgment motion nor their *Daubert* motions rely on the deposition questions about the Termination Letter, nor do they even mention the AAC Investigation, the SEC investigation, the SEC's decision not to bring charges, or any advice from Norton Rose.  At no point have Defendants argued that the allegations in the purported whistleblower letter are unfounded because the SEC

11

decided not to bring an enforcement action. Nor have Defendants relied on the existence or outcome of the AAC Investigation as a defense in the case.

On March 31, 2023, after argument and with Defendants' summary judgment motion pending, the District Court granted Plaintiffs' Motion to Compel. The District Court found that Defendants had used privilege as a "sword" based on one of the questions to Plaintiffs in deposition—whether the SEC Termination "change[d] [their] view as to any of the allegations in [the] complaint." (MR314.) Citing that deposition question, the District Court concluded that "Anadarko seeks to rely on the SEC's termination letter to indicate that the whistleblower's allegations were unfounded or false because the information uncovered upon investigation, when presented to the SEC, resulted in it choosing *not* to pursue an enforcement action." (MR314-15.) The District Court also stated that Anadarko could not "separate the *result* of the SEC investigation from the facts and representations by attorneys that went *into* that investigation. And this quite naturally extends to and encompasses—in terms of both fairness and completeness—what Anadarko chose *not* to present to the SEC." (*Id.*) The District Court found that waiver extended to materials withheld under the attorney-client privilege and the work product doctrine. (MR315.)

Citing Federal Rule of Evidence 502(a), the District Court further found a broad subject-matter waiver over the entire AAC Investigation. (MR316.)

12

The District Court reasoned that "[t]he record establishes that a significant portion of confidential communications between Norton Rose and Anadarko was apparently revealed to the SEC, KPMG, and JP Morgan" and that "[a]lso in consideration [of] Anadarko's use of privilege as a sword and a shield," "[f]airness . . . dictates that waiver extend to the entire subject matter of the AAC investigation." (*Id.*)

On April 27, 2023, Defendants moved the District Court to reconsider the Order or, in the alternative, to certify the Order for interlocutory appeal. (MR318.) Defendants argued that they did not—and could not—waive privilege by referencing the SEC Termination Letter, a non-privileged document, in two depositions. (MR330-32.) Defendants explained that they had not relied on the Termination Letter to substantively rebut Ms. Frye's allegations and that they had not used the existence or results of the Audit Committee's privileged investigation as a defense to any of Plaintiffs' allegations. Defendants also argued that the District Court's subject-matter waiver finding was disproportionately broad in light of the applicable case law, which holds that such situations rarely, if ever, result in a waiver that extends to opinion work product. (MR334-35.) Moreover, to avoid any doubt about whether Defendants intended to use the Termination Letter as a sword, Defendants stipulated that they would not introduce or rely on the Termination Letter at trial so long as the Court did not find a privilege waiver.

13

(MR331.)  Defendants also argued that if the District Court declined to reconsider its Order, the District Court should certify its Order to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b) to consider the District Court's holdings on waiver and scope of waiver.  (MR336-40.)

On June 30, 2023, the District Court denied Defendants' motion for reconsideration and declined to certify the Order for interlocutory appeal. (MR586.)

## REASONS WHY THE WRIT SHOULD ISSUE

This Court has articulated a three-part standard for when it will review a pre-trial discovery order on petition for writ of mandamus.  The petitioner must show:  (1) it "has no other adequate means to attain the desired relief," (2) it "has demonstrated a right to the issuance of a writ that is clear and indisputable," and (3) "the issuing court, in the exercise of its discretion, is satisfied that the writ is appropriate under the circumstances."  *In re United States ex rel. Drummond*, 886 F.3d 448, 449-50 (5th Cir. 2018) (citation omitted).  Defendants satisfy each of these three requirements.

## III.   DEFENDANTS HAVE NO OTHER ADEQUATE MEANS TO OBTAIN REVIEW.

A writ of mandamus is the only avenue to obtain review of the District Court's Order.  The Supreme Court has recognized that mandamus is an

14

appropriate remedy to avoid the forced disclosure of privileged communications and protected work product. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009). As this Court has repeatedly recognized, the requirement that a petitioner have no other adequate means of relief "is 'often . . . met in cases where a petitioner claims that a District Court erroneously ordered disclosure of attorney-client privileged documents.'" *In re Itron, Inc.*, 883 F.3d 553, 567 (5th Cir. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760-61 (D.C. Cir. 2014)). "That is because (i) an interlocutory appeal is not available in attorney-client privilege cases (absent District Court certification) and (ii) appeal after final judgment will come too late because the privileged communications will already have been disclosed pursuant to the District Court's order." *Id.* (citation omitted); *accord In re Boeing Co.*, No. 21-40190, 2021 WL 3233504, at *1 (5th Cir. July 29, 2021) (per curiam); *In re Schlumberger Tech. Corp.*, 818 F. App'x 304, 306 (5th Cir. 2020).

The District Court already has denied Defendants' motion for reconsideration of its Order and has refused to certify it for interlocutory review. (MR586.) The alternative, waiting until the end of litigation, is an inadequate remedy because by then, the privileged communications and work product will already have been disclosed.

## IV. DEFENDANTS' RIGHT TO MANDAMUS RELIEF IS CLEAR AND INDISPUTABLE BECAUSE DEFENDANTS DID NOT WAIVE PRIVILEGE OR WORK PRODUCT PROTECTION OVER ANADARKO'S AUDIT COMMITTEE INVESTIGATION.

"The 'right to the issuance of the writ is necessarily clear and indisputable' if 'the district court clearly abused its discretion." *In re Itron*, 883 F.3d at 568 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc)). "By definition, a district court abuses its discretion when it makes an error of law or applies an incorrect legal standard." *Id.* (quoting *Klier v. Elf Atochem N. Am. Inc.*, 658 F.3d 468, 474 (5th Cir. 2011)). The question here is whether the District Court incorrectly applied "at issue" waiver in this case. The governing legal principles on attorney-client privilege and work product doctrine necessitate a decision in Defendants' favor, as no waiver of either protection occurred here.

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 720 (5th Cir. 1985) (citation omitted). This includes privileged communications made during the course of an internal investigation conducted to help a company "better understand its legal obligations and liabilities," as this is "the exact sort of behavior the

16

privilege seeks to encourage." *Doe 1 v. Baylor Univ.* ("*Baylor I*"), 320 F.R.D. 430, 437 (W.D. Tex. 2017).

The work-product doctrine "is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). It protects from disclosure documents prepared "in anticipation of litigation," Fed. R. Civ. P. 26(b)(3), including documents created during an internal investigation, such as "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements," *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).

A party may waive the attorney-client privilege "[b]y disclosing [privileged] communications to third parties—such as by revealing them in open court," effectively using the privilege as "both sword and shield," and by "*affirmatively relying* on attorney-client communications to support an element of a legal claim or defense—thereby putting those communications 'at issue' in the case." *In re Itron*, 883 F.3d at 558 (emphasis added) (citation omitted).  Like the attorney-client privilege, work product protection may be waived when a party places the protected material "'at issue' in the litigation." *Doe 1 v. Baylor Univ.* ("*Baylor II*"), 335 F.R.D. 476, 487 (W.D. Tex. 2020) (quoting *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 470 (N.D. Tex. 2016)).  As the Second Circuit highlighted in *In re County of Erie*—a case cited favorably by this

17

Circuit in *Itron*—fairness concerns underlying the sword-and-shield doctrine arise only "when a party uses an assertion of fact to *influence the decisionmaker* while denying its adversary access to privileged material potentially capable of rebutting the assertion." 546 F.3d 222, 229 (2d Cir. 2008) (emphasis added) (citation omitted). In other words, waiver is appropriate only in light of the "*unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *John Doe Co. v. United States*, 350 F.3d 299, 304 (2d Cir. 2003), *as amended* (Nov. 25, 2003).

The specific legal issues, addressed below, show why the District Court abused its discretion and, thus, Defendants necessarily have a "clear and indisputable" right to the issuance of a writ. *In re Volkswagen*, 545 F.3d 304 at 311.

A. **Defendants Have Not Put the SEC's Investigation or the AAC Investigation At Issue.**

As an initial matter, it is undisputed that Defendants have not disclosed any privileged materials or work product during the litigation. (*See, e.g.*, MR079-80.) The deposition questions on which the District Court below relied did not reveal any privileged information, nor did the deposition answers (indeed, they could not have done so, as the witnesses did not know any of the privileged

18

information).  Thus, any cases finding waiver on the basis of partial disclosure are inapposite.  *See, e.g.*, *In re Application of Chevron Corp. v. 3TM Consulting, LLC*, No. MC H-10-134, 2011 WL 13135155, at *3 (S.D. Tex. Jan. 10, 2011) (finding any privilege was waived after company disclosed work product to court-appointed damages expert); *Stolarik v. New York Times Co.*, No. 17 Civ. 5083, 2019 WL 4565070, at *2 (S.D.N.Y. Sept. 20, 2019) (finding waiver after defendants voluntarily disclosed privileged documents); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05 Civ. 3923, 2017 WL 1233842, at *14-15 (E.D.N.Y. Mar. 31, 2017) (finding disclosure of work product during deposition waived protection over related work product).

Instead, the District Court's finding of waiver was premised on the idea that Defendants put privileged materials "at issue" by asking certain questions during Plaintiffs' representatives' depositions—despite the fact that Defendants have not placed either such deposition testimony or the Termination Letter before the factfinder and, indeed, have stipulated that they will not do so.[3]  Defendants are

---

[3] The District Court's ruling on the *scope* of waiver, discussed further below—distinct from the fact of waiver—was premised in part on "confidential communications between Norton Rose and Anadarko that were *apparently* revealed to the SEC, KPMG, and JP Morgan."  (MR316 (emphasis added).)  But the District Court never made a finding that the sharing of any of that information itself constituted a waiver.  And, as Defendants argued in the court below, the communications with these entities could not have resulted in waiver because there

aware of no case (before this one) in which a court has held that asking about the outcome of a regulatory investigation using a non-privileged document during deposition constitutes "reliance" on privileged material or work product from a separate internal company investigation in a manner that puts protected materials "at issue" in the litigation. To the contrary, to put privileged materials at issue, a defendant must "affirmatively rely" on privileged materials "to support an element of a legal claim or defense." *In re Itron*, 883 F.3d at 558. And this only occurs if a party attempts to influence "the decisionmaker." *In re Cty. of Erie*, 546 F.3d at 229. Defendants indisputably have not done so.

　　　　The District Court relied on *Doe 1 v. Baylor University* (*Baylor II*) as "instructive" (*see* MR314), but that case commands an outcome contrary to the Order. There, Baylor University sought to defend against several Title IX lawsuits that alleged that "Baylor maintained discriminatory practices in handling student reports of sexual assault" and "that Baylor's response to [the plaintiffs'] reports of sexual assault was deficient, and deprived them of educational opportunities and

---

is no evidence that Anadarko or its counsel ever disclosed privileged communications. Corporations routinely share the results of internal investigations with government agencies and other third parties without waiving privilege, as privilege does not protect the underlying facts learned during investigation. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *see United States v. El Paso Co.*, 682 F.2d 530, 538 n.10 (5th Cir. 1982).

benefits on the basis of their gender." *Baylor II*, 335 F.R.D. at 489. Baylor

informed the district court that, "in an effort to demonstrate that Plaintiffs cannot

make out the elements of a Title IX claim, [Baylor] will explicitly rely on evidence

that the university conducted an investigation, . . . performed solely by [counsel],

and instituted reforms . . . implemented entirely under [counsel's] direct

supervision and guidance." *Id.* at 492. And, despite being "specifically warned"

by the district court that citing to the investigation and reforms could constitute

waiver, Baylor continued to rely on the investigation in its answers filed in those

cases, as well as in its motion to dismiss one of the cases. *Id.* at 490-92. The

district court concluded that this constituted waiver, as plaintiffs would have the

"burden to demonstrate that the actions Baylor relies on—the investigation and the

implementation of reforms—are not enough to rebut the [p]laintiffs' evidence,"

which "necessarily includes questioning the integrity, scope and conduct of the

investigation, as well as the quality of the implementation of reforms." *Id.* at 493.

      Unlike in *Baylor*, where the defendants confirmed, despite being

warned of potential waiver, that they were relying on the substance of, and

recommended reforms from, an internal investigation, Defendants here have not

and will not rely on the SEC's investigation or the AAC Investigation in defending

21

against liability.[4]  Defendants have not sought to influence a decisionmaker to conclude that there was no securities law violation by relying on the AAC Investigation or the fact that the SEC terminated its investigation without bringing an enforcement action.  Defendants did not cite any of Norton Rose's legal advice or investigatory conclusions in answering the complaint, briefing *Daubert* motions, opposing class certification, or moving for summary judgment.  Defendants have not relied on the deposition testimony regarding the Termination Letter.  In short, Defendants have never "affirmatively rel[ied]" on the outcome of the SEC investigation, attorney-client communications, or work product related to the AAC Investigation "to support an element of a legal claim or defense."  *In re Itron*, 883 F.3d at 558.  And, again, as Defendants expressly confirmed to the District Court, they will not seek to introduce such evidence at trial.  (MR330.)[5]

---

[4] Nor could they, as the Termination Letter makes clear that it does not absolve Anadarko from liability.  *See In re Cirrus Logic, Inc.*, No. A-07-CA-212-SS, 2008 WL 4065925, at *5 (W.D. Tex. Aug. 28, 2008) ("[T]he SEC's decision to take no enforcement action is not a determination on the merits of the backdating allegations in any sense."); *Zamir v. Bridgepoint Educ., Inc.*, No. 15-cv-408, 2018 WL 1258108, at *17 (S.D. Cal. Mar. 12, 2018) ("[A]n SEC letter indicating the SEC does not intend to take enforcement action cannot be construed as indicating that a party has been exonerated.").

[5] Plaintiffs have claimed that this stipulation was in conflict with counsel's representations during the hearing on the Motion to Compel.  (*See* MR362.)  Not so.  Defendants' counsel explained that their concern was preventing the jury from improperly speculating about what actions the SEC might have taken in the event

This Court has found it appropriate to issue a writ of mandamus vacating a district court's order finding waiver in precisely these circumstances. *See, e.g.*, *In re Itron*, 883 F.3d at 557 (granting mandamus petition vacating a district court's order finding waiver, noting that the plaintiff "had stipulated that 'so long as the Court does not find a privilege waiver, [it] will not affirmatively use any privileged information against Defendants in this case'"). The Court should do the same here. Because Defendants have not affirmatively relied on any protected material related to the investigations by either the SEC or Anadarko's Audit Committee, they have not waived privilege or work product protection over the AAC Investigation, and a writ should issue to vacate the District Court's Order finding otherwise.

---

that *Plaintiffs* referenced the SEC's investigation during trial—a concern that regularly leads courts to exclude evidence of government investigations. *See, e.g.*, *Fakhoury v. O'Reilly*, No. 16-13323, 2022 WL 909347, at *9 (E.D. Mich. Mar. 28, 2022) (excluding evidence of a government investigation "because it will suggest to the jury that [plaintiffs] are engaged in illegitimate activities"); *In re General Motors LLC Ignition Switch Litig.*, No. 14 Md. 2543, 2015 WL 9165341, at *1 (S.D.N.Y. Dec. 16, 2015); *In re Bankatlantic Bancorp, Inc. Sec. Litig.*, No. 07 Civ. 61542, 2010 WL 11426137, at *3 (S.D. Fla. Aug. 20, 2010); *United States ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 22 (D.D.C. 2008). And as counsel made clear during the hearing, Defendants "would be happy to have no discussion whatsoever about the SEC investigation in this case." (MR411 at 2-9.) In any event, Defendants have stipulated that they will not introduce any evidence about the outcome of the SEC investigation regardless of what evidence related to the investigation Plaintiffs are ultimately permitted to place in front of the jury.

## B. Even If There Were Waiver, It Should Not Extend to the Entire Subject Matter of the AAC Investigation.

Even if Defendants had put the outcome of the SEC investigation "at issue" through their limited deposition questioning, considerations of fairness nonetheless preclude the broad subject-matter waiver imposed by the District Court, which would open up the entire AAC Investigation.

The District Court found subject-matter waiver under Federal Rule of Evidence 502(a), which governs the scope of waiver "[w]hen [a] disclosure is made in a federal proceeding or to a federal . . . agency and waives the attorney-client privilege or work-product protection." Fed. R. Evid. 502(a). Under that Rule, "the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." *Id.* Subject-matter waiver "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary," and is "limited to situations in which a party intentionally puts *protected* information into the litigation in a selective, misleading and unfair manner." Fed. R. Evid. 502 advisory committee's notes (emphasis added).

24

In defining the scope of waiver, district courts within this Circuit look to "the context of the waiver and the prejudice to the other party that limiting the waiver would cause." *Baylor II*, 335 F.R.D. at 497 (citation omitted). For work product, waiver is typically limited to the documents actually disclosed, and subject-matter waiver "is usually reserved for instances in which the quality or substance of the attorney's work product has been directly placed at issue in the litigation." *Grigson v. Farmers Grp., Inc.*, No. 1:17-CV-00088-LY, 2019 WL 3781439, at *2 (W.D. Tex. Aug. 12, 2019). Under this standard, there is simply no basis for the Order's finding of a broad subject-matter waiver.

*First*, under Rule 502(a), even if Defendants' deposition questioning about the outcome of the SEC investigation did constitute a sword-and-shield waiver—which it did not—fairness does not support the production of all privileged or work product documents from the AAC Investigation. The theory of waiver that the District Court seems to have relied upon is that if—counterfactually—Defendants plan to rely on the fact that the SEC did not bring an enforcement action to establish that there was no securities law violation here, that would put at issue the findings of the independent AAC Investigation. That is presumably because Anadarko's Audit Committee's counsel provided certain information to the SEC about its investigation prior to the SEC's decision to issue its Termination Letter. The District Court also presumably concluded that

25

Plaintiffs ought to be able to present to the jury information from the AAC Investigation that was *not* considered by the SEC to argue that the SEC might have done something different if it had only had all the facts.

But, even if Defendants were relying upon the outcome of the SEC investigation, no privileged information "ought in fairness to be considered" with the SEC outcome under Rule 502(a)(3) even in this hypothetical scenario. Plaintiffs already have *all* of the information that Defendants provided to the SEC. (MR223, MR325, MR334-35.) This allows for a "complete and accurate presentation" to the jury of the SEC's determination. *In re King's Daughters Health Sys., Inc.*, 31 F. 4th 520, 529 (6th Cir. 2022).

To the extent Plaintiffs would theoretically need to explain to the jury what they contend the SEC did *not* know, Plaintiffs have had every opportunity to develop their own factual record to do so. Plaintiffs have received millions of pages of internal Anadarko documents and have taken the depositions of 20 fact witnesses. Norton Rose's presentation to the SEC listed everyone interviewed during the course of the internal investigation, and Plaintiffs had the opportunity to depose any of those individuals. (MR399 (Hr'g Tr. 25:8-15), MR325, MR334-35.) Thus, even if Plaintiffs needed to convince the jury that the SEC should have pursued an enforcement action—which they never will have to do because Defendants will never raise the outcome of the SEC investigation at trial—

Plaintiffs have all the discovery they would need to do so based on the underlying non-privileged record they have amassed during the course of this litigation. What Plaintiffs do not need is Anadarko's internal, privileged information or legal advice. *See Baylor II*, 335 F.R.D. at 497 ("[T]he scope of any waiver is defined by the context of the waiver and the prejudice to the other party that limiting the waiver would cause." (citation omitted)). This case is thus completely different from *Baylor*, where "Baylor's defense [wa]s founded on the facts and advice it and its Regents received from [counsel]," and as such "for a jury to decide whether Baylor's actions were reasonable, the jury has to know the facts and advice Baylor relied on, so it can determine whether Baylor's reliance on those facts and advice was reasonable." *Id.* at 498.

     *Second*, even if this Court were to conclude that some disclosure of privileged information is necessary in this case, any such waiver cannot reasonably encompass opinion work product. The "mental impressions, conclusions, opinions or legal theories of an attorney" receive "almost absolute protection from discovery." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) (quoting Fed. R. Civ. P. 26(b)(3)). For this reason, "even in cases . . . where a party waives its attorney-client and work-product privilege, courts recognize that the work-product waiver must be narrowly construed to avoid unnecessarily implicating counsel's mental impressions." *SB IP Holdings LLC v.*

*Vivint, Inc.*, No. 4:20-CV-00886, 2023 WL 1971263, at *3 (E.D. Tex. Feb. 13, 2023) (citation omitted).

Indeed, counsel's mental impressions are discoverable only in rare cases, such as when a party "asserts as a defense remedial actions based on the results of an investigation and the recommendations of its attorney." *Baylor II*, 335 F.R.D. at 498. District courts in this Circuit, even if finding subject-matter waiver, frequently stop short of ordering opinion work product to be disclosed. *See Lone Star Tech. Innovations, LLC v. ASUSTeK Comput. Inc.*, No. 6:19-cv-0059, 2020 WL 6803252, at *4 (E.D. Tex. Apr. 28, 2020) (subject-matter waiver due to sword-and-shield use of privileged document did not extend to opinion work product because "such opinion work product forms the heart of the work-product doctrine, deserving of stalwart protection"); *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, 2009 WL 10679940, at *3 (E.D. Tex. Nov. 13, 2009) (waiver due to introduction of privileged memorandum in deposition did not extend to opinion work product because such compelled disclosure "would not level the playing field, but rather, would give plaintiff an unjustified advantage" (citation omitted)).

The District Court's Order covers all materials relating to the AAC Investigation, without exception, and thus requires Anadarko to disclose opinion work product. But there is no rationale here for finding waiver of opinion work

28

product. If, as described above, the issue here is some purported need for Plaintiffs to show the jury the specific underlying facts that the SEC did *not* know, then any waiver should be limited to disclosure of *factual* information alone reflected in internal work product from the internal investigation. The SEC of course never knew or would have known Anadarko's attorneys' mental impressions or legal opinions, and there is no argument to the contrary here, so there is no need in fairness for Plaintiffs now to receive Anadarko's opinion work product.

In sum, there is no rational reason to conclude that even if Defendants had placed the outcome of the SEC investigation "at issue" in this case—and they did not—Plaintiffs are somehow entitled to learn the legal opinions of the Audit Committee's counsel. The District Court's ruling to the contrary cited no authority and provided no reasoning for its result, and instead is directly in conflict with *Baylor,* the primary case on which the District Court relied in finding waiver. The *Baylor* court excluded opinion work product from the waiver. There, even though the district court found broad subject-matter waiver, the district court noted that outside counsel's internal emails and communications, "legal research, materials [counsel] prepared to aid in conducting witness interviews (witness binders, chronologies, etc.), and notes taken by attorneys during interviews" were not discoverable and that "attorney commentary" would need to be redacted. *Baylor II*, 335 F.R.D. at 499, 501. Here, there is simply no reason for a wholesale,

29

unrestricted subject-matter waiver that covers all work product, including opinion work product.

## V.  MANDAMUS REVIEW IS APPROPRIATE UNDER THE CIRCUMSTANCES.

As to the final prong of the mandamus inquiry, this Court has recognized that mandamus review is appropriate when the issue presented has "importance beyond the immediate case," *In re Itron*, 883 F.3d at 568 (quoting *In re Volkswagen*, 545 F.3d at 319), and also in light of the "magnitude of the error's effect on this particular case," *id.*  Both of these bases weigh in favor of exercising the Court's discretion to grant mandamus here.

### A.  Mandamus Review Will Allow This Court To More Precisely Address "At Issue" Waiver and Correct Inconsistencies Among District Courts.

The District Court's erroneous and unprecedented Order is "the sort of 'serious error' for which the mandamus 'safety valve[]' is meant."  *Id.* at 568-69 (quoting *Mohawk*, 558 U.S. at 111).  This petition presents a key opportunity for this Court to assess the nuances of "at issue" waiver, which it has had little opportunity to do, leading to "less than perfect 'consistency of outcomes.'"  *Id.* at 568.  The additional guidance this Court can provide to district courts by granting mandamus relief is of particular importance because it involves the protections that companies and their counsel can expect related to internal investigations.  So that

30

an internal investigation may accomplish its purpose, a company's communications with its counsel must be open and frank.  The attorney-client privilege is designed to encourage just that—"full and frank communication between attorneys and their clients," "thereby promot[ing] broader public interests in the observance of law and administration of justice."  *Upjohn*, 449 U.S. at 389; *see also Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (explaining that privilege enables lawyers assisting in internal investigations to "act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests").  But "[t]hese benefits accrue only if clients remain 'free from the consequences or the apprehension' that a court might order their confidential communications involuntarily disclosed."  *In re Itron*, 883 F.3d at 561 (quoting *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888)).  Likewise, if the District Court's Order is allowed to stand, an attorney's mental impressions—the very heart of what the work product doctrine is meant to protect—are at risk of becoming fair game in nearly every litigation that touches upon allegations subject to an internal investigation.  Not only would this result in litigants obtaining "an unjustified advantage," *DataTreasury Corp.*, 2009 WL 10679940, at *3, it could significantly deter counsel from memorializing their thoughts and strategy, interfering significantly with counsel's ability to perform their job.

31

Additionally, if other district courts were to adopt the same broad reasoning as the District Court below, litigants could become handcuffed in discovery out of fear that mentioning anything even tangentially related to a regulatory investigation could lead them to be compelled to disclose all work product and privileged communications related to their own separate, internal investigation. Litigants could fear waiver (or plaintiffs could force waiver) where, as here, a plaintiff explicitly references in its complaint a governmental investigation into whistleblower allegations and defendants merely ask about the outcome of the government investigation into those allegations. This is not the purpose the waiver doctrine is meant to serve, which this Court should confirm by exercising mandamus review.

**B.    A Writ of Mandamus Would Allow This Case to Proceed Expeditiously to Trial.**

The impact of the District Court's erroneous Order on the underlying litigation also weighs in favor of issuing a writ here. *See In re Itron*, 883 F.3d at 568. Both fact and expert discovery have closed, summary judgment and *Daubert* briefing has begun, and Defendants desire to advance this case expeditiously to trial. Plaintiffs have indicated they may move to supplement expert disclosures if the privileged documents are produced. Defendants' opening summary judgment brief was filed four months ago, and further briefing on that motion and the parties'

*Daubert* motions is currently stayed pending resolution of this dispute. If the

Court issues a writ requiring the District Court to vacate its Order, as Defendants

respectfully request this Court to do, issuance of the writ will expedite resolution

of this matter and allow the parties to proceed efficiently toward summary

judgment and, if necessary, trial.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the

Court issue a writ of mandamus vacating the District Court's March 31, 2023,

Order.

33

Dated:  July 21, 2023                    Respectfully submitted,


                                         */s/ Kevin J. Orsini*
                                         **CRAVATH, SWAINE & MOORE LLP**
                                         Kevin J. Orsini
                                         Lauren Rosenberg
                                         Worldwide Plaza
                                         825 Eighth Avenue
                                         New York, NY 10019
                                         Telephone: (212) 474-1000
                                         Facsimile: (212) 474-3700
                                         korsini@cravath.com
                                         lrosenberg@cravath.com



                                         **SHIPLEY SNELL MONTGOMERY LLP**
                                         George T. Shipley
                                         State Bar No. 18267100
                                         Federal ID No. 02118
                                         712 Main Street, Suite 1400
                                         Houston, TX 77002
                                         Telephone: (713) 652-5920
                                         Facsimile: (713) 652-3057
                                         gshipley@shipleysnell.com

                                         *Counsel for Defendants-Petitioners*

## CERTIFICATION OF COMPLIANCE

I hereby certify that this document complies with Federal Rule of Appellate Procedure 5(c) and 32(g) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 5, this document contains 7,432 words.  This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Version 2208 in Times New Roman size 14.

Dated:  July 21, 2023

/s/ Kevin J. Orsini
Kevin J. Orsini
*Counsel for Defendants-Petitioners*

35

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the Court's CM/ECF on July 21, 2023.  I further certify that a copy of the foregoing was served on July 21, 2023 via email on the following counsel for Plaintiffs, who consented to such service in writing.  A copy of the foregoing is being sent to the chambers of the Hon. Charles R. Eskridge, III, via email and FedEx at the address below.

Mark Solomon
Daniel Drosman
Rachel Jensen
Luke Brooks
Hillary Stakem
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, California 92101
(619) 231-1058
marks@rgrdlaw.com
dand@rgrdlaw.com
rjensen@rgrdlaw.com
lukeb@rgrdlaw.com
hstakem@rgrdlaw.com

Joe Kendall
KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
(214) 744-3000
jkendall@kendalllawgroup.com

*Counsel for Plaintiffs-Respondents*

Jennelle Gonzalez
Case Manager to Hon. Charles Eskridge
515 Rusk Street, Room 9015
Houston, Texas 77002
(713) 250-5257
Jennelle_Gonzalez@txs.uscourts.gov

*Chambers of the Hon. Charles Eskridge, III*

Dated:  July 21, 2023

/s/ Kevin J. Orsini
Kevin J. Orsini
*Counsel for Defendants-Petitioners*