TAB 23

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE SOUTHERN DISTRICT OF TEXAS

 3                             HOUSTON DIVISION

 4    GEORGIA FIREFIGHTERS'         §      CASE NO. 4:20-cv-00576
      PENSION FUND                  §      HOUSTON, TX
 5                                  §
      VERSUS                        §      WEDNESDAY,
 6                                  §      JANUARY 10, 2024
      ANADARKO PETROLEUM            §
 7    CORPORATION, ET AL.           §      9:33 AM TO 10:15 AM

 8                            STATUS CONFERENCE

 9              BEFORE THE HONORABLE CHARLES R. ESKRIDGE
                   UNITED STATES MAGISTRATE JUDGE
10
                               APPEARANCES:
11

12        FOR THE PARTIES:              SEE NEXT PAGE

13        COURT REPORTER:               DISA MCKINNIE-RICHARDSON

14        COURT CLERK:                  JENNELLE GONZALEZ

15

16

17

18

19

20

21                      TRANSCRIPTION SERVICE BY:

22                    Veritext Legal Solutions
                   330 Old Country Road, Suite 300
23                      Mineola, NY 11501
                  Tel: 800-727-6396 ▼ www.veritext.com
24
          Proceedings recorded by electronic sound recording; transcript
25                    produced by transcription service.
```

```
 1                              APPEARANCES:

 2

 3    FOR THE PLAINTIFF:            ROBBINS GELLER RUDMAN & DOWD, LLP
                                    Rachel Jensen
 4                                  Daniel Drosman
                                    Luke Brooks
 5                                  655 W. Broadway
                                    San Diego, CA 92101
 6                                  619-231-1058

 7                                  KENDALL LAW GROUP
                                    Joe Kendall
 8                                  3811 Turtle Creek Blvd, Suite 825
                                    Dallas, TX 75219
 9                                  214-744-3000

10    FOR THE DEFENDANTS:           SHIPLEY SNELL MONTGOMERY, LLP
                                    George Shipley
11                                  717 Texas Avenue
                                    Houston, TX 77002
12                                  713-652-5920

13                                  CRAVATH SWAINE & MOORE, LLP
                                    Kevin Orsini
14                                  Lauren Rosenberg
                                    825 Eighth Avenue
15                                  New York, NY 10019
                                    212-474-1000

16

17

18

19

20

21

22

23

24

25
```

```
 1           HOUSTON, TEXAS; WEDNESDAY, JANUARY 10, 2024; 9:33 AM
 2           THE COURT:  We're hearing 20-576, In Re Anadarko
 3    Petroleum Corporation Securities Litigation.  Can you get
 4    appearance of counsel, please for plaintiffs?
 5           MR. BROOKS:  Luke Brooks from Robins Geller Rudman
 6    and Dowd for the plaintiffs.
 7           THE COURT:  Thank you.
 8           MR. DROSMAN:  Good morning, Your Honor.  Daniel
 9    Drosman on behalf of the plaintiffs from Robbins Geller Rudman
10    and Dowd as well.
11           MS. JENSEN:  Good morning, Your Honor.  Rachel Jensen
12    from Robbins Geller Rudman and Dowd on behalf of plaintiffs.
13           MR. KENDALL:  Your Honor, Joe Kendall, Kendall Law
14    Group.
15           THE COURT:  Thank you very much.  And for defendants.
16           MR. ORSINI:  Good morning, Your Honor, Kevin Orsini
17    from Cravath Swaine and Moore on behalf of defendants.
18           MS. ROSENBERG:  Good morning, Your Honor.  Lauren
19    Rosenberg from Cravath Swaine and Moore, also on behalf of the
20    defendants.
21           THE COURT:  Thank you.
22           MR. SHIPLEY:  George Shipley, Your Honor.
23           THE COURT:  All right.  Thank you.  Welcome back,
24    everyone.  It's been a while and thank you for your flexibility
25    in moving up an hour.  I ended up with a lot more motion
```

1    hearings that held firm after the new year than I expected.  So

2    there is, as I understand it, we have -- I have the competing

3    letters in front of me about what to do while the Fifth Circuit

4    still has appeal pending before them.  And I'd like to sort of

5    know a status update of where things are before them, but then

6    just overall on scheduling and there's other briefing that I

7    believe is pending before me, but I've never gotten response

8    briefs because of things that have been held.  And I just sort

9    of want to have a better understanding of what should be going

10   forward right now and what other motions in the near future

11   might be coming up for me.

12        So what's up at the Fifth Circuit right now?  I

13   assume briefing has closed and have you all argued yet?

14        MR. ORSINI:  Brief -- Your Honor, Kevin Orsini for

15   defense.  Briefing will be closed on Tuesday.

16        THE COURT:  Okay.

17        MR. ORSINI:  So our reply is being filed this coming

18   Tuesday so a week from yesterday.  And then the court has not

19   scheduled an argument date yet.  So we will be awaiting an

20   argument date, potentially decision.

21        THE COURT:  Does anybody have -- I don't off the top

22   of my head == have in mind how long between the close of

23   briefing and setting for argument?  This one's, I don't know

24   where they put it on their complexity level.  About three

25   months, do you think or?

1          MR. SHIPLEY:  I had somebody look at that.  And in

2     2018, there's been 14 cases that we could find with 23Fs for

3     appeals.

4          THE COURT:  Okay.

5          MR. SHIPLEY:  If you throw out the high one, which is

6     three years, the low one, which was five months.

7          THE COURT:  Okay.

8          MR. SHIPLEY:  From the time the appellant's brief is

9     filed -- ours overs was filed in October -- the range is from 8

10    months to 17 months for resolution.

11         THE COURT:  For resolution.

12         MR. SHIPLEY:  Yeah.  So that's the track record.

13         THE COURT:  So I'm actually surprised that it's that

14    long.  And again, I say I wonder how -- I think one of the

15    issues that's been -- there's two issues pending, right?  Am I

16    -- I looked at the briefing.  There's two main issues, the

17    surreply issue and then basically on the evidence that was

18    there, whether it supported certification, is that right?

19         MR. ORSINI:  In addition to Daubert issue, but yes,

20    Your Honor.  That's largely right.

21         THE COURT:  Okay.  All right.  That's interesting.

22    So have you all discussed, I mean, it is the Cravath letter

23    that I have before me that brings us here today.  So I'm going

24    to hear from you all first.  Is there anything else that you

25    would like to bring me up to speed on or anything else that we

1    should address before we just turn to those letters?  Okay.

2    Mr. Orsini.

3              MR. ORSINI:  Thank you, Your Honor.  So we obviously,

4    as we just covered, we have the 23F that will be fully briefed

5    on Tuesday.  We have the resolution of the petition from the

6    Fifth Circuit on the privileged document issues.  I do think,

7    Your Honor, that there's obviously good cause and good

8    arguments to stay everything in this court until the 23F

9    petition is resolved.  Certainly, I think before we get to

10   responding to some of the other motions that you were alluding

11   to when you took the bench, summary judgment and things like

12   that, those certainly, in our perspective, ought to await

13   resolution of the class cert appeal, but I don't really think

14   that's before the Court right now.

15             THE COURT:  No, it's not.  Let me ask if your -- I

16   looked on my end and I have --there's a number of motions.

17   They were filed sealed and then alternate versions were -- some

18   of alternate versions were filed not under seal and there's

19   motions to exclude certain testimony of experts.

20             MR. ORSINI:  Right.

21             THE COURT:  There are summary judgment.  Is the

22   briefing closed on any of that?

23             MR. ORSINI:  No.  So what happened --

24             THE COURT:  That's what I thought.  So we don't have

25   right motions.

```
 1              MR. ORSINI:  Correct.  What happened with that, Your

 2    Honor, was -- and that does relate to why we're here today.

 3              THE COURT:  Yes.

 4              MR. ORSINI:  We had filed our motions for summary

 5    judgment.  We filed a series of Daubert motions with respect to

 6    their execution.

 7              THE COURT:  That's where we were under the prior

 8    scheduling order, But procedural events have moved on.

 9              MR. ORSINI:  Precisely.  And then the Court decided

10    the privilege waiver issue.

11              THE COURT:  Yes.

12              MR. ORSINI:  And held that privilege had been waived.

13    And what the parties stipulated to and the Court ordered was

14    that we would not close briefing on the summary judgment and on

15    the Daubert motions until the privileged documents either

16    definitively were ruled not to have to be produced or were

17    produced.  The theory being that that would give them the

18    opportunity to see those materials before they responded to our

19    motion.

20              THE COURT:  Otherwise we'd be redoing everything as

21    it is.  Okay.  I've got it.

22              MR. ORSINI:  Precisely.

23              THE COURT:  And that's what I thought.

24              MR. ORSINI:  And at the time, Your Honor, we did have

25    the class certification decision where Your Honor had certified
```

1    the class.  We did not have the development that the court had

2    accepted, the circuit court had accepted the 23F petition.  So

3    at the time, we didn't T closing those substantive briefs on

4    resolution of a class cert appeal because it had not been

5    accepted yet.  So that's the status of those briefs.  So I

6    certainly think, you know, to the extent and when that all

7    comes up from our perspective, finalizing briefing on summary

8    judgment and substantive issues ought to wait.  But the

9    question is, what do we do with respect to the privileged

10   documents now?

11           I do think, Your Honor, as we set forth in the

12   letter, there would be a good reason to stay even that until we

13   have the class certification decision.  But our position is,

14   Your Honor, if you'd like to move forward with that so at least

15   something is progressing in the case while the 23F is resolved,

16   we believe the appropriate next step would be to appoint a

17   special master as the Court had suggested in it earlier orders

18   and as the Fifth Circuit talked about and allow the parties to

19   work with the special master with respect to the documents.

20   There are, to remind the Court, roughly 450 documents.

21           THE COURT:  I was going to request an update on that.

22   You-all were to confer.  I take it nothing's been turned over,

23   but have any disputes been narrowed at all or is it all the

24   documents are going to have to be reviewed?

25           MR. ORSINI:  So, I think ultimately, Your Honor, the

```
1    overwhelming majority of the documents are going to have to be
2    reviewed.  We've gone back and looked at them.  My
3    understanding from the last set of meet-and-confers that my
4    team had with plaintiffs is it remains their position that all
5    of these documents need to be produced, regardless of whether
6    it's opinion work product, regardless of whether it's legal
7    advice.  We obviously have a different view on that.  And there
8    are out of the 450 documents, we've gone back and looked at
9    them.  We haven't just been sitting waiting.  Roughly 375 of
10   those, at a minimum, we believe will involve questions for a
11   special master.
12             THE COURT:  Such as?
13             MR. ORSINI:  As to whether we are -- we really do
14   need to produce it if it's just opinion work product, whether
15   the attorney-client advice really does need to fall within the
16   scope of waiver from a fairness perspective.  Because as the
17   Court, I'm sure, recalls the rationale Your Honor articulated
18   for the waiver was they're entitled to know essentially what
19   facts went to the SEC and what facts didn't.
20             THE COURT:  And then so, and you -- I haven't seen
21   the documents either obviously --
22             MR. ORSINI:  Right.
23             THE COURT:  -- that within some documents, I guess
24   you're saying, are purely just legal opinion, but some other
25   documents it's witnesses have told us X and here's what we
```

1    think legally on that, but it's going to take a lot to separate

2    fact from opinion.

3              MR. ORSINI:  Precisely, Your Honor.

4              THE COURT:  Okay.

5              MR. ORSINI:  And that's why we think ultimately, it

6    makes sense.  I suspect the Court doesn't want to be the one

7    wading into those 450 documents.  If the Court does, we can

8    start that process.  But if not, a special master, I think,

9    let's get that process going so that we can submit them to the

10   special master.

11             THE COURT:  Yeah.

12             MR. ORSINI:  We can talk about a process for doing

13   that and we can try and get those issues resolved.

14             THE COURT:  You know, I really love doing privilege

15   with you especially back in the day.

16             MR. ORSINI:  I figured.

17             THE COURT:  It's almost right at the number where

18   it's doable.  But then I -- also I don't have an understanding

19   of how long -- great, it's 450 documents.  How many pages are

20   each of those documents?  And are some of them voluminous?

21             MR. ORSINI:  I don't know the total number, Your

22   Honor, but many of them are voluminous in the sense that the

23   ones that present I think some of the most interesting

24   questions either the Court or the Special Master will have to

25   resolve, particularly as it relates to potential redactions,

1    are interview memos.

2              THE COURT:  Yeah.

3              MR. ORSINI:  So these are part of the internal

4    investigation that was done, interview of witnesses and exactly

5    the example that the Court just used.  There will be part that

6    says witness at X, Y, and Z.  Here's our legal advice or here's

7    our opinion on that.  And so there will be some significant

8    amount of material to review.

9              THE COURT:  Okay.  All right.  Let me get the

10   plaintiff's view at this point.

11             MR. BROOKS:  Sure, Your Honor.  Our view at this

12   point is that there should be no stay, that there's going to be

13   some work to do in terms of getting these documents and

14   implementing the Court's order.  What we've asked for in our

15   letter brief is for the Court to implement its order.  And that

16   meant a meet-and-confer for the defendants to identify the

17   documents to us, which they contest as outside the scope of the

18   Court's order.  And for us to then make a determination as to

19   whether a special master is needed, whether we have a dispute

20   about whether a special master is needed and take our proposal

21   to the Court.

22             The defendants have not -- it sounds like at this

23   point, they've gone through and they've identified the issues

24   that they believe are issues here.  They haven't told us what

25   those are.  It sounds like they have an issue with opinion work

```
 1    product generally, Your Honor.  And I'm surprised to hear that
 2    because they've conceded in the Fifth Circuit, they've told us
 3    several times that the Court's order covers opinion work
 4    product.  They wrote to the Fifth Circuit and asking, you know,
 5    in seeking the writ of mandate.  The district court's order
 6    covers all materials relating to the AIC investigation without
 7    exception and thus requires Anadarko to disclose opinion work
 8    product.  Obviously, witness memos themselves can be classified
 9    as opinion work product.  So we're really in the dark here as
10    to two things.
11              THE COURT:  Well, let me ask this.  Do you read my
12    order compelling production of documents as saying that as to
13    pure opinion, as opposed to facts -- maybe I said it that
14    expressly.  I would want to look at the context of what I said
15    when that's been called into question.  And actually, Mr.
16    Orsini, I'll ask you to be thinking about where are you going
17    to point me in my order that says that.  And I may be
18    embarrassed when you say, well, you said it quote verbatim
19    right here.  But is that what you --
20              MR. BROOKS:  That's our read of the order, Your
21    Honor.  And that's because it's the scope of the waiver was the
22    AIC investigation and the AIC -- and there was a waiver of
23    attorney-client privilege.  There was a waiver of work product
24    in the AIC investigation.  And these witness memos, what was
25    presented to the SEC, what wasn't presented to the SEC, all of
```

1   it is inextricably intertwined, Your Honor.  And to try to

2   tease out advice, for example, if in a witness memo, a witness

3   says X and the attorney says, well, the witness says X, but

4   this isn't incredible because two other witnesses said Y,

5   that's going to be, in their view, opinion work product or

6   attorney-client advice.  Or if they're saying to the company or

7   the audit committee, we should include these with these

8   witnesses or a discussion of these types of issues, but let's

9   keep these out from the SEC, that's all relevant and falls

10  within the scope of the order.

11          So I'm surprised to hear that these 375 documents --

12          THE COURT:  I guess I would - right, I hear what

13  you're saying.  And I also have not seen what documents and

14  things that were background were actually presented to the SEC

15  and anyone else, you know, investigating it in that

16  administrative capacity.  Because if it included a lot of

17  opinion material, but it's only the favorable opinion material,

18  then perhaps I'd be looking at it on the special master that's

19  like well the negative assessments if you were giving only the

20  positive spins, should the negatives.  But if it's really,

21  these are the interviews that we took and it's the fact --

22  here's the facts that we gave, but it's not pushing through

23  lawyer opinion apart from, you know, argument once they're

24  there -- I'm talking about the background things -- well, I

25  think that the view about that might be different.

1          MR. BROOKS:  Well, Your Honor, I appreciate that.
2    And I feel as though --
3          THE COURT:  And so I guess I would just say it's from
4    the standpoint of I haven't seen any of the material that's
5    being withheld.  I also haven't seen what was actually deemed
6    to be okay and not privileged to be given to the SEC when they
7    were doing their investigation.  So I'm not sure what the
8    apples-to-apples comparison is at this point.
9          MR. BROOKS:  Well, we have seen, Your Honor, the
10   PowerPoint presentation that they gave.  That was the subject
11   of the original motion and, in part, as I understand it, sort
12   of the impetus of the ruling.  There were statements in that
13   PowerPoint presentation, for example, that witnesses largely
14   agree on Point X or several witnesses said Y?  And that's sort
15   of peppered throughout that PowerPoint presentation.  And my
16   understanding -- just reviewing the transcript, I wasn't on the
17   case at the time -- was that that was a primary reason why
18   these witness memos and this work product needed to be turned
19   over because when you're characterizing, which they were, what
20   the witnesses were saying, the main primary question is what
21   weren't they saying?  And the same is true, Your Honor, for the
22   information that they were providing to their auditor, right?
23   And that's, this is an issue in the case.  They have their
24   expert criticizing our expert for not relying on certain things
25   that their auditor did.  They were in touch with the auditor,

 1    as the Court knows, time after time about this investigation.

 2    The auditors relied on the results of the investigation to

 3    issue their clean audit opinion with respect to Shen 3.  And so

 4    these -- respectfully, Your Honor, our understanding was that

 5    because of the way that the presentation was done and because

 6    of the record that was before the Court, that this issue had

 7    already been resolved.  And they took that position, Judge, in

 8    front of the Fifth Circuit.  They went and said to the court,

 9    take this writ because the district court is requiring us to

10    turn over opinion work product.  That was the entire thrust of

11    their --

12            THE COURT:  But also -- but Mr. Orsini is going to

13    stand up and say, yes, but we have the order from the Fifth

14    Circuit on mandamus that says, Judge, you're going to need to

15    take a close look at these documents because you-all had asked

16    for it as alternative relief previously.  I was surprised to be

17    mandamus when I gave you the alternative relief that you

18    requested that I'm making my ruling, but I'm going to be

19    looking at all of the documents individually.  I had already

20    said that I was going to do that.  And the Fifth Circuit has

21    now pointedly said you're going to need to do that.  And I'm

22    fine with that.

23            So it's not, I don't sit here looking at my prior

24    order and I have found the language in the order that does talk

25    about entire subject matter.  It's there at the very end, but

1    it is in a context that I mean -- the follow-on sentences, even

2    so, legitimate disputes may exist about specific documents that

3    assertively wouldn't fall under this waiver.  And I think

4    that's going to bring up the pure opinion versus pure fact

5    distinction that we're talking about.  So.

6         MR. BROOKS:  Understood, Your Honor.  I guess then

7    that brings us to the question of the special master and sort

8    of what they've proposed, which is to jump straight to a

9    special master without telling us which documents are at issue,

10   without telling us the issues that they have with those

11   documents.

12        THE COURT:  No, I know.  But from their standpoint,

13   that's the difficulty of them being able to talk with you about

14   it in advance is because they don't have a context within which

15   they're not having to get into privileged reasons why they

16   don't want to share that information in the first place.  So I

17   certainly understand that.  And so these privileged disputes,

18   it's always going to be in the context of whether it's a

19   conversation ex parte with me as the judge or the special

20   master first and he or she makes a recommendation and then I

21   would, I think, be deciding whether there's something that

22   there's a context within which you-all can then have a

23   conversation or what special master is going to think about

24   that, what should be disclosed in the conversation to figure

25   out so that your rights are preserved so that you can actually

1    make an argument about the documents.  So that -- it's always

2    tough in a privilege dispute like this.

3            MR. BROOKS:  I understand that it's difficult, Your

4    Honor, but just based on what Mr. Orsini said, if there's a

5    witness memo and there's legal advice in the witness memo,

6    there can be a description of what that legal advice is,

7    assessment of credibility, advice as to who to talk to next,

8    you know.  Without disclosing the actual contents of the

9    document, there's a lot of information that can be provided and

10   it's helpful because if they're going to say, for example,

11   legal advice or opinion work product regarding the credibility

12   of a witness, that's an argument that I would stand up and

13   make, Your Honor and we should -- that should be disclosed

14   given the context of this order and given what we're talking

15   about what was provided to the SEC, and I could make that

16   argument.

17           THE COURT:  But that's moving on to our merits of

18   like resolving that issue as opposed to, okay, should we be

19   doing something right now or not?  Right?  That's the -- how's

20   that process going to work when we get to that process, right?

21           MR. BROOKS:  Well, but it's also an understanding of

22   where do we have disputes and where do we not have disputes?

23   It's an understanding of how many documents are really at issue

24   and is there something we can give away?  He's right.  We've

25   said to this point we believe all of these documents fall under

1  the scope of the order because we've had a --

2           THE COURT:  It's how many documents --I mean it's

3  less than 500?

4           MR. BROOKS:  441 approximately.  That's a very

5  precise approximation.

6           THE COURT:  All right.  So because I've had other

7  cases where it's, you know, it's 10,000 documents.  If we were

8  in that category, I would be like, come on, we can figure

9  something out here and some can be turned over.  450 is a lot.

10  It will take time to review it and stuff, but that is not, you

11  know, seemingly infinite array or, to my mind, definitely over

12  designated range of documents on which -- because again, we're

13  in a position where I don't think the dispute is they're

14  abusing their privilege log and they're designating things for

15  privilege that aren't privileged.  We're in a context where, I

16  would think, at least presumptively, as I'm thinking about it

17  right now, it is privileged.  It's been legitimately designated

18  as privilege.  The question is whether that was waived.

19           So I'm coming at it from the viewpoint with

20  sensitivity that, yes, this, in the regular context of

21  litigation, it would be privileged.  And if their privilege log

22  was only 450 documents at the outset, you wouldn't be coming in

23  and saying there's just way too many things designated as

24  privilege.  It couldn't possibly -- and have the special master

25  looking at it in terms of making decisions about whether

```
 1    privilege itself has been legitimately invoked.  Right, Mr.
 2    Orsini?  I mean, that's in part, your argument, right?
 3             MR. ORSINI:  I agree with that, Your Honor.
 4             THE COURT:  Okay.
 5             MR. BROOKS:  Your Honor, just to clarify, so we are
 6    all on the same page.  Our understanding is that there were 536
 7    documents that were on the privilege logs that are in dispute
 8    here.  And I thought I heard Mr. Orsini say there were about
 9    375 that they're challenging.
10             THE COURT:  441 I think is the number that I just
11    heard, the specific approximation.
12             MR. BROOKS:  My understanding is -- and we can go
13    back and double check the number that you have in your mind --
14    but what I understand is there are 441 documents that are at
15    issue that are potentially within the scope of the Court's
16    waiver.  Of those 441 documents, there are -- excuse me --
17    approximately 375 that we believe present these issues of --
18             THE COURT:  Oh, okay.
19             MR. BROOKS:  -- potential opinion work, product or
20    legal advice, which we would like to present to either the
21    Court or the special master consistent with Your Honor's order
22    and the Fifth Circuit order.
23             THE COURT:  Okay.  Got it.  Did we start out with a
24    universe that was greater than 500 at one point?  I sort of do
25    remember that.
```

1          MR. ORSINI:  Your Honor, from our perspective, there

2     are 536 documents at issue.  I don't -- I'm not sure where the

3     441 came from, but we can --

4          THE COURT:  Well so I'm just wondering if 90

5     documents have come off the list or something?

6          MR. ORSINI:  I think 90 documents have come off give

7     or take a number of documents -- and it may be those 90 -- have

8     actually come off the log in the course of going back --

9          THE COURT:  Have they been turned over at this point?

10         MR. ORSINI:  I believe so, yes, but we can talk about

11    this and confirm that.

12         THE COURT:  And so you-all confirm that and I would -

13    - just so the record is clear when you-all are talking about it

14    -- if things have come off the log and they haven't been turned

15    over, go ahead and turn them off.

16         MR. ORSINI:  Of course.  Of course.

17         MR. BROOKS:  So, Your Honor, I guess we're at the --

18         THE COURT:  See, so that's headway, right there.

19         MR. BROOKS:  Yes.  We're at the point, I guess, where

20    we should come up with a procedure for how to proceed.

21         THE COURT:  So here's, I do think -- and so then I

22    guess my last question would be as to these privileged

23    documents, given my ruling and the posture that it's back

24    before the Fifth Circuit, whether the class remains certified

25    or it goes to individual actions, you're still entitled to your

 1   review and you still want to get those documents, right?  So

 2   that's going to happen regardless of what's going on in the

 3   appeal.  And you-all tell me if I'm misunderstanding something.

 4           MR. BROOKS:  That's correct, Your Honor.

 5           THE COURT:  That's your perspective.  And is that

 6   correct?

 7           MR. ORSINI:  I think as a technical legal matter, of

 8   course, that's correct.  As a practical matter, we all know how

 9   the complexion of the case changes if a class isn't certified.

10           THE COURT:  That's why I've been wondering -- that's

11   also where -- but, of course, I don't have a representation

12   from you that it's like what if the Fifth Circuit says yes,

13   this stay certified, we'll, of course, settle within two months

14   of that ruling.

15           MR. ORSINI:  You know do not, Your Honor, which is

16   why I started with the point that as we put in our letter, Your

17   Honor, I think there's a good argument we should stay all of

18   this, but I'm not standing up here pounding the table that

19   that's what we ought to do.  We're perfectly willing to get

20   that process going with respect to the documents while the

21   Fifth Circuit does what it does.

22           THE COURT:  Because I wouldn't be surprised if the

23   special master, if it takes eight months. that the special

24   master process is going track into that.  And so maybe nothing

25   will have even been finally adjudicated and turned over by that

1    point.

2              MR. ORSINI:  Your Honor, the way I look at it is if

3    we have a process and it's a process that protects everybody's

4    rights, we might as well use the time.

5              THE COURT:  Okay.  So then let's talk about then --

6    I'm not ruling, I'm going to rule on it all together -- there's

7    the other -- you've asked for the entire stay, which then goes

8    into this briefing and which then I think goes into discovery

9    on the merits.  So let me get Mr. Orsini's views on that first

10   because that's, we haven't really -- you didn't really argue

11   that, you went right to the special master part.

12             MR. ORSINI:  Right.  So on the entire stay, Your

13   Honor, to stay all of this, the argument would be that the

14   Court has the discretion.  The Fifth Circuit has obviously

15   identified that there's at least some substantial possibility

16   of reversing the class cert decision because they took the 23F.

17   We don't know what they're going to do.

18             THE COURT:  Well, Mr. Shipley and the timing review

19   that you did on 23F, how many were reversed?

20             MR. SHIPLEY:  It's surprisingly high.

21             THE COURT:  Surprising high?  Well, you know, it's a

22   discretionary take so.

23             MR. SHIPLEY:  Well remember, many of those get

24   remanded, so there's not -- it's not a binary decision

25   necessarily.

```
 1              THE COURT:  Right.  And you go look at more things.
 2              MR. SHIPLEY:  That's on a different -- I don't have
 3    that the paper in front of me.
 4              MR. ORSINI:  And so the irreparable harm argument
 5    would be if we're forced to turn over documents that ultimately
 6    wouldn't be turned over or shouldn't have been turned over and
 7    the class ends up getting decertified and the case goes away,
 8    that's a harm to us long term as a practical matter.  That's
 9    the argument, Your Honor.  But again, as I said, if the Court
10    would like to move forward with the special master process,
11    we're okay with that.
12              THE COURT:  On the Special Master process.  And then
13    where were you all on discovery before things stopped?
14              MR. ORSINI:  Done.  Done.
15              MR. BROOKS:  Yeah, discovery --
16              THE COURT:  Discovery is over other than the special
17    masters?  Well that, okay, well, then that's interesting.
18              MR. BROOKS:  So discovery is done.  Experts --
19              THE COURT:  Not sure I was appreciating that.  Some
20    of the expert stuff might be redone depending on what gets
21    turned over.
22              MR. BROOKS:  Right.  And there may, Your Honor, and
23    we're not looking to do this, but if there is something that we
24    really need to --
25              THE COURT:  Well I guess I would say this as well.
```

1    Depending on what might get turned over, and then you see that,

2    you know, Employee X had had testified in deposition to

3    something, and now here's something that's saying -- you might

4    be like, well, if I had this, I would have deposed him on that.

5    But I guess I would take that up when and if it happened.

6          MR. BROOKS:  And we may decide, Your Honor, that we

7    have it and we can impeach them at trial and we can use it at

8    summary judgment and figure it out.  So the way that the state

9    of play right now is that the vast majority of the schedule

10   rests on, as Mr. Orsini said, the production of these documents

11   or the final ruling that they don't have to be produced.  So

12   the Daubert motions that have been filed but not responded to,

13   the summary judgment motion that's been filed but not responded

14   to, those have all been stayed with the trigger off of the

15   resolution of this issue.  The final pretrial order, I believe,

16   was vacated, Your Honor, in light of all of these appeals and

17   the stuff.  And I don't think  we're close to having a

18   conversation given, you know, where we are about putting that

19   back on and getting that process going.  We obviously are

20   anxious to get to trial, but we do want these documents.

21          THE COURT:  Right.

22          MR. BROOKS:  So we'd like the process to be as fast

23   and streamlined as possible.  And in terms of staying, the

24   plaintiffs do have -- the lead plaintiffs do have substantial

25   claims, Your Honor, in the millions of dollars.

 1          THE COURT:  That's what I figured they probably did.

 2    Okay.  Yeah.  And they have the staying power to do that.  Well

 3    there are practical realities that attend either way on whether

 4    it's certified -- certification holds or not.

 5          MR. BROOKS:  Right.  And the other point, I guess, on

 6    the certification and the assumption and them accepting 23F

 7    petition, is indicative of how they're going to rule, the 23F

 8    petition was largely, if not entirely, geared toward the

 9    procedural issue of the surreply.  They've expanded on the

10    appeal now that it's been accepted.  But the only thing that

11    the court has looked at is that argument.  And that argument,

12    in our view, is even if they win, likely to result in a remand

13    and further proceedings as opposed to a complete wipe out of

14    the opinion, which means we're going to be back and doing this.

15    And our view is let's get going on the stuff we can get going

16    on now so that we're not wasting this time.

17          THE COURT:  All right.  And there's really no other

18    discovery that needs to be done other than the special master

19    issue.  I just want to make sure that that's where we are.

20          MR. ORSINI:  That's certainly our understanding as

21    the defense, Your Honor.

22          THE COURT:  Okay.

23          MR. BROOKS:  Correct, Your Honor, at this point.

24          THE COURT:  All right.  All right.  I'm going to

25    order that we go forward on the special master proceedings and

1    it's -- we're going to need to figure out what those procedures

2    need to look like.  You-all are going to need to be figuring

3    that out, what the review process looks like with the special

4    master.  But then there's going to be a review that by him or

5    her that I then need to take a look at.  We need to make sure

6    everything -- all of that is final before anything's turned

7    over.  And so that's going to be some amount of time before we

8    have decisions on that.  But I do think that we ought to use

9    the time to get going forward on that.  And by the time -- I

10   guess I was leading into that by saying on this privileged

11   material, depending on how long that takes in the context of

12   where procedurally the case is at that point before the Fifth

13   Circuit, we may get to finality on that review.  And there will

14   be a last step of me saying, okay, now turn it over depending

15   on where the Fifth Circuit is or what's going on at that point

16   because I just want to make sure -- because it is privileged.

17   It's a question of whether it's waived and I just want to make

18   sure that before it goes over -- the cat's out of the bag once

19   it's disclosed -- we just need to make sure where we are at

20   that point, but there's a lot of process that needs to happen

21   before a final turnover would be made.

22           MR. BROOKS:  Your Honor, can I, can I make a request

23   and a suggestion?

24           THE COURT:  Yes.

25           MR. BROOKS:  The first is that there are a number of

1  documents that they are conceding fall within the scope of the

2  order and we'd ask that those be produced right away.  And in

3  addition, it sounds like there are redactions that they want to

4  make within certain documents.  And, you know, they've made an

5  argument that we can't tell you exactly why we're making these

6  redactions or objections.  But my request would be that they

7  produce the documents to us in redacted form so that we have

8  some context as we're going through this process.

9          THE COURT:  That's a -- it strikes me as a fair

10  request.  I think before ordering that, I would think that that

11  would be a first order of business before the special master.

12  Someone needs to take a look at the context of all of this and

13  understand what the arguments are.  And at the outset, I mean,

14  perhaps the first thing that the special master is doing is

15  narrowing down.  I know that your position is like -- from the

16  defendants is, well, we dispute everything that's going on

17  about this.  But given the order that there's aspects that are

18  no longer in dispute and will be turned over, I would think

19  that that would be the first order of business before the

20  special master and that gets over there in his or her judgment

21  so that you have some window into what these documents are and

22  what they look like so that you can at least have a

23  conversation in that respect about it.  But I think that's part

24  of the special master review process as opposed to me.  I hear

25  what you're saying, but for me to rule on it, I would need to

1    see something.  I'm not just going to blanket say, I don't even

2    know what it is that you're redacted, I don't know how many

3    pages the documents are, go ahead and turn it over.  We're

4    starting into a process on this to take a look at it.  And so I

5    think someone ought to take a look at it before that's ordered.

6              MR. BROOKS:  Understood, Your Honor.

7              THE COURT:  Okay.  So let's move forward on the

8    special master -- is there anything else, any other concerns

9    about special master process to be raised?  Now, it sounds to

10   me like we need to identify one.  We need to have also

11   procedures about how the review is going to go for the review

12   and the comment process.  But then also how -- what's final

13   there is kicked up to me to then review and approve or modify

14             MR. ORSINI:  That all sounds right to me, Your Honor.

15             THE COURT:  Okay.

16             MR. BROOKS:  Your Honor, I guess one last thing and I

17   think it's implicit in what we're talking about, but I just

18   want to make sure that they can now identify the documents

19   themselves that they're contesting so that we have a list of

20   that.  To date, we haven't received anything on that score.

21             THE COURT:  You haven't received what?

22             MR. BROOKS:  Any identification of which documents

23   they take issue with out of the 441, they have -- there's 375.

24   We just -- we don't -- we have no idea what's in play here.

25             THE COURT:  There is a previously produced privilege

1   log, right?

2           MR. ORSINI:  There has, Your Honor.  But what I

3   understand counsel to be saying is we produced the privileged

4   log.  He doesn't know which of the 441 or the 375 we think fall

5   into these buckets.

6           THE COURT:  Yes.

7           MR. ORSINI:  I think that's what he's saying.

8           THE COURT:  And what do you --

9           MR. ORSINI:  I expect we're going to have to produce

10  that very early as part of the special master process.  We're

11  working on that now.  And so, of course, we're going to have to

12  identify those for them.

13          THE COURT:  And is there -- do you know -- because

14  you didn't know whether from the 500 down to 441 those

15  documents have been produced.  Has there been a revised

16  privilege -- like a current live privilege log?

17          MR. ORSINI:  I believe so, Your Honor.  But if there

18  hasn't been, we will take care of that promptly before we even

19  get into the special master process.

20          THE COURT:  Let's make sure that you-all are on at

21  least the same page of the starting point of 441 documents if,

22  in fact, that's the right number at this point.

23          MR. ORSINI:  Yes.  Of course, Your Honor.

24          THE COURT:  All right.  I have appointed one other

25  special master.  It's in a sealed proceeding.  So there's

```
 1    nothing of guidance that I can give you from that.  But getting
 2    to that point, it started with the parties conferring as to who
 3    the special master was going to be and you-all negotiated what
 4    the process was going to be.  The special master ultimately
 5    commented on, you know, yes, procedurally, this looks like it's
 6    going to work.  And then I basically ratified what had been
 7    approved there.  And so have you-all thought through it all?  I
 8    mean I'm going to send you-all off to talk.  Have you talked
 9    about it at all or how long do you want to talk before you
10    report something to me on that?  How long do you think you need
11    to confer on it?
12           MR. BROOKS:  14 days maybe Your Honor.  I think
13    that's fine.
14           THE COURT:  Okay.  All right.  14 days for status
15    report.  And within that identity of a special master, I think
16    I don't have -- who's here from Houston?  I know you're here
17    from Houston.  You're from Dallas.
18           MR. SHIPLEY:  Dallas.
19           THE COURT:  Dallas.  Okay.  My preference would be
20    someone in the Houston legal community.  But you-all aren't
21    bound -- if you have, if both sides agree on somebody that's
22    perfect, that would be fine with me.   My preference would be
23    Houston.  And so see if you can get on the same page or give me
24    a list of, you know, three names from each of you and start
25    conferring on what you think the procedures are going to be.
```

1    Have either of you been through special master?  You'll have

2    some forms to start with I trust.

3              MR. ORSINI:  I haven't done a special master process

4    like this.  I've had special master panels that govern all

5    discovery which is a whole life of its own.  But I think there

6    might be some stuff from that we can adapt these proposals for.

7              MR. BROOKS:  Yes, similarly Your Honor.  We've had

8    special masters who've been brought in to, to rule on

9    discovery.  And, you know, those tend to slow things down and

10   everybody objects and it ends up in a bit of a morass.  So, you

11   know, we'll try to have procedures that streamline and avoid

12   that stuff to the extent that it's possible.

13             THE COURT:  You know we haven't talked about -- I

14   haven't referred anything to the magistrate judge on this and

15   haven't been intending to.  Would it be something appropriate

16   to refer to the magistrate judge and have it done in that

17   context?

18             MR. BROOKS:  In our view, yes, Your Honor.

19             THE COURT:  Okay.  And something -- I don't need

20   binding commitments on that one way or the other.

21             MR. ORSINI:  We're certainly open to considering

22   that, Your Honor, if I could consult with my client and then

23   we'll discuss with counsel and be part of the status report.

24             THE COURT:  So the magistrate judge that's paired

25   with me is Christine O'Brien, who was civil litigation.

 1    Smyser, Kaplan and Veselka was the balance of her career.  And

 2    so she's got a lot of window and insight into disputes like

 3    this, but also -- well disputes like this privilege, but also

 4    disputes like this because of security class action work.  So

 5    she might be a good fit for it.

 6              MR. ORSINI:  Okay.  We appreciate that suggestion,

 7    Your Honor.  We'll discuss it.

 8              THE COURT:  All right.  All right.  So two weeks to

 9    begin conferring on all of that and give me either a joint

10    submission or your views.  And I'll set us for a Zoom to

11    discuss it further and just make sure the next steps are going

12    the right way.  Does that make sense?

13              MR. ORSINI:  Yes, it does.  Thank you.

14              MR. BROOKS:  Thank you, Your Honor.

15              THE COURT:  All right.  So my other question then is

16    I have all of these pending motions and we'll be coming up on -

17    - because of the stay and because of what's going on in the

18    Fifth Circuit now, we will be coming up on one year that

19    they've been pending.  It's after discovery is closed.  I

20    understand that, but there's going to be a lot of procedure

21    that's happening.  The circuit is going to have something to

22    say at some point.  Are you-all going -- if it's in the

23    position where by the time I'm ordering okay, let's get

24    responses, you-all are going to want to, well we would like to

25    update our brief in light of -- you know, gosh, if we've known

1    what the Fifth Circuit said, at that point, we might have

2    briefed it differently originally.  Should we be refiling these

3    briefs once the Fifth Circuit process and starting the process

4    then?  I don't know that.  I just sort of feel like both sides

5    are going to want to freshen their views on where the case

6    actually is now and have their best foot forward on their

7    opening motion and then response and reply.

8              MR. ORSINI:  We certainly think that makes sense,

9    Your Honor.

10             MR. BROOKS:  Yeah, Your Honor.  I mean the way that

11   it's set up right now is that if there's a need to do that,

12   there's room for it.

13             THE COURT:  Utterly without prejudice.  It's just

14   there's going to be motions just sitting around doing nothing

15   while a lot of other stuff is happening.  And I know lawyers

16   are going to think, gosh, I really wish I could say this

17   differently.

18             MR. SHIPLEY:  I have a question.  Now what do you

19   have to do to get off that six month list?

20             THE COURT:  Well, enter an order that I have in mind

21   on something like this.

22             MR. SHIPLEY:  I think we're open to do whatever you

23   need to do that.  I just think that there might be some of

24   these motions that don't need to be totally refiled.

25             THE COURT:  Well even -- that's the thing is that to

1    -- is that the motions could be terminated without prejudice

2    and if you don't want to change them, you just resubmit them.

3              MR. ORSINI:  I think that's perfect.

4              MR. BROOKS:  That's the way to do it I think.

5              MR. SHIPLEY:  The only comment I have about the six-

6    month list, Judge, you probably figured out by now --

7              THE COURT:  I'm not so sure I'd agree with that.

8              MR. SHIPLEY:  The AO can't (indiscernible) order, you

9    know.

10             THE COURT:  Oh, I'm not -- I'm never worried about

11   that.  The bigger concern is my law clerk, sitting over here to

12   my right, who didn't have a view that a number of motions might

13   be coming off her six-month list when we came in here, but

14   there's just -- but there's literally not a context within

15   which I'm going to be able to rule on them and at that point,

16   they will be over a year old.  So hearing no objection.  I'm

17   going to terminate the motions without prejudice.  And either

18   when we're at the context to re-up these legal issues, you-all

19   can let me know and we'll figure out what we want to do then.

20   And you can refile them as is and it will take no more attorney

21   time and work to do that, or you can review them and freshen

22   them based on things that have happened since these were

23   originally filed.

24             MR. ORSINI:  Understood, Your Honor.

25             THE COURT:  Does that makes sense?

```
 1                    MR. ORSINI:  Yes, Your Honor.

 2                    THE COURT:  All right.

 3                    MR. ORSINI:  Thank you, Your Honor.

 4                    THE COURT:  I think that's all I have.  Anything

 5      else?

 6                    MR. ORSINI:  Nothing else from the defense.  Thank

 7      you.

 8                    MR. BROOKS:  Nothing from the plaintiffs.

 9                    THE COURT:  Thank you all very much.  We're adjourned

10      on this and I'll be back in the courtroom at 10:30 for the next

11      hearing.  Thank you.

12                    MR. ORSINI:  Thank you, Your Honor.

13                    MR. BROOKS:  Thank you.

14          (Hearing adjourned at 10:15 a.m.)

15                              *  *  *  *  *

16

17

18

19

20

21

22

23

24

25
```

1                          I N D E X

2

3                              RULINGS

4                                                    Page        Line

5   Special Master                                    25          24

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                     C E R T I F I C A T I O N

 2

 3        I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  January 19, 2023
```