# CRAVATH

Kevin J. Orsini
korsini@cravath.com
T+1-212-474-1596
New York

May 17, 2024

Re: *In re Anadarko Petroleum Corporation Securities Litigation*, No. 4:20-cv-0576

Dear Magistrate Judge Bryan:

     Defendants Anadarko Petroleum Corporation, R.A. Walker, Robert G. Gwin, Robert P. Daniels, and Ernest A. Leyendecker, III, respectfully submit this letter brief in support of their challenge to the applicability of the District Court's March 31, 2023 Order and Opinion Compelling Production of Documents (ECF 226-08[1], the "MTC Order").  For the reasons discussed below, the 380 privileged documents at issue, in part or in whole, fall outside the scope of the MTC Order, and their production should accordingly be limited.  Consistent with the Court's March 19, 2024 Order (ECF 224), Defendants are simultaneously submitting the 380 privileged documents *in camera*.  Defendants previously submitted *in camera* exemplars of the categories of privileged documents on May 15, 2024.  The documents are referred to herein by their privilege log number, and a privilege log is attached as Exhibit A.  To maintain consistency, the privilege log uses the log numbers for documents produced by Defendants and Audit Committee member Eric Mullins that correspond to the log number in their original privilege logs.

## A. Background

     Plaintiffs bring this putative securities fraud class action[2] on behalf of purchasers of Anadarko common stock between February 20, 2015, and May 2, 2017, alleging that Defendants made false or misleading statements regarding the commercial viability of a Gulf of Mexico oil field known as Shenandoah or "Shen."  According to Plaintiffs, the truth regarding the Shenandoah project—that it was not commercially viable—was revealed after the stock market closed on May 2, 2017, when Anadarko announced that the sixth well drilled ("Shen-6") had not encountered oil and that Anadarko had "suspended Shen operations, taken a $467 million

---

[1] Citations to ECF 226 are to the Joint Appendix of Prior Briefing filed with the Court on April 29, 2024.

[2] On April 25, 2024, the U.S. Court of Appeals for the Fifth Circuit vacated the District Court's class certification order and remanded for further proceedings.

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
CityPoint
One Ropemaker Street
London EC2Y 9HR
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006-1682
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

impairment and expensed $435 million in suspended exploratory well costs." (ECF 55 ¶ 7.)

Plaintiffs rely on allegations by Lea Frye, a former Anadarko engineer on the Shen appraisal project who had sought to participate in a company-wide involuntary layoff program. After her request was denied, she sent a letter to Anadarko alleging that Defendants violated the law by making overly optimistic statements about Shenandoah—a letter that she intended to submit to the SEC. (ECF 55 ¶ 73.) In response, Anadarko's Audit Committee (the "Audit Committee") retained the law firm Norton Rose Fulbright ("Norton Rose" or "NRF") to investigate her allegations. (ECF 226-05, Ex. A ¶ 4.) Norton Rose alerted the SEC to Ms. Frye's allegations, and the SEC opened an investigation. On May 9, 2016, Ms. Frye submitted two letters to the SEC alleging violations of the Dodd-Frank Act and securities laws. Assisted by Norton Rose, the Audit Committee investigated her allegations, including by interviewing witnesses, collecting documents and retaining experts (the "AAC Investigation"). During that investigation, Norton Rose was in frequent contact with the SEC and, at the SEC's request, produced documents relevant to Ms. Frye's allegations. (ECF 226-05, Ex. A ¶ 8.) Norton Rose presented its findings to the SEC in November 2016 and, after entering into a confidentiality agreement with the SEC, produced the slides from its final presentation and accompanying expert reports in December 2016. (*Id.* ¶ 9.) All documents Norton Rose gave the SEC, expert reports, slides presented to the SEC and written communications between Norton Rose and the SEC were produced to Plaintiffs in this litigation. (ECF 226-05, Ex. A ¶ 12.)

While the investigation was ongoing, Norton Rose and the Audit Committee periodically updated Anadarko's independent auditor, KPMG, on the status of the investigation. Documents prepared by KPMG regarding its review of Ms. Frye's allegations have been produced to Plaintiffs, with redactions to the extent Norton Rose's work product is incorporated into those documents. (*See* ECF 226-03, Ex. A.) Anadarko also provided J.P. Morgan with information regarding the investigation in advance of a September 2016 offering of Anadarko common stock, for which J.P. Morgan served as lead underwriter. (ECF 226-03, Ex. A at 50.) The investigation was not described in any public statements associated with the offering. Norton Rose did not disclose any privileged communications to these third parties. (ECF 226-05, Ex. A ¶ 6.)

In January 2017, the SEC sent Norton Rose a "Termination Letter", stating that it had "concluded the investigation" into Anadarko and that "[b]ased on the information [it] ha[d] as of th[at] date, [the SEC] did not intend to recommend an enforcement action." (ECF 226-03, Ex. C.) The letter noted that it was "in no way [to] be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation." (*Id.*)

This action commenced on February 19, 2020 (ECF 1), and the operative complaint was filed on August 17, 2020 (ECF 55). During fact discovery, Defendants deposed several of Plaintiffs' representatives. In one deposition, Defendants asked whether the Termination Letter changed the deponent's view of the allegations in the complaint. The deponent responded that it did not. (ECF 226-03, Ex. D, Boyle Dep. Tr. 76:9-19.) In another deposition, Defendants asked about the deponent's knowledge regarding the Termination Letter *after* the deponent testified that the SEC had "upheld" the contents of the whistleblower letter, which it had not:

Q. What's your understanding of what happened with the whistleblower claims?

A. I believe they were upheld by the SEC.

. . .

> Q. Do you understand this letter to be an indication that the SEC has upheld the whistleblower claims against Anadarko?
>
> A. I understand it to reflect that it can't be construed that there is no further action to arise.
>
> Q. But you previously said that you understood the Securities and Exchange Commission had upheld claims against Anadarko related to the whistleblower claims, and I am asking where in this letter do you see an indication that the claims have been upheld?
>
> A. Well, the phrase upheld is not used in the letter.

(ECF 226-05, Ex. C, Younger Dep. Tr. 112:21-24; 116:7-20.)  Plaintiffs deposed several (18) of Anadarko's current and former employees, including 15 of the witnesses who Norton Rose had interviewed during the AAC Investigation.

During discovery, Plaintiffs sought to obtain privileged documents related to the AAC Investigation.  As relevant here, Defendants, the individual members of the AAC and KPMG have all withheld (or produced with redactions) privileged documents.  On April 13, 2022, Plaintiffs moved to compel production of withheld or redacted investigation-related documents. (ECF 226-03.)  Plaintiffs argued that because Defendants had asked the two class representatives limited questions about the non-privileged Termination Letter in deposition, Defendants waived attorney-client privilege and work-product protection over the AAC Investigation.  Plaintiffs moved to compel all communications between the Audit Committee and Norton Rose withheld on attorney-client privilege grounds on the basis that sharing "broad portions of the AAC investigation to third-parties"—including "internal documents", "witness interviews", "findings" and the presentation to the SEC—"operated as a subject-matter waiver as to *all* documents on the subject".  (*Id.* at 3, 8.)  Based on further review of the documents subject to the motion, Defendants and the AAC members produced several documents that had been withheld.

While the motion to compel was pending, the parties completed fact and expert discovery.  On March 16, 2023, the parties filed motions under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Defendants moved for summary judgment.  Neither Defendants' summary judgment motion or *Daubert* motions rely on the deposition questions about the Termination Letter, or even mention the AAC Investigation, SEC investigation, the SEC's decision not to bring charges or any advice from Norton Rose.  Defendants have never argued that Ms. Frye's allegations are unfounded because the SEC did not bring an enforcement action.  Nor have Defendants relied on the AAC Investigation as a defense in the case.

On March 31, 2023, Judge Eskridge granted Plaintiffs' motion to compel, finding that Defendants used the Termination Letter as a sword and shield.  (ECF 226-08 at 7.)  Judge Eskridge reasoned that "Anadarko can't separate the *result* of the SEC investigation from the facts and representations by attorneys that went *into* that investigation" and that "this extend[ed]" to "what Anadarko chose *not* to present to the SEC." (*Id.*)  Judge Eskridge concluded that Defendants had waived attorney-client privilege and work-product protection over the subject matter of the Audit Committee's investigation because Anadarko "can't now selectively withhold documents and defend itself through such use of the SEC's termination letter, while

3

simultaneously restricting [Plaintiffs'] access to the underlying facts that the SEC relied upon and which Norton Rose presented—or chose to withhold."  (*Id.* at 8.)

On April 27, 2023, Defendants moved for reconsideration of the MTC Order. (ECF 226-10.)  Defendants argued that they did not—and could not—waive privilege by referencing the non-privileged Termination Letter in two depositions.  (*Id.* at 9-12.)  Defendants explained that they had not relied on the Termination Letter to rebut Ms. Frye's allegations and they had not used the existence or results of the privileged AAC Investigation as a defense to any of Plaintiffs' claims.  Defendants also argued that the District Court's subject-matter waiver was disproportionately broad in light of the applicable case law, which holds that such situations rarely, if ever, result in a waiver of opinion work product.  (*Id.* at 12-15.)  Moreover, Defendants stipulated that they would not introduce or rely on the Termination Letter at trial if the Court did not find a privilege waiver.  (*Id.* at 10.)  On June 30, 2023, Judge Eskridge denied that motion.  (ECF 226-13.)

Defendants sought a writ of mandamus reversing the MTC Order.  (ECF 226-14.)  While the Fifth Circuit denied that petition, it issued an order noting its "concern" regarding "the potential scope of the privilege waiver granted by the trial court".  (ECF 226-19 at 2.)  The Fifth Circuit interpreted the MTC Order as permitting Defendants "an opportunity to challenge waiver and reassert privilege as to specific documents."  (*Id.* (citing ECF 173 at 9).)  The Fifth Circuit accordingly "advise[d] the trial court, or the appointed Special Master, to scrutinize challenged documents and consider its decisions regarding the scope of the waiver carefully."  (*Id.*)

During a status conference on January 10, 2024, Judge Eskridge ordered *in camera* review of the withheld and redacted AAC Investigation documents to determine which documents fall within the MTC Order's scope.  Judge Eskridge recognized that some AAC Documents may contain "purely legal opinion" while others may reflect facts shared by witnesses in the investigation, and that it could "take a lot to separate fact from opinion." (ECF 226-23, Jan. 10, 2024, Hr'g Tr. at 9:23-10:2.)  On January 29, 2024, Judge Eskridge referred this case to Your Honor to review the documents "upon which Anadarko maintains a claim of privilege."  (ECF 226-25 at 2.)  Defendants seek to reassert privilege or work product protection over 380 documents (the "AAC Documents").[3]

**B. Argument**

The AAC Documents contain, in whole or in part, legal advice or opinion work product that falls outside the scope of the MTC Order.  The AAC Documents should be protected from disclosure to the extent they do not contain facts learned in the AAC Investigation.

### 1. The Scope of the MTC Order Is Limited to Facts the Audit Committee and Its Counsel Learned During the Audit Committee Investigation.

The scope of the MTC Order is appropriately limited to documents or portions thereof that show facts the AAC and its counsel, Norton Rose, learned during the AAC Investigation. The basis for Judge Eskridge's order compelling production was that Plaintiffs should have access to the facts learned during the AAC Investigation that were disclosed to the SEC as well

---

[3] As advised at the January 10, 2024, conference before Judge Eskridge, Defendants have agreed not to challenge certain documents related to the AAC Investigation.  Defendants accordingly have produced 93 documents related to the AAC Investigation that were previously withheld or redacted.

4

as those that the Audit Committee and its counsel chose not to disclose to the SEC. (ECF 226-8 at 7-8.) Indeed, the Court found sword and shield waiver based on any limiting of Plaintiffs' access "to the underlying facts" that Norton Rose chose to present or withhold from the SEC. (*Id.* at 8.)

Because the MTC Order applies only to the facts underlying the AAC Investigation, the MTC Order does not extend to legal advice sought by or provided to Anadarko or its Audit Committee. Nor does it extend to counsel's opinion work product related to the AAC Investigation. Norton Rose's legal advice and the opinions or mental impressions of counsel do not inform Plaintiffs of the facts related to Ms. Frye's claims that were learned during the AAC Investigation.

Limiting the scope of the MTC Order in this way—to the underlying facts that Norton Rose learned during the AAC Investigation—is consistent with the manner in which courts define the scope of waiver. As the Supreme Court has recognized, corporations routinely share the results of internal investigations with government agencies and other third parties without waiving privilege, as privilege does not protect the underlying facts learned during investigation. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *see United States v. El Paso Co.*, 682 F.2d 530, 538 n.10 (5th Cir. 1982). While Judge Eskridge's finding of waiver was premised in part on "confidential communications between Norton Rose and Anadarko that were *apparently* revealed to the SEC, KPMG, and JP Morgan," (ECF 226-8 at 9 (emphasis added)), Judge Eskridge never made a finding that the sharing of any of that information itself constituted a waiver. Indeed, there is no evidence that Anadarko or its counsel ever disclosed privileged communications. For work product, subject-matter waiver "is usually reserved for instances in which the quality or substance of the attorney's work product has been directly placed at issue in the litigation." *Grigson v. Farmers Grp., Inc.*, No. 1:17-CV-00088-LY, 2019 WL 3781439, at *2 (W.D. Tex. Aug. 12, 2019). Even where courts have found subject-matter waiver, they have refrained from waiving protection over opinion work product. *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 499, 501 (W.D. Tex. 2020). Here, as the MTC Order makes clear, what is at issue are the facts that Norton Rose learned during the AAC Investigation and either chose to disclose to or withhold from the SEC. Counsel's work product that does not reveal those facts is not "at issue" and, therefore, not subject to the scope of the MTC Order.

Limiting the scope of the MTC Order to the underlying facts is also fair. As the Second Circuit highlighted in *In re County of Erie*—a case the Fifth Circuit cited favorably in *In re Itron, Inc.*, 883 F.3d 553 (5th Cir. 2018)—subject matter waiver is appropriate in light of the "unfairness to the adversary of having to defend against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *John Doe Co. v. United States*, 350 F.3d 299, 304 (2d Cir. 2003), *as amended* (Nov. 25, 2003). Here, as Judge Eskridge recognized in the MTC Order, the "pertinent privileged materials" that may refute any use of the Termination Letter in this litigation are those that contain the facts that Norton Rose learned during the AAC Investigation and chose to either disclose to or withhold from the SEC. (*See* ECF 226-8 at 7-8.)

### 2. AAC Documents Not Containing Facts Learned in the Audit Committee Investigation Are Protected from Production.

Because the scope of the MTC Order is limited to the facts that the Audit Committee and its counsel learned during the Audit Committee's investigation, the following categories of AAC Documents fall outside the scope of the MTC Order and protected against disclosure.

i. *Emails Regarding Legal Advice*. There are seven AAC Documents that consist of emails to or from counsel which request or provide legal advice related to the AAC Investigation, with no discussion of any facts relating to Ms. Frye's allegations, or any facts otherwise learned during the AAC Investigation. (Mullins Priv. Log Nos. 1-4, 12, 13, 18.) Because these emails do not contain any facts learned during the investigation, they fall entirely outside the scope of the MTC Order.

ii. *Draft Suspended Well Accounting and Controls Memoranda*. Several of the AAC Documents are drafts of two memoranda prepared by Anadarko at the direction of Anadarko in-house counsel, Jennifer Edwards. (Defs. Priv. Log Nos. 2, 3, 4, 238-46, 249-64, 267, 270-80, 282, 284-95, 297-307.) These memoranda concern the way in which Anadarko accounted for suspended wells and the company's related controls. The drafts do not contain facts learned during the AAC Investigation; while the final drafts of these memoranda were provided to Norton Rose and may have informed Norton Rose counsel as they conducted the AAC Investigation, the issues addressed in these draft memoranda were not discovered as the result of any interviews or document review performed by Norton Rose. Importantly, the final versions of these memoranda have both been produced to Plaintiffs. The drafts reflect legal advice and attorney opinion work product, including comments and edits by Jennifer Edwards, Anadarko's in-house counsel. These drafts, therefore, fall outside the scope of the MTC Order in their entirety.

iii. *Legal Accounting Memorandum*. One of the AAC Documents is a memorandum prepared by Norton Rose attorney John Byron regarding suspended well accounting. (Defs. Priv. Log No. 821.) This memorandum contains legal analysis and does not discuss facts learned in the AAC Investigation and thus falls outside the scope of the MTC Order in its entirety.

iv. *Emails Regarding Disclosure Legal Advice*. There are two AAC Documents that include email communications containing legal advice provided by Anadarko's in-house counsel regarding disclosures in Anadarko's 10-Q. (Mullins Priv. Log Nos. 44, 45.) These emails do not mention any facts learned during the AAC Investigation. They fall outside the scope of the MTC Order in their entirety.

v. *Audit Committee Member Notes*. The AAC Documents contain one set of handwritten notes of Audit Committee member Eric Mullins. (Mullins Priv. Log No. 38.) This document includes notes from calls with Norton Rose attorneys Shauna Johnson and Gerry Pecht regarding counsel's proposed procedures related to the AAC Investigation. These notes do not include any facts learned during the investigation and thus fall entirely outside the scope of the MTC Order.

vi. *Norton Rose Invoices*. Several of the AAC Documents consist of Norton Rose invoices for legal services rendered in connection with the AAC Investigation and emails attaching those invoices. (Mullins Priv. Log Nos. 40, 41, 54, 55, 56, 57, 58, 59, 67, 68, 69, 70, 71, 72, 73.) These invoices contain detailed billing entries describing the work performed by Norton Rose. Those detailed entries reveal the subject of requests for legal advice and attorney work product

without revealing any facts that Norton Rose learned during the AAC Investigation. Similarly, the cover emails contain no facts from the investigation. These documents fall entirely outside the scope of the MTC Order.

vii. *Email Regarding Counsel Impressions of SEC Investigation*. One of the AAC Documents consists of an email chain with Norton Rose attorneys and Anadarko's in-house counsel regarding counsel's opinions and mental impressions of the SEC's investigation. (Defs. Priv. Log No. 331.) This email chain does not include any facts learned during the AAC Investigation and, therefore, falls outside the scope of the MTC Order.

viii. *KPMG Call Talking Points*. The AAC Documents include two internal Norton Rose memoranda that reflect Norton Rose's talking points for calls with KPMG. (Defs. Priv. Log Nos. 567, 847.) These talking points reflect counsel's opinion work product regarding what to discuss with KPMG about the process and procedures that Norton Rose intended to employ, and was employing, to assist the Audit Committee with its investigation. The memoranda do not include any discussion of facts learned during the AAC Investigation.

ix. *KPMG Working Papers*. Two of the AAC Documents produced by KPMG are workpapers that contain redactions of Norton Rose attorney work product. (KPMG Priv. Log Nos. 127, 129.) The redacted portions of these documents do not contain any facts learned in the AAC Investigation; they instead reflect counsel's opinion work product. The redacted language in these workpapers falls entirely outside the scope of the MTC Order.

x. *KPMG Memoranda Regarding Unrelated Investigation*. Five of the AAC Documents are KPMG memoranda and a workpaper concerning audit procedures related to an investigation concerning the development of Anadarko's liquified natural gas project in Mozambique. (KPMG Priv. Log Nos. 44-46, 66, 68.) These documents do not contain any discussion of Shenandoah or the investigation conducted by Anadarko's Audit Committee related to Ms. Frye's allegations. Because they are entirely unrelated to the AAC Investigation, these documents fall outside the scope of the MTC Order.

3. **To the Extent AAC Documents Contain Facts Subject to the MTC Order, the Remainder of those Documents Should Be Redacted to Exclude from Production Legal Advice and Counsel's Mental Impressions or Opinion Work Product.**

The categories of documents described below contain, to some degree, a discussion of counsel's mental impressions of, or references to, facts learned during the AAC Investigation. While production of the underlying facts may be appropriate under the MTC Order, the remaining portions of the documents that do not include facts and instead constitute a request for or provision of legal advice or contain counsel's mental impressions and opinion work product should be redacted as that material falls outside the scope of the MTC Order.

i. *Norton Rose Information Requests*. Certain email correspondence with Anadarko's in-house counsel concerns requests made by Norton Rose for information and documents in the course of the AAC Investigation. (Defs. Priv. Log Nos. 210, 215, 216, 226-37.) These emails were sent for the purposes of requesting or providing legal advice related to Ms. Frye's allegations. As detailed below, some of these emails and attachments do not contain or discuss any facts learned during the AAC Investigation, while others contain a mix of facts and other information provided for the purpose of obtaining legal advice.

  (1) <u>Accounting Disclosures</u>:  This email chain and attachment forwarded to Anadarko in-house counsel, Jennifer Edwards relate to accounting disclosures.  (Defs. Priv. Log No. 210.)  The email and attachment contain no facts learned during the AAC Investigation and, therefore, fall outside the scope of the MTC Order.

  (2) <u>Other Information Requests</u>:  These emails with counsel relate to information requests by Norton Rose for the purpose of providing legal advice in connection with the AAC Investigation.  (Defs. Priv. Log Nos. 215, 216, 226-37, 269, 327, 328.)  To the extent these emails and any attachments reflect facts that may be subject to the MTC Order, Defendants reassert attorney-client privilege over the remainder of the documents, and such portions should be shielded from production as falling outside the scope of the MTC Order.

ii. *Audit Committee Call Talking Points*.  One of the AAC Documents is a set of Norton Rose's internal talking points for a call with the Audit Committee.  (Defs. Priv. Log No. 851.)  This document reflects counsel's mental impressions and opinion work product regarding witness interview statements, in addition to counsel's work product concerning procedures related to the investigation.  This document also includes certain references to facts learned by Norton Rose during the AAC Investigation.  To the extent these references to facts may be subject to the MTC Order, Defendants reassert work product, including opinion work product, over the remaining portions of the documents, and such portions should be shielded from production as they fall outside the scope of the MTC Order.

iii. *KPMG and SEC Call Memoranda*.  Six of the AAC Documents are memoranda prepared by Norton Rose attorneys that reflect counsel's opinions and mental impressions regarding calls with KPMG and the SEC.  (Defs. Priv. Log Nos. 653, 783, 842, 850, 855, 909.)

  (1) <u>SEC Call Memorandum</u>:  This memorandum reflects counsel's mental impressions regarding a call with the SEC.  (Defs. Priv. Log No. 842.)  This memorandum does not include facts learned during the AAC Investigation and thus falls outside the scope of the MTC Order.

  (2) <u>KPMG Call Memoranda</u>:  These memoranda include redactions of information reflecting counsel's mental impressions and opinions regarding witness interviews and calls with KPMG.  (Defs. Priv. Log Nos. 653, 783, 850, 855, 909.)  The redacted language includes limited references to facts learned during the AAC Investigation.  To the extent those references to facts may be subject to the MTC Order, Defendants reassert work product, including opinion work product, over the remaining portions of the documents, which should be shielded from production as falling outside the scope of the MTC Order.

iv. *Audit Committee Meeting Minutes*.  Several of the AAC Documents reflect Norton Rose's memorialization, in both draft and final form, of Audit Committee Meeting Minutes.  These meeting minutes include counsel's summary of counsel's presentations of legal advice and opinion work product to the Audit Committee.  The vast majority of these documents do not include any discussion of facts learned during the AAC Investigation, as detailed below.

  (1) <u>Meeting Minutes Not Containing Any Facts Learned in the AAC Investigation</u>:  The majority of the meeting minutes of the Audit Committee do not reflect any facts

learned in the AAC Investigation and, thus, fall outside the scope of the MTC Order. (Defs. Priv. Log Nos. 592, 593, 596, 598, 663, 664, 707, 711, 751, 753-57, 759-62, 766, 767, 779, 785, 790, 826, 833, 852, 866, 884.)

(2) <u>Meeting Minutes Reflecting Counsel's Mental Impressions of Ms. Frye's Allegations</u>:  Five of the meeting minutes memoranda reflect counsel's presentation of Ms. Frye's allegations, without otherwise discussing any facts learned by counsel during the AAC Investigation.  (Defs. Priv. Log Nos. 597, 600, 609, 752, 758.)  Plaintiffs in fairness have no need for these documents.  Ms. Frye's allegations were the subject of the SEC's investigation, and Plaintiffs have the documents that were produced to the SEC.  Ms. Frye was also deposed in this litigation.  There is nothing that Plaintiffs would learn from these meeting minutes regarding the facts that Norton Rose either chose to produce to or withhold from the SEC.

(3) <u>Meeting Minutes Reflecting Facts Learned During the AAC Investigation</u>:  A single set of Audit Committee meeting minutes reflects counsel's summary and impressions of certain facts learned during the course of the AAC Investigation.  (Defs. Priv. Log No. 768.)  To the extent this document contains facts that may be subject to the MTC Order, Defendants reassert work product, including opinion work product, over the remainder of the document.

v.     *Draft SEC Presentations*.  The AAC Documents include several internal Norton Rose drafts of the presentation that was made to the SEC.  (Defs. Priv. Log Nos. 747, 748, 750, 763, 765, 770, 777, 778, 871-74, 876.)  The final presentation made to the SEC has been produced to Plaintiffs.  These drafts reflect counsel's opinion work product, including opinions regarding the organization of the material in the presentation.  To the extent these draft presentations contain facts learned during the investigation, those facts are largely duplicative of the facts that were presented to the SEC in the final presentation that has been produced to Plaintiffs.  Accordingly, fairness does not warrant disclosure of these drafts, particularly because disclosure, even in redacted form, would reveal the mental impressions of counsel.  *See, e.g.*, *Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 2014 WL 3385130, at *4 (E.D. La. 2014) (holding that draft affidavits were protected from disclosure where redacting draft affidavits "would reveal the attorneys' mental impressions" and "strategies of counsel"); *Dixie Mill Supply Co., Inc. v. Cont'l Cas. Co.*, 168 F.R.D. 554 (E.D. La. 1996) (holding that draft versions of final letters were protected attorney work product).

vi.    *Draft Audit Committee Presentations*.  The AAC Documents also include drafts of an internal presentation that Norton Rose made to the Audit Committee regarding the AAC Investigation.  (Defs. Priv. Log Nos. 677, 678, 698, 699, 701-04, 718, 722, 744-46, 769.)  These drafts reflect counsel's opinion work product, including the way in which the information in the presentation is presented and organized, as well as legal advice.  Like the draft SEC presentations, production of these draft presentations even in redacted form would reveal counsel's mental impressions.

vii.   *Anadarko Culture and Conduct Memorandum*.  Among the AAC Documents is a memorandum prepared by Norton Rose attorney Jesika Silva Blanco addressed to fellow Norton Rose attorney Shauna Johnson Clark regarding the culture and conduct at Anadarko.  (Defs. Priv. Log No. 695.)  This memorandum reflects counsel's mental impressions and opinion work

9

product regarding witness interviews and other evidence of the culture and conduct at Anadarko. To the extent this memorandum contains facts that may be subject to the MTC Order, Defendants reassert work product, including opinion work product, over the remaining portions of the document.

viii.     *Witness Interview Memoranda.*  The AAC Documents include several internal Norton Rose memoranda, including in draft form, regarding witness interviews that describe facts shared by the interviewed witnesses and also reflect Norton Rose's mental impressions of those facts. (Defs. Priv. Log Nos. 578, 591, 606, 615, 621, 623, 626, 632, 634-36, 641, 643, 645-50, 652, 654, 655, 659, 660, 662, 670, 673, 688-94, 696, 705, 713, 715, 719, 724, 725, 740, 741, 776, 816, 817, 837, 838, 857, 858, 860, 862, 864, 883, 887, 891-99, 901, 908, 913.) These memoranda are not transcripts of the witness interviews; rather they include counsel's summaries and mental impressions of the statements made by witnesses.  To the extent these memoranda contain facts learned during the AAC Investigation that may be subject to the MTC Order, Defendants reassert work product, including opinion work product, over the remaining portions of the documents.  *See In re Stone Energy Corp.*, 2008 WL 4868086, at *4 (W.D. La. 2008) (finding memoranda created by counsel "based on oral statements of witnesses whom [counsel] decided to interview" "reflect a deliberative process in the analysis of what information was relevant to the investigation at issue and which of [the company's] employees and third parties would be likely to have that information"); *see also United States v. Mississippi*, 2018 WL 4956658, at *5 (S.D. Miss. 2018) (witness interview statements, "particularly an attorney's summary of a witness's interview, constitute work product and are not ordinarily discoverable" (citing *S.E.C. v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006))); *United States v. Lockheed Martin Corp.*, 2010 WL 11561451, *5 (S.D. Miss. 2010) ("As a result of *Hickman* [*v. Taylor*, 329 U.S. 495 (1947)], attorney notes taken during witness interviews are, for all practical purposes, always privileged.").

ix.     *Draft KPMG Memoranda*.  The AAC Documents include several draft memoranda prepared by KPMG that were produced with redactions of Norton Rose's work product.  (KPMG Priv. Log Nos. 1-22, 24, 26-43, 47-65, 67, 69-83, 85-126, 128, 130-33.)  The redacted language in these memoranda reflect counsel's mental impressions and opinion work product related to the AAC Investigation, both with respect to the procedures and process of the investigation and certain facts learned during the investigation.  To the extent the redacted language contains facts learned during the AAC Investigation that may be subject to the MTC Order, Defendants reassert work product, including opinion work product, over the remaining redacted portions of the documents.

x.     *KPMG Internal Emails*.  Finally, the AAC Documents include two internal KPMG email chains regarding the status of the AAC Investigation that were produced with redactions of Norton Rose's work product.  (KPMG Priv. Log Nos. 23, 25.)  The redacted language in these emails reflect counsel's mental impressions and opinion work product related to the AAC Investigation, both with respect to the procedures and process of the investigation and certain facts learned during the investigation.  To the extent the redacted language contains facts learned during the AAC Investigation that may be subject to the MTC Order, Defendants reassert work product, including opinion work product, over the remaining redacted portions of the documents.

        Respectfully,

        */s/ Kevin J. Orsini*

        Kevin J. Orsini

Magistrate Judge Bryan
   United States Courthouse
      515 Rusk Avenue
         Room 7007
            Houston, Texas 77002

VIA ECF

Copies to all counsel of record

**CERTIFICATE OF SERVICE**

I certify that on May 17, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: May 17, 2024

                                          */s/ Kevin J. Orsini*
                                          Kevin J. Orsini