**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Rachel L. Jensen
rachelj@rgrdlaw.com

May 31, 2024

The Honorable Christina A. Bryan                                                                    VIA ECF
U.S. District Court for the Southern District of Texas
515 Rusk Street, Room 7007
Houston, Texas 77002

Re:   *In re Anadarko Petroleum Corp. Sec. Litig*, No. 4:20-cv-00576 (S.D. Tex.)

Dear Judge Bryan:

Plaintiffs write in opposition to Defendants' May 17, 2024 letter (ECF 233). In referring this document review to Your Honor, Judge Eskridge explained: "Prior order in this action determined that Defendant Anadarko Petroleum Corporation waived attorney-client privilege and work-product privilege with respect to the ***entire subject matter*** of the investigation conducted by the Anadarko Audit Committee." ECF 226-25 at 1, 4.[1]  Judge Eskridge based the waiver finding both on Anadarko's sword-and-shield use of the investigation and strategic disclosures of information and counsel's findings to the SEC, KPMG, and J.P. Morgan. MTC Order at 2, 9.  As a result: "Fairness thus dictates that waiver extend to the entire subject matter of the AAC investigation." *Id.* at 9.

Judge Eskridge accommodated Defendants' request to challenge "specific documents that assertedly wouldn't fall under the waiver" (ECF 226-25 at 1) and referred this review to Your Honor to determine if Defendants carried their burden to show "each document does or does not fall within the scope of the ***prior finding of privilege waiver***." *Id.* at 2.  Instead, Defendants attempt a wholesale re-do of the motion to compel they lost twice before Judge Eskridge and once before the Fifth Circuit.  Defendants also seek to artificially limit the waiver to "facts the AAC and its counsel, Norton Rose, learned during the AAC investigation," which, Defendants assert, means that ***all*** 380 documents on their log "fall outside the scope of the MTC Order." ECF 233 at 4.  This Court's mandate, however, is not to revisit Judge Eskridge's order finding waiver and its scope, but to determine if a challenged document falls outside that scope.  Defendants' position is also untenable, as it contradicts the MTC Order's plain language and their own admission to the Fifth Circuit that the waiver includes, among other things, opinion work product.  Worse, Defendants' position would render the MTC Order a nullity, and their proposal to redact all but out-of-context snippets of "facts" would render any production useless.

To faithfully apply Judge Eskridge's MTC Order, the twin rationales of fairness and completeness are paramount.  As Judge Eskridge reasoned in his order finding subject-matter waiver:

> Anadarko seeks to rely on the SEC's termination letter to indicate that the whistleblower's allegations were unfounded or false because the information uncovered upon investigation, when presented to the SEC, resulted in it choosing ***not*** to pursue an enforcement action.  But Anadarko at the same time wants to shield the underlying information that went into that decision by the SEC – or that potentially was withheld from it.  To the contrary, Anadarko can't separate the ***result*** of the SEC investigation from ***the facts and representations by attorneys*** that went into that investigation.  And this quite naturally extends to and

---

[1] Judge Eskridge cited the March 31, 2023 motion to compel Order (ECF 226-8) ("MTC Order") and June 30, 2023 reconsideration Order (ECF 226-13).  Unless noted, emphasis is added and citations and internal quotation marks are omitted.

**Robbins Geller**
**Rudman & Dowd** LLP

Hon. Christina A. Bryan
May 31, 2024
Page 2

> encompasses – in terms of both fairness and completeness – what *Anadarko chose not to present to the SEC*.

MTC Order at 7 (some emphasis in original). This necessarily includes Norton Rose's opinion work product. After all, Norton Rose's 250-slide PowerPoint presentation to the SEC (also given to KPMG a day earlier) included not only facts but also attorney mental impressions and opinions about witness testimony, documents, expert analyses, and legal conclusions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 1 at APC-00002728-29.[2]

Nevertheless, there are some documents the parties can agree fall outside the waiver scope. Subject to this Court's *in camera* review, Plaintiffs agree that KPMG memoranda about an unrelated investigation and administrative emails or invoices that do not reflect facts, analyses, or opinions relating to the whistleblower allegations or the resulting investigation fall outside the waiver.[3] The rest of the documents should be produced without further delay.

## I.     Relevant Background.

Leading up to and during the Class Period, Defendants hailed the Shenandoah ("Shen") oil field as a multi-billion-dollar opportunity, "one of the company's largest discoveries ever in the Gulf of Mexico" and a "giant" – meaning 500+ million barrels of recoverable oil. ECF 55, ¶¶30-36. Defendants declared each Shen appraisal-well an unequivocal success, providing glowing reports quarter-after-quarter, even after Shen-3 came up dry and Shen dwindled to a fraction of the size Defendants led the market to believe. *Id*. Defendants kept hyping Shen after engineers and internal auditors told them they were wrong, and after senior engineer and subsurface lead, Lea Frye ("Frye"), blew the whistle to the SEC. *Id*., ¶¶37-80. Internally, Anadarko's CEO wanted to kill the project five quarters before the company finally wrote off Shen. ECF 180-7 at 131 (¶¶304-305). It was not until after close-of-market on May 2, 2017, that Defendants disclosed to investors that Shen was a billion-dollar money-pit. Still, Defendants kept the fraud hidden long enough to escape with $160 million in golden parachutes when Occidental acquired Anadarko. ECF 55, ¶¶81-85, 156. A Fifth Circuit opinion publicly revealed Frye's whistleblower claims in 2019. *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285 (5th Cir. 2019). This action followed.

### A.     The Whistleblower Complaint.

After raising concerns internally for years, Frye blew the whistle to the SEC in May 2016. At Anadarko, Frye was widely respected for her professional judgment, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[4] Mere months before Frye resigned in protest, her boss described her as a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Among other things, Frye's whistleblower complaint "alleged that Anadarko originally overstated the potential of the project to investors but didn't correct those projections when it

---

[2] All exhibits referenced herein are attached hereto unless otherwise noted.

[3] These documents include Defs. Priv. Log Nos. 44-46, 66, 68 and Mullins Priv. Log Nos. 40-41, 54-59, 67-73. The privilege log entries referenced herein are attached as Exhibit A to Defendants' letter. *See* ECF 233-1.

[4] Ex. 2 at 60:22-72:25, 246:8-249:17; Ex. 3.

Robbins Geller
Rudman & Dowd LLP

Hon. Christina A. Bryan
May 31, 2024
Page 3

became clear that the project was less than half the size previously stated." MTC Order at 1.

    **B.    The AAC's Investigation into the Whistleblower Complaint and Selective Disclosures to the SEC, KPMG, and J.P. Morgan.**

In the wake of Frye's whistleblower complaint, the AAC hired law firm Norton Rose to investigate. Norton Rose was in close contact with the SEC throughout 2016, providing select details and sharing counsel's mental impressions and opinions about the investigation. It did the same with third-party auditor KPMG. ECF 226-3 at 37[5] (KPMG inquired about "contradictory evidence around the accounting for Shen-3 in December 2014, including whether there were any discussions between Anadarko and its other partners. Gerry [Pecht, of Norton Rose] represented [REDACTED]."). Also, in connection with a planned equity offering, Anadarko's general counsel held a conference call with lead underwriter J.P. Morgan to discuss "in detail" the investigation's status and Norton Rose's preliminary "findings." ECF 226-3 at 9, 34.

On November 21, 2016, Norton Rose previewed for KPMG the PowerPoint they intended to present to the SEC the following day. *Id.* at 39. KPMG was granted "full access" to the presentation, including a Q&A session with Norton Rose "[a]fter reading through the presentation." *Id.* at 40.

On November 22, 2016, Norton Rose presented counsel's findings from the AAC investigation to the SEC in a lengthy PowerPoint presentation. Ex. 1 at APC-00002563, 2796. The presentation spanned 250 slides, lasted over 4.5 hours, and included an unscripted Q&A session. MTC Order at 2. The presentation was marked "Attorney-Client Communication and Attorney Work Product" and expressly stated: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 at APC-00002563-64.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g., id.* at APC-00002585, 2627, 2638, 2643, 2726. The presentation also contained sections with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at APC-00002658-70, 2728-29. For example, Norton Rose represented to the SEC:



---

[5] Pincites in citations to briefing attached to ECF 226 are to the ECF-generated numbers at the top of each page.

4867-2284-9220 v1

Hon. Christina A. Bryan
May 31, 2024
Page 4

*Id.* at APC-00002728-29.  In the end, Norton Rose dissuaded the SEC from taking enforcement action.  On January 10, 2017, the SEC sent Norton Rose a letter terminating its investigation of Anadarko "[b]ased on the information we have as of this date."  ECF 226-3 at 68.  KPMG was also satisfied by Norton Rose's analysis and findings and issued Anadarko a clean audit opinion.  ECF 226-11 at 11-12, 17.

### C. Judge Eskridge Twice Finds Subject-Matter Waiver, and the Fifth Circuit Denies Defendants' Writ of Mandamus.

On April 13, 2022, Plaintiffs moved to compel the production of over 500 documents concerning the AAC investigation withheld or redacted as privileged or work product, including KPMG workpapers and 36 AAC member documents.  ECF 226-3; ECF 226-6; ECF 226-7.  Plaintiffs argued Defendants selectively disclosed investigation information to third parties like KPMG, the SEC, and J.P. Morgan when there was something in it for them.  And, then, having used the selective disclosures to dissuade SEC action, Defendants used that declination against Plaintiffs in their depositions.  To respond, Plaintiffs needed the full picture.  MTC Order at 3, 8; ECF 226-3 at 71, 74.

On March 31, 2023, the Court issued the MTC Order.  ECF 226-8; ECF 226-9.  The Court found Defendants waived privilege and work product as to documents related to the AAC investigation by selectively disclosing privileged information and work product, including counsel's "findings" to the SEC, KPMG and J.P. Morgan and putting the SEC termination "at issue" in Plaintiffs' depositions.  MTC Order at 2, 7-9.  The Court reasoned Defendants could not in fairness use the SEC termination letter while shielding "the underlying information that went into that decision by the SEC – or that potentially was withheld from it."  *Id*. at 7.  The Court emphasized that "Anadarko can't separate the ***result*** of the SEC investigation from the ***facts and representations*** by attorneys that went ***into*** that investigation" as well as "what Anadarko chose ***not to present*** to the SEC."  *Id.* (some emphasis in original).  Fairness and completeness considerations, including record evidence "that a significant portion of confidential communications between Norton Rose and Anadarko was apparently revealed to the SEC, KPMG, and JPMorgan," dictated the waiver extends to the entire subject matter of the investigation.  *Id.* at 9.

Defendants sought reconsideration, offering belatedly not to use the SEC termination letter at trial.  ECF 226-10.  Plaintiffs opposed, pointing out that not only had Defendants already lost the argument but that, since the motion to compel was first briefed, Defendants continued using the SEC termination and KPMG's clean audit opinion to gain litigation advantages.  *See* ECF 226-11 at 16-17.  For example, Defendants' interrogatory responses confirm their affirmative defense of good-faith reliance on KPMG, which in turn relied heavily on Norton Rose's analyses and conclusions about the investigation for its third quarter of 2016 review and 2016 audit opinion.  *Id.* at 11-12, 16-17.  Further, Defendants' March 16, 2023 motion for summary judgment relies on an accounting expert opinion, which in turn relies on KPMG's clean audit opinion and the presentation Norton Rose made to the SEC (and KPMG).  *Id*.  On June 30, 2023, the Court denied Defendants' motion, rejecting their argument that "the finding of broad subject-matter waiver is disproportionate to the nature of the waiver." ECF 226-13 at 2.

After the Court denied Defendants' motion for reconsideration, Defendants petitioned the Fifth Circuit for a writ of mandamus, acknowledging that the broad subject matter waiver found by the Court encompassed opinion work product.  ECF 226-14 at 39.  The Fifth Circuit denied the petition, finding there was no clear error in the Court's MTC Order.  ECF 226-14; ECF 226-17-226-18; ECF 226-19 at 1.

Robbins Geller
Rudman & Dowd LLP

Hon. Christina A. Bryan
May 31, 2024
Page 5

On January 10, 2024, the Court held a status conference to discuss appointment of a special master to review any document challenged by Defendants. ECF 226-23. During the status conference, Judge Eskridge indicated that, if Norton Rose's SEC presentation included "opinion material, but it's only the favorable opinion material" then negative opinion material is also waived. *Id.* at 13:12-20.

On January 29, 2024, Judge Eskridge referred this matter to Your Honor, explaining: "Prior order in this action determined that Defendant Anadarko Petroleum Corporation *waived attorney-client privilege and work-product privilege with respect to the entire subject matter of the investigation* conducted by the Anadarko Audit Committee." ECF 220 at 1. Judge Eskridge noted "legitimate disputes may exist about specific documents that assertedly wouldn't fall under the waiver." *Id.* Thus, this Court's task is to review any documents challenged by Defendants and recommend "whether each document does or does not fall within the scope of the prior finding of privilege waiver." ECF 226-25 at 2.

## II. The Vast Majority of Challenged Documents Fall Within the Scope of the Waiver.

### A. Defendants' Narrow Waiver Interpretation Is Unsupportable Under the MTC Order's Plain Language and Rationale.

The MTC Order found Defendants' privilege and work product waiver "extend[s] to the entire subject matter of the AAC investigation." MTC Order at 9; *accord* ECF 226-25 at 1. As Judge Eskridge emphasized, that means not only to the "facts *and representations by attorneys* that went *into* that investigation" but also "what Anadarko chose *not* to present to the SEC." MTC Order at 7-8 (some emphasis in original).

Defendants understand this full well as their Fifth Circuit petition described the MTC Order as finding "a complete waiver of *all* privilege related to an independent investigation conducted by [the AAC] in response to the purported whistleblower letter, including: (1) *privileged communications between the company's Audit Committee and its outside counsel*, and (2) work product, including *opinion work product*, created by the Audit Committee's outside and in-house counsel in connection with its independent investigation into the whistleblower's allegations." ECF 226-14 at 13.

Defendants now ignore this binding judicial admission. In addition, their new position that the scope of waiver is limited to "facts learned in the investigation" finds no footing in the record. As explained above, Norton Rose's presentation contained not just the facts they chose to spoon-feed the SEC and KPMG, but also counsel's chosen mental impressions, analyses, and favorable legal opinions, ████████████████████████████████████████████████████████████████████████████ §I.B. Thus, to effectuate Judge Eskridge's ruling that, "in terms of both fairness and completeness," Plaintiffs are entitled to "what Anadarko chose *not* to present to the SEC" (MTC Order at 7-8 (emphasis in original)), the waiver includes those "combined thoughts and mental impressions," "analyses," and "conclusions" – *i.e.*, opinion work product – that Norton Rose presented as well as those mental impressions, analyses, and conclusions they *withheld*.

Further, as Defendants recognize, Judge Eskridge also based the waiver finding on Anadarko's selective disclosure of privileged and protected work product to external auditor KPMG and investment bank, J.P. Morgan. MTC Order at 9. Contrary to Defendants' representation, Judge Eskridge found the "*record establishes* that a significant portion of confidential communications between Norton Rose and

4867-2284-9220 v1

**Robbins Geller**
**Rudman & Dowd LLP**

Hon. Christina A. Bryan
May 31, 2024
Page 6

Anadarko was apparently revealed to the SEC, KPMG, and JP Morgan." *Compare id.*, *with* ECF 233 at 5 ("[T]here is no evidence that Anadarko or its counsel ever disclosed privileged communications."). Anadarko's disclosures were intentional and undertaken for business purposes – to obtain a clean audit opinion and complete a planned equity offering.[6] Rightly, the MTC Order found Defendants waived attorney-client privilege over the subject matter of the investigation, as the privilege cannot be selectively waived. *See* MTC Order at 8; *see also, e.g.*, *SEC v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009) (voluntary disclosure of privileged communications to external auditor, SEC, waived privilege as to all documents relating to investigation). Likewise, by deliberately sharing counsel's work product with the SEC, KPMG, and J.P. Morgan, Norton Rose also waived work product protection. MTC Order at 8.

Finally, contrary to Defendants' statements to this Court, they continue to use the investigation's results as a "sword" in this litigation. Defendants are asserting good-faith reliance on KPMG's clean audit opinion as an affirmative defense and submitted expert opinion in support of summary judgment that relied on KPMG's approval of Anadarko's Shen-related accounting. §I.C., *supra.* As discussed above, KPMG's clean audit was based in significant part on the facts, analyses, and conclusions provided by Norton Rose throughout the AAC investigation. *Id.* Thus, Defendants have no ground to complain that the scope of waiver found by Judge Eskridge is unfair.[7] More importantly, that is not an issue before this Court, whose mandate is to review specific documents to determine whether they fall within the scope of the waiver.

  **B.** **Defendants Failed to Carry Their Burden to Show Documents About What Was Presented to, or Withheld from, the SEC Fall Outside the Waiver.**

As explained above, Defendants' attempt to artificially limit the waiver to facts learned during the investigation is untenable based on the plain language and rationale of the MTC Order. Plaintiffs are entitled to all documents reflecting the subject matter of the investigation, including facts, analyses, and findings, provided to, or withheld from, the SEC. MTC Order at 2, 8. Based on Defendants' log descriptions, the challenged documents directly pertain to the subject matter of the investigation and concern "information that went into that decision by the SEC – or that potentially was withheld from it." *Id.* at 7. Accordingly, the vast majority of the challenged documents fall within the waiver.

Further, Defendants' proposal to redact all but "facts learned in the investigation" is unworkable. Defendants apparently intend to turn over a page of black ink but for a word or phrase here or there, rendering the MTC Order a nullity and any production useless.[8] This reinforces the importance of both the

---

[6] *See* Ex. 4 at 139:24-141:11 (KPMG's procedures for external auditor regarding Frye claims); ECF 226-3 at 34 ("In connection with the Company's planned equity offering on or around September 12, 2016, as part of the due diligence process, [KPMG] participated in a 30 minute teleconference call with Amanda McMillian, Anadarko General Counsel, along with lead underwriter's (JP Morgan) counsel – Akin Gump on September 8, 2016. Akin Gump partners, John Goodgame and Alice Hsu, were on the call. The Shenandoah whistle blower matter was discussed in detail by Mrs. McMillian, including status of the investigation, [and] preliminary conclusions reached . . . .").

[7] "'[A]t issue' waiver of work product is not confined to fact work product. Unlike when a party obtains work product based on a substantial need, when disclosure is ordered because the work product has been put 'at issue,' the waiver applies to everything that has been put 'at issue,' whether they be facts or opinions." *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 497-98 (W.D. Tex. 2020).

[8] Plaintiffs have repeatedly requested that Defendants provide Plaintiffs with redacted versions of documents they challenge only in part. Defendants' overbroad redaction proposal underscores why it is vital that Defendants produce redacted versions

4867-2284-9220 v1

**Robbins Geller Rudman & Dowd LLP**

Hon. Christina A. Bryan
May 31, 2024
Page 7

letter and spirit of the MTC Order that, in fairness and for completeness, Plaintiffs need all documents about the subject-matter of the investigation in order to test the information, analyses, and legal conclusions spoon-fed to the SEC that led to the SEC's termination letter. In addition to being inconsistent with the MTC Order and their own judicial admissions, Defendants' latest "facts learned" limitation is meritless as it is untethered to the information that went to (or was withheld from) the SEC.

1. **Witness Interview Memoranda**:[9] Witness memoranda are the quintessential documents falling within the scope of the waiver found by Judge Eskridge. Norton Rose's presentation to the SEC and KPMG contains dozens of attorney mental impressions and characterizations of the witnesses' testimony that are necessarily intertwined with the "facts," plus attorney analyses and legal ███████████████████████████████████████████████████████████████. *See, e.g.*, Ex. 1 at APC-00002574 (detailing witness interviews counsel conducted); *id.* at APC-00002585, 2595, 2601, 2613-14, 2627, 2632, 2638, 2643, 2659, 2661, 2669-71 (summarizing and characterizing witness statements, including that ████████████████████████████████████████████████████████████). To the extent that Defendants attempt to justify withholding these documents as "not transcripts of the witness interviews" (ECF 233 at 10), that excuse falls flat as the SEC presentation also expressly stated that ████ ██████████████████████████████████████. *See* Ex. 1 at APC-00002564. Plaintiffs are entitled to discover what about the witness interviews Norton Rose chose ***not*** to present. *See* ECF 226-9 at 35:6-36:3.

Further, Defendants' argument highlights their real objective; they urge this Court to reconsider Judge Eskridge's MTC Order. Nothing in the case law that Defendants cite suggests a different result where, as here, Judge Eskridge *already* determined Defendants used the subject matter of the opinion work product as a sword to gain a litigation advantage. *Compare* MTC Order at 8, *with* ECF 233 at 10 (citing *In re Stone Energy Corp.*, 2008 WL 48680866, at *4 (W.D. La. Nov. 4, 2008) (addressing selective waiver, not sword-and-shield doctrine); *United States v. Miss.*, 2018 WL 4956658, at *5 (S.D. Miss. Oct. 12, 2018) (explaining basic rule that where there is no waiver or compelling need or undue hardship shown opinion work product is not discoverable); *United States v. Lockheed Martin Corp.*, 2010 WL 11561451, at *5 (S.D. Miss. Dec. 9, 2010) (finding work product was not waived by affirmative use of privileged information)).

2. **Draft SEC Presentations** (Defs. Priv. Log Nos. 747, 748, 750, 763, 765, 770, 777, 778, 871-874, 876): Defendants claim "fairness does not warrant disclosure" of Norton Rose's draft SEC presentations because the facts "are largely duplicative of the facts that were presented to the SEC in the final presentation that has been produced to Plaintiffs." ECF 233 at 9. Leaving aside that Defendants' careful wording does not claim the facts were *identical*, this is exactly the point of the MTC Order – Defendants having used the result of the investigation as a sword, Plaintiffs are entitled to know what was ***not presented to the SEC*** and how and why the information was massaged as it was. *See* MTC Order at 8; ECF 226-9 at 32:23-33:12. Draft presentations – and the differences contained in those drafts from the final presentation – are critical to that understanding. And as explained above, Norton Rose acknowledged it was deliberately presenting the SEC with ██████████████████████████████████████████ ████████████████. Accordingly, "what was not presented" to the SEC necessarily

---

of the documents Defendants challenge so that Plaintiffs can adequately respond and seek relief from the Court as appropriate.

[9] These documents appear to be Defs. Priv. Log Nos. 578, 591, 606, 615, 621, 623, 626, 632, 634-636, 641, 643, 645-650, 652, 654-655, 659-660, 662, 670, 673, 688-694, 696, 705, 713, 715, 719, 724-725, 740-741, 776, 816-817, 837-838, 857-858, 860, 862, 864, 883, 887, 891-899, 901, 908, 913.

4867-2284-9220 v1

**Robbins Geller Rudman & Dowd LLP**

Hon. Christina A. Bryan
May 31, 2024
Page 8

encompasses Norton Rose work product. These documents must be produced.

  3. **Legal Accounting Memorandum** (Defs. Priv. Log No. 821): As with the above entry, this is a memorandum prepared by Norton Rose concerning "Shen-3 Accounting." As context, Norton Rose presented its legal conclusions to the SEC and KPMG that, contrary to Frye's allegations, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 at APC-00002729. The slide deck also contains dozens of slides addressing counsel's analyses of and findings about Shen-related accounting. Log No. 821 thus falls directly within the scope of the waiver: it concerns what Norton Rose knew about the propriety of Shen's accounting and, thus, what it chose to disclose to – and withhold from – the SEC.

  4. **Email Regarding Counsel Impressions of SEC Investigation** (Defs. Priv. Log No. 331) **and SEC Call Memorandum** (Defs. Priv. Log No. 842): These documents are critical to an understanding of what was or was not told to the SEC, the substance of the SEC investigation, and/or what the company needed to say or do in order to avoid an enforcement action. Thus, these documents fall directly within the scope of the "at-issue" waiver that resulted from Defendants' use of the SEC termination as a sword.

  5. **Anadarko Culture and Conduct Memorandum** (Defs. Priv. Log No. 695): Defendants describe this document as between Norton Rose attorneys reflecting impressions and opinions "regarding witness interviews" and other evidence of the "culture and conduct at Anadarko." This falls directly within the scope of the MTC Order, as Norton Rose represented to the SEC and KPMG: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 at APC-00002728-29. Norton Rose also provided mental impressions of witness interviews on these topics, stating, for example: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at APC-00002726. This document, thus, falls within the scope of the waiver.

  6. **Norton Rose Information Requests** (Defs' Priv. Log Nos. 210, 215, 216, 226-237, 269, 327-328): In the SEC presentation, Norton Rose presented its conclusion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.,* Ex. 1 at APC-00002728-29. In fairness and for completeness, Plaintiffs are entitled to know what information Norton Rose requested for purposes of its investigation to reach such sweeping conclusions. Moreover, "accounting disclosure" matters are squarely encompassed within the scope of the AAC investigation, as evidenced by Defendants' own description of the documents in the privilege log as information to Norton Rose for the "Frye investigation" or "Anadarko Audit Committee investigation." While Anadarko may not have literally "learned" the facts concerning the 2016 oil and gas disclosures during this investigation, Norton Rose certainly did, and counsel used the information in reaching their legal conclusions shared with the SEC and KPMG. As to those portions of the remaining log entries in this category for which Defendants attempt to reassert attorney-client privilege, they offer no reason they should be permitted to do so. As noted above, what Norton Rose requested is relevant to the conclusions counsel reached and presented to the SEC and to KPMG, and in any event, it is indisputable that the attorney-client privilege may not be selectively applied once waived. *See* MTC Order

4867-2284-9220 v1

**Robbins Geller Rudman & Dowd LLP**

Hon. Christina A. Bryan
May 31, 2024
Page 9

at 4-5; *Microtune*, 258 F.R.D. at 317.

    7.    **Draft Suspended Well Accounting and Controls Memoranda** (Defs. Priv. Log Nos. 2-4, 238-246, 249-264, 267, 270-280, 282, 284-295, 297-307): Defendants argue that these draft memoranda provided in response to a request for information by Norton Rose during the AAC investigation fall outside the scope of the waiver because, while final drafts were produced to Norton Rose and so informed its conclusions about Anadarko's Shen accounting, the drafts could not have done so. There are at least two problems with this. First, if Norton Rose based its analyses and conclusion on the final memorandum from Anadarko, then what Anadarko provided or withheld from Norton Rose necessarily informed what information about its accounting was provided to the SEC, putting these documents squarely within the scope of the subject-matter waiver. Second, the majority of these draft memoranda are identified on Defendants' privilege log as being shared with third-party KPMG (Defs. Priv. Log Nos. 3-4, 239-245, 249, 252-254, 257, 260-261, 263-264, 267, 270-273, 275-277, 279-280, 282, 284-287, 289-295, 297-303, 305-306) and at least one was provided to Norton Rose (Defs. Priv. Log No. 307). To the extent that these materials were shared with KPMG, Anadarko waived any attorney-client or work product privilege for that reason as well pursuant to the MTC Order. MTC Order at 9.

    8.    **Emails Regarding Disclosure Legal Advice** (Mullins Priv. Log Nos. 44-45): Defendants assert that these documents concern disclosures in Anadarko's Form 10-Q. Notably, however, Defendants do not assert that these emails are unrelated to the subject matter of Frye's allegations, the AAC investigation, or communications with the SEC. Defendants' sole basis that they do not mention any facts learned during the investigation is insufficient to exclude them from waiver.

    **C.**    **Documents Reflecting Facts, Analyses, and Conclusions Presented to, or Withheld from, KPMG Fall Within the Scope of the Waiver.**

    Defendants also failed to carry their burden to demonstrate work product shared with KPMG fall outside the scope of the waiver found by the Court. These documents include: (i) "KPMG Call" "talking points" (Defs. Priv. Log Nos. 567, 847); (ii) KPMG "Working [P]aper[s]" (KPMG Priv. Log Nos. 127, 129); (iii) KPMG call memoranda (Defs Priv. Log Nos. 653, 783, 850, 855, 909); (iv) KPMG "Draft [M]emorandum" (KPMG Priv. Log Nos. 1-22, 24, 26-43, 47-65, 67, 69-83, 85-126, 128, 130-133); and (v) "Internal KPMG [E]mail[s]" (KPMG Priv. Log Nos. 23, 25). To the extent that Norton Rose shared information regarding its facts, analyses, and conclusions relating to the AAC investigation with KPMG, such documents fall within the scope of the subject-matter waiver. Indeed, such documents will show what Norton Rose knew and believed about the subject matter of the AAC investigation – information squarely within the scope of the waiver given that Norton Rose selectively disclosed information to the SEC.

    Further, Defendants have used the KPMG audit opinion as a sword in this litigation, including by asserting a good-faith reliance defense, thus placing the information on which KPMG based its opinion "at issue." §I.C., *supra*. As KPMG's lead audit partner testified at deposition, [REDACTED]. *See* Ex. 4 at 141:1-143:5. To provide a clean audit opinion, KPMG required Anadarko to share information and conclusions, and they did so for this business purpose (not for litigation). Just as the Court explained about Defendants' use of the SEC termination, Defendants cannot separate the fruits of their selective disclosure

**Robbins Geller Rudman & Dowd LLP**

Hon. Christina A. Bryan
May 31, 2024
Page 10

of privileged and work product material (a clean audit) from counsel's representations that led to that result. Fairness and completeness require Plaintiffs have access to what KPMG was told and not told, so they can challenge Defendants' affirmative defense.

### D. Documents Concerning Norton Rose's Communications with the AAC.

Finally, Defendants did not carry their burden to show that Norton Rose's communications with the AAC about the AAC investigation fall outside the scope of the waiver. As shown above, Defendants' artificial limitation to "facts learned in the investigation" is unsupportable under the plain language and rationale of the MTC Order. Further, the documents reflect analyses and conclusions that were provided to the SEC and KPMG – or withheld from them. These documents should be produced.

1. **Draft AAC Presentations** (Defs. Priv. Log Nos. 677-678, 698-699, 701-704, 718, 722, 744-746, 769); **AAC Call Talking Points** (Defs Priv. Log No. 851); **AAC Meeting Minutes** (Defs. Priv. Log Nos. 592-598, 600, 609, 663-664, 707, 711, 751-762, 766-768, 779, 785, 790, 826, 833, 852, 866, 884): These draft presentations reflect what Norton Rose learned from the AAC investigation, including counsel's impressions of witness interviews, analyses, and findings, and so reflect information that Plaintiffs should, in fairness and completeness, receive to determine whether Norton Rose withheld any relevant fact, analysis, or finding from the SEC or KPMG.

2. **AAC Member Notes** (Mullins Priv. Log No. 38): Defendants describe this document as handwritten notes about Norton Rose's proposed procedures for the AAC investigation. ECF 233 at 6. This falls within the scope of the waiver, as it concerns the subject matter of the investigation and what information was or was not presented to the SEC or KPMG. MTC Order at 8. Norton Rose's presentation to the SEC [redacted] so as to dissuade the SEC from undertaking its own investigation. Ex. 1 at APC-0002572-76, 2736-39. Fairness and completeness requires that Plaintiffs have access to what other procedures were or were not proposed by Norton Rose, and any reaction that the AAC had to those suggested procedures.

3. **Emails Regarding Legal Advice** (Mullins Priv. Log Nos. 1-4, 12-13, 18): Defendants characterize these emails as "request[ing] or provid[ing] legal advice related to the AAC investigation, with no discussion of any facts." ECF 233 at 6. However, the Court found that Defendants waived attorney-client privilege with respect to "the entire subject matter of the AAC investigation." MTC Order at 4, 9. And as explained above, Norton Rose presented sweeping legal conclusions in its presentation to the SEC and KPMG, so Plaintiffs are entitled to know the advice from the investigation to know whether any relevant legal analysis or conclusions were withheld from the SEC.

Respectfully submitted,

*[signature]*

RACHEL L. JENSEN

RLJ:tdv
Attachments
cc: All Counsel of Record (*via ECF*)

4867-2284-9220 v1