# CRAVATH

Kevin J. Orsini
korsini@cravath.com
T+1-212-474-1596
New York

June 7, 2024

Re:  *In re Anadarko Petroleum Corporation Securities Litigation*, No. 4:20-cv-0576

Dear Magistrate Judge Bryan:

Defendants Anadarko Petroleum Corporation, R.A. Walker, Robert G. Gwin, Robert P. Daniels, and Ernest A. Leyendecker, III, respectfully submit this reply letter brief in further support of their challenge to the applicability of the District Court's March 31, 2023, Order and Opinion Compelling Production of Documents (ECF 226-08[1], the "MTC Order").

Despite unambiguous instructions of the Fifth Circuit that Defendants' reassertion of privilege over AAC Documents must be carefully considered, and Judge Eskridge's own clarification that the scope of the MTC Order distinguishes between "pure opinion versus pure fact", Plaintiffs continue to insist that any AAC Document that bears any relation to the AAC Investigation must be produced in its entirety.  (*See* ECF 226-19 at 2; ECF 226-23 at 15:24-16:5.)

Plaintiffs' position ignores both the Fifth Circuit's Order and Judge Eskridge's instructions and ignores these recent proceedings that have served to clarify (and narrow) the scope of the MTC Order.  That Order applies to facts that counsel learned in the course of the AAC Investigation—not to counsel's mental impressions and opinion work product.  Plaintiffs also ignore that Defendants are not reasserting privilege or work product protection over the entirety of every AAC Document.  For the reasons discussed in Defendants' opening brief (ECF 233) and below, the remaining AAC Documents at issue, in part or in whole, fall outside the scope of the MTC Order, and their production should accordingly be limited.[2]

---

[1] Citations to ECF 226 are to the Joint Appendix of Prior Briefing filed with the Court on April 29, 2024.

[2] Plaintiffs now agree that certain KPMG documents that have absolutely nothing to do with the AAC Investigation and Norton Rose's billing invoices fall outside the scope of the MTC Order.  (ECF 235 at 2.)  Yet Plaintiffs continue to argue that every single one of the remaining AAC Documents must be produced in their entirety.  (*See id.*)

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
CityPoint
One Ropemaker Street
London EC2Y 9HR
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006-1682
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

**A.      The MTC Order Does Not Extend to "Analyses" and "Opinions" of Counsel.**

Both the Fifth Circuit and Judge Eskridge have clarified that the MTC Order does not compel the breadth of production Plaintiffs now claim.  Plaintiffs' argument that Defendants are somehow bound by a "judicial admission" regarding the scope of the MTC Order—*prior* to the Fifth Circuit's order and *prior* to the District Court's clarification in the January 10, 2024, status conference that "pure opinion" would be treated differently than "pure fact"—is a red herring.[3] (ECF 226-23 at 15:24-16:5.)

The Fifth Circuit made clear that it was "concern[ed]" "as to the potential scope of the privilege waiver granted by the trial court".  (ECF 226-19 at 2.)  Because of that concern, the Fifth Circuit "advise[d] the trial court, or the appointed Special Master, to scrutinize challenged documents and consider its decisions regarding the scope of the waiver carefully".  (*Id.*)  The Circuit also concluded that the MTC Order provides Defendants "an opportunity to challenge waiver and reassert privilege as to specific documents, either before the court or through a Special Master".  (*Id.*)  If the scope of the MTC Order were as broad as Plaintiffs suggest, the opportunity to challenge waiver and reassert privilege would be entirely unnecessary.

Judge Eskridge also clarified during the January 10, 2024, status conference that he did not intend the MTC Order to extend as broadly as Plaintiffs claim.  Indeed, Judge Eskridge explained that special master review was "going to bring up the pure opinion versus pure fact distinction".  (ECF 226-23 at 15:25-16:5.)  And it was because Judge Eskridge recognized that "some documents . . . are purely just legal opinion, but some other documents it's witnesses have told us X and here's what we think legally on that, but it's going to take a lot to separate fact from opinion" that he appointed this Court to review the documents.  (*Id.* at 9:23-10:2.)  Judge Eskridge rejected Plaintiffs' argument at that time that his MTC Order "covers all materials relating to the A[A]C investigation without exception and thus requires Anadarko to disclose opinion work product".  (*Id.* at 12:5-8.)  As Judge Eskridge explained, if Norton Rose's presentation to the SEC involved the presentation of "interviews that [Norton Rose] took" and facts learned in the investigation along with counsel's legal "argument", the scope of the MTC Order would be narrower than if Norton Rose's presentation to the SEC "included a lot of opinion material, but [] only the favorable opinion material".  (*Id.* at 13:12-25.)  Norton Rose's presentation to the SEC falls into the former category—it principally summarized facts that were learned during the Audit Committee's investigation.  Of the 180[4] slides, over 150 slides present on Lea Frye's allegations and the related factual material learned in the AAC Investigation from witness interviews, counsel's document review and expert analyses.  (ECF 235, Ex. 1 at APC-00002577-2726, APC-00002731-2734.)  For example, the presentation provides a chronology of the relevant Shenandoah events (*e.g.*, *id.* at APC-00002577-2580), describes the responsibilities and approaches of the Shenandoah exploration and development teams (*e.g.*, *id.* at APC-00002582-2585), quotes and presents portions of Anadarko documents (*e.g.*, *id.* at APC-

---

[3] Counsel's interpretation of the MTC Order is not a judicial admission.  *See Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) ("To qualify as a judicial admission, the statement must be . . . contrary to a fact essential to the theory of recovery" and "about a fact on which a judgment for the opposing party can be based." (citation omitted))).  Indeed, counsel's reading of the MTC Order is not an admission of anything, and was prior to the critical clarification by the Fifth Circuit and Judge Eskridge.

[4] Plaintiff incorrectly assert that the final SEC presentation consisted of 250 slides.  (*See* ECF 235, Ex. A.)

00002593, APC-00002604-2606), summarizes and quotes witness interviews (*e.g.*, *id.* at APC-00002603, APC-00002632), and copies the substance of emails that were reviewed during the AAC Investigation (*id.* at APC-00002731-2734).  Two slides contain counsel's concluding arguments.  (*Id.* at APC-00002728-2729.)

Plaintiffs cling to their view that the MTC Order applies broadly, not just to facts learned in the AAC Investigation, but to all legal advice and opinion work product related to that investigation.  (*See* ECF 235 at 1-2.)  This is inconsistent with the guidance from both the Fifth Circuit and Judge Eskridge.  It is also inconsistent with the body of case law carving out opinion work product from subject-matter waiver.  *See Ictech-Bendeck v. Waste Connections Bayou, Inc.*, 2024 WL 149955, at *5 (E.D. La. Jan. 12, 2024) (declining to extend subject-matter waiver "to all documents with no limitation on the topic" and restricting disclosure "to only what is necessary to contextualize and clarify misimpressions"); *Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.*, 2020 WL 6803252, at *4 (E.D. Tex. Apr. 28, 2020) (subject-matter waiver due to sword and shield use of privileged document did not extend to opinion work product, as "such opinion work product forms the heart of the work-product doctrine, deserving of stalwart protection").  Similarly, as discussed below, there is no basis to find that legal advice provided by counsel to the Audit Committee falls within the scope of the MTC Order, as Plaintiffs contend.

While Plaintiffs assert that Defendants "continue to use" the results of the AAC Investigation as a sword, that assertion is entirely divorced from the basis for the MTC Order and also mistaken.  (ECF 235 at 6.)  Plaintiffs made this argument before the District Court, yet Judge Eskridge gave it no credit in the MTC Order.  (*See generally* ECF 226-08.)  Moreover, this assertion is based on Defendants' interrogatory response stating Defendants relied upon the "work, opinions, information, representations and/or advice" of KPMG (along with almost 40 other individuals and entities).  (ECF 226-11, Ex. 2 at 3-4.)  That interrogatory response, on its face, does not rely on privileged materials and does not constitute sword-and-shield waiver.  *See In re Schlumberger Tech. Corp.*, 818 F. App'x 304, 307-08 (5th Cir. 2020).  Moreover, none of the Anadarko witnesses testified at their deposition that the alleged misstatements resulted from KPMG's advice, let alone advice that implicated privilege.

## B.     AAC Documents Not Containing Facts Learned During the Audit Committee Investigation Are Not Subject to Compelled Production.

The AAC Documents that contain no facts that Norton Rose learned during the AAC Investigation fall outside the scope of the MTC Order and should be shielded from production.  (*See* ECF 233 at 6-7.)  Plaintiffs' assertion that Defendants' "'facts learned' limitation is meritless as it is untethered to the information that went to (or was withheld from) the SEC" makes no sense.  (ECF 235 at 7.)  As the District Court recognized in the MTC Order, it is precisely the "underlying facts" learned during the AAC Investigation—and whether those were presented to or withheld from the SEC—that formed the basis for the District Court's finding of sword-and-shield waiver.  (ECF 226-08 at 8 ("Simply put, Anadarko can't now selectively withhold documents and defend itself through such use of the SEC's termination letter, while simultaneously restricting Norfolk County Council's access to the underlying facts that the SEC relied upon and which Norton Rose presented—or chose to withhold.").)  Judge Eskridge confirmed his view that facts and opinion work product are to be treated differently in evaluating the scope of the MTC Order, noting that the "disputes" about "specific documents that assertively wouldn't fall under this waiver" were "going to bring up the pure opinion versus pure

fact distinction". (ECF 226-23 at 16:1-5.) Accordingly, AAC Documents that contain no facts learned during the investigation serve no purpose to prevent the SEC's termination letter from being used as a sword and shield and are not within the scope of the MTC Order.

Defendants rely on, and do not repeat here, their opening arguments with respect to each distinct category of documents that falls entirely outside the scope of the MTC Order. (*See* ECF 233 at 6-7.) A few, however, warrant additional attention.

***Emails Regarding Legal Advice and Disclosure Legal Advice***.[5] Contrary to Plaintiffs' suggestions, counsel's legal advice has not been put "at issue". (*See* ECF 235 at 6 & n.7.) The circumstances here are unlike those in *Doe 1 v. Baylor*—the case on which Plaintiffs rely. (*See id.*) There, the defendant's defense was "founded on the facts and advice it and its Regents received from Pepper Hamilton." Thus, the court found that "[f]or a jury to decide whether [the defendant's] actions were reasonable, the jury ha[d] to know the facts and advice [the defendant] relied on, so it [could] determine whether [the defendant's] reliance on those facts and advice was reasonable."[6] *Doe 1 v. Baylor*, 335 F.R.D. 476, 498 (W.D. Tex. 2020). Here, however, the District Court did not find that either the sufficiency of Norton Rose's internal investigation, or any legal advice related to that investigation, is at issue in Plaintiffs' claims or Defendants' defense. Neither the quality of Norton Rose's investigation into the allegations of securities law violations, its resulting legal advice, nor Anadarko in-house counsel's advice regarding SEC disclosures has any relevance to what Plaintiffs must show to establish liability, *i.e.*, facts demonstrating that Defendants actually violated the securities laws.

***Draft Suspended Well Accounting and Controls Memoranda***.[7] Plaintiffs' argument— that in-house counsel's mental impressions reflected in draft memoranda "necessarily informed what information about [Anadarko's] accounting was provided to the SEC"—ignores that Anadarko's in-house counsel did not share their advice with Norton Rose. (ECF 235 at 9.) There is therefore no basis to suggest that such advice or mental impressions informed Norton Rose's SEC presentation.

***Email Regarding Counsel Impressions of SEC Investigation***. Despite Plaintiffs' suggestion, this email could not have reflected thoughts about what to present to or withhold from the SEC because it was written nearly two months after the SEC presentation. (*See* ECF 233, Ex. A at 19, Defs. Priv Log. No. 331.) Nor does it reference any facts that were learned in the AAC Investigation, presented to the SEC or withheld from the SEC.

***KPMG Call Talking Points and Working Papers***.[8] These documents contain no mention of any facts that Norton Rose learned during the AAC Investigation. Moreover, the District

---

[5] (Mullins Priv. Log Nos. 1-4, 12, 13, 18, 44, 45.)

[6] Even *Baylor*, however, declined to compel production of all of counsel's opinion work product, requiring that "attorney commentary" be redacted and excluding from production counsel's internal emails, materials to aid in witness interviews and counsel's notes taken during interviews. *Baylor*, 335 F.R.D. at 499-501.

[7] (Defs. Priv. Log Nos. 2, 3, 4, 238-46, 249-64, 267, 270-80, 282, 284-95, 297-307.)

[8] (Defs. Priv Log Nos. 567, 847; KPMG Priv. Log Nos. 127, 129.)

Court made no finding of sword-and-shield waiver with respect to KPMG's audit opinion, thus Plaintiffs' arguments on that point lack merit.  (ECF 235 at 9-10; *see also infra* Section D.)

**C.      This Court Must "Separate Fact from Opinion" to Protect Counsel's Legal Advice and Opinion Work Product from Disclosure.**

As Judge Eskridge recognized, it will be necessary to "separate fact from opinion" in the AAC Documents.  (ECF 226-23 at 9:23-10:4.)  For the reasons discussed above and in Defendants' opening brief, the scope of the MTC Order is limited to facts learned during the AAC Investigation, as those are what will provide Plaintiffs with "access to the underlying facts that *the SEC relied upon*" or that Norton Rose withheld from the SEC.  (ECF 226-08 at 8 (emphasis added).)

Plaintiffs' arguments that the various categories of the challenged documents "fall within the waiver" in their entirety not only ignore the clear limits that the Fifth Circuit and District Court have put on the MTC Order's scope.  They also ignore that Defendants are not challenging every single one of the remaining AAC Documents in their entirety and have in fact conceded that certain of those documents contain information—facts learned during the investigation—that may be subject to disclosure. (*See* ECF 233 at 7-10 & Ex. A.)[9]  Plaintiffs' entirely unsupported suggestion that redaction of opinion work product and legal advice that does not reflect facts learned in the AAC Investigation is "unworkable" because it could result in "a page of black ink but for a word or phrase here or there" is no basis on which to read the MTC Order as applying more broadly than it does.  (ECF 235 at 6.)

**D.      The District Court's Waiver Finding Does Not Extend to Counsel's Decisions to Share or Withhold Information from KPMG.**

Plaintiffs' suggestion that they are entitled to Norton Rose's communications with the Audit Committee or other documents because these documents "reflect analyses and conclusions that were provided to the SEC *and KPMG*—or withheld from *them*" has no basis in the District Court's MTC Order.  (ECF 235 at 10 (emphases added).)  The District Court did not base the scope of its waiver finding on Plaintiffs' entitlement to information about what was and was not disclosed to KPMG.  (*See* ECF 226-08 at 8.)  Counsel's decisions about what to share with or withhold from KPMG have nothing to do with what counsel chose to disclose to the SEC.

---

[9] That Norton Rose shared the final SEC presentation with KPMG the day before the presentation to the SEC does not mean that earlier drafts of the SEC presentation (or any other document) that were *not shared with KPMG* fall within the scope of disclosure.  (ECF 235 at 3.)  Indeed, Plaintiffs already are in possession of the final SEC presentation.  And Plaintiffs cite nothing in the record that even suggests that any of the drafts of the SEC presentation were shared with KPMG, or with any other third party.

Respectfully,


*/s/ Kevin J. Orsini*

Kevin J. Orsini

Magistrate Judge Bryan
United States Courthouse
515 Rusk Avenue
Room 7007
Houston, Texas 77002

VIA ECF

Copies to all counsel of record