UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

**DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS REPRESENTATIVES AND CLASS COUNSEL**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    I.     Defendants Have Rebutted the Presumption of Classwide Reliance. ........... 1

           A.     Dr. Ferrell Provided Relevant, Dispositive Economic Analyses. ........................................................................................ 2

           B.     ConocoPhillips's Static Stock Price Establishes the Absence of Price Impact. ................................................................................ 3

           C.     Cobalt Is Not a Proper Comparator Given Its Small Market Size and Financial Distress. ............................................................... 5

    II.    Steinholt's Analyses Cannot Establish Price Impact. ................................... 6

           A.     Steinholt's After-Hours Trading Analysis Proves Nothing. .............. 6

           B.     Steinholt's Attempt to Control for Firestone Fails. ........................... 8

           C.     Steinholt Inappropriately Compares the Relative Size of the Shenandoah Write-Off to the Firestone Remediation Costs. ............. 8

CONCLUSION .................................................................................................................. 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Edgar v. Anadarko Petroleum Corp.*, No. 4:17-cv-1372 (S.D. Tex. filed May 3, 2017) ................................................................................................................ 1

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021)............. 1, 3

**PRELIMINARY STATEMENT**

"Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff" rebuts the *Basic* presumption of reliance. *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1958 (2021) (citation omitted). Defendants have established that it was the tragic Firestone, Colorado explosion and ensuing regulatory investigation that impacted Anadarko's stock price on May 3, 2017—not Shenandoah. As an analyst remarked on May 3, "the market has shaved a couple billion dollars of equity value as the market has priced in some impacts to your DJ Basin [Colorado]." (Ex.A ¶11.) Indeed, another securities class action against Anadarko sought damages for the identical stock decline at issue here—due to the Firestone announcement. *Edgar v. Anadarko Petroleum Corp.*, No. 4:17-cv-1372 (S.D. Tex. filed May 3, 2017). With no price impact, Plaintiffs are not entitled to class certification.

**ARGUMENT**

**I.    Defendants Have Rebutted the Presumption of Classwide Reliance.**

Defendants' expert, Dr. Ferrell, conducted multiple event studies analyzing the stock price movement of Anadarko, ConocoPhillips and Cobalt—Shenandoah partners—and of the Colorado operators affected by the Firestone news and regulatory investigation. These showed that the Firestone news—not the Shenandoah disclosures—impacted Anadarko's stock price on May 3, 2017. (Dkt. 93.1, Ex.A ("Ferrell Rep.") ¶¶54-65 & App'x D.) Indeed, ConocoPhillips, whose stock would have reacted in the same way as Anadarko's given their near-identical Shenandoah ownership stakes, saw no statistically

significant decline on May 2 (after ConocoPhillips announced that Shen-6 was dry), May 3 (after Anadarko's Shenandoah disclosure), May 5 (after ConocoPhillips announced it was writing-off Shenandoah) or May 8 (after Cobalt announced that it was writing-off Shenandoah). (*Id.* ¶¶54, 56, 61, 62 & App'x D.) Just as ConocoPhillips's stock price was not impacted by the Shenandoah disclosures, neither was Anadarko's. (*Id.* ¶63.) By contrast, the event studies showed that the Colorado operators, like Anadarko, *did* sustain statistically significant declines on May 3. (*Id.* ¶65 & App'x D.) Plaintiffs' critiques of Dr. Ferrell's economic analyses fail.

     A.    <u>Dr. Ferrell Provided Relevant, Dispositive Economic Analyses.</u>

Plaintiffs are wrong that Dr. Ferrell did not "provide event study proof of the extent, if any, to which [the Firestone news] caused the May 3, 2017 stock price drop." (Dkt. 96 ("Reply") at 1, 4.) Dr. Ferrell conducted multiple event studies.

What Dr. Ferrell did not do is a *single* event study to establish *what* caused that price movement. (Ferrell Rep. ¶29.) The issue is not *whether* there was a statistically significant decline in Anadarko's stock on May 3, but *why*? Because "there were multiple pieces" of news concerning Anadarko announced, a single event study "alone cannot determine which piece of information was value-relevant," *i.e.*, impacted the price. (*Id.*) Accordingly, Dr. Ferrell performed event studies on Anadarko *and* ConocoPhillips and Cobalt (the Shenandoah partners) *and* the Colorado operators—*and* examined other economic evidence—to conclude that the Shenandoah news had no price impact on Anadarko on May 3. (*Id.* ¶¶57-66; Ex.A ¶6.) Defendants have discharged their burden even under

2

Plaintiffs' view of the law.  But Plaintiffs are wrong that an event study is the only evidence that can rebut the *Basic* presumption.  (Reply at 2-3.)  The Supreme Court in *Goldman Sachs* held the opposite:  Courts "should be open to all probative evidence on [the] question—qualitative as well as quantitative." 141 S. Ct. at 1963 (citations and quotations omitted).

### B. ConocoPhillips's Static Stock Price Establishes the Absence of Price Impact.

Plaintiffs' critiques of Dr. Ferrell's treatment of ConocoPhillips miss the mark. Plaintiffs argue that the absence of a May 2 stock decline by ConocoPhillips and Anadarko—after ConocoPhillips disclosed that Shen-6 was dry—proves nothing because, they claim, minimal information was disclosed. (Reply at 5.)  Not so.  Anadarko previously disclosed, and analysts understood, that Shen-6 would determine whether Shenandoah would be developed. (Ferrell Rep. ¶¶10-12, 68.)  Yet when ConocoPhillips announced that Shen-6 encountered no oil, neither ConocoPhillips nor Anadarko saw a stock decline. (Ex.A ¶¶3, 15.)  Moreover, neither ConocoPhillips nor Anadarko experienced a decline after ConocoPhillips announced on May 4 that it was writing-off Shen, along with an additional $293 million (on top of the $101 million write-off it announced May 2). (Ferrell Rep. ¶61, tbl. 4; Ex.A ¶17.)  Plaintiffs do not dispute the lack of price movement in ConocoPhillips's stock following those announcements.

Instead, they suggest the absence of ConocoPhillips's reaction can be explained by the relative value of Shenandoah to Anadarko and ConocoPhillips.  Anadarko had a market cap roughly half the size of ConocoPhillips, but a near-identical stake in Shenandoah.

3

(Ex.A fig.1, ¶15, n.35.) This means that if (as Plaintiffs contend) Anadarko's stock declined by 8% related to the Shenandoah disclosure, one would expect a roughly 4% decline of ConocoPhillips's stock. (*Id.* ¶15, n.36.) But that did not occur. (*Id.*) Plaintiffs' conjecture that Anadarko had a "control premium" as operator is wholly unsupported—Anadarko and ConocoPhillips shared both the drilling costs and ownership interests. (Reply at 6; Ex.A ¶15, n.34.) Anadarko also included ConocoPhillips (not Cobalt) in its "peer group" with which it compared its stock price performance. (Ex.A ¶¶18, 22.)

Equally unavailing is Plaintiffs' comparison of the Shenandoah partners' write-offs. (Reply at 5.) Plaintiffs are wrong on the amounts: ConocoPhillips wrote-off nearly $400 million, not $101 million. (Ex.A ¶17.) But the size of the write-offs is irrelevant because they are sunk costs—distinct from the future value of Shenandoah. (*Id.* ¶9.) Stock movements are driven by expected future value, not sunk costs. (*See infra* Section II.C.) Moreover, ConocoPhillips wrote-off $101 million on May 2 and another $293 million in additional Shenandoah expenses on May 4 and neither ConocoPhillips's nor Anadarko's stock price reacted. (Ferrell Rep. ¶61, tbl. 4.)

Finally, Plaintiffs' argument that ConocoPhillips "had less at stake" because it would "exit deep-water exploration" lacks support. (Reply at 6.) ConocoPhillips still owned 30% of the project and stood to gain nearly the same in future cash flow as Anadarko (whether it maintained its ownership or sold it to another operator). (*See* Ex.A ¶16.) Moreover, ConocoPhillips stated that it would maintain its Shenandoah investment, and

4

analysts said nothing to suggest the company's potential deepwater exploration exit muted the impact of Shenandoah on its stock price. (*Id.*)

  C. <u>Cobalt Is Not a Proper Comparator Given Its Small Market Size and Financial Distress.</u>

Plaintiffs are wrong that the Court should look to Cobalt, not ConocoPhillips. (Reply at 6.) As depicted below, Cobalt's market share was miniscule relative to Anadarko's and ConocoPhillips's. Anadarko had a market cap roughly half the size of ConocoPhillips, whereas Anadarko's market cap was nearly 200 times larger than Cobalt's. (Ferrell Rep. ¶58; Ex.A fig.1.)



Figure 1
Anadarko, ConocoPhillips, and Cobalt
Market Capitalization on May 2, 2017

Cobalt: $167 Million
Anadarko: $31.5 Billion
ConocoPhillips: $57.8 Billion

5

Plaintiffs concede that Cobalt was in financial distress and its stock was volatile. (Dkt. 96-1, Ex.A ("Steinholt Rebuttal") ¶31.) Cobalt's $0.04-per-share decline on May 3 was statistically significant because its stock had *previously* plummeted to below $1.00 per share and was at risk of delisting. (*See* Ex.A ¶¶20-21.)

Finally, even assuming that Cobalt's market cap decline of $18.8 million on May 3 reflected the loss of value of Shenandoah, Anadarko, with its larger stake, would have seen a market cap decline of $31 million—0.1%—which would not be statistically significant. (*Id.* ¶21, n.51.) Accordingly, the Shenandoah write-off did not impact Anadarko's stock price.

## II. Steinholt's Analyses Cannot Establish Price Impact.

Plaintiffs present two analyses by Steinholt that they claim establish that Shenandoah had price impact. Both are meritless.

### A. Steinholt's After-Hours Trading Analysis Proves Nothing.

Plaintiffs rely on a decline in Anadarko's stock during aftermarket trading on May 2, 2017, on the mistaken premise that such decline preceded the Firestone announcement. (Reply at 1, 4.) This fails for two reasons.

*First*, Steinholt did not establish that the aftermarket for Anadarko stock is efficient—which Steinholt acknowledges is required to "trust [stock] prices." (Dkt. 86-1 ("Steinholt Rep.") ¶15.) Nor did he conduct an aftermarket event study or adjust for market or industry factors. Steinholt simply "observ[ed] that exactly at the time of the earnings announcement in a couple of minutes there, there were half a million shares that traded and

6

the stock was down." (*See* Ex.B at 132:23-133:6.)  Steinholt did not even know "what type of analysis would be required" to rely on after-hours trading.  (*Id.* at 130:12-131:17.)  Even Steinholt's support for reliance on "intra-day data" examines *market-hour—not aftermarket—trading*.  (Dkt. 96-1 at 73-75.)  Tellingly, Steinholt abandoned the after-hours analysis in his merits report.  (Ex.C.)

As Dr. Ferrell explains, absent proof of market efficiency, reliable conclusions cannot be drawn.  (Ex.A ¶28.)  With fewer participants, thinner volume, wider bid-ask spreads, and higher volatility after-hours, aftermarket trading is distinct from market-hour trading.  (*Id.*)

*Second*, Plaintiffs are mistaken that the aftermarket decline preceded the Firestone announcement.  (*Id.* ¶25.)  While Plaintiffs claim the Firestone news occurred *after* Anadarko's Shenandoah disclosure at 4:16 pm (Reply at 3), news outlets streamed the Colorado officials' press conference by 4:03 pm, telling the public to "WATCH LIVE," and there was buzz on social media about the news between 4:03 pm and 4:16 pm.  (Ex.A ¶¶25-26.)  The Firestone news began *before* Anadarko's earnings release and *before* the after-hours trading highlighted by Plaintiffs.  (*Id.* ¶24-26.)

While Dr. Ferrell cited a 4:51 p.m. Firestone article in his initial report, he did not claim that was the earliest Firestone disclosure.  (Ferrell Rep. ¶14; Ex.A ¶25.)  The precise after-hours timing was not relevant to Dr. Ferrell's analyses because—unlike Steinholt— Dr. Ferrell drew no inferences from aftermarket price movements.  (*See id.*)  It was

Steinholt who used aftermarket data, and his factual mistake renders that analysis unreliable.

*Third*, ConocoPhillips's and Cobalt's stock prices were relatively flat in after-hours trading. (Ex.A ¶30.) By contrast, the after-hours stock prices of the Colorado operators declined. (*Id.* ¶31.) Thus, even if aftermarket trading could be relied upon, that trading shows that Firestone—not Shenandoah—impacted Anadarko's stock.

B. Steinholt's Attempt to Control for Firestone Fails.

Steinholt's flawed event study cannot "control for Firestone." (Reply at 1.) Steinholt (a) inexplicably removed the industry index from his opening report, and (b) added a Colorado Peer Group. These mistakes render the analysis unreliable.

*First*, by removing the industry index, Steinholt lost the ability to control for the oil industry. (Ex.A ¶35.) There is no methodologically sound reason for this change. (*Id.* ¶36.) Had Steinholt retained the industry index, Anadarko's stock price movement would remain statistically significant—the opposite of Steinholt's conclusion and fatally undermining any efforts to "control" for Firestone. (*Id.* ¶35.)

*Second*, since the Firestone explosion was a one-time event, the impact on Anadarko cannot be accurately captured by Steinholt's regression model based on historical trading data. (*Id.* ¶36.)

C. Steinholt Inappropriately Compares the Relative Size of the Shenandoah Write-Off to the Firestone Remediation Costs.

Plaintiffs' focus on the size of the Shenandoah write-off (Reply at 4; Steinholt Rebuttal ¶7), is an error of basic finance (Ex.A ¶7). The Shenandoah write-off represents

8

sunk costs. (*Id.* ¶¶8-9.) It is not sunk costs that impact Anadarko's value and, in turn, its stock price, but the expected future value of the project. (*Id.* ¶¶9-10.)

Equally unavailing is Plaintiffs' comparison of Anadarko's Shenandoah write-off to its "potential remediation well costs" in Colorado. (Reply at 4.) Sunk costs do not impact future cash flows; *future* remediation costs do and, thus, impact the company's value. (Ex.A ¶¶9-10.) Moreover, the Colorado Governor announced on May 2 a sweeping state-wide inspection of oil and gas flowlines, which further extended Anadarko's well shutdown and led to significant regulatory uncertainty, particularly for Anadarko as the largest oil and gas operator in Colorado. (Ferrell Rep. ¶14.) Indeed, analysts "shaved a couple billion dollars of equity value" as a result of the Firestone announcement. (Ex.A ¶11.) They recognized that "[t]he greater risk [of the Firestone disclosure] is to future drilling opportunities." (*Id.* ¶10 n.25.) The impact from Firestone was not $140 million; it was billions. (*Id.* ¶¶11, 13.)

## CONCLUSION

For the foregoing reasons, as well as those in Defendants' Opposition, Defendants respectfully request that the Court deny Plaintiffs' Motion for Class Certification.

Dated:  June 12, 2024 	Respectfully submitted,

*/s/ Kevin J. Orsini*
**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

## **CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 1,995 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: June 12, 2024

*/s/ Kevin J. Orsini*
Kevin J. Orsini

**CERTIFICATE OF SERVICE**

  I certify that on June 12, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: June 12, 2024

*/s/ Kevin J. Orsini*
Kevin J. Orsini
