**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Rachel L. Jensen
rachelj@rgrdlaw.com

June 14, 2024

The Honorable Christina A. Bryan     **VIA ECF**
U.S. District Court for the Southern District of Texas
515 Rusk Street, Room 7007
Houston, Texas 77002

       Re:     *In re Anadarko Petroleum Corp. Sec. Litig*, No. 4:20-cv-00576 (S.D. Tex.)

Dear Judge Bryan:

       Plaintiffs write in response to Defendants' June 7, 2024 letter (ECF 236) ("Reply") and in further support of their May 31, 2024 letter (ECF 235) ("Opposition") opposing Defendants' challenge to producing documents under the District Court's March 31, 2023 motion to compel Order (ECF 226-8) ("MTC Order").

       Defendants' Reply, like their opening brief (ECF 233), promotes a scope of waiver never contemplated by Judge Eskridge and ***denied*** by the Fifth Circuit. The MTC Order does not distinguish between "pure opinion and pure fact" – it expressly found both work product protection and attorney-client privilege over the entire subject matter of the AAC investigation were waived. MTC Order at 8-9. Judge Eskridge then reiterated this finding in his January 29, 2024 referral Order – an order issued ***after*** Defendants unsuccessfully moved for reconsideration of the MTC Order (ECF 226-13), ***after*** the Fifth Circuit denied their writ petition and approved the review procedure Judge Eskridge ordered (ECF 226-19), and ***after*** the January 10, 2024 hearing at which Defendants argued the scope of the MTC Order should be limited to facts (ECF 226-22). The referral Order could not be more clear: "Prior order in this action determined that Defendant . . . waived attorney-client privilege and work-product privilege with respect to the entire subject matter of the investigation conducted by the Anadarko Audit Committee." ECF 226-25 at 1. Tellingly, Defendants themselves now ***concede*** that their prior "interpretation of the MTC Order" encompassed opinion work product, but pretend that somehow the Fifth Circuit's denial of the writ petition drastically altered their view. ECF 236 at 2 n.3. It is thus Defendants, not Plaintiffs, who are "cling[ing]" to an untenable or inconsistent view of the scope of waiver. *Id.* at 3.

       Defendants suggest that Your Honor's review would be unnecessary if the waiver covered the entire subject matter of the investigation. *Id.* at 2. But, as Judge Eskridge originally recognized, there could be specific documents that do not fall within the scope of the waiver – for example, Defendants' Log Nos. 44-46, 66, and 68 and Mullins' Log Nos. 40-41, 54-59, and 67-73, which, based on Defendants' description, Plaintiffs agree fall outside the scope of the waiver. More, as discussed in further detail below, the Court issued its MTC Order without having seen the full materials presented to the SEC. ECF 226-23 at 13:13-14:8. Therefore, Judge Eskridge explained, ***if*** the SEC presentation contained ***only*** facts, as Defendants wrongly insisted, then perhaps there could be an argument that only factual documents withheld would need be produced. *Id.* If, however, the SEC materials contained attorney representations and opinion (as they plainly do), then opinion work product related to the AAC investigation is also subject to the waiver. *Id.* Finally, this process is designed to ensure that Plaintiffs have access to the materials they are in fairness due, while also giving Defendants an opportunity to challenge specific documents as falling outside the scope of the waiver set forth in the MTC Order. It is not, however, an opportunity for Defendants to reargue the merits of the Court's waiver finding (Defendants did that already, and lost (ECF 226-13)), to assert exceptions as to nearly every document, or to rewrite the waiver standard found in the MTC Order – as they are seeking to do now.

Hon. Christina A. Bryan
June 14, 2024
Page 2

**I.     Neither Judge Eskridge nor the Fifth Circuit Limited the Scope of the Waiver to "Facts Learned in the Investigation."**

Defendants acknowledge their prior "interpretation" of the MTC Order – when they were attempting to have the MTC Order thrown out altogether – was that it compelled production of opinion work product. Now, facing the actual production of documents required by the MTC Order, Defendants invent from whole cloth a "critical clarification by the Fifth Circuit and Judge Eskridge" that opinion work product definitively does *not* fall within the scope of the waiver, and instead, only facts learned during the AAC investigation are subject to production. ECF 236 at 2. Defendants' assertion fails under even minimal scrutiny.

**A.     The Fifth Circuit Did Not Narrow the Scope of Waiver.**

Importantly, Defendants' current proposed scope of waiver is the exact relief that they sought from the Fifth Circuit **and were denied**. ECF 226-14 at 6 ("If the Court answers the first question in the affirmative but the second question in the negative, the writ should either . . . (2) direct the District Court to modify its March 31, 2023, Order to reflect that any waiver extends only to the facts uncovered by the investigation and does not include attorney-client communications or opinion work product."). Not only did the Fifth Circuit deny Defendants' request for relief, but contrary to Defendants' suggestion, the Fifth Circuit made **no mention** of any distinction between the compelled production of fact and opinion work product in its order denying Defendants' writ petition. *See generally* ECF 226-19. Instead, the court noted Judge Eskridge had found waiver "out of fairness . . . extends to the entire subject matter of the AAC investigation" – a finding it declined to disturb. *Id.* at 1. The Fifth Circuit acknowledged that Anadarko would have the opportunity to challenge waiver and reassert privilege as to *specific* documents and advised the trial court to consider the challenged documents carefully and take reasonable measures to protect the documents and their contents until it was decided whether challenged documents fell within the scope of the waiver. *Id.* at 2. In other words, the Fifth Circuit gave *procedural* guidance – it did not narrow the scope of waiver, let alone suggest it was properly limited to "facts learned in the investigation."[1] The current proceedings satisfy that procedural guidance.

**B.     Judge Eskridge Did Not Narrow the Scope of Waiver to Facts Learned.**

Defendants also assert that Judge Eskridge "clarified" at the January 10, 2024 hearing that "pure opinion" would be treated differently than "pure fact" and that opinion would be outside the scope of the MTC Order. ECF 236 at 2. Looking beyond Defendants' cherry-picked phrases and mischaracterizations, it is clear Judge Eskridge did no such thing. At the hearing, the Court discussed with the parties the outstanding work to resolve Defendants' challenges to specific documents and had this exchange with defense counsel:

> MR. ORSINI:  . . . Roughly 375 of those [withheld documents], at a minimum, we believe will involve questions for a special master.
>
> THE COURT:  Such as?
>
> MR. ORSINI:  As to whether we are – we really do need to produce it if it's just opinion work product, whether the attorney-client advice really does need to fall within the scope of waiver from a fairness perspective. Because as the Court, I'm sure, recalls the rationale Your Honor articulated for the waiver was they're entitled to know essentially what facts went to the SEC

---

[1] Indeed, while Defendants have repeatedly attempted to portray the Fifth Circuit's order as a sea change in this dispute (*e.g.*, ECF 236 at 2), Judge Eskridge also explained at the January 10, 2024 hearing that he did not view the Fifth Circuit's opinion as requiring anything other than the *in camera* review of disputed documents provided for in the MTC Order. ECF 226-23 at 15:16-22.

**Robbins Geller Rudman & Dowd LLP**

Hon. Christina A. Bryan
June 14, 2024
Page 3

> and what facts didn't.
>
> THE COURT: And then so, and you – I haven't seen the documents either obviously –
>
> MR. ORSINI: Right.
>
> THE COURT: – that within some documents, I guess *you're saying*, are purely just legal opinion, but some other documents its witnesses have told us X and here's what we think legally on that, but *it's going to take a lot to separate fact from opinion*.
>
> MR. ORSINI: Precisely, Your Honor.

ECF 226-23 at 9:10-10:2 (emphasis added). In their Reply, Defendants characterize the second line of emphasized language above as Judge Eskridge's "recogn[ition]" that "it will be necessary 'to separate fact from opinion.'" ECF 236 at 5. In reality, of course, Judge Eskridge is merely summarizing **Defendants**' position. *Compare* ECF 226-23 at 9:10-10:2, *with* ECF 236 at 2 (claiming "it was because Judge Eskridge recognized that . . . 'it's going to take a lot to separate fact from opinion' that he appointed the Court to review the documents"); ECF 236 at 5 (asserting that Judge Eskridge "recognized . . . it will be necessary to 'separate fact from opinion' in the AAC Documents").

Defendants' claim that the Court "rejected Plaintiffs' argument" that the MTC Order encompasses all documents relating to the AAC investigation, including opinion work product, similarly overreaches. *Id.* at 2 (citing ECF 226-23 at 12:5-8 (Plaintiffs' argument)). Actually, the Court asked for elaboration on Plaintiffs' view, and queried Defendants where in the MTC Order Defendants found support for theirs:

> Do you read my order compelling production of documents as saying that as to pure opinion, as opposed to facts – maybe I said it that expressly. I would want to look at the context of what I said when that's been called into question. And actually, Mr. Orsini, I'll ask you to be thinking about where are you going to point me in my order that says that.

ECF 226-23 at 12:11-17. Not surprisingly, Mr. Orsini did not identify at the hearing – nor in subsequent briefing – any portion of the MTC Order where the Court said "pure opinion" fell outside the scope. When Plaintiffs' counsel explained why the waiver covered opinion work product, Judge Eskridge replied:

> I guess I would – *right, I hear what you're saying*. And I also have not seen what documents and things that were background were actually presented to the SEC and anyone else, you know, investigating it in that administrative capacity. Because *if it included a lot of opinion material, but it's only the favorable opinion material, then perhaps I'd be looking at it [, as] the special master[,] that's like well the negative assessments if you were giving only the positive spins* . . . . But if it's really, these are the interviews we took and it's the fact – here's the facts that we gave, but it's not pushing through lawyer opinion apart from, you know, argument once they're there – I'm talking about the background things – well, I think that the view about that might be different.
>
> . . . And so I guess I would just say it's from the standpoint of *I haven't seen any of the material that's being withheld. I also haven't seen what was actually deemed to be okay and not privileged to be given to the SEC when they were doing their investigation. So I'm not sure what the apples-to-apples comparison is at this point*.

*Id.* at 13:13-14:8 (emphasis added and testimony omitted). In other words, without the benefit of seeing the

**Robbins Geller Rudman & Dowd LLP**

Hon. Christina A. Bryan
June 14, 2024
Page 4

materials "actually presented to the SEC," the Court could not limit the waiver to factual documents. Rather, Judge Eskridge made clear that the *sine qua non* was whether opinions were presented to the SEC (and they were as ECF 235-1 at APC-00002727-29 shows). If so, opinion material relating to these topics must, in fairness, be produced. It was this limited discussion that the Court referenced when it later stated that whether "legitimate disputes may exist about specific documents that assertively wouldn't fall under this waiver" could "bring up the pure opinion versus pure fact distinction that we're talking about." ECF 226-23 at 15:25-16:5; *cf.* ECF 236 at 2.

Importantly, following the January 10, 2024 hearing, with the benefit of hearing the parties' views on scope, the Court issued its Order referring this matter to Your Honor, reiterating that the scope of waiver still encompassed: "attorney-client privilege and work-product privilege with respect to the entire subject matter of the investigation conducted by the Anadarko Audit Committee." ECF 226-25 at 1. Defendants' claim that the scope was narrowed by the Fifth Circuit or Judge Eskridge is thus meritless.

### C. Because Norton Rose Shared Opinion Work Product with the SEC and KPMG, Opinion Work Product Should Be Produced.

As detailed in Plaintiffs' Opposition, the materials Defendants provided to the SEC are replete with opinions. ECF 235 at 3. Norton Rose undeniably presented the SEC and KPMG with "the combined thoughts and mental impressions of counsel," their analyses and legal opinions, as well as other attorney work product. *See* ECF 235-1. Indeed, Defendants concede this fact. ECF 236 at 3 ("Two slides [from the SEC presentation] contain counsel's concluding arguments."). Accordingly, fairness – and the MTC Order – proscribes Defendants' effort to "separate the *result* of the SEC investigation from the facts and representations by the attorneys that went *into* that investigation." MTC Order at 7. As Plaintiffs are entitled to "what Anadarko chose ***not*** to present to the SEC" (*id.*), Defendants waived opinion work product as to what was ***not*** presented to the SEC and KPMG.[2] Defendants' attempt to avoid this inevitable conclusion by arguing that the tally of slides in Norton Rose's PowerPoint with facts is greater than those with opinions is inconsistent with the fundamental principles of fairness that the MTC Order espoused. MTC Order at 7. It is irrelevant that Norton Rose decided to combine its conclusions onto just two slides: the entire presentation is replete with opinions, representations, and characterizations of evidence. Moreover, the breadth of the conclusions – which exonerated everything from Anadarko's company culture and accounting to whether Defendants misled investors – demonstrates exactly how far Norton Rose went in presenting positively-spun analysis and information to the SEC in order to dissuade any enforcement action. *See, e.g.*, ECF 235-1 at APC-00002727-29. "[I]n terms of both fairness and completeness," the analyses, opinions, and conclusions Defendants "chose ***not*** to present to the SEC" must be produced. MTC Order at 7; *id.* at 6 (standard for determining whether a party has put a matter "in issue").

Nor can Defendants credibly suggest that Norton Rose's intentional disclosure of privileged communications, including summaries of interviews and the SEC presentation, to third-party KPMG was not a basis for the Court's MTC Order. ECF 236 at 3. The MTC Order expressly identified Norton Rose's

---

[2] Defendants' cases do not suggest otherwise. In *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, 2024 WL 149955, at *5 (E.D. La. Jan. 12, 2024), the defendant had not used the result of the investigation as a sword-and-shield; rather, it had selectively disclosed the resultant report to the public without disclosing defense counsel was involved in its creation. Accordingly, defendants had created a misimpression that the report was independent, and fairness dictated documents necessary to cure that misimpression also be disclosed. *Id.* Here, Defendants intentionally put the SEC termination at issue by using it as a sword – marking it as an exhibit and asking Plaintiffs whether it altered their view of the litigation. Thus, Defendants waived privilege over documents that show what the SEC was and was not told by Norton Rose and Anadarko. *Lone Star Tech. Innovations, LLC v. ASUSTeK Comput. Inc.*, 2020 WL 6803252, at *4 (E.D. Tex. Apr. 28, 2020), is similarly distinguishable. *See id.* (in patent case, where objective testing results were used as a sword, only underlying factual documents were needed for opposing party to be able to dispute adequacy of testing methodology).

**Robbins Geller Rudman & Dowd LLP**

Hon. Christina A. Bryan
June 14, 2024
Page 5

revelation of confidential communications to "the SEC, KPMG, and JP Morgan" as a "consideration" in determining the scope of waiver should "extend to the entire subject matter of the AAC investigation." MTC Order at 9; *see also id.* at 2 (referring to Norton Rose's disclosures to KPMG as "pertinent" to the dispute before the Court).

Defendants' attempt to disclaim continued sword-and-shield use of this information following the MTC Order through reliance on KPMG's clean audit opinion falls equally flat. First, Defendants provide no legitimate explanation for their proffer of expert opinion relying on KPMG's clean audit opinion (which turned on findings from AAC investigation selectively provided by Norton Rose to KPMG) to refute Plaintiffs' claims of improper accounting at summary judgment. ECF 236 at 3. Second, it is irrelevant that Defendants' interrogatory response identifying KPMG as a party on which they intend to assert good-faith reliance as an affirmative defense does not itself rely on privileged materials. *Id.* As Defendants must know, it is not their interrogatory response itself that constitutes sword-and-shield use; it is the assertion of the affirmative defense, which the interrogatory response confirms rests on KPMG's clean audit opinion. *In re Schlumberger Tech. Corp.*, 818 F. App'x 304, 307-08 (5th Cir. 2020), on which Defendants rely, actually supports Plaintiffs' position. There, the defendant company asserted it relied in good faith "'on applicable law, administrative regulations, orders, interpretations and/or administrative practice or policy enforcement'" – not on particular parties. Accordingly, the *Schlumberger* court could not determine whether the company relied on privileged communications with their attorney to support an advice on counsel defense. Here, on the other hand, Defendants' interrogatory response specifically indicates that they intend to assert Anadarko's good-faith reliance on KPMG, putting the information KPMG was – or was not – provided by Norton Rose "at issue."

## II. Specific Categories of Documents.

Plaintiffs generally refer the Court to their arguments regarding the specific categories of challenged documents in the Opposition. However, a few points Defendants raise in their Reply require correction here. First, Defendants' claim that *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 498 (W.D. Tex. 2020), is inapplicable directly contradicts the Court's express reliance on that case in the MTC Order. *Compare* ECF 236 at 4, *with* MTC Order at 7 ("*Doe 1 v. Baylor*, cited above, is instructive.").

Second, the January 19, 2017 email regarding counsel's impressions of the SEC investigation being withheld by Defendants is not outside the scope of the waiver simply because it was "written nearly two months after the SEC presentation." ECF 236 at 4 (citing Defendants' Log No. 331). Anything in the email that reflects, for example, Defendants' strategy, representations, or promises of future conduct made to end the SEC investigation, thoughts on past communications with the SEC, or information that was or was not communicated to the SEC would be directly relevant to understanding what led to the SEC's January 17, 2017 termination letter just days earlier.

Finally, it is plain that, in practice, Defendants' attempt to limit their production to "facts learned in the investigation" will result in pages of black ink, with only isolated, out-of-context words or phrases unredacted. Although Defendants disclaim this result, Defendants have persistently refused to provide Plaintiffs (or Your Honor) any indication of what their proposed redactions would look like. Their refusal is revealing.

Respectfully submitted,

RACHEL L. JENSEN

cc: All Counsel of Record (*via ECF*)