UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § Civil Action No. 4:20-cv-00576 <br> § <br> § <u>CLASS ACTION</u> <br> § <br> § The Honorable Charles R. Eskridge III <br> § |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUR-REPLY
AND *DAUBERT* REPLY**

# REDACTED

4885-7967-9696.v1

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. DEFENDANTS FAILED TO PROVE TOTAL ABSENCE OF PRICE IMPACT .................................................................................................................. 2

    A. Defendants Cannot Prove Shen Caused None of Anadarko's May 3 Decline. ............................................................................................................ 2

        1. Defendants Cannot Prove the $902M Write-off Was Not New and Value-Relevant. ................................................................................ 2

        2. Defendants' ConocoPhillips Analysis Is Flawed. ............................... 4

        3. Cobalt's Decline Proves Shen Was New and Value-Relevant. .......... 5

    B. Defendants Failed to Prove Firestone Alone Caused Anadarko's May 3 Decline. ............................................................................................................ 5

        1. Defendants' Newfound Firestone "News" Was Not New, Value-Relevant Information. .............................................................. 5

        2. Defendants' Aftermarket Argument Is Self-Defeating. ..................... 7

        3. The Colorado Peers Do Not Explain Anadarko's Entire Drop. ......... 8

III. CONCLUSION ...................................................................................................... 9

4885-7967-9696.v1

**I.      INTRODUCTION**

Defendants got their sur-reply, but the result is unchanged: They failed to prove their near-billion-dollar Shen write-off had *zero* impact on Anadarko's stock price. Defendants must do more than "produc[e] *some* evidence relevant to price impact"; they must prove the "'misrepresentation *in fact* did not lead to a distortion of price.'" *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 125-26 (2021).[1]

As this Court recognized, Defendants bore the heavy burden to prove Anadarko's May 3 drop was impacted by "*solely*" non-fraud information. ECF.141.11.[2] Because Defendants have no evidence ruling out the Shen price-impact for Anadarko, they analyze other companies with results that are unreliable and/or *corroborate* price impact.

First, Defendants' ConocoPhillips arguments have been rejected twice, and their statistically-underpowered study proves nothing as to ConocoPhillips, let alone *Anadarko*. Further, Shen-partner Cobalt's decline establishes price impact here.

Second, Defendants fault Plaintiffs for correcting Defendants' inaccurate aftermarket chronology without a separate aftermarket-efficiency study, but ignore that immediate post-Shen-disclosure declines *are* evidence of efficiency. If Plaintiffs cannot rely on aftermarket events, neither can Defendants, and *they have the burden*. Regardless, Defendants cannot carry their burden by changing their chronology with tweets that don't mention Anadarko, about a local press conference on which no investor traded and didn't assign responsibility to Anadarko.

---

[1]   Emphasis in original; otherwise, emphasis is added and citations are omitted.

[2]   "ECF.__.__" references docket numbers and pagination in the CM/ECF system.

Third, Defendants claim the Colorado Peers' declines explain Anadarko's, yet they critique Plaintiffs' event-study for using these same peers as a control group. Plaintiffs' event-study reveals the fatal flaws in Defendants' price-impact narrative: Firestone caused at most a *portion* of Anadarko's May 3 decline; Shen caused the rest.

No matter how Defendants slice it, they cannot sever the link between the fraud and Anadarko's stock-price decline.

## II. DEFENDANTS FAILED TO PROVE TOTAL ABSENCE OF PRICE IMPACT

Defendants assert Plaintiffs "cannot establish price impact" (ECF.237.9), but "***defendant[s]*** bear[] the burden of persuasion to prove a ***lack*** of price impact." *Goldman*, 594 U.S. at 126. Defendants offered no persuasive evidence of *zero* price impact from Shen, and they cannot meet their burden by nitpicking Plaintiffs' evidence. Further, *Goldman*'s instruction to "'be open to all probative evidence on [the] question – qualitative as well as quantitative'" (ECF.237.6) necessarily includes Plaintiffs' evidence demonstrating the fatal flaws in Defendants' counter-narrative.

### A. Defendants Cannot Prove Shen Caused None of Anadarko's May 3 Decline.

#### 1. Defendants Cannot Prove the $902M Write-off Was Not New and Value-Relevant.

Defendants hyped Shen as "'one of Anadarko's largest oil discoveries in the Gulf of Mexico,'" a giant resource, and multi-billion-dollar prospect (ECF.55.13-15 (¶¶30-36)), causing a $2.3B market-capitalization increase. ECF.180-7.171-75 (¶¶26-32).

4885-7967-9696.v1

By Class Period-end, Shen's book value was $900M – 6% of Anadarko's total book value and 2.9% of market cap. ECF.237-1.77-78 (¶49). Shen's write-off revealed, for the first time, Anadarko expected no future cash flows from Shen, causing an unexpected 1Q2017 earnings miss. ECF.96-1.7, 27-28 (¶¶8, 38). Dr. Allen Ferrell admitted several analysts lowered their Anadarko valuations after. Ex.1, 77:19-81:23. For example:

- **Goldman Sachs**: "'lower[ed] our [Net Asset Value] by $1/shr associated with the Shenandoah prospect'";

- **Macquarie**: "'longer term growth is growing increasingly elusive, especially if … Shenandoah is not deemed economic'";

- **Wolfe**: Shen's suspension "'take[s] away from APC's *premium for exploration*, which is gone, and no longer in our price target'"; and

- **Lazard**: cut price target to $64/share; Shen's write-off is ██████ and ██████████████████████████████ that ██████████████████████████████████████

ECF.237-1.81-85 (¶¶61-68); Ex.2 at L00000080.

Defendants' responses fail. Analyst concern on May 3 regarding Colorado's regulatory environment doesn't negate Shen's price impact; it simply means analysts worried about *both*. ECF.237-1.82 (¶60). While one analyst stated Colorado removed a "couple billion dollars of equity value" (ECF.237-1.12 (¶11)), he was referencing Anadarko's *April 27* decline, *not* May 3's yet-to-occur decline. ECF.237-1.82-83 (¶61).

Finally, Shen's $902M write-off can't be trivialized as "sunk costs." ECF.237.11-12. Anadarko reported Shen's book value as $900M under Generally Accepted Accounting Principles. ECF.118-1.6, n.9. "Book value" measures an asset's value and "assets" by definition embody probable future cash flows. ECF 118-1.7 (¶7); ECF.183-5 (¶25). "Sunk

- 3 -

costs" aren't included in book-value because they cannot be recovered from future cash flows and must be written-off. ECF.237-1.11 (¶9, n.23). If the $902M Shen write-off was solely sunk costs, then Defendants inflated Anadarko's book value *by 6%* during the Class Period. ECF 237-1.77-78 (¶49).

### 2. Defendants' ConocoPhillips Analysis Is Flawed.

This Court already found "ConocoPhillips isn't a proper comparator to Anadarko." ECF.198.3; ECF.141.10. Indeed, Shen was more value-relevant to Anadarko, quantitatively and qualitatively. ECF.96.9-10; ECF.198.3 (rejecting Defendants' "similar-stake" argument). Multiple analysts highlighted Shen's ramifications for Anadarko's reputation and dimming exploration prospects. ECF.237-1.82-84 (¶¶61-67). Tellingly, five analysts raised Shen on Anadarko's 1Q2017 call; Shen wasn't mentioned once on ConocoPhillips'. Exs.3-4.

Defendants say ConocoPhillips' write-down was $400M, but by May 3, only its <$101M Shen-6 dry-hole expense was known. ECF.96-1.15-16 (¶21). Notably, the market had known Shen-6 (not Shen-sidetrack) was dry since March. ECF.96-1.12-13 (¶16). After Anadarko's $902M write-off, ConocoPhillips wrote-off the rest for $293M on May 4. ECF.96-1.20-21 (¶28).

Relative to ConocoPhillips' market cap, these amounts are insignificant. Bjorn Steinholt, CFA, estimated Shen's May 3 disaggregated impact on Anadarko as -3.42%, translating to -1.69% for ConocoPhillips. ECF.183-3.9-10 (¶¶11-12). Ferrell's event-study lacks sufficient "power" to detect a -1.69% impact and is, thus, unreliable. *Id.* Worse,

- 4 -

Defendants argue the impact could've occurred on three different days: May 2, May 3, or May 5, meaning each day's impact is far smaller than -1.69%. *See* ECF.237.6.

Still, ConocoPhillips' declines after its Shen write-offs (-0.75% and -0.59%) were larger than its write-downs as a percentage of market cap (0.2% and 0.5%). ECF.96-1.20-21 (¶28); ECF.93-1.33-34, 37-38 (¶¶54, 61-62). Further, "absence of a statistically significant price adjustment does ***not*** show the stock price was unaffected by" fraud. *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019); *accord Del. Cnty. Emps.' Ret. Sys. v. Cabot Oil & Gas*, 2023 WL 6300569, at *9-*10 (S.D. Tex. Sept. 27, 2023). Regardless, ***Anadarko's*** stock drop after the Shen disclosure ***is*** statistically significant.

### 3. Cobalt's Decline Proves Shen Was New and Value-Relevant.

Ferrell's study of Cobalt, a Shen-partner, demonstrates price impact as it shows Anadarko's Shen disclosure was ***new***, ***value-relevant*** information. ECF.118-1.8-9 (¶10). That analysts downgraded Cobalt and slashed price targets underscores the point. ECF.96-1.22-23 (¶31). Cobalt's smaller size and financial distress don't suggest otherwise; they explain the different ***degree*** of impact between Cobalt and Anadarko.

## B. Defendants Failed to Prove Firestone Alone Caused Anadarko's May 3 Decline.

### 1. Defendants' Newfound Firestone "News" Was Not New, Value-Relevant Information.

Previously, Defendants said a May 2, 4:51 p.m., *Denver Post* article caused Anadarko's May 3 decline. Ferrell testified it was the "event of interest" impacting the stock, occurring "[s]hortly ***after*** the filing of [Anadarko's] Form 10-Q" (at 4:26 p.m.)

- 5 -

(ECF.93-1.12-13 (¶14)), linking the Firestone explosion to Anadarko's well and announcing statewide inspections. *Id*.

After Plaintiffs debunked Defendants' theory (ECF.96.7-8), Ferrell scoured the Twitterverse and found three obscure tweets (***none*** mentioning Anadarko) about a local press conference no investor traded on. ECF.237-1.21-22 (¶26).

Defendants' counsel admitted there's no evidence any investor watched the press conference,[3] and Ferrell offers none. Ex.1, 211:7-14. Even *Bloomberg* was unaware of it, noting at 4:43 p.m. authorities hadn't announced the explosion's cause. ECF.118-1.11-12 (¶15). Anadarko's investor-relations chief told the CEO that "not many people had heard about the fire department's press conference." Ex.5 at APC-00737523.

Even if investors watched, they wouldn't have learned "new," value-relevant information. At the press conference, investigators said their ***ongoing*** investigation suggested a cut pipeline was the cause (not Anadarko's wellhead), attributed no responsibility to Anadarko, and didn't mention regulatory action. Ex.6. Even if Anadarko's wellhead caused the explosion (not the cut-pipeline), Ferrell admitted Anadarko's well was a suspected cause before the press conference and testified "anticipated" news is not "new." Ex.1, 64:23-65:5, 123:10-18. Regardless, analysts and Anadarko confirmed any liability for the explosion would be immaterial. *Id.*, 151:9-152:18, 155:1-156:23; Ex.7 at APC-01334718.

---

[3] https://www.ca5.uscourts.gov/OralArgRecordings/23/23-20424_4-4-2024.mp3 at 9:51-10:07 (April 4, 2024 oral argument).

4885-7967-9696.v1

Unsurprisingly, Defendants provide no evidence their "news" had price impact. It is undisputed no investor traded on it: From 4:03-4:15 p.m. (one minute before the Shen disclosure) "only 20 Anadarko shares traded" at the prior closing price. ECF.118.14. No Colorado Peer stock traded during that time. ECF.118-1.12-13 (¶¶16-17).

### 2. Defendants' Aftermarket Argument Is Self-Defeating.

Defendants concede Anadarko traded in an efficient market (ECF.93-1.17-18 (¶22)), but claim – without support – Plaintiffs must separately show aftermarket efficiency to critique ***Defendants'*** omission of *Bloomberg* articles chronicling post-Shen-disclosure declines before the Firestone news. ECF.96.7-8.

Defendants ignore these immediate declines ***are*** evidence of efficiency. ECF.118-1.11-12 (¶15). Cause-and-effect evidence is the "cleanest evidence on market-efficiency." Ex.8 at 1607; *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 506 (S.D. Tex. 2004) ("A stock that reacts immediately to a public disclosure trades in an efficient market.").

Defendants' claim is hypocritical, given that they rely on aftermarket events and trading for Shen partners and Colorado Peers without demonstrating aftermarket efficiency, and Ferrell has previously cited aftermarket trading as price-impact evidence. Ex.9, ¶24. This is a lose-lose argument for Defendants who, again, bear the burden: If reliable conclusions cannot be drawn from aftermarket trading, Ferrell's conclusions must be disregarded.

### 3. The Colorado Peers Do Not Explain Anadarko's Entire Drop.

Defendants claim the Colorado Peers' May 3 declines are proxies for Anadarko's. But their declines were lower, averaging -5.9% versus Anadarko's -8.3%. ECF.93-1.41, Fig. 1. The linkage to Anadarko's well doesn't explain the delta – that link was disclosed on April 26 – and efficient markets respond to only *new* information. Nor does Anadarko's larger size explain the delta: Anadarko was a global company with only 25% of assets in Colorado, while three of four Colorado Peers had nearly *all* their assets there and thus greater exposure to Firestone-related regulation. ECF.237-1.12-13 (¶11); ECF.180-6.481-82, n.49; Ex.1, 159:21-164:25. If *only* Firestone impacted the stock, Anadarko's would have declined *less* than the Colorado Peers'. Tellingly, the Colorado Peer closest in size and exposure to Anadarko declined the least, *only -4.5%*. ECF.93-1.41, Fig. 1.

The inescapable reality is Shen explains the delta. Even controlling for Firestone, Plaintiffs' event-study evidence demonstrates Anadarko's price impact from the Shen disclosure is statistically significant at the 99% confidence level. ECF.96.8.

Defendants seek to exclude this damning event-study, but their quibbling fails.

First, Steinholt selected the Colorado Peer Group index based on *Ferrell's* claim that they are reliable proxies for Anadarko's May 3 decline. ECF.93-1.40-41 (¶65). Standard two-factor models control for non-fraud-related factors using market- and industry-indices. *See* ECF.237-1.73 (¶¶38-39). By using *Ferrell's* Colorado Peers (all oil and gas companies), Steinholt ensured each had the same regulatory-risk exposure, thus controlling for Firestone, while *also* controlling for oil-and-gas-industry fluctuations. ECF.96-1.14-15, 31-32 (¶¶20,

- 8 -

44-45).  Defendants' claim a hypothetical three-factor model doesn't control for Firestone on April 27 (***not*** May 3) is irrelevant; that was not the model Steinholt used.  *See, e.g.*, *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 4737173, *2 (N.D. Ga. Mar. 14, 2008).

Using both Anadarko's SEC peers ***and*** Ferrell's Colorado Peers is neither reliable nor necessary – the SEC index explains none of Anadarko's May 3 decline.  ECF.86-1.109; ECF.86-1.22 (¶37, n.49) (market-efficiency report noting SEC index may be inappropriate for price-impact purposes).  Steinholt conservatively rejected a three-factor model because that model eliminated the controlling benefit of Colorado Peers and would have ***increased*** price impact and damages.  ECF.118-1.14 (¶20).

Second, Steinholt's event-study controls for Colorado regulatory concerns, which were not one-time events and pre-dated the explosion.  Ex.10 at 8-9.  While regulatory-concern changes can be triggered by one-time events, that's true for any industry factor.  A spike in oil prices due to a one-time event (*e.g.*, Russia's invasion of Ukraine) doesn't mean an industry-index can't control for it.  Event studies do this all the time and remain the gold standard.  ECF.86-1.30, n.72.  Defendants fail to substantiate their novel criticisms with case law or literature.

### III.   CONCLUSION

Class certification should be reinstated, and Defendants' *Daubert* motion denied.

DATED:  July 12, 2024                         Respectfully submitted,

                                                            s/ Joe Kendall
                                                         JOE KENDALL

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

ROBBINS GELLER RUDMAN & DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
RACHEL L. JENSEN
LUKE O. BROOKS
HILLARY B. STAKEM
FRANCISCO J. MEJIA
MEGAN A. ROSSI
NICOLE Q. GILLILAND
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel

- 1 -

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 1,994 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED:  July 12, 2024

s/ Joe Kendall
JOE KENDALL

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 12th day of July, 2024.

s/ Joe Kendall
JOE KENDALL
