UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § § | Civil Action No. 4:20-cv-00576 |
| | | CLASS ACTION |
| | | The Honorable Charles R. Eskridge III |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF DEFENDANTS' CLASS CERTIFICATION EXPERT DR. ALLEN FERRELL**

4892-5874-3277.v1

## I.      INTRODUCTION

Defendants failed to carry their burden to demonstrate Allen Ferrell's opinions are admissible under Federal Rule of Evidence ("FRE") 702 and *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993), which require "reliab[ility] at each and every step." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).  "'The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.'" *Id.*[1]

***First***, as Ferrell conceded he is no accounting expert, Defendants try to repackage his "sunk cost" opinion as "basic finance and valuation."  ECF249.12-13.  The problem is that the ***only*** source Ferrell cites for a key assumption is an accounting standard.  Nor do Defendants justify Ferrell's cherry-picking of analyst valuations for a skewed "prevailing market view" that suits his narrative, rendering another key assumption unreliable.

***Second***, Defendants' counter-factual claim that Ferrell did not change his Firestone chronology is easily belied both by Ferrell's testimony that he had no idea about the May 2, 2017 tweets at the time of his original report and Defendants' representation to the Fifth Circuit that Ferrell had "missed" them.  And rather than confront the fact that no investor traded on the tweets or local fire department press-conference, Defendants nonsensically claim it's irrelevant to price impact.  They also dodge the fact that neither the tweets nor fire officials said Anadarko was responsible for the Firestone explosion.

***Third***, Defendants do not meaningfully contest the fact that Ferrell's ConocoPhillips event-study has a 67% Type II error rate and is more likely than not to generate a false

---

[1]    Unless otherwise noted, internal citations are omitted throughout.

negative.  Instead, they fight a strawman, focusing on the general acceptance of single-firm event studies ("SFES") to prove price impact, while ignoring SFES can't disprove it.

Accordingly, Ferrell's accounting-based opinions, new Firestone chronology, and ConocoPhillips event-study should be excluded.

## II.    ARGUMENT

### A.    Ferrell's "Sunk Cost" Opinion Is Accounting-Based.

Ferrell claims Anadarko's book value for Shen (an accounting measure) represented "sunk costs."  Defendants concede Ferrell is not qualified to offer accounting-based opinions (ECF249.12-13) as they must, given he admitted as much.  ECF239-1.15:25-16:2, 195:11-17.  Instead, Defendants recast Ferrell's opinion as a "finance and valuation" opinion, though it's based on accounting standards.  ECF249.12.  They also argue that, though the write-off was pursuant to GAAP, GAAP is somehow irrelevant.  ECF249.14.  They are wrong on both counts.

First, Ferrell relied exclusively on accounting standards from the FASB – the body that establishes GAAP – to assert $467 million of the Shen write-off was a purchase-price allocation to record an acquired asset (Shen) based on its estimated value in 2006 and thus a "sunk cost."  ECF237-1.10-11(¶8) (citing FASB accounting standard).  This accounting standard is the only basis for Ferrell's claim that the impairment reflected past expenditures with no implication for future cash flows.  *Id.*  Ferrell's opinion is inescapably accounting-based.

Defendants' pronouncement that the write-off was not Shen's market value similarly fails.  If that was the extent of Ferrell's opinion, he might be qualified to offer it.  However,

Ferrell goes further, opining: (i) Shen's value as an asset was equal to the present value of future cash flows; (ii) the impairment related to a purchase-price allocation, which Ferrell claims is a sunk cost irrelevant to future cash flows; and, therefore, (iii) the impairment wouldn't impact Anadarko's value.  ECF237-1.11-12(¶9).  The second prong (nature of impairment) is undeniably an ***accounting*** determination – one Ferrell is unqualified to make. ECF239-1.196:20-197:3 (Ferrell had no knowledge whether Shen leasehold was booked based on expected future cash flows); *id.* at 195:24-196:7 (no knowledge whether Anadarko's assets represented potential future cash in-flows).  As Ferrell is unqualified to opine about that critical accounting interpretation, his "pay-off" opinion that the impairment was not value-relevant is inadmissible. *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) ("Expert evidence that is not 'reliable at each and every step is not admissible.'").

Finally, Defendants offer no credible explanation for Ferrell's cherry-picking of analyst valuations.  Defendants' reference to Ferrell's testimony that, early on, there was a mix of analyst views doesn't explain why Ferrell did not take the full array of Shen-valuations into account.  ECF249.15.  Ferrell's cherry-picking renders his methodology unreliable. *Jacked Up*, 807 F. App'x at 348-49 (to rely on others' estimates, "'the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable'"); *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, 2016 WL 6075566, at *4 (W.D. Tex. Apr. 22, 2016) ("Experts cannot ignore relevant evidence by cherry-picking the facts which conform to a desired outcome.").  Defendants' citation to *SEC v. Cuban*, 2013 WL 3809654 (N.D. Tex. July 23, 2013), is unavailing.  As the court there

noted: "Even a credentialed expert … must have reliable support for his opinions; a bare, subjective opinion is inadmissible." *Id.* at *8. Ferrell's "sunk cost" opinion is, thus, sunk.

**B.      Ferrell's Revised Firestone Timeline Is Unreliable**.

It is undisputed that Ferrell had no idea about the tweets when he wrote his opening report – indeed, he testified as much. ECF239-1.209:8-210:4. Ferrell admitted that his methodology for identifying the "total mix of information" investors had on May 2, 2017 didn't capture the tweets. *Id.* at 68:5-7, 69:20-22. In fact, Ferrell has never explained how he found them, even after Plaintiffs directly challenged him. *Id.* at 209:8-210:13. In the Fifth Circuit, Defendants called it "a mistake," explaining Ferrell "missed [them] in his report."[2] These undisputed facts refute Defendants' make-it-up-as-we-go-along explanation for Ferrell changing his timeline after Plaintiffs refuted his prior one. ECF249.17.

Defendants' suggestion that it's irrelevant whether investors read the tweets is also baseless. Ferrell's new opinion is that new, value-relevant Firestone news was released during the fire department press-conference prior to the 4:16 p.m. Shen disclosures, and that the market reacted to it before the 4:51 p.m. *Denver Post* article in Ferrell's report. ECF237-1.21-22(¶¶26-27). But given the lack of evidence investors read the tweets or watched the press-conference, Ferrell's opinion regarding the "total mix of information" timeline is unreliable and inadmissible *ipse dixit*. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or [FRE] requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

---

[2]      *See* https://www.ca5.uscourts.gov/OralArgRecordings/23/23-20424_4-4-2024.mp3 at 9:08-13 (April 4, 2024 oral argument).

4892-5874-3277.v1

Defendants attempt to evade this conclusion by posing a false dichotomy: either (i) investors read the tweets, watched a local press-conference, and reacted immediately; or (ii) the Anadarko after-hours market was inefficient.  ECF249.18.  Neither is true.

As an initial matter, courts hold that obscure or local information is not deemed "publicly available."  As one court explained: "The results of the CASPER trial were not 'publicly available' simply because they were posted in an obscure location on the internet. The CASPER trial results became publicly available when an analyst … issued a research report on the disappointing clinical results."  *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 160 (S.D.N.Y. 2012).  Absent evidence (which is absent here), the Court need not "draw [the] purely academic and unfounded conclusion[]" (*id.*) that investors knew about a local fire-department press-conference before the *Denver Post* covered it.

More importantly, neither the tweets nor fire officials revealed new, value-relevant information.  None said Anadarko **caused** the explosion, for example.  ECF249.19-20. Contrary to Ferrell's suggestion of blame (ECF239-1.134:18-25), when asked whether the cut pipeline causing the explosion was "something that could have [even] been caught … by an operator [*i.e.*, Anadarko]," they answered: "At this point we don't have all the facts as to how the line was cut, so I don't want to speculate on that."  ECF248.92.

Pivoting from Ferrell's prior report and testimony, Defendants now claim the press-conference revealed Anadarko's "equipment" was involved.  ECF249.20.  This was not new: Anadarko's April 26, 2017 disclosure of that fact caused a statistically-significant drop and the information was incorporated into the stock price.  ECF96-1.14(¶18); ECF239-1.64:23-65:5, 120:18-121:10, 123:10-16.  Defendants' stretch is laid bare by their reliance on analyst

reports about "Colorado regulatory risk" (not Anadarko liability) ***the next day***.  ECF249.20.

Obviously, reports published ***after*** the *Denver Post* article and Governor Hickenlooper's

comments about regulatory risk couldn't cause price impact ***before*** the earlier Shen

corrective disclosures when Anadarko's stock price began to decline.

### C.     Ferrell's ConocoPhillips Event-Study Is Inadmissible.

Defendants can't dispute Ferrell's ConocoPhillips event-study has a 67% Type II

error rate (ECF249.22), so they make other arguments as a distraction.

First, Defendants focus on the ability of SFES to affirmatively prove price impact, but

ignore the salient point that SFES generally ***cannot disprove*** price impact.  ECF248.20-21;

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2023 WL 6300569, at *9-*10 (S.D.

Tex. Sept. 27, 2023); *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019);

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 394 (N.D. Ga. 2019).

Defendants' suggestion that the Supreme Court "endorses" SFES is an overreach.

ECF.249.21 (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 280-81

(2014)).  *Halliburton* allows defendants to challenge the *Basic* presumption with direct

evidence of zero price impact.  573 U.S. at 264.  It did not discuss SFES specifically or hold

that any event-study could reliably prove zero price impact.

Defendants also ignore the reality of this case: the estimated Shen impact was large

enough to trigger a statistically-significant decline for Anadarko, but not ConocoPhillips.

ECF183.18.  That doesn't mean ConocoPhillips suffered ***no*** price impact; it only means the

impact can't be distinguished from "random stock price fluctuations," as Ferrell himself said.

- 6 -

ECF93-1.18(¶25).   That's why the *Reference Guide* deems such results "inconclusive." ECF183-3.5(¶3 n.9).

Ferrell claims that, if his event-study had a lower Type II error, it would mean a greater positive return for ConocoPhillips.  ECF249.22.  But it's not the event-study he submitted, and it's also incorrect.  The negative Shen disclosure wouldn't logically cause a positive return, and Ferrell failed to rule out random price fluctuations and analyst commentary in the 26 reports issued on May 2 and May 3, 2017 (including a May 3 report increasing estimates) related to ConocoPhillips' first quarter of 2017 announcement.  *See* ECF237-1.39-40; Ex. 1 at 15, attached hereto (for earnings dates, "the [window] is often expanded to multiple days, including at least the day of the announcement and the day after the announcement").  Further, Ferrell's ConocoPhillips return reflects both (i) company-specific price impact, and (ii) random volatility, and these two components are "indistinguishable," meaning that the directionality of the abnormal return (positive or negative) cannot reliably be assigned to either.  After all, the return could still reflect some amount of price impact, undetected but offset by other factors, including volatility.  There is simply no way for Ferrell's SFES to reliably determine a complete lack of price impact.

Furthermore, contrary to Ferrell's assertion that Plaintiffs assume a statistically-significant drop for ConocoPhillips on May 3 (ECF249-1.8-9(¶8)), Plaintiffs have shown statistically-significant movement wouldn't be expected, so its absence proves nothing.  This is because ConocoPhillips' Shen stake was smaller than Anadarko's and its market capitalization far larger, decreasing Shen's relative value to ConocoPhillips, in addition to myriad other differences.  ECF.96-1.19-21(¶¶27-28).  Ferrell ignores all this.

- 7 -

Finally, Ferrell resorts to finger-pointing to distract from his SFES's high Type II-error rate.  His "defense" is not only irrelevant, it is incorrect.  Bjorn Steinholt's May 2, 2017 Colorado peer-group study found a statistically-significant drop for Anadarko from the Shen news, even controlling for Firestone.  ECF96-1.32(¶46).  Thus, the relevant error to examine is Type I error – the likelihood of a false positive – not Type II.  Steinholt's study of Anadarko's April 27, 2017 return was only to test whether the Colorado peer-group controlled for the impact of Firestone news on that day, which it did – not test the absence of price impact.  *Compare* ECF96-1.31-32(¶45), *with* ECF249-1.9(¶¶9-10).  This provides additional support for using the Colorado peer-group to analyze Shen's May 3 price impact on Anadarko, which was statistically-significant at the 99% confidence level.

## III.   CONCLUSION

Ferrell's challenged opinions are inadmissible under FRE 702 and *Daubert*.

DATED: October 9, 2024                    Respectfully submitted,

                                          ROBBINS GELLER RUDMAN & DOWD LLP
                                          MARK SOLOMON
                                          DANIEL S. DROSMAN
                                          RACHEL L. JENSEN
                                          LUKE O. BROOKS
                                          HILLARY B. STAKEM
                                          FRANCISCO J. MEJIA
                                          MEGAN A. ROSSI
                                          NICOLE Q. GILLILAND


                                               s/ Hillary B. Stakem
                                          _____
                                               HILLARY B. STAKEM

4892-5874-3277.v1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

- 9 -

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 2,000 words, exclusive of the caption and the signature block.

DATED: October 9, 2024

s/ Hillary B. Stakem<br>
HILLARY B. STAKEM

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 9th day of October, 2024.

s/ Hillary B. Stakem<br>
HILLARY B. STAKEM

4892-5874-3277.v1