UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § § | Civil Action No. 4:20-cv-00576 |
| | | CLASS ACTION |
| | | The Honorable Charles R. Eskridge III |

**PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS OF
DEFENDANTS' EXPERT PETER KELLER**

4915-3118-0720.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ISSUE PRESENTED ........................................................................................... 3

III.  RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ...................... 3

IV.   APPLICABLE LEGAL STANDARDS ................................................................ 5

V.    ARGUMENT ...................................................................................................... 7

    A.    Keller's Opinions as to What Investors "Understood" Are Speculative, Unhelpful, and Unreliable ........................................................ 7

    B.    Keller's Legal Conclusions Are Improper, Unhelpful, and Not Based on Specialized Skill, Knowledge, or Expertise ........................................... 11

        1.    Keller May Not Offer Legal Conclusions as to Elements of Plaintiffs' Claims ................................................................................. 11

    C.    Keller's Opinions Should Be Excluded to the Extent They Rely upon or Reference Incorrect Standards of Market Efficiency ............................. 15

    D.    Keller's Testimony About Post-Class-Period Efforts by Other Companies to Develop Shenandoah Is Irrelevant and Unfairly Prejudicial .......................................................................................................... 17

VI.   CONCLUSION ................................................................................................. 19

4915-3118-0720.v1

## TABLE OF AUTHORITIES

**Page**

### CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)................................................................................... 10, 16, 17

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir. 1997) ................................................................................ 11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).............................................................................................. 15

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................................................................................5, 6, 7, 9

*Day v. Baton Rouge City Police*,
2020 WL 7024478 (M.D. La. Nov. 30, 2020) ...................................................... 15

*Fetty v. City of Baton Rouge*,
518 F. Supp. 3d 923 (M.D. La. 2021)................................................................ 7, 15

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)............................................................................................ 7, 9

*Goodman v. Harris Cnty.*,
571 F.3d 388 (5th Cir. 2009) ................................................................................ 11

*Guile v. United States*,
422 F.3d 221 (5th Cir. 2005) ................................................................................ 7, 8

*Homyk v. ChemoCentryx, Inc.*,
2025 WL 1547625 (N.D. Cal. May 30, 2025)..................................................... 9, 18

*In re Stratosphere Corp. Sec. Litig.*,
66 F. Supp. 2d 1182 (D. Nev. 1999)...................................................................... 14

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)................................................................................... 18

*Jacked Up, LLC v. Sara Lee Corp.*,
291 F. Supp. 3d 795 (N.D. Tex. 2018),
*aff'd*, 2018 WL 2064126 (N.D. Tex. May 2, 2018)............................................... 9

4915-3118-0720.v1

**Page**

*Jacked Up, LLC v. Sara Lee Corp.*,
807 F. App'x 344 (5th Cir. 2020) ................................................................................... 8

*Johnson v. Arkema, Inc.*,
685 F.3d 452 (5th Cir. 2012) ................................................................................... 6, 7

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007) ..................................................................................... 8

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) ..................................................................................................... 7

*Lumiere v. United States*,
2022 WL 866365 (S.D.N.Y. Jan. 18, 2022),
*report and recommendation adopted*,
2022 WL 861832 (S.D.N.Y. Mar. 23, 2022) ................................................................. 8

*Moore v. Ashland Chem. Inc.*,
151 F.3d 269 (5th Cir. 1998) ..................................................................................... 17

*Owen v. Kerr-McGee Corp.*,
698 F.2d 236 (5th Cir. 1983) ................................................................................. 11, 12

*Robinson v. Ethicon, Inc.*,
2021 WL 5762720 (S.D. Tex. Dec. 3, 2021) ............................................................... 11

*Russ v. Safeco Ins. Co. of Am.*,
2013 WL 1310501 (S.D. Miss. Mar. 26, 2013) ........................................................... 13

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ..................................................................................... 18

*SEC v. Daifotis*,
2012 WL 2051193 (N.D. Cal. June 7, 2012) ............................................................... 8

*Shu-Hui Wu v. Miss. State Univ.*,
626 F. App'x 535 (5th Cir. 2015) ............................................................................... 18

*Trinseo, S.A. v. Harper*,
2023 WL 8283186 (S.D. Tex. Nov. 30, 2023) ........................................................... 11

4915-3118-0720.v1

**Page**

*United States v. Barile*,
    286 F.3d 749 (4th Cir. 2002) ...................................................................... 12

*United States v. Cooks*,
    589 F.3d 173 (5th Cir. 2009) ........................................................................ 6

*United States v. Scop*,
    846 F.2d 135 (2d Cir. 1988)...................................................................... 12

*United States v. Thomas*,
    847 F.3d 193 (5th Cir. 2017) ...................................................................... 12

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ........................................................................ 6

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Evidence
    Rule 403 ................................................................................... 3, 7, 18
    Rule 702 .......................................................................................*passim*
    Rule 703 ................................................................................................ 17

17 C.F.R.
    §240.10b-5 ....................................................................................*passim*

## I.      INTRODUCTION

Defendants proffer Anadarko's former banker, Peter Keller ("Keller"), to tell the jury what Anadarko investors supposedly understood, how they allegedly valued information about Shenandoah, and whether Defendants' challenged statements were misleading, material, fraudulent, or deceptive.  That is not expert testimony.  It is advocacy.  Keller does not apply a tested method, measure investor understanding, analyze the full body of market information, or examine what Anadarko actually knew.  He instead reads selected public statements, assumes they were complete and true, filters the market record through his own subjective view of which sources deserve credit, and then announces conclusions mirroring the Rule 10b-5 elements the jury must decide.

First, Keller's opinions about what investors "understood," "expected," "would understand," or "cared about" are speculative and unhelpful.  Keller did not survey Anadarko investors, speak with any Class members, or identify a reliable methodology for determining investors' actual understanding.  Instead, he assumes that sophisticated investors interpreted Anadarko's disclosures exactly as he did, while selectively relying on analyst reports and other sources based on his own subjective view of their credibility.  In fact, Keller admitted at deposition that he was "certain there are investors who would disagree" with his interpretations.  Yet he still purports to speak for all of them.  Federal Rule of Evidence 702 does not permit an expert to dress up personal interpretation and speculation as market-wide investor understanding.

Second, Keller's opinions impermissibly invade the province of the Court and jury.  He proposes to opine that Defendants did not engage in a fraudulent scheme, make

- 1 -

misleading or material misstatements, or engage in deceptive business practices – tracking the language and elements of Rule 10b-5.  Those are legal conclusions, not expert opinions. Keller admittedly assumed Defendants' public statements were truthful and complete and did not review internal Anadarko documents showing what Defendants actually knew when they made the challenged statements.  An expert who simply assumes his client's innocence and then proclaims it to the jury is not an expert.  The Court should not allow it.

Third, Keller's market-efficiency opinions are unreliable and confusing.  Securities-fraud law rests on the semi-strong form of market efficiency: in an efficient market, public information is rapidly reflected in the security's price.  Keller instead invokes concepts associated with strong-form efficiency – a theory even Defendants' own damages expert, Professor Allen Ferrell ("Ferrell"), concedes is inapplicable here – and further limits his analysis to information he personally deems "credible."  That subjective screen is inconsistent with the governing framework and taints his opinions about what information was incorporated into Anadarko's stock price.

Finally, Keller's opinions concerning post-Class-Period efforts by other companies to develop Shenandoah years after Anadarko abandoned the project are irrelevant to the issues in this case and likely to confuse the jury.  Plaintiffs' claims turn on what Anadarko knew and disclosed during the Class Period – not what different companies later attempted. Keller's testimony would confuse the jury by creating the false impression that the post-hoc optimism of different operators can excuse Anadarko's earlier misleading statements.  It cannot.

- 2 -

Because Keller's challenged opinions are unreliable, speculative, legally improper, irrelevant, and unduly prejudicial, Plaintiffs respectfully request that the Court exclude them under Federal Rules of Evidence 702 and 403.

## II.   ISSUE PRESENTED

Should this Court exclude certain testimony and opinions of Defendants' expert Keller pursuant to Rules 702 and 403 that: (1) are speculative and unreliable because Keller never spoke with a single investor and applied no recognized methodology; (2) are improper legal conclusions that track the statutory language of Rule 10b-5 and usurp the roles of both this Court and the jury; (3) are unduly prejudicial because they concern post-Class Period conduct by unrelated third parties; and/or (4) will not assist the jury because they rest on circular assumptions and incorrect market efficiency standards?

## III.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

This securities fraud action was filed on February 19, 2020 (ECF 1), and the operative complaint was filed on August 17, 2020 (ECF 55).  Plaintiffs allege that Defendants violated the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, including by: (a) engaging in a scheme to defraud; (b) omitting to state one or more material facts necessary to make their public statements not misleading; and (c) engaging in a fraudulent or deceptive act, practice, and course of business.  ECF 55, ¶174.

On November 9, 2022, Defendants served the Expert Report of Peter Keller (Ex. 1) in support of their truth-on-the-market defense.[1]  Keller is a former banker for Anadarko at

---

[1]   Unless otherwise noted, all exhibits referenced herein are attached hereto, emphasis is added, and citations are omitted.

- 3 -

Bank of New York/BNY Mellon, and holds a Bachelors of Science degree in history, environmental science, and economics.  Keller offers three principal opinions in his report, each of which describes a category of information Keller claims investors did or did not understand during the Class Period.

First, Keller asserts that investors understand appraisal drilling "is a high-risk business subject to uncertainty, and that any decision to invest in and develop an oil field depends on many factors." *E.g.*, Ex. 1, ¶16(a).  Second, Keller claims that investors "did not understand Anadarko's pre-Class Period statements as constituting a resource estimate of Shenandoah," because of Anadarko's supposedly "consistent[] and proper[]" disclosures. *E.g.*, *id.*, ¶16(b). Third, Keller opines as to numerous purported "facts" about Shenandoah that "the market was aware" of during the Class Period. *E.g.*, *id.*, ¶16(c).  Notwithstanding his use of the more modest phrase "the market was aware" in ¶16(c), Keller does not limit himself to identifying public information.  Rather, for each point in that paragraph, he opines that investors **understood** those matters as facts; he also purports to describe how investors "view[ed]" Anadarko's statements and how they valued Shenandoah as a result. *See generally id.*, ¶¶114-211; Appendix A, Table 2, attached hereto.  Keller also relies on his findings to conclude that Anadarko's public disclosures were not misleading to investors. *See id.*, Table 1.

On January 25, 2023, Defendants served the Expert Rebuttal Report of Peter Keller (Ex. 2), in which Keller purports to rebut opinions provided by: (a) Plaintiffs' geology expert, Dr. Robert Merrill, in the Expert Report of Robert Merrill, Ph.D.; (b) Plaintiffs' loss causation and damages expert, Bjorn Steinholt in the Expert Report of Bjorn I. Steinholt,

- 4 -

CFA; and (c) Plaintiffs' accounting expert, D. Paul Regan, in the Expert Report of D. Paul Regan, CPA/CFF.   In so doing, Keller again repeatedly opines on what investors "understood" how they interpreted certain disclosures, and what they would expect or care about.   Ex. 2, ¶53 ("I review the…investor understanding related to each purported non-disclosure"); *see* Appendix A, Table 2.  He also opines that alleged misstatements by Anadarko were not misleading or material.  Appendix A, Table 1 (citing Ex. 2, ¶¶5-8, 31, 68, 81).  On January 17, 2023, Plaintiffs deposed Keller, where he confirmed that he also intends to opine that Defendants did not engage in a scheme to defraud or a deceptive business practice, and that the alleged misstatements were legally immaterial and not misleading.  Ex. 3 at 34:21-35:3, 35:16-23, 84:4-12.

On February 23, 2023 the parties filed *Daubert* motions.  On January 10, 2024, the Court terminated the parties' previously filed summary judgment and *Daubert* motions without prejudice "to refiling at an appropriate time after resolution of" ongoing "privilege issues and the pending appeal before the Fifth Circuit regarding class certification."  ECF 216 at 2.  On April 27, 2026, the Court entered the operative Scheduling and Docket Control Order setting deadlines for refiling *Daubert* motions.  ECF 305.

## IV.    APPLICABLE LEGAL STANDARDS

Under Rule 702, trial courts serve as gatekeepers for expert testimony, which is admissible only if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

- 5 -

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993); *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).

"Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id*.

For an expert's opinion to be reliable, it must "'be grounded in the methods and procedures of science and...be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459. Under *Daubert*, the following non-exclusive list of factors are considered for the reliability inquiry:

"(1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community."

*Id.* These factors are aimed at ferreting out "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997). If "there is

- 6 -

simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). And "'nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157 (1999).

Rule 702's "helpfulness standard" requires that the proponent of testimony "demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson*, 685 F.3d at 459. "'If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.'" *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).

Even if testimony is admissible under Rule 702, it may still be excluded under Rule 403 if its probative value is substantially outweighed by, *inter alia*, "unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595; *Fetty v. City of Baton Rouge*, 518 F. Supp. 3d 923, 928 (M.D. La. 2021).

## V.   ARGUMENT

### A.   Keller's Opinions as to What Investors "Understood" Are Speculative, Unhelpful, and Unreliable

Throughout his reports, Keller opines more than ***120 times*** about what "investors understood," "would have understood," and "expected" about Shenandoah during the Class Period. *See* Appendix A, Table 2. Keller's opinions, packaged as what all sophisticated investors understood, are nothing more than his own subjective views, and as such are

- 7 -

unreliable and unhelpful to the jury.  *See SEC v. Daifotis*, 2012 WL 2051193, at *5 (N.D. Cal. June 7, 2012) (excluding expert opinion "about what investors 'actually understood' or 'should have understood' based on the [defendant's] disclosures," reasoning that it was "unhelpful and not the proper subject of expert testimony, especially given that [the expert] did not speak to a single investor"); *Lumiere v. United States*, 2022 WL 866365, at *28 (S.D.N.Y. Jan. 18, 2022) (government objected to question about what "investors understood," which "Judge Rakoff termed 'well taken' (likely because the question called for speculation as to what the unnamed investors understood)"), *report and recommendation adopted*, 2022 WL 861832 (S.D.N.Y. Mar. 23, 2022).

First, Keller lacks a reliable basis for drawing conclusions about what Anadarko investors understood or how they interpreted Anadarko's disclosures during the Class Period. "Expert evidence that is not 'reliable at each and every step' is not admissible." *Jacked Up, LLC v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020); *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) ("'The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia.'").  And because "[a]n expert's opinion must be supported to provide substantial evidence," courts "'look to the basis of the expert's opinion, and not the bare opinion alone.'"  *Guile*, 422 F.3d at 227.

Keller, like the expert in *Daifotis* (2012 WL 2051193, at *5), never surveyed Anadarko investors or even spoke to a single one.  Ex. 3 at 56:22-25, 75:17-24.  Instead, Keller's opinions merely ***assume*** that all sophisticated investors would have shared his exact

- 8 -

interpretation of information – a highly dubious proposition that Keller simultaneously relies on and disavows:

> Q.    And it's your opinion that all sophisticated investors understood information about Anadarko exactly the way you do?
>
> A.    Yes.
>
> Q.    And if a – an investor disagrees with you, are they included in the definition of a sophisticated investor in your opinion?
>
> A.    I – I'm certain there are investors who would disagree with me.

*Id.* at 68:22-69:5.

That testimony exposes an analytical gap. Keller is "certain" that investors disagree with him – yet simultaneously proffers his personal views as the uniform understanding of the entire market. Indeed, Keller's testimony proves the opposite: he acknowledges disagreement among investors, but offers no method for deciding whose understanding mattered, how prevalent any view was, or whether his view was representative. *E.g.*, *id.* at 67:23-69:11. With nothing to support this fundamental assumption, Keller's opinions about the wider investment community's understanding are nothing but speculative *ipse dixit*. *See Gen. Elec.*, 522 U.S. at 144 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 809-10 (N.D. Tex. 2018) (excluding opinion testimony based on assumptions "that remain unexplained or unsupported by the record"), *aff'd*, 2018 WL 2064126 (N.D. Tex. May 2, 2018); *Homyk v. ChemoCentryx, Inc.*, 2025 WL 1547625, at *8 (N.D. Cal. May 30, 2025) (medical expert could "not improperly speculate by testifying about how the medical

- 9 -

community or other clinicians view or would view [drug's] safety in the face of certain data").

Second, Keller's selection of sources for his analysis is subjective and incomplete. Keller admits that to characterize what investors "underst[ood]," he needed "every relevant piece of information." Ex. 3 at 75:17-21. But what Keller actually reviewed was far more limited:

> Recognizing that markets assimilate information from all *credible* sources, I review Anadarko's statements, related disclosures made by the other Shenandoah Partners, as well as comments about these disclosures from equity research analysts, investment managers, and news outlets.

Ex. 1, ¶106. But efficient markets do not just assimilate public information from supposedly "credible" sources into a stock price; they assimilate *all* public information. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). And, as Keller himself recognizes, what one investor considers a "credible" source may significantly differ from another's views. *See* Ex. 3 at 32:1-3. Nevertheless, Keller limited his review of analyst reports – his proxy for what investors understood – to those *he* viewed as "credible." *Id.* at 78:11-15 ("Q. So some analysts you decided were not credible; correct? A. Some analysts I didn't attempt to review because I didn't view them as having particular insights into the market, that's correct."). Keller admitted he did not follow any authoritative source in determining which analysts were credible and which weren't, but rather his own personal and "definitely subjective" views of "who's...good coverage." *Id.* at 79:10-22. His entire "methodology" is based on his determination of what sources are "credible," which he then uses to select sources and infer investor understanding, all without any objective standard. Thus, Keller's

- 10 -

self-selection of "credible sources" is inherently subjective, incompatible with the applicable legal standards, and renders his resultant opinions unreliable.

Finally, Keller's opinions as to Anadarko investors' subjective understanding, knowledge, and expectations are improper state-of-mind testimony. Keller has not spoken with any Class members, does not know who the Class members are, and can only speculate as to their actual understanding about Shenandoah during the Class Period. Ex. 3 at 63:17-64:13. The Class encompasses thousands of investors across the country – institutional funds, pension funds, retail investors – each of whom may have processed Anadarko's disclosures differently. Keller cannot speak for any of them, let alone all of them. Thus, Keller's opinion is clearly unreliable and of no assistance to the jury. *See Robinson v. Ethicon, Inc.*, 2021 WL 5762720, at \*4 (S.D. Tex. Dec. 3, 2021) (in this Circuit, state-of-mind testimony is inadmissible "when it does not 'assist the trier of fact to understand the evidence or to determine a fact in issue'"); *Trinseo*, *S.A. v. Harper*, 2023 WL 8283186, at \*1 (S.D. Tex. Nov. 30, 2023) (expert not qualified to opine on parties' or their employees' states of mind).

**B.    Keller's Legal Conclusions Are Improper, Unhelpful, and Not Based on Specialized Skill, Knowledge, or Expertise**

**1.    Keller May Not Offer Legal Conclusions as to Elements of Plaintiffs' Claims**

"[A]n expert may never render conclusions of law" or offer legal opinions. *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee*

- 11 -

*Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (expert testimony as to whether or not the plaintiff's acts were "the 'cause of the accident'" were properly excluded, as that was "the issue the jury must resolve after appropriate legal instructions").  Courts therefore exclude expert testimony that purports to tell the jury what the law is or what result to reach.  *See id.* at 240; *United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017) (the "Federal Rules of Evidence 'afford ample assurances against the admission of opinions which would merely tell the jury what result to reach'").

Keller nevertheless proposes to apply the facts to the law to tell the jury what result to reach on key elements of Plaintiffs' claims – *i.e.*, that based on the public statements that he reviewed, Defendants did not engage in deceptive business practices, a scheme to defraud, or make materially misleading statements.  *See* Appendix A, Table 1.  Confirming that these are legal conclusions, Keller uses the very language of Rule 10b-5 in the opinions, directing the jury how to decide elements of Plaintiffs' cause of action.  *See* 17 C.F.R. §240.10b-5 ("It shall be unlawful for any person . . . (a) [t]o employ any device, scheme or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.").

Courts have excluded similar testimony for invading the province of the jury.  *See, e.g.*, *United States v. Scop*, 846 F.2d 135, 140-41 (2d Cir. 1988) (affirming exclusion of expert testimony that "drew directly upon the language of the statute and accompanying regulations" in seeking to opine on fraud); *see also United States v. Barile*, 286 F.3d 749,

- 12 -

761 (4th Cir. 2002) (affirming exclusion of expert testimony about statutory phrase

"'materially misleading statements'"); *Russ v. Safeco Ins. Co. of Am.*, 2013 WL 1310501, at

*22 (S.D. Miss. Mar. 26, 2013) (in insurance fraud case, excluding expert testimony

regarding whether there was fraud or statements were "'misleading,' as those issues are for

the jury to determine").  The same result follows here.  Keller should not be permitted to

testify, directly or indirectly, that Defendants' statements were not misleading, that omitted

information was not material, risks were fully disclosed, that no fraud occurred, that no

scheme existed, or that Defendants did not engage in deceptive conduct.

Moreover, Keller does not utilize any specialized knowledge or expertise to reach his

conclusions that Defendants did not make material misstatements or engage in fraud.  At

deposition, Keller admitted that he: (1) *assumed* Defendants' statements were truthful; and

(2) did not review *any* internal documents to discern whether or not the statements were

truthful in fact:

> Q.    . . . [Y]ou're assuming that all of the statements by the company
> were true and accurate?
>
> A.    Yes, I am.
>
> Q.    And that goes for all your opinions; correct?
>
> A.    They were true and accurate based on the information known at
> the time.  Yes, that's correct.
>
>                *    *    *
>
> Q.    But you haven't looked at any internal documents?
>
> A.    That's correct.

Ex. 3 at 102:15-22, 168:14-16.

- 13 -

Keller's opinions that Defendants did not engage in misconduct do not rest on any meaningful analysis. They rest on an assumption that decides the issue: Keller assumes Anadarko's challenged statements were truthful and complete, and then concludes that investors could not have been deceived. That is circular.

It is also backwards. The question in this case is whether public statements were misleading in light of what Anadarko knew and failed to disclose. It is impossible for Keller to reliably opine that the "risks involved in Shenandoah were fully disclosed" without having reviewed a ***single internal company document*** to find out what Anadarko actually knew about Shenandoah's risks at the time. *See id.* at 85:6-10, 102:11-103:16. Keller admitted he does not know whether "all material adverse information known by Anadarko about Shenandoah during the class period was known to investors" because he did not read any internal company documents before reaching his conclusions. *See id.* at 117:22-118:18.

Keller uses no specialized expertise in regurgitating Defendants' public statements, assuming they were truthful and complete, and then concluding that Defendants did not engage in any wrongdoing. This is not the purpose of expert testimony; a jury is equally capable of reading public statements and deciding whether they are misleading or not. *See* Fed. R. Evid. 702 (requiring that "expert's scientific, technical, or other specialized knowledge...help the trier of fact to understand the evidence or to determine a fact in issue" for opinion to be admissible); *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1188 (D. Nev. 1999) ("A district court should be especially cautious" where an "expert[] comment[s] upon the materiality or fraudulence of disputed misstatements in [a] securities fraud action[]. It does not take any special competence, for example, to read pertinent public

- 14 -

documents (*e.g.*, prospectuses, press releases, and recorded statements) to determine whether certain risks were conveyed to the public."). Indeed, that is precisely what the jury will be asked to do – without Keller's thumb on the scale. *See Fetty*, 518 F. Supp. 3d at 934 ("[F]or the expert to not only base his opinion on an assumption that his client's version of the events is true, but to actually adopt and endorse that version of the events 'would be improper usurpation of the jury's role.'"); *Day v. Baton Rouge City Police*, 2020 WL 7024478, at *5 (M.D. La. Nov. 30, 2020) (expert testimony that "merely accept[s] one of two contested factual versions in this case" was unreliable and would "artificially bolster[] and potentially elevate[] Defendants' version without any apparent basis for such enhanced credibility").

### C.    Keller's Opinions Should Be Excluded to the Extent They Rely upon or Reference Incorrect Standards of Market Efficiency

In Section 2.1 of his report, "Market Efficiency," Keller explains his assumption that Anadarko securities traded in an efficient market during the Class Period, and that "Required and Voluntary Disclosures Are Reflected in Efficient Market Prices." Ex. 1 at 9. The problem is not that Keller assumes market efficiency; it is the standard he uses.

First, Keller errs by departing from the semi-strong form of market efficiency that is universally adopted in securities fraud litigation and generally serves as the foundation for the Supreme Court's decision in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42, 247 (1988), establishing the fraud-on-the-market presumption. Under a semi-strong form of market efficiency, it is assumed that a share price in an efficient market reflects ***all public information*** concerning the security.

- 15 -

Keller indicated at deposition that he is relying on the "strong form of market efficiency," a widely discredited theory that hypothesizes that all public ***and private*** (*i.e.*, insider) information is priced into a company's stock. *See* Ex. 3 at 27:3-15. He also quotes Richard A. Brealey, Stewart C. Myers, and Franklin Allen's discussion of strong-form efficient markets. Ex. 1, ¶19 ("'[P]rices reflect all the information that can be acquired by painstaking analysis of the company and the economy.'"). Even Defendants' loss causation and damages expert, Ferrell, agrees that strong-form efficiency is not relevant here and that semi-strong efficiency is the standard in securities litigation. Ex. 4 at 25:20-26:15. In other words, Defendants' own damages expert has repudiated the theoretical framework underlying Keller's market efficiency discussion. If the framework is wrong, the opinions built on it are unreliable and confusing.

Even if Keller attempts to recast his testimony as semi-strong market efficiency, he layers on limitations that are inconsistent with that framework and taint his opinions about what Anadarko investors supposedly understood. *See* §V.A., *supra*. For example, Keller says that the "reaction of stock prices to new information is 'instantaneous' in an efficient market," when the standard is that prices react to new information "rapidly" – an important distinction. *Amgen*, 568 U.S. at 466 (the fraud-on-the-market theory "is premised on the understanding that in an efficient market, all publicly available information is rapidly incorporated into, and thus transmitted to investors through, the market price"). Keller's incorrect formulation risks imposing an artificially rigid timing requirement and confusing the jury about how efficient markets are assumed to operate. If the jury is led to believe that an efficient market reacts "instantaneously," then any delay in a market reaction means the

- 16 -

information was not incorporated – a standard directly at odds with the Supreme Court's *Amgen* holding.

Second, Keller errs in claiming that only so-called "credible" information is incorporated into a stock's price. Ex. 1, ¶19. That again is too limiting; efficient-market doctrine turns on public information, not on information preselected by an expert according to his personal view of which information sources are sufficiently "credible." *See Amgen*, 568 U.S. at 466. But, as discussed, Keller impermissibly substitutes his own subjective credibility judgments for a reliable methodology to define the universe of market information. He then uses that subjective screen to select the analyst reports and other sources he treats as proxies for investor understanding. As a result, his opinions rest on an inappropriate foundation that is inconsistent with the governing legal and economic framework.

For these reasons, Keller should be precluded from offering opinions that rely on strong-form efficiency, an "instantaneous" price-reaction standard, or subjective "credibility" filters. Fed. R. Evid. 702, 703.

### D.    Keller's Testimony About Post-Class-Period Efforts by Other Companies to Develop Shenandoah Is Irrelevant and Unfairly Prejudicial

It is axiomatic that "'[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). Keller's testimony about companies trying to develop Shenandoah in 2023 – six years after Anadarko's $902 million write-down and abandonment of the project – does

- 17 -

not bear on any issue in this case, and should be excluded as irrelevant and unhelpful. *See* Appendix A, Table 3.

Plaintiffs' claims concern whether Anadarko and its corporate representatives misled investors about Shenandoah's commercial viability and producible resource size and concealed negative information known *at the time* the alleged misstatements were made. *See Schleicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010) ("Fraud depends on the state of events when a statement is made, not on what happens later."); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262 (2d Cir. 2016) (same). The claims have nothing to do with investor pitches made by foreign companies – companies with different motivations, talents and capabilities, and technologies than Anadarko – years after Anadarko abandoned Shenandoah. Expert testimony about these companies is likewise irrelevant. *Shu-Hui Wu v. Miss. State Univ.*, 626 F. App'x 535, 540 (5th Cir. 2015) (excluding irrelevant expert testimony addressing statistical data outside the relevant period). Later events cannot retroactively make a statement truthful, immaterial, or non-misleading when made. Nor can later development efforts by different companies establish what Anadarko knew or disclosed, or what Anadarko investors understood during the Class Period.

Any *de minimis* probative value that Keller's testimony might have is substantially outweighed by the danger of confusing the jury about what is actually at issue – Defendants' alleged misconduct during the Class Period – or misleading them as to the value of Shenandoah to Anadarko during the Class Period. Accordingly, Keller's opinions in his report (Ex. 1, ¶¶43-45) and rebuttal report (Ex. 2, ¶¶51, 82) should be excluded pursuant to Rule 403. *See Homyk*, 2025 WL 1547625, at *5 (in securities class action, excluding expert

- 18 -

testimony on "post-Class Period developments" as irrelevant and "run[ning] the risk of creating jury confusion and making the trial difficult to manage"). The prejudice is obvious. Defendants would use later development efforts to suggest that Shenandoah was always commercially viable, thereby distracting jurors from the actual disclosure record and inviting a verdict based on post-hoc optimism rather than Class Period truthfulness.

## VI. CONCLUSION

Plaintiffs respectfully request that Defendants' expert, Keller, be precluded from offering the opinions and testimony identified herein and in Appendix A hereto.

DATED:  June 1, 2026                           Respectfully submitted,

                                        ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                        MARK SOLOMON
                                        DANIEL S. DROSMAN
                                        LUKE O. BROOKS
                                        HILLARY B. STAKEM
                                        NICOLE Q. GILLILAND

                                                     s/ Hillary B. Stakem
                                                   HILLARY B. STAKEM

                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)

                                        Class Counsel

- 19 -

- 20 -

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

4915-3118-0720.v1

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4,980 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED: June 1, 2026

s/ Hillary B. Stakem<br>
HILLARY B. STAKEM

## CERTIFICATE OF CONFERENCE

On May 29, 2026, Class Counsel conferred telephonically with Defendants' counsel regarding the relief requested in this motion.  Defendants' counsel indicated that Defendants will oppose this motion.

DATED: June 1, 2026

s/ Hillary B. Stakem<br>
HILLARY B. STAKEM

4915-3118-0720.v1

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared

in this matter via the Court's CM/ECF system on this, the 1st day of June, 2026.


s/ Hillary B. Stakem
HILLARY B. STAKEM

4915-3118-0720.v1