**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576 <br><br> District Judge Charles R. Eskridge III <br><br> CLASS ACTION |

**DEFENDANTS' MOTION TO EXCLUDE STATE-OF-MIND TESTIMONY**
**OF DR. ROBERT MERRILL AND LYNDON PITTINGER**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF ISSUE .................................................................................... 2

APPLICABLE LEGAL STANDARDS ...................................................................... 2

FACTUAL BACKGROUND .................................................................................. 2

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 4

ARGUMENT ..................................................................................................... 4

I.      Qualification. ........................................................................................ 4

II.     Reliability. ............................................................................................ 5

III.    Relevance. ............................................................................................ 7

CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ...................................................................................1, 4, 5, 6

*Fisher v. Halliburton*,
2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) ......................................................... 10

*Fletcher v. Allstate Tex. Lloyd's*,
2022 WL 2980949 (E.D. Tex. July 25, 2022) ........................................................... 5

*Huss v. Gayden*,
571 F.3d 442 (5th Cir. 2009) .................................................................................... 4

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................... 5, 6

*Jenkins v. Helmerich & Payne Int'l Drilling Co.*,
577 F. Supp. 3d 587 (S.D. Tex. 2021) ..................................................................... 10

*Johnson v. Arkema, Inc.*,
685 F.3d 452 (5th Cir. 2012) .................................................................................... 5

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) .................................................................................................. 2

*Marlin v. Moody Nat'l Bank*,
248 Fed. App'x 534 (5th Cir. 2007)........................................................................... 7

*Retractable Techs., Inc. v. Abbott Lab'ys, Inc.*,
2010 WL 11531436 (E.D. Tex. June 18, 2010) ...................................................5, 6, 7

*Salas v. Carpenter*,
980 F.2d 299 (5th Cir. 1992) .................................................................................... 7

*United States v. Vista Hospice Care, Inc.*,
2016 WL 3449833 (N.D. Tex. June 20, 2016) ......................................................... 10

*Vaulting & Cash Servs., Inc. v. Diebold Inc.*,
1998 WL 726070 (E.D. La. Oct. 15, 1998).............................................................. 6

*Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*,
801 F.3d 512 (5th Cir. 2015).................................................................................... 7

*Wilson v. Woods*,
   163 F.3d 935 (5th Cir. 1999) ............................................................................ 2, 4


**Statutes & Rules**

Fed. R. Evid. 702 ......................................................................................... 1, 2, 4, 5

## PRELIMINARY STATEMENT

Plaintiffs' scientific experts, Robert Merrill and Lyndon Pittinger, offer speculative opinions in their reports regarding the knowledge, intent, and beliefs of Defendants, Anadarko employees, and Anadarko's partners about the Shenandoah project.  At their depositions, both experts walked back these opinions significantly.  Nonetheless, because their expert reports assert these impermissible opinions, Defendants seek an order confirming what the experts have already seemingly acknowledged:  they should not be permitted to opine on the knowledge, intent, or beliefs of Defendants and others regarding the Shenandoah project.

*First*, both experts lack the qualifications to opine on Defendants' and third parties' knowledge and beliefs.  Indeed, interpreting evidence of knowledge and intent has no foundation in any body of knowledge or expertise.  *Second*, by Merrill's and Pittinger's own admissions, testimony on knowledge and beliefs is unreliable because it is speculative and not based in scientific knowledge.  *Third*, the experts' state-of-mind opinions are irrelevant because they would not be helpful to the jury, which does not need expert assistance to interpret the evidence and come to conclusions regarding knowledge and intent.

Determinations of intent, knowledge, and beliefs pose quintessential jury questions that cannot and should not be resolved with expert testimony.  The Court should accordingly exclude Merrill's and Pittinger's state-of-mind opinions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## STATEMENT OF ISSUE

Whether Plaintiffs' experts' state-of-mind opinions should be excluded under Federal Rule of Evidence 702 and *Daubert* because the experts are not qualified to offer state-of-mind opinions and because their opinions are not based on any specialized knowledge and will not help the trier of fact to understand the evidence or to determine a fact in issue.

## APPLICABLE LEGAL STANDARDS

Expert testimony is admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702. District courts play a "gatekeeping" role and must ensure that all expert witnesses are qualified to testify and that their opinions are both reliable and relevant.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

## FACTUAL BACKGROUND

Plaintiffs submitted expert reports from Dr. Robert Merrill, a geologist, and Lyndon Pittinger, a petroleum engineer, who were asked to "opine about the adverse information known" by the Defendants regarding Shenandoah's commercial viability and producible resource size leading up to and during the Class Period.  (Ex. 18 (Expert Report of Dr.

2

Robert Merrill ("Merrill Rpt.")) ¶ 3; Ex. 21 (Expert Report of Lyndon Pittinger ("Pittinger Rpt.")) ¶ 3.)[1]

At their depositions, both experts significantly walked back their state-of-mind opinions. (*See, e.g.*, Ex. 104 (Dep. of Dr. Robert Merrill ("Merrill Tr.")) 45:13-19, 76:2-77:11, 128:16-129:23, 130:1-5, 142:15-19, 148:3-10, 148:23-149:17, 149:19-150:23, 154:21-25, 155:13-23, 161:7-163:7, 163:20-25; Ex. 105 (Dep. of Lyndon Pittinger ("Pittinger Tr.")) 56:6-17, 79:24-80:14, 114:20-117:24, 123:16-21; 126:6-23, 177:21-179:9, 190:25-191:7; 243:24-245:15, 245:17-246:8; 257:21-259:5). Notwithstanding that, the expert reports still contain expansive impermissible opinions on Defendants', Anadarko employees', and the partners' knowledge, beliefs, and intent that are central to their overall reports. (*See* Ex. 21 (Pittinger Rpt.) ¶ 329 ("I conclude that Anadarko personnel and management knew that Shen was probably commercially unviable following Shen-3 and unviable with reasonable certainty after Shen-4 due to extensive fault compartmentalization and asphaltene deposition.").) In particular, both Pittinger and Merrill opine on what Anadarko management knew or likely knew about Shenandoah's commercial viability and the factors potentially impacting commerciality (*see* Ex. 21 (Pittinger Rpt.) ¶¶ 11(j), 13(a), 13(d), 13(n), 36-37, 40, 77, 102, 166, 216, 256, 299, 303-04, 307-08, 310-13, 329; Ex. 18 (Merrill Rpt.) ¶¶ 22, 35, 48, 69, 73, 97), as well as Anadarko employees' intent and beliefs about the appraisal process (*see* Ex. 21 (Pittinger

---

[1] Citations to Exhibits are to the Exhibits to the Declaration of Lauren M. Rosenberg in Support of Defendants' Motion for Summary Judgment filed contemporaneously with this motion.

Rpt.) ¶¶ 13(a), 13(d), 36-38, 56, 68, 81, 95-96, 105, 115-16, 190, 192, 219, 329; Ex. 18 (Merrill Rpt.) ¶¶ 59, 70-71, 84). And Pittinger also opines about what Anadarko's partners believed during Shenandoah's appraisal. (*See* Ex. 21 (Pittinger Rpt.) ¶¶ 29, 93, 105-06, 231-33.)

## NATURE AND STAGE OF THE PROCEEDINGS

On November 9, 2022, Plaintiffs disclosed their expert reports, including those of Merrill and Pittinger. Pittinger submitted a corrected report on November 29, 2022. Merrill and Pittinger were deposed on December 7, 2022 and December 16, 2022, respectively.

## ARGUMENT

District courts must exercise their gatekeeping function to ensure that experts are qualified to testify about the subject areas in which they seek to offer an opinion, and that their testimony is both reliable and relevant. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009); *Daubert*, 509 U.S. at 589. Merrill's and Pittinger's state-of-mind opinions meet none of these requirements and therefore must be excluded under Rule 702.

### I.    Qualification.

Neither Merrill nor Pittinger are qualified to offer expert testimony regarding Defendants' or any individual's knowledge or beliefs about the Shenandoah project. An expert must be qualified "by knowledge, skill, experience, training, or education" in the subject areas about which he seeks to offer an opinion. Fed. R. Evid. 702. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified

4

to testify in a particular field or on a given subject." *Huss*, 571 F.3d at 452 (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

Merrill's and Pittinger's experience in geology and petroleum engineering do not qualify them to opine on Defendants', Anadarko employees', or Anadarko's partners' intent or beliefs. Indeed, state-of-mind testimony has "no basis in any relevant body of knowledge or expertise" and presents a "classic jury question[,] not one for the experts." *Retractable Techs., Inc. v. Abbott Lab'ys, Inc.*, 2010 WL 11531436, at *5 (E.D. Tex. June 18, 2010) (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004)). Absent a "basis in [their] body of expertise," Merrill's and Pittinger's state-of-mind opinions must be excluded. *Id.* at *6.

## II.    Reliability.

Merrill's and Pittinger's opinions regarding intent and knowledge are independently unreliable under *Daubert* because they are rooted in speculation, not scientific knowledge. To satisfy the reliability prong, expert testimony must be based in scientific, technical, or other specialized knowledge and "supported by appropriate validation." *Daubert*, 509 U.S. at 590; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). Testimony that is grounded in "subjective belief or unsupported speculation" does not meet this standard and must be excluded. *Daubert*, 509 U.S. at 590; *see also* Fed. R. Evid. 702(c) (expert opinion must be "the product of reliable principles and methods").

Courts regularly find that expert testimony about intent and state of mind is inadmissible. *See, e.g.*, *Retractable Techs., Inc. v. Abbott Lab'ys, Inc.*, 2010 WL 11531436, at *5 (E.D. Tex. June 18, 2010); *see also Fletcher v. Allstate Tex. Lloyd's*, 2022

5

WL 2980949, at *5 (E.D. Tex. July 25, 2022) (holding that an expert's "conclusion that [the defendant] 'intentionally' overlooked certain damages is inadmissible as speculation"); *Vaulting & Cash Servs., Inc. v. Diebold Inc.*, 1998 WL 726070, at *1 (E.D. La. Oct. 15, 1998) (excluding an expert's opinion because his "specialized knowledge will not assist the Court in ascertaining [the defendant's] intentions in terminating the subject agreement"), *aff'd sub nom. Vaulting & Cash Servs. v. Diebold*, 199 F.3d 440 (5th Cir. 1999). This is so because opinions "on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge" and are therefore impermissibly speculative. *Retractable Techs., Inc.*, 2010 WL 11531436, at *5 (experts may "draw inferences and reach conclusions" but only if they are "based on scientific, technical, or specialized knowledge") (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004)).

Merrill and Pittinger themselves admit that testifying to Defendants' and third parties' intent and beliefs is speculative. (*See, e.g.*, Ex. 104 (Merrill Tr.) 76:2-77:11 (acknowledging that it would be speculation to say that Anadarko left the project because it was not commercial), 161:7-163:7 (stating that it would be "entirely speculation" to opine on why Defendant Leyendecker disagreed with certain technical interpretations); Ex. 105 (Pittinger Tr.) 79:24-80:14 (acknowledging that it was not "for [him] to opine on" what anyone at Anadarko knew about the influence of certain factors on Shenandoah's commercial viability), 243:24-245:15 (stating that opining on the meaning of Walker's email was "outside the scope of [his] report because it calls for speculation")). Because Merrill's and Pittinger's state-of-mind opinions are speculative and have no basis in any

6

"scientific, technical, or specialized knowledge," they should be excluded for lack of reliability.  *Daubert*, 509 U.S. at 590.

## III.    Relevance.

Finally, Merrill's and Pittinger's state-of-mind opinions should also be excluded as irrelevant because they offer no help to the jury, which is capable of interpreting evidence of Defendants' and third parties' beliefs and knowledge without expert assistance. "[E]xpert testimony must be relevant, not simply in the sense that all testimony must be relevant, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."  *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (citation omitted).  Where experts opine on "lay matters which a jury is capable of understanding and deciding without the expert's help," *Retractable Techs.*, 2010 WL 11531436, at *5-6 (citation omitted), their testimony should be excluded because the expert will not "bring to the jury more than the lawyers can offer in argument," *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (citation omitted).  Under this standard, "an expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible," as the "expert's credentials do not place him in a better position than the jury to draw conclusions about a defendant's state of mind."  *Marlin v. Moody Nat'l Bank*, 248 Fed. App'x 534, 541 (5th Cir. 2007).

Merrill's and Pittinger's state-of-mind opinions fall into three categories: speculation about the knowledge and beliefs of (1) Anadarko's senior management (Ex. 18 (Merrill Rpt.) ¶¶ 22, 35, 48, 69, 73, 97; Ex. 21 (Pittinger Rpt.) ¶¶ 11(j), 13(a), 13(d), 13(n), 36-37, 40, 77, 97, 102, 114, 166, 216, 256, 299, 303-04, 307-08, 310-13, 329), (2)

Anadarko's employees (Ex. 18 (Merrill Rpt.) ¶¶ 59, 70-71, 84; Ex. 21 (Pittinger Rpt.) ¶¶ 13(a), 13(d), 29, 36-38, 56, 68, 81, 95-96, 105, 115-16, 190, 192, 219, 296-97, 329), and (3) Anadarko's partners (Ex. 21 (Pittinger Rpt.) ¶¶ 29, 68, 93, 105-06, 231-33).

*First*, Pittinger and Merrill opine in their reports on what they believe Anadarko's senior management knew, believed, and understood during the appraisal process. Pittinger opines, for instance, that by April 2015, "Anadarko personnel and management *knew* that Shen was more likely than not commercially unviable" based on a presentation that, according to Pittinger, did not sufficiently incorporate possible risks to the project. (Ex. 21 (Pittinger Rpt.) ¶ 13(d) (emphasis added); *see also id.* ¶ 77 (claiming "it is highly likely" that they were "*aware of* the importance of compartmentalization no later than August 2014" (emphasis added)); Ex. 18 (Merrill Rpt.) ¶ 69 (claiming that Anadarko management "*ignor[ed]*" potential issues with Shenandoah) (emphasis added).) Pittinger also extrapolates from emails that "senior management was *concerned* about the large difference in resource size" between the Exploration and Development teams' projections, (Ex. 21 (Pittinger Rpt.) ¶ 216 (emphasis added); *see* Ex. 103 (APC-00025540)), and that after Shen-4, senior management "*understood* that Shen was not commercially viable" (Ex. 21 (Pittinger Rpt.) ¶ 11(j) (emphasis added)), "*kn[ew] with reasonable certainty* that the corporate PIR threshold rendered Shen commercially unviable" (*id.* (emphasis added)), and had "*substantial doubts*" and "*serious doubt*" about Shenandoah's commercial viability (*id.* ¶¶ 13(n), 299 (emphasis added); *see also id.* ¶ 329).

*Second*, Pittinger and Merrill also purport to interpret Anadarko's employees' intent and beliefs, relying on evidence of differences between Exploration's and Development's

8

analyses as proof of intentional misconduct and inappropriately characterizing the plain language in employees' emails. Pittinger claims, for example, that "Exploration and Ernie Leyendecker endeavored to stifle Development perspectives on faulting" and that edits to a presentation amounted to Exploration attempting to censor Development's work. (Ex. 21 (Pittinger Rpt.) ¶ 36; *id.* ¶¶ 37-38 (describing Exploration as "unwilling[]" and "reluctan[t]" to acknowledge faults); *see also id.* ¶¶ 81, 114, 166 (characterizing evidence as proof of "censorship").) And Merrill opines—based on an email from an Exploration team member that reads, "Paints a good picture on their value of the north south fault trending down the center of Shenandoah and how it impacts THEIR forward planning"— that "the threat of faulting was not a concern of exploration, and only the development team considered it in their well planning logic." (Ex. 18 (Merrill Rpt.) ¶ 59 (speculating that "capitalizing 'THEIR' appears to dismiss the risk of faulting, representing faulting as development's concern and not exploration's concern"); *see* Ex. 21 (Pittinger Rpt.) ¶ 56 (same); *see also* Ex. 102 (APC-00117333).)

*Third*, Pittinger also offers opinions in his report that impermissibly characterize the partners' beliefs about Shenandoah. For example, based on an email stating that ConocoPhillips "indicated that Development and Exploration needed to be in future meeting[s] to ensure our next well is getting us closer or to a minimal field size," Pittinger infers that ConocoPhillips was "frustrat[ed]" with "Exploration's performance." (Ex. 21 (Pittinger Rpt.) ¶ 106.) Pittinger also opines that "[o]ver time [ConocoPhillips] developed a more pessimistic view of Shen" and that its inquiry about an asset trade with Anadarko

9

"indicate[d] that [ConocoPhillips] was interested in ridding itself of the Shen appraisal program." (*Id.* ¶¶ 231, 233.)

None of these opinions would "be helpful to jurors, who are able [to] make their own determinations about what relevant documents show." *See United States v. Vista Hospice Care, Inc.*, 2016 WL 3449833, at *15 (N.D. Tex. June 20, 2016) (excluding testimony in which the expert "summarizes and describes documents" to conclude that the defendant "appears to have put immense pressure on its employees," because the "characterizations would not be helpful to jurors"). Merrill and Pittinger "[have] no special insight into whether the Defendants knew what was happening," and thus "[w]hether the Defendants knew or should have known about [a] condition . . . is a matter that lay jurors can determine for themselves." *Jenkins v. Helmerich & Payne Int'l Drilling Co*., 577 F. Supp. 3d 587, 597 (S.D. Tex. 2021) (lacking such insight, expert may not arrive at a conclusion about an individual's knowledge, beliefs, or intent by "noting the instances in the record where the Defendants were apparently made aware of an issue").

Because Merrill's and Pittinger's state-of-mind opinions "usurp the role of . . . the jury," they "would not be helpful to a trier of fact" and should be excluded. *Fisher v. Halliburton*, 2009 WL 5216949, at *3 (S.D. Tex. Dec. 21, 2009).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court exclude the state-of-mind opinions of Merrill and Pittinger.

10

Dated:  June 1, 2026        Respectfully submitted,


*/s/ Kevin J. Orsini*
**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Melissa A. Syring (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com
msyring@cravath.com


**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

11

## CERTIFICATE OF CONFERENCE

In accordance with Rule 17(a) of the Court's Court Procedures, I hereby certify that counsel for Defendants conferred with Plaintiffs' counsel regarding this Motion on May 29, 2026.  Counsel for Plaintiffs have advised that Plaintiffs oppose this Motion.

Dated:  June 1, 2026

/s/ *Kevin J. Orsini*
Kevin J. Orsini

12

## <u>CERTIFICATION OF WORD COUNT</u>

In accordance with Rule 18(c) of the Court's Court Procedures, I hereby certify that this document contains 2,556 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated:  June 1, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini

**CERTIFICATE OF SERVICE**

I certify that on June 1, 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated:  June 1, 2026

/s/ *Kevin J. Orsini*
Kevin J. Orsini

14