**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576 <br><br> District Judge Charles R. Eskridge III <br><br> CLASS ACTION |

## DEFENDANTS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF D. PAUL REGAN

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF ISSUES ............................................................................................... 2

APPLICABLE LEGAL STANDARDS ............................................................................ 2

FACTUAL BACKGROUND ............................................................................................ 4

NATURE AND STAGE OF THE PROCEEDINGS......................................................... 5

ARGUMENT .................................................................................................................... 5

I.     Regan's Opinion About the Proper Accounting Standards Governing the Treatment
       of Shen-3 Should Be Excluded As Irrelevant and Unreliable. ................................ 6

       A.     Regan's Opinion Regarding the Accounting Treatment of Shen-3 Is
              Irrelevant Because that Accounting Treatment Cannot Form the Basis for
              the Alleged Fraud. ......................................................................................... 6

       B.     Regan's Opinion Regarding the Accounting Treatment of Shen-3 Is
              Unreliable Because It Relies on Superseded GAAP. ..................................... 7

II.    Regan's Opinion that Anadarko's Alleged Accounting Errors Were Material to Its
       Financial Statements Should Be Excluded Because It Is Not Relevant and Will
       Confuse the Jury............................................................................................................11

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Binh Hoa Le v. Exeter Fin. Corp.*,
   2019 WL 1436375 (N.D. Tex. Mar. 31, 2019)........................................................7, 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ...............................................................................1, 2, 3, 7

*ECA & Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ...................................................................................6, 7

*Espy v. J2 Glob., Inc.*,
   99 F.4th 527 (9th Cir. 2024) .................................................................................. 6

*Ezra Charitable Tr. v. Tyco Int'l, Ltd.*,
   466 F.3d 1 (1st Cir. 2006) ..................................................................................... 10

*Feinberg v. Katz*,
   2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007)......................................................... 12

*Greenberg v. Crossroads Sys., Inc.*,
   364 F.3d 657 (5th Cir. 2004) ..................................................................................6, 7

*Knight v. Kirby Inland Marine Inc.*,
   482 F.3d 347 (5th Cir. 2007) .................................................................................. 2, 3

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................................ 2

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ................................................................................... 2

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) .................................................................................... 6

*Poole-Ward v. Affiliates for Women's Health, P.A.*,
   329 F.R.D. 156 (S.D. Tex. 2018)............................................................................. 3

*SEC v. Goldstone*,
   2016 WL 3135651 (D.N.M. May 10, 2016) ............................................................ 12

*SEC v. Life Partners Holdings, Inc.*,
   2013 WL 12076933 (W.D. Tex. Oct. 23, 2013).....................................................4, 10

*Slaughter v. S. Talc Co.*,
  980 F.2d 304 (5th Cir. 1990) ........................................................................... 4

*Small Ventures USA, L.P. v. Rizvi Traverse Mgmt., LLC*,
  2014 WL 3535339 (S.D. Tex. July 16, 2014) ............................................... 6

*United States v. Duncan*,
  42 F.3d 97 (2d Cir. 1994) ............................................................................ 12

*United States v. Oti*,
  872 F.3d 678 (5th Cir. 2017) ...................................................................... 12

*United States v. Peterson*,
  101 F.3d 375 (5th Cir. 1996) ...................................................................... 12

*Vargas v. Lee*,
  317 F.3d 498 (5th Cir. 2003) ................................................................... 3, 7

*Vitterbo v. Dow Chem.*,
  826 F.2d 420 (5th Cir. 1987) ........................................................................ 4

*Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*,
  801 F.3d 512 (5th Cir. 2015) ........................................................................ 3

## Statutes & Rules

Fed. R. Evid. 702 ................................................................................................ 1, 2

## PRELIMINARY STATEMENT

Plaintiffs seek to have D. Paul Regan testify as an accounting expert. Regan offers several opinions, including that Anadarko improperly suspended costs associated with one of its appraisal wells at Shenandoah ("Shen-3") and failed to impair and expense the costs associated with the project as a whole. He seeks to opine further that, as a result, Anadarko's financial statements were materially misstated.

Regan's testimony should be partially excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *First*, Regan's opinion that Anadarko erred by suspending Shen-3 costs should be precluded because it is irrelevant to the issues in this case, any such error having been corrected during the Class Period, and is premised on a non-authoritative, superseded standard that was not part of Generally Accepted Accounting Principles ("GAAP") at the time of the accounting decision at issue. Specifically, Regan relies on Financial Accounting Standard 19 ("FAS 19"), which was superseded in 2009 by the codification of Accounting Standards Codification ("ASC") 932. *Second*, Regan's opinions about the materiality of Anadarko's alleged accounting errors to Anadarko's financial statements, both with respect to Shen-3 and the Shenandoah project as a whole, impermissibly usurp the role of the jury. For these reasons, the Court should exclude Regan's testimony on these issues.

**STATEMENT OF ISSUES**

1.    Whether Regan's testimony that Anadarko committed an accounting error in suspending well costs related to Shen-3 should be excluded under Federal Rule of Evidence 702 and *Daubert* as irrelevant and unreliable, because the alleged accounting error with respect to Shen-3 was corrected during the Class Period and Regan's opinion is based in part on FAS-19, which, at the time of Anadarko's suspension of Shen-3 costs, was superseded by the codification of GAAP.

2.    Whether Regan's testimony that the alleged accounting errors were "material" under SAB 99 should be excluded under Federal Rule of Evidence 702 and *Daubert* because it constitutes an inadmissible legal conclusion.

**APPLICABLE LEGAL STANDARDS**

Expert testimony is admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on district courts to ensure that proffered expert testimony is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).

A party seeking to introduce expert testimony "must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is

2

scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93).  The Supreme Court in *Daubert* set forth a non-exhaustive list of factors that may be considered by a district court when determining whether proffered expert testimony is sufficiently reliable.  "These factors include whether the theory or technique that forms the basis of the expert's testimony: (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a high known or potential rate of error and standards controlling its operation; and (4) is generally accepted within the relevant scientific or technical community."  *Vargas v. Lee*, 317 F.3d 498, 500 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 593-94).  If any step in the expert's analysis is unreliable, the entire testimony is inadmissible.  *Knight*, 482 F.3d at 355 ("The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." (citation omitted)).

"Relevance depends upon 'whether [the proffered expert's] reasoning or methodology properly can be applied to the facts in issue.'"  *Id.* at 352 (quoting *Daubert*, 509 U.S. at 593).  Expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Poole-Ward v. Affiliates for Women's Health, P.A.*, 329 F.R.D. 156, 167 (S.D. Tex. 2018) (quoting *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015)).  "Where proffered testimony will not 'actually assist the jury in arriving at an intelligent and sound verdict,' or will only serve to confuse or mislead the jury, the Court is obligated to assume its role as the gatekeeper and prevent the testimony

3

from being presented." *SEC v. Life Partners Holdings, Inc.*, 2013 WL 12076933, at *2 (W.D. Tex. Oct. 23, 2013) (first quoting *Slaughter v. S. Talc Co.*, 980 F.2d 304, 306 (5th Cir. 1990); and then quoting *Vitterbo v. Dow Chem.*, 826 F.2d 420, 422 (5th Cir. 1987)).

**FACTUAL BACKGROUND**

Regan, a Certified Public Accountant, offers three opinions that are relevant to this motion. *First*, Regan, relying on FAS-19—a superseded standard—opines that Anadarko improperly suspended Shen-3 costs between December 31, 2014 and June 30, 2015. (Ex. 17 (Expert Report of D. Paul Regan ("Regan Rpt.")) ¶ 11(a).)[1] To "suspend" costs means to temporarily capitalize those costs pending a determination of whether to record those costs as an asset or an expense. (*See id.* ¶ 48; Ex. 108 (Expert Report of J. Richard Dietrich ("Dietrich Rpt.")) ¶ 19 n.36.) *Second*, Regan opines—based on an assumption that Anadarko had substantial doubt that Shenandoah would be economically viable as of December 31, 2015— that Anadarko generally failed to properly expense Shenandoah project-related exploration well costs and non-producing leasehold costs. (Ex. 17 (Regan Rpt.) ¶¶ 2, 11(e)-(f).) *Third*, Regan opines that these accounting errors, as well as other "disclosure omissions," were material to Anadarko's financial statements. (*Id.* ¶ 11(g).)

---

[1] Citations to Exhibits are to the Exhibits to the Declaration of Lauren M. Rosenberg in Support of Defendants' Motion for Summary Judgment filed contemporaneously with this motion.

4

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs disclosed their expert reports, including Regan's report, on November 9, 2022.  Regan was deposed on January 20, 2023.

## ARGUMENT

Regan's proffered opinions about the proper accounting treatment of the Shenandoah project, and specifically Shen-3, should be excluded in part on the basis that they are unreliable, irrelevant, and will confuse the jury.

*First*, the Court should exclude Regan's opinion that Anadarko improperly suspended Shen-3 costs between December 31, 2014 and June 30, 2015.  This opinion is irrelevant because the allegedly improper suspension of Shen-3 costs was corrected before the end of the Class Period and therefore cannot form the basis for Plaintiffs' fraud claims.  Even if it were relevant, this opinion should be excluded for the independent reason that it is based on a superseded standard that was not GAAP at the time of the accounting determination, and therefore not reliable.

*Second*, the Court should exclude Regan's opinion that this purported accounting error with respect to Shen-3 and Anadarko's failure to impair and expense assets associated with the Shenandoah project more generally were "material" to Anadarko's financial statements during the Class Period.  Regan's conclusions as to the materiality of Anadarko's alleged accounting errors are impermissible legal conclusions based on applying the law to the facts of the case.  Because materiality is a question reserved for the jury, Regan's testimony on materiality should be excluded.

5

**I.    Regan's Opinion About the Proper Accounting Standards Governing the Treatment of Shen-3 Should Be Excluded As Irrelevant and Unreliable.**

**A.    Regan's Opinion Regarding the Accounting Treatment of Shen-3 Is Irrelevant Because that Accounting Treatment Cannot Form the Basis for the Alleged Fraud.**

To prove their Rule 10b-5 claims, Plaintiffs must show, among other things, that Defendants made false or misleading public statements, or engaged in deceptive or manipulative conduct, that caused Plaintiffs' loss. *Small Ventures USA, L.P. v. Rizvi Traverse Mgmt., LLC*, 2014 WL 3535339, at *3 (S.D. Tex. July 16, 2014). "[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *ECA & Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 200 (2d Cir. 2009) (alteration in original) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)). That is, Plaintiffs' "[d]issatisfaction with [Anadarko's] . . . approach to accounting" cannot by itself form the basis of their Rule 10b-5 claims. *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 533 (9th Cir. 2024). Moreover, Plaintiffs cannot show loss causation when an alleged corrective disclosure simply confirmed information that had already been released to the market. *See Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 663 (5th Cir. 2004).

Regan's opinion that Defendants improperly suspended Shen-3 costs between December 31, 2014 and June 30, 2015 fails on both counts. Even crediting his opinion and assuming that Defendants violated GAAP with respect to Shen-3 (they did not), that violation does not show a fraudulent misstatement or

6

misconduct. *See ECA & Loc. 134 IBEW Joint Pension Tr. of Chicago*, 553 F.3d at 200. And even if it did show fraudulent conduct, it could not have caused Plaintiffs' losses, and is therefore irrelevant to loss causation. Shen-3 costs were expensed (as Regan opines was required) in Q3 2016, months before the May 2, 2017 alleged corrective disclosure—the only alleged corrective disclosure in this case. (*See, e.g.*, Ex. 95 (APC002732) at 11 (November 1, 2016 Anadarko Q3 2016 10-Q announcing decision).) That is, the market already knew of the Shen-3 accounting treatment months before the truth behind the alleged fraud was revealed. Because information already known to the market cannot be the basis for loss causation, *Greenberg*, 364 F.3d at 663, there was no live issue with respect to Shen-3 accounting, and thus Regan's opinion regarding Shen-3 accounting treatment can do nothing to support Plaintiffs' claims.

### B.     Regan's Opinion Regarding the Accounting Treatment of Shen-3 Is Unreliable Because It Relies on Superseded GAAP.

Even if Regan's Shen-3 opinion were relevant—and it is not—it should also be excluded as unreliable. To be reliable, an expert's testimony must follow a methodology that "is generally accepted within the relevant scientific or technical community." *Vargas*, 317 F.3d at 500 (citing *Daubert*, 509 U.S. at 593-94). The generally accepted methodology for evaluating accounting decisions is to consider whether they were made in accordance with GAAP, which are "principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time." *Binh Hoa*

*Le v. Exeter Fin. Corp.*, 2019 WL 1436375, at \*18 n.10 (N.D. Tex. Mar. 31, 2019) (internal quotation marks omitted).

Regan recognizes that Anadarko was "responsible for issuing [its] financial statements in accordance with GAAP." (Ex. 17 (Regan Rpt.) ¶ 25.) What is considered GAAP, however, has changed over the last 17 years. Before September 2009, GAAP included, in part, Statements of Financial Accounting Standards. (Ex. 108 (Dietrich Rpt.) ¶ 38.) But since September 2009, all GAAP has been contained within the Accounting Standards Codification ("ASC" or the "Codification"). (*Id.*; *see* Ex. 113 (ASC 105-10-05-1).) The Codification "superseded" all previous GAAP accounting policies and established that "[a]ll other accounting literature not included in the Codification" is "nonauthoritative." (Ex. 109 (FASB, "Accounting Standards Codification—About the Codification," at 4).) Thus, at the time of Anadarko's allegedly improper decision to suspend Shen-3 costs—December 2014 to June 2015—all previous GAAP policies not included in the Codification were superseded and deemed nonauthoritative.

Both parties' experts also agree that the relevant authoritative guidance for accounting for Shen-3 is a provision in the Codification—ASC Topic 932, *Extractive Activities—Oil and Gas* ("ASC 932"). (Ex. 17 (Regan Rpt.) ¶ 27; Ex. 108 (Dietrich Rpt.) ¶ 32.) Under ASC 932, a well like Shen-3 could be suspended "pending determination of whether the well has found proved reserves." (Ex. 114 (ASC 932-360-25-10); *see* Ex. 17 (Regan Rpt.) ¶ 47 & n.60.)

While Regan purports to rely on ASC 932, he bases his narrow interpretation of that provision on FAS 19—an older financial standard covering oil and gas accounting issued in December 1977 that was superseded by the Codification in 2009. (*See* Ex. 17 (Regan Rpt.) ¶¶ 46, 48; Ex. 112 (FASB, "Superseded Standards," available at https://www.fasb.org/archive/superseded-standards).) FAS 19 has been superseded and is not authoritative guidance. Unlike courts that may look to legislative history when a statute is ambiguous, companies and accountants may only look to non-authoritative principles if GAAP does not cover a specific issue. (*See* Ex. 113 (ASC 105-10-05-2).) As such, since Shen-3's accounting determinations were squarely governed by ASC 932, there is no basis to consider superseded standards like FAS 19. (*See* Ex. 108 (Dietrich Rpt.) ¶ 106 ("However, FAS 19 was not GAAP at the times that Anadarko made its accounting determinations related to the Shen 3 well costs, and therefore is not an appropriate basis on which to evaluate Anadarko's accounting for Shen 3.").)

At his deposition, Regan wrongly testified that FAS 19 was "codified into the ASCs in 2009." (Ex. 107 (Dep. of D. Paul Regan ( "Regan Tr.")) 50:16-19.) When asked if there were any parts of FAS 19 that were not codified, Regan conceded he had not "made that analysis." (*Id.* at 50:23-25.) Yet, Regan cites FAS 19 no fewer than ten times throughout his opinion, and it forms an integral part of his reasoning. (Ex. 17 (Regan Rpt.) ¶¶ 31, 40, 44, 46, 48, 51 52, 63, 66, 91.) In fact, Regan erroneously states in his report that FAS-19 is "the primary source for

relevant codified accounting standards applicable to Anadarko." (*Id.* ¶ 31; *see also id.* ¶ 44 (describing FAS 19 as "relevant GAAP").)

One of Regan's core contentions is that "Anadarko was required to expense the cost of drilling Shen-3" before December 31, 2014. (*Id.* ¶ 11(a).)  However, in formulating this opinion, Regan repeatedly relies on FAS-19. (*See id.* ¶¶ 31, 40, 44, 46, 48, 51, 52, 63; *see also* Ex. 108 (Dietrich Rpt.) ¶ 106 (opining that it is "not possible to determine which, if any, of Mr. Regan's opinions are grounded in the Codification" as opposed to FAS 19).)  In one instance, Regan purports to describe the policy rationale behind the operative accounting standard, which was undisputedly ASC 932; instead, Regan cites (in boldface) to FAS-19. (Ex. 17 (Regan Rpt.) ¶ 46.)  In a separate paragraph, Regan relies on FAS-19 in seeking to ascertain the precise moment Anadarko allegedly should have expensed Shen-3. (*Id.* ¶ 48.)

At bottom, Regan's reliance on FAS 19 infects his opinion, rendering it unreliable. *See Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1, 12 (1st Cir. 2006) (affirming the district court's grant of a motion to dismiss a 10b-5 claim based on an accounting violation in part because the accounting provision plaintiffs relied upon had been superseded and therefore had "no relevance" to the case); *Life Partners Holdings, Inc.*, 2013 WL 12076933, at *2 ("The Court does not see how [the expert's] opinion about an accounting regime that Defendants did not actually implement or use during the time period at issue in this case is at all relevant to the

matters before this Court.  Accordingly, [the expert] must limit his testimony to [the company's] actual accounting practices.").

## II.     Regan's Opinion that Anadarko's Alleged Accounting Errors Were Material to Its Financial Statements Should Be Excluded Because It Is Not Relevant and Will Confuse the Jury.

The Court should also exclude Regan's opinion that Anadarko's alleged accounting errors, both as to Shen-3 and the Shenandoah project as a whole, were material.  Regan's materiality opinion is an inadmissible legal conclusion and will only mislead the jury, which will be required to conduct its own materiality analysis.

In opining on materiality, Regan purports to rely on SAB 99, a bulletin issued by the SEC in 1999 to provide guidance to companies and auditors about how to determine when an accounting error is so small that it is immaterial and does not require a restatement. (Ex. 17 (Regan Rpt.) ¶¶ 70-89, 103-10 (citing Ex. 101 (SEC Staff Accounting Bulletin No. 99—Materiality, https://www.sec.gov/interps/account/sab99.htm).)  Regan bases his opinion on SAB 99's quantitative and qualitative considerations.  (*Id.* ¶¶ 70-87.)  In assessing quantitative materiality, Regan opines that the Shen-3 well costs "exceeded well-established SEC quantitative materiality example benchmarks" of 5% "of an item."  (*Id.* ¶ 70.)  And in opining as to the qualitative materiality of the financial statements, Regan discusses what he calls management's statements about "the importance of Shenandoah and Shen-3."  (*Id.* ¶ 80.)  As part of his opinion, Regan also opines that Anadarko described Shen-3 in its public disclosures in a way that was inconsistent with information known internally to Anadarko.  (*Id.* ¶¶ 83-84, 86.)

11

In so doing, Regan states at least eleven times throughout his report that Anadarko's alleged accounting errors were material.  (*Id.* ¶¶ 11, 37, 70, 72, 78, 87, 103-04, 106-07, 110.)  Regan's conclusion as to materiality is a legal question for the jury and should be excluded.

"[A]n expert witness is not permitted to offer conclusions of law."  *United States v. Oti*, 872 F.3d 678, 691 (5th Cir. 2017).  "Because materiality is a mixed question of law and fact, it is usually left for the jury."  *United States v. Peterson*, 101 F.3d 375, 380 (5th Cir. 1996).  Courts frequently exclude expert testimony opining on the materiality of an alleged misstatement on the basis that it improperly draws a legal conclusion reserved for the exclusive province of the jury.  *See, e.g.*, *SEC v. Goldstone*, 2016 WL 3135651, at *42 (D.N.M. May 10, 2016) (excluding expert testimony that a disclosure contained "material misstatements" because the testimony "inappropriately states a legal conclusion drawn by applying the law to the facts"); *Feinberg v. Katz*, 2007 WL 4562930, at *11 (S.D.N.Y. Dec. 21, 2007) (holding that expert testimony concerning materiality impermissibly "appl[ies] legal principles to the facts of the case" and should be excluded).

Regan's opinion that Anadarko's alleged failure to suspend Shen-3 was "material" to stockholders is likely to confuse the jury and impermissibly draws a legal conclusion reserved for the jury.  *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."  (emphasis in original)).  Regan also opines that

another purported accounting error—the allegedly delayed impairment of Shenandoah and expensing of associated well costs—was material to Anadarko's financial statements. (Ex. 17 (Regan Rpt.) ¶ 11(g).) This, too, should be excluded as impermissibly applying the facts of the case to form a conclusion of law.

Defendants do not dispute that Regan can offer an accounting opinion about whether this impairment was timely based on his assumption of commercial unviability. However, as with his opinion about Shen-3, he should not be allowed to opine that any purported error was material to Anadarko's financial statements. Defendants also do not dispute that Regan can provide an analysis of SAB 99's quantitative considerations. (*See, e.g.*, *id.* ¶¶ 73-75.) But Regan cannot opine on the ultimate conclusion of law—the materiality of Anadarko's alleged accounting errors.

It is for the jury to decide whether the alleged misstatements altered the total mix of information available to investors about Anadarko, which requires consideration of everything Anadarko said about Shenandoah, what Anadarko's partners disclosed about Shenandoah, and other information available to the market, not to mention what information investors had about Anadarko more generally (as Shenandoah was merely one of many projects it was contemplating). Regan's opinions are inappropriate topics for expert accounting testimony and will likely mislead the jury.

13

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court exclude the testimony of Plaintiffs' proffered expert D. Paul Regan about the Shen-3 accounting decision and materiality of Anadarko's alleged accounting errors.

Dated: June 1, 2026               Respectfully submitted,

                               */s/ Kevin J. Orsini*

**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Melissa Syring (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com
msyring@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

14

<u>**CERTIFICATE OF CONFERENCE**</u>

In accordance with Rule 17(a) of the Court's Court Procedures, I hereby certify that counsel for Defendants conferred with Plaintiffs' counsel regarding this Motion on May 29, 2026. Counsel for Plaintiffs have advised that Plaintiffs oppose this Motion.

Dated:  June 1, 2026

*/s/ Kevin J. Orsini*
*Kevin J. Orsini*

## <u>CERTIFICATION OF WORD COUNT</u>

In accordance with Rule 18(c) of the Court's Court Procedures, I hereby certify that this document contains 3,344 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated:  June 1, 2026

/s/ Kevin J. Orsini
Kevin J. Orsini

## CERTIFICATE OF SERVICE

I certify that on June 1, 2026 I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated:  June 1, 2026

/s/ Kevin J. Orsini
Kevin J. Orsini

17