UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § | Civil Action No. 4:20-cv-00576<br><br>CLASS ACTION<br><br>The Honorable Charles R. Eskridge III |

**PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY BY DEFENDANTS' EXPERT DR. ROCCO DETOMO**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. NATURE AND STAGE OF THE LITIGATION ........ 2

III. FACTS NECESSARY TO RESOLUTION OF THE MOTION ........ 2

IV. ISSUE FOR RESOLUTION ........ 3

V. LEGAL STANDARD ........ 3

VI. ARGUMENT ........ 4

- A. Detomo's Opinions Regarding Falsity Should Be Excluded ........ 4
- B. Detomo's Opinions About Post-Class Period Operations at Shenandoah Should Be Excluded ........ 5
- C. Detomo's Opinions About Shenandoah's Commercial Viability Should Be Excluded ........ 6
- D. Detomo's Opinions Regarding Asphaltene Mitigation Should Be Excluded ........ 9
  - 1. Detomo Is Unqualified to Opine About Asphaltene Mitigation ........ 10
  - 2. Detomo's Opinions Regarding Asphaltene Mitigation Are Irrelevant, Misleading, and Lack an Adequate Factual Basis ........ 10

VII. CONCLUSION ........ 13



4901-3650-8848.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Daubert v. Merrell Dow Pharms., Inc.*
509 U.S. 579 (1993) ........ 2, 3

*Diamond Offshore Co. v. Survival Sys. Int'l, Inc.*,
2013 WL 371648 (S.D. Tex. Jan. 29, 2013) ........ 7, 10

*Hsu v. Puma Biotechnology, Inc.*,
2018 WL 11669124 (C.D. Cal. Oct. 24, 2018) ........ 6

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
2009 WL 2971783 (E.D. La. Sep. 11, 2009) ........ 10

*In re Stratosphere Corp. Sec. Litig.*,
66 F. Supp. 2d 1182 (D. Nev. 1999) ........ 4

*In re Twitter, Inc. Sec. Litig.*,
2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ........ 4

*LeBoeuf v. K-Mart Corp.*,
888 F.2d 330 (5th Cir. 1989) ........ 5, 11

*Malone v. Ga.-Pac. LLC*,
2024 WL 556334 (E.D. Tex. Jan. 10, 2024) ........ 5

*Pearlstein v. BlackBerry Ltd.*,
2021 WL 4131646 (S.D.N.Y. Sep. 10, 2021) ........ 4

*Pension Comm. of Univ. of Montr. Pension Plan v. Banc of Am. Sec., LLC*,
691 F. Supp. 2d 448 (S.D.N.Y. 2010) ........ 9

*Ramos v. Home Depot Inc.*,
2022 WL 615023 (N.D. Tex. Mar. 1, 2022) ........ 7

*Right of Way Maint. Co. v. Gyro-Trac, Inc.*,
2007 WL 1428634 (S.D. Tex. May 11, 2007) ........ 7

*Ruffin v. BP Expl. & Prod., Inc.*,
137 F.4th 276 (5th Cir. 2025) ........ 11

**Page**

*Rushing v. Yeargain*,
2022 WL 4545612 (M.D. La. June 10, 2022) ... 7

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ... 6

*Shu-Hui Wu v. Miss. State Univ.*,
626 F. App'x 535 (5th Cir. 2015) ... 5

*United States v. 38.307 Acres of Land, More or Less*,
2022 WL 522661 (S.D. Tex. Feb. 22, 2022) ... 13

*United States v. Cooks*,
589 F.3d 173 (5th Cir. 2009) ... 7

*United States v. Thomas*,
847 F.3d 193 (5th Cir. 2017) ... 4

*Wade v. WellPoint, Inc.*,
892 F. Supp. 2d 1102 (S.D. Ind. 2012) ... 5

*Williams v. Hyster-Yale Grp.*,
2024 WL 1144889 (S.D. Tex. Feb. 9, 2024)
*report and recommendation adopted*,
2024 WL 1144267 (S.D. Tex. Mar. 13, 2024) ... 12

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Evidence
Rule 702 ... 7
Rule 704 ... 4



4901-3650-8848.v1

# I. INTRODUCTION

Defendants' proposed geoscientific expert, Dr. Rocco Detomo, Jr. ("Detomo"), submitted a 481-page rebuttal report in response to Plaintiffs' experts Dr. Robert Merrill and Lyndon Pittinger. Ex. 1 (Jan. 25, 2023 Expert Report of Dr. Rocco Detomo, Jr. ("Rebuttal Report")).[1] For the reasons set forth below, Plaintiffs move to exclude Detomo's opinions concerning: (1) whether Anadarko's statements and omissions were misleading (Ex. 1, ¶¶34, 36, 264, 760, 1044, 1051); (2) post-Class Period operations at Shenandoah (*id.*, ¶¶33, 66, 100, 576, 1004, 1050); (3) Shenandoah's commercial viability (*id.*, ¶¶28, 33, 66, 85-87, 756, 772, 811, 839, 1027, 1050); and (4) asphaltene deposition and mitigation at Shenandoah (*id.*, ¶¶28, 75, 727, 743-750, 748, 844, 850-856, 867).

First, Detomo improperly opines that the alleged misstatements and omissions were not false or misleading. Falsity is an element of Plaintiffs' securities case that the jury will be asked to decide. By opining that the misrepresentations were not false or misleading, Detomo provides an improper legal conclusion that will invade the jury's province. And while Detomo's legal conclusion crosses the line for any expert, it is particularly egregious here, given that Detomo is a geophysicist with no expertise in U.S. Securities and Exchange Commission ("SEC") disclosure rules or the securities laws.

Second, Detomo's opinion that Shenandoah was economically viable during the Class Period because other companies planned to develop it in 2021 – ***over four years*** after the Class Period ended – is irrelevant and poses a substantial risk of misleading the jury. The

---

[1] Unless otherwise noted, all exhibits referenced herein are attached hereto, emphasis is added, and citations and footnotes are omitted.

fact that other companies sought to develop Shenandoah years after the Class Period, at a time when more advanced technologies were available, says nothing about whether Shenandoah was commercially viable during the Class Period.

Third, Detomo is unqualified to opine about Shenandoah's commercial viability. Detomo spent his entire career as a geophysicist. Geophysicists analyze seismic data and create models of the subsurface; they do not undertake resource assessments or analyze economics or reservoir recovery factor.

Fourth, Detomo's opinions regarding asphaltene mitigation are irrelevant and present a substantial risk of misleading the jury because they are based on asphaltene-mitigation strategies that were unavailable during the Class Period. They also lack a sufficient factual basis. For example, Detomo mistakenly assumes that Shenandoah's asphaltene onset pressure – a key factor in assessing asphaltene management – was ***less than half*** of what it actually was.

## II. NATURE AND STAGE OF THE LITIGATION

This securities fraud class action was filed February 19, 2020. ECF 1. On April 27, 2026, the Court ordered the parties to re-file *Daubert* and summary judgment motions by June 1, 2026. ECF 305. The final pretrial conference is set for May 18, 2027. *Id.* at 1.

## III. FACTS NECESSARY TO RESOLUTION OF THE MOTION

Detomo's Rebuttal Report spans 481 pages in rebuttal to Plaintiffs' technical experts, Dr. Merrill and Mr. Pittinger. Ex. 1; Ex. 2 (Mar. 9, 2023 Deposition Transcript of Rocco Detomo, Jr., Ph.D.) at 25:4-26:20. Detomo is a geophysicist who spent his entire career at Shell until he left to start a consulting company. Ex. 1, Appendix 2. Detomo previously

described his expertise as a geophysicist who can interpret seismic data and model the subsurface. *See* Ex. 3 (Feb. 6, 2019 Expert Declaration of Dr. Rocco Detomo Ph.D., in *Seabed Geosolutions (US), Inc. v. Magseis FF LLC*, No. IPR2018-00962 (USPTO)), ¶28. His academic papers concern the same topics. *See* Ex. 1, Appendix 3. No court has ever admitted Detomo's testimony in a securities fraud case. Ex. 2 at 10:20-12:14.

## IV. ISSUE FOR RESOLUTION

Whether certain of Detomo's opinions should be excluded under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579 (1993), and specifically, whether: (1) Detomo may tell the jury that Plaintiffs have not shown Anadarko's statements were inaccurate or misleading, when falsity is an element for the jury and Detomo has no SEC-disclosure or securities-law expertise; (2) Detomo may rely on post-Class Period development decisions by non-Anadarko operators in 2021 to opine about Shenandoah's commercial viability during the Class Period; (3) Detomo is qualified to opine about Shenandoah's commercial viability and petroleum-engineering issues despite his background as a geophysicist; and (4) Detomo's asphaltene mitigation opinions should be excluded because Detomo is not qualified to offer them and because his opinions are based on mitigation strategies unavailable during the Class Period and factual assumptions inconsistent with the record.

## V. LEGAL STANDARD

This motion cross-references the standard in Plaintiffs' Motion to Exclude Certain Opinions of Defendants' Expert Peter Keller, filed concurrently herewith.

## VI. ARGUMENT

### A. Detomo's Opinions Regarding Falsity Should Be Excluded

Detomo opines that Plaintiffs "have not shown that any statements were inaccurate or misleading," and that the alleged omissions here "are either commonly known uncertainties, such as the risk of faulting, or detailed technical disagreements that I would not expect to be disclosed." Ex. 1, ¶¶34, 264, 760, 1051; Ex. 2 at 109:16-22. These opinions should be excluded because: (1) they are legal conclusions that usurp the jury's role; and (2) Detomo is unqualified to opine about disclosure requirements under the securities laws.

Whether the alleged misrepresentations and omissions were false or misleading is an element of Plaintiffs' securities-fraud claim, and the jury in this case will be asked to determine whether Plaintiffs have proven it. By opining that the statements and omissions were not false or misleading, Detomo improperly invades the jury's province and provides an impermissible legal conclusion. His opinions should be excluded. *See United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017) ("Rule 704 'does not allow an expert to render conclusions of law'" and evidentiary rules guard "'against the admission of opinions which would merely tell the jury what result to reach.'"); *Pearlstein v. BlackBerry Ltd.*, 2021 WL 4131646, at*4 (S.D.N.Y. Sep. 10, 2021) (holding an expert could "not testify about whether [company's] disclosures complied with SEC disclosure requirements or whether they were misleading . . . [t]he Court and the Court alone will instruct the jury on the law, and the jury will decide whether the statements complied with the law"); *see also, e.g.*, *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at *9 (N.D. Cal. Apr. 20, 2020) (excluding testimony about whether assertion was "misleading" as it "would usurp the role of the jury"); *In re*

*Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1188 (D. Nev. 1999) ("A district court should be especially cautious " where, as here, an "expert[] comment[s] upon the materiality or fraudulence of disputed misstatements in [a] securities fraud action[].").

Further, Detomo is a geophysicist who is unqualified to opine about whether Anadarko's statements were false or misleading. He is not a lawyer and has no experience with SEC filings, SEC disclosure requirements, or the securities laws. Ex. 2 at 109:16-110:7; 119:11-121:8. He should not be permitted to testify about legal matters completely untethered from his area of expertise. *See Malone v. Ga.-Pac. LLC*, 2024 WL 556334, at *4 (E.D. Tex. Jan. 10, 2024) ("Expert witnesses may not testify to legal conclusions or fact issues outside of his area of expertise.").

### B. Detomo's Opinions About Post-Class Period Operations at Shenandoah Should Be Excluded

Detomo opines that Shenandoah was commercially viable because ***other*** companies decided in 2021 – ***four years after*** the Class Period ended – to develop it. Ex. 1, ¶¶33, 66, 100, 576, 1004, 1050; Ex. 2 at 30:18-31:5. Any references to development efforts after the Class Period should be excluded because they are irrelevant, unreliable, and present a substantial risk of misleading the jury. *LeBoeuf v. K-Mart Corp.*, 888 F.2d 330, 333 (5th Cir. 1989) (finding district court did not abuse discretion by excluding "'evidence about a condition that exist[ed] . . . two years after'" the event in question, "agree[ing] that the probative value of this evidence would have been quite low"); *Shu-Hui Wu v. Miss. State Univ.*, 626 F. App'x 535, 540 (5th Cir. 2015) (affirming decision that expert opinion was "irrelevant" because it included data outside of the relevant period); *Wade v. WellPoint, Inc.*,

892 F. Supp. 2d 1102, 1134 n.21 (S.D. Ind. 2012) ("'post-class period events'" irrelevant because "they bear no relevance to Defendants' knowledge at the time of the alleged misstatements and omissions"); *Hsu v. Puma Biotechnology, Inc.*, 2018 WL 11669124, at *2 (C.D. Cal. Oct. 24, 2018) (excluding "evidence of post-Class Period events, results, or outcomes").

Subsequent efforts by ***other operators*** to develop Shenandoah in ***2021*** have no relevance to what ***Anadarko*** knew yet failed to disclose about its commercial viability and producible resource size in ***2015-2017***. Even Detomo reluctantly acknowledged Shenandoah had yet to produce oil and was thus not commercially successful at the time of his deposition. Ex. 2 at 30:18-31:5, 132:9-24. Regardless, the fact-intensive inquiry into what allowed other companies to begin developing Shenandoah years after the Class Period is unhelpful and poses a substantial risk of misleading the jury regarding whether Anadarko made misleading statements during the Class Period. Many variables, such as new technological developments and different cost structures and business models, make the other companies' decision to develop Shenandoah in 2021 irrelevant to what Anadarko knew about Shenandoah's commercial viability in 2015-2017. As the Seventh Circuit noted, "[f]raud depends on the state of events when a statement is made, not on what happens later." *Schleicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010).

### C. Detomo's Opinions About Shenandoah's Commercial Viability Should Be Excluded

"Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience,

training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). Courts must exclude expert testimony if "the witness is not qualified to testify in a particular field or on a given subject." *Id.*

Detomo is a geophysicist, not a petroleum engineer, and he is not qualified to testify as an expert on commercial viability. Geophysicists model the subsurface floor using seismic data. They do not conduct resource assessments or analyze economic viability or hydrocarbon recovery. Just as a "'doctor does not qualify as an expert in all medicine just because the doctor qualifies as an expert in one medical field'" so is Detomo not qualified to opine about economic viability just because he is involved in modeling the subsurface. *Ramos v. Home Depot Inc.*, 2022 WL 615023, at *3 (N.D. Tex. Mar. 1, 2022); *Rushing v. Yeargain*, 2022 WL 4545612, at *8 (M.D. La. June 10, 2022) (although expert was qualified in general forensic psychiatry, workplace policies and procedures were beyond scope of expertise); *Right of Way Maint. Co. v. Gyro-Trac, Inc.*, 2007 WL 1428634, at *4 (S.D. Tex. May 11, 2007) (attorney with engineering degree could not "testify to engineering matters"); *Diamond Offshore Co. v. Survival Sys. Int'l, Inc.*, 2013 WL 371648, at *13 (S.D. Tex. Jan. 29, 2013) (proposed financial expert "unqualified" despite B.A. in economics, an MBA, and 20 years of relevant experience).

The Society of Exploration Geophysicists ("SEG"), of which Detomo is a member, defines a geophysicist as:

> [A] scientist that applies the principles of physics to study the Earth and its processes. Traditionally speaking, earth scientists whose work is oriented to the study of the Earth using gravity, magnetic, electrical, and seismic methods are considered geophysicists. . . .

> ***Geophysicists usually carry out surveys and have an active role in the acquisition, processing and modelling of the data from the field.***[2]

As Detomo previously testified: "I consider myself an expert on seismic exploration, the conduct of seismic surveys, and the acquisition and processing of seismic data." Ex. 3, ¶28. These are all classic geophysicist roles. Indeed, Detomo's memberships and papers all relate to seismic surveys and acquisition of data, not production methods, resource assessment, or oil recovery. *See* Ex. 1, Appendices 2-3.

By contrast, the Society of Petroleum Engineers ("SPE"), of which Detomo is ***not*** a member, defines several "primary technical disciplines" of petroleum engineers. These disciplines include: (1) drilling (*e.g.*, well planning and pressure management); (2) completions (*e.g.*, completion fluids and well integrity); (3) production and operations (*e.g.*, well operations and optimization, well and reservoir surveillance, and well intervention); (4) project facilities and instruction (*e.g.*, processing systems and design, flow assurance, offshore facilities, and subsea systems); and (5) ***reservoir (e.g., reservoir and fluid characterization, improved and enhanced recovery, reservoir simulation, and reserves evaluation***).[3] SPE deems these areas as the primary responsibility of a petroleum engineer and tests petroleum engineers on these technical disciplines for certification.[4]

---

[2] *Geophysicist*, SEG Wiki, https://wiki.seg.org/wiki/Geophysicist (last visited June 1, 2026).

[3] *SPE Disciplines*, SPE, https://www.spe.org/en/disciplines/discipline-coverage/ (last visited June 1, 2026).

[4] *Petroleum Engineering Certification*, SPE, https://www.spe.org/en/training/certification/ (last visited June 1, 2026).

Lacking experience as a petroleum engineer, Detomo relies on the fact that he has worked on teams that included both geophysicists and petroleum engineers. But working alongside an expert in petroleum engineering doesn't make Detomo one. *See Pension Comm. of Univ. of Montr. Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 470 n.129 (S.D.N.Y. 2010) ("regularly interacting with an auditor alone does not qualify someone as an auditing expert"). For example, if a geophysicist managed a team and provided geophysical input for a subsurface model, he would call upon a petroleum engineer to problem-solve well design, enhance recovery, and perform reservoir resource assessments. Indeed, Detomo admitted petroleum engineers (not geophysicists) performed these tasks in each of his projects. Ex. 2 at 60:14-61:4, 61:24-63:7.

Because Detomo lacks the requisite qualifications to testify as to Shenandoah's commercial viability, his opinions in ¶¶28, 33, 66, 85-87, 756, 772, 811, 839, 1027, and 1050 of his Rebuttal Report must be excluded.

### D. Detomo's Opinions Regarding Asphaltene Mitigation Should Be Excluded

Detomo's opinions that asphaltene was not an "unmanageable issue" and was "just something you have to plan for" should be excluded because: (1) he is not qualified to opine about asphaltene mitigation; and (2) his opinions are irrelevant, misleading, and lack an adequate factual basis. Ex. 1, ¶¶28, 75, 727, 743-750, 748, 844, 850-856, 867; Ex. 2 at 156:17-24.

#### 1. Detomo Is Unqualified to Opine About Asphaltene Mitigation

During his deposition, Detomo affirmatively stated he was offering an "expert" opinion on four different topics, but when asked whether he was offering an "expert" opinion about "asphaltene deposition and mitigation," he equivocated. Ex. 2 at 31:9-32:1; *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2009 WL 2971783, at *1 (E.D. La. Sep. 11, 2009) (excluding opinion for which expert admitted lack of expertise); *Diamond*, 2013 WL 371648, at *13 (excluding proposed expert who "never actually performed the same type of analysis before"). Again, geophysicists do not have expertise in matters like flow assurance, well completion, and well interventions, which form the crux of asphaltene mitigation. *See supra* §VI.C.

Because Detomo lacks the requisite qualifications to testify regarding asphaltene mitigation, his opinions in ¶¶28, 75, 727, 743-750, 748, 844, 850-856, and 867 of his Rebuttal Report must be excluded.

#### 2. Detomo's Opinions Regarding Asphaltene Mitigation Are Irrelevant, Misleading, and Lack an Adequate Factual Basis

Detomo's opinions that asphaltenes were not unmanageable and simply required planning are based on: (1) asphaltene mitigation strategies that were unavailable during the Class Period; and (2) inaccurate facts.

First, Detomo opines that Anadarko could have managed asphaltenes using xylene soaks, chemical injections, coiled tubing clean-outs, and downhole interventions. Ex. 1, ¶75. But these remedies were unavailable during the Class Period. For example, Detomo opines

without support that "continuous chemical injection" was an easy remedy, but Anadarko viewed it as a "new and unproven" strategy that wouldn't even undergo testing until 2017 – after the Class Period. Ex. 2 at 189:1-25, 198:6-22. Detomo even admitted that Anadarko "had not done" continuous chemical injection. *Id.* at 189:19-25. He speaks in the present tense about remedies – "chemical injection . . . ***is*** a proven technology" – which risks confusing the jury about what is available now versus what was available during the Class Period. *Id.*

Xylene soaks and coated tubing were also infeasible during the Class period. Anadarko's engineers had concluded that xylene soaks were "not a reliable method to mitigate asphaltene deposition near wellbore." Ex. 4 at APC-00011731-32. An article Detomo relied upon described potential "disastrous consequences," including loss of productivity and complete shutdown, even with xylene soaks. Ex. 2 at 179:10-180:14. As for coated tubing, Anadarko characterized it as still "in the proof-of-concept" and "not on the table," which eventually eliminated it as a solution. *Id.* at 208:10-210:1.

Detomo's testimony that asphaltene was manageable during the Class Period because Anadarko could have used mitigation strategies that were unavailable during the Class Period should be excluded as irrelevant and misleading. *See Ruffin v. BP Expl. & Prod., Inc.*, 137 F.4th 276, 284 (5th Cir. 2025) ("'[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered' to admit an expert's testimony"); *LeBoeuf*, 888 F.2d at 333 (finding district court did not abuse discretion by excluding "'evidence about a condition that exist[ed] . . . two years after'" the event in question, "agree[ing] that the probative value of this evidence would have been quite low").

Second, Detomo's opinions lack an adequate factual basis. Asphaltene onset pressure ("AOP") is critical to analyzing asphaltene mitigation strategies. Ex. 5 (Excerpts of Nov. 29, 2022 Lyndon Pittinger's Corrected Expert Witness Report), ¶29 ("the presence of high asphaltene pressures requires more expensive solutions (*e.g.*, aquifers, water injectors) and negatively impacts oil flow and extraction"). Detomo's opinions rely on the mistaken assumption that AOPs at Shenandoah were ***less than half*** of what they actually were. He testified that: "The individual reservoirs I believe were fairly low. . . . I'm thinking somewhere between 5,000 and 9,000 psi." Ex. 2 at 180:21-25. In reality, they were up to 13,500 psig in a single zone and up to 19,500 psig when blended, prompting a ConocoPhillips engineer to state "'[t]he AOPs were higher than anything we had seen before.'" *See* Ex. 5, ¶¶30, 263.

Detomo also cites Anadarko's "K2" oil field as a "success[]" where Anadarko was able to "deal[]" with asphaltenes but admitted in his deposition that K2 "failed . . . because of asphaltene." Ex. 2 at 191:12-192:19. He ignores ConocoPhillips' statements that it saw recovery reduced by as much as a third due to asphaltene. Ex. 6 (Excerpts of Oct. 7, 2022 Deposition Transcript of Lea Frye) at 55:1-58:22, 59:24-61:1, 62:4-6, 62:22-65:18. And he selectively quotes from Lea Frye's deposition while ignoring her testimony that AOP levels impeded oil production design and significantly impacted Shenandoah's economic viability. *Id.* at 60:23-61:1, 63:20-65:15.

Detomo's opinions regarding asphaltene mitigation lack a sufficient factual basis and should be excluded. *See Williams v. Hyster-Yale Grp.*, 2024 WL 1144889, at *8 (S.D. Tex. Feb. 9, 2024), (expert opinion "lack[ed] . . . an adequate factual basis" because the expert did

not show how a potential solution that "***generally***" reduced hazards "would have changed the outcome in ***this***" case) (emphasis in original), *report and recommendation adopted*, 2024 WL 1144267, at *8 (S.D. Tex. Mar. 13, 2024); *United States v. 38.307 Acres of Land, More or Less*, 2022 WL 522661, at *4 (S.D. Tex. Feb. 22, 2022) ("Unsubstantiated factual assertions will bar expert testimony, as will 'altered facts and speculation designed to bolster [the proponent's] position.'").

## VII. CONCLUSION

Detomo impermissibly offers legal conclusions, opines about matters beyond his expertise, and misleadingly relies on inaccurate facts and changed circumstances that post-date the Class Period. His testimony described above should be excluded.

DATED: June 1, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
LUKE O. BROOKS
HILLARY B. STAKEM
NICOLE Q. GILLILAND

s/ Luke O. Brooks
LUKE O. BROOKS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Class Counsel

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

**CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 3,259 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED: June 1, 2026

s/ Luke O. Brooks
LUKE O. BROOKS

**CERTIFICATE OF CONFERENCE**

On May 29, 2026, Class Counsel conferred telephonically with Defendants' counsel regarding the relief requested in this motion. Defendants' counsel indicated that Defendants will oppose this motion.

DATED: June 1, 2026

s/ Luke O. Brooks
LUKE O. BROOKS

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 1st day of June, 2026.

s/ Luke O. Brooks
LUKE O. BROOKS