UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § | Civil Action No. 4:20-cv-00576<br><br>CLASS ACTION<br><br>The Honorable Charles R. Eskridge III |

**PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY BY DEFENDANTS' EXPERT J. RICHARD DIETRICH, PH.D.**

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ..... 1

II. PROCEDURAL BACKGROUND ..... 2

III. FACTS NECESSARY TO RESOLUTION OF THE MOTION ..... 3

IV. ISSUE FOR RESOLUTION ..... 4

V. APPLICABLE LEGAL STANDARDS ..... 4

VI. ARGUMENT ..... 7

A. Dietrich's Opinions About Shen-3 Are Based on His Informal Mental Analysis Regarding Shen-1 and Should Be Excluded ..... 7

B. Dietrich Should Be Precluded from Testifying that Shen-3 Was a Successful Appraisal Well ..... 10

C. Dietrich's Affirmative Opinions that Do Not Respond to Plaintiffs' Expert Should Be Excluded ..... 11

VII. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Barnes v. Allstate Tex. Lloyds*,
2022 WL 16908239 (E.D. Tex. Sep. 26, 2022) .......... 10

*Burnham v. United States*,
2009 WL 2169191 (D. Ariz. July 20, 2009),
*aff'd*, 400 F. App'x 190 (9th Cir. 2010) .......... 12

*Carroll v. Allstate Fire & Cas. Ins. Co.*,
2013 WL 12426586 (D. Colo. Oct. 4, 2013) .......... 13

*CEATS, Inc. v. TicketNetwork, Inc.*,
2018 WL 453732 (E.D. Tex. Jan. 17, 2018) .......... 6

*Club v. Energy Future Holdings Corp.*,
2014 WL 12690016 (W.D. Tex. Feb. 20, 2014) .......... 7, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... *passim*

*Dishman v. BBVA Compass Bank*,
2011 WL 13217162 (E.D. Tex. Feb. 16, 2011) .......... 9

*Fetty v. City of Baton Rouge*,
518 F. Supp. 3d 923 (M.D. La. 2021) .......... 6

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 5, 10

*Guile v United States*,
422 F.3d 221 (5th Cir. 2005) .......... 6, 9

*Jinghong Song v. Yao Bros. Grp. LP*,
2012 WL 1557372 (S.D.N.Y. May 2, 2012) .......... 10

*Johnson v. Arkema, Inc.*,
685 F.3d 452 (5th Cir. 2012) .......... 5, 6, 8

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) .......... 4, 6



4903-3820-4081.v2

**Page**

*Meadours v. Ermel*,
2005 WL 1923596 (S.D. Tex. Aug. 10, 2005),
*aff'd*, 483 F.3d 417 (5th Cir. 2007) .......... 9

*Nguyen v. Allstate Vehicle & Prop. Ins. Co.*,
2026 WL 497400 (N.D. Tex. Feb. 23, 2026) .......... 7

*Paz v. Brush Engineered Materials, Inc.*,
555 F.3d 383 (5th Cir. 2009) .......... 8, 10

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*,
73 F.3d 546 (5th Cir. 1996) .......... 7

*Stevens v. State Farm Lloyds*,
2003 WL 25676886 (N.D. Tex. Oct. 7, 2003) .......... 11

*United States v. Cooks*,
589 F.3d 173 (5th Cir. 2009) .......... 5

*United States v. Herman*,
997 F.3d 251 (5th Cir. 2021) .......... 11

*Vu v. McNeil-PPC, Inc.*,
2010 WL 2179882 (C.D. Cal. May 7, 2010) .......... 12

*Watkins v. Telsmith, Inc.*,
121 F.3d 984 (5th Cir. 1997) .......... 5

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
2017 WL 394511 (W.D. Tex. Jan. 27, 2017) .......... 7

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 26 .......... 9, 10
Rule 26(a) .......... 7, 13
Rule 26(a)(2)(B) .......... 7
Rule 26(a)(2)(B)(i) .......... 10
Rule 26(a)(2)(D) .......... 6
Rule 26(a)(2)(D)(ii) .......... 6, 12, 13
Rule 37(c)(1) .......... 2, 7, 13
Rule 37 .......... 7

**Page**

Federal Rules of Evidence
Rule 402 .......... 2, 10, 11
Rule 403 .......... 6, 11
Rule 702 .......... *passim*

## I. PRELIMINARY STATEMENT

Defendants' proposed accounting expert, J. Richard Dietrich ("Dietrich") is not a licensed CPA, has never performed an audit, and earned his accounting credential largely through independent study. Yet he proposes to instruct the jury on the propriety of Anadarko's exploration accounting based on analysis he admits he performed nowhere but "informally in [his] mind." Three categories of his opinions should be excluded, and Dietrich's own sworn testimony provides the basis for excluding each.

First, Dietrich's opinion that Anadarko properly suspended Shenandoah-3 ("Shen-3") exploratory well costs (Jan. 23, 2023 Expert Report of J. Richard Dietrich, Ph.D. (Ex. 1), §VII) should be excluded because it relies on an analysis of Shenandoah-1 ("Shen-1") that Dietrich did in his head and failed to disclose in his report.[1] Specifically, Dietrich's opinion that Anadarko properly suspended Shen-3 well costs was based on the fact that Shen-1 had sufficient proved reserves. Ex. 2 at 185:22-186:4. But when asked at deposition what analysis he did to determine Shen-1 found a sufficient quantity of reserves, Dietrich testified: "So I did that analysis ***informally in my mind***." *Id.* at 201:3-202:10. He also testified that his analysis was missing from his report. *Id.* An opinion built on an undisclosed analysis the expert conducted only in his mind is both unreliable under Federal Rule of Evidence 702 and a textbook violation of Federal Rule of Civil Procedure 26's disclosure requirement. It should be excluded on both grounds.

---

[1] Unless otherwise noted, all exhibits referenced herein are attached hereto, emphasis is added, and citations are omitted.

Second, Dietrich should not be permitted to testify that Shen-3 was always considered "a successful appraisal well" (Ex. 1, ¶94) because Dietrich himself testified that this assertion is "an ***irrelevant fact***" he never removed from his report. Ex. 2 at 181:1-19. Because irrelevant opinions are inadmissible under Federal Rule of Evidence 402, this opinion, too, should be excluded.

Third, Dietrich – whose report was served on the Court-ordered deadline for ***rebuttal*** expert reports – should be precluded from offering ***affirmative*** opinions that do not respond to Plaintiffs' expert's opinions. During his deposition, Dietrich identified the following sections of his report as affirmative opinions not offered in response to Plaintiffs' expert's opinions: §§V, VII.A., VII.B., and X.A. *Id.* at 38:17-39:12. By holding these affirmative opinions until the rebuttal deadline, Defendants denied Plaintiffs any chance to respond – the precise "hiding the ball" the disclosure rules forbid. These sections should be excluded under Federal Rule of Civil Procedure 37(c)(1).

## II. PROCEDURAL BACKGROUND

This securities-fraud class action was filed February 19, 2020. ECF 1. On April 19, 2021, Judge Gilmore entered a scheduling order calling for "Plaintiff, or the party with the burden of proof" to designate experts on June 24, 2022 and "Defendant [to] designate" experts on August 12, 2022. ECF 78. That order was vacated when the case was transferred to this Court. ECF 91. On May 25, 2022, the parties submitted a Joint Motion Regarding Pretrial Schedule (ECF 128), which the Court granted on June 1, 2022. ECF 129. In the May 25 scheduling motion, the parties changed the second expert deadline from the date for "Defendant [to] designate" to the date for "[r]ebuttal expert designations." ECF 128. The

resulting June 1 Order adopted that change. ECF 129. On October 11, 2022, pursuant to the parties' joint motion the Court entered the Amended Scheduling and Docket Control Order (ECF 142) ("Scheduling Order") to set November 9, 2022 as the deadline for expert designations for the party with the burden of proof and January 25, 2023 as the deadline for "Rebuttal Expert Designations." Scheduling Order at 1-2.

On February 23, 2023, in accordance with the deadline set by the Scheduling Order, the parties filed *Daubert* motions. On January 10, 2024, the Court terminated the parties' previously filed summary judgment and *Daubert* motions without prejudice "to refiling at an appropriate time after resolution of" ongoing "privilege issues and the pending appeal before the Fifth Circuit regarding class certification." ECF 216 at 2. On April 27, 2026, the Court ordered the parties to re-file *Daubert* and summary judgment motions by June 1, 2026. ECF 305 at 1. The final pretrial conference is set for May 18, 2027. *Id.*

## III. FACTS NECESSARY TO RESOLUTION OF THE MOTION

Dietrich is Defendants' proposed accounting expert. *See* Ex. 1, ¶1. He is not a licensed CPA, has never been employed as an auditor or performed an audit, and obtained his Master of Accounting mostly from independent study courses. *See* Ex. 2 at 54:14-24, 64:19-23, 66:18-67:17. Defendants designated Dietrich and served his report on January 25, 2023, the date that this Court set as the deadline for "Rebuttal Expert Designations." Scheduling Order at 2. Among other things, Dietrich opines that Anadarko properly suspended (rather than expensed) the exploratory well costs associated with Shen-3. At his deposition, Dietrich confirmed that this opinion is based on his conclusion that the related Shen-1 well had found a sufficient quantity of proved reserves, but he testified that he

performed the supporting reserves analysis "informally" and only "in [his] mind," that the analysis appears nowhere in his report, and that he did not know whether Anadarko had ever performed such an analysis but "presume[d]" that it had. Ex. 2 at 201:3-202:10.

## IV. ISSUE FOR RESOLUTION

Whether certain of Dietrich's opinions should be excluded under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), including: (1) whether Dietrich's opinion that Anadarko properly suspended Shen-3 exploratory well costs should be excluded because it is based on an undisclosed and unreliable analysis that Dietrich performed only "informally in [his] mind"; (2) whether Dietrich should be precluded from testifying that Shen-3 was "always considered a successful appraisal well" because Dietrich admitted that assertion is irrelevant; and (3) whether §§V, VII.A., VII.B., and X.A. of Dietrich's report should be excluded because they are affirmative opinions that were disclosed for the first time on the rebuttal-expert deadline

## V. APPLICABLE LEGAL STANDARDS

The admissibility of expert testimony is governed by Rule 702, which as amended, codifies the holdings of *Daubert*, and its progeny. Under Rule 702, trial courts serve as gatekeepers for expert evidence and are responsible for "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597; *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (holding *Daubert* applies to all expert testimony). Expert testimony is admissible under Rule 702 if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *Johnson v. Arkema, Inc*., 685 F.3d 452, 459 (5th Cir. 2012).

"Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.*

Under *Daubert*, the following non-exclusive list of factors are considered in evaluating whether expert opinion satisfies Rule 702's reliability requirement:

> "(1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community."

*Id.* These factors are aimed at ferreting out "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997). If "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). And "'nothing in either *Daubert* or the Federal Rules of Evidence

requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" *Kumho*, 526 U.S. at 157.

Rule 702's "helpfulness standard" requires that the proponent of testimony "demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson*, 685 F.3d at 459. "'If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.'" *Guile v United States*, 422 F.3d 221, 227 (5th Cir. 2005).

Even if testimony is admissible under Rule 702, it may still be excluded under Federal Rule of Evidence 403 if its probative value is substantially outweighed by, *inter alia*, "unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595; *Fetty v. City of Baton Rouge*, 518 F. Supp. 3d 923, 928 (M.D. La. 2021).

"A party must make [expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). This applies to both "'initial,'" "'affirmative,'" or "'opening'" reports – reports that contradict an expected portion of the opposing party's case – and "'rebuttal'" reports – reports that "explain[], repel[], counteract[], or disprove[] evidence of the adverse party's initial report." *CEATS, Inc. v. TicketNetwork, Inc.*, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018).

To qualify as proper "rebuttal," expert opinion must be "intended solely to contradict or rebut evidence on the same subject matter identified" by the opposing party's expert. Fed. R. Civ. P. 26(a)(2)(D)(ii). Courts in the Fifth Circuit look to the following three factors to determine whether expert opinion qualifies as proper rebuttal.

> "First, what evidence does the rebuttal expert purport to contradict or rebut? Second, is the evidence disclosed as rebuttal evidence on the same subject matter as that identified by another party in its Rule 26(a)(2)(B) disclosure? Third, is the evidence disclosed as rebuttal evidence intended solely to contradict or rebut that evidence?"

*Nguyen v. Allstate Vehicle & Prop. Ins. Co.*, 2026 WL 497400, at *5 (N.D. Tex. Feb. 23, 2026); *see YETI Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 394511, at *2 (W.D. Tex. Jan. 27, 2017).

Rule 37 establishes the consequences for untimely expert disclosure:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). In the Fifth Circuit, harmlessness is assessed relative to four factors:

> (1) the importance of the witnesses' testimony; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 572 (5th Cir. 1996). It is the burden of "the party resisting exclusion for a belated disclosure [to] establish that its non-compliance was substantially justified and harmless." *Club v. Energy Future Holdings Corp.*, 2014 WL 12690016, at *4 (W.D. Tex. Feb. 20, 2014).

## VI. ARGUMENT

### A. Dietrich's Opinions About Shen-3 Are Based on His Informal Mental Analysis Regarding Shen-1 and Should Be Excluded

As the Supreme Court held in *Daubert*, the use of the word "knowledge" in Rule 702 "connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at

590. Likewise, the Fifth Circuit holds that, to be reliable, expert testimony must "'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459. "Where an expert's opinion is based on insufficient information, the analysis is unreliable" and should be excluded. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

Dietrich's opinion that Anadarko properly suspended Shen-3 costs relies on his conclusion that Shen-1 found a sufficient quantity of proved reserves. Ex. 2 at 185:22-186:4, 199:17-20. But Dietrich admitted at his deposition that he analyzed whether Shen-1 found a sufficient quantity of proved reserves "***informally in his mind***," and he did not know whether Anadarko determined Shen-1 had a sufficient quantity of proved reserves:

> [Q] What did you do to determine whether Shen 1 found a sufficient quantity of reserves to justify its completion as a producing well?
>
> * * *
>
> [A] So I did that analysis ***informally in my mind***. I did not see it done formally.
>
> But again, I haven't seen every document that Anadarko has. I ***don't know*** whether they performed that analysis or not, but I ***presume*** that they did and ***simply accepted*** that they had made that determination.
>
> * * *
>
> Q Sir, you said you performed that analysis ***in your head***. Did I hear that correctly?
>
> A ***Yes***.
>
> Q Does that head performed analysis appear anywhere in the ***report***?
>
> A ***No***.
>
> Q Okay. Do you intend to opine on that at trial?

A Do I intend to, no. If I'm asked about it, I may.

Q And you told me you ***don't know whether Anadarko performed the analysis*** to determine whether Shen 1 had a sufficient quantity of reserves to justify its completion of a producing well but you assume they did; right, sir?

A Yes . . . .

*Id.* at 201:3-202:16; *see also id.* at 204:7-11 ("***So that's how I did it in my head***. I assume that Anadarko similarly did that in its analysis ***that I did not see***.").

Dietrich's opinion that Shen-3 costs were properly capitalized thus fails for two separate reasons: (1) an undisclosed reserves analysis he confessed he performed only "in [his] mind"; and (2) a bare assumption (completely untethered to any document he reviewed) that Anadarko had reached the same conclusion. The only connection between his premise and his conclusion is inadmissible *ipse dixit*. *See Guile*, 422 F.3d 227 ("'If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.'"); *Meadours v. Ermel*, 2005 WL 1923596, at *3-*4 (S.D. Tex. Aug. 10, 2005) ("Dr. Deegear explained during his deposition that his model is an analytical process that is all contained ***in his head*** . . . . Dr. Deegear's deposition testimony makes clear that none of the *Daubert* factors has been met."), *aff'd*, 483 F.3d 417 (5th Cir. 2007); *Dishman v. BBVA Compass Bank*, 2011 WL 13217162, at *5 (E.D. Tex. Feb. 16, 2011) (excluding expert who did "not explain, however, why he chose the figures he did" and explaining "[w]ithout some kind of methodology to arrive at this number, [the expert's] conclusion is little more than impermissible ipse dixit").

Dietrich's Shen-3 opinion fails for the independent reason that Dietrich never disclosed the Shen-1 reserves analysis on which it is based, in violation of Rule 26. Dietrich

admitted that his Shen-1 reserves analysis appears nowhere in his report. Ex. 2 at 201:3-202:10. Rule 26 required him to set out not only his opinions but the "basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Accordingly, Dietrich's opinion regarding Anadarko's decision to suspend Shen-3 well costs (Ex. 1, §VII) should also be excluded because it is based upon an analysis that Dietrich failed to disclose. *See* Fed. R. Civ. P. 26(a)(2)(B)(i); *Barnes v. Allstate Tex. Lloyds*, 2022 WL 16908239, at *4 (E.D. Tex. Sep. 26, 2022) (excluding expert whose opinions were "deficient in explaining the 'why and how' behind his assessment"); *Jinghong Song v. Yao Bros. Grp. LP*, 2012 WL 1557372, at *1-*2 (S.D.N.Y. May 2, 2012) (excluding expert report that failed to "adequately identify the 'facts or data' considered by the witness in forming his opinions").

Finally, Dietrich did not just keep his analysis to himself – he never checked whether Anadarko had actually determined that Shen-1 found sufficient reserves. He admitted he did not "know whether they performed that analysis or not," and "presume[d] that they did and simply accepted that they had made that determination." Ex. 2 at 201:3-202:16. In other words, Dietrich assumed the answer to the very question he was retained to evaluate. An opinion built on that kind of unverified assumption is "based on insufficient information" and is unreliable on that basis. *Paz*, 555 F.3d at 388; *see also Joiner*, 522 U.S. at 146.

### B. Dietrich Should Be Precluded from Testifying that Shen-3 Was a Successful Appraisal Well

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. Nonetheless, Dietrich testified that his assertion that "Shen 3 was always considered a successful appraisal well" (Ex. 1, ¶94) is irrelevant:

Q But you told me that this was – that this considering Shen 3 to be a successful appraisal well is an ***irrelevant fact***; right?

A ***Correct***.

* * *

Q Before submitting your report, why didn't you go back and edit out the irrelevant portions of your report?

A I just didn't.

Ex. 2 at 181:1-19.

Defendants have the burden of showing that Dietrich's testimony is relevant, and they cannot meet it when Dietrich himself called the testimony irrelevant. Dietrich admitted that Shen-3 being considered a successful appraisal well is an "irrelevant fact" and that he left it in his report only because he "just didn't" take it out. *Id.* Testimony the expert himself calls irrelevant has no probative value and will only confuse the jury. It should be excluded under Rules 402 and 403. *See United States v. Herman*, 997 F.3d 251, 269-71 (5th Cir. 2021) (excluding opinions "which the jury might have viewed as important but was actually irrelevant to the case" under Rule 403 because any probative value was substantially outweighed by the risk of confusing the jury); *Stevens v. State Farm Lloyds*, 2003 WL 25676886, at *1 (N.D. Tex. Oct. 7, 2003) ("If an expert's opinion is not relevant, the Court should exclude the opinion.").

### C. Dietrich's Affirmative Opinions that Do Not Respond to Plaintiffs' Expert Should Be Excluded

Defendants designated Dietrich and served his report on January 25, 2023, the date that this Court set as the deadline for "Rebuttal Expert Designations." Scheduling Order at 2. Indeed, the majority of Dietrich's report purports to rebut the accounting opinions of D.

Paul Regan ("Regan"), Plaintiffs' accounting expert who submitted a report on November 9, 2022. Certain sections of Dietrich's report, however, present improper affirmative opinions that were untimely disclosed and should be excluded.

The Federal Rules of Civil Procedure and this Court's Scheduling Order require timely disclosure of expert opinions "to prevent parties from hiding the ball – from introducing initial experts in the guise of rebuttal experts and thereby frustrating their opponents' opportunity to respond to those experts." *Burnham v. United States*, 2009 WL 2169191, at *5 (D. Ariz. July 20, 2009), *aff'd*, 400 F. App'x 190 (9th Cir. 2010). To qualify as proper "rebuttal," expert opinions must be "intended solely to contradict or rebut evidence on the same subject matter identified" by the opposing party's expert. Fed. R. Civ. P. 26(a)(2)(D)(ii). The phrase "the same subject matter" should be read narrowly, otherwise it would "'blur the distinction between "affirmative expert" and "rebuttal expert"'" and "'render the scope of the subject matter limitless.'" *Energy Future Holdings*, 2014 WL 12690016, at *5 (quoting *Vu v. McNeil-PPC, Inc.*, 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010)).

As Dietrich expressly states in describing his assignment, his scope of work has two parts: (1) providing his own affirmative opinions regarding Anadarko's accounting treatment for certain wells and periodic assessments of non-producing leasehold properties for impairment; and (2) responding to certain financial accounting and reporting opinions expressed by Regan. Ex. 1, ¶1. During his deposition, Dietrich testified that several portions of his report were his own opinions regarding Anadarko's accounting "irrespective of anything that Mr. Regan said." Ex. 2 at 32:18-21. Dietrich identified the following sections



4903-3820-4081.v2

of his report as his affirmative opinions not in response to Regan: §§V, VII.A., VII.B., and X.A. *Id.* at 38:17-39:12.

Far from being intended solely to contradict or rebut Regan, Dietrich admitted these are his independent, affirmative opinions on Anadarko's accounting. Defendants thus used the rebuttal deadline to smuggle in affirmative opinions they were required to disclose months earlier, on November 9, 2022. Plaintiffs are unfairly prejudiced because they were not afforded the opportunity to present rebuttal testimony to Dietrich's independent opinions regarding Anadarko's accounting. This is precisely the "hiding the ball" the disclosure rules forbid, and it violates the Scheduling Order and Rule 26(a)(2)(D)(ii).

Accordingly, the Court should exclude §§V, VII.A., VII.B., and X.A. of Dietrich's report, which he admits are new affirmative opinions not in response to Regan. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."); *Carroll v. Allstate Fire & Cas. Ins. Co.*, 2013 WL 12426586, at *3 (D. Colo. Oct. 4, 2013) ("Their decision to hold back on disclosing their experts and accompanying reports until the rebuttal expert disclosure deadline looks suspiciously like sandbagging. The Court will not tolerate this type of gamesmanship and tactical maneuvering.").

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) exclude Dietrich's opinion that Anadarko properly suspended Shen-3 exploratory well costs (Ex. 1, §VII) as unreliable and undisclosed; (2) preclude Dietrich from testifying that Shen-3 was

always considered a successful appraisal well (*id.*, ¶94) as irrelevant and confusing; and (3) exclude §§V, VII.A., VII.B., and X.A. of Dietrich's report as untimely affirmative opinions improperly disclosed as rebuttal.

DATED: June 1, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
LUKE O. BROOKS
HILLARY B. STAKEM
NICOLE Q. GILLILAND

s/ Luke O. Brooks
LUKE O. BROOKS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Class Counsel

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

**CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 3,728 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED: June 1, 2026

s/ Luke O. Brooks
LUKE O. BROOKS

**CERTIFICATE OF CONFERENCE**

On May 29, 2026, Class Counsel conferred telephonically with Defendants' counsel regarding the relief requested in this motion. Defendants' counsel indicated that Defendants will oppose this motion.

DATED: June 1, 2026

s/ Luke O. Brooks
LUKE O. BROOKS

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 1st day of June, 2026.

s/ Luke O. Brooks
LUKE O. BROOKS