UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § | Civil Action No. 4:20-cv-00576 |
| | | CLASS ACTION |
| | | The Honorable Charles R. Eskridge III |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF D. PAUL REGAN**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........ 1

II. ISSUE FOR RESOLUTION ........ 4

III. NATURE AND STAGE OF PROCEEDING ........ 4

IV. LEGAL STANDARD ........ 4

V. FACTUAL BACKGROUND ........ 5

VI. ARGUMENT ........ 8

A. Regan Is Qualified to Provide His Opinions ........ 8

B. Regan's Shen-3 Opinions Are Relevant ........ 8

C. Regan's Shen-3 Opinions Are Reliable ........ 12

D. Regan's Accounting Materiality Opinions Are Admissible ........ 15

VII. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Armstrong v. Wing Enters. Inc.*,
2022 WL 950873 (S.D. Tex. Mar. 30, 2022) .......... 4

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... *passim*

*EEOC v. Boh Bros. Constr. Co., L.L.C.*,
731 F.3d 444 (5th Cir. 2013) .......... 5, 16

*EEOC v. DHL Express (USA), Inc.*,
2016 WL 5796890 (N.D. Ill. Sep. 30, 2016) .......... 9

*Ezra Charitable Tr. v. Tyco Int'l, Ltd.*,
466 F.3d 1 (1st Cir. 2006) .......... 15

*Feinberg v. Katz*,
2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007) .......... 17

*Gansman v. Tanenbaum*,
2024 WL 694111 (N.D. Cal. Feb. 20, 2024) .......... 14

*Greenberg v. Crossroads Sys., Inc.*,
364 F.3d 657 (5th Cir. 2004) .......... 12

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
2015 WL 364796 (N.D. Cal. Jan. 27, 2015) .......... 14

*Hicks-Fields v. Harris Cnty., Tex.*,
860 F.3d 803 (5th Cir. 2017) .......... 9

*In re Daou Sys., Inc., Sec. Litig.*,
2008 WL 11508932 (S.D. Cal. May 13, 2008) .......... 16

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
2014 WL 3557345 (N.D. Tex. July 18, 2014) .......... 14

*In re Novatel Wireless Sec. Litig.*,
2011 WL 5827198 (S.D. Cal. Nov. 17, 2011) .......... 12, 15

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010) .......... 2

**Page**

*Jiminez ex rel. Est. of Gonzales v. Martin Marietta Materials Sw. LLC*,
2025 WL 1146667 (E.D. Tex. Feb. 13, 2025) ........ 9

*Kirola v. City & Cnty. of S.F.*,
2010 WL 3476681 (N.D. Cal. Sep. 2, 2010) ........ 2

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) ........ 4

*MicroCapital Fund LP v. Conn's Inc.*,
2019 WL 3451153 (S.D. Tex. July 24, 2019) ........ 2

*New Jersey v. T.L.O.*,
469 U.S. 325 (1985) ........ 9

*Peters v. Five Star Marine Serv.*,
898 F.2d 448 (5th Cir. 1990) ........ 5

*Pipitone v. Biomatrix, Inc.*,
288 F.3d 239 (5th Cir. 2002) ........ 5

*Puga v. RCX Sols., Inc.*,
922 F.3d 285 (5th Cir. 2019) ........ 4, 5, 15

*Robinson v. Shelby Cnty., Ky.*,
2021 WL 5889528 (E.D. Ky. Dec. 13, 2021) ........ 11

*SEC v. Cuban*,
2013 WL 3809654 (N.D. Tex. July 23, 2013) ........ 15

*SEC v. Goldstone*,
2016 WL 3135651 (D.N.M. May 10, 2016) ........ 17

*SEC v. Life Partners Holdings, Inc.*,
2013 WL 12076933 (W.D. Tex. Oct. 23, 2013) ........ 15

*SEC v. Stansbury Holdings Corp.*,
2007 WL 1970531 (D. Colo. June 29, 2007) ........ 15, 17

*SEC v. Todd*,
2006 WL 5201386 (S.D. Cal. Oct. 17, 2006) ........ 16

**Page**

*United States v. Hatfield*,
2010 WL 1948236 (E.D.N.Y. May 12, 2010) .......... 15

*United States v. Javidan*,
2013 WL 1563212 (E.D. Mich. Apr. 15, 2013), *aff'd sub nom.*
*United States v. Meda*, 812 F.3d 502 (6th Cir. 2015) .......... 1

*Willis v. Kia Motors Corp.*,
2009 WL 1974474 (N.D. Miss. July 8, 2009) .......... 4

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Evidence
Rule 401 .......... 3, 9, 11
Rule 702 .......... *passim*
Rule 704 .......... 16

17 C.F.R.
§240.10b-5 .......... 8

## I. PRELIMINARY STATEMENT

Plaintiffs' expert D. Paul Regan ("Regan") opines that Anadarko Petroleum Corporation ("Anadarko" or the "Company") violated Generally Accepted Accounting Principles ("GAAP") when it carried $64 million in costs for the failed Shenandoah ("Shen")-3 well on its books for six quarters, that the Company likewise failed to timely impair and expense its broader Shen investment, and that the resulting misstatements were material under the accounting profession's own standards. These expert accounting opinions easily pass muster under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Defendants do not question Regan's credentials, and for good reason. Regan is a CPA with over 50 years of accounting and auditing experience. He is designated by the American Institute of Certified Public Accountants ("AICPA") as Certified in Financial Forensics. He has been retained by and testified on multiple occasions for the U.S. Securities and Exchange Commission ("SEC"), the Public Company Accounting Oversight Board, and the Federal Deposit Insurance Corporation. Regan has provided expert testimony in more than 125 trials and arbitrations. He has taught or presented dozens of courses on accounting topics to AICPA members, college students, and federal law enforcement. And he has been awarded the Distinguished Service Award by the California Society of CPAs, its highest honor, bestowed on one member each year, for a career of extraordinary service to the profession.

Regan's opinions are relevant because "accounting is sufficiently complex to be considered beyond the knowledge of the average person." *United States v. Javidan*, 2013

WL 1563212, at *2 (E.D. Mich. Apr. 15, 2013) (expert accounting testimony "would, therefore, aid the jury"), *aff'd sub nom. United States v. Meda*, 812 F.3d 502 (6th Cir. 2015). To assess the evidence, the jury will need to be educated on applicable GAAP and SEC rules, including the Financial Accounting Standard Board's ("FASB") Accounting Standards Codification ("ASC") 932, Staff Accounting Bulletin ("SAB") 99, and others. Indeed, courts routinely admit expert testimony from qualified accountants to help the trier of fact assess accounting issues in securities cases. *See, e.g.*, *MicroCapital Fund LP v. Conn's Inc.*, 2019 WL 3451153, at *13 n.26 (S.D. Tex. July 24, 2019) ("allegations of accounting fraud and GAAP violations were supported by sworn expert analysis"). Defendants do not contend that these issues are within the ken of an average juror. Given the accounting issues presented, Regan's testimony will undoubtedly assist the trier of fact.

Regan's expert accounting opinions are also reliable. They are grounded in his 50 years of accounting experience, his review of relevant documents and deposition testimony, and his understanding and application of the pertinent accounting standards and literature. Because Regan "followed the accepted methodology of his profession," his opinions "satisf[y] the applicable standards of admissibility." *Kirola v. City & Cnty. of S.F.*, 2010 WL 3476681, at *9-*10 (N.D. Cal. Sep. 2, 2010) (rejecting challenge to Regan's expert opinions); *see also In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1217 (S.D. Cal. 2010) (same). Regan's thorough analysis satisfies Rule 702 and *Daubert*'s reliability requirement.

Defendants concede that Regan may opine on whether Anadarko's impairment of Shen was timely and that he may present his quantitative analysis under SAB 99. ECF 322-4

("MTE") at 13. Their motion instead takes aim at the opinions that most directly expose the fraud, and none of their three arguments withstands scrutiny.

***First***, Defendants' argument that Regan's Shen-3 opinions are irrelevant relies on a mischaracterization of the relevance standard. Defendants contend that Regan's opinions must prove Plaintiffs' entire case on their own to be relevant. Federal Rule of Evidence 401 requires no such thing. Regan's Shen-3 opinions are relevant because they will help the trier of fact assess the falsity of Defendants' misstatements and the extent of their fraudulent scheme. Defendants' loss causation contention, moreover, is a summary judgment argument dressed in *Daubert* clothing, not a basis to exclude expert accounting testimony.

***Second***, Defendants mischaracterize Regan's opinions to manufacture a reliability challenge. Regan does not rely on a superseded accounting standard. He properly considers and cites the "Basis for Conclusions" section of relevant FASB guidance. Defendants' own accounting expert cited the same guidance at his deposition to support his opinions. Regan's Shen-3 opinions rest on a reliable methodology.

***Third***, courts routinely admit expert testimony on accounting materiality where, as here, such testimony is appropriately based in accounting standards and analysis. Regan's testimony that Defendants' accounting errors were ***material under GAAP*** and related SEC guidance will help the jury grasp accounting concepts far outside ordinary experience, and it leaves for the jury the ultimate question of whether Defendants' fraud was ***material to investors***. Defendants' argument is meritless.

## II. ISSUE FOR RESOLUTION

Are Regan's expert accounting opinions, which apply governing GAAP provisions and related SEC guidance to the accounting errors that helped Defendants conceal their alleged fraud, admissible under Rule 702 and *Daubert*?

## III. NATURE AND STAGE OF PROCEEDING

On November 9, 2022, Plaintiffs served reports setting forth the opinions their experts intend to offer at trial, including Regan's report. Defendants deposed Regan on January 20, 2023, and moved to exclude certain of Regan's opinions on June 1, 2026.

## IV. LEGAL STANDARD

When considering whether to admit expert testimony into evidence, courts assess whether the testimony is reliable and relevant. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The determination of admissibility under Rule 702 and *Daubert* is a "highly discretionary enterprise." *Armstrong v. Wing Enters. Inc.*, 2022 WL 950873, at *2 (S.D. Tex. Mar. 30, 2022) (Eskridge, J.). "Essentially, the court is the gate-keeper charged with determining whether the expert's testimony is reliable and relevant enough to not be junk science …." *Willis v. Kia Motors Corp.*, 2009 WL 1974474, at *1 (N.D. Miss. July 8, 2009). "'[T]he rejection of expert testimony is the exception rather than the rule.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019).[1]

The reliability requirement demands only that an expert's testimony have a "'basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149; *see*

---

[1] Unless otherwise noted, all citations and footnotes are omitted, emphasis is added, and exhibits referenced herein are attached hereto.

*also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (reversing exclusion where "the standard of reliability that the district court applied … was overly stringent"). As for relevance, "the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga*, 922 F.3d at 293 (citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449 (5th Cir. 1990)). The "'helpfulness threshold is low.'" *EEOC v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 459 n.14 (5th Cir. 2013) (en banc). And the gatekeeping role "'is not intended to serve as a replacement for the adversary system.'" *Pipitone*, 288 F.3d at 250 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## V. FACTUAL BACKGROUND

Following two promising wells in the Shenandoah basin, Shen-1 and Shen-2, Anadarko spudded Shen-3 in the second quarter of 2014. Expert Report of D. Paul Regan, CPA/CFF, dated November 9, 2022 ("Regan Rpt."), ¶¶32-33.[2] By November 2014, the Company knew that Shen-3 was a "wet well" or "dry hole," *i.e.*, it found no oil. *Id.*, ¶41. As Regan explains, GAAP requires oil and gas companies to expense costs associated with exploratory wells, like Shen-3, that fail to find oil. *Id.*, ¶48. Nevertheless, the Company suspended, rather than expensing, $64 million in Shen-3 costs starting at year-end 2014 and continuing through 2015 and the first half of 2016. *Id.*, ¶57. Anadarko's partners saw

[2] *See* Ex. 17 to the Declaration of Lauren M. Rosenberg in Support of Defendants' Motion for Summary Judgment (ECF 322-9) ("Rosenberg Decl.").

Shen-3 for what it was. ConocoPhillips and Marathon Oil Corporation each expensed its share of the well as a dry hole in the fourth quarter of 2014 ("Q4 2014"), and each told Anadarko it was doing so. *Id.*, ¶41(e).

Anadarko's internal explanations for this accounting treatment shifted. Initially, Property Accounting justified the suspension of the Shen-3 costs "based on understanding from conversations with Exploration … that the well projected the oil-water contact and resulted in higher confidence in, and thus an increase to, the estimated resources for the Shenandoah project." Ex. 1 at APC-00718258. In November 2016, however, just a few months after Lea Frye submitted a whistleblower letter to the SEC and resigned (*see* Regan Rpt., ¶41), "a review by the accounting department of the Shenandoah-3 capitalized [*i.e.*, suspended] costs determined the well did ***not*** increase the overall resource estimate of the Shenandoah project," and in fact, "***the well was unsuccessful under [GAAP]***." Ex. 2 at APC-01720565-66.

Tellingly, the review also "found that the former Chief Accounting Officer (CAO) relied upon the injection well capability of Shenandoah-3 [*i.e.*, its purported potential future use in the development phase of the project] as the predominant reason for suspending the well costs at year-end 2014." *Id.* at APC-01720565. That justification was completely different from the one Property Accounting had given. Ex. 1 at APC-00718258. Despite acknowledging that the previous justification from Exploration was wrong, Property Accounting retroactively applied the CAO explanation and blessed the original decision to suspend Shen-3's costs as "reasonable." Ex. 2 at APC-01720566. Property Accounting further found, however, that recent developments rendered Shen-3's injection well capability

no longer reasonably possible, and that "the suspended well cost of $64MM [must be] taken to dry hole expense" immediately. *Id.* When the Company finally expensed the Shen-3 costs in the third quarter of 2016 ("Q3 2016"), its public disclosure of the accounting change stated that the costs were "expensed as it was no longer reasonably possible that the wellbore would be used in the development of the project if a final investment decision is reached." Rosenberg Decl., Ex. 95 at APC002743.

Regan opines that neither of Anadarko's excuses for suspending the Shen-3 costs was appropriate. Rather, because Shen-3 was an exploratory well that failed to find oil, its costs should have been expensed as of Q4 2014. Regan Rpt., ¶¶39-59. Further, the retroactive CAO justification based on the purported "reasonable possibility" of use in development fails because it is inconsistent with GAAP and contradicted by contemporaneous internal documents, which indicate that Shen-3 was only intended to be an exploratory well. *Id.*, ¶¶60-68. Accordingly, the Shen-3 costs should have been expensed no later than year-end 2014, and the Company's financial statements suspending Shen-3's costs through 2015 and the first half of 2016 were misstated under GAAP. *Id.*, ¶11. Regan further opines that the Company's Shen-3 accounting misstatements were material under GAAP and related SEC guidance. *Id.*, ¶¶70-87.

After Shen-3, Anadarko spudded three more wells: Shen-4 (second quarter 2015), Shen-5 (first quarter 2016), and Shen-6 (fourth quarter 2016). *Id.*, ¶33. The Company suspended costs associated with each of these wells, as well as Shen-1 and Shen-2, and other related costs. *Id.*, ¶88. But GAAP required the Company to expense these costs and impair related assets once it had information that raised "substantial doubt" about Shen's economic

or operational viability. *Id.*, ¶¶89-100. Based on his assumption that such conditions obtained as of year-end 2015, Regan opines that Anadarko was required – yet failed – to expense and impair its Shen-related assets at year-end 2015. *Id.*, ¶¶102-103. He further opines that these accounting misstatements were material under GAAP and related SEC guidance. *Id.*, ¶¶104-110.

## VI. ARGUMENT

### A. Regan Is Qualified to Provide His Opinions

Defendants do not dispute that Regan is a well-qualified accounting expert. Nor could they, as his academic and professional credentials render him eminently qualified to offer the reports, opinions, and testimony he offers in this case. Even a cursory review of Regan's *curriculum vitae* reveals that his extensive knowledge, skill, experience, and education in the accounting and auditing fields qualify him to provide expert accounting testimony in this litigation. *See generally* Regan Rpt., Ex. B. Regan has practiced as a CPA for more than 50 years, including serving as the engagement partner and concurring partner on audits of public companies. *Id.*, ¶14. He has provided accounting and/or auditing consulting services in over 750 complex litigation matters. *Id.*, ¶15. And he has been qualified to testify on various accounting and accounting fraud matters in more than 125 cases, including cases involving oil and gas companies. *Id.*, ¶¶16-17. There is no question that Regan is qualified to give the opinions he proffers here.

### B. Regan's Shen-3 Opinions Are Relevant

Defendants argue that because Regan's Shen-3 opinions, "'standing alone,'" "cannot by [themselves] form the basis of [Plaintiffs'] Rule 10b-5 claims," and because Shen-3's

costs were expensed during the period February 20, 2015 to May 2, 2017, inclusive (the "Class Period"), Regan's opinions are irrelevant. MTE at 6-7. "But a brick is not a wall, as they say, and [Plaintiffs are] not required to rely solely on [Regan] to prove their entire case." *EEOC v. DHL Express (USA), Inc.*, 2016 WL 5796890, at *2 (N.D. Ill. Sep. 30, 2016) (admitting expert testimony over relevance objection); *see also Jiminez ex rel. Est. of Gonzales v. Martin Marietta Materials Sw. LLC*, 2025 WL 1146667, at *3 (E.D. Tex. Feb. 13, 2025) (rejecting the "conflation of *Daubert* with evidentiary sufficiency" and admitting expert testimony over relevance objection).

Defendants' argument contradicts foundational principles of relevance. *See New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985) ("But it is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'") (quoting Fed. R. Evid. 401). Like all evidence, the relevance of expert testimony under *Daubert* is governed by Rule 401, and "the Rule's basic standard of relevance … is a liberal one." *Daubert*, 509 U.S. at 587; *see also Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 809 (5th Cir. 2017) ("the bar is low"). Defendants' complaint that Regan's opinions cannot carry Plaintiffs' claims by themselves goes to the sufficiency of Plaintiffs' proof, a question for summary judgment or trial, not to whether his testimony will help the jury.

Regan's Shen-3 opinions easily clear Rule 401. To start, Regan's opinions support the falsity of Defendants' repeated statements throughout the Class Period regarding

Anadarko's accounting for exploratory well costs. For instance, the Company stated on May 4, 2015:

> "Projects with suspended exploratory well costs are those identified by management as exhibiting sufficient quantities of hydrocarbons to justify potential development and where management is actively pursuing efforts to assess whether reserves can be attributed to these projects. If additional information becomes available that raises substantial doubt as to the economic or operational viability of any of these projects, the associated costs will be expensed at that time."

ECF 55, ¶104; *see also id.*, ¶¶117, 129, 139 (similar). Further, defendants R.A. Walker and Robert G. Gwin certified in Anadarko's 2014 Form 10-K (filed on the first day of the Class Period) that they maintained adequate internal control over financial reporting to ensure reliable reporting and compliance with GAAP. *Id.*, ¶100. Regan's opinion that the Company's accounting for Shen-3 violated GAAP will help Plaintiffs prove at trial that these statements were misleading. Most obviously, as a dry hole, Shen-3 did not exhibit any "quantities of hydrocarbons," yet the Company suspended its costs for six quarters.[3]

More broadly, Regan's Shen-3 opinions support Plaintiffs' scheme claim because Defendants' GAAP violations were yet another artifice designed to conceal negative information about Shen. Given Anadarko's public statements about its accounting for exploratory well costs, the market knew that expensed exploratory well costs could indicate there was "substantial doubt" about Shen's economic or operational viability. In fact, as Regan points out, the whole point of the "GAAP requirements under the successful effort

---

[3] Contrary to any potential argument from Defendants that their May 4, 2015 statement was technically true because the Shen ***project*** exhibited sufficient quantities of hydrocarbons to justify potential development, Regan opines that GAAP requires exploratory well costs to be assessed per well, not per project. Regan Rpt., ¶¶51-56.

method" that applied to Anadarko is "to highlight failures and risks involved in exploration of the Company's Shenandoah project." Regan Rpt., ¶57. Defendants refused to account properly for Shen-3's costs precisely because doing so would have undermined the misleadingly positive impression of the well's results that they gave investors. Anadarko's own partners, applying the same accounting standards to the same well results, expensed Shen-3 immediately. *Id.*, ¶41(e). Notably, Regan's opinion implicates defendant Ernest A. Leyendecker, III directly in the Company's Shen-3 accounting. *See, e.g.*, *id.*, ¶66. Defendants' position that these opinions are irrelevant is untenable.

Finally, Defendants suggest that Anadarko's Q3 2016 disclosure of its revised accounting for Shen-3 somehow nullified their previous fraudulent accounting treatment and rendered Regan's opinion "irrelevant to loss causation." MTE at 7. This is wrong on the law and the facts. Even crediting Defendants' argument, Regan's opinion need not be relevant to loss causation to be admissible. *See, e.g.*, *Robinson v. Shelby Cnty., Ky.*, 2021 WL 5889528, at *2 (E.D. Ky. Dec. 13, 2021) ("Federal Rule of Evidence 401 only requires evidence make ***a*** 'fact more or less probable,' not every fact ….") (emphasis in original). More importantly, Defendants ignore that the Q3 2016 disclosure itself misled. Anadarko told investors only that "it was ***no longer*** reasonably possible that the wellbore would be used in the development of the project if a final investment decision is reached." Rosenberg Decl., Ex. 95 at APC002743. Carefully wordsmithed to avoid any implication that Shen-3 gave rise to doubts about Shen's viability, the disclosure instead suggests, falsely, that the previous accounting treatment was appropriate and the new accounting treatment was simply a response to changed business circumstances. In reality, Defendants admitted internally that

the accounting for Shen-3 was the result of a "misunderstanding in the communication of the well results between Exploration and Property Accounting," amounting to an internal control deficiency "from first quarter 2015 through the second quarter of 2016." Ex. 1 at APC-00718259-60. Whether that carefully crafted disclosure cured Defendants' earlier misstatements is itself a disputed fact question for the jury, not a reason to keep Regan's accounting analysis from them.[4]

### C. Regan's Shen-3 Opinions Are Reliable

Next, Defendants argue that Regan's Shen-3 opinions are unreliable. Specifically, despite repeatedly acknowledging that Regan applies the correct, applicable GAAP provision (MTE at 8-9), they suggest that his references to Financial Accounting Standard ("FAS") 19 mean he impermissibly relied on an outdated accounting authority and thus failed to follow a "generally accepted methodology for evaluating accounting decisions." *Id.* at 7. To concoct this argument, Defendants rely on gross mischaracterizations of Regan's opinions and "an out of context deposition quote consisting of [5] lines out of a 2[05] page deposition transcript." *In re Novatel Wireless Sec. Litig.*, 2011 WL 5827198, at *5 & n.2 (S.D. Cal. Nov. 17, 2011) (rejecting *Daubert* argument that "Regan applied the wrong standard, rendering his methodology unreliable").

Regan's consideration of FAS 19 is appropriate. As he explained in his report and deposition, the current GAAP provision, ASC 932, is largely based on FAS 19. Ex. 3 at

---

[4] Defendants' authority is inapplicable; it does not even address Rule 702 or *Daubert*. Most of it concerns the standards for adjudicating a motion to dismiss. *See* MTE at 6-7. Their remaining authority, *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657 (5th Cir. 2004), addresses the fraud-on-the-market presumption of reliance.

50:16-22, 53:8-11 ("[M]uch of the language of [ASC] 932 is taken from FAS 19."); Regan Rpt., ¶31 ("[FAS 19] serves as the primary source for relevant codified accounting standards applicable to Anadarko."). Not unlike advisory committee notes to the Federal Rules of Civil Procedure, FAS 19 includes "Basis for Conclusions" sections that were not codified and are not authoritative, but which remain relevant for interpreting and applying the current, authoritative GAAP provisions. *See* Ex. 3 at 53:25-54:4 ("Some language within FAS 19, it contains background information and the bases for conclusions that are reached. And that can be helpful in understanding the ASCs, which are now the authoritative GAAP."); *see also id.* at 55:19-25 ("Q If there are portions of FAS 19 that are not incorporated into 932, do financial statements need to comply with them? A I think technically not, although there's helpful background and bases for conclusions that can inform the reader about issues which may arise in the operationalization of 932.").

Regan only consults these helpful background sections of FAS 19 in the course of his analysis and application of the relevant, current GAAP provision, ASC 932. *See, e.g.*, Regan Rpt., ¶44 (noting relevant FASB observations from "its original 1977 Basis for Conclusion upon issuance of relevant GAAP (*i.e.*, FAS 19)" while applying ASC 932).[5] Regan's reading of ASC 932 also tracks Anadarko's own applied accounting. During the relevant period, the Company expensed individual dry holes in its Coronado and Yucatan project areas while continuing to capitalize successful wells in the same areas, precisely the well-by-well assessment Regan describes. Regan Rpt., ¶¶54-56.

---

[5] There is a typo in Regan's report: the citation to FAS 19, ¶31 at Regan Rpt., ¶51 n.72 should be to FAS 19, ¶205.

Defendants' citation to ASC 105-10-05-2 does not support their argument that "there is no basis to consider superseded standards like FAS 19." MTE at 9. That provision in fact instructs that "[i]f the guidance for a transaction or event is not specified within a source of authoritative GAAP for that entity, an entity ***shall*** … consider nonauthoritative guidance from other sources." Rosenberg Decl., Ex. 113 at ASC 105-10-05-2. And to the extent Defendants' accounting expert, J. Richard Dietrich ("Dietrich"), opines that FAS 19 should not be considered here (*see* MTE at 9-10), that is "merely a battle of the experts" that "goes to the weight rather than the admissibility of [Regan's] testimony." *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2014 WL 3557345, at *12 (N.D. Tex. July 18, 2014). In fact, Dietrich himself refers to FAS 19 to explicate his interpretation of ASC 932. *See* Ex. 4 at 194:10-195:3 (explaining one of his opinions by reference to FAS 19 and noting "FAS 19 basis for conclusions were never GAAP, but they were sometimes used by readers to help understand what the then standard was saying"). Defendants' argument would require the exclusion of their own expert's opinions.

At most, an accounting expert's consideration of informative but nonauthoritative standards is fodder for cross-examination, not exclusion. Courts routinely reject arguments like Defendants', and they have often rejected such challenges to Regan's opinions in particular. *See, e.g.*, *Gansman v. Tanenbaum*, 2024 WL 694111, at *1 (N.D. Cal. Feb. 20, 2024) ("[T]he fact that Regan used [purportedly inapplicable] GAAP does not, in and of itself, mean that Regan failed to apply reliable principles and methods."); *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, 2015 WL 364796, at *4 (N.D. Cal. Jan. 27, 2015) ("[W]hen an expert like Regan is qualified to undertake the economic calculations described in his

report, his choices are potential, or perhaps substantial, topics for cross-examination rather than reasons to exclude his opinion under *Daubert*.”); *Novatel*, 2011 WL 5827198, at *5; *see also SEC v. Stansbury Holdings Corp.*, 2007 WL 1970531, at *2 (D. Colo. June 29, 2007) (rejecting *Daubert* argument that accounting expert “did not apply the relevant GAAP principles to the relevant facts”). Such arguments are “relat[ed] to the bases and sources of an expert’s opinion,” and accordingly “affect the weight to be assigned that opinion rather than its admissibility.” *Puga*, 922 F.3d at 294. Regan’s opinions are reliable.[6]

### D. Regan’s Accounting Materiality Opinions Are Admissible

Finally, Defendants contend that Regan’s accounting materiality opinions are “inadmissible legal conclusion[s].” MTE at 11-13. Courts consistently reject this argument because materiality under GAAP and SAB 99 is an accounting concept, distinct from the ultimate legal question of materiality under the securities laws, and it is properly the subject of expert testimony. As one court explained in admitting such testimony, “in a federal securities fraud case, jurors are not required to ‘accept the accountants’ evaluation’ about ‘whether a given fact was material.’ So Mr. [Regan’s] proposed testimony ***neither goes to any ultimate issue nor usurps the jury’s role***.” *United States v. Hatfield*, 2010 WL 1948236, at *2 (E.D.N.Y. May 12, 2010); *see also SEC v. Cuban*, 2013 WL 3809654, at *11 (N.D. Tex. July 23, 2013) (“The court concludes that any jury confusion arising from Dr. Sirri’s qualified use of the term ‘material’ can be addressed at trial, such as through cross-

---

[6] Defendants’ authority is inapposite. *See* MTE at 10 (citing *Ezra Charitable Tr. v. Tyco Int’l, Ltd.*, 466 F.3d 1, 12 (1st Cir. 2006) (no expert testimony at issue); *SEC v. Life Partners Holdings, Inc.*, 2013 WL 12076933, at *2 (W.D. Tex. Oct. 23, 2013) (precluding defense expert from opining that, hypothetically, defendant’s “‘proposed change in its revenue recognition policy … would have been GAAP compliant’”)).

examination or an appropriate instruction."); *In re Daou Sys., Inc., Sec. Litig.*, 2008 WL 11508932, at *3 (S.D. Cal. May 13, 2008) ("A trial on the issue of liability would hinge on accounting expert opinions regarding proper accounting methods and the materiality of the alleged misreporting …."); *SEC v. Todd*, 2006 WL 5201386, at *3 (S.D. Cal. Oct. 17, 2006) (accounting materiality "opinions do not constitute inadmissible legal conclusions").

Indeed, as the Fifth Circuit explains: "Even if [Regan's] testimony had some bearing on the ultimate issue, the Federal Rules of Evidence allow for such testimony." *Boh Bros.*, 731 F.3d at 459 n.14 ("[R]egarding expert testimony, 'an opinion is not objectionable just because it embraces an ultimate issue.'") (quoting Fed. R. Evid. 704). Regan's opinions on the materiality of the accounting misstatements will help the jury understand the evidence and Plaintiffs' claims, not tell them what result to reach.

Defendants admit that Regan's materiality opinions are appropriately grounded in relevant accounting standards. MTE at 11. They also concede that Regan may present his analysis of SAB 99's quantitative considerations, including the calculations showing that the misstatements exceeded the SEC's five percent benchmark. *Id.* at 13. The line Defendants propose to draw is unworkable: Regan may walk the jury through the quantitative and qualitative factors accountants use to assess materiality under SAB 99, yet he would be forbidden from stating what an accountant applying those factors would conclude. Rule 702 draws no such line, and Rule 704(a) forecloses it.

These accounting materiality opinions will not "mislead" or "confuse" the jury. *Id.* at 11-12. Rather, "[t]o the extent [Regan's] materiality analysis under GAAP … does not mirror a materiality analysis under the securities laws, those differences are ripe also for

cross examination and presentation of contrary evidence and argument." *Stansbury Holdings*, 2007 WL 1970531, at *3 (rejecting argument for exclusion of accounting materiality opinions where expert's "discussion of materiality is made in relation to GAAP"). Regan's accounting materiality opinions are admissible.[7]

## VII. CONCLUSION

Regan's challenged opinions are relevant because they will help the jury understand the complex accounting machinations Defendants used to conceal Shen-3's adverse results from investors. They are reliable because they are appropriately based on relevant GAAP standards and related accounting authorities. And they do not invade the province of the jury because they discuss the materiality of the accounting errors Regan identifies in the context of GAAP, rather than telling the jury what result to reach with respect to an ultimate issue. Defendants' motion should be denied in its entirety.

DATED: July 14, 2026

Respectfully submitted,

s/ T. AlexB. Folkerth

T. ALEX B. FOLKERTH

[7] Defendants' authority is, again, inapposite. *See, e.g.*, MTE at 12 (citing *SEC v. Goldstone*, 2016 WL 3135651, at *42 (D.N.M. May 10, 2016) (excluding expert testimony that the very disclosures at issue "'contained material misstatements'" because the "parties' experts may not simply declare certain representations material"); *Feinberg v. Katz*, 2007 WL 4562930, at *2, *10 (S.D.N.Y. Dec. 21, 2007) (excluding opinions where proposed expert had "no explanation" or accounting basis for his materiality opinions and instead "merely [told] the jury what decision to reach")). Defendants' remaining cases cite generic legal principles or have nothing to do with Rule 702 and *Daubert*.

ROBBINS GELLER RUDMAN & DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
LUKE O. BROOKS
HILLARY B. STAKEM
NICOLE Q. GILLILAND
T. ALEX B. FOLKERTH
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Class Counsel

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4,711 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED: July 14, 2026

s/ T. Alex B. Folkerth
T. ALEX B. FOLKERTH

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 14th day of July, 2026.

s/ T. Alex B. Folkerth
T. ALEX B. FOLKERTH