# EXHIBIT 1

[ EMBED PAINTSHOPPRO ]

Inter-Office Correspondence

**To:** Distribution

**From:** Internal Controls

**Subject:** Suspended Well Controls Assessment

**Date:** November 10, 2016

## ***Purpose***

The purpose of this memorandum is to evaluate the impact of accounting for suspended wells on Anadarko Petroleum Corporation's (the Company or Anadarko) assessment of the effectiveness of internal control over financial reporting.

## ***Background***

The Walker Ridge 52 #2 well (Shenandoah-3), a well located in the Gulf of Mexico, was drilled to TD and suspended in Q4 2014. Property Accounting reached the conclusion in Q4 2014 to suspend the wells costs, despite the fact that the sands encountered were non-hydrocarbon bearing, based on understanding from conversations with Exploration, and a subsequent email dated December 17, 2014, that the well projected the oil-water contact and resulted in higher confidence in, and thus an increase to, the estimated resources for the Shenandoah project. Property Accounting documented its conclusion to continue capitalization of the well as a suspended well in a memo drafted December 29, 2014. The memo noted that pressure data collected in this appraisal well could be used to project an oil-water contact between the discovery and appraisal well and since the projected oil-water contact was close to the appraisal well, the data suggested a higher confidence (and therefore increase) in the resources of the field. This was considered a successful appraisal well to determine the extent of the reservoir. The memo also noted that while hydrocarbons were not found in this wellbore, geologic, fluid and pressure data obtained from the well raised the confidence level of the resources of the field and contributed to the ongoing development of the Shenandoah project. Therefore, it was determined to be appropriate to continue capitalization of this well cost as suspended well cost, pending the determination of proved reserves for the Shenandoah project. It was further noted in the same memo, as well as in notes retained in conjunction with the December 17, 2014 quarterly Gulf of Mexico Exploration meeting with Property Accounting, that management was also evaluating future utility of the wellbore as an injection well for the field, or as a development well to sidetrack into oil-bearing sands. However, Property Accounting relied on the presumed increase in the resource estimates as the justification for continued capitalization of the Shenandoah-3 well costs in reaching its accounting conclusions in Q4 2014. No new information came to the attention of Property Accounting during subsequent quarterly discussions with Exploration that indicated the resource estimates decreased following the drilling of the Shenandoah-3 well. Once the well was capitalized on this basis of presumed increase in resource estimates at December 31, 2014, the Property Accounting group monitored the status of the Shenandoah project in its entirety against the

sufficient progress criteria of ASC 932-360-35-19, without revisiting potential future utility of the wellbore.

During the third quarter of 2016, there was a review by the accounting department of the justification for suspension of significant Deepwater and International exploratory wells. The review determined that the Shenandoah-3 well did not increase the overall resource estimate of the Shenandoah project, nor was the well a suitable candidate for a sidetrack producer. The review found that the former Chief Accounting Officer (CAO) relied upon the injection well capability of Shenandoah-3 as the reason for suspending the well costs at year-end 2014. This was not communicated to Property Accounting. Accordingly, Property Accounting was not aware that ongoing monitoring of the status of evaluation as an injection well was necessary. Property Accounting's analysis was primarily predicated on their understanding that the well results increased the overall resource estimate; however, we now understand that there was a misunderstanding in the communication of the well results between Exploration and Property Accounting.

In Anadarko's third quarter 2016 Operations report, the Company announced that it plans to develop the Shenandoah field using a semi-submersible platform if a final investment decision is reached. The semi-submersible platform is being designed for the capability of handling the equipment necessary for water injection. Further, during the third quarter of 2016, development studies of water injection scenarios for the Shenandoah project were substantially advanced based on planning and modeling of optimal locations for injection wells. These subsurface water flood scenarios currently show that the optimal locations of water injection wells are on either side of the Shenandoah-3 well location, but not the specific location of the Shenandoah-3 well. In addition, the company's water injection models do not incorporate a possible east-west trending fault which may inhibit the use of the Shenandoah-3 as a water injector. With the latest results of the ongoing subsurface waterflood studies, it was determined in Q3 2016 that it was no longer reasonably possible for the Shenandoah-3 wellbore to be part of the Shenandoah development plan. In addition, given that the wellbore is not in the optimal location, the company will not invest the resources to undertake the multi-month study necessary to determine whether the well meets the mechanical specifications for water injection utilization. At September 30, 2016, it is no longer reasonably possible to justify continued capitalization given the low probability of the wellbore's future utilization, and therefore, the suspended well cost of $64MM was taken to dry hole expense in the third quarter.

***Description of the Control and Root Cause***

In 2014, the risk of suspended well costs remaining suspended but no longer qualifying for continued capitalization was addressed by a control that Property Accounting would meet with Operations and Exploration each quarter to discuss the status of current period exploratory wells. In addition, a schedule of suspended wells (QK-7D) was circulated through Operations and Exploration each quarter and was signed by management up through the Executive Vice President over International and Deepwater Exploration prior to filing the 10-Q/10-K.

In almost all circumstances, once the initial determination to suspend an exploratory well has been made based on the evidence provided by the well, the future quarterly discussion with Operations and Exploration about that project would focus on an evaluation against the sufficient progress criteria in ASC 932-360-35-19.

This control was deficient from first quarter 2015 through the second quarter of 2016 because Property Accounting did not follow-up each quarter with Operations or Exploration on the evaluation of the future utility of the Shenandoah-3 well as an injection well in conjunction with their ongoing quarterly discussions regarding the status of the Shenandoah project. The root cause of the control deficiency is the lack of communication from the former CAO back to the Property Accounting team.

The established process for evaluating whether wells should be initially suspended, and for the ongoing monitoring against the sufficient progress criteria, involved members of the Property Accounting group up through the Director of Expenditure Accounting. The former CAO was not involved in that process on a regular basis; however, there were two instances where the former CAO was directly involved in an evaluation of whether a well should be suspended. The first instance was the Tubarao #2 well in 2013 which did not find hydrocarbons, but was suspended based on substantive positive evidence of the economic and operational viability of the project, and was the last well in the appraisal program that gave the Company the confidence to submit a plan of development to the government of Mozambique. The Shenandoah-3 was the second instance in which the CAO was involved and made the decision to suspend the well. This was the only instance where there was a failure to communicate back to Property Accounting the predominant justification from the CAO's perspective for suspension of an exploratory well cost that differed from what Property Accounting believed was the predominant justification for the suspension.

We have determined that this communication oversight occurred during the year-end financial reporting process for 2014, and prior to filing of the 2014 financial statements, and impacted the operation of the control throughout 2015 and 2016.

In the third quarter of 2016, in addition to the quarterly meetings, an enhancement was added where an analysis of the justification for suspension of significant GOM and International projects is prepared by Accounting and is circulated with the QK-7D, so that there is a central documented understanding of the justification for suspension across Operations, Exploration and Accounting.

***Consideration of Other Deficiencies***

The evaluation of this deficiency has not identified other deficiencies. We considered whether other situations could exist where a decision made by the CAO was not communicated to the team responsible for the ongoing accounting and found no evidence of other instances. The Company has controls in place over significant and unusual transactions, and quarterly meetings to discuss significant accounting matters each quarter, and these controls were tested in 2014 and 2015 and concluded to be operating effectively. We believe this was an isolated incident of unintentional failure to communicate on the part of the former CAO, who consistently demonstrated and encouraged open communication during her tenure with the Company, and is no way indicative of a broader issue of insufficient communication on significant accounting decisions. We also considered the fact that the Shenandoah-3 well was not the predominant accounting matter under consideration at year-end 2014 due to the precipitous decline in oil prices in late 2014, and the relative quantitative immateriality of the cost of the Shenandoah-3 well.

***Applicable Guidance Related to Deficiencies in Internal Control***

We considered PCAOB Auditing Standard No. 5, *An Audit of Internal Control Over Financial Reporting That Is Integrated with an Audit of Financial Statements* (PCAOB AS No. 5), that establishes standards and provides guidance for evaluating identified deficiencies and on communicating matters related to a company's internal control over financial reporting in our determination of the severity of the deficiency. The guidance related to the determination of the significance of the control failure is as follows:

A deficiency in internal control over financial reporting exists when the design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent or detect misstatements on a timely basis.

- A deficiency in design exists when (a) a control necessary to meet the control objective is missing or (b) an existing control is not properly designed so that, even if the control operates as designed, the control objective would not be met.
- A deficiency in operation exists when a properly designed control does not operate as designed, or when the person performing the control does not possess the necessary authority or competence to perform the control effectively.

A significant deficiency is a deficiency, or a combination of deficiencies, in internal control over financial reporting that is less severe than a material weakness, yet important enough to merit attention by those responsible for oversight of the company's financial reporting.

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis.

> Note: There is a reasonable possibility of an event, as used in this standard, when the likelihood of the event is either "reasonably possible" or "probable," as those terms are used in Financial Accounting Standards Board Statement No. 5, Accounting for Contingencies ("FAS 5").

An evaluation of the severity of each deficiency, individually or in combination, should be performed to determine whether the deficiency is a significant deficiency or a material weakness. The severity of a deficiency does not depend on whether a misstatement actually occurred.

***Evaluation of Severity***

Anadarko reported suspended well costs of $1.1 billion at December 31, 2015 of which $1 billion was related to 13 projects in the Deepwater and International. Other than the Shenandoah-3 well, all other Deepwater and International suspended wells at December 31, 2015 were capitalized based on the predominant fact of the well having found a sufficient quantity of reserves to justify its completion as a producing well. The former CAO was involved in and made the decision to suspend a well in only two instances, and the Shenandoah-3 was the only well where the

communication failure occurred. Given the nature and complexity of the Shenandoah project, the Shenandoah-3 well cost is on the high end of suspended well cost for an individual well. We believe it would be rare for an individual suspended well cost to exceed $100MM and therefore, believe the maximum potential exposure to the control deficiency is limited to $100MM, noting that the actual amount exposed to the deficiency is the $64MM suspended balance of the Shenandoah-3 well.

*Qualitative Assessment of Severity*

We considered the indicators of a material weakness in internal control as noted in PCAOB AS No. 5. The indicators include

- Identification of fraud, whether or not material on the part of senior management
  - Fraud was not identified on the part of senior management.
- Restatement of previously issued financial statements to reflect the correction of a material misstatement
  - No significant prior period error resulted from this deficiency and the prior period financial statements will not be restated.
- Identification by the auditor of a material misstatement of the financial statements in the current period in circumstances that indicate that the misstatement would not have been detected by the company's internal control over financial reporting
  - This issue was identified in a review of the justification for suspension of wells in Deepwater and International in the third quarter of 2016 and was not identified by the external auditors.
- Ineffective oversight of the company's financial reporting and internal control by the company's audit committee
  - Given the relative quantitative immateriality of the Shenandoah-3 well cost to the total suspended well balance, we do not believe that this issue would have risen to the level of the audit committee.

***Conclusion***

We considered all relevant quantitative and qualitative factors when evaluating the severity of the identified deficiency. This deficiency arose in the year-end 2014 financial reporting process, and was perpetuated through 2015 and 2016 in that the control was operating as designed but the Property Accounting group was unaware that they should be following up on the potential future utility of the wellbore because they were unaware of the predominant justification for capitalization. In addition to the quarterly discussions that are already held as part of this process, in order to enhance the controls around suspended well accounting and mitigate the risk of this issue occurring in the future, the Company has enhanced the documentation that supports the QK-7D control. Previously, a schedule of suspended wells (QK-7D) was circulated through Operations and Exploration each quarter and was signed by management up through the Executive Vice President over International and Deepwater Exploration prior to filing the 10-Q/10-K. Beginning in the third quarter of 2016, an analysis of the justification for suspension of

significant Deepwater and International projects is prepared by Accounting and is circulated with the QK-7D, so that there is a central documented understanding of the justification for suspension across Operations, Exploration and Accounting. There are no other deficiencies with which it should be aggregated. Accordingly, we have determined that the deficiency does not rise to the level of a significant deficiency or material weakness in internal control over financial reporting.

**Distribution**
Chris Champion
Louis Williams
Jennifer Edwards
Amanda McMillian
KPMG