# EXHIBIT 2

[ EMBED PaintShopPro ]
Inter-Office Correspondence

November 10, 2016

TO: Distribution

FROM: Property Accounting

SUBJECT: Q3 2016 – Shenandoah-3 Suspended Well Accounting Analysis

---

**Background**

In accordance with Accounting Bulletin 20.5, *Well Classification and Disposition of Suspended Well Costs*, as part of each quarter-end close, Property Accounting reviews the status of all exploratory wells in progress to assess whether the well costs are properly recorded.

Drilling of the second Shenandoah appraisal well, the Walker Ridge 52#2 (Shenandoah-3), concluded in Q4 2014. The Shenandoah-3 well found approximately 50% (1,470 feet) more of the same well-developed reservoir sands 1,500 feet down-dip and 2.3 miles east of the Shenandoah-2 well, which encountered more than 1,000 feet of net oil pay in excellent quality, Lower Tertiary-aged sands. The Shenandoah-3 well confirmed the sand depositional environment, lateral sand continuity, reservoir qualities and down-dip thickening. The well also enabled the projection of oil-water contact based on pressure data, and reduced the uncertainty of the resource range.

The following analysis documents the original analysis, the current quarter review of the justification for original suspension, and the changes in conditions that occurred during Q3 2016 which resulted in the recognition of dry hole expense on Shenandoah-3.

**Original Accounting Analysis**

Property Accounting reached the conclusion in Q4 2014 to suspend the well costs, despite the fact that the sands encountered were non-hydrocarbon bearing, based on understanding from conversations with Exploration, and a subsequent email dated December 17, 2014, that the well projected the oil-water contact and resulted in higher confidence in, and thus an increase to, the estimated resources for the Shenandoah project.

Per ASC 932-360-25-18:

> *Exploratory stratigraphic test wells are accounted for in a manner similar to an exploratory well drilled in an area requiring a major capital expenditures before production could begin (i.e. paragraph 932-360-25-10). The costs of drilling the exploratory-type stratigraphic test well are capitalized pending determination of whether proved reserves are found, subject to the condition that those costs shall not continue to be carried as assets if the enterprise is not making sufficient progress assessing the reserves and the economic and operating viability of the project or if the quantity of reserves found would not justify completion of the well for production had it not been simply a stratigraphic test well.*

Property Accounting documented its conclusion to continue capitalization of the well as a suspended well in a memo drafted December 29, 2014. The memo noted that pressure data collected in this appraisal well could be used to project an oil-water contact between the discovery and appraisal well and since the projected oil-water contact was close to the appraisal well, the data suggested a higher confidence (and therefore increase) in the resources of the field. This was considered a successful appraisal well to determine the extent of the reservoir. The memo also noted that while hydrocarbons were not found in this wellbore, geologic, fluid and pressure data obtained from the well raised the confidence level of the resources of the field and contributed to the ongoing development of the Shenandoah project. Therefore, it was determined to be appropriate to continue capitalization of this well cost as suspended well cost,

pending the determination of proved reserves for the Shenandoah project. It was further noted in the same memo, as well as in notes retained in conjunction with the December 17, 2014 quarterly Gulf of Mexico Exploration meeting with Property Accounting, that management was also evaluating future utility of the wellbore as an injection well for the field, or as a development well to sidetrack into oil-bearing sands. However, Property Accounting relied on the presumed increase in the resource estimates as the justification for continued capitalization of the Shenandoah-3 well costs in reaching its accounting conclusions in Q4 2014. No new information came to the attention of Property Accounting during subsequent quarterly discussions with Exploration that indicated the resource estimates decreased following the drilling of the Shenandoah-3 well. Once the well was capitalized on this basis of presumed increase in resource estimates at December 31, 2014, the Property Accounting group monitored the status of the Shenandoah project in its entirety against the sufficient progress criteria of ASC 932-360-35-19, without revisiting the potential future utility of the wellbore until the third quarter of 2016.

**Current Quarter Review of Justification for Suspension**

During the third quarter of 2016, a review by the accounting department of the Shenandoah-3 capitalized costs determined the well did not increase the overall resource estimate of the Shenandoah project, nor was the well a suitable candidate for a sidetrack producer. The review found that the former Chief Accounting Officer (CAO) relied upon the injection well capability of Shenandoah-3 as the predominant reason for suspending the well costs at year-end 2014.

Since the basis for capitalization at year-end 2014 as relied upon by the CAO, i.e. based on its potential future utility as an injection well, differs from the predominant rationale relied upon to support Property Accounting's original analysis, we considered whether it was appropriate that the well was suspended at December 31, 2014 based solely on its potential future utility.

First, we considered whether it was reasonably possible, at year-end 2014, that the Shenandoah-3 well could have had potential future utility as an injection well in the Shenandoah project:

- A February 18, 2014 presentation on the economics of a potential two spar development scenario that contemplates the need for water injection wells.
- The Vice President of Deepwater and International Exploration stated in an email on February 12, 2015 communication that the well is potentially usable as future water injection well.
- On January 23, 2015, email correspondence occurred between the former CAO and the Marathon CAO stating that the basis for suspending the well was related to assessing the future utility of the wellbore as a possible injection well for the field, or as a development well to sidetrack into oil-bearing sands.

Therefore, we conclude that it was reasonably possible, based on facts and circumstances available prior to filing of the 2014 financial statements, that the Shenandoah-3 well could have had potential future development utility as an injection well in the Shenandoah project.

Next, given that the suspended well costs for Shenadoah-3 at December 31, 2014 would have represented costs associated with potential future water injection in the development phase of a project for which final investment decision (FID) had not been made, we considered whether it was appropriate to capitalize development costs in advance of the development stage of a project.

Per ASC 932-360-25-14:

> *Development costs shall be capitalized as part of the cost of an entity's wells and related equipment and facilities. Thus, all costs incurred to drill and equip development wells, development-type stratigraphic test wells, and service wells are development costs and shall be capitalized, whether the well is successful or unsuccessful. Costs of drilling those wells and costs of constructing equipment and facilities shall be included in the entity's uncompleted wells, equipment, and facilities until drilling or construction is completed.*

Service wells are defined in the ASC Glossary as:

> *A service well is a well drilled or completed for the purpose of supporting production in an existing field. Wells in this class are drilled for the following specific purposes: gas injection (natural gas,*

*propane, butane, or flue gas), water injection, steam injection, air injection, salt-water disposal, water supply for injection, observation, or injection for in-situ combustion.*

At year-end 2014, as addressed above, it was reasonably possible for the Shenandoah-3 well to have potential future use as a water injection well in the development of the Shenandoah project. A water injection well meets the definition of a service well which would support production in the Shenandoah field. The Shenandoah-3 well was drilled as an exploratory stratigraphic test well. It was not drilled with the original intention of use as a water injection well. Therefore, we do not consider it a development cost that should be capitalized, *whether the well is successful or unsuccessful*, under ASC 932-360-25-14. However, we do believe that given that the well was unsuccessful under ASC 932-360-25-18, it is appropriate to consider whether it is reasonably possible that the wellbore has future utility in the development phase. If it is not reasonably possible that the well has future utility, the costs should be expensed. Anadarko believes, in certain situations, it is appropriate to suspend development costs prior to FID. For instance, the Shenandoah-5 and Shenandoah-6 appraisal wells have been or will be drilled, prior to project sanction, with additional capital expenditures to allow the wells the capability of being producers. Therefore, while the project is still in the appraisal phase, and the costs are considered exploratory costs at the time incurred, we believe it is appropriate and consistent with successful efforts accounting that since such costs would provide future benefit in the actual development stage of the project, it is appropriate to capitalize such costs pending FID, assuming it is reasonably possible the well has future utility. Given the large resource range of the Shenandoah project, even at year-end 2014 after the Shenandoah-3 well was drilled, it was a reasonable judgment to conclude that it was reasonably possible the Shenandoah project would proceed to FID and; accordingly, appropriate to capitalize the Shenandoah-3 well cost until its future utility as a water injection well in the project development was determined. Similarly, information regarding the project development obtained through Q3 2016, including that the Shenandoah-3 well was in the proximity of the currently modeled injection well locations, provided confirming and corroborating evidence that it was reasonable to conclude in the fourth quarter of 2014 that the Shenandoah-3 well could be used in any future development of the field.

**Current Quarter Analysis of Potential Use as a Water Injection Well**

In Anadarko's third quarter 2016 Operations report, the Company announced that it plans to develop the Shenandoah field using a semi-submersible platform if a final investment decision is reached. The semi-submersible platform is being designed for the capability of handling the equipment necessary for water injection. Further, during the third quarter of 2016, development studies of water injection scenarios for the Shenandoah project were substantially advanced based on planning and modeling of optimal locations for injection wells. These subsurface water flood scenarios currently show that the optimal locations of water injection wells are on either side of the Shenandoah-3 well location, but not the specific location of the Shenandoah-3 well. In addition, the company's water injection models do not incorporate a possible east-west trending fault which may inhibit the use of the Shenandoah-3 as a water injector. With the latest results of the ongoing subsurface water flood studies, it was determined in Q3 2016 that it was no longer reasonably possible for the Shenandoah-3 wellbore to be part of the Shenandoah development plan. In addition, given that the wellbore is not in the optimal location, the company will not invest the resources to undertake the multi-month study necessary to determine whether the well meets the mechanical specifications for water injection utilization. Given this determination was made within 21 months from the Shenandoah-3 completion date, the outcome of the studies appear to have been made within a reasonable time frame given the size and scope of the Shenandoah project.

**Conclusion**

Based on the above discussion and analysis, the conclusion made by the former CAO to suspend the Shenandoah-3 well costs at December 31, 2014 given the wellbore's potential utilization for water injection was an appropriate and reasonable application of accounting literature. At September 30, 2016, it is no longer reasonably possible to justify continued capitalization given the low probability of the wellbore's future utilization, and therefore, the suspended well cost of $64MM was taken to dry hole expense in the third quarter.

In conjunction with the review performed in Q3 2016, it was determined that approximately $7MM of the $64MM well costs were attributed to a bypass well used for coring activities, and should have been expensed in Q4 2014 as the coring activities bore no future utility. Well costs associated with the bypass well are considered out-of-period and have been reported to Financial Accounting and Reporting for materiality consideration.

**Distribution**
Chris Champion
Louis Williams
Jennifer Edwards
Amanda McMillian
KPMG



CONFIDENTIAL APC-01720567