**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE THE REBUTTAL REPORT OF KEVIN J. MURPHY**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ........ 1

LEGAL STANDARD ........ 2

STATEMENT OF FACTS ........ 3

STATEMENT OF ISSUES ........ 5

NATURE AND STAGE OF THE PROCEEDINGS ........ 6

ARGUMENT ........ 7

I. MURPHY'S TIMELY DISCLOSED OPINIONS APPROPRIATELY REBUT PLAINTIFFS' ALLEGATIONS OF SCIENTER ........ 7

A. Dr. Murphy's Report Was Timely Disclosed ........ 7

B. Dr. Murphy's Opinions Rebut Allegations of Scienter Based on Individual Defendants' Compensation ........ 10

II. PLAINTIFFS' UNTIMELY REQUEST FOR A REBUTTAL REPORT SHOULD BE DENIED ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Broad v. Rockwell Int'l Corp.*,
642 F.2d 929 (5th Cir. 1981) .......... 5, 7

*Carroll v. Allstate Fire & Cas. Ins. Co.*,
2013 WL 12426586 (D. Colo. Oct. 4, 2013) .......... 10

*Everest Reinsurance Co. v. Cox*,
350 F.R.D. 541 (N.D. Tex. 2025) .......... 13

*Garris v. Midea USA, Inc.*,
2014 WL 12719497 (E.D. La. Mar. 6, 2014) .......... 10

*H & A Land Corp. v. City of Kennedale*,
2005 WL 8159199 (N.D. Tex. Mar. 18, 2005) .......... 2

*Hanover Ins. Co. v. United States*,
137 Fed. Cl. 479 (2018) .......... 13

*In re: Snap Inc. Sec. Litig.*,
2018 WL 2972528 (C.D. Cal. June 7, 2018) .......... 6

*In re: Taxotere (Docetaxel) Prods. Liab. Litig.*,
26 F.4th 256 (5th Cir. 2022) .......... 10

*Lockett v. Doyle Dickerson Terrazzo, Inc.*,
2021 WL 6066697 (E.D. La. Nov. 3, 2021) .......... 2

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) .......... 7

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*,
315 F.3d 533 (5th Cir. 2003) .......... 2

*United States v. Delk*,
586 F.2d 513 (5th Cir. 1978) .......... 10

*Vu v. McNeil-PPC, Inc.*,
2010 WL 2179882 (C.D. Cal. May 7, 2020) .......... 10

**Rules**

Fed. R. Civ. P. 16(b)(4) .......... 2

Fed. R. Civ. P. 26(a)(2) .......... *passim*

Fed. R. Civ. P. 37(c)(1) .......... 12, 13

## PRELIMINARY STATEMENT

Throughout this litigation, Plaintiffs have alleged that the Individual Defendants[1] acted with scienter—an issue as to which Plaintiffs bear the burden of proof—because their executive compensation served as a financial motivation to engage in fraud. Dr. Kevin J. Murphy rebuts these allegations of scienter, opining that the alleged misstatements did not impact management's bonuses and that the Individual Defendants did not financially benefit from any purported scheme to inflate the value of the Shenandoah project.

Plaintiffs wrongly contend that Dr. Murphy's report was untimely disclosed and, therefore, that his testimony should be excluded. Plaintiffs assert that Dr. Murphy's report should have been disclosed on November 9, 2022—the deadline for parties "with the burden of proof on an issue [to] designate expert witnesses in writing and provide the required report." (Dkt. 142 (the "Scheduling Order").) But Plaintiffs do not—because they cannot—claim that scienter is an issue as to which Defendants bear the burden of proof. Dr. Murphy's report was timely disclosed and Plaintiffs' argument disregards the plain text of the October 11, 2022 scheduling order. (*Id.*)

Plaintiffs' alternative argument that they should be permitted to present expert testimony to rebut Dr. Murphy's opinions is also unavailing. It is inherent in the Scheduling Order that the parties would not be afforded the opportunity to present sur-rebuttal reports for issues on which they bear the burden of proof. Plaintiffs had the

[1] The Individual Defendants are R.A. Walker, Robert G. Gwin, Robert P. Daniels, and Ernest A. Leyendecker, III.

opportunity to file an affirmative expert report to support their theory of scienter. In fact, their expert D. Paul Regan opined on a connection between executive bonuses and the alleged delay in expensing suspended exploratory well costs. Plaintiffs later attempted to "withdraw" those expert opinions. Plaintiffs should not now be given another opportunity to file another expert report on an issue that (1) Regan admittedly addressed in his report and (2) on which Plaintiffs bear the burden of proof.

Plaintiffs' motion should be denied.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(D) provides that expert disclosures shall be made at "the times and in the sequence that the court orders." Courts look to the plain text of the scheduling order when determining whether an expert was timely disclosed. *See H & A Land Corp. v. City of Kennedale*, 2005 WL 8159199, at *2 (N.D. Tex. Mar. 18, 2005). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The moving party's failure to timely move to amend the scheduling order may weigh against any such request. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003).

Under Rule 26(a)(2)(D), if there is no operative scheduling order, initial expert testimony is due at least 90 days before the trial date. *See Lockett v. Doyle Dickerson Terrazzo, Inc.*, 2021 WL 6066697, at *2 (E.D. La. Nov. 3, 2021) (citing Fed. R. Civ. P. 26(a)(2)(D)). Rebuttal testimony is then due within 30 days of the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii).

## STATEMENT OF FACTS

Plaintiffs do not question Dr. Murphy's qualifications or his methods, nor could they. Dr. Murphy is a highly respected executive compensation expert. After receiving a Ph.D. in economics from the University of Chicago in 1984, he began his teaching career, which included a teaching position at the Harvard Business School. (Dkt. 307-1, Ex. 1 (Expert Report of Kevin J. Murphy ("Murphy Rpt.")) at 37.) Dr. Murphy is currently the Kenneth L. Trefftzs Chair in Finance at the University of Southern California ("USC") Marshall School of Business, where he has been a professor since 1995 and has taught courses on compensation, incentives, and corporate governance. (*Id.* at 37, 39.) He holds a joint appointment in the USC School of Law as a Professor of Business, Economics, and Law. (*Id.* at 37.) Dr. Murphy is a recognized expert on executive compensation and has written and published extensively on issues related to executive compensation. (*Id.* at 38.) Dr. Murphy's expertise has been relied on in several cases around the country, including securities lawsuits. (*Id.* at 76.) He is undoubtedly qualified.

Dr. Murphy's expert opinions directly rebut fact and expert evidence Plaintiffs seek to rely on to prove scienter. In the Amended Complaint, Plaintiffs allege that the Individual Defendants received wide-ranging compensation benefits, including bonuses and "golden parachute" payments, as evidence that they were motivated to "conceal the truth" regarding Shenandoah's viability. (*See, e.g.*, Am. Compl. ¶ 9 ("While still concealing their scheme, in April and May 2019, Defendants arranged for what turned out to be hundreds of millions in 'golden parachute' payoffs to Anadarko executives as part of an acquisition . . . ."), ¶ 150 ("Defendants were motivated to conceal the truth for a variety of reasons, including . . .

that any revelation of their scheme would have likely made Anadarko unmarketable to potential acquirers or at least cost them their jobs—either of which would have cost them over $100 million in golden parachute payments.").)

Plaintiffs have pursued this theory throughout discovery. They questioned several witnesses on bonuses and compensation, seeking testimony on how Anadarko determined bonuses and whether bonuses were tied to resource estimates. (*See* Ex. 5[2] (Dep. of Al Walker ("Walker Tr.") 51:2-62:10 (discussing Al Walker's compensation, bonus and benefits, including "dollar value of total shares owned"); Ex. 6 (Dep. of Ernest A. Leyendecker III ("Leyendecker Tr.") 47:2-3 ("Q. Okay. And this bonus structure took into account resource projections, didn't it?").) Plaintiffs questioned each of the Individual Defendants about their own compensation and questioned other fact witnesses about Anadarko's compensation and bonus structure. (*See, e.g.*, Ex. 7 (Dep. of David Blakeley ("Blakeley Tr.") 134:9-135:11 ("Q. And what's the purpose of the resource target? A. It's a way of measuring our performance as an exploration organization. So as an organization, we want to make sure that we're tracking how well we're performing, and resource targets are part of that performance tracking. Q. Is compensation tied to resource targets at all? … A. It is tied indirectly, I'd say.").) Plaintiffs' witness Lea Frye has also claimed that the Individual Defendants were motivated by bonus packages. (*See* Dkt. 322-22, Ex. 40 (AAC-00000002) at -018 (alleging "there was a direct relationship between the

[2] Unless otherwise noted, citations to Exhibits are to the Exhibits to the Declaration of Kevin J. Orsini in Support of Defendants' Oppositions to Plaintiffs' Motions to Exclude filed contemporaneously with this motion.

exaggerated size of the Shenandoah resource and the compensation of those involved").) Plaintiffs also offered the expert testimony of D. Paul Regan, who opined on the alleged connection between Anadarko's treatment of Shen-3 and management's compensation. *See* (Dkt. 307-1, Ex. 3 (Expert Report of D. Paul Regan ("Regan Rpt.")) at ¶ 86.) Plaintiffs seek to use Anadarko's compensation practices to prove scienter—an issue as to which Plaintiffs bear the burden of proof. *See Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir. 1981).

Dr. Murphy's expert opinions rebut Plaintiffs' executive compensation allegations by explaining that the Individual Defendants did not financially benefit from the alleged scheme. For example, Dr. Murphy opines that the alleged misstatements did not contribute to artificially inflated "golden parachute" payments in connection with Anadarko's 2019 merger with Occidental Petroleum Corporation; to the contrary, Dr. Murphy estimates that, absent the alleged inflation, the Individual Defendants would have been paid *more* than they actually were. (Murphy Rpt. at 36.) Dr. Murphy also rebuts an opinion offered by Plaintiffs' accounting expert, D. Paul Regan, that the alleged failure to disclose a reduction in resource range after Shen-3 was a material misstatement because management's bonuses would have been impacted by such resource range. (*Id.* at 31-35.)

## STATEMENT OF ISSUES

1. Whether the Court should exclude the testimony of Defendants' proffered expert Dr. Kevin J. Murphy as untimely even though it was submitted in accordance with this Court's Scheduling Order.

2. Whether, in the alternative, the Court should grant Plaintiffs the ability to submit a sur-rebuttal expert report to Dr. Murphy's report.

**NATURE AND STAGE OF THE PROCEEDINGS**

In its Scheduling Order, the Court directed the parties "with the burden of proof on an issue [to] designate expert witnesses in writing and provide the required report under Rule 26(a)(2)" by November 9, 2022. (Dkt. 142.) The Court also ordered "Rebuttal Expert Designations," directing "[t]he opposing party [to] designate expert witnesses in writing and provide the required report under Rule 26(a)(2)" by January 25, 2023. (*Id.*)

Pursuant to the Scheduling Order, on November 9, 2022, Defendants submitted one expert report in support of Defendants' truth-on-the-market defense, an affirmative defense for which some courts consider the Defendants to bear the burden of proof. *See, e.g.*, *In re: Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *7 (C.D. Cal. June 7, 2018) ("'truth-on-the-market' is an affirmative defense") (internal citations omitted). On January 25, 2023, Defendants then submitted expert reports on issues for which they do not bear the burden of proof, including Dr. Murphy's report, which rebutted Plaintiffs' allegations of a financial motivation to defraud investors (*i.e.*, scienter) and also rebutted certain compensation-related opinions offered by Plaintiffs' expert Regan.

On March 12, 2023, Plaintiffs advised Defendants that they were "withdrawing" the compensation-related paragraphs from Regan's report, and simultaneously requested that Defendants withdraw Dr. Murphy's entire expert report. Defendants responded that they would not withdraw Dr. Murphy's entire report, and reminded Plaintiffs that "Murphy's report goes to scienter, on which Defendants do not have the burden of proof," and "[a]ccordingly, his report was timely filed on January 25, 2023, independent of Regan's

report, and need not be withdrawn on the basis that [Plaintiffs] have partially withdrawn Regan's report." (Ex. 8.)

The parties originally filed *Daubert* motions on March 16, 2023. At that time, Plaintiffs filed a motion to exclude Dr. Murphy that, among other things, requested the opportunity to submit expert testimony to rebut Murphy's report. (Dkt. 185.) That motion was administratively terminated by the Court on January 10, 2024. (Dkt. 216.) Plaintiffs have not pursued their request for a rebuttal expert report until the filing of this motion on June 1, 2026.

## ARGUMENT

### I. MURPHY'S TIMELY DISCLOSED OPINIONS APPROPRIATELY REBUT PLAINTIFFS' ALLEGATIONS OF SCIENTER.

#### A. Dr. Murphy's Report Was Timely Disclosed.

Dr. Murphy's report was timely disclosed and Plaintiffs' motion should be denied. Plaintiffs' interpretation of the Scheduling Order as requiring Defendants "to disclose affirmative reports by November 9, 2022" ignores its plain language. (Pls. Mot. at 1.) As detailed above, the Scheduling Order required the parties "*with the burden of proof* on an issue [to] designate expert witnesses in writing and provide the required report under Rule 26(a)(2)" by November 9, 2022. (Dkt. 142 (emphasis added).)

Plaintiffs bear the burden of proof on the entire subject matter of Dr. Murphy's expert opinions, which all go to scienter. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (explaining that a plaintiff alleging fraud under Section 10(b) bears the burden of establishing scienter); *Broad*, 642 F.2d at 961 (same). Plaintiffs do not even

attempt to argue otherwise. Nor do they dispute that Dr. Murphy's opinions relate entirely to their scienter theory. (*See, e.g.*, Am. Compl. ¶ 5(s), ¶ 9, ¶ 150, ¶ 156.) Because Defendants do not bear the burden of proof as to the subject matter of Dr. Murphy's report, they were not required to submit his report on November 9, 2022, under the plain language of the Scheduling Order.

Plaintiffs now insist that the second, January 25, 2023, deadline was only for reports that explicitly rebut specific sections of their expert reports. (*See* Pls. Mot. at 9.) That makes no sense. Plaintiffs bear the burden of proof on the elements of their claims, including scienter. Their decision not to disclose an expert to support their theory of scienter cannot deprive Defendants of the opportunity to put in their own expert testimony on scienter. Indeed, Plaintiffs' interpretation of the Scheduling Order would leave Defendants in the untenable position of not being able to disclose any expert report on any element of Plaintiffs' claims that does not explicitly rebut a particular section of Plaintiffs' expert reports. The Court should reject this absurd interpretation and apply the plain language of the Scheduling Order.

Plaintiffs' reference to the prior superseded scheduling order changes nothing. (Pls. Mot. at 11 (citing Dkt. 78).) That order imposed an initial deadline for experts on behalf of "Plaintiff, or party with the burden of proof," and then a second deadline for "[d]efensive [e]xperts." (Dkt. 78.) After the case was transferred to this Court, these original deadlines were vacated (Dkt. 91), and then, upon the parties' May 25, 2022 joint motion (Dkt. 128), the Court entered the operative Scheduling Order. Contrary to Plaintiffs' contention, the parties did not deliberately modify the second expert deadline to apply only to expert

reports that respond to a specific section of an opponent's report. Plaintiffs did not identify, either in the parties' May 25, 2022 joint motion or their related correspondence with Defendants, any desire to make such a change. Rather, the only change was to recognize the reality that since the initial deadline for expert reports applied to the "party with the burden of proof," the second deadline needed to be for all parties on issues for which they do not bear the burden of proof, thereby allowing Plaintiffs the opportunity to submit expert reports on issues as to which Defendants bear the burden of proof (*i.e.*, Defendants' truth-on-the-market affirmative defense).

In any event, if the Court intended for the January 25, 2023 deadline to apply only to rebuttal reports that respond to specific opinions disclosed by the opponent's experts and were to agree with Plaintiffs' view that Dr. Murphy is not a rebuttal expert, Dr. Murphy's report would still be timely. Under Rule 26(a)(2)(D), if there is no court ordered schedule governing expert disclosures, expert testimony must be disclosed at least 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D). Plaintiffs do not dispute that Dr. Murphy offered testimony concerning an issue for which Defendants do not bear the burden of proof, yet maintain that he is not a rebuttal expert. In other words, in Plaintiffs' view, neither deadline in the Scheduling Order applies to Dr. Murphy's report and therefore Rule 26(a)(2)(D) governs. Because Defendants disclosed Dr. Muphy's report *years* prior to the anticipated trial date, Dr. Murphy's report was timely disclosed under Rule 26(a)(2)(D).

Plaintiffs accuse Defendants of "attempt[ing] to gain a litigation advantage" and "refus[ing] to play by the rules" (Pls. Mot. at 12) while simultaneously putting forward an argument divorced from the text of the Scheduling Order. Notably, the out-of-district cases

Plaintiffs cite involved "affirmative" and "rebuttal" schedules—not deadlines anchored to a party's burden of proof. *See Vu v. McNeil-PPC, Inc.*, 2010 WL 2179882, at *1 (C.D. Cal. May 7, 2020); *see also Carroll v. Allstate Fire & Cas. Ins. Co.*, 2013 WL 12426586, at *1 (D. Colo. Oct. 4, 2013). That is not the case here, and Plaintiffs cannot claim prejudice because Defendants disclosed Dr. Murphy's report in accordance with the plain text of the Scheduling Order.

### B. Dr. Murphy's Opinions Rebut Allegations of Scienter Based on Individual Defendants' Compensation.

Dr. Murphy is a rebuttal expert whose opinions properly respond to Plaintiffs' evidence of scienter by establishing that Individual Defendants did not financially benefit from the alleged misstatements.

"[I]t is well settled that the purpose of rebuttal testimony is to explain, repel, counteract, or disprove the evidence of the adverse party and if [a party] opens the door to the line of testimony, [she] cannot successfully object to the [other party] accepting the challenge and attempting to rebut the proposition asserted." *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 267 (5th Cir. 2022) (alteration in original) (quoting *United States v. Delk*, 586 F.2d 513, 516 (5th Cir. 1978)). Courts have been clear that "[a] rebuttal expert opinion is that which is 'intended solely to contradict or rebut evidence on the same subject matter identified by another party.'" *Garris v. Midea USA, Inc.*, 2014 WL 12719497, at *1 (E.D. La. Mar. 6, 2014) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). Dr. Murphy's report does just that.

Plaintiffs do not dispute that they seek to rely on evidence to support their scienter theory premised on Individual Defendants' executive compensation packages. Plaintiffs unambiguously allege this theory in their Amended Complaint. (*See, e.g.*, Am. Compl. ¶ 5(s) (accusing Defendants of "perpetuating the scheme by concealing it long enough for the Individual Defendants . . . to receive golden parachutes worth tens of millions of dollars"), ¶ 9 (alleging "Defendants arranged for what turned out to be hundreds of millions in 'golden parachute' payoffs to Anadarko executives"), ¶ 150 (alleging "Defendants were motivated to conceal the truth for a variety of reasons, including . . . $100 million in golden parachute payments"), ¶ 156 (alleging that after Anadarko was acquired, "[i]ndividual Defendants had flown away in their golden parachutes").) Similarly, Lea Frye alleged that "Anadarko's compensation structure rewards resource exaggerations" and that "there was a direct relationship between the exaggerated size of the Shenandoah resource and the compensation of those involved." (Dkt. 322-22, Ex. 40 (AAC-00000002) at -018.)

At no point have Plaintiffs indicated that they intend to withdraw their scienter allegations based on Individual Defendants' compensation. To the contrary, Plaintiffs elicited deposition testimony from nearly a dozen witnesses on Defendants' compensation and bonuses, including from the Individual Defendants. (*See, e.g.*, Walker Tr. 51:2-62:10; Leyendecker Tr. 47:2-47:3.) In those depositions, as noted above, Plaintiffs sought testimony about bonuses and whether bonuses were based on the Shenandoah resource range for the apparent purpose of supporting their argument that Individual Defendants were motivated to deceive shareholders because they stood to receive increased bonuses based on inflated resource ranges. (*See id.*)

Dr. Murphy's report responds to this evidence by analyzing the Individual Defendants' compensation and benefits and determining whether they directly benefited from the alleged fraudulent scheme. Dr. Murphy concludes that the alleged misstatements about Shen-3 did not increase the Individual Defendants' bonuses and that the "Named Defendants did not benefit financially from the alleged inflation." (Murphy Rpt. at 4.) Dr. Murphy also responds to Plaintiffs' "golden parachute" allegations, opining that the alleged scheme did not cause Individual Defendants to receive artificially inflated payments when Occidental acquired Anadarko in 2019—over two years after the end of the Class Period. To the contrary, Dr. Murphy opines that the amounts paid to Individual Defendants in connection with that transaction were approximately $1.5 million *lower* than they would have been if the alleged scheme had in fact inflated Anadarko's stock price as Plaintiffs allege. (Murphy Rpt. at 36.)

Plaintiffs' argument rests on the fundamental misconception that Dr. Murphy's testimony responds only to the two paragraphs in Regan's report that Plaintiffs have now purported to withdraw. That is not the case. Dr. Murphy properly offers opinions rebutting Plaintiffs' allegations in their Amended Complaint and evidence they have sought in discovery—which Plaintiffs intend to elicit at trial—regarding whether Defendants financially benefited from any alleged fraud. Dr. Murphy's opinions will help the jury understand these compensation issues and should be permitted.

Finally, even if this Court finds that the Scheduling Order required Defendants to disclose Dr. Murphy's report on the November 9, 2022 deadline, the report should not be excluded. Under Federal Rule of Civil Procedure 37(c)(1), exclusion is unwarranted if the

"failure was substantially justified or is harmless." *Everest Reinsurance Co. v. Cox*, 350 F.R.D. 541, 548 (N.D. Tex. 2025) (quoting Fed. R. Civ. P. 37(c)(1)). Exclusion is also unwarranted if the alleged untimely disclosure was a result of the disclosing party's reasonable belief that they were complying with the governing schedule. *See Hanover Ins. Co. v. United States*, 137 Fed. Cl. 479, 486 (2018). For the foregoing reasons, Dr. Murphy's report was disclosed on the January 25, 2023 deadline because of Defendants' reasonable belief that all reports on issues for which they do not bear the burden of proof were due then.

## II. PLAINTIFFS' UNTIMELY REQUEST FOR A REBUTTAL REPORT SHOULD BE DENIED.

Plaintiffs' alternative request to file an expert report responding to Dr. Murphy's opinions contravenes the Scheduling Order and, if granted, would interfere with the Court's scheduled trial date of May 2027. (Pls. Mot. at 13; *see* Dkt. 305.)

The Scheduling Order does not afford Plaintiffs the opportunity to offer rebuttal experts on issues for which they bear the burden of proof. This is inherent in the two deadlines established by the plain text of the Scheduling Order. Plaintiffs elected to file Regan's affirmative expert report to support their theory of scienter—an issue as to which they bear the burden of proof—then purported to "withdraw" the section of Regan's report pertaining to scienter in a ploy to argue Murphy's report is inadmissible.[3]

[3] Should Plaintiffs agree not to elicit or offer any fact or expert evidence at trial on the purported connection between Individual Defendants' executive compensation and Defendants' alleged misstatements, Defendants will agree to withdraw Dr. Murphy's opinions on such issue.

Even if the Court were to determine that the Scheduling Order does not govern Dr. Murphy's report (*see infra* p. 9), Plaintiffs' request for a rebuttal report more than three years after Defendants' disclosure of Dr. Murphy's report would be untimely. *See* Fed. R. Civ. P. 26(a)(2)(D) (requiring rebuttal reports be disclosed "within 30 days after the other party's disclosure").

Plaintiffs have been on notice for years that the agreed-upon Scheduling Order does not provide them an opportunity for expert rebuttal on scienter—an issue as to which they bear the burden of proof. They have also undoubtedly been aware of the alternative timeline set by Rule 26(a)(2)(D). Yet they now want the opportunity to reopen expert discovery to present a rebuttal expert to Dr. Murphy's opinions, years after the expert reports were disclosed and expert discovery closed, and now that Defendants' motion for summary judgment has been submitted and trial is fast approaching. Plaintiffs' request is inappropriate, contravenes the Scheduling Order, and would only serve to delay these proceedings.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to strike the rebuttal report of Dr. Kevin J. Murphy.

Dated: July 14, 2026

Respectfully submitted,

*/s/ Kevin J. Orsini*

**CRAVATH, SWAINE & MOORE LLP**
Kevin Orsini (*pro hac vice*)
Lauren Rosenberg (*pro hac vice*)
Melissa Syring (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com
msyring@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

**CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 3,707 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: July 14, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## CERTIFICATE OF SERVICE

I certify that on July 14, 2026 I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: July 14, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini