**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY BY DEFENDANTS' PROPOSED EXPERT PETER KELLER**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................1

LEGAL STANDARDS....................................................................................2

STATEMENT OF FACTS ..............................................................................3

STATEMENT OF ISSUES ..............................................................................5

NATURE AND STAGE OF THE PROCEEDINGS ...........................................5

ARGUMENT ..................................................................................................6

I. KELLER'S OPINIONS ARE RELIABLE AND RELEVANT.........6

A. Keller's Reports Offer Reliable and Relevant Opinions About Public Information Available to the Market About Shenandoah..............................................................6

B. Plaintiffs' Contrary Arguments Mischaracterize Keller's Opinions..............................................................8

II. KELLER DOES NOT OFFER IMPROPER LEGAL CONCLUSIONS ..................................................................13

III. PLAINTIFFS' MARKET-EFFICIENCY OBJECTIONS DO NOT UNDERMINE THE RELIABILITY OR RELEVANCE OF KELLER'S OPINIONS...................................................16

IV. KELLER'S OPINIONS INVOLVING POST-CLASS PERIOD DEVELOPMENTS AT SHENANDOAH ARE ADMISSIBLE ...................................................................19

CONCLUSION...............................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir. 1997) .......... 13

*Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019) .......... 9, 11

*Chan v. ArcSoft, Inc.*,
2023 WL 8260886 (N.D. Cal. Nov. 29, 2023) .......... 8, 10, 13

*Compass Chem. Int'l, LLC v. Access Chems. & Servs., LLC*,
2012 WL 6608841 (S.D. Tex. Dec. 18, 2012) .......... 10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 10, 15

*Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.*,
2004 WL 5495588 (W.D. Tex. Oct. 6, 2004) .......... 2

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .......... 18

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) .......... 13, 14

*Homyk v. ChemoCentryx, Inc.*,
2025 WL 1547625 (N.D. Cal. May 30, 2025) .......... 19, 20

*In re Actos (Pioglitazone) Prods. Liability Litig.*,
2014 WL 60324 (W.D. La. Jan. 7, 2014) .......... 12, 13

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001) .......... 19

*In re Sec. Litig. BMC Software, Inc.*,
183 F. Supp. 2d 860 (S.D. Tex. 2001) .......... 3, 6

*In re Xerox Corp. Sec. Litig.*,
2009 WL 8556135 (D. Conn. Apr. 22, 2009) .......... 8, 9, 11, 13

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ....................................................................................12

*Lumiere v. United States*,
2022 WL 866365 (S.D.N.Y. Jan. 18, 2022) ...................................................11

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
2019 WL 2482399 (N.D. Ga. June 12, 2019) ..................................................18

*Owen v. Kerr-McGee Corp.*,
698 F.2d 236 (5th Cir. 1983) ..........................................................................13

*Plotkin v. IP Axess Inc.*,
407 F.3d 690 (5th Cir. 2005) ..........................................................................19

*SEC v. Daifotis*,
2012 WL 2051193 (N.D. Cal. June 7, 2012)....................................................11

*SEC v. Ferrone*,
163 F. Supp. 3d 549 (N.D. Ill. 2016).................................................................8

*SEC v. ITT Educ. Servs., Inc.*,
311 F. Supp. 3d 977 (S.D. Ind. 2018)......................................................8, 10, 14

*SEC v. Ustian*,
2020 WL 416289 (N.D. Ill. Jan. 26, 2020)........................................9, 11, 13, 14

*SEC v. World Tree Fin., LLC*,
43 F.4th 448 (5th Cir. 2022) ............................................................................12

*Shupe v. Rocket Cos., Inc.*,
752 F. Supp. 3d 689 (E.D. Mich. 2024) ..............................................2, 7, 11, 12

*Siracusano v. Matrixx Initiatives, Inc.*,
2006 WL 8437376 (D. Ariz. Mar. 8, 2006).......................................................19

*United States v. Lang*,
717 F. App'x 523 (6th Cir. 2017).......................................................................12

*United States v. Murra*,
2016 WL 10953992 (N.D. Tex. July 6, 2016), *aff'd*, 879 F.3d 669
(5th Cir. 2018) ....................................................................................................2

*United States v. Pace*,
10 F.3d 1106 (5th Cir. 1993) ..............................................................................3

*United States v. Schiff*,
538 F. Supp. 2d. 818 (D.N.J. 2008)....................7, 8

*United States v. Valencia*,
600 F.3d 389 (5th Cir. 2010)....................10

**Rules**

Fed. R. Evid. 403....................2

Fed. R. Evid. 702....................2, 15

## PRELIMINARY STATEMENT

Peter Keller has over 15 years of experience as a manager of oil and gas investment portfolios for large institutional investors. His expert testimony, offered in support of Defendants' truth-on-the-market defense, draws on his experience as an energy investor to analyze what public information about Shenandoah was available to the market and to explain to the jury what that information meant to market participants familiar with deepwater oil and gas appraisal. Keller reviews public disclosures, market commentary, and press reports to identify information about Shenandoah that was available before and during the Class Period.

Plaintiffs' motion misunderstands Keller's opinions. Keller will explain to the jury what public information was available to the market and what that information meant in the context of the oil and gas industry. These kinds of expert opinions are regularly admitted in securities cases. Keller does not offer a subjective opinion about the knowledge or state of mind of any particular investor, nor does he offer improper legal conclusions.

Plaintiffs' criticisms misconstrue Keller's industry analysis, have been repeatedly rejected by other courts, and are at most fodder for cross-examination. Because Keller's opinions will help the jury evaluate whether any material information about Shenandoah was actually concealed, Plaintiffs' motion should be denied.

## **LEGAL STANDARDS**

Plaintiffs seek to exclude certain of Keller's opinions under Federal Rule of Evidence 702. Under Rule 702, "scientific, technical, or other specialized knowledge" is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony "derived through . . . prodigious labor contribute[s] tangibly to the factual record" and is therefore helpful and relevant. *Shupe v. Rocket Cos., Inc.*, 752 F. Supp. 3d 689, 728 (E.D. Mich. 2024) (citation omitted); *see also Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.*, 2004 WL 5495588, at *5, *7 (W.D. Tex. Oct. 6, 2004) (compilation of "complex[] and cumbersome . . . information and documentation into a presentable format is 'helpful'" to a jury because it can "assist the jury in extracting relevant information from the evidence").

Generally, "questions relating to the bases and sources of an expert's opinion" bear on the weight, not admissibility, of an expert's opinion and should be left for the jury. *United States v. Murra*, 2016 WL 10953992, at *3 (N.D. Tex. July 6, 2016), *aff'd*, 879 F.3d 669 (5th Cir. 2018) (citation omitted).

Plaintiffs also seek to exclude certain of Keller's opinions under Federal Rule of Evidence 403. Under Rule 403, courts may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Evid. 403.

Exclusion on that basis "should occur only sparingly." *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993).

## STATEMENT OF FACTS

Keller is a Managing Director in the energy division of Berkeley Research Group ("BRG") and has been involved in financing oil and gas companies and exploration activities since 1978. (Dkt. 308-2, Ex. 1 (November 9, 2022 Expert Report of Peter Keller ("TOTM Rpt.")) ¶¶ 1-2, App'x A at 1.) He spent over fifteen years at The Bank of New York / BNY Mellon, including as head of its energy division, overseeing banking relationships in the exploration and production sectors. (*Id.* ¶ 5, App'x A at 1.) Before that, Keller spent over fifteen years at RPI Institutional Services, managing oil and gas direct investment portfolios for large institutional investors and originating complex offshore Gulf of Mexico financings and acquisitions. (*Id.* App'x A at 2.)

Keller's opening report was submitted in support of Defendants' truth-on-the-market defense. That defense is a "corollary" to the fraud-on-the-market theory and "stands for the proposition that a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 905 n.46 (S.D. Tex. 2001). Keller "examine[d] disclosures made by Anadarko and the Shenandoah Partners, as well as commentary from market participants and public press, to analyze, based on [his] experience, what information concerning Shenandoah was in the market both before and during the Class Period." (TOTM

Rpt. ¶ 15.) Specifically, Keller analyzed over 500 publicly available documents, including SEC filings, investor conference transcripts and presentations, operations reports, analyst reports, investment-manager materials, industry documents, academic literature, and news coverage. (*Id.* App'x B.) Keller then opined on what information was publicly available to the market regarding Shenandoah before and during the Class Period.

Keller's rebuttal report similarly analyzes what information about Shenandoah was available to the market in responding to discussions of public statements in the reports of Plaintiffs' geology expert, Dr. Robert Merrill; Plaintiffs' damages expert, Bjorn Steinholt; and Plaintiffs' accounting expert, D. Paul Regan. As in his opening report, Keller analyzed a significant body of public materials, including SEC filings, investor conference transcripts and presentations, operations reports, analyst reports, industry documents, academic literature, and news articles. (Dkt. 308-2, Ex. 2 (January 25, 2023 Expert Report of Peter Keller ("Rebuttal Rpt.")) App'x B.)

Keller confirmed at his deposition he does not offer a subjective opinion about "all investors" but rather an assessment of the publicly available information known to the market. (Dkt. 308-2, Ex. 3 (Dep. of Peter Keller ("Keller Tr.")) 141:5-18, 155:9-156:10 (explaining he used "investors" and "market" interchangeably).) In other words, Keller will not testify that every investor actually held a particular subjective belief, but rather will explain the public information available to the

market before and during the Class Period. To the extent there is any ambiguity as to Keller's interchangeable use of "investors" and "market," Defendants are happy to suggest a limiting instruction at trial so the jury understands he is not opining on what each investor in Anadarko stock actually believed, but instead explaining what information was available to the market and the significance of that information to the industry.

## STATEMENT OF ISSUES

1. Whether the Court should deny Plaintiffs' motion to exclude certain expert testimony of Peter Keller because he is an industry expert who offers reliable and relevant testimony about the public information available to the market about Shenandoah, including from SEC disclosures, analyst reports, and Shenandoah partners.

2. Whether the Court should deny Plaintiffs' motion to exclude certain expert testimony of Keller because he does not offer improper legal conclusions.

3. Whether the Court should deny Plaintiffs' motion to exclude certain expert testimony of Keller because he is not offered as a market-efficiency expert and his opinions do not depend on strong-form market efficiency.

4. Whether the Court should deny Plaintiffs' motion to exclude certain expert testimony of Keller because his testimony about Shenandoah's post-Class Period development is relevant evidence concerning technological feasibility and development conditions.

## NATURE AND STAGE OF THE PROCEEDINGS

On November 9, 2022, Defendants disclosed Keller's truth-on-the-market expert report, as truth-on-the-market is sometimes considered an affirmative defense. On January 25, 2023, the parties disclosed rebuttal reports, including Keller's second report.

The parties originally filed *Daubert* motions on March 16, 2023. At that time, Plaintiffs filed a motion to exclude Keller's testimony. (Dkt. 184.) That motion was administratively terminated by the Court on January 10, 2024. (Dkt. 216.) Plaintiffs filed their current motion to exclude Keller's testimony on June 1, 2026, pursuant to the Court's April 27, 2026 scheduling order.

**ARGUMENT**

## I. KELLER'S OPINIONS ARE RELIABLE AND RELEVANT.

### A. Keller's Reports Offer Reliable and Relevant Opinions About Public Information Available to the Market About Shenandoah.

Plaintiffs misread Keller's expert reports as opining on the "subjective views" of investors about Shenandoah during the Class Period. (*See* Dkt. 308 ("Pls. Mot.") at 7.) Not so. Keller offers opinions about what information was available to the market based on his analysis of hundreds of public documents, including SEC filings, investor conference transcripts and presentations, operations reports, analyst reports, investment-manager materials, industry documents, academic literature, and news coverage, as well as his extensive experience financing oil and gas exploration activities. (TOTM Rpt. App'x B; Rebuttal Rpt. App'x B.) Those opinions are directly relevant to Anadarko's truth-on-the-market defense—specifically that "the information is already known to the market" and that the alleged "misrepresentation[s] cannot then defraud the market." *In re Sec. Litig. BMC Software*, 183 F. Supp. 2d at 905 n.46.

Courts routinely find expert analysis of publicly available information like that analyzed by Keller to be reliable and relevant in the securities litigation context. For instance, in *Shupe v. Rocket Companies, Inc.*, the expert "synthesized all relevant Rocket analyst reports, and drew conclusions from these reports based on her education and experience in financial economics and investor influence." 752 F. Supp. 3d at 728. The court rejected the plaintiffs' argument that her opinions were based solely on a "subjective reading of sell-side reports" and deemed her testimony relevant and helpful under Rule 702, concluding that an expert's analysis of "analyst reports—let alone 50—is not a task 'well within the ken of the average juror.'" *Id.* at 727-30; *see also United States v. Schiff*, 538 F. Supp. 2d. 818, 845 (D.N.J. 2008) (when expert testifies "from his specialized knowledge and long experience as an investor, his methodology is not subjected to the same examination as a more scientific or technical expert's would be"). (*See also infra* Section I.B.)

Keller reviewed over 500 publicly available documents and drew conclusions about what information was publicly available to the market based on his review and his industry experience. This analysis is indistinguishable from the expert testimony admitted in *Shupe*. It will help the jury avoid the voluminous review of hundreds of public records, as well as understand what information was publicly disclosed about Shenandoah both before and during the Class Period. (TOTM Rpt. ¶¶ 16(c), 210-18, 237-63; Rebuttal Rpt. ¶¶ 55-62, 86-91, 98-102.) Keller's opinions therefore will "properly assist the jury in determining how each

piece of information withheld or disclosed by Defendants would impact a reasonable investor's decision-making process." *Chan v. ArcSoft, Inc.*, 2023 WL 8260886, at *6 (N.D. Cal. Nov. 29, 2023); *see also Schiff*, 538 F. Supp. 2d at 845 (admitting expert testimony on "what information is important to investors"); *SEC v. ITT Educ. Servs., Inc.*, 311 F. Supp. 3d 977, 995 (S.D. Ind. 2018) (a jury "cannot determine whether the statements were false and misleading unless it knows the actual facts [surrounding the statements and] . . . the total mix of information related to those topics" (quoting *SEC v. Ferrone*, 163 F. Supp. 3d 549, 565 (N.D. Ill. 2016)) (alteration in original)).

### B. Plaintiffs' Contrary Arguments Mischaracterize Keller's Opinions.

Most of Plaintiffs' arguments for exclusion rest on a mischaracterization of Keller's testimony. According to Plaintiffs, Keller's opinions amount to state-of-mind testimony (Pls. Mot. at 11) and are unreliable because Keller "never surveyed Anadarko investors" but "***assume[s]*** that all sophisticated investors would have shared his exact interpretation of information" (*id.* at 8-9 (emphasis in original)), and Keller assumes the truth of Defendants' public statements without examining internal Anadarko documents (*id.* at 14). Plaintiffs are wrong.

Courts regularly permit experts to offer opinions about what information is available to the market. *In re Xerox Corp. Sec. Litig.*, 2009 WL 8556135, at *3 (D. Conn. Apr. 22, 2009) (deeming such testimony helpful "because it would help the jury understand the context and significance of [the company's] various

disclosures"); *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 901-02 (S.D. Cal. 2019) (admitting expert testimony built on "review of *hundreds* of reports and articles" that market understood statement as a corrective disclosure because expert's "opinion of *how* the market interpreted [the company's] statements" will be helpful to the jury); *SEC v. Ustian*, 2020 WL 416289, at *3-4 (N.D. Ill. Jan. 26, 2020) (deeming admissible expert opinion that public information reflected allegedly omitted information that was derived through "review of analyst and media reports" "in light of . . . established economic principles"). This is not state-of-mind testimony. *See Ustian*, 2020 WL 416289, at *1-2 (expert's opinion that "publicly available information indicates that the allegedly omitted information was available to investors" and thus that the company's stock price "already incorporated the information" was not impermissible state-of-mind testimony). Experts offering this testimony need not rely on surveys, as Plaintiffs suggest, but may rely on their experience and review of relevant documents. *See*, *e.g.*, *In re Xerox*, 2009 WL 8556135, at *3 (admitting expert testimony "arrived at simply by reading news reports, public filings, and other information").

Keller's opinions fall squarely into this category of permissible expert testimony. He is not offering an opinion on what individual investors believed about Shenandoah, nor is he testifying every investor actually understood Shenandoah in the same way. (*See* Keller Tr. 141:2-23 (averring he is not opining on what "all investors" understood but rather what "the market understood" and "what the

market knew").) Nor is he offering an opinion about Defendants' knowledge or state of mind. To the extent Plaintiffs take issue with certain deposition testimony suggesting all sophisticated investors would share Keller's interpretation of public information, that bears at most on the weight of his opinions, not their admissibility. *Chan*, 2023 WL 8260886, at *5 (expert's admission "that information he considers important could be considered unimportant by a reasonable investor" bore "upon [his] opinions' weight"); *Compass Chem. Int'l, LLC v. Access Chems. & Servs., LLC*, 2012 WL 6608841, at *2 (S.D. Tex. Dec. 18, 2012) (*Daubert* inquiry focuses "not upon the substance of ultimate conclusions reached, but instead upon the 'principles and methodology' used to reach those conclusions." (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993))).

Similarly, any assumption by Keller that Defendants' disclosures were truthful is not grounds for exclusion. (*See* Pls. Mot. at 13-15.) Keller does not purport to opine on whether Defendants' disclosures were in fact truthful; he opines on what information about Shenandoah was available to the market. (*See* TOTM Rpt. § 5.2; Rebuttal Rpt. §§ 2-4.) His testimony will aid the jury in understanding "the total mix of information" available to the market about Shenandoah. *ITT Educ. Servs.*, 311 F. Supp. 3d at 995. In any event, Plaintiffs' challenge to his assumption is "fodder for cross-examination," not grounds for exclusion. *United States v. Valencia*, 600 F.3d 389, 421 (5th Cir. 2010).

The cases Plaintiffs cite do not support exclusion of Keller's opinions. *Lumiere v. United States* concerned a *lay witness's* speculation as to what "unnamed investors understood," 2022 WL 866365, at *28 (S.D.N.Y. Jan. 18, 2022), whereas Keller is an industry expert, whose knowledge and experience enable him to opine on issues that lay witnesses may not—here, on what public information was available to the market and the significance of that information to industry investors, *see Ustian*, 2020 WL 416289, at *2. *SEC v. Daifotis* involved an expert who sought to offer testimony that went far beyond the type offered by Keller and included summaries of fact witness deposition testimony (seeking to supplant fact witnesses) and opinions on defendants' scienter (seeking to invade the province of the jury). 2012 WL 2051193, at *1, *4 (N.D. Cal. June 7, 2012). As discussed above, courts routinely find that experts may offer the more limited opinions Keller seeks to offer here about what information was in the market by looking at public documents and need not speak to investors before giving that testimony. *Ustian*, 2020 WL 416289, at *4; *In re Xerox*, 2009 WL 8556135, at *3; *Baker*, 423 F. Supp. 3d at 901-02.

Plaintiffs' remaining quibble with Keller's methodology is also unavailing. Plaintiffs argue Keller's selection of credible sources for his analysis is unreliable because it is "subjective and incomplete" (Pls. Mot. at 10), but provide no support for their suggestion. Plaintiffs do not—because they cannot—argue that Keller limited his "review to only those analyst reports []he believed would be favorable." *Shupe*, 752 F. Supp. 3d at 729. Moreover, "experts are not expected to review '*all*

the facts and data' that may hypothetically relate to their opinions." *Id.* (emphasis in original) (quoting *United States v. Lang*, 717 F. App'x 523, 536 (6th Cir. 2017)); *see also SEC v. World Tree Fin., LLC*, 43 F.4th 448, 462-63 (5th Cir. 2022) (affirming district court's reliance on expert testimony even though expert allegedly "did not use all available information"). To the contrary, if, in choosing sources to analyze, an expert "gives reasons for that decision and full explanation for those choices, disagreement with those choices becomes a matter for the trier of fact" and does not merit exclusion. *In re Actos (Pioglitazone) Prods. Liability Litig.*, 2014 WL 60324, at *8 (W.D. La. Jan. 7, 2014); *see also Shupe*, 752 F. Supp. 3d at 729 (no exclusion where expert "thoroughly explained why she reviewed analyst reports instead of other sources of market information"). As Keller explained at his deposition, his selection of sources was reasoned and criteria-driven. (Keller Tr. 79:14-15.) Among other factors, Keller considered whether the "documents . . . focused on Anadarko or Shenandoah" (*id.* at 81:2-4) and whether analyst reports came from institutions "that have traditionally been big players in the oil and gas sector" (*id.* at 78:18-20). Keller's source selection was also "based on [his] experience over decades in the business." (*Id.* at 79:14-15); *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 156 (1999) (experts may draw on "extensive and specialized experience" to form opinions). Plaintiffs have not identified any publicly available sources they claim Keller should have considered but did not, and

any such complaints bear at most on the weight, not the admissibility, of his opinions. *See In re Actos*, 2014 WL 60324, at *8.

## II. KELLER DOES NOT OFFER IMPROPER LEGAL CONCLUSIONS.

Plaintiffs' argument that Keller "proposes to apply the facts to the law to tell the jury what result to reach on key elements of [their] claims" misconstrues his opinions. (*See* Pls. Mot. at 12.) To be sure, Keller will not testify on "purely legal matters," as it is not for experts "to tell the trier of fact what to decide." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). But experts may offer testimony that embraces an "ultimate issue" to be decided by the trier of fact. *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). The relevant question is whether the testimony "suppl[ies] the jury with no information other than the expert's view of how its verdict should read." *Id.*

Keller will explain public information about Shenandoah, the significance of that information in the oil and gas industry, and whether the public record already reflected the facts Plaintiffs claim were concealed. Courts routinely permit experts to testify on "whether publicly available information already reflected the allegedly omitted information." *See, e.g.*, *Ustian*, 2020 WL 416289, at *3; *In re Xerox*, 2009 WL 8556135, at *3. Courts also agree that an expert witness "may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Chan*, 2023 WL 8260886, at *6 (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th

Cir. 2004)); *see also ITT Educ. Servs.*, 311 F. Supp. 3d at 995 (refusing to exclude expert's opinion on materiality because it "relate[d] to whether information that Defendants did not disclose (which is a factual question) would have been the type of information investors would have wanted to know").

Keller's opening report offers permissible opinions that "publicly available information already reflected the allegedly omitted information," *Ustian*, 2020 WL 416289, at *3, and explains, based on his industry expertise, the significance of Plaintiffs' disclosures to the market. (*See* TOTM Rpt. ¶¶ 21, 107, 170, 245.) Of the four statements in Keller's opening report that Plaintiffs take issue with, (*see* Dkt. 308-1, tbl.1), only one uses a term Plaintiffs identify as a legal conclusion ("materially"), but Keller uses that term only to explain the theoretical principle of efficient markets. (*See* TOTM Rpt. ¶ 21 (explaining that "[o]nly new information that materially changes the market's view on the company's expected future earnings or cash flows would significantly affect the stock price" and providing an illustrative example).) This is not a legal conclusion, but rather an explanation about how efficient markets work. The other three statements describe the information available and its importance to the market. (*Id.* ¶¶ 21, 107, 170, 245.) Each of these statements will help the jury understand the significance of Defendants' public disclosures. *Daubert*, 509 U.S. at 591 (expert testimony is helpful if it will "assist the trier of fact to understand the evidence or to determine a fact in issue" (quoting Fed. R. Evid. 702)).

Keller's rebuttal report and deposition testimony regarding the alleged misleading statements similarly offer admissible opinions regarding what information was in the market and the significance of Defendants' public disclosures. These opinions rebut Plaintiffs' experts and demonstrate that their analyses and Plaintiffs' misstatement allegations are not supported by the information available to the market at the time. (Rebuttal Rpt. ¶¶ 5-8, 31, 68, 81, 125; Keller Tr. 34:21-24, 83:23-84:2.) Plaintiffs point to Keller's use of the terms "material" or "misleading" (Pls. Mot. at 12-13), but as Keller explained in his deposition, he is not "offering any legal opinions in this matter" (Keller Tr. 24:3-5). Rather, he uses that terminology in the same way that Plaintiffs' own expert, Bjorn Steinholt, does: he "use[s] the term 'material information' in the manner investors and securities analysts generally use the term, as opposed to a legal conclusion." (Dkt. 322-16, Ex. 19 (Expert Report of Bjorn Steinholt ("Steinholt Rpt.")) ¶ 5 n.1.) To avoid any impression that Keller is offering a legal conclusion, Keller will not offer an opinion at trial that a particular alleged misstatement was "misleading." The substance of his opinions regarding what information was available to the market before and during the Class Period, however, should not be excluded.

The remaining deposition testimony that Plaintiffs challenge—regarding Keller's view that there was no fraud as alleged—includes an opinion that does not appear in Keller's reports and was only offered in response to questions Plaintiffs asked at Keller's deposition. (Keller Tr. 34:25-35:3, 35:16-23, 84:4-12; *see* Dkt.

308-1, tbl. 1.) At trial, Keller will not offer legal opinions as to whether Defendants' omissions were immaterial as a matter of law or whether Defendants engaged in illegal deceptive business practices or fraudulent schemes.

## III. PLAINTIFFS' MARKET-EFFICIENCY OBJECTIONS DO NOT UNDERMINE THE RELIABILITY OR RELEVANCE OF KELLER'S OPINIONS.

Plaintiffs' argument that Keller's opinions should be excluded because he relies on incorrect market efficiency standards fails for two reasons.

*First*, Plaintiffs' objection that Keller incorrectly relies on a strong form of market efficiency lacks merit because the particular form of market efficiency has no bearing on Keller's opinions. For purposes of his report, Keller does not dispute that Anadarko's stock traded in an efficient market, meaning that "new and material information is quickly incorporated into the stock price as different investors buy and sell based on their respective evaluations of the new information disclosed." (Steinholt Rpt. ¶ 30; *see* TOTM Rpt. ¶ 18.) Here, Plaintiffs take issue with Keller's citation to discussion that, according to Plaintiffs, concerns strong-form efficient markets, as well as a statement at his deposition that he was relying on the strong form of market efficiency. (TOTM Rpt. ¶ 19; Keller Tr. 27:11-15.) Plaintiffs describe the "strong" form of market efficiency as a theory that posits that both public *and private* information is priced into a company's stock, and they assert that the accepted form of market efficiency theorizes only that public information is so priced. (Pls. Mot. at 15-17.) Because of Keller's statements regarding the strong

form of market efficiency, Plaintiffs contend that his opinions are unreliable and should be excluded.

But this ignores a basic fact: Keller's opinions are based on his assessment of public information—not private. His opinions about what information was known to the market and how that information was relevant to the industry do not turn on any particular form of market efficiency. Keller's reference to market efficiency is simply provided in the background section of his report. (TOTM Rpt. ¶ 18.) Keller is not offered as a market-efficiency, price-impact, or event-study expert, and he does not offer an affirmative opinion on market efficiency. As Plaintiffs seemingly acknowledge, it is Professor Allen Ferrell who offers opinions related to market efficiency and price impact and relies on what Plaintiffs assert is the appropriate form of market efficiency. (Dkt. 308-2, Ex. 4 (Dep. of Allen Ferrell ("Ferrell Tr.")) 26:11-12; *see* Pls. Mot. at 16.)

Plaintiffs' additional argument that Keller will confuse the jury because of one statement in his report that information is "instantaneous[ly]" incorporated into a company's stock price should be rejected too. (Pls. Mot. at 16-17; TOTM Rpt. ¶ 19.) Plaintiffs do not explain how an "instantaneous" reaction to public disclosures makes any difference to Keller's opinions; Keller is opining about the market's understanding of Anadarko's business and disclosures, not whether the market reacted "instantaneous[ly]" or "rapidly" to that information. (TOTM Rpt. ¶ 15.)

In any event, even if Plaintiffs' objections bore on Keller's analysis, exclusion would still be inappropriate. In the *Daubert* context, "different experts may approach the determination of whether a market is efficient using different methods, focusing on different elements," such that "disagreement over the appropriate method goes to the weight of the evidence." *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 2019 WL 2482399, at *5 (N.D. Ga. June 12, 2019); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 271-72 (2014) (fraud-on-the-market presumption does not rest on "any particular theory of how quickly and completely publicly available information is reflected in market price" (citation omitted)). That principle applies with additional force where, as here, Keller is not offering an event study or price impact opinion.

*Second*, Plaintiffs' objection to Keller's statement that "credible publicly available information, regardless of source, is reflected in the prices of securities that trade actively in public markets" and his consequent selection of sources to analyze fails for the reasons discussed *supra* in Section I.B. (Pls. Mot. at 17; *see* TOTM Rpt. ¶ 19.) Keller chose to analyze documents that, based on his experience as an investor, the market would have given credence to when trading Anadarko's stock. Keller's curation was driven by the fact that certain documents like SEC filings are "generally subject to certain standards of disclosure of . . . honesty and truthfulness," whereas "what one individual stock picker says he thinks something's worth" would be less credible. (Keller Tr. 31:3-32:24 (explaining that his source

selection was also driven by whether the source had a "deep research team[]" and "the effort and time devoted to the situation"; *see id.* at 78:11-79:17 (Keller's assessment of which analysts had "insights into the market" and thus were credible was based on his "experience over decades in the business").) As discussed above, Plaintiffs' objection goes at most to the weight of Keller's testimony, not its admissibility. (*See supra* Section I.B.)

## IV. KELLER'S OPINIONS INVOLVING POST-CLASS PERIOD DEVELOPMENTS AT SHENANDOAH ARE ADMISSIBLE.

Plaintiffs are wrong that Keller's statements regarding the post-Class Period development of Shenandoah—which serve as one piece of support underlying his opinions—are irrelevant to the issues in this case. Those statements are highly relevant and should not be excluded.

The Class Period "does not determine the period of relevancy for discovery purposes. There are numerous instances in securities fraud litigation where post-offering statements, documents, or conduct have been treated as admissible evidence on the issue of scienter, intent, and knowledge." *Siracusano v. Matrixx Initiatives, Inc.*, 2006 WL 8437376, at *3 (D. Ariz. Mar. 8, 2006) (citation omitted); *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 698 (5th Cir. 2005) ("[A]llegations of later-emerging facts can . . . provide warrant for inferences about an earlier situation."). Indeed, "[a]ny information that sheds light on whether class period statements were false or materially misleading is relevant." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001); *see also Homyk v. ChemoCentryx, Inc.*,

2025 WL 1547625, at *4 (N.D. Cal. May 30, 2025) (allowing expert testimony about FDA's post-class period approval of drug because that testimony "may be relevant to Plaintiff's allegation that Defendants misrepresented the safety profile" of the drug during the class period).[1]

Here, Keller's statements regarding post-Class Period development at Shenandoah support his opinions about the information available to the market during the Class Period and his rebuttal of Plaintiffs' claims that Anadarko made false and misleading statements about Shenandoah's commercial viability. For example, Keller explains in his opening report that the market was aware during the Class Period that technological advances in 20,000 psi technology for drilling high-pressure wells were still in development and, as Anadarko had disclosed even before the Class Period began, would be necessary for Shenandoah's development. (TOTM Rpt. ¶¶ 164-70.) That those technological advances were achieved and allowed for Shenandoah's development post-Class Period is therefore directly relevant to whether Anadarko's Class Period statements about Shenandoah's commercial viability were misleading. (*Id.* ¶¶ 16(c)(ii), 43-45, 157-58.) In his rebuttal report, Keller further opines that Shenandoah's current development confirms its commercial viability "in the right commodity pricing environment and with the advancement of drilling technology," rebutting Merrill's characterization

---

[1] Defendants address in more detail this issue in Section II of their Opposition to Plaintiffs' Motion to Exclude Certain Opinions of Dr. Rocco Detomo.

of Shenandoah as non-commercial and Steinholt's claim that Anadarko concealed Shenandoah's lack of commercial viability. (Rebuttal Rpt. ¶¶ 51, 98, 102, 105-06.)

Plaintiffs' argument that the probative value of this evidence is "substantially outweighed by the danger" of jury confusion accordingly fails. (*See* Pls. Mot. at 18.) Plaintiffs identify no undue prejudice, and this piece of highly relevant support for Keller's opinions should not be excluded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion.

Dated: July 14, 2026

Respectfully submitted,

*/s/ Kevin J. Orsini*

**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Melissa A. Syring (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com
msyring@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4,996 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: July 14, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## CERTIFICATE OF SERVICE

I certify that on July 14, 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: July 14, 2026

/s/ *Kevin J. Orsini*
Kevin J. Orsini