**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DR. ROCCO DETOMO**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

LEGAL STANDARD ........ 2

STATEMENT OF FACTS ........ 3

STATEMENT OF ISSUES ........ 6

NATURE AND STAGE OF THE PROCEEDINGS ........ 6

ARGUMENT ........ 6

I. DR. DETOMO DOES NOT OFFER LEGAL CONCLUSIONS ON FALSITY AND IS QUALIFIED TO OPINE ON THE SCIENTIFIC FACTS UNDERLYING ANADARKO'S PUBLIC DISCLOSURES ........ 6

II. DR. DETOMO'S OPINIONS ABOUT POST-CLASS PERIOD OPERATIONS AT SHENANDOAH ARE ADMISSIBLE. ........ 10

III. DR. DETOMO IS WELL-QUALIFIED TO TESTIFY BASED ON HIS EXTENSIVE DEEPWATER OIL EXPERIENCE. ........ 13

IV. DR. DETOMO IS QUALIFIED TO TESTIFY ABOUT ASPHALTENE MITIGATION AND OFFERS OPINIONS THAT ARE RELEVANT, RELIABLE, AND SUPPORTED BY ADEQUATE FACTUAL BASES. ........ 15

A. Dr. Detomo Is Qualified to Offer Opinions on Asphaltene Mitigation. ........ 15

B. Dr. Detomo's Opinions Regarding Asphaltene Mitigation Are Relevant, Reliable, and Supported by Adequate Factual Bases. ........ 17

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bocanegra v. Vicmar Servs., Inc.*,
320 F.3d 581 (5th Cir. 2003) .......... 2

*Canrig Drilling Tech. Ltd. v. Trinidad Drilling L.P.*,
2016 WL 7188657 (S.D. Tex. Dec. 12, 2016) .......... 18

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 3

*Diamond Offshore Co. v. Survival Sys. Int'l, Inc.*,
2013 WL 371648 (S.D. Tex. Jan. 29, 2013) .......... 17

*Edwards v. Brent Baker Drilling, Inc.*,
2001 WL 36104321 (S.D. Tex. June 18, 2001) .......... 7, 8

*El Campo Ventures, LLC v. Stratton Sec., Inc.*,
2021 WL 728186 (W.D. Tex. Jan. 29, 2021) .......... 2

*Huss v. Gayden*,
571 F.3d 442 (5th Cir. 2009) .......... 3

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
2014 WL 3557345 (N.D. Tex. July 18, 2014) .......... 7, 9

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
2009 WL 2971783 (E.D. La. Sept. 11, 2009) .......... 16, 17

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001) .......... 11

*In re Stratosphere Corp. Sec. Litig.*,
66 F. Supp. 2d 1182 (D. Nev. 1999) .......... 9

*In re Twitter Inc. Sec. Litig.*,
2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) .......... 9

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .......... 2, 13

*LeBoeuf v. K-Mart Corp.*,
888 F.2d 330 (5th Cir. 1989) .......... 12

*Lyondell Chem. Co. v. Albemarle Corp.*,
2007 WL 5527507 (E.D. Tex. Mar. 7, 2007) .......... 10

*Messick v. Novartis Pharm. Corp.*,
747 F.3d 1193 (9th Cir. 2014) .......... 11

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) .......... 13

*Owen v. Kerr-McGee Corp.*,
698 F.2d 236 (5th Cir. 1983) .......... 7, 9, 10

*Pearlstein v. BlackBerry Ltd.*,
2021 WL 4131646 (S.D.N.Y. Sept. 10, 2021) .......... 9

*Plotkin v. IP Axess Inc.*,
407 F.3d 690 (5th Cir. 2005) .......... 11, 13

*Prantil v. Arkema France S.A.*,
2022 WL 1570022 (S.D. Tex. May 18, 2022) .......... 2

*Puga v. RCX Sols., Inc.*,
922 F.3d 285 (5th Cir. 2019) .......... 3, 18

*SEC v. Mapp*,
2017 WL 5466660 (E.D. Tex. Nov. 14, 2017) .......... 3

*Shu-Hui Wu v. Miss. State Univ.*,
626 F. App'x 535 (5th Cir. 2015) .......... 13

*Siracusano v. Matrixx Initiatives, Inc.*,
2006 WL 8437376 (D. Ariz. Mar. 8, 2006) .......... 10

*Sting Soccer Ops. Grp. LP v. JP Morgan Chase Bank, N.A.*,
2016 WL 4094980 (E.D. Tex. Aug. 2, 2016) .......... 15

*Target Strike, Inc. v. Marston & Marston, Inc.*,
2011 WL 676185 (W.D. Tex. Feb. 16, 2011) .......... 13, 14

*United States v. Pace*,
10 F.3d 1106 (5th Cir. 1993) .......... 3

*United States v. Valencia*,
600 F.3d 389 (5th Cir. 2010) .......... 2, 10

*Viterbo v. Dow Chem. Co.*,
826 F.2d 420 (5th Cir. 1987) .......... 2

*Wade v. WellPoint, Inc.*,
892 F. Supp. 2d 1102 (S.D. Ind. 2012) .......... 13

**Rules**

Fed. R. Evid. 403 .......... 3

Fed. R. Evid. 702 .......... 2, 8

Fed. R. Evid. 702 advisory committee's note to 2000 amendments .......... 3

Fed. R. Evid. 704 .......... 7

Fed. R. Evid. 704 advisory committee's note to 1972 proposed rules .......... 7

**Other Authorities**

U.S. Gulf Output Set to Rise as Beacon Offshore Brings Historic Wells Online, World Oil (Nov. 24, 2025), https://www.worldoil.com/news/2025/11/24/u-s-gulf-output-set-to-rise-as-beacon-offshore-brings-historic-wells-online/ .......... 11

Unlocking Ultra-High-Pressure Reserves, Clariant (Feb. 5, 2026), https://www.clariant.com/en/Corporate/Blog/2026-Blog-Posts/02/Clariant-Oil-Services .......... 11

## PRELIMINARY STATEMENT

Dr. Rocco Detomo is a geoscientist with over forty years of experience in all aspects of deepwater exploration, appraisal, and development projects, a large portion of which was spent in the Gulf of Mexico working on over twenty major projects similar to Shenandoah. Dr. Detomo offers opinions rebutting Plaintiffs' experts, Dr. Robert Merrill and Lyndon Pittinger.

Dr. Detomo explains that Merrill's and Pittinger's conclusions about Shenandoah's purported lack of commerciality are greatly overstated because they are based on flawed interpretations of the scientific data underpinning Anadarko's public statements, and they offer unreliable analyses of faulting and asphaltene mitigation at Shenandoah. Dr. Detomo opines that Shenandoah's commercial viability was uncertain during the Class Period and that Plaintiffs' experts' analyses rest on inconclusive data attributable to the poor-quality imaging of Shenandoah available at the time. Dr. Detomo also notes that Shenandoah's current development is powerful evidence that Shenandoah was commercially viable during the Class Period.

Plaintiffs' motion mischaracterizes Dr. Detomo's testimony and misapprehends the law governing admission of expert testimony. Dr. Detomo offers opinions on the scientific data underlying Anadarko's public statements, not legal conclusions, and his opinions about Shenandoah's current development are highly relevant to Plaintiffs' claim that Shenandoah was commercially unviable. Plaintiffs' arguments that Dr. Detomo is unqualified to offer opinions about Shenandoah's commercial viability and asphaltene mitigation ignore Dr. Detomo's extensive experience assessing projects' commerciality

and working on projects with asphaltenes. Plaintiffs' disputes with the technical details of Dr. Detomo's opinions are similarly contradicted by the evidence, which shows that these strategies had already been implemented at other developments, contrary to Plaintiffs' claim that Dr. Detomo relies on asphaltene mitigation techniques that were unavailable during the Class Period. Plaintiffs' motion should accordingly be denied.

## LEGAL STANDARD

To be admissible, expert opinions must be both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "Expert testimony is relevant so long as it 'would assist the trier of fact to understand or determine a fact in issue.'" *Prantil v. Arkema France S.A.*, 2022 WL 1570022, at *24 (S.D. Tex. May 18, 2022) (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)). The reliability of an expert's opinion is determined by looking at whether it is "based on sufficient facts or data" and "the product of reliable principles and methods." Fed. R. Evid. 702.

District courts have discretion to determine the admissibility of expert testimony. *United States v. Valencia,* 600 F.3d 389, 424 (5th Cir. 2010). The proponent of expert testimony need not prove—and the court need not conclude—that the expert's testimony is correct, only that it is sufficiently reliable to be considered by the jury. *El Campo Ventures, LLC v. Stratton Sec., Inc.*, 2021 WL 728186, at *2 (W.D. Tex. Jan. 29, 2021). Thus, criticisms of the bases of an expert's opinion generally go to weight, not admissibility. *Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 422 (5th Cir. 1987). Likewise, "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the

trier of fact[.]" *SEC v. Mapp*, 2017 WL 5466660, at *2 (E.D. Tex. Nov. 14, 2017) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).

"While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

Plaintiffs also seek to exclude certain of Keller's opinions under Rule 403. Under Rule 403, courts may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Evid. 403. Exclusion on that basis "should occur only sparingly." *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993).

## STATEMENT OF FACTS

Dr. Detomo is a geoscientist with over forty years of experience in the oil and gas industry. (Dkt. 323-1 (Expert Report of Dr. Rocco Detomo ("Detomo Rpt.")) ¶ 1.) During his 33 years at Shell Oil Company, he worked on over twenty major deepwater Gulf of Mexico exploration, appraisal, and development projects, totaling over 100 wells drilled. (*Id.* ¶ 11.) His roles on those projects were varied and encompassed multiple leadership

positions, including his assignments as Offshore Development Manager for the Cinnamon field, Deepwater Advisor for appraisal and development options at the Stones Lower Wilcox Tertiary development, Exploration Seismic Manager for Gulf of Mexico federal lease sales, Lead for Shell's Exploration Risking Team in Deepwater Subsurface Evaluation, and Manager for Shell's Deepwater Reservoir Monitoring Team for global assets. (*Id.*) In those roles, Dr. Detomo not only led teams interpreting complex seismic data and developing technologies for reservoir monitoring, but also supervised economic analyses to determine the commerciality of Shell's prospects and other prospects across the Gulf of Mexico. (Dkt. 323-2 (Dep. of Dr. Rocco Detomo ("Detomo Tr.") 47:9-15, 57:4-72:25.) Dr. Detomo is also active in his professional community as a prolific and prize-winning author on seismic interpretation and reservoir monitoring, and he is a current and former member of multiple professional and scientific committees. (Ex. 1[1].)

Drawing from this wealth of experience, Dr. Detomo offers expert testimony to rebut the opinions of Plaintiffs' experts—Merrill, a geologist, and Pittinger, a petroleum engineer—who were asked to opine on "adverse information" regarding Shenandoah's commercial viability and producible resource size leading up to and during the Class Period. (Dkt. 322-15, Ex. 18 (Expert Report of Dr. Robert Merrill ("Merrill Rpt.")) ¶ 3; Dkt. 322-17, Ex. 21 (Expert Report of Lyndon Pittinger ("Pittinger Rpt.")) ¶ 3.) Merrill and Pittinger opine that the economic evaluations and technical information contained in

[1] Unless otherwise noted, citations to Exhibits are to the Exhibits to the Declaration of Kevin J. Orsini in Support of Defendants' Oppositions to Plaintiffs' Motions to Exclude filed contemporaneously with this motion.

Anadarko's public statements were incorrect. (Merrill Rpt. ¶ 18(g); Pittinger Rpt. ¶ 11(j).) According to Merrill, Anadarko's public statements did not adequately reflect the negative impact of compartmentalization, tar, and faulting on Shenandoah's commercial viability. (Merrill Rpt. ¶¶ 18(c), 18(e), 27, 95, 97.) Pittinger similarly opines that Shenandoah's inherent subsurface characteristics, including compartmentalization and asphaltenes (substances that can precipitate out of crude oil and form deposits in pipes, negatively affecting oil flow and development), rendered the field commercially unviable, contrary to Anadarko's public statements during the Class Period. (Pittinger Rpt. ¶¶ 11(b), 11(e), 11(g), 11(j), 22; *see* Detomo Rpt. ¶ 120 (describing asphaltenes); Ex. 2 (APC-01760881) at -882 (same).)

In response, Dr. Detomo opines that Merrill's and Pittinger's interpretations of the scientific data underlying Anadarko's public statements significantly overstate Shenandoah's purported lack of viability and that their assertions about Shenandoah's faulting and the presence of asphaltenes rest on unreliable premises. (*See, e.g.*, Detomo Rpt. ¶¶ 28, 76, 288, 607, 743-48.) Dr. Detomo explains that the data Plaintiffs' experts analyzed was inconclusive, due in large part to the poor-quality seismic imaging of Shenandoah available at the time, and that Shenandoah's commercial viability remained uncertain during the Class Period—just as Anadarko repeatedly disclosed to its investors. (*Id.* ¶¶ 25, 32-33.) He also notes that current development at Shenandoah indicates that Shenandoah was commercially viable during the Class Period. (*Id.* ¶ 1050.)

## STATEMENT OF ISSUES

1. Whether the Court should deny Plaintiffs' motion to exclude Dr. Detomo's opinions regarding the technical and scientific data underlying Anadarko's disclosures where those opinions are not legal conclusions.

2. Whether the Court should deny Plaintiffs' motion to exclude Dr. Detomo's discussion of post-Class Period development as it is relevant to Plaintiffs' theory that Shenandoah was commercially unviable.

3. Whether the Court should deny Plaintiffs' motion to exclude Dr. Detomo's opinions based on his extensive deepwater exploration experience, including his work on over twenty major deepwater Gulf of Mexico exploration, appraisal, and development projects, totaling over 100 wells drilled.

4. Whether the Court should deny Plaintiffs' motion to exclude Dr. Detomo's opinions on asphaltenes where he is well-qualified to offer that testimony and such opinions are relevant and reliable.

## NATURE AND STAGE OF THE PROCEEDINGS

On November 9, 2022, Plaintiffs disclosed Merrill's and Pittinger's reports. On January 25, 2023, Defendants disclosed Dr. Detomo's report.

The parties originally filed *Daubert* motions on March 16, 2023. At that time, Plaintiffs filed a motion to exclude Dr. Detomo's testimony. (Dkt. 181.) That motion was administratively terminated by the Court on January 10, 2024. (Dkt. 216.) Plaintiffs filed their current motion to exclude Dr. Detomo's testimony on June 1, 2026, pursuant to the Court's April 27, 2026 scheduling order.

## ARGUMENT

### I. DR. DETOMO DOES NOT OFFER LEGAL CONCLUSIONS ON FALSITY AND IS QUALIFIED TO OPINE ON THE SCIENTIFIC FACTS UNDERLYING ANADARKO'S PUBLIC DISCLOSURES.

Plaintiffs mischaracterize Dr. Detomo's opinions and the relevant admissibility standard and ignore that Dr. Detomo is rebutting opinions offered by Merrill and Pittinger.

(*See* Dkt. 323 ("Pls. Mot.") at 4.) Merrill and Pittinger seek to opine on subjects like Shenandoah's commercial viability and the meaning of industry terms in Anadarko's disclosures—which are directly relevant to whether the alleged misrepresentations and omissions were false or misleading—and Dr. Detomo should be permitted to rebut those opinions. In doing so, Dr. Detomo addresses industry custom and scientific data. Dr. Detomo does not, as Plaintiffs argue, offer legal conclusions nor does he seek to testify about "disclosure requirements under the securities laws." (*Id.*)

While experts may not offer legal conclusions that "merely tell the jury what result to reach," an expert's opinion "is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a) & advisory committee's note to 1972 proposed rules; *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Courts regularly find expert testimony on industry customs and complex scientific issues helpful to a jury. *See, e.g.*, *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2014 WL 3557345, at *7 (N.D. Tex. July 18, 2014) (expert comparing marketing messages and opining on what the "underlying scientific research actually showed" deemed helpful "because he is interpreting complex scientific data to assess the truth of [the defendant's] marketing claims"); *Edwards v. Brent Baker Drilling, Inc.*, 2001 WL 36104321, at *2 (S.D. Tex. June 18, 2001) (admitting expert's testimony because his opinions on "industry customs may 'assist the trier of fact to understand the evidence'" (quoting Fed. R. Evid. 702)).

Dr. Detomo's opinions address scientific data in response to Merrill's and Pittinger's opinions and will help the jury evaluate Plaintiffs' allegations that Defendants'

statements were false or misleading. For example, Merrill opines that Anadarko's public statements were contradicted by "[k]nown risks and uncertainties about Shen," including "evidence of compartmentalization and faulting," and that "[e]xploration mapping of Shen with no faults and vigorous dissent from the pre-development team were red flags for management." (Merrill Rpt. ¶¶ 73, 97.) Dr. Detomo rebuts this by opining that the purported "known risks and uncertainties about Shen" on which Merrill opines "are either commonly known uncertainties, such as the risk of faulting, or detailed technical disagreements." (Detomo Rpt. ¶¶ 34, 1051; Detomo Tr. 109:16-22.) Similarly, Dr. Detomo's scientific assessment of Shenandoah's fluid quality is responsive to Merrill's opinion that Anadarko's statements about Shenandoah's reservoir and fluid qualities were false. (*Compare* Merrill Rpt. ¶ 95, *with* Detomo Rpt. ¶¶ 254-64.) Dr. Detomo also explains the scientific terms "all oil" and "full to base," referenced in several of the alleged misstatements at issue in this case, directly rebutting Pittinger's opinion that those terms do not accurately describe the results of Shen-4's side tracks. (*Compare* Pittinger Rpt. ¶ 128(a), *with* Detomo Rpt. ¶ 760 (rebutting Pittinger's erroneous interpretation of the well logs for Shen-4's side tracks).) This is precisely the type of rebuttal expert testimony that assists a jury in evaluating complex scientific issues not generally within the ken of a layperson's knowledge. *See In re DePuy Orthopaedics*, 2014 WL 3557345, at *7. Plaintiffs cannot have it both ways and ask their experts to opine on Anadarko's public statements while preventing Dr. Detomo from rebutting those opinions and opining on whether the scientific data aligns with their experts' claims.

The cases Plaintiffs cite are inapposite. In *In re Twitter Inc. Securities Litigation*, the court excluded expert testimony opining that a letter sent to the SEC was "misleading." 2020 WL 9073168, at *9 (N.D. Cal. Apr. 20, 2020). And both *Pearlstein v. BlackBerry Ltd.* and *In re Stratosphere Corporation Securities Litigation* involved expert testimony that directly commented on compliance with SEC disclosure requirements and the materiality of disputed statements. *See Pearlstein v. BlackBerry Ltd.*, 2021 WL 4131646, at *4 (S.D.N.Y. Sept. 10, 2021) (excluding expert testimony on whether "disclosures complied with SEC disclosure requirements or whether they were misleading and material to investors"); *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1191 & n.2 (D. Nev. 1999) (excluding expert testimony opining on whether the defendants' statements fell within the Private Securities Litigation Reform Act's safe harbor). Here, by contrast, Dr. Detomo offers an analysis of technical, specialized topics such as reservoir quality and well log interpretation. Dr. Detomo does not simply "supply the jury with no information other than [his] view of how its verdict should read." *Owen*, 698 F.2d at 240. That Dr. Detomo's opinions will help the jury assess Plaintiffs' characterizations of Anadarko's public disclosures and therefore may bear on the ultimate issue of falsity does not render his opinions excludable. *Id.*

Plaintiffs' additional argument that Dr. Detomo is unqualified to opine on SEC disclosures and securities law also mischaracterizes Dr. Detomo's opinions. (*See* Pls. Mot. at 5.) Dr. Detomo does not purport to be an expert on SEC disclosure obligations or to offer opinions as to whether Anadarko was required under SEC regulations to make certain

disclosures. Plaintiffs' attack on a straw man does not warrant exclusion. *See Valencia*, 600 F.3d at 424 ("relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it"); *Lyondell Chem. Co. v. Albemarle Corp.*, 2007 WL 5527507, at *5 (E.D. Tex. Mar. 7, 2007) (denying motion to exclude because plaintiffs did not dispute the expert's "actual claim, merely its own straw man interpretation of it").

## II. DR. DETOMO'S OPINIONS ABOUT POST-CLASS PERIOD OPERATIONS AT SHENANDOAH ARE ADMISSIBLE.

Plaintiffs' argument that Dr. Detomo's references to post-Class Period development efforts at Shenandoah should be excluded because they are "irrelevant, unreliable, and present a substantial risk of misleading the jury" should be rejected. (*See* Pls. Mot. at 5.) The Class Period "does not determine the period of relevancy for discovery purposes. There are numerous instances in securities fraud litigation where post-offering statements, documents, or conduct have been treated as admissible evidence on the issue of scienter, intent, and knowledge." *Siracusano v. Matrixx Initiatives, Inc.*, 2006 WL 8437376, at *3 (D. Ariz. Mar. 8, 2006) (citation omitted). This is because "allegations of later-emerging facts can . . . provide warrant for inferences about an earlier situation." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 698 (5th Cir. 2005); *see In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) ("[a]ny information that sheds light on whether class period statements were false or materially misleading is relevant").

The fact that Shenandoah is now being commercially developed and lauded as an "exceptional" field[2] containing "the largest producing wells in all of North America, not just in the Gulf"[3] is highly relevant because it undermines Plaintiffs' central theory: that Shenandoah was commercially unviable and that Defendants hid this fact from investors. (Dkt. 55 ¶¶ 5, 94-141); *see Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) ("The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" (citation omitted)). Shenandoah's successful development belies this claim. As Dr. Detomo explains, "Since it is fair to assume that the subsurface characteristics of the field have remained fundamentally unchanged from when Anadarko appraised it, the current development plans are compelling evidence that Shenandoah was commercially viable during the Class Period as well." (Detomo Rpt. ¶ 1050.)

The intervening variables Plaintiffs cite, "such as new technological developments and different cost structures and business models" (Pls. Mot. at 6), are precisely the factors that Anadarko informed the market would need to exist before Shenandoah's commercial development could proceed. (Dkt. 308-2, Ex. 1 (Expert Report of Peter Keller ("Keller Rpt.")) ¶¶ 157-70 (noting that investors knew Shenandoah would require use of advanced

[2] Unlocking Ultra-High-Pressure Reserves, Clariant (Feb. 5, 2026), https://www.clariant.com/en/Corporate/Blog/2026-Blog-Posts/02/Clariant-Oil-Services.

[3] U.S. Gulf Output Set to Rise as Beacon Offshore Brings Historic Wells Online, World Oil (Nov. 24, 2025), https://www.worldoil.com/news/2025/11/24/u-s-gulf-output-set-to-rise-as-beacon-offshore-brings-historic-wells-online/.

technology to drill at pressures of 20,000 psi and this technology was not available at the start of the Class Period); Dkt. 322-23, Ex. 47 (APC-01751407) at -409 (November 2016 Anadarko statement that prices would need to exceed "$70 most likely before we see greenfield projects and deepwater basins around the world").) If anything, Plaintiffs' argument highlights the direct relevance of Dr. Detomo's references to Shenandoah's current development—under the same conditions that Anadarko explained would be necessary for production (Detomo Rpt. ¶¶ 157-64)—to Anadarko's truthful statements about Shenandoah's commercial viability.

Plaintiffs' further argument that Dr. Detomo's references to post-Class Period development risk jury confusion has no support. Plaintiffs' only reasoning is that the inquiry will be "fact-intensive." (*See* Pls. Mot. at 6.) But sifting through facts is exactly what juries are called upon to do in every case. And the jury will be instructed on the appropriate legal standard.

The Fifth Circuit cases Plaintiffs cite bear no similarity to the facts here. *See LeBoeuf v. K-Mart Corp*., 888 F.2d 330, 333 (5th Cir. 1989) (excluding evidence of the subsequent condition of store's floors two years after the accident as non-probative because "dangerous conditions happen, come and go in stores all the time"); *Shu-Hui Wu v. Miss. State Univ.*, 626 F. App'x 535, 540 (5th Cir. 2015) (excluding expert analysis based on combined data from relevant time period and after that time period, with no way to isolate data from either time period). And the other case Plaintiffs cite, *Wade v. WellPoint, Inc.*, 892 F. Supp. 2d 1102, 1134 n.21 (S.D. Ind. 2012), is a non-binding out-of-circuit case that

is inconsistent with decisions the Fifth Circuit has cited approvingly. *See Plotkin*, 407 F.3d at 698 (citing language in *Novak v. Kasaks*, 216 F.3d 300, 313 (2d Cir. 2000) stating that post-class period evidence may support inferences about evidence dated within the Class Period).

## III. DR. DETOMO IS WELL-QUALIFIED TO TESTIFY BASED ON HIS EXTENSIVE DEEPWATER OIL EXPERIENCE.

Plaintiffs' contention that Dr. Detomo lacks appropriate qualifications even though he is a geoscientist with decades of experience with deepwater oil drilling lacks merit. (*See* Pls. Mot. at 6-9.) Dr. Detomo worked for over forty years on multidisciplinary teams on "over 20 major deepwater Gulf of Mexico exploration, appraisal, and development projects totaling over 100 wells drilled" and is well-qualified to rebut Plaintiffs' experts' opinions about Shenandoah's commercial viability. (*See* Detomo Rpt. ¶¶ 1, 11.)

As courts have repeatedly recognized, experience in a field qualifies someone to serve as an expert. *Kumho Tire*, 526 U.S. at 156 (experts may draw on "extensive and specialized experience" to form opinions); *see Target Strike, Inc. v. Marston & Marston, Inc.*, 2011 WL 676185, at *2 (W.D. Tex. Feb. 16, 2011) (rejecting plaintiffs' argument that geologist was unqualified to comment on geophysics, geochemistry, and costs of mineral exploration and mining).

Dr. Detomo's experience clears this hurdle and then some. Not only has he taken formal courses in petroleum engineering and economic analysis regarding "all of the things you would need in order to evaluate the economics of a prospect or a field" (Detomo Tr. 44:17-25, 45:21-46:8), but he also has significant practical work experience assessing

projects' commerciality and teaching oil and gas project economics within the industry. Plaintiffs argue that Dr. Detomo is not a member of the Society of Petroleum Engineers, but that is not a requirement for experience in the field. (*See* Pls. Mot. at 8.) Indeed, Plaintiffs omit that Dr. Detomo was responsible for supervising the risk assessment and economic analyses performed by the engineers on multiple projects to ensure that they were executed correctly; Dr. Detomo's work on a quantitative integrated valuation team, both teaching the methodology and performing quality control for the team's reserve estimation; and his participation between 2005 and 2008 on a leadership team that "evaluate[d] the potential economics of every prospect and every fault block that was up for sale" in the Gulf of Mexico. (Detomo Tr. 60:18-61:1, 61:24-63:4, 64:19-66:8, 68:21-71:18.) This training and practical experience more than qualify Dr. Detomo to rebut Plaintiffs' experts' assessments of Shenandoah's commerciality. *See Target Strike*, 2011 WL 676185, at *2 (geologist "directly involved in all phases of exploration" was qualified to testify about "the costs associated with mineral exploration and mining," and "differences between plaintiffs' [software program] system and the systems [the expert] references in his report are best explored during cross examination").

Plaintiffs' reliance on a Wiki definition of "geophysicist" is misplaced. (Pls. Mot. at 7-8 & n.2.) Not only is this "support" cherry-picked and arbitrary at best, it also rests on a logical fallacy. That petroleum engineers perform reservoir commerciality analyses does not mean that they are the only ones qualified to opine on that subject, nor does it establish that Dr. Detomo is unqualified.

Where, as here, "there are reasonable indications of an expert's qualifications, the question is no longer one of gatekeeping, but one of fact for the trier of fact." *Sting Soccer Operations Grp. LP v. JP Morgan Chase Bank, N.A.*, 2016 WL 4094980, at *4 (E.D. Tex. Aug. 2, 2016). Plaintiffs' complaints about Dr. Detomo's experience or credentials should accordingly be addressed through cross-examination, not exclusion.

## IV. DR. DETOMO IS QUALIFIED TO TESTIFY ABOUT ASPHALTENE MITIGATION AND OFFERS OPINIONS THAT ARE RELEVANT, RELIABLE, AND SUPPORTED BY ADEQUATE FACTUAL BASES.

Plaintiffs misstate Dr. Detomo's qualifications and the evidence underpinning his opinions on asphaltenes. (*See* Pls. Mot. at 9-13.) Dr. Detomo is well-qualified to testify about asphaltene mitigation, which is directly responsive and relevant to Plaintiffs' experts' opinions.

### A. Dr. Detomo Is Qualified to Offer Opinions on Asphaltene Mitigation.

Dr. Detomo is qualified to opine on asphaltene mitigation based on his experience with multiple projects that encountered asphaltenes and required the use of mitigation techniques. (Detomo Tr. 31:20-32:1, 63:8-23.) It is Pittinger—whose opinions Dr. Detomo is rebutting—who lacks experience with asphaltenes. In fact, Pittinger admitted he has no experience working on a project where asphaltenes were present, and he conceded that he was unfamiliar with "any projects where the presence of asphaltene render[ed] the project uncommercial." (*See, e.g.*, Ex. 3 (Dep. of Lyndon Pittinger ("Pittinger Tr.")) 97:8-98:16.)

Plaintiffs mischaracterize Dr. Detomo's testimony by arguing that he "equivocated" when asked "whether he was offering an 'expert' opinion about 'asphaltene deposition and mitigation.'" (*See* Pls. Mot. at 10.) Dr. Detomo did not equivocate: He was clear that he has a significant amount of professional experience on asphaltenes and that his opinion concerning asphaltenes is based on that experience. (*See* Detomo Tr. 31:20-32:1 ("Q: Are you offering an expert opinion on the impact of asphaltene deposition and mitigation? A: I'm offering the level of knowledge and experience that I have with respect to it. As to whether it reaches the level of expert opinion, I don't know what that level is, but I have *quite a bit of experience with it.*" (emphasis added)).) In the testimony at issue, he simply explained that he did not know what amount of expertise "reaches the level of expert opinion." (*Id.*) This is far afield from the "candid[] admi[ssion]" in the case Plaintiffs rely upon, *In re FEMA Trailer Formaldehyde Products Liability Litigation*, in which a proffered expert "in the fields of construction and materials used in the Gulf Stream trailer" conceded "not only [did] he lack expertise in the design or construction of travel trailers" but he also had no knowledge of what construction materials used for the trailer contain formaldehyde or of issues involving off-gasing formaldehyde. 2009 WL 2971783, at *1 (E.D. La. Sept. 11, 2009). Dr. Detomo's experience with asphaltenes and implementing related mitigation techniques also distinguishes him from the proposed expert in the other case Plaintiffs cite, who had "never actually performed the same type of analysis before." *Diamond Offshore Co. v. Survival Sys. Int'l, Inc.*, 2013 WL 371648, at *13 (S.D. Tex. Jan. 29, 2013).

**B. Dr. Detomo's Opinions Regarding Asphaltene Mitigation Are Relevant, Reliable, and Supported by Adequate Factual Bases.**

The Court should dismiss Plaintiffs' quibbles with Dr. Detomo's technical explanations of various methods for mitigating the impact of asphaltenes, which Dr. Detomo, unlike Pittinger, has significant practical experience handling. Plaintiffs are incorrect that certain technical strategies for mitigating asphaltene precipitation and deposition discussed in Dr. Detomo's report—specifically, chemical injection, xylene soaks, coated tubing, coiled tubing cleanouts, and downhole interventions—were not available during the Class Period. (*See* Pls. Mot. at 10-11.) Not only did Plaintiffs' own expert recognize that coiled tubing cleanouts were "available for restoring declining well performance from asphaltene deposition" (Pittinger Rpt. ¶ 267), but each of the other mitigation strategies had been implemented by Anadarko or other companies on other projects before the Class Period (*see* Detomo Rpt. ¶¶ 746 & n.706, ¶ 851 (Chevron used chemical injections, a technique that was "already in common use in deepwater Gulf of Mexico," at another well development before the Class Period); *id.* ¶ 747 & n.707 (Anadarko had experience implementing a xylene treatment at another development before the Class Period); Ex. 4 (APC-00044530) at slide 9 (noting "APC Asphaltene Experience" with xylene tubing soaks at multiple wells); Detomo Tr. 208:14-25 (Chevron pre-Class Period project used coated tubing, and Dr. Detomo was aware of its use in other projects); Detomo Rpt. ¶ 746 (Chevron's pre-Class Period development used a downhole intervention: downhole chemical injection)). And regardless, these challenges to purported factual errors underlying Dr. Detomo's opinion go to the weight of his testimony,

not admissibility, and may be appropriately explored on cross-examination. *Puga*, 922 F.3d at 294; *see also* Dkt. 302 at 11-13.

The Court should also reject Plaintiffs' scattershot arguments that Dr. Detomo's assumptions relevant to asphaltene mitigation "lack a sufficient factual basis" and that he did not consider certain record evidence. (*See* Pls. Mot. at 12-13.) Like Plaintiffs' quibbles with Dr. Detomo's technical discussion of asphaltene mitigation techniques, these arguments bear at most on the weight of his testimony, not its admissibility. *See Canrig Drilling Tech. Ltd. v. Trinidad Drilling L.P.*, 2016 WL 7188657, at *8 (S.D. Tex. Dec. 12, 2016); Dkt. 302 at 11-13 (denying request to exclude testimony that, according to plaintiffs, "relie[d] on a series of false assumptions and factual errors").

These arguments also cherry pick the record. Plaintiffs claim that Dr. Detomo incorrectly assumes that Shenandoah's asphaltene onset pressures ("AOPs")—that is, the point at which asphaltenes might precipitate and deposit out of oil absent mitigation techniques (*see* Detomo Tr. 175:3-16)—"were ***less than half*** of what they actually were" (Pls. Mot. at 12 (emphasis in original)). This argument hangs entirely on the fact that at his deposition, Dr. Detomo stated that, off the top of his head, he could not remember certain AOPs and offered a rough estimate. (Detomo Tr. 180:15-25.) But Plaintiffs omit that immediately following that statement, Dr. Detomo agreed that the AOPs "may be something around [the] order" of the AOPs that Plaintiffs cite in their motion (*id.* at 181:1-16; *see* Pls. Mot. at 12), as well as the fact that Dr. Detomo's report addressed these very

AOP estimates (Detomo Rpt. ¶ 845-46 (explaining that Pittinger's discussion of these AOPs is "incomplete" because it fails to address any mitigations)).

Plaintiffs next argue that Dr. Detomo cites Anadarko's K2 oil field as a successful example of a field where Anadarko mitigated asphaltenes but that he "admitted in his deposition that K2 'failed . . . because of asphaltene.'" (Pls. Mot. at 12 (citing Detomo Tr. 191:12-192:19).) This again misrepresents Dr. Detomo's testimony. Dr. Detomo explained that one well in the K2 field failed because of asphaltenes before Anadarko conducted mitigation, but that Anadarko "learned from that well and . . . made changes to the way they operated the field" such that the K2 *field* was ultimately a success. (Detomo Tr. 192:3-19 (explaining that "K2 is not a well").)

Finally, Plaintiffs claim that Dr. Detomo's report ignores a ConocoPhillips email regarding the impact of AOPs on recovery, but Dr. Detomo explicitly responds to that email in his report. (*Compare* Detomo Rpt. ¶¶ 364-65, *with* Pls. Mot. at 12.) As Dr. Detomo explains, the ConocoPhillips email at issue was authored at a point in the appraisal when "the impact that asphaltene precipitation might have on recovery estimates was far from understood," and the email also "made no attempt to consider mitigation strategies or optimum production engineering designs, let alone their costs." (Detomo Rpt. ¶ 365.)

Plaintiffs misstate the permissible bases for excluding expert opinions and, at best, evince a fundamental misunderstanding of the record. Their arguments should be rejected.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion.

Dated: July 14, 2026

Respectfully submitted,

*/s/ Kevin J. Orsini*

**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Melissa A. Syring (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com
msyring@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4,928 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: July 14, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: July 14, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini