**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF J. RICHARD DIETRICH, Ph.D.**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

LEGAL STANDARD ..... 3

STATEMENT OF FACTS ..... 4

STATEMENT OF ISSUES ..... 9

NATURE AND STAGE OF PROCEEDINGS ..... 9

ARGUMENT ..... 10

I. DR. DIETRICH'S OPINION THAT SHEN-3 WAS PROPERLY SUSPENDED SHOULD NOT BE EXCLUDED ..... 10

II. DR. DIETRICH'S OPINION REGARDING SHEN-3 IS RELEVANT. ..... 13

III. DR. DIETRICH'S REPORT IS A PROPER REBUTTAL REPORT THAT WAS TIMELY DISCLOSED. ..... 15

A. Dr. Dietrich's Report Was Timely Disclosed. ..... 15

B. Dr. Dietrich is a Proper Rebuttal Expert. ..... 17

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Anascape, Ltd. v. Microsoft Corp.*,
2008 WL 7180757 (E.D. Tex. Apr. 28, 2008) ....................4, 12

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996) ....................4, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ....................3

*Galvez v. KLLM Transp. Servs., LLC*,
575 F. Supp. 3d 748 (N.D. Tex. 2021) ....................14

*H & A Land Corp. v. City of Kennedale*,
2005 WL 8159199 (N.D. Tex. Mar. 18, 2005) ....................16

*Jacked Up, LLC v. Sara Lee Corp.*,
291 F. Supp. 3d 795 (N.D. Tex. 2018), ....................4

*Landmark Am. Ins. Co. v. Royal by Sea Condo. Owners Ass'n, Inc.*,
2021 WL 5085180 (S.D. Tex. July 8, 2021) ....................17, 18

*Lockett v. Doyle Dickerson Terrazzo, Inc.*,
2021 WL 6066697 (E.D. La. Nov. 3, 2021) ....................4, 12

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ....................16

*Meadours v. Ermel*,
2005 WL 1923596 (S.D. Tex. Aug. 10, 2005) ....................12, 13

*Moguel v. Rheem Mfg. Co.*,
2013 WL 3947170 (E.D. La. July 31, 2013) ....................2

*Poly-Am., Inc. v. Serrot Int'l, Inc.*,
2002 WL 1996561 (N.D. Tex. Aug. 26, 2002) ....................17, 18

*Puga v. RCX Sols., Inc.*,
922 F.3d 285 (5th Cir. 2019) ....................11

*SEC v. Life Partners Holdings, Inc.*,
854 F.3d 765 (5th Cir. 2017) ....................4

*United States v. Kuhrt*,
788 F.3d 403 (5th Cir. 2015) ....................................................................................4

*United States v. Valencia*,
600 F.3d 389 (5th Cir. 2010) ..................................................................................12

*Viterbo v. Dow Chem. Co.*,
826 F.2d 420 (5th Cir. 1987) ..................................................................................12

**Statutes & Rules**

Fed. R. Civ. P. 26(a)(2)........................................................................................... *passim*

Fed. R. Evid. 702 advisory committee's note to 2000 amendments...............................................3

Fed. R. Evid. 702 ...................................................................................................................3

## PRELIMINARY STATEMENT

Dr. Richard Dietrich is a highly respected accounting expert with a decades-long career in academia. Defendants retained Dr. Dietrich to opine on Anadarko's accounting and to respond to Plaintiffs' proffered accounting expert, D. Paul Regan, who offers opinions about Anadarko's accounting of Shen-3 (the second appraisal well at Shenandoah) and the Shenandoah project as a whole. Dr. Dietrich demonstrates that Anadarko's accounting of Shen-3 was consistent with Generally Accepted Accounting Principles ("GAAP"), and that Regan's accounting opinions are flawed and unreliable as they disregard professional judgment and are predicated on superseded and non-authoritative guidance. Plaintiffs' motion to partially exclude Dr. Dietrich's testimony (Dkt. 324 ("Pls. Mot.")) fails.

*First*, Plaintiffs' argument that Dr. Dietrich's Shen-3 accounting opinion should be excluded because it relies on an "undisclosed reserves analysis" concerning another well, Shen-1, mischaracterizes his analysis. (Pls. Mot. at 9.) Nowhere in Dr. Dietrich's report does he purport to analyze whether Shen-1's reserves were sufficient to constitute proved reserves. Instead, Dr. Dietrich rebuts Regan's opinion on Anadarko's accounting treatment of Shen-3 as unreliable and flawed, and opines that Anadarko properly suspended (*i.e.*, capitalized) Shen-3 under Accounting Standards Codification Topic 932, *Extractive Activities – Oil and Gas* ("ASC 932"). As part of this opinion, Dr. Dietrich concludes that Shen-3 satisfied the ASC 932 criteria, which included, in part, consideration of the reserves identified prior to Shen-3 (*i.e.,* Shen-1 and Shen-2). While Dr. Dietrich considered reserves identified prior to Shen-3, his analysis is with respect to Shen-3, and Plaintiffs do not

suggest that he failed to disclose that analysis. At most, Plaintiffs take issue with a single assumption, about Shen-1's reserves, that underlies a sub-component of the bases of Dr. Dietrich's opinion as to Shen-3's accounting. Because "contentions that [an expert's] assumptions are unfounded go to the weight, not the admissibility, of the testimony," *Moguel v. Rheem Mfg. Co.*, 2013 WL 3947170, at *2 (E.D. La. July 31, 2013) (quotation omitted), Plaintiffs' objection is not grounds for exclusion.

*Second*, Plaintiffs mischaracterize the record in arguing that Dr. Dietrich should not be allowed to testify that Shen-3 was a "successful appraisal well" because in deposition he testified that such an assertion was "irrelevant." (Pls. Mot. at 10-11.) As Dr. Dietrich explained in his deposition—and Plaintiffs conveniently omit—"as a matter of accounting, the word 'successful' or 'unsuccessful' is not used in [GAAP]." (Dkt. 324-2 (Dep. of J. Richard Dietrich ("Dietrich Tr.") 182:2-4).) What was relevant to Dr. Dietrich's determination that Anadarko appropriately suspended Shen-3 costs was information about Anadarko's independent assessment of Shen-3, which included Anadarko's conclusion that Shen-3 was a "successful" well in that it allowed the company to gather information that was helpful in assessing the Shenandoah resource. Plaintiffs do not (and cannot) argue that the reasons for Shen-3's "success," as Anadarko may have used that word, are irrelevant to Dr. Dietrich's opinion.

*Third*, Plaintiffs' attempt to exclude as untimely certain "affirmative" sections of Dr. Dietrich's report they claim are not "rebuttal" opinions relies on a fundamental misinterpretation of both the report and the operative scheduling order. The Court's Amended Scheduling and Docket Control Order ("Scheduling Order") imposed two

deadlines: (1) the deadline for reports on issues for which the party bears the burden of proof, and (2) the deadline for "rebuttal" reports by the opposing party. (Dkt. 142.) Because Dr. Dietrich's opinions go to the purported falsity of Anadarko's statements—an issue for which Defendants do *not* bear the burden of proof—his report was timely disclosed under the second deadline of the Scheduling Order. In any event, Dr. Dietrich is a proper rebuttal expert because the sections of his report Plaintiffs characterize as "affirmative" directly respond to Regan's contentions that Anadarko improperly suspended Shen-3 and delayed impairment of Shenandoah as a whole.

Accordingly, the Court should deny Plaintiffs' motion to exclude Dr. Dietrich's testimony.

## LEGAL STANDARD

The Federal Rules of Evidence require the district court to act as a "gatekeeper" to ensure expert testimony is relevant and reliable. Fed. R. Evid. 702 advisory committee's notes (2000); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–95 & n. 7 (1993). "The focus, of course, must be *solely* on principles and methodology, *not* on the conclusions that they generate." *Daubert*, 509 U.S. at 595 (emphasis added).

Under Rule 702, expert testimony is reliable if (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

An expert opinion is relevant if it "fits" the facts of the case such that "it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. "The relevance prong

requires the proponent to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 776 (5th Cir. 2017) (quoting *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015)).

As a general rule, objections pertaining to the substance or accuracy of an expert's testimony are not grounds for exclusion under *Daubert*. *See Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7180757, at *3 (E.D. Tex. Apr. 28, 2008) ("Defendants' argument that the data relied upon was incorrect or incapable of being verified goes to the weight of [the expert's] testimony."); *see also Lockett v. Doyle Dickerson Terrazzo, Inc.*, 2021 WL 6066697, at *6 (E.D. La. Nov. 3, 2021) (denying motion to exclude expert whose "calculations may have been premised on incomplete information and unrealistic assumptions" because "[d]efendants may address their doubts about [the expert's] assumptions by challenging them on cross-examination"). Moreover, "[e]xperts are permitted to rely on assumptions when reaching their opinions." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 806 (N.D. Tex. 2018), *aff'd*, 2018 WL 2064126 (N.D. Tex. May 2, 2018) (citation omitted). Indeed, unless an assumption is "so unrealistic and contradictory as to suggest bad faith, . . . contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citation omitted).

## STATEMENT OF FACTS

Dr. Dietrich is a highly respected accounting expert. Holding a M.S. in Accounting and a Ph.D. in Industrial Administration, Dr. Dietrich has served as an accounting professor for over 46 years, teaching at the University of Texas at Austin, the University of Illinois

at Urbana-Champaign, and the Ohio State University, where he is currently Professor Emeritus of Accounting in the Department of Accounting and Management Information Systems. (*See* Dkt. 324-1 (Expert Report of J. Richard Dietrich ("Dietrich Rpt.")) at App'x B.) Dr. Dietrich has served as an editor of numerous academic publications, including the *Journal of Accounting and Economics* and *The Accounting Review*. (*Id.*) He served as a member of the Standing Advisory Group of the Public Company Accounting Oversight Board ("PCAOB") and on the Financial Reporting Executive Committee of the American Institute of Certified Public Accountants. (*Id.*) He has conducted accounting analyses and testified about accounting methodology in numerous cases, including providing trial testimony in *Cohen v. Chicago Bridge & Iron Co. N.V.*, No. 17-10-128720 (Tex. Dist. Ct. 2021). Dr. Dietrich uses this expertise to respond to the opinions of Plaintiffs' proffered accounting expert, Regan. The facts relevant to these accounting opinions are set forth below.

On June 3, 2008, Anadarko spud Shen-1, Shenandoah's initial exploratory well. (Dietrich Rpt. ¶ 16.) Shen-1 encountered approximately 300 feet of net oil pay, confirming the presence of oil in the Shenandoah basin. (*Id.*) Anadarko then implemented an "appraisal program" consisting of multiple exploratory wells intended to gather information about the size and extent of Shenandoah's resource range with the ultimate goal of determining whether sufficient reserves justified commercial development. (*Id.* ¶ 17.) The first appraisal well, Shen-2, was drilled on July 1, 2012 and encountered 1,000 feet of net oil pay. (*Id.* ¶ 19.) Anadarko then drilled Shen-3 on May 28, 2014 with the primary purpose of testing sand continuity, finding the oil-water contact, and testing

pressure connectivity with Shen-2. (*Id.* ¶ 20.) Though Shen-3 did not encounter oil, it fulfilled these purposes and provided "extremely valuable information" concerning the extent of Shenandoah's oil reserves. (*Id.* ¶ 93 (quoting Ex. 9[1] (APC-00626533)).) In accordance with its accounting policy, Anadarko did not initially expense the costs of Shen-3. (Dkt. 322-10, Ex. 9 (Dep. of Catherine Anne Green ("Green Tr.")) 81:25-84:13.) The third appraisal well, Shen-4, was spud in May 2015 and encountered salt. (Dietrich Rpt. ¶ 21.) A subsequent sidetrack, however, encountered over 620 feet of oil. (*Id.*) Shen-5 was drilled in March 2016 and encountered over 1,000 feet of net oil pay. (*Id.* ¶ 22.) In the third quarter of 2016, between Shen-5 and Shen-6, which was spud in December 2016, Anadarko revised its accounting treatment to expense Shen-3 costs. (Dkt. 322-23, Ex. 46 (APC-00002132) at -134; Dkt. 322-27, Ex. 95 (APC002732) at 11 (Anadarko Q3 2016 10-Q announcing decision).) Shen-6 and a subsequent sidetrack did not encounter oil, and on May 2, 2017, Anadarko announced it was expensing previously suspended well costs and recognized an impairment charge. (Dietrich Rpt. ¶¶ 23-24.)

Plaintiffs' expert, Regan, offers opinions on Anadarko's accounting treatment of the Shenandoah project. In his report, Regan opines that Anadarko's decision to suspend Shen-3's costs—both the initial decision to suspend costs and the subsequent decision not to expense costs through 2015—was inconsistent with GAAP. (Dkt. 307-1, Ex. 3 (Expert Report of D. Paul Regan ("Regan Rpt.")) ¶¶ 11(a)-(b).) Regan also opines that Anadarko

---

[1] Unless otherwise noted, citations to Exhibits are to the Exhibits to the Declaration of Kevin J. Orsini in Support of Defendants' Oppositions to Plaintiffs' Motions to Exclude filed contemporaneously with this motion.

should have expensed costs relating generally to the Shenandoah project starting on at least December 31, 2015, and that its purported failure to do so was a violation of GAAP and SEC reporting rules. (*Id.* ¶¶ 11(d)-(f).) Regan further opines that these two alleged accounting errors were material. (*Id.* ¶¶ 11(c), (g).) Regan's opinions rely on three assumptions provided by Plaintiffs regarding both Shen-3 and the commercial viability of Shenandoah generally. (*Id.* ¶¶ 2(a)-(c).)

Dr. Dietrich responds to Regan's report and, in doing so, opines on Anadarko's accounting treatment of Shenandoah. As to Regan's testimony regarding Shen-3, Dr. Dietrich opines that Regan relies on superseded, non-authoritative guidance and incompletely assesses ASC 932—most notably by failing to recognize that ASC 932 permits an operator to evaluate identified reserves at the project level, rather than solely at the individual exploratory well. (Dietrich Rpt. § VII.C.) In connection with this rebuttal opinion, Dr. Dietrich concludes that Anadarko's initial and continued suspension of Shen-3 well costs were consistent with GAAP. (*Id.* §§ VII.A-B.) Dr. Dietrich also opines that Regan's opinion that GAAP required Anadarko to impair the Shenandoah project prior to Q1 2017 disregards relevant information and is thus flawed and unreliable. (*Id.* § X.B.) Dr. Dietrich bases his rebuttal opinion on his conclusion that Anadarko timely impaired the Shenandoah project under GAAP. (*Id.* § X.A.)

Plaintiffs' arguments focus primarily on Dr. Dietrich's opinion regarding Shen-3 accounting. That opinion relies on his interpretation of the applicable GAAP standard, ASC 932. Under ASC 932, the costs of drilling exploratory wells may be suspended "pending determination of whether the well has found proved reserves." (*Id.* ¶ 74 (citing

Dkt. 322-35, Ex. 114 (ASC 932-360-25-10)).) Because "[t]he amount of time required to determine whether proved reserves are found can be long," ASC 932 permits operators to make accounting determinations regarding a single exploratory well based on the reserves attributable to a reservoir field as a whole, rather than only with respect to the one well. (*Id.* at ¶ 57.) At that project level, there are two governing criteria: (1) "Sufficient Quantity," which requires the quantity of reserves—assessed across the entire reservoir field—to justify completion of the project for production, and (2) "Sufficient Progress," which requires that the operator be making sufficient progress in assessing the reserves and the commercial viability of the project. (*Id.*) If both conditions are satisfied, the costs associated with a certain exploratory well may be suspended. (*Id.*)

Applying ASC 932 to Anadarko's accounting treatment of Shen-3, Dr. Dietrich concludes that Anadarko's decision to suspend Shen-3's costs was consistent with GAAP. (Dietrich Tr. 186:1-9.) Dr. Dietrich opines that the reserves identified in Shenandoah's previous exploratory wells, including Shen-1's discovery of 300 feet of net oil pay and Shen-2's 1,000 feet of net pay, established sufficient oil reserves to justify suspension of further exploratory wells. (*Id.*) He also concludes that Shen-3 provided valuable information that supported a finding of sufficient quantity of reserves for the Shenandoah project as a whole. (*See* Dietrich Rpt. ¶ 93.) As to sufficient progress, Dr. Dietrich opines that Shen-3 provided information that helped Anadarko estimate Shenandoah's recoverable resource range further justifying additional development. (*See id.*)

## STATEMENT OF ISSUES

1. Whether the Court should deny Plaintiffs' motion to exclude Dr. Dietrich's opinions concerning Anadarko's accounting treatment of Shen-3 because those opinions rely on a sound methodology and any objection to an underlying assumption goes to weight, not admissibility.

2. Whether the Court should deny Plaintiffs' motion to exclude Dr. Dietrich's testimony that Shen-3 was a "successful" appraisal well because it serves as a basis for his determination that Anadarko appropriately suspended Shen-3 well costs.

3. Whether the Court should deny Plaintiffs' motion to exclude certain opinions in Dr. Dietrich's report—which respond to Regan's accounting opinions—because they were timely disclosed.

## NATURE AND STAGE OF PROCEEDINGS

In its October 11, 2022 Scheduling Order, the Court directed the parties "with the burden of proof on an issue [to] designate expert witnesses in writing and provide the required report under Rule 26(a)(2)" by November 9, 2022. (Dkt. 142.) The Court also ordered "Rebuttal Expert Designations," directing "[t]he opposing party [to] designate expert witnesses in writing and provide the required report under Rule 26(a)(2)" by January 25, 2023. (*Id.*)

Pursuant to the Scheduling Order, on November 9, 2022, Plaintiffs disclosed Regan's report, which offers opinions about Anadarko's accounting of Shen-3 and Shenandoah more broadly. On January 25, 2023, Defendants disclosed Dr. Dietrich's report, which responds to Regan's accounting opinions.

The parties originally filed *Daubert* motions on March 16, 2023. At that time, Plaintiffs filed a motion to exclude Dr. Dietrich's expert testimony. (Dkt. 182.) That motion was administratively terminated by the Court on January 10, 2024. (Dkt. 216.)

Plaintiffs filed the present motion to exclude Dr. Dietrich's testimony on June 1, 2026. (Dkt. 324.)

## ARGUMENT

### I. DR. DIETRICH'S OPINION THAT SHEN-3 WAS PROPERLY SUSPENDED SHOULD NOT BE EXCLUDED.

Dr. Dietrich opines that Anadarko properly accounted for Shen-3. Plaintiffs do not take issue with the methodology he used in applying the relevant accounting standard. Instead, Plaintiffs seek to quarrel with one purported assumption underlying one of many bases for Dr. Dietrich's opinion. Plaintiffs' argument is untethered from the law.

In responding to Regan's opinion about Anadarko's suspension of Shen-3, Dr. Dietrich opines that Anadarko's decision to suspend Shen-3 was consistent with GAAP because Shen-3 provided valuable information regarding Shenandoah's resource size, and because Shenandoah's previous exploratory wells (*i.e.*, Shen-1 and Shen-2) identified recoverable resources. Dr. Dietrich lays out in detail how Anadarko's Shen-3 accounting decisions were consistent with ASC 932. (*See* Dietrich Rpt. ¶¶ 73-99.) Specifically, he explains "as applied to an evaluation of the drilling costs associated with Shen 3, there is substantial evidence that the Sufficient Progress criterion was met. Indeed, my review demonstrates that, as of December 31, 2014, Anadarko was making sufficient progress in assessing the reserves and the economic and operating viability of the Shenandoah Project to satisfy the Sufficient Progress criterion." (*Id.* ¶ 92.)

Plaintiffs do not object to Dr. Dietrich's analysis of how ASC 932 applies to accounting determinations involving exploratory wells. Nor do they take issue with

Dr. Dietrich's application of ASC 932 to Anadarko's accounting of Shen-3 well costs. Instead, Plaintiffs seek to exclude Dr. Dietrich's entire opinion as to Anadarko's accounting of Shen-3 because Dr. Dietrich did not disclose an analysis of Shen-1's reserve sufficiency—an analysis he did not even conduct. Ironically, their support for this argument is the deposition testimony confirming that Dr. Dietrich was relying on an assumption, not his own analysis. (Pls. Mot. at 8-9 (quoting Dietrich Tr. 201:3-202:16); *see also* Dietrich Tr. 202:11-18 ("Q. And you told me you don't know whether Anadarko performed the analysis to determine whether Shen 1 had a sufficient quantity of reserves to justify its completion of a producing well but you assume they did; right, sir? A. Yes, for multiple reasons *I determined that that was a reasonable assumption to make and I made the assumption*.") (emphasis added).)

To the extent Dr. Dietrich's opinion relies in part on the assumption that Shen-1 identified sufficient reserves to satisfy sufficient quantity and progress under ASC 932, that assumption does not serve as a basis for exclusion. The Fifth Circuit has routinely interpreted *Daubert* to mean that challenges to the substance of an expert's assumptions and conclusions go to the weight of the testimony, not its admissibility. *See, e.g.*, *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."); *United States v. Valencia*, 600 F.3d 389, 421 (5th Cir. 2010) (holding that challenges to an expert's assumptions did "not undermine [the expert's] methodology, but instead challenged an assumption he made in reaching his conclusions," and that such "critiques affected the weight of the testimony, not its admissibility, and were

fodder for cross-examination"); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). Indeed, it is common for experts to assume certain facts that remain in question and make calculations based on those assumptions. *See Lockett*, 2021 WL 6066697, at *6 (denying motion to exclude expert whose "calculations may have been premised on incomplete information and unrealistic assumptions" because "[d]efendants may address their doubts about [the expert's] assumptions by challenging them on cross-examination"); *see also Anascape*, 2008 WL 7180757, at *3 ("Defendants' argument that the data relied upon was incorrect or incapable of being verified goes to the weight of [the expert's] testimony."). Plaintiffs' objection to Dr. Dietrich's purported assumption regarding Shen-1 is best reserved for cross-examination, and Plaintiffs offer no reason to conclude that this assumption was "so unrealistic and contradictory as to suggest bad faith" and justify exclusion. *Boucher*, 73 F.3d at 21.

The distinction between an actionable objection to an expert's methodology and a non-actionable dispute over an underlying assumption is illustrated by the *Meadours v. Ermel* decision Plaintiffs cite. In *Meadours*, Plaintiffs sought to exclude an expert's injury causation analysis—the expert's ultimate opinion—because the expert's methodology was not widely used and the expert testified that his model is "all a mental exercise." 2005 WL 1923596, at *3 (S.D. Tex. Aug. 10, 2005), *aff'd*, 483 F.3d 417 (5th Cir. 2007). Unlike the Plaintiffs in *Meadours*, Plaintiffs do not object to Dr. Dietrich's methodology as to his

ultimate opinion that Anadarko properly suspended Shen-3, which was properly disclosed in his report.

Moreover, Plaintiffs' own expert, Regan, explicitly relies upon three central assumptions in formulating his opinions on Anadarko's accounting decisions. (*See* Regan Rpt. ¶¶ 2(a)-(c).) Regan does not offer any formal analysis for these "bare assumption[s]" but instead "assumed the answer" to the conditions underlying his opinion—exactly what Plaintiffs accuse Dr. Dietrich of having done. (*See* Pls. Mot. at 9-10.) Plaintiffs cannot simultaneously insist that their expert's assumptions are permissible while arguing that Dr. Dietrich's is grounds for exclusion.

## II. DR. DIETRICH'S OPINION REGARDING SHEN-3 IS RELEVANT.

Dr. Dietrich opines that Anadarko's decision to suspend Shen-3 well costs—both initially and through Q3 2016—was consistent with GAAP. Seemingly in connection with this opinion, Plaintiffs argue that Dr. Dietrich should be precluded from specifically opining that "Shen 3 was always considered a successful appraisal well" on the sole basis that he testified at his deposition that this assertion was "irrelevant." (Pls. Mot. at 10-11.)

As an initial matter, Dr. Dietrich is not offering an opinion as to whether Shen-3 was or was not a "successful appraisal well." Dr. Dietrich, instead, rebuts Regan's report as flawed and unreliable, and opines that Anadarko's accounting of Shen-3 well costs was consistent with GAAP. In this opinion, Dr. Dietrich reviews the bases for Anadarko's independent accounting treatment of Shen-3, which included Anadarko's view that "Shen 3 did not encounter hydrocarbons but was considered a successful appraisal well because 'the well did provide substantial information about the reservoir.'" (Dietrich Rpt. ¶ 93

(quoting Ex. 10 (APC-01749352) at -354).) Plaintiffs cannot credibly object to Dr. Dietrich's review of the bases of Anadarko's accounting treatment when opining on such treatment. Indeed, a disclosing party is required to provide "a summary of the facts upon which the opinions are based." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 756 (N.D. Tex. 2021) (citation omitted).

Moreover, Plaintiffs' argument takes Dr. Dietrich's testimony out of context and tries to create the impression that Dr. Dietrich disavowed the relevance of his own opinion. The full transcript tells a different story. When Dr. Dietrich testified about the relevance of labeling Shen-3 a "successful" appraisal well, he was doing so in the context of the terms that are actually used in GAAP. As Dr. Dietrich explained: "[A]s a matter of accounting, the word 'successful' or 'unsuccessful' is not used in [GAAP]." (Dietrich Tr. 182:2-4; *see also id*. at 142:22-25 ("The word 'successful well' is not defined in GAAP, so different people can have different definitions that they use when they are describing wells that are either successful or unsuccessful.").) That is a far cry from conceding that the fact that Shen-3 provided valuable information about the Shenandoah reservoir is irrelevant to his accounting opinion.

Plaintiffs do not (and cannot) otherwise argue that Dr. Dietrich's opinion regarding the role of Shen-3 in Anadarko's accounting determinations is irrelevant. His opinion regarding Shen-3's role in Anadarko's appraisal efforts is not merely relevant; it is central to Dr. Dietrich's opinion that Anadarko's accounting treatment was consistent with GAAP. Dr. Dietrich concludes that Anadarko's decision to suspend Shen-3 well costs was proper *because* Shen-3 "enabled Anadarko to both better estimate the size of the Shenandoah

reservoir and reduce the uncertainty of the quantity of recoverable resources." (Dietrich Rpt. ¶ 95.) As Dr. Dietrich explains, Shen-3 provided valuable information—confirming lateral sand continuity, enabling the projection of oil-water contacts, and reducing the uncertainty of the resource range—that directly supported a finding of sufficient quantity under the applicable accounting standard (ASC 932-360). (*See id.* ¶¶ 93, 95.) This opinion rebuts the proffered opinions of Plaintiffs' expert, Regan, regarding Anadarko's decision not to immediately expense Shen-3's well costs. Excluding this testimony would deprive the jury of the factual predicate for Dr. Dietrich's accounting opinion.

## III. DR. DIETRICH'S REPORT IS A PROPER REBUTTAL REPORT THAT WAS TIMELY DISCLOSED.

Plaintiffs argue that certain sections of Dr. Dietrich's report—Sections V, VII.A., VII.B., and X.A.—should be excluded because they are purportedly "affirmative opinions" that do not rebut Regan's report and were therefore untimely disclosed. (Pls. Mot. at 11-13.) Plaintiffs' argument fails on both prongs: (1) Dr. Dietrich's report was timely disclosed under the Scheduling Order because it responds to Plaintiffs' allegations of falsity—an issue for which Plaintiffs bear the burden of proof, and (2) Dr. Dietrich's report, in its entirety, is a proper rebuttal report that responds to Regan's report and Plaintiffs' arguments regarding Anadarko's accounting.

### A. Dr. Dietrich's Report Was Timely Disclosed.

Dr. Dietrich's report was timely disclosed and Plaintiffs' argument misconstrues the plain text of the Scheduling Order. The Scheduling Order had two deadlines concerning expert reports: (1) the deadline for reports on issues for which the party bears the burden

of proof, and (2) the deadline for "rebuttal" reports by the opposing party. (Dkt. 142.) The plain text of a court's scheduling order governs. *See, e.g., H & A Land Corp. v. City of Kennedale, Texas*, 2005 WL 8159199, at *2 (N.D. Tex. Mar. 18, 2005). And here, the plain text provides that reports other than those concerning issues for which the party bears the burden of proof were to be disclosed on the second deadline. Defendants have addressed this point in detail in their opposition to Plaintiffs' Motion to Strike the Rebuttal Report of Kevin J. Murphy ("Murphy Opposition") and incorporate that discussion here.[2]

The subject matter of Dr. Dietrich's report concerns Defendants' accounting treatment of Shen-3 based on the results of that exploratory well, which goes to the issue of whether Defendants' public statements about Shenandoah were false or misleading, an issue on which Plaintiffs bear the burden of proof. Dr. Dietrich's report rebuts Plaintiffs' allegations that Anadarko purportedly made false statements concerning its compliance with accounting policies and GAAP. (*See, e.g.*, Am. Compl. ¶¶ 99, 104, 117, 129, 139.) Of course, it is Plaintiffs who "must show that the defendant made a statement that was misleading as to a material fact." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (citation omitted). Plaintiffs do not argue otherwise. Nor do they dispute that the entirety of Dr. Dietrich's report relates to the question of whether Defendants' statements were false or misleading.

---

[2] Should the Court determine that these sections of Dr. Dietrich's report are not subject to either deadline under the Scheduling Order, Defendants' disclosure of the report is still timely under Rule 26(a)(2)(D). *See* Murphy Opposition, § I.A.

Because Defendants do not bear the burden of proof as to the subject matter of Dr. Dietrich's report, they were not required to submit his report on the first deadline (*i.e.*, November 9, 2022). The Court should therefore reject Plaintiffs' atextual attempt to exclude sections of Dr. Dietrich's report as untimely.

**B. Dr. Dietrich is a Proper Rebuttal Expert.**

Even if the Court were to construe the Scheduling Order deadlines as Plaintiffs do, it should still reject Plaintiffs' argument as the entirety of Dr. Dietrich's report rebuts Plaintiffs' expert opinions as to Shenandoah's accounting decisions.

A rebuttal report responds to evidence disclosed by the opposing party. "A rebuttal report need not specifically refer to or consider any other expert's opinion as long as its contents explain, repel, counteract, or disprove that other opinion." *Landmark Am. Ins. Co. v. Royal by Sea Condo. Owners Ass'n, Inc.*, 2021 WL 5085180, at *1 (S.D. Tex. July 8, 2021) (citation omitted); *see Poly-Am., Inc. v. Serrot Int'l, Inc.*, 2002 WL 1996561, at *15 (N.D. Tex. Aug. 26, 2002) (denying motion to strike expert report where "at least some of [the expert's] testimony purports to contradict or rebut [the other expert's] opinion").

Plaintiffs wrongly claim that Dr. Dietrich's opinions in Sections V, VII.A., VII.B. and X.A. of his report do not rebut any of Regan's opinions. In Section V, Dr. Dietrich describes GAAP and the GAAP standards that apply to accounting in the oil and gas industry, all of which Regan agrees apply. (*Compare* Dietrich Rpt. § V, *with* Regan Rpt. § IV.A.) The assertion that a rebuttal expert cannot outline the factual or legal background surrounding their opinion because doing so would "smuggle in affirmative opinions" (Pls. Mot. at 13) is untenable. *See Poly-Am., Inc.*, 2002 WL 1996561, at *15. In Sections VII.A.

and VII.B., Dr. Dietrich explains his opinion that Anadarko's decision to suspend Shen-3 well costs was reasonable under these applicable GAAP standards, which responds directly to Regan's opinions that "Anadarko was required to expense the cost of drilling Shen-3" and that "Anadarko repeatedly failed to expense and disclose millions of dollars of Shen-3 related dry-hole expenses." (Regan Rpt. ¶¶ 11(a)-(b). *Compare* Dietrich Rpt. §§ VII.A., VII.B., *with* Regan Rpt. § V.A.) And Section X.A. of Dr. Dietrich's report opines on Anadarko's decision to impair the Shenandoah project as a whole in 2017, which directly responds to Regan's opinion that "Anadarko repeatedly failed to expense and properly disclose Shenandoah-related" costs in 2015 and 2016. (Regan Rpt. ¶ 11(f). *Compare* Dietrich Rpt. § X.A., *with* Regan Rpt. § V.D.) Each of these sections clearly "explain[s], repel[s], counteract[s], or disprove[s]" at least one of Regan's opinions and is therefore properly a rebuttal report under Rule 26(a)(2)(D)(ii) and was timely disclosed under the Scheduling Order. *Landmark*, 2021 WL 5085180, at *1.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion to exclude the testimony of Dr. Dietrich.

Dated: July 14, 2026

Respectfully submitted,

*/s/ Kevin J. Orsini*
**CRAVATH, SWAINE & MOORE LLP**
Kevin Orsini (*pro hac vice*)
Lauren Rosenberg (*pro hac vice*)
Melissa Syring (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com
msyring@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

**CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4,797 words, exclusive of the caption, the table of contents, the table of authorities and the signature block.

Dated: July 14, 2026

*/s/ Kevin J. Orsini*
Kevin Orsini

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: July 14, 2026

*/s/ Kevin J. Orsini*
Kevin Orsini