**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1
ARGUMENT ..... 2
I. Plaintiffs Concede They Cannot Prove Shenandoah Was Unviable at the Start of the Class Period. ..... 2
II. Plaintiffs Cannot Salvage Their Case By Relying on a "Concealment of Negative Information" Theory. ..... 4
A. Plaintiffs' Concealment of Negative Information Theory Fails Under the Principles of Comcast. ..... 4
B. Plaintiffs' Concealment of Negative Information Theory Is Inconsistent with Rule 10(b)-5 Disclosure Obligations. ..... 5
III. Plaintiffs Cannot Otherwise Save Their Case. ..... 6
A. The Alleged Misstatements Are Inactionable. ..... 7
B. Plaintiffs Cannot Prove Scheme Liability. ..... 10
C. Plaintiffs Cannot Show Scienter. ..... 11
D. Plaintiffs Cannot Show Loss Causation. ..... 14
IV. Plaintiffs Cannot Establish Control Person Liability. ..... 16
CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002) ........ 9

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ........ 15

*Bondali v. Yum! Brands, Inc.*,
620 F. App'x 483 (6th Cir. 2015) ........ 8

*Chapman v. Mueller Water Prods., Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020) ........ 10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........ 4

*Dienes v. FCA US LLC*,
2018 WL 1258118 (S.D. Cal. Mar. 12, 2018) ........ 8

*Emps.' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*,
61 F.4th 369 (4th Cir. 2023) ........ 6

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
53 F. Supp. 3d 882 (E.D. La. 2014) ........ 8

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ........ 5

*Greenberg v. Crossroads Sys., Inc.*,
364 F.3d 657 (5th Cir. 2004) ........ 15

*In re Adolor Corp. Sec. Litig.*,
616 F. Supp. 2d 551 (E.D. Pa. 2009) ........ 5

*In re Apache Corp. Secs. Litig.*,
2022 WL 4277350 (S.D. Tex. Sept. 15, 2022) ........ 14

*In re: BP p.l.c. Sec. Litig.*,
2016 WL 3090779 (S.D. Tex. May 31, 2016) ........ 15, 16

*In re Triangle Cap. Corp. Sec. Litig.*,
988 F.3d 743 (4th Cir. 2021) .......... 11

*In re Vale S.A. Sec. Litig.*,
2026 WL 1002335 (E.D.N.Y. Apr. 13, 2026) .......... 2

*Lorenzo v. SEC*,
587 U.S. 71 (2019) .......... 10

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) .......... 8

*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) .......... 16

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) .......... 6

*Magruder v. Halliburton Co.*,
2009 WL 854656 (N.D. Tex. Mar. 31, 2009) .......... 12

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) .......... 9

*Off. of Gen. Treasurer ex rel. Emps. Ret. Sys. v. Boeing Co.*,
2026 WL 2083048 (4th Cir. July 20, 2026) .......... 4

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
58 F.4th 195 (5th Cir. 2023) .......... 7, 14

*Police & Fire Retirement System of the City of Detroit v. Plains All American Pipeline, L.P.*,
777 F. App'x 726 (5th Cir. 2019) .......... 9

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) .......... 7, 11

*Salinger v. Projectavision, Inc.*,
934 F. Supp. 1402 (S.D.N.Y. 1996) .......... 14

*SEC v. Blackburn*,
156 F. Supp. 3d 778 (E.D. La. 2015) .......... 13

*SEC v. Rio Tinto plc*,
41 F.4th 47 (2d Cir. 2022) .......... 11

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) ........................................................................ 16

*Tuchman v. DSC Communications Corporation*,
14 F.3d 1061 (5th Cir. 1994) ........................................................................ 13

*U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*,
475 F. App'x 521 (5th Cir. 2012) ................................................................... 3

**Statutes & Rules**

15 U.S.C. § 78j(b)........................................................................................... 11

Fed. R. Evid. 201 ............................................................................................... 8

## PRELIMINARY STATEMENT

Until now, Plaintiffs have premised their case on the theory that Defendants concealed Shenandoah's "lack of commercial viability" and "[t]he lack of commercial viability of the Shenandoah project was first revealed to the market in Anadarko's [May 2, 2017 disclosure]." (Dkt.55 ("Am. Compl.") ¶152.) Defendants' summary judgment motion identified a fundamental problem with this theory: Plaintiffs' damages model, which models constant inflation across the Class Period, requires Plaintiffs to prove the fraud that was allegedly revealed at the end of the Class Period also existed at the outset. Thus, to support a constant inflation band, Plaintiffs must show Shenandoah was commercially unviable at the start of the Class Period. They cannot. Any such theory was rejected by Plaintiffs' own experts and fact witnesses and is belied by Shenandoah's ongoing successful development.

Because they cannot prove Shenandoah was unviable at the start of the Class Period, Plaintiffs now try to run from that theory and claim—contrary to core allegations from their complaint and their expert's theories—that the May 2, 2017 disclosure ("Shenandoah Disclosure") did *not* reveal Shenandoah's commercial unviability. (Dkt.328 ("Steinholt Opp.") 11.) Instead, they now claim this disclosure simply revealed that, while Shenandoah might still have been commercially viable, Anadarko decided not to pursue it because of alleged increasingly negative information it learned during the Class Period that Plaintiffs claim was not timely disclosed. It is far too late for such a change. Even if they could switch their theory as to what fraud was allegedly concealed and then disclosed, Plaintiffs still could not salvage their case. By their own admission, Shenandoah's risk of

commercial unviability grew over the Class Period. Thus, not all of the alleged fraud-related inflation could have been reflected in Anadarko's stock price at the beginning of the Class Period, and Plaintiffs' constant-inflation damages model does not apply as a matter of law.

Plaintiffs' claims independently flounder because Plaintiffs cannot establish any actionable false or misleading statements and have no basis to demand Defendants should have disclosed minute details regarding preliminary well results. Nor can they prove a fraudulent scheme, scienter, loss causation, or control person liability.

Summary judgment for Defendants should issue.

## ARGUMENT

### I. PLAINTIFFS CONCEDE THEY CANNOT PROVE SHENANDOAH WAS UNVIABLE AT THE START OF THE CLASS PERIOD.

From the filing of their Amended Complaint, Plaintiffs have alleged Defendants fraudulently concealed Shenandoah's "lack of commercial viability" until that "lack of commercial viability" was revealed by the Shenandoah Disclosure. (Am. Compl. ¶152; Ex.19 ¶¶27, 29.)[1] Plaintiffs' sole damages model is based on constant inflation throughout the Class Period. (Ex.19 ¶106.) This model assumes "the full amount of artificial inflation was baked into [defendants'] securities' prices on day 1 of the class period." *In re Vale S.A. Sec. Litig.*, 2026 WL 1002335, at *2 (E.D.N.Y. Apr. 13, 2026). Therefore, for Plaintiffs' liability theory to fit their damages model, they must show Shenandoah was

[1] Citations to "Ex." reference exhibits attached to the Declarations of Lauren Rosenberg (Dkt.322-9) and Kevin Orsini (filed contemporaneously with this brief). Citations to "Pls. Ex." reference exhibits attached to Dkt.329.

commercially unviable at both the beginning and end of the Class Period. (*See* Dkt.322-1 ("Mot.") Section II.)

In opposition, Plaintiffs do not argue they can make this showing. Nor could they; their own expert and fact witnesses opine the opposite. (*See, e.g.*, Ex.21 ¶11(j) (opining Shenandoah became commercially unviable by end of 2015); Ex.115 291:16-292:6.) There is thus no dispute of material fact over whether Shenandoah lacked commercial viability at the start of the Class Period; Plaintiffs have conceded away any effort to prove that was the case. Unless they can shift to an entirely new (and viable) liability theory consistent with their damages model—they cannot, as discussed below—their theory of liability alleged in their complaint and required by the constant-inflation ribbon of their sole damages expert, Bjorn Steinholt, fails as a matter of law and summary judgment is required. (*See* Mot. Section II.)

Recognizing their case is doomed if they stick to the theory the Shenandoah Disclosure revealed Shenandoah's commercial unviability, Plaintiffs now argue this was never their theory and is a "strawman." (Steinholt Opp. 11.) This is the *opposite* of what they have claimed all along, and their pleadings, expert reports, and expert testimony belie this last-minute attempt to duck their own theory of liability. (*See* Appendix A.) It is too late for Plaintiffs to switch theories about what was allegedly disclosed at the end of the Class Period and withheld from the market from the start. *See U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) (plaintiffs cannot raise new theory of liability at summary judgment).

## II. PLAINTIFFS CANNOT SALVAGE THEIR CASE BY RELYING ON A "CONCEALMENT OF NEGATIVE INFORMATION" THEORY.

Plaintiffs' alternative theory of liability—that Defendants hid increasingly negative information about Shenandoah over the Class Period—also fails as a matter of law, regardless of whether Plaintiffs claim the Shenandoah Disclosure revealed Shenandoah's "lack of commercial viability" or something else. This is true for two independent reasons.

### A. Plaintiffs' Concealment of Negative Information Theory Fails Under the Principles of Comcast.

Plaintiffs claim Defendants learned, and hid, new, increasingly negative information about Shenandoah after each appraisal well, including that Shenandoah's resource size decreased with each well. (Dkt.329 ("Opp.") 7-10.) They assert the risk of Shenandoah's commercial unviability increased throughout the Class Period. (Steinholt Opp. 13-14.) Under this alternative "concealment of negative information" theory, the entire amount of fraud-related inflation could not have existed at the beginning of the Class Period because Defendants had not yet learned all of the allegedly concealed information. But because Plaintiffs' sole damages model assumes constant inflation throughout the Class Period, they have no way of showing damages based on fluctuating inflation. (*See* Steinholt Reply Section I.) This mismatch dooms their case under the principles articulated in *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). *See also Off. of Gen. Treasurer ex rel. Emps. Ret. Sys. v. Boeing Co.*, 2026 WL 2083048, at *18 (4th Cir. July 20, 2026) (finding constant inflation model "inconsistent with the plaintiffs' theory of liability").

The Court's consideration of Steinholt's model at class certification does not preclude summary judgment because Plaintiffs have since fundamentally changed their

theory of liability, and that revised theory is incompatible with Steinholt's constant-ribbon inflation model. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

**B. Plaintiffs' Concealment of Negative Information Theory Is Inconsistent with Rule 10(b)-5 Disclosure Obligations.**

Plaintiffs cannot salvage their non-disclosure theory because Defendants disclosed or had no obligation to disclose the minutiae Plaintiffs claim was withheld. (Mot. Section III.B.)

*First*, Defendants disclosed that Shen-4 hit salt. (*See* Opp. 21; Mot. 9).

*Second*, there is no evidence Defendants decided to write off Shenandoah before Shen-6. (*See* Opp. 21.) Plaintiffs' evidence (*see* Opp. 11) shows routine modeling, not a final investment decision ("FID") (*see, e.g.*, Pls. Ex.112 (modeling); Pls. Ex.103 (modeling scenario); Pls. Ex.105 (estimated base case); Pls. Ex.108 (same); Pls. Ex.109 (listing Shenandoah as "[l]ong-[t]erm [g]rowth" project).)

*Third*, no alleged misstatements say anything about specific resource range estimates, faulting, or the discovery of tar. (*See* Mot. 22-23.) That Defendants referred to Shenandoah pre-Class Period as a "giant resource" (Opp. 22) and stated during the Class Period that Shenandoah was within the range Defendants had "put out there" (Stmt. 15) did not require Defendants to disclose specific resource estimates. A company's disclosure of general results does not oblige it to disclose every piece of data that contributed to the results. *See In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 568-70 (E.D. Pa. 2009)

(rejecting theory that defendants should have disclosed subgroup data where defendants only discussed top-line results and did not comment on subgroups).[2]

*Fourth*, Defendants were not required to disclose incremental evaluations. (*See, e.g.*, Opp. 9 (citing Pls. Ex.11 (preliminary Shen-4 sidetrack data)); Opp. 10 (citing Pls. Ex.106 (preliminary data concerning tar at Shen-5); Opp. 11 (citing Pls. Ex.113 (preliminary Shen-6 data)))); *see Emps.' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*, 61 F.4th 369, 383-84 (4th Cir. 2023) (holding company's release of results of first of a two-part study did not obligate disclosure of interim results for second part and noting "a company's mere *reference* to full trial data in a discussion of top-line results does not trigger a duty to disclose the full results of a study"). That Plaintiffs may have wanted progress reports about details Defendants never disclosed does not render the alleged misstatements misleading. *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024) (there is no Rule 10b-5(b) liability for pure omissions).

## III. PLAINTIFFS CANNOT OTHERWISE SAVE THEIR CASE.

Even aside from the fundamental mismatch between any proffered liability theory and Plaintiffs' damages model, their case fails for other independent reasons.

[2] Nor do documents Plaintiffs cite suggest initial general statements were rendered false by subsequent knowledge. The evidence Plaintiffs cite to argue that resource range estimates were decreasing show estimates fairly characterized as within the range of a "giant resource." (*Compare* Pls. Ex.34 (describing Shenandoah as "a potential giant, meaning possibly more than 500mm bbls"), *with* Ex.116 at 1 (showing estimated gross resource range during Class Period of about 200 MMBOE (P90) to 700 MMBOE (P10)).)

*First*, Plaintiffs fail to establish any actionable misstatements. *Second*, Plaintiffs cannot prove a fraudulent scheme. *Third*, Plaintiffs have identified no genuine dispute of material fact on scienter. *Fourth*, Plaintiffs offer no explanation for how the Shenandoah Disclosure revealed the allegedly concealed negative information about Shenandoah's appraisal.

**A. The Alleged Misstatements Are Inactionable.**

Defendants have shown none of the alleged misstatements is actionable under federal securities laws. (Mot. Section IV.) Plaintiffs fail to establish otherwise.

(1) Statements of Corporate Optimism

Plaintiffs wrongly argue certain alleged misstatements are not puffery because "they concerned a specific asset" and "reported tangible results." (*See* Opp. 24.) Unlike statements in *Six Flags* Plaintiffs cite and that reaffirmed specific timing projections disclosed to the market, none of the alleged misstatements Defendants identify as puffery confirmed previously disclosed projections about resource ranges or fault mapping. *See Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 220 (5th Cir. 2023). In fact, Anadarko never disclosed that information in the first place; it made only generalized, inactionable positive statements. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003). Moreover, contrary to Plaintiffs' claim, "successful" has no industry-specific meaning under GAAP (*see* Ex.117 182:2-4), and regardless, no alleged misstatement uses the term "successful" to describe accounting decisions (*see, e.g.*, Stmts. 4, 10, 12, 21.) Though the Court declined to dismiss these statements at the pleading stage, here Plaintiffs must—but cannot—prove facts rendering these statements anything

more than puffery. *See Dienes v. FCA US LLC*, 2018 WL 1258118, at *5 (S.D. Cal. Mar. 12, 2018).[3]

(2) Risk Statements

Plaintiffs' risk statement arguments also fail. (*See* Opp. 26-27.) *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009), did not address the question presented here: whether boilerplate disclosures in SEC filings regarding industry-wide risks are actionable. Instead, the Court should follow the reasoning in *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, holding that "risks affecting an industry as a whole" are not actionable. 53 F. Supp. 3d 882, 914-15 (E.D. La. 2014). Plaintiffs argue the risk disclosures were "Anadarko-specific" but offer no principled distinction between the risk disclosures here, which note their applicability to the "industry as a whole" for "[d]rilling for oil and natural gas" and "exploratory drilling" (Ex.67, -794; Ex.82, -187; *see* Stmts. 2, 22), and those in *Bulmahn* regarding risks applicable to the "oil and natural gas business," *Bulmahn*, 53 F. Supp. 3d at 915. Nor do Plaintiffs grapple with *Bondali v. Yum! Brands, Inc.*, which explains such risk disclosures are "not meant to educate investors on what harms are currently affecting the company." 620 F. App'x 483, 491 (6th Cir. 2015).

---

[3] Plaintiffs are wrong that evidence of post-Class Period development is irrelevant and inadmissible. (*See* Opp. 25-26; Dkt.330, 19-21; Dkt.333, 10-13.) There is record evidence of Shenandoah's development (*see, e.g.*, Ex.20 ¶¶43-45); the parties will present witnesses at trial who can speak to this; and the Court may take judicial notice of Shenandoah's development, which is undisputed and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," *see* Fed. R. Evid. 201(b)(2).

Plaintiffs are also wrong on the facts. ConocoPhillips had already disclosed Shen-3 did not encounter oil. (*See* Ex.66, -879.) And Plaintiffs now acknowledge Shenandoah was potentially commercially viable at the start and end of the Class Period, meaning there was no materialized risk of uncommerciality. (Steinholt Opp. 11.)

(3) <u>Accounting Policy Statements</u>

Anadarko's accounting policy statements—which describe accounting standards—are inactionable. (*See* Opp. 27-28.) Under Plaintiffs' overreading of *Novak v. Kasaks*, every violation of an internal accounting policy would make disclosure of internal policies an actionable misstatement, even though merely alleging "accounting irregularities" (and GAAP violations) cannot give rise to a securities claim. 216 F.3d 300, 309 (2d Cir. 2000).

*Novak* and *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432-33 (5th Cir. 2002) do not so hold. As the Fifth Circuit explained in *Police & Fire Retirement System of the City of Detroit v. Plains All American Pipeline, L.P.*, an internal policy's failure to function in one instance does not mean statements describing its existence are false and misleading, and Plaintiffs offer no explanation for why it matters that the *Plains* policies were internal safety policies and procedures. 777 F. App'x 726, 731 (5th Cir. 2019).

Plaintiffs' Item 303 argument also fails. Plaintiffs do not dispute Item 303 does not give rise to a freestanding disclosure duty (*see* Opp. 27) and fail to prove any qualifying "half-truths." Defendants repeatedly warned the market that reaching FID was contingent on Shen-5 and Shen-6. (*See* Mot. 10.)

(4) Financial Statements

Plaintiffs are also wrong that a jury could find Anadarko's financial statements misleading. (*See* Opp. 28.) Plaintiffs do not dispute the market knew Anadarko had expensed Shen-3 before the end of the Class Period. And Plaintiffs now claim Shenandoah remained potentially commercially viable at the end of the Class Period, undermining their argument that Defendants should have expensed Shenandoah before May 2, 2017.

(5) Sarbanes-Oxley Certifications

Plaintiffs' argument that Walker's and Gwin's Sarbanes-Oxley ("SOX") certifications were false is derivative of their claim that Anadarko's SEC filings contained other actionable misstatements. (*See* Opp. 28-29); *see Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 410 (S.D.N.Y. 2020) (dismissing alleged SOX certification misstatement as inactionable because plaintiff "failed to plead that [defendant's] financial statements had any misstatements or omissions"). Without a predicate misstatement, *see supra* Sections II.B, III.A.1-4, Plaintiffs' SOX certification argument fails.

**B. Plaintiffs Cannot Prove Scheme Liability.**

Defendants established scheme liability requires proof of specific misconduct beyond just alleged misstatements and omissions. (Mot. Section V.)

In opposition, Plaintiffs argue *Lorenzo v. SEC*, 587 U.S. 71 (2019), changed the standard for establishing scheme liability. (Opp. 29.) That is false; *Lorenzo* merely held those who do not make, but instead disseminate, false or misleading statements to potential investors with fraudulent intent may be subject to scheme liability. *Lorenzo*, 587 U.S. at 74. That did not change the requirement that Plaintiffs must allege more than

misstatements or omissions to show scheme liability, *SEC v. Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022), or that conduct must be deceptive or manipulative to support scheme liability, *see* 15 U.S.C. § 78j(b).

Regardless, the conduct Plaintiffs allege is not deceptive or manipulative. *First*, the fault maps are a red herring. Defendants were not required to and did not publicly disclose faulting data. (*See* Section II.B.) Anadarko and its partners performed independent analyses of the same data (Ex.2 36:1-37:19), and Anadarko told its partners it had other maps it did not share (*see id.* 76:22-79:1). That Anadarko used its business judgment to choose which map to share is not "silencing." And the "rationale for Exploration's censorship" is *not* a triable issue; investors cannot use "20-20 hindsight to turn management's business judgment into securities fraud." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 754-55 (4th Cir. 2021).

*Second*, for the reasons discussed in Sections III.A.3-4, Plaintiffs cannot survive summary judgment based on a quibble with Anadarko's accounting policies and decisions.

*Third*, Plaintiffs cite no evidence creating a genuine dispute of material fact regarding alleged retaliation against Frye. (Mot. 24.)

**C. Plaintiffs Cannot Show Scienter.**

Plaintiffs come nowhere close to establishing that *each* Individual Defendant acted with "intent to deceive, manipulate, or defraud," or "severe recklessness." *Rosenzweig*, 332 F.3d at 866.

(1) Walker's Intent Not to Develop Shenandoah *Today* Does Not Demonstrate Scienter

Plaintiffs' out-of-context excerpt of Walker's email stating he does not see that "[Anadarko] will want to take [Shenandoah] to development ***today***" does not establish scienter. (*Id.* 31 (citing Pls. Ex.96 (emphasis added)).) That email only confirms what Anadarko repeatedly told the market—FID would depend on Shen-5 and Shen-6 results.

(2) Leyendecker's Pre-Class Conduct Does Not Demonstrate Scienter

Plaintiffs cannot show scienter by relying on Leyendecker's alleged behavior during a pre-Class Period meeting. *See Magruder v. Halliburton Co.*, 2009 WL 854656, at *14 n.120 (N.D. Tex. Mar. 31, 2009) (pre-class period conduct "will contribute nothing to the inference of scienter regarding statements made during the class period").

(3) Daniels's Statements Do Not Demonstrate Scienter

Nor can Plaintiffs establish scienter based on Daniels's statements about Shen-3 and Shen-4. (Opp. 31.) The evidence Plaintiffs claim shows Daniels's knowledge that Shen-3 was "very negative" is actually Frye's perception of Shen-3. (Opp. 6 (citing Pls. Ex.121); *id.* 31.) And as discussed in Section II.B, Daniels's statement regarding Shenandoah's resource range is inactionable.

(4) Gwin's Statements Do Not Demonstrate Scienter

Plaintiffs also cannot show scienter based on Gwin's affirmation of Anadarko's commitment to development during certain investor calls. (Opp. 10, 31.) The evidence Plaintiffs claim shows the "EC had already lost interest in developing Shen" at that point merely shows the EC was considering its options—as any prudent business would do. (Opp. 9 (citing Pls. Exs. 13, 79).)

(5) Stock Trades and Compensation Are Insufficient

Plaintiffs' stock trading theory also does not support scienter. Plaintiffs concede no Individual Defendants other than Daniels sold Anadarko stock during the Class Period (Opp. 33) and offer no evidence challenging that Daniels's singular sale was on his ex-wife's behalf per a divorce decree—as Daniels disclosed in his Form 4 (Ex.25 at 28). Defendants actually increased their ownership of Anadarko stock during the Class Period. (Mot. 39.)

Plaintiffs' reliance on Defendants' compensation also fails. Similar to *Tuchman v. DSC Communications Corporation*, and as discussed herein, Plaintiffs' evidence does *not* show Defendants knew their statements were misleading. 14 F.3d 1061, 1068 (5th Cir. 1994). "[A]llegations that officers and directors were motivated by incentive compensation, standing alone, are insufficient to allow for an inference of scienter" at the pleading stage, let alone prove scienter at summary judgment. *SEC v. Blackburn*, 156 F. Supp. 3d 778, 791 (E.D. La. 2015). Plaintiffs' argument that the purported golden parachutes "would not have materialized had [Defendants'] fraud been revealed" (Opp. 33) makes no sense: that compensation was awarded nearly two years after the corrective disclosure that allegedly revealed the fraud (*see* Ex.100).

This is not a case where Defendants took a "gamble" on what they knew was a losing bet. (Opp. 34.) Shenandoah was a winning bet, as evidenced by its successful development. But the timing of development depended on factors Anadarko told the market had to first materialize. (Mot. 32-33.) This case is different from those Plaintiffs rely on, both of which are at the pleadings stage in which the court was required to accept

as true the alleged facts. *See In re Apache Corp. Secs. Litig.*, 2022 WL 4277350, at *2, *4, *6 (S.D. Tex. 2022) (scienter a "very close call" where defendants touted oil discovery with "highly specific and authoritative … estimates, including about [the field's] volumes of recoverable oil and gas" when the field's known development revealed "the vast majority of [the] wells had never performed" and "produced less than 1% of the oil and gas that Defendants had represented to investors was recoverable"); *Six Flags*, 58 F.4th at 220 (defendants specifically stated project's construction was "continuing" despite evidence construction had stopped).

Here, scienter is not close. At most, Plaintiffs point to internal disagreements over interpreting well data and how that data might impact Shenandoah's commercial viability—disagreements Defendants do not dispute. "Ordinary disagreements among executives about internal company administration do[] not raise a strong inference of fraud." *Salinger v. Projectavision, Inc.*, 934 F. Supp. 1402, 1415 (S.D.N.Y. 1996).

### D. Plaintiffs Cannot Show Loss Causation.

Having disclaimed that the alleged corrective disclosure revealed Shenandoah's "lack of commercial viability," Plaintiffs do not explain how Anadarko's suspension of appraisal activities and write-down revealed alleged omissions concerning "Shen's viability and potential size." (Opp. 38.) As they now concede, Shenandoah was potentially commercially viable at both the start and end of the Class Period. (Steinholt Opp. 10-11.) And as discussed in Section II.B, there was nothing misleading to correct about statements concerning Shenandoah's "size."

Defendants do not require a "fact-for-fact" disclosure of the alleged fraud. (Opp. 37.) The Shenandoah Disclosure is not a corrective disclosure because it does not reveal *any* alleged fraud. The "disclosed information must reflect part of the 'relevant truth'—the truth obscured by the fraudulent statements." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009). Now that Plaintiffs claim the disclosure did not reveal Shenandoah's lack of commercial viability, the only logical conclusion is that it revealed Anadarko was suspending appraisal activities in light of Shen-6's disappointing results and oil prices—conditions precedent to making a FID that Defendants repeatedly disclosed and cannot form the basis of Plaintiffs' claims.[4] (Mot. 33.)

Plaintiffs fail to distinguish binding precedent fatal to their claims. Plaintiffs argue *In re BP* does not apply because the disclosures there related to previous "non-fraudulent" statements. (Opp. 37-38.) But that is exactly the case here: the Shenandoah Disclosure revealed Defendants made a FID after reviewing Shen-6's well results, an approach wholly consistent with non-fraudulent prior public statements. And, by Plaintiffs' own admission, as in *Greenberg*, the Shenandoah Disclosure did not reveal a years-long fraudulent scheme to conceal Shenandoah's lack of commercial viability. *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 666-67 (5th Cir. 2004).

[4] Plaintiffs baselessly argue that Defendants rely on inadmissible hearsay in asserting that "FID hinged on oil prices." (Opp. 38.) That condition was disclosed in Anadarko's SEC filings, including the filing containing the alleged corrective disclosure, and confirmed Anadarko's repeated representations to the market. (Ex.99, -126.)

Plaintiffs also cannot show the Shenandoah Disclosure, and not the unrelated Firestone news, contributed to Anadarko's stock price decline. *See Ludlow v. BP, P.L.C.*, 800 F.3d 674, 682 (5th Cir. 2015). Contrary to Plaintiffs' assertion, at summary judgment, the "Fifth Circuit requires *Plaintiffs* to offer some empirically-based showing that the corrective disclosure" contributed to a "significant amount of the decline in the stock price." *In re: BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at *31 (S.D. Tex. May 31, 2016) (emphasis added). While Plaintiffs' own expert testified a majority of the price impact was attributable to Firestone (Dkt.284 at 253:15-19), Defendants' expert conducted multiple event studies demonstrating that Firestone, not the Shenandoah Disclosure, was responsible for Anadarko's stock price drop (Dkt.237 at 1-2).

## IV. PLAINTIFFS CANNOT ESTABLISH CONTROL PERSON LIABILITY.

Because Plaintiffs cannot show a primary violation, their Section 20(a) claim fails. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383 (5th Cir. 2004).

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening brief, Defendants respectfully request that the Court grant their motion.

Dated: August 11, 2026

Respectfully submitted,

*/s/ Kevin J. Orsini*

**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Melissa A. Syring (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com
msyring@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

**CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 3,995 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: August 11, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## CERTIFICATE OF SERVICE

I certify that on August 11, 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: August 11, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini