# APPENDIX A

| Plaintiffs' Prior Theory | Plaintiffs' New Representations |
|---|---|
| **The alleged corrective disclosure revealed that Defendants concealed Shenandoah's lack of commercial viability from the market.**<br><br>From the beginning of this litigation, Plaintiffs have maintained that the alleged corrective disclosure revealed Shenandoah's lack of commercial viability and that Anadarko hid that lack of commercial viability from the market.<br><br>- The Amended Complaint alleges, "The ***lack of commercial viability of the Shenandoah project*** was first revealed to the market in Anadarko's 1Q 2017 10-Q." (Dkt. 55 ¶ 152 (emphasis added).)<br><br>- Alexander Younger, testifying in his capacity as a Norfolk Pension Fund representative, explained that the complaint was alleging that "[t]he ***lack of commercial viability*** was revealed by the [alleged corrective disclosure]." (Ex. 121 149:2-12 (emphasis added); *see id.* at 150:15-23 (in response to a question regarding whether Anadarko's expensing of Shenandoah and impairment of the asset indicated Shenandoah was not commercially viable, averring that "[t]he Complaint as we have drafted states it's the ***lack of a commercial viability of the Shenandoah project***." (emphasis added)).) | **The alleged corrective disclosure did not reveal Shenandoah's lack of commercial viability to the market.**<br><br>- Plaintiffs' Opposition to Defendants' Motion to Exclude the Testimony of Plaintiffs' Damages Expert Bjorn I. Steinholt ("Steinholt Opposition") states that it is "an ***erroneous factual assumption*** that the May 2, 2017 suspension of Shenandoah appraisal activities revealed that Shenandoah was 'certainly not commercially viable.' It did not." (Dkt. 328 at 11 (citation omitted) (emphasis added).)<br><br>- In the Steinholt Opposition, Plaintiffs state that analysts "understood that Anadarko was 'evaluat[ing] the path forward,' which included whether to 'monetiz[e] the field or abandon[] it,' ***not that it was 100% 'doomed' or 'certainly not commercially viable***.'" (*Id.* (emphasis added).) Plaintiffs also state certain analysts implied "a view that ***Shenandoah was still commercially viable***." (*Id.*at 12 (emphasis added).) |

| Plaintiffs' Prior Theory | Plaintiffs' New Representations |
| --- | --- |
| - Plaintiffs' Opposition to Defendants' Motion to Dismiss the Amended Complaint states, "Put simply, Defendants touted Shen as 'remarkable,' 'fantastic,' and 'one of the biggest finds ever' when they knew it was ***unlikely to ever be commercially viable*** due to the adverse information they withheld[.]" (Dkt. 61 at 15 (emphasis added).)<br><br>Plaintiffs' expert Bjorn Steinholt also premises his damages model and opinion on the assumption that the corrective disclosure revealed that Defendants concealed Shenandoah's lack of commercial viability from the market.<br><br>- Steinholt's class certification rebuttal report explains that "[t]he Corrective Disclosure in this case is Anadarko's suspension of further appraisal work on Shenandoah ***due to lack of commercial viability***." (Ex. 16 ¶ 11 (emphasis added).)<br><br>- Steinholt's merits report assumes the same: "In general, Plaintiffs allege that Defendants engaged in a fraudulent scheme by multiple methods and means and made misleading statements during the Class Period that ***concealed the alleged truth – the lack of commercial viability of the Shenandoah project***." (Ex. 19 ¶ 27 (emphasis added).) | |

| Plaintiffs' Prior Theory | Plaintiffs' New Representations |
|---|---|
| - Steinholt's merits report also assumes that "***the alleged truth, i.e., the lack of commercial viability of the Shenandoah project***, was disclosed after the market had closed on May 2, 2017, as part of the Company's 1Q2017 announcement, including the suspension of appraisal activities in the Shenandoah and the associated $902 million write-off and expenses." (*Id.* ¶ 29 (emphasis added).)<br><br>- Steinholt's model assumes that Shenandoah was "***certainly not commercially viable*** after Shen-4." (*Id.* ¶ 28(j) (emphasis added).)<br><br>- At his deposition, Steinholt testified that "[a]fter the Shen-4, the experts concluded, the assumption is ***that it certainly was not commercially viable after***. So it goes from most likely to certainly not commercially viable." (Ex. 106 53:5 12 (emphasis added).)<br><br>Plaintiffs' expert Lyndon Pittinger opines that Shenandoah was not commercially viable after Shen-4.<br><br>- Pittinger opines that "[a]fter Shen-4, and by December 31, 2015, Anadarko senior management understood that ***Shen was not commercially viable***." (Ex. 21 ¶ 11(j) (emphasis added).)<br><br>- Pittinger confirmed this opinion at his deposition, agreeing that it was his opinion that "***Shenandoah was not commercially viable after Shenandoah 4***." (Ex. 122 73:20-24 (emphasis added).) | |

| Plaintiffs' Prior Theory | Plaintiffs' New Representations |
|---|---|
| Plaintiffs' expert D. Paul Regan built his analysis on this assumption:<br><br>- D. Paul Regan's analysis assumes that "[b]y December 31, 2015, ***there was substantial doubt that the Shenandoah basin project (as a whole) would be economically viable***." (Ex. 17 ¶ 2(c) (emphasis added).) | |