**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

# **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE STATE-OF-MIND TESTIMONY OF DR. ROBERT MERRILL AND LYNDON PITTINGER**

**TABLE OF CONTENTS**


**Page**

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 1

I. Merrill and Pittinger Are Unqualified To Offer State-of-Mind Opinions. ........ 1

II. Merrill and Pittinger Offer Speculative State-of-Mind Opinions ........ 2

III. Merrill and Pittinger's State-of-Mind Opinions Are Irrelevant ........ 7

IV. Defendants' Motion Is Not Premature ........ 8

CONCLUSION ........ 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........ 7

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
2022 WL 15044626 (E.D.N.Y. Oct. 26, 2022) ........ 5, 7

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........ 2

*Jenkins v. Helmerich & Payne Int'l Drilling Co.*,
577 F. Supp. 3d 587 (S.D. Tex. 2021) ........ 6

*Marlin v. Moody Nat'l Bank*,
248 F. App'x 534 (5th Cir. 2007) ........ 7

*Retractable Techs. v. Abbott Lab'ys Inc.*,
2010 WL 11531436 (E.D. Tex. June 18, 2010) ........ 2

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) ........ 6

*Wilson v. Woods*,
163 F.3d 935 (5th Cir. 1999) ........ 2

**Statutes & Rules**

Fed. R. Evid. 702 ........ 2, 7

Fed. R. Civ. P. 26 ........ 3

## PRELIMINARY STATEMENT

Conceding experts should not testify to state of mind, Plaintiffs confirm they will not offer testimony by experts Lyndon Pittinger and Dr. Robert Merrill regarding what "anyone secretly intended, believed, or knew." (Dkt. 326 ("Opp.") at 1.) Because the parties disagree on the permissible scope of such testimony, however, Defendants request the Court issue an order preventing Plaintiffs' experts from offering state-of-mind testimony like that in the expert report paragraphs Defendants identify in their opening motion.

Exclusion is warranted for three independent reasons. *First*, Pittinger and Merrill are unqualified to offer state-of-mind opinions. Plaintiffs argue their experts are experienced in the oil and gas industries, but that is beside the point. State-of-mind testimony has no basis in any body of experience and is not an appropriate subject for expert testimony. *Second*, the testimony is unreliable. Contrary to Plaintiffs' suggestion, Defendants are not challenging Pittinger and Merrill's overall methodology, but rather specific unsupported instances of speculation in their opinions. *Third*, the testimony will not assist a jury. Defendants do not dispute scientific experts may help the jury understand technical data, but Plaintiffs' experts have no special insight into the minds of Defendants, Anadarko employees, or Anadarko's partners.

## ARGUMENT

### I. Merrill and Pittinger Are Unqualified To Offer State-of-Mind Opinions.

Plaintiffs' argument that their experts have technical expertise in the oil and gas industries has no bearing on their qualification to offer speculative testimony about

knowledge and intent. (*See* Opp. at 7.) Plaintiffs do not rebut the well-established rule that state-of-mind testimony has "no basis in any relevant body of knowledge or expertise," nor do they deny intent "is a classic jury question and not one for the experts." *See Retractable Techs. v. Abbott Lab'ys Inc.*, 2010 WL 11531436, at *5 (E.D. Tex. June 18, 2010) (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004)).

Nevertheless, relying on dicta in *Retractable Technologies v. Abbott Laboratories, Inc.*, Plaintiffs suggest that if an expert's state-of-mind opinions are supported by in-court testimony or documents, they are admissible. (Opp. at 7-8.) But as the court in *Retractable Technologies* held in excluding an expert's state-of-mind opinions, "whether [a company's] documents support [an expert's] opinion does not replace the requirement that his opinion have a basis in his body of expertise such that it will assist the jury in determining a fact issue." 2010 WL 11531436, at *6; *see* Fed. R. Evid. 702; *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."). Because state-of-mind testimony lacks foundation in any body of knowledge, Pittinger and Merrill are unqualified to offer such opinions.

## II. Merrill and Pittinger Offer Speculative State-of-Mind Opinions.

Plaintiffs next claim the statements Defendants challenge are not state-of-mind testimony and should be considered in four buckets: (1) paragraphs identifying the bases of the experts' opinions; (2) summary paragraphs; (3) opinions about conduct in the record; and (4) paragraphs that "use words like 'aware,' 'concerned,' or 'understood.'" (Opp.

at 10-13.) Plaintiffs' categorization does not alter the fact that the statements impermissibly speculate about knowledge and intent and thus are not grounded in reliable methodology.

*First*, Plaintiffs argue certain paragraphs specify the documents forming the bases of their experts' opinions and pose no admissibility problem because such disclosure is required by Rule 26. (*Id.* at 10.) But experts are not given license to speculate about knowledge and intent in those disclosures. The documents Plaintiffs' experts cite do not support their sweeping speculation regarding Defendants', Anadarko's employees', or Anadarko's partners' intent. For instance, Pittinger extrapolates from an Exploration team member's email commenting, "Paints a good picture on their value of the north south fault trending down the center of Shenandoah and how it impacts *THEIR* forward planning," to make the unsupported assertion that "[t]his statement indicates Exploration *conscientiously ignored evidence of faulting*." (Ex. 21 ¶ 56 (emphases added).) As another example, in describing an internal Development email, Pittinger states that "north-south faults are *considered very seriously by the Development Team and partners*." (*See id.* ¶ 95 (emphasis added).) The quoted email offers no substantiation for this assertion, either as to Development or Anadarko's partners. (*See id.* (quoting language merely stating a fault had "already been mapped").) And in the next paragraph, Pittinger extrapolates from another email between Development team members to speculate that "*Exploration's knowledge of the possible existence of these faults might date back further*," even though the email he quotes only states, "Both versions were probably mapped in the past week, right??? Although if I really wanted to be a pain in the a--, I could find a date-stamp for those faults

and determine when they were created." (*Id.* ¶ 96 (emphasis added).) These unfounded inferences merit exclusion.

*Second*, Plaintiffs claim certain paragraphs are merely "summary" and argue Defendants are "isolating conclusions from the supporting analyses." (Opp. at 11.) This argument fails. Defendants' argument is not premised on divorcing these "summary paragraphs" from surrounding discussion, but rather based on the fact that the so-called supporting documents provide no support for the experts' conclusions. In paragraph 299 of Pittinger's report, for example, Pittinger states Anadarko's senior management believed Shenandoah was an "uneconomic venture" after Shen-4. (Ex. 21 ¶ 299.) But the documents he cites in the following paragraphs do not substantiate that assertion. Those paragraphs survey Anadarko's internal strategic discussions, which reveal only that Anadarko was not in a position to make a development decision "today" but that it might be after Shen-5 (*id.* ¶ 305), and discuss project accounting (*id.* ¶¶ 300-12). Even Pittinger admitted he could not offer an opinion on "what anyone at Anadarko knew about the influence of [certain] factors on commercial viability." (Ex. 105 79:24-80:14; *see also* Ex. 104 76:2-77:11 (acknowledging it would be speculative to opine Anadarko withdrew from Shenandoah because it was commercially unviable).)

*Third*, Plaintiffs argue certain paragraphs describe "conduct shown in the record," such as Pittinger's claim that Exploration "censor[ed] technical work" and Merrill's description of "continuing pressure to have one version of [a faulting] map." (Opp. at 11 (first alteration in original) (quoting Ex. 21 ¶¶ 81, 166; Ex. 18 ¶ 73 & n.36).) Pittinger's claim of Exploration's censorship, however, is undermined by the very document he cites,

which shows only that *Frye* asked Shotts to edit his presentation and use the terms "barriers/compartmentalization" instead of "fault." (Ex. 21 ¶ 81); *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 2022 WL 15044626, at *33 (E.D.N.Y. Oct. 26, 2022) (excluding expert opinion that defendants "used their central role in the payments ecosystem to undermine" a competitor's business model as "an improper opinion on intent" because expert "may not opine that [defendants] intended to have such an effect unless he is citing to a source that states this intention as a fact").

Similarly, the document Merrill cites as evidence of "continuing pressure to have one version of the map" only shows Anadarko wanted to present one map to its partners, not that there was pressure to only maintain one map overall. (*See* Ex. 18 ¶ 73; *see also* Ex. 118; Ex. 119 90:13-91:12 (Oudin mapped different faults but explained presenting two interpretations to partners "is not the thing you do")); *see also In re Payment Card*, 2022 WL 15044626, at *33 (excluding statement that defendants "started to pressure [their competitor] to drop its staged wallet model" "to the extent that it implies that [defendants] had the intention of pressuring [their competitor] to drop its staged wallet model"). Plaintiffs' assertion that experts may testify that "certain conduct is consistent with a particular state of mind" (*see* Opp. at 11) is beside the point: Pittinger and Merrill go further and offer opinions on actual knowledge and intent (*see, e.g.*, Ex. 21 ¶ 114 (opining an "exchange showed Leyendecker's *efforts to censor technical opinions and prevent open communication*" (emphasis added))). And that the communications took place in the context of technical documents does not offer Plaintiffs' experts a pass to speculate about intent or knowledge.

*Fourth*, Plaintiffs' argument regarding paragraphs stating certain entities were "aware," "concerned," or "understood" certain facts also fails. (*See* Opp. at 12-13); *see Jenkins v. Helmerich & Payne Int'l Drilling Co.*, 577 F. Supp. 3d 587, 597 (S.D. Tex. 2021) (excluding expert opinion "noting the instances in the record where the Defendants were apparently made aware of an issue" because expert had "no special insight into whether the Defendants knew what was happening on the rig"). Plaintiffs argue these assertions merely reflect "record evidence showing what information was communicated, received, or stated in contemporaneous documents." (Opp. at 12.) But Plaintiffs' experts speculate Anadarko and the Executive Committee were "aware" of certain facts based only on the knowledge of one or two employees. *See, e.g.*, Ex. 18 ¶ 48 (claiming *Anadarko* knew about potential faulting at Shen before the Class Period based on the fact that an *Anadarko geoscientist* had mapped faulting); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (to determine corporate scienter, courts do not look "to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment"). Plaintiffs also defend Pittinger's speculative assertion that "it is highly likely that Anadarko management was aware of the importance of compartmentalization no later than August 2014" by claiming this conclusion is based on Pittinger's experience and review of documents, but that post-hoc rationalization is unsupported by the actual language of Pittinger's report, which shows his conclusion is based on the fact the report was shared with partners: "The Shotts reservoir study findings were important enough to be presented to partners. Hence, it is highly likely that Anadarko

management was aware of the importance of compartmentalization no later than August 2014." (*Compare* Opp. at 13, *with* Ex. 21 ¶ 77.)

Plaintiffs' fallback argument is that these issues bear on weight, not admissibility. (Opp. at 14.) But opinions based on "subjective belief or unsupported speculation" merit exclusion. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *cf. In re Payment Card*, 2022 WL 15044626, at *38 (forbidding expert from testifying about defendants' reasons for taking a particular action "unless citing to a source *directly stating* what their reasons were" (emphasis added)). Because Plaintiffs' experts offer state-of-mind opinions that lack a direct tether to the evidence they cite, they must be excluded. *See* Fed. R. Evid. 702 advisory committee notes to 2023 amendments (it is an "incorrect application" of Rule 702 to conclude "critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility").

## III. Merrill and Pittinger's State-of-Mind Opinions Are Irrelevant.

Next, while Defendants do not object to Plaintiffs' experts offering testimony on scientific subjects to help the jury evaluate technical evidence, Plaintiffs' experts should not be permitted to state that Defendants, their employees, or partners knew or believed something as a result of that explanation. An "expert's credentials do not place him in a better position than the jury to draw conclusions about a defendant's state of mind." *Marlin v. Moody Nat'l Bank*, 248 F. App'x 534, 541 (5th Cir. 2007) (per curiam); (*see, e.g.*, Ex. 21 ¶ 106 (reporting ConocoPhillips' "frustration" with Exploration)).

## IV. Defendants' Motion Is Not Premature.

Finally, Defendants' motion is not premature. The purpose of a *Daubert* motion is to exclude improper expert testimony before trial. Defendants are not asking the Court to redline Merrill's and Pittinger's reports to excise improper statements; rather, they cite paragraphs of the reports as examples of the improper state-of-mind opinions Plaintiffs' experts plan to offer and simply seek an order clarifying that the experts may not offer the improper state-of-mind opinions previewed in their reports.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening brief, Defendants respectfully request that the Court grant their motion.

Dated: August 11, 2026

Respectfully submitted,

*/s/ Kevin J. Orsini*

**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Melissa A. Syring (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com
msyring@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

**CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 1,998 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

Dated: August 11, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini

## CERTIFICATE OF SERVICE

I certify that on August 11, 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: August 11, 2026

*/s/ Kevin J. Orsini*
Kevin J. Orsini