**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | Case No. 4:20-cv-576<br><br>District Judge Charles R. Eskridge III<br><br>CLASS ACTION |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF BJORN I. STEINHOLT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. Steinholt's Opinion Is Unreliable Because It Conflicts with Plaintiffs' Theory of Liability. .......... 2

A. Plaintiffs Cannot Recharacterize the Nature of the Alleged Fraud Now. .......... 3

B. Steinholt's Model Fails Even if Plaintiffs Recast the Nature of the Alleged Corrective Disclosure. .......... 5

II. Steinholt's Model Fails to Disaggregate the Effect of Firestone. .......... 8

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019) ..... 7

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ..... 4

*In re BP Sec. Litig.*,
2016 WL 3090779 (S.D. Tex. May 31, 2016) ..... 8

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
281 F.R.D. 174 (S.D.N.Y. 2012) ..... 8

*In re Under Armour Sec. Litig.*,
730 F. Supp. 3d 172 (D. Md. 2024) ..... 3

*In re Vale S.A. Sec. Litig.*,
2026 WL 1002335 (E.D.N.Y. Apr. 13, 2026) ..... 2, 3

*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) ..... 6

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*,
2019 WL 13045054 (C.D. Cal. Feb. 28, 2019) ..... 7

*Off. of Gen. Treasurer on behalf of Emps. Ret. Sys. v. Boeing Co.*,
2026 WL 2083048 (4th Cir. July 20, 2026) ..... 5

*Smilovits v. First Solar, Inc.*,
2019 WL 7282026 (D. Ariz. Dec. 27, 2019) ..... 7

## Statutes & Rules

Rule 702 ..... 6, 7

## PRELIMINARY STATEMENT

Defendants moved to exclude Bjorn Steinholt's constant-ribbon inflation damages model because it is fundamentally inconsistent with Plaintiffs' theory that Shenandoah's risk of commercial unviability varied throughout the Class Period. Steinholt purports to calculate damages attributable to Defendants' alleged concealment of Shenandoah's commercial unviability. (*See* Ex.19¶27.) Steinholt's model assumes static inflation, such that the full amount of inflation must have been incorporated into Anadarko's stock on day one of the Class Period. This "flat" inflation model requires that the alleged fraud revealed to the market at the end of the Class Period—that Shenandoah was commercially unviable—also existed at the outset. But Plaintiffs' experts, Steinholt's factual assumptions, and Plaintiffs' liability theory show the opposite. This mismatch requires exclusion.

In opposition, Plaintiffs do not even try to argue that such a fundamental mismatch between their liability and damages theories is permissible. Instead, they try to retreat from their own theory of liability and now assert that the alleged corrective disclosure did *not* reveal that Shenandoah was commercially unviable (even though this is precisely what they alleged in the complaint and Steinholt stated in his reports). Instead, they now argue that the market understood Shenandoah *was* viable even *at the end of the Class Period.* This about-face cannot be squared with this litigation's history, and it is too late for Plaintiffs to fundamentally change their theory of the case.

No matter how Plaintiffs may try to recharacterize the alleged corrective disclosure, they cannot salvage Steinholt's opinions. To the contrary, they have conceded there was a

"gradation" of risk over the duration of the Class Period. (Dkt.328("Opp."),10.) That concession is fatal; a constant-ribbon inflation model cannot be squared with increasing risk (and, therefore, a corresponding decrease in Shenandoah's value). This is not simply an issue of weight, credibility, or need for a counter-damages model. It is a fundamental, methodological issue requiring exclusion as part of the Court's gate-keeping function.

Steinholt's inability to disaggregate the effects of Firestone independently warrants exclusion. The Court's previous consideration of this issue at class certification does not foreclose exclusion. There, as the Court noted, Defendants bore the burden of proving that none of the alleged inflation was due to Shen. (Dkt.302 22.) But the Court expressed concern about how the jury could possibly determine at trial how much of the alleged inflation was related to Firestone (Dkt.284,24:21-25:15), and Steinholt's failure to provide a reliable methodology for Plaintiffs to carry their burden on those issues now requires exclusion.

## ARGUMENT

### I. Steinholt's Opinion Is Unreliable Because It Conflicts with Plaintiffs' Theory of Liability.

A constant-ribbon inflation model shows static inflation across the Class Period, meaning all fraud-related inflation entered the stock price at the outset of the Class Period. *See In re Vale S.A. Sec. Litig.*, 2026 WL 1002335, at *2 (E.D.N.Y. Apr. 13, 2026) (constant-ribbon inflation assumes "the full amount of artificial inflation was baked into the [Defendants'] securities' prices on day 1 of the class period").

Because a stock investment's value is based in part on the risk to expected cash flows of that investment, a stock's value will vary as risk changes. (Ex.19¶5n.1.) If the allegedly concealed risk varies throughout the Class Period, inflation must also vary and a constant-dollar inflation methodology cannot be used. (*See* Ex.120,97:21-98:2.) Steinholt's failure to account for this varying risk dooms his damages model.

### A. Plaintiffs Cannot Recharacterize the Nature of the Alleged Fraud Now.

Because constant-dollar inflation requires that the alleged fraud be present from the start of the Class Period, the starting question is what the alleged corrective disclosure revealed and whether that was also true at the outset of the Class Period. *See In re Under Armour Sec. Litig.*, 730 F. Supp. 3d 172, 182 (D. Md. 2024) (constant-dollar method requires plaintiffs show "the full amount of the fraud-related inflation was in the stock from the start of the Class Period"). As Defendants highlighted in their opening papers, Steinholt's constant-dollar model calculates inflation in Anadarko's stock attributable to Defendants' alleged concealment of "the lack of commercial viability" of Shenandoah. (Ex.19¶29.) Consequently, this model requires Plaintiffs to prove Shenandoah was commercially unviable at the start of the Class Period and the risk of Shenandoah's commercial failure stayed constant throughout that period. *See Vale*, 2026 WL 1002335, at *2.

Plaintiffs cannot prove this. Their own experts offer contrary opinions. According to Pittinger, it was only after Shen-4—well into the Class Period—that Shenandoah became "not commercially viable." (Ex.21¶11(a),(h),(j).) Steinholt adopts these opinions as his assumptions and admits there was up to a 50% chance Shenandoah could have been

commercially viable up until Shen-4. (Ex.19¶28(j);Ex.106,52:7-53:12). This fundamental inconsistency merits exclusion. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[A]ny model supporting a plaintiff's damages case must be consistent with its liability case." (citation omitted)).

Faced with this record, Plaintiffs fatally concede Defendants did not know Shenandoah was commercially unviable at the outset of the Class Period. (Opp.10; Dkt.322-1,SectionII.) They argue they never claimed that the corrective disclosure revealed that Shenandoah lacked commercial viability, and instead claim the alleged corrective disclosure actually disclosed that Shenandoah *could still be viable.* (Opp.11-12.) They even say it is "an erroneous factual assumption" that the alleged corrective disclosure "revealed that Shenandoah was 'certainly not commercially viable.'" (*Id.*11.) But Plaintiffs cannot escape that this is the theory alleged in their complaint. (*See* Am.Compl.¶152 ("The lack of commercial viability of the Shenandoah project was first revealed to the market in Anadarko's [May 2, 2017 disclosure].").) It is also the core assumption of Steinholt's damages opinion: "the alleged truth, *i.e.*, the lack of commercial viability of the Shenandoah project, was disclosed." (Ex.19¶29; *see also* MSJ Reply, Appendix A.)

Plaintiffs cannot shift theories five years into litigation, and their attempt to run from their own theory simply underscores that they cannot defend Steinholt's model.

### B. Steinholt's Model Fails Even if Plaintiffs Recast the Nature of the Alleged Corrective Disclosure.

Even if Plaintiffs could retreat from their claim that the alleged corrective disclosure revealed a lack of commercial viability—they cannot—Steinholt's model still must be excluded.

*First,* regardless of what was disclosed on May 2, 2017, Plaintiffs concede the underlying risk of Shenandoah's unviability varied during the Class Period. Pittinger opines Shenandoah was only "more likely than not" commercially unviable one month into the Class Period, and became unviable after Shen-4. (Ex.21¶11(h),(j).) Steinholt expressly assumes these two periods of differing risk. (Ex.19¶28(j).) And Plaintiffs acknowledge their theory involves a "gradation" of risk, conceding Shenandoah was *not* commercially unviable on day one. (Opp.10.) That gradation of risk is fundamentally at odds with Steinholt's constant-ribbon inflation model and requires exclusion. *See Off. of Gen. Treasurer on behalf of Emps. Ret. Sys. v. Boeing Co.*, 2026 WL 2083048, at *18 (4th Cir. July 20, 2026) (rejecting constant-inflation model as "inconsistent with the plaintiffs' theory of liability").

*Second*, Plaintiffs' argument in the alternative that Steinholt's damages calculations are, at most, deficient only for the first 10 months of the Class Period does not cure the model's deficiencies. (Opp.17.) Excising the first 10 months of damages does not change the conflict between Steinholt's constant-inflation model and Plaintiffs' liability theory because Plaintiffs allege Defendants' scheme resulted in a "gradation" of inflation throughout the *entire* Class Period. (Opp.10; *see also* Ex.21¶11(c) (assuming "each

subsequent well [after Shen-2] reduced Anadarko's operative resource range for the Shen field").) Plaintiffs' concession that Steinholt fails to account for varying risk in the first 10 months of the Class Period does not address his failure to account for fluctuating inflation during the rest of the Class Period.

*Third,* Plaintiffs' argument that Steinholt conservatively models damages because "the value the market placed on Shenandoah was far higher" earlier in the Class Period fails. (Opp.14.) Defendants are not, through this motion, challenging the dollar amount of damages; Defendants take issue with the mismatch between Steinholt's constant-dollar inflation ribbon and Plaintiffs' theory that Shenandoah's commercial viability changed over the Class Period. Moreover, Plaintiffs' argument concedes inflation of Anadarko's stock price varied across the Class Period, creating an intraclass conflict in contradiction of this Court's class certification order. (Dkt.302 24 (describing Plaintiffs' damages model as not requiring "inquir[y] into other factors such as individual risk tolerance")); *see also Ludlow v. BP, P.L.C.*, 800 F.3d 674, 690 (5th Cir. 2015) (requiring plaintiffs' expert "provide an adequate measure of *class-wide* damages" (emphasis added)).[1]

*Fourth*, Plaintiffs are wrong that this motion presents an issue for the jury. (Opp.9.) Leaving "the application of the expert's methodology" to the jury as a question of weight instead of determining admissibility is an "incorrect application" of Rule 702. Fed. R.

[1] Plaintiffs' argument that Dr. Ferrell was required to perform a competing economic analysis to show Steinholt's per-share inflation calculation was unreasonable fails for the same reason. (*See* Opp.16.) The fact that Defendants did not offer their own damages model does not give Plaintiffs license to offer a model that is untethered from, and inconsistent with, their own liability theory.

Evid. 702 advisory committee notes to 2023 amendments. That is precisely why courts exclude damages models that are inconsistent with plaintiffs' liability theories. *See Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, 2019 WL 13045054, at *2 (C.D. Cal. Feb. 28, 2019) ("Courts reject or exclude expert testimony that fails to connect damages calculations to the theory of liability.").

Plaintiffs rely on inapposite authorities rejecting a defendant's request to preference the defendant's liability theory over the plaintiff's. (Opp.9.) That is not what Defendants' motion requests. Unlike *Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *8 (D. Ariz. Dec. 27, 2019), where the court declined to "exclude Plaintiffs' expert by concluding that Defendants' factual recitation [of the alleged misstatements] is correct and Plaintiffs' is incorrect," Steinholt's damages model is inconsistent with *Plaintiffs'* theory. *See also Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 908 (S.D. Cal. 2019) (seeking to exclude constant-ribbon inflation model because *defendants* disagree with plaintiff's theory of liability).

*Fifth*, Plaintiffs' suggestion that Steinholt's model accounts for the varying levels of inflation is false. They claim Steinholt's model is not flat, but the single increase in inflation reflects Anadarko's increased working interest in Shenandoah, not Shenandoah's fluctuating risk of commercial unviability. (Ex.19,Ex.D 16.) And that Steinholt expressly recites Pittinger's opinion that Shenandoah went from "more likely than not uncommercial" to "certainly commercially unviable" after Shen-4 does not save his opinion. (*See* Opp.8;Ex.19¶28(j).) The two periods carry different levels of risk and any

appropriate damages model would account for how those risks impacted the pattern of inflation. Steinholt's constant-ribbon model plainly does not do so.

## II. Steinholt's Model Fails to Disaggregate the Effect of Firestone.

Steinholt's failure to reliably disaggregate damages attributable to Firestone independently warrants exclusion.

Attempting to control for Firestone, Steinholt removed the industry index he had previously relied upon. This constitutes a fundamental change—and flaw—in his methodology. (Dkt.237-1,Ex.A¶¶35-36.) *See In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 179, 181 (S.D.N.Y. 2012) (refusing to "credit ... [plaintiffs' expert] testimony" where expert "changed his [event study] methodology"). And Plaintiffs' argument that the Firestone-related news "concerned increased regulatory scrutiny, which was not a one-time event" (Opp.18), fails to show how Steinholt's event study—a regression model using historical data—can reliably control for Firestone, an event carrying *prospective* regulatory scrutiny (Dkt.237-1,Ex.A¶36).

That the Court considered similar issues at class certification does not foreclose exclusion. Indeed, at the class certification hearing, the Court noted its concern about the impossibility of disentangling the inflation attributable to Firestone in determining loss causation and damages. (Dkt.284,24:2-26:18.) Now that Plaintiffs bear the burden to prove loss causation (unlike at class certification, where it is Defendants' burden to disprove price impact (*see* Dkt.302 22)), and Steinholt's deficient event study cannot carry their claim, exclusion is warranted (Dkt.322-1 35-36); *see In re BP Sec. Litig.*, 2016 WL 3090779, at *30 (S.D. Tex. May 31, 2016).

**CONCLUSION**

For the reasons herein and in Defendants' opening brief, Defendants respectfully request the Court grant their motion.

Dated: August 11, 2026

Respectfully submitted,

*/s/ Kevin J. Orsini*

**CRAVATH, SWAINE & MOORE LLP**
Kevin Orsini (*pro hac vice*)
Lauren Rosenberg (*pro hac vice*)
Melissa Syring (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
lrosenberg@cravath.com
msyring@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Attorneys for Defendants*

**CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 1,998 words, exclusive of the caption, the table of contents, the table of authorities and the signature block.

Dated: August 11, 2026

*/s/ Kevin J. Orsini*
Kevin Orsini

## CERTIFICATE OF SERVICE

I certify that on August 11, 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

Dated: August 11, 2026

*/s/ Kevin J. Orsini*
Kevin Orsini