UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § | Civil Action No. 4:20-cv-00576<br><br><u>CLASS ACTION</u><br><br>The Honorable Charles R. Eskridge III |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN TESTIMONY BY DEFENDANTS' EXPERT DR. ROCCO DETOMO**

## I. INTRODUCTION[1]

Detomo's opinions exceed the limits of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1933). Rather than confining himself to technical matters within his expertise, Detomo usurps the jury's role by opining that the alleged misstatements were not false or misleading. He also offers opinions beyond his expertise as a geophysicist, and illogically opines that Shenandoah was commercially viable during the Class Period because other companies planned to develop it years later, under materially different circumstances. Finally, Detomo opines that various techniques could mitigate asphaltene but ignores Anadarko's contemporaneous conclusions that those same techniques were "new and unproven" and "not on the table."

Defendants' arguments against excluding the challenged opinions fail. They ignore Detomo's legal conclusions and instead discuss language from Detomo's report that Plaintiffs did not challenge. They contend post-Class Period developments are not *per se* inadmissible but ignore that circumstances materially changed after the Class Period. They overstate his experience with commerciality evaluations and overlook that his purported experience is limited to Shell's "proprietary" system. And they fail to address Anadarko's assessments rejecting the asphaltene mitigation techniques on which Detomo relies.

## II. LEGAL STANDARDS

Defendants bear the burden to prove that Detomo's opinions are admissible. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). "'[R]ebuttal experts must still meet

[1] Undefined terms have the same meaning as in Plaintiffs' motion (ECF 323). Unless otherwise noted, emphasis is added and citations are omitted.

*Daubert's* threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony.'" *Averbach v. Cairo Amman Bank*, 2026 WL 366710, at *3 (S.D.N.Y. Feb. 9, 2026); *Empire Tech. Dev. LLC v. Samsung Elecs. Co.*, 2025 WL 1669060, at *1-*2 (E.D. Tex. June 12, 2025).

## III. ARGUMENT

### A. Detomo's Falsity Opinions Should Be Excluded

Detomo intends to tell the jury that Anadarko's public statements were not false or misleading. He opines, for example, that Plaintiffs "have not shown that any statements were inaccurate or misleading" and "Anadarko made accurate statements about Shenandoah." ¶¶34, 1051.[2] Falsity is an element of Plaintiffs' claims, and Detomo's opinions – which "merely tell the jury what result to reach'" – are inadmissible. *See United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017).

Defendants largely ignore Detomo's legal conclusions. For example, they assert that Detomo provides a "scientific assessment of Shenandoah's fluid quality" and cite paragraphs of Detomo's report that Plaintiffs do not challenge. ECF 333 ("Opp.") at 8 (citing ¶¶254-263). When quoting a paragraph Plaintiffs do move to exclude, Defendants excise the critical language "[t]he alleged omissions" and "in my experience are not disclosed." *Id.* (citing ¶1051). Defendants also discuss Detomo's definitions of industry terms while ignoring his conclusion that the misstatements were accurate under those definitions. *Id.* (citing ¶760). By avoiding the opinions Plaintiffs move to exclude, Defendants "fail[] to

---

[2] Unless otherwise stated, all "¶" references are to ECF 323-1.

respond to Plaintiff's argument, and therefore fail[] to demonstrate the reliability of [Detomo's] particular opinion." *Mark Principi v. Survivair, Inc.*, 2005 WL 5961991, at *5 (M.D. Fla. Oct. 18, 2005).

Defendants' assertion that Plaintiffs' experts opine that the alleged misrepresentations "were false" is a red herring. Opp. at 8; *contra* ECF 322-9, Ex. 18, ¶95 (explaining technical data). Defendants never moved to exclude Plaintiffs' experts on that basis, and their characterization of Plaintiffs' experts' opinions has no bearing on whether Detomo's opinions are admissible. Defendants are also wrong. Detomo himself acknowledged that Plaintiffs' experts "largely disclaimed any assessment of Anadarko's public statements." ¶34. Instead, Plaintiffs' experts explain technical information relevant to falsity – precisely the testimony Defendants concede is admissible. Opp. at 7 (citing cases). There is a line between explaining technical information relevant to falsity and opining that the challenged statements were in fact accurate and not misleading. Plaintiffs' experts stop short of that line, while Detomo crosses it.

Detomo is not an expert in the securities laws, yet he opines that the alleged misstatements were not false or misleading. Contrary to Defendants' assertions, Detomo must be qualified to offer these opinions regardless of whether he purports to be an expert in the securities laws. *See Averbach*, 2026 WL 366710, at *3. Defendants are free to rebut Plaintiffs' experts with competing technical opinions, but Rule 702 does not permit Detomo to usurp the jury's role to determine whether the challenged statements were misleading.

### B. Detomo's Opinions Regarding Post-Class Period Developments Should Be Excluded

Detomo opines that Shenandoah was commercially viable during the Class Period because other companies planned to develop it in 2021 – four years after the Class Period. Development attempts by ***other*** companies – with different cost structures and business models, using new technology that was unavailable during the Class Period – should be excluded because they have no bearing on whether Shenandoah was commercially viable to ***Anadarko*** under the circumstances that existed during the Class Period. *See Schleicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010) ("Fraud depends on the state of events when a statement is made, not on what happens later.").

As a preliminary matter, Defendants attempt an end-run around the expert disclosure requirements by arguing that Detomo should be permitted to opine on "current" developments at Shenandoah – including events that occurred in ***2026*** – while ignoring that Detomo did not, and indeed could not, have disclosed opinions based on those developments in his ***2023*** report. Defendants' attempt to supplement Detomo's opinions through their opposition is improper, and Detomo should be "precluded from offering any expert opinions or bases that are not disclosed in [his] expert report[]." *SimpleAir, Inc. v. AWS Convergence Techs., Inc.*, 2012 WL 13207358, at *2 (E.D. Tex. Apr. 3, 2012).

Defendants also argue that post-Class Period events are not *per se* inadmissible. But Plaintiffs don't argue otherwise. The problem is that here, the relevant circumstances fundamentally changed after the Class Period. Shenandoah's post-Class Period development is thus irrelevant to whether Shennandoah was commercially viable to Anadarko under the

facts that existed during the Class Period. Defendants' cases are inapposite because the post-class-period circumstances there did not meaningfully change. *See, e.g.*, *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 698 (5th Cir. 2005) ("later-emerging facts" relevant only "under the right surrounding circumstances" with "temporally connected" events).

Defendants' remaining arguments are meritless. They emphasize that Shenandoah's subsurface characteristics remained constant while ignoring that commercial viability depends not only on the reservoir itself, but also on the technology available to produce from it. During the Class Period, the necessary technology did not exist; years later, it did. Defendants also claim that the changed circumstances "are precisely the factors that Anadarko informed the market would need to exist before Shenandoah's commercial development could proceed." Opp. at 11. But Anadarko never told investors that Shenandoah's development would depend on entirely different operators and technology that would not exist until years later.

Finally, Defendants note that the jury's job is to analyze facts but ignore that the "facts" Detomo intends to present pose a substantial risk of misleading the jury into evaluating Shenandoah's commerciality based on circumstances that did not exist during the Class Period.

**C. Detomo's Commercial Viability Opinions Should Be Excluded**

Detomo is unqualified to opine on Shenandoah's commercial viability. He is a geophysicist, and a geophysicist's role is to analyze seismic data and develop subsurface models. Economic evaluations are beyond that expertise. Defendants argue that, despite his background as a geophysicist, Detomo has experience with economic analysis. But the

experience Defendants cite is specific to Shell's "homegrown" and "proprietary" methods, and "Anadarko didn't use that Shell system." ECF 323-2 at 46:5-47:18, 48:11-14, 62:22-63:5, 64:12-18, 66:6-13. Nor does Detomo's experience working on a team with petroleum engineers qualify him to opine on commerciality. The petroleum engineers on those teams (not Detomo) were responsible for conducting economic assessments. *Id.* at 60:18-61:4, 62:7-63:7, 70:6-16.

Defendants argue that Detomo is qualified to opine on commercial viability simply because he has "experience with deepwater oil drilling." Opp. at 13. But experience with deepwater drilling generally does not qualify Detomo to opine on every technical and economic issue related to deepwater drilling. *See Ramos v. Home Depot Inc.*, 2022 WL 615023, at *3 (N.D. Tex. Mar. 1, 2022). Defendants' reliance on *Target Strike, Inc. v. Marston & Marston, Inc.*, 2011 WL 676185 (W.D. Tex. Feb. 16, 2011), is misplaced. There, unlike here, the expert was "'directly involved'" in relevant analyses. *Id.* at *2.

**D. Detomo's Asphaltene Mitigation Opinions Should Be Excluded**

**1. Detomo Is Unqualified to Opine on Asphaltene Mitigation**

Asphaltene mitigation – which concerns flow assurance and well interventions – is also beyond a geophysicist's expertise. Tellingly, although Detomo readily identified himself as an expert in four other subject areas, he stopped short of claiming expertise in asphaltene mitigation, testifying that he did not know what rose to the level of "expert." ECF 323-2 at 31:9-32:1.

Defendants overstate Detomo's qualifications by asserting that he has "experience with multiple projects that encountered asphaltenes and required the use of mitigation

techniques." Opp. at 15. But their only support is Detomo's testimony citing ***one*** project that encountered asphaltenes at much lower AOPs than at Shenandoah. ECF 323-2 at 63:8-64:9. Defendants also again challenge Plaintiffs' expert. But Defendants did not move to exclude Plaintiffs' expert on this ground, and Detomo must be independently qualified. *See Pleasant Retreat United Methodist Church v. Church Mut. Ins. Co.*, 2020 WL 6803259, at *3 (E.D. Tex. June 26, 2020) ("To the extent that [the experts] intend to provide rebuttal testimony beyond their qualifications . . . such opinions should be excluded.").

### 2. Detomo's Asphaltene Mitigation Opinions Are Misleading and Baseless

Detomo opines on asphaltene mitigation strategies that Anadarko described as "new and unproven"; "not a reliable method"; and "not on the table" for Shenandoah during the Class Period. ECF 322-4 at APC-00011731-32; Ex. 1 at APC-00052041, attached hereto. Defendants do not address these facts. Instead, they focus on techniques used by other companies or at different fields. For example, Defendants state that Chevron used various mitigation techniques on other fields while ignoring Anadarko's own internal documents stating those techniques were infeasible at Shenandoah. And while Anadarko had used xylene treatments at other sites, Anadarko engineers stated xylene treatments were "short lived" and "not a reliable method" for Shenandoah. ECF 323-4 at APC-00011732. Defendants also assert that Plaintiffs' expert opined coiled tubing was an existing mitigation technique, but they ignore his opinions that coiled tubing was cost-prohibitive at Shenandoah. ECF 322-9, Ex. 21, ¶¶267-272.

Defendants' arguments about the use of mitigation techniques at other fields, by other companies, and that Anadarko engineers stated were infeasible for Shenandoah, only highlight the risk of jury confusion. The relevant question is not whether techniques worked elsewhere, but whether they were feasible for Anadarko at Shenandoah. Detomo opines, without support, that various mitigation techniques were available at Shenandoah while disregarding Anadarko's contemporaneous assessments that they were not. His opinions accordingly lack a factual foundation and create a substantial risk of jury confusion.

Defendants cannot reconcile Detomo's opinions with the record. First, Detomo testified that AOPs were one-half what they actually were. ECF 323-2 at 180:21-25. In the portions of Detomo's deposition and report that Defendants cite, Detomo merely quotes Plaintiffs and their expert and then continues to wrongly assert that AOPs were much lower. *Id.* at 180:21-181:21. Second, Defendants assert that the K2 field was a success. But K2's overall performance does not excuse Detomo's reliance on K2 as an example of successful asphaltene mitigation when, in fact, a K2 well ***failed*** because of asphaltene. Finally, Defendants cite a portion of Detomo's report where he cites Lea Frye's deposition testimony to explain a ConocoPhillips email stating that asphaltene reduced recovery by one-third. Plaintiffs established in their motion that Detomo selectively quoted that testimony, and Defendants do not respond to that argument. ECF 323 at 12; ¶¶364-365.

## IV. CONCLUSION

Detomo offers opinions that usurp the jury's role, exceed his qualifications, rely on materially changed post-Class Period circumstances, and disregard Anadarko's contemporaneous technical assessments. The challenged opinions should be excluded.

DATED: August 11, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
LUKE O. BROOKS
HILLARY B. STAKEM
NICOLE Q. GILLILAND
T. ALEX B. FOLKERTH

s/ Luke O. Brooks

LUKE O. BROOKS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Class Counsel

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 2,000 words, exclusive of the caption and the signature block.

DATED: August 11, 2026

s/ Luke O. Brooks
LUKE O. BROOKS

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 11th day of August, 2026.

s/ Luke O. Brooks
LUKE O. BROOKS