UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § | Civil Action No. 4:20-cv-00576<br><br>CLASS ACTION<br><br>The Honorable Charles R. Eskridge III |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANTS' EXPERT PETER KELLER**

## I. INTRODUCTION[1]

Defendants' opposition confirms that Keller's challenged opinions should be excluded. Defendants assert Keller is not opining about investors' understanding, and will not opine that Defendants' statements were not misleading, their omissions were legally immaterial, or that Defendants did not engage in fraud or deceptive conduct – despite Keller expressly offering those opinions in his reports and confirming them in sworn testimony. They also contend that whether Keller's truth-on-the-market opinions rely on an incorrect market-efficiency standard is irrelevant because – despite his contrary testimony – Keller's opinions don't depend on his market-efficiency views. Keller's actual opinions – which speculate about investors' beliefs, assert legal and factual determinations reserved for the Court and jury, rely on irrelevant hindsight evidence, and employ an unreliable methodology grounded in unsupported assumptions and standards – are inadmissible. Plaintiffs' motion should be granted.

## II. KELLER'S INVESTOR "UNDERSTANDING" OPINIONS ARE UNRELIABLE AND UNHELPFUL

Defendants assert Keller merely identifies public information and explains industry context. But his reports assert over ***120*** times what investors "understood," "would have understood," "did not understand," or their "view[s]." He also opines that Plaintiffs' allegations reflect a "misunderstanding of how investors understood" Anadarko's statements.

---

1 Undefined terms have the same meaning as in Plaintiffs' motion (ECF 308). Unless otherwise noted, emphasis is added and citations omitted.

¶107.[2] Keller confirmed opining that Defendants' statements did not mislead investors (ECF 308-23, Ex. 3 ("Keller Tr.") at 34:21-24) and that all investors understood Anadarko's statements exactly as Keller describes. *Id.* at 124:25-125:4. Defendants' proposed limiting instruction that Keller is not opining on investors' beliefs acknowledges that his opinions as offered go beyond synthesizing public information and will mislead jurors.

Because Keller does not solely explain public information, Defendants' cases are inapposite. *See Shupe v. Rocket Cos., Inc.*, 752 F. Supp. 3d 689, 729 (E.D. Mich. 2024) (price-impact expert opined solely on available information and analyst processes); *United States v. Schiff*, 538 F. Supp. 2d 818, 845 (D.N.J. 2008) (expert explained publicly-available information); *SEC v. ITT Educ. Servs., Inc.*, 311 F. Supp. 3d 977, 995 (S.D. Ind. 2018) (same); *In re Xerox Corp. Sec. Litig.*, 2009 WL 8556135, at *3 (D. Conn. Apr. 22, 2009) (same).

Keller's investor-understanding opinions are speculative and result from an unreliable methodology. Keller often merely repeats the alleged misstatements and declares investors' views on them, while citing no supporting analyst or market commentary that could potentially permit such conclusions. *See, e.g.*, ¶¶119-121, ¶¶123-126, ¶¶184-197; Keller Tr. at 46:9-12 (testifying that documents relied on for particular opinions are cited in the relevant report section). Defendants wrongly dismiss as cross-examination fodder the reliability of Keller's foundational assumptions that (i) all sophisticated investors understood public information as Keller did, despite admitting not all investors would agree with him and (ii)

---

2 Unless otherwise noted, "¶" references are to Keller's report. ECF 308-2, Ex. 1.

Defendants' disclosures were truthful. But Keller did not use a reliable methodology; thus, his reliance on flawed and unsupported assumptions results in unreliable, inadmissible opinions. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (opinion properly excluded where expert offered no "specific factual support for the reliability of his initial assumptions"); *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 804, 807 (N.D. Tex. 2018) (expert's unsupported assumption that company's representations were true rendered opinions unreliable), *aff'd*, 2018 WL 2064126 (N.D. Tex. May 2, 2018).

Plaintiffs do not contend qualitative analysis based upon comprehensive review of analyst reports are ***necessarily*** unreliable. But Keller selectively excluded approximately one-third of analysts covering Anadarko, based not on principled guidelines but on personal feelings of whether analysts provided ambiguously-described "good coverage." *See* Keller Tr. at 77:22-23, 79:10-22, 79:23-25. That is inadequate to opine on the "total mix of information" and investor-understanding. *See Berkley Ins. Co. v. Fed. Housing Fin. Agency*, 2023 WL 4744155, at *2 (D.D.C. July 25, 2023) (expert who "simply read some analyst reports…and in an unexplained application of his expertise, concluded that those reports reflect the general sense of that market … 'relies on essentially no methodology at all'").

Defendants' cases do not support Keller's methodology. In *Shupe*, the expert evaluating the total mix of information reviewed ***all*** class period sell-side analyst reports, not a subset. 752 F. Supp. 3d at 729. In *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2014 WL 60324, at *8 (W.D. La. Jan. 7, 2014), the expert reviewed the entire body of medical studies available but rejected certain results, explaining why the poorly-conducted studies were unreliable. Keller does not explain his choices. *See also SEC v. World Tree Fin., L.L.C.*, 43

F.4th 448, 462-63 (5th Cir. 2022) (court could rely on expert's analysis where opposing expert's analysis did not explain trading patterns); *Xerox*, 2009 WL 8556135, at *3 (truth-on-the-market methodology reliable where expert "consider[ed] the total mix of information available during the Class Period"); *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 901-02 (S.D. Cal. 2019) (expert not opining on total mix of information).

## III. KELLER'S LEGAL OPINIONS SHOULD BE EXCLUDED

Defendants substantially concede on Keller's legal opinions. Despite his report and testimony to the contrary, Defendants assert Keller will not opine: (1) what materiality determinations the jury should reach (¶21; ECF 308-2, Ex. 2 ("Keller Rebuttal"), ¶¶81, 125), including that alleged omissions were legally immaterial (Keller Tr. at 34:25-35:3); (2) that Defendants did not engage in fraud (*id.* at 35:16-23, 84:4-12); (3) that alleged misstatements were not misleading (*id.* at 83:23-84:2; Keller Rebuttal, ¶¶5-8, 31, 68); and (4)-(5) that Defendants disclosed known risks to Shenandoah (¶107) and did not omit information (¶170; Keller Rebuttal, ¶8). Opp. 15-16.

Defendants cannot avoid a ruling on Keller's actual opinions by promising that he will use different words at trial. Defendants contend, for example, that Keller will only use "material" in the economic sense employed by Plaintiffs' expert, Bjorn Steinholt. But unlike Steinholt, who expressly defines "material" in an economic sense (*see* Opp. at 15 (citing ECF 322-16, Ex. 19, ¶5 n.1)) and establishes economic materiality using a well-accepted methodology, Keller has no methodology and, asked whether he is "offering an opinion that defendants' alleged omissions were ***legally*** immaterial," unequivocally testified, "***[y]es, I am***." Keller Tr. at 34:25-35:3.



4915-4433-3765.v1

Nor can Defendants credibly claim that Keller's opinions that their statements were not "misleading" merely opine certain information was already public. Opp. at 15; *see id.* at 10 ("Keller does not purport to opine on whether Defendants' disclosures were in fact truthful"). Keller unambiguously testified he is opining "that defendants' allegedly misleading statements were not misleading to investors" (Keller Tr. at 34:21-24), and that his assignment from Defendants included opining "whether disclosures by Anadarko were truthful or misleading." *Id.* at 44:8-15. Such opinions impermissibly tell the jury which conclusions to reach. *United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017).

Finally, if, as Defendants assert, Keller will not opine at trial that Defendants did not engage in deceptive practices or a fraudulent scheme, they should have no objection to an order excluding those concededly inadmissible opinions.

## IV. KELLER'S POST-CLASS PERIOD OPINIONS ARE INADMISSIBLE

Keller's testimony about other companies' development of Shenandoah in 2023 – six years after Anadarko's write-down and abandonment – does not illuminate Anadarko's Class Period capability or Defendants' knowledge or disclosures. Defendants say later development confirms Shenandoah's commercial viability with later-developed technology in the right commodity-price environment. Opp. at 20-21. Those qualifications prove the problem: different operators, new technology, and improved economics cannot establish Anadarko's earlier statements were truthful or complete when made.

Defendants' authorities do not justify this hindsight evidence. *See Siracusano v. Matrixx Initiatives, Inc.*, 2006 WL 8437376, at *3 (D. Ariz. Mar. 8, 2006) (post-class period

developments "not relevant to what Defendants knew at the time statements were made and … highly prejudicial"); *Homyk v. ChemoCentryx, Inc.*, 2025 WL 1547625, at *4-*5 (N.D. Cal. May 30, 2025) (same). In *Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005), post-Class Period events were relevant only because they were "so temporally connected that they shed light on the financial condition of the companies at the time of the [alleged misstatements]." *Id.* at 698 ("[T]he fact that a business files for bankruptcy on 'Day Two,' may, under the right surrounding circumstances, provide grounds for inferring that the business was performing poorly on 'Day One.'"); *see In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (***pre***-class period information relevant to defendants' knowledge at start of following quarter).

Keller's post-Class-Period development testimony constitutes classic "innocence by hindsight": Shenandoah's eventual fate neither reflects publicly available information during the Class Period, nor establishes what Defendants or the market then knew. Keller's post-Class-Period opinions will generate unnecessary mini-trials and juror confusion and should be excluded. *See Spin Master, Ltd. v. Zobmondo Ent., LLC*, 2012 WL 8134014, at *4 (C.D. Cal. July 6, 2012) ("the jury w[ould] surely be unduly confused as to how evidence arising in 2010 and 2012 is relevant to measuring distinctiveness in 2002"); *Pearlstein v. Blackberry Ltd.*, 2022 WL 741941 (S.D.N.Y. Mar. 11, 2022) (excluding evidence of post-class period changes in standards as irrelevant to compliance with earlier-governing standards). Keller's testimony should be excluded under Federal Rules of Evidence 402, 403, and 702.

## V. KELLER SHOULD NOT BE PERMITTED TO TESTIFY ABOUT MARKET EFFICIENCY

Experts cannot testify based on incorrect standards, particularly when their purported standard contradicts a Supreme Court-utilized framework. *Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1246 (N.D. Ala. 2000) (expert methodology "flawed and unreasoned" where his "conclusions [we]re based upon analyses that are contrary to the law as established by … the [U.S.] Supreme Court"), *aff'd*, 284 F.3d 1237 (11th Cir. 2002). Here, Defendants do not dispute that Keller's market-efficiency standard is wrong. Nor can they: Keller expressly affirmed his reliance on strong-form market efficiency (Keller Tr. at 27:12-15; ¶19), and Defendants' market-efficiency expert agrees strong-form market efficiency is irrelevant in securities litigation. ECF 308-2, Ex. 4 at 25:20-26:15.

Defendants wrongly contend that Keller's strong-form market-efficiency discussion does not matter because his opinions concern only public information. That argument supports exclusion, not admission. If market efficiency is unnecessary to Keller's assignment, he need not instruct the jury about it. If his opinions depend upon it – as Keller testified – his incorrect framework is a reliability problem. *Loy v. Rehab Synergies, LLC*, 558 F. Supp. 3d 402, 409-10 (S.D. Tex. 2021) ("'Under *Daubert*, "any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology."'").

Keller describes his market-efficiency principles in the "background" section of his truth-on-the-market report because his later opinions depend upon the concept; the two are inextricably intertwined. Keller Tr. at 24:10-25:3. Keller's opinions are tainted by his

incorrect market-efficiency definition because he claims only "credible" information is incorporated into a stock's price – a criteria indisputably ***not*** included in the accepted semi-strong market-efficiency definition – and so reviewed only analysts he subjectively deemed "credible." But ***all*** public information is incorporated into market prices, and Keller's contrary testimony is confusing and unfairly prejudicial. *See Amgen*, *Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

Defendants' cases are distinguishable. *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 2019 WL 2482399, at *5 (N.D. Ga. June 12, 2019), found that experts' focus on different factors within the well-established *Cammer* market-efficiency test was permissible. It did not agree to experts using market-efficiency standards inconsistent with the accepted legal framework. *Id*. Indeed, the challenged expert disclaimed opining that market efficiency requires "the market to impound new information instantaneously." *Id.* at *4; *compare* Keller Tr. at 26:8-13 (testifying to "belief and opinion" that "information was immediately impounded into the market price"). *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 271-72 (2014), does not permit an expert to add unexplained, unsupported "credibility" criteria to the efficient-market definition; it held *Basic*'s presumption of reliance does not rest on a binary view of market efficiency.

## VI. CONCLUSION

Keller should be precluded from offering the opinions identified in Plaintiffs' motion and Appendix A (ECF 308-1).

DATED: August 11, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
LUKE O. BROOKS
HILLARY B. STAKEM
NICOLE Q. GILLILAND
T. ALEX B. FOLKERTH

s/ Hillary B. Stakem
HILLARY B. STAKEM

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Class Counsel

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

**CERTIFICATION OF WORD COUNT**

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 1,999 words, exclusive of the caption and the signature block.

DATED: August 11, 2026

s/ Hillary B. Stakem
HILLARY B. STAKEM

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 11th day of August, 2026.

s/ Hillary B. Stakem
HILLARY B. STAKEM