UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| In re ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION | § § § § | Civil Action No. 4:20-cv-00576<br><br><u>CLASS ACTION</u><br><br>The Honorable Charles R. Eskridge III |

**UNOPPOSED MOTION FOR ORDER PRELIMINARILY APPROVING SETTLEMENT AND PROVIDING FOR NOTICE**

# TABLE OF CONTENTS

Page


I. NATURE AND STAGE OF THE PROCEEDINGS ..... 1

II. STATEMENT OF ISSUES TO BE RULED UPON ..... 2

III. FACTUAL BACKGROUND ..... 2

A. Litigation Overview ..... 2

B. The Settling Parties' Settlement Negotiations and Terms of the Proposed Settlement ..... 5

IV. LEGAL STANDARD ..... 7

V. SUMMARY ARGUMENT ..... 8

VI. THE SETTLEMENT MERITS PRELIMINARY APPROVAL ..... 10

A. The Court "Will Likely Be Able" to Approve the Proposed Settlement Under Rule 23(e)(2) ..... 10

1. Lead Plaintiffs and Lead Counsel Have Zealously Represented the Class ..... 10

2. The Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations ..... 11

3. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation ..... 11

4. The Settlement Does Not Unjustly Favor Any Class Member ..... 13

5. The Anticipated Request for Attorneys' Fees and Expenses Is Reasonable ..... 14

6. Plaintiffs Have Identified All Agreements Made in Connection with the Settlement ..... 15

VII. THE CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION ..... 16

VIII. NOTICE OF THE SETTLEMENT SHOULD BE APPROVED ..... 16

IX. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ..... 18

**Page**

X. CONCLUSION ........................................................................................................ 19

## TABLE OF AUTHORITIES

**Page**

### CASES

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ..... 14

*Buettgen v. Harless*,
2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ..... 12

*Celeste v. Intrusion, Inc.*,
2022 WL 1773650 (E.D. Tex. Dec. 16, 2022) ..... 12, 17

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..... 16

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Apr. 25, 2018) ..... 11, 18

*Harrell v. WebTPA Emp. Servs.*,
2025 WL 2412849 (N.D. Tex. June 5, 2025)
*report & recommendation adopted*,
2025 WL 2410300 (N.D. Tex. Aug. 20, 2025) ..... 7

*In re Alta Mesa Res. Inc. Sec. Litig.*,
2025 WL 1901350 (S.D. Tex. May 6, 2025) ..... 14

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
2019 WL 6043440 (S.D. Tex. Feb. 13, 2019) ..... 14

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ..... 7

*In re EZCorp, Inc., Sec. Litig.*,
2019 WL 6681962 (W.D. Tex. Dec. 6, 2019) ..... 18, 19

*Jones v. Singing River Health Servs. Found.*,
865 F.3d 285 (5th Cir. 2017) ..... 11

*Marcus v. J.C. Penney Co.*,
2017 WL 6590976 (E.D. Tex. Dec. 18, 2017)
*report & recommendation adopted*,
2018 WL 307024 (E.D. Tex. Jan. 4, 2018) ..... 7, 11



4905-0342-1907.v1

**Page**

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ... 17

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
2016 WL 3369534 (S.D.N.Y. May 2, 2016) ... 15

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b) ... 1, 2
§78t(a) ... 1, 2
78u-4(a)(4) ... 15
§78u-4(a)(7) ... 17

28 U.S.C.
§1715(b) ... 10

Federal Rules of Civil Procedure
Rule 23 ... 2, 8, 16, 19
Rule 23(a) ... 16
Rule 23(b)(3) ... 17
Rule 23(c)(2)(B) ... 17
Rule 23(c)(3)(B) ... 17
Rule 23(c)(2)(C)(ii) ... 14
Rule 23(e) ... 7
Rule 23(e)(1) ... 1
Rule 23(e)(1)(B) ... 8, 17
Rule 23(e)(1)(B)(ii) ... 16
Rule 23(e)(2) ... 2, 8, 10
Rule 23(e)(2)(A) ... 10
Rule 23(e)(2)(B) ... 11
Rule 23(e)(2)(C) ... 12
Rule 23(e)(2)(D) ... 14
Rule 23(e)(3) ... 8

**SECONDARY AUTHORITIES**

*Securities Class Action Settlements: 2025 Review & Analysis*
Cornerstone Research (2026) ... 13

**Page**

Lead Plaintiffs and Court-appointed Class Representatives Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Norfolk") and Iron Workers Local #580 Joint Funds ("Iron Workers") ("Lead Plaintiffs," and together with Building Trades United Pension Trust Fund, "Plaintiffs"), on behalf of themselves and the Court-certified Class, respectfully move pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure ("Rule(s)") for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") submitted herewith. The Preliminary Approval Order will, among other things, grant preliminary approval of the proposed $114.5 million settlement ("Settlement") reached in this Litigation.[1]

## I. NATURE AND STAGE OF THE PROCEEDINGS

This Litigation is a securities class action asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against defendants Anadarko Petroleum Corporation ("Anadarko" or the "Company"), Robert G. Gwin, R.A. Walker, Robert P. Daniels, and Ernest A. Leyendecker, III ("Individual Defendants," and collectively with Anadarko, "Defendants") on behalf of a certified Class of investors who purchased or acquired Anadarko common stock between February 20, 2015, and May 2, 2017, inclusive, and were allegedly harmed thereby. After six-and-a-half years of litigation, Lead Plaintiffs and Defendants have agreed to resolve the Litigation for $114.5 million in cash. Lead

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement dated September 28, 2026 ("Stipulation" or "Stip."), which is attached as Exhibit 1 to the accompanying Declaration of Luke O. Brooks. Internal citations have been omitted and emphasis has been added unless otherwise indicated.

Plaintiffs seek preliminary approval under Rule 23 so that notice of the Settlement can be provided to the Class and the final Settlement Hearing can be scheduled.

## II. STATEMENT OF ISSUES TO BE RULED UPON

1. Whether the Court will likely be able to approve the proposed $114.5 million Settlement of this Litigation under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to Members of the Class;

2. Whether the proposed form and content of the notices and Proof of Claim and the manner for disseminating them to the Class (including appointment of Verita Global ("Verita") as Claims Administrator) should be approved; and

3. Whether the Court should schedule a hearing on final approval of the proposed Settlement and Plan of Allocation, and Lead Counsel's forthcoming motion for attorneys' fees and expenses.

## III. FACTUAL BACKGROUND

### A. Litigation Overview

The initial complaint in this Litigation was filed on February 19, 2020. ECF 1. Following briefing, and pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Judge Atlas appointed Norfolk, Iron Workers, and Building Trades United Pension Trust Fund as lead plaintiff and approved Robbins Geller Rudman & Dowd LLP as Lead Counsel on May 13, 2020. ECF 41.

On August 17, 2020, Plaintiffs filed the Amended Complaint for Violations of the Federal Securities Laws ("Complaint"). ECF 55. The Complaint asserts claims under §§10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5(a)-(c) promulgated thereunder,

and alleges that, during the Class Period, Defendants made materially false and misleading statements to investors and participated in a fraudulent scheme or course of business conduct. Specifically, the Complaint alleges that Defendants misrepresented the commercial viability of, and concealed negative information regarding, Shenandoah ("Shen"), a deepwater oil discovery in the Gulf of Mexico that Defendants hailed as a "high[] quality," multi-billion dollar opportunity. ECF 55, ¶¶5, 29-34. The Complaint alleges that Defendants' reckless misstatements and concealment of negative information from investors caused Anadarko's stock price to be artificially inflated. Artificial inflation left the stock following Anadarko's May 2, 2017 announcement that it was suspending Shen's appraisal, resulting in $435 million in expensed exploratory-well costs and a $467 million impairment. The stock price dropped significantly, damaging Plaintiffs and the Class. *Id.*, ¶¶152-154.

On September 14, 2020, Defendants moved to dismiss the Complaint on falsity and scienter grounds. ECF 60. Judge Atlas denied Defendants' motion to dismiss on January 19, 2021. ECF 63. Defendants answered the Complaint on March 25, 2021. ECF 72.

From March 2021 to October 2022,[2] the Settling Parties engaged in extensive fact discovery. Plaintiffs' efforts, through Lead Counsel, included, *inter alia*: (i) preparing and serving initial disclosures, document requests, requests for admission, and interrogatories on Defendants; (ii) negotiating discovery disputes and moving to compel as needed; (iii) serving document subpoenas on approximately 40 nonparties; (iv) obtaining, reviewing, and

[2] One dispute, regarding the scope of the Court's order finding Defendants waived privilege over certain documents (ECF 173), involved briefing before the Fifth Circuit and subsequent proceedings before Magistrate Judge Bryan as Special Master, continuing through January 2026. ECF 301.

analyzing more than 2.2 million pages of document productions; (v) deposing 19 fact witnesses; (vi) reviewing and producing written responses and documents in response to Defendants' discovery requests; and (vii) sitting for deposition.

On October 1, 2021, Lead Plaintiffs moved to certify a class, be appointed class representatives,[3] and for Lead Counsel to be appointed as class counsel. ECF 86. Defendants opposed class certification on December 10, 2021 (ECF 93), and Lead Plaintiffs filed a reply on February 3, 2022 (ECF 96). The Parties then briefed Defendants' motion for leave to file a sur-reply (ECF 97-99), which the Court denied (ECF 110), and Defendants' subsequent motion to exclude the rebuttal expert report of Lead Plaintiffs' class certification expert. ECF 110. On September 28, 2022, this Court certified the Class and denied Defendants' motion to exclude. ECF 141.

Defendants moved to reconsider the Court's class certification order on October 12, 2022. ECF 143. While Defendants' motion was pending, the Parties completed merits expert discovery, with Lead Plaintiffs and Defendants each serving six expert reports. The Parties also completed ten expert depositions. On March 16, 2023, Defendants moved for summary judgment (ECF 162), and the Parties each moved to exclude certain expert testimony (ECF 156-158, 160-161, 163-165).

The Court denied Defendants' motion for reconsideration on June 30, 2023 (ECF 198), and Defendants filed a Rule 23(f) petition with the Fifth Circuit on July 17, 2023. The Fifth Circuit accepted the petition. After full briefing and oral argument, the Fifth Circuit

---

[3] Building Trades United Pension Trust Fund did not seek appointment as a class representative. ECF 86.

vacated the class certification order on May 17, 2024, and remanded to this Court to permit Defendants to file their sur-reply. The pending summary judgment and *Daubert* motions were administratively terminated without prejudice to refiling after resolution of class certification and the ongoing privilege dispute. ECF 216.

Following remand, the Parties submitted additional class certification briefing and expert testimony. ECF 237, 239-242, 244, 246. The Court then held an all-day evidentiary hearing on May 12, 2025, and a separate oral argument on July 3, 2025. ECF 286, 293. The Court again certified the Class on March 10, 2026. ECF 302.

On June 1, 2026, Defendants again moved for summary judgment (ECF 315), and the Parties filed motions to exclude merits expert testimony (ECF 309-313). Oppositions were filed on July 14, 2026 (ECF 326-333), and replies filed on August 11, 2026 (ECF 337-344). These motions were pending at the time of settlement.

### B. The Settling Parties' Settlement Negotiations and Terms of the Proposed Settlement

The Settling Parties began discussing the possibility of settlement in 2023, and engaged Judge Phillips to assist in those efforts. In advance of a June 1, 2023 mediation, the Settling Parties prepared and exchanged detailed mediation statements and exhibits. At the mediation, the Settling Parties further addressed their views on liability and damages and engaged in good-faith negotiations; however, they were unable to reach an agreement to resolve the Litigation.

The Settling Parties exchanged supplemental materials and participated in a second mediation with Judge Phillips on August 11 and 12, 2026. Although unable to reach an

agreement at the mediation, they continued good-faith settlement negotiations through Judge Phillips. On September 3, 2026, the Settling Parties accepted Judge Phillips' mediator's proposal to settle the Litigation for $114.5 million, subject to negotiation of the Stipulation and Court approval.

Thereafter, the Settling Parties further negotiated the specific terms of the settlement and executed the Stipulation on September 28, 2026. They also entered into a confidential Supplemental Agreement permitting Defendants to terminate the Settlement if valid requests for exclusion from the Class exceed an agreed-upon threshold.

The Stipulation provides that Defendants (and/or their insurance carriers on behalf of Defendants) will pay (or cause to be paid) $114.5 million into an interest-bearing escrow account maintained on the Class's behalf. The Settlement is not claims-made and is non-reversionary. Accordingly, the Class will receive the full benefit of the Settlement Amount, plus interest, after deducting Court-approved attorneys' fees, expenses, and costs (the "Net Settlement Fund"), without regard to the number of Claims submitted. After the Settlement becomes Final, the Net Settlement Fund will be distributed among eligible Class Members who submit valid Claims in accordance with a Court-approved plan of allocation. *See* Stip., ¶1.22. Members of the Class certified by the Court – *i.e.*, all persons and entities who purchased or acquired Anadarko common stock between February 20, 2015, and May 2, 2017, inclusive, and were allegedly harmed thereby[4] – will be eligible to submit Claims. Stip., ¶1.4.

---

[4] Excluded from the Class are Defendants and their families, legal representatives, heirs, successors, or assigns; officers, directors, subsidiaries, and affiliates of Anadarko during the

If the Court grants final approval to the Settlement, upon the Effective Date, Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount and the right to participate in the distribution of the Net Settlement Fund. The Released Plaintiffs' Claims are limited to claims related to Class Period transactions in Anadarko common stock and the allegations in the Litigation. Stip., ¶1.27.

## IV. LEGAL STANDARD

Settlement is a strongly favored method for resolving class actions. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (second alteration in original) (noting the "'overriding public interest in favor of settlement' that [the Fifth Circuit has] recognized '[p]articularly in class action suits'"); *Marcus v. J.C. Penney Co.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("There is a strong judicial policy in favor of settlements, particularly in the class action context."), *report & recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018).

Rule 23(e) requires judicial approval of class action settlements through a two-step process. First, the court performs a preliminary review to determine whether the terms of the proposed settlement are sufficient to warrant notice to the class and a hearing. Second, after completed notice and a hearing, the court determines whether to grant the settlement final approval. *Harrell v. WebTPA Emp. Servs.*, 2025 WL 2412849, at *2 (N.D. Tex. June 5, 2025), *report & recommendation adopted*, 2025 WL 2410300 (N.D. Tex. Aug. 20, 2025).

---

Class Period; any entity in which Defendants have a controlling interest; and any judicial officer to which this litigation is assigned. ECF 302 at 25.

Courts grant preliminary approval and authorize notice to the class if they find they "*will likely be able*" to: (i) finally "approve the [settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of [the settlement]." Fed. R. Civ. P. 23(e)(1)(B). In considering whether final approval is likely, Rule 23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Here, each factor supports granting preliminary approval of the Settlement.[5]

## V. SUMMARY ARGUMENT

After more than six years of vigorous litigation, the Settling Parties have agreed to resolve the Class's claims for $114.5 million in cash. In agreeing to settle, Lead Plaintiffs and Lead Counsel weighed the risks of continued litigation – including pending summary judgment and *Daubert* motions and future evidentiary rulings, trial, and appeals – against the benefits of a sizable and certain recovery now.

The Settlement provides an excellent benefit to the Class given the significant risks, costs, and delay of continued litigation. Although Lead Plaintiffs and Lead Counsel believe

---

[5] There is no difference between the Class previously certified by the Court and the Class on whose behalf this Settlement was reached.

in the merits of the case, Defendants similarly maintain their defenses. Continued litigation risked Defendants prevailing at summary judgment or at trial, the jury awarding little or no damages, and ultimately, a recovery below the Settlement Amount or no recovery at all. Trial victory would likely result in follow-on appeals, further delaying Class Members' recovery. Instead, the Settlement recovers approximately 22% of the Class's reasonably recoverable damages on a much shorter timeline.

Due to the Litigation's advanced stage, Lead Plaintiffs and Lead Counsel deeply understood the strengths and weaknesses of the Class's claims in negotiating the Settlement and determining it to be in the Class's best interests. They had the benefit of, *e.g.*: (i) the Court's detailed motion to dismiss and class certification rulings; (ii) the Parties' recently completed summary judgment and *Daubert* briefing; (iii) a robust factual record, including more than 2.2 million pages of documents produced by Defendants and nonparties and 19 fact depositions; and (iv) the opinions of multiple experts on issues central to the claims. And, the Settlement Amount was independently proposed by a respected mediator experienced in securities litigation, the Honorable Layn R. Phillips (U.S. Dist. Ct., Ret.) of Phillips ADR Enterprises, P.C., further suggesting its fairness.

At the Settlement Hearing (and upon more fulsome submissions), the Court will determine whether the Settlement is fair, reasonable, and adequate, as Rule 23(e)(2) requires. Entry of the Preliminary Approval Order will begin the process by: (i) preliminarily approving the Settlement; (ii) approving the form and content of the notices and the Proof of Claim; (iii) approving the plan for disseminating notice of the Settlement to the Class; (iv) appointing Verita as Claims Administrator; and (v) scheduling the Settlement Hearing on

final approval of the Settlement, the Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses. Lead Plaintiffs request that the Settlement Hearing be scheduled for at least 100 calendar days after entry of the Preliminary Approval Order, or as soon thereafter as is convenient, to allow sufficient time for Class notice and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §1715(b), *et seq*.

## VI. THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. The Court "Will Likely Be Able" to Approve the Proposed Settlement Under Rule 23(e)(2)

#### 1. Lead Plaintiffs and Lead Counsel Have Zealously Represented the Class

In determining whether to approve a class action settlement, courts first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

Lead Plaintiffs have actively represented and protected the Class's interests in obtaining the largest possible recovery from Defendants throughout this Litigation. They consulted with Lead Counsel on strategy and case developments, oversaw the drafting of the Complaint and motion to dismiss and class certification briefing, produced documents, and sat for deposition. They conferred with Lead Counsel during settlement negotiations, understood both sides' principal arguments, and approved the terms of the Settlement. The Court found Lead Plaintiffs adequate when appointing them Class Representatives, and they have upheld their obligations since.

Lead Counsel's extensive experience prosecuting complex securities class actions allowed them to evaluate the strengths and risks of the case and make an informed decision

regarding the reasonableness of settlement. *See J.C. Penney*, 2017 WL 6590976, at *3 ("Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class . . . ."). Before settlement, Lead Counsel investigated the claims, successfully opposed dismissal, reviewed more than 2.2 million pages of documents, took 19 fact depositions, litigated class certification twice, completed merits expert discovery, opposed summary judgment, and briefed *Daubert* motions. Lead Counsel further tested the record, Defendants' positions, damages, and litigation risks through mediation, vigorously negotiating to secure the $114.5 million recovery.

### 2. The Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations

In assessing a proposed settlement, courts must also consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts recognize "[t]he involvement of 'an experienced and well-known' mediator '[to be] a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 296 (5th Cir. 2017).

Here, the arm's-length negotiations and Judge Phillips' close involvement, including his issuance of a mediator's proposal, support the Settlement's fairness and absence of collusion. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Apr. 25, 2018) (Judge Phillips' involvement as mediator supported settlement's fairness).

### 3. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

In approving class action settlements, courts balance a plaintiff's likelihood of success on the merits against the settlement's offered relief. Fed. R. Civ. P. 23(e)(2)(C).



4905-0342-1907.v1

The Settlement provides a certain, near-term cash recovery of approximately 22% of reasonably recoverable damages, less Court-approved fees and costs, for Class Members submitting valid Claims. Meanwhile, continued litigation posed numerous factual and legal risks that could significantly reduce or eliminate the Class's recovery. Defendants deny any wrongdoing, and would argue at trial (as at summary judgment) that the alleged misstatements were not misleading and were not made with scienter. Among other things, Defendants assert that the alleged misleading statements are inactionable, internal differences in data interpretation do not amount to evidence of fraud, and that Anadarko's continued investment into exploration of Shen undermines scienter. While Lead Plaintiffs believe there is strong evidence supporting both elements, a jury weighing witnesses' credibility could find otherwise.

Lead Plaintiffs also faced challenges in establishing loss causation and damages. Defendants argue that news concerning a home explosion in Firestone, Colorado, released within the same hour as the alleged corrective disclosure, caused Anadarko's price decline. Defendants' highly-credentialed expert would testify as much, while Lead Plaintiffs' expert would disaggregate damages attributable to the Shenandoah and Firestone news. There is no guarantee as to which expert's testimony would be more compelling to a jury, posing a significant trial risk. *See Buettgen v. Harless*, 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013); *Celeste v. Intrusion, Inc.*, 2022 WL 1773650, at *7 (E.D. Tex. Dec. 16, 2022) (approving securities class action settlement where competing damages positions would have devolved into a "battle of the experts").

The Settlement is an excellent result when balanced against these risks. The Settlement represents approximately 22% of reasonably recoverable damages (assuming Plaintiffs' success on all liability issues), which compares favorably to recoveries achieved in other securities cases and approved by courts. *See* Cornerstone Research, *Securities Class Action Settlements: 2025 Review & Analysis*, at 7 (2026) (from 2016-2024, Rule 10b-5 cases settling at $75-149 million recovered a median 8% of damages), *available at* https://www.cornerstone.com/wp-content/uploads/2026/02/Securities-Class-Action-Settlements-2025-Review-and-Analysis.pdf.

**4. The Settlement Does Not Unjustly Favor Any Class Member**

The proposed Plan of Allocation ("Plan") set forth in the long-form Notice, developed in consultation with Lead Plaintiffs' damages expert, provides a fair and effective means of distributing the Net Settlement Fund and treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(c)(2)(C)(ii) & (e)(2)(D) (requiring assessment of whether settlement will equitably distribute relief).

The Plan distributes the Net Settlement Fund to Class Members with timely and valid Claims showing a loss on Class Period transactions in Anadarko common stock. Recognized losses reflect the estimated artificial inflation in Anadarko's price allegedly caused by Defendants' misconduct. A Class Member must have held shares purchased or acquired during the Class Period through the May 2, 2017 corrective disclosure that removed the inflation. Eligible claimants will receive a *pro rata* distribution from the Net Settlement Fund based on their recognized losses.

If appointed Claims Administrator, Verita will apply a well-established claims processing protocol in securities class actions. Class Members may submit Claims by mail or electronically, which Verita will then use to determine each claimant's eligibility and calculate each "Recognized Claim" under the Plan. *See* Stip., ¶5.4. Claimants may cure any defects in their Claims and contest rejections. *Id.*, ¶5.8. Unresolved Claim disputes will be presented to the Court.

This equitable allocation and administration supports preliminary approval.

**5. The Anticipated Request for Attorneys' Fees and Expenses Is Reasonable**

The notices advise that Lead Counsel, on behalf of Plaintiffs' Counsel, will seek attorneys' fees of no more than 30% of the Settlement Amount and expenses, plus interest on both amounts. After more than six years without any payment, a fee of up to 30% is reasonable and well within this Circuit's customary range. *See, e.g.*, *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (One-third "is an oft-awarded percentage in common fund class action settlements in this Circuit."); *In re Alta Mesa Res. Inc. Sec. Litig.*, 2025 WL 1901350, at *1 (S.D. Tex. May 6, 2025) (awarding 33% fee); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2019 WL 6043440, *1 (S.D. Tex. Feb. 13, 2019) (awarding 25% fee).

Fee payment immediately after entry of the fee order is appropriate and common practice and protected by the Stipulation's repayment requirement. *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) ("[T]he fees and expenses awarded herein shall be paid from the Settlement Fund to

Lead Counsel immediately upon entry of this Order, notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest."); Stip., ¶6.2.

Lead Counsel may also request reimbursement of Plaintiffs' reasonable costs and expenses incurred in representing the Class, as permitted by the PSLRA. 15 U.S.C. §78u-4(a)(4) (allowing the "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class"). Class Members will have an opportunity to address the request for attorneys' fees and payment of Plaintiffs' Counsel's expenses and for reimbursement of Plaintiffs' reasonable costs and expenses before the Settlement Hearing, and after Lead Counsel has made submissions in support of its request.

#### 6. Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

In addition to the Stipulation, the Settling Parties have entered into a standard, confidential Supplemental Agreement that gives Defendants the option to terminate the Settlement in the event that requests for exclusion from the Class exceed an agreed-upon threshold. Stip., ¶7.3. It is standard in securities class actions that agreements of this kind remain confidential to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact individual settlements. In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*. "This type of agreement is common in securities fraud actions and does not weigh against

[settlement] approval." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019).

## VII. THE CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION

The second part of the settlement approval process is to determine whether the Litigation may be maintained as a class action for settlement purposes under Rule 23. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). Here, the Court already certified the Class. ECF 302. That Class will be bound by the Settlement.

## VIII. NOTICE OF THE SETTLEMENT SHOULD BE APPROVED

Rule 23(c)(2)(B) requires Class Members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," while Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1)(B). Notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Consistent with Rules 23(c)(2)(B) and 23(e)(1)(B), the proposed notices here will inform recipients of: (i) the nature of the Litigation, including the claims and issues involved; (ii) the Class definition; (iii) Class Members' rights, including to enter an appearance through an attorney, object to any aspect of the Settlement or seek exclusion from the Class (and the procedures and deadlines for doing so); and (iv) the binding effect of a judgment on Class Members under Rule 23(c)(3)(B). The long-form Notice satisfies the PSLRA's

additional notice requirements by stating: (i) the Settlement Amount in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages per share that would be recoverable at trial; (iii) that Lead Counsel intends to apply for attorneys' fees and expenses (including the amount of such fees and estimated expenses on an average per share basis); (iv) Lead Counsel's contact information; and (v) the reasons for the Settlement. 15 U.S.C. §78u-4(a)(7).

As outlined in the Preliminary Approval Order, if the Settlement is preliminarily approved, the Claims Administrator will provide direct notice via mail and/or email (*see* Postcard Notice, Stip. Ex. A-4) to those Class Members set forth in the records provided by Anadarko or who otherwise can be identified with reasonable effort, including through a network of banks, brokerage firms, and other nominees ("Nominees"). Nominees who purchased or acquired shares of Anadarko common stock during the Class Period on behalf of other beneficial owners will be required to either mail or email the Postcard Notice to their customers or provide the names, addresses, and any email addresses of the beneficial owners to the Claims Administrator, which will then promptly send the Postcard Notice by first-class mail or email to such identified beneficial owners.

The Postcard Notice provides important information regarding the Settlement, along with the rights of Class Members in connection therewith, and directs recipients to the Settlement website (*i.e.*, www.AnadarkoSecuritiesSettlement.com) and the detailed long-form Notice for more information regarding the Litigation and Settlement. Courts routinely allow notice by postcard as proposed here. *See, e.g.*, *Celeste*, 2022 WL 1773650, at *8 (approving notice through mailing of postcard, posting of long-form notice on website, and

publishing a summary notice); *In re EZCorp, Inc., Sec. Litig.*, 2019 WL 6681962, at *2 (W.D. Tex. Dec. 6, 2019) (same).

The Claims Administrator will post downloadable copies of the Notice and Proof of Claim (Exs. A-1 & A-2 to the Stipulation), as well as other important documents, on the Settlement website and will cause the Summary Notice (Ex. A-3 to the Stipulation) to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. *See* Stip., Ex. A, ¶6.

The proposed plan for providing notice here is the same method used in numerous other securities class actions. Courts routinely find that comparable notice procedures represent the best notice practicable under the circumstances and satisfy the requirements of Rule 23 and due process. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *3 (holding that notices delivered through similar procedures – *i.e.*, mailed notice, publication notice, and website – satisfied Rule 23's requirements); *EZCORP*, 2019 WL 6681962, at *2. Accordingly, Lead Plaintiffs respectfully submit that the Court should approve the proposed manner and form of providing notice to Class Members. Lead Plaintiffs also request the Court's approval to retain Verita – a nationally recognized notice and claims administration firm with expertise in administering complex securities class action settlements – as Claims Administrator.

## IX. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiffs respectfully request that the Court enter the below schedule for future settlement-related events. The Court need only enter the date of the Settlement Hearing at ¶3 of the Preliminary Approval Order, as all other dates referenced below will be set based on

either (a) the date the Preliminary Approval Order is entered, or (b) the date selected by the Court for the Settlement Hearing.

| **Event** | **Proposed Timing** |
|---|---|
| Deadline for mailing/e-mailing the Postcard Notice to Class Members (which date shall be the "Notice Date") and posting the Notice and Proof of Claim on the Settlement website | Not later than 21 calendar days after entry of the Preliminary Approval Order ("PAO") (PAO, ¶6(b)) |
| Deadline for publishing the Summary Notice | Not later than 7 calendar days after the Notice Date (PAO, ¶6(c)) |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses | Not later than 35 calendar days prior to the Settlement Hearing (PAO, ¶17) |
| Deadline for requests for exclusion to be postmarked | Not later than 21 calendar days prior to the Settlement Hearing (PAO, ¶11) |
| Deadline for receipt of objections | Not later than 21 calendar days prior to the Settlement Hearing (PAO, ¶13) |
| Deadline for filing reply papers | Not later than 7 calendar days prior to the Settlement Hearing (PAO, ¶17) |
| Settlement Hearing | 100 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (PAO, ¶3) |
| Deadline for Proofs of Claim to be postmarked/submitted electronically | No later than 90 calendar days from the Notice Date (PAO, ¶9) |

## X. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of providing notice to Class Members; (iii) approve Verita as Claims Administrator; and (iv) schedule a hearing to consider final approval of the Settlement and related matters.

DATED: September 28, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
MARK SOLOMON
DANIEL S. DROSMAN
LUKE O. BROOKS
HILLARY B. STAKEM
NICOLE Q. GILLILAND
T. ALEX B. FOLKERTH

s/ Luke O. Brooks
LUKE O. BROOKS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Class Counsel

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
(SDTX Bar No. 30973)
Attorney-in-charge
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)

Texas Local Counsel for Plaintiff

## CERTIFICATION OF WORD COUNT

In accordance with Rule 18(c) of Your Honor's Court Procedures, I hereby certify that this document contains 4,988 words, exclusive of the caption, the table of contents, the table of authorities, and the signature block.

DATED: September 28, 2026

s/ Luke O. Brooks
LUKE O. BROOKS

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system on this, the 28th day of September, 2026.

s/ Luke O. Brooks
LUKE O. BROOKS